**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

286 RIDER AVE ACQUISITION LLC,

Debtor.

Chapter 11

Case No. 21-11298-LGB

**RELATED DOC. NO. 5**

**OBJECTION OF 286 RIDER AVE DEVELOPMENT LLC TO ORDER GRANTING**
**286 RIDER AVE ACQUISITION LLC'S *EX PARTE* MOTION FOR ENTRY OF AN**
**ORDER PURSUANT TO BANKRUPTCY RULE 2004 AUTHORIZING DISCOVERY**
**EXAMINATIONS OF (I) TOBY MOSKOVITS AND (II) MICHAEL LICHTENSTEIN**

286 Rider Ave Development LLC ("Development"), by and through undersigned counsel, files its objection (this "Objection") to the Court's Order (the "2004 Order") [ECF No. 5] Granting the *Ex Parte* Motion (the "*Ex Parte* Motion") [ECF No. 4] of 286 Rider Ave Acquisition LLC ("Debtor") for Entry of an Order Pursuant to Bankruptcy Rule 2004 Authorizing Discovery Examinations of (i) Toby Moskovits ("Ms. Moskovits") and (ii) Michael Lichtenstein ("Mr. Lichtenstein"). In support of this Objection, Development says:

**Preliminary Statement**

As more fully delineated in Development's motion to dismiss the bankruptcy case (the "MTD") which will be filed on August 4, 2021, Be-Aviv 286 Rider LLC ("Lender") has gone so far over the line in its tactics that this bankruptcy case should be immediately dismissed. Thus, Development respectfully submits that the 2004 Order, granted on an *ex parte* basis, should be held in abeyance pending the Court's ruling on the MTD.[1] As will be shown in the MTD,

---

[1] Prior to filing this objection, Development's counsel contacted counsel to the purported "debtor" and requested that the 2004 Order be held in abeyance pending this Court's ruling on the MTD. Purported "debtor's" counsel did not agree citing pressure from the Office of the United States Trustee to file Schedules and a Statement of Financial Affairs. Development files this objection and reserves its right and respectfully suggests that the parties engage in further discussions regarding this 2004 Order and this objection prior to seeking a discovery conference or a hearing before the Court.

59203564;4

requiring Development to comply with discovery demands at this time, in a bad faith and improper filing, would give inappropriate legitimacy to the case.  Further, it would be inimical to notions of judicial and estate economy and fundamental fairness to permit discovery to go forward under the extant circumstances. Indeed, there is no urgency to the discovery which is targeted to the Lender obtaining sufficient information to file schedules of assets and liabilities and a statement of financial affairs. If the Court does not grant the MTD, Development will, of course, comply with the 2004 Order immediately.

To provide the Court with some background, Lender is using the bankruptcy process improperly as a collection device in a two-party contested dispute without even attempting to exhaust its state law remedies while pre-petition litigation is pending.  By effectively forcing a bankruptcy involuntarily and an expedited sale of the real property therein, Lender is running roughshod over the borrower's equity of redemption and due process rights and diverging from typical and appropriate creditor enforcement schemes.  If Lender's bad faith improper use of the bankruptcy process is countenanced, this precedent could be a public policy disaster. What will stop any lender that desires to avoid having to engage in contested litigation with a borrower over a default, or to avoid having to conduct a UCC Article 9 sale or a judicial foreclosure action, from merely exercising a pledge of the equity interests, providing notice of such transfer, commencing a bankruptcy case, and establishing a sale process of the real estate? In that paradigm, the UCC and the RPAPL are rendered meaningless in the presence of a pledge of equity and section 363 of chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  Under these circumstances, the Pledgee need not have any creditors other than the secured creditor who would have succeeded in weaponizing its pledge to effect a single asset real estate bankruptcy case for the exclusive benefit of the secured party without the typical balancing

influence of a secured creditor attacking the case as a bad faith filing since, in this matter, the secured creditor is the sponsor of the case.

What makes Lender's end run around conventional practice even more egregious is that Lender has sought to execute its rogue collection efforts during the pendency of a state court litigation commenced by the mezzanine loan borrower to determine that Lender is in default under the loan documents. To make matters even worse, in that case the Lender has defaulted in its obligation to answer or otherwise move with respect to the complaint in the State Court Proceeding (as defined below).

In addition to the threshold issue above, this bad faith, improper bankruptcy case should also be dismissed on multiple other grounds, including that:

A. The Pledge itself is defective, as it is not signed by the proper party with authority to bind the purported Pledgor.

B. This bankruptcy case is the inverse of the archetypal bad faith single asset real estate filings but should be analyzed under the same rubric. The purported Debtor has few, if any, other creditors and there is a pending state court litigation which Lender (pretending to be a debtor) has sought to stymie. This is simply a two-party collection dispute and there is no proper purpose for a bankruptcy case and the case should be dismissed under Section 1112 of the Bankruptcy Code.

C. Rather than acting in an appropriate and required fashion as a secured creditor by commencing a public UCC sale, Lender has weaponized its defective pledge to commence a bankruptcy case in which it seeks to sell its real estate collateral. This would allow Lender to avoid the consequences of its bad faith pre-petition conduct (and its default in the state court action) as set forth in the pledgor/borrower's state court action and the time, expense, and delay and attendant due process in a state law foreclosure action.

D. In addition to failing to obtain an effective and legally binding pledge of the membership interests, Lender also has acted improperly by clogging the pledgor/borrower's equity of redemption. It is axiomatic that where a lender holds dual collateral with respect to the same real estate project—a pledge of membership interests in the borrower and a mortgage on the borrower's land— that even in the context of a UCC Article 9 sale, the attenuated time frames of such UCC sale process can improperly deprive a borrower from its equity of redemption in a real estate foreclosure context. Here, the facts are egregious: the

Lender is oversecured and there is substantial value to redeem. Lender disregarded the UCC Article 9 sale step and went directly to an expedited 363 sale, thereby clogging the equity of redemption profoundly.

E.     Lender's rogue tactics should be seen for what they are—a disguised involuntary proceeding where the debt is in *bona fide* dispute. Like most bad faith involuntary proceedings filed by a single creditor where the creditor is using the bankruptcy forum as a collection device without exhausting its state law remedies, the Court should summarily dismiss or abstain from hearing this case pursuant to sections 303 and/or 305 of the Bankruptcy Code.

## **Background**

1.     Development owns 100% of the membership interests of Debtor (the "Membership Interests"). On or about September 19, 2019, Debtor received a loan in the principal amount of $8,000,000.00 (the "Loan") from Lender. The Loan is evidenced by a Promissory Note dated September 19, 2019 given by Debtor to Lender and a Mortgage and Security Agreement of even date pursuant to which Debtor granted Lender a mortgage on that certain real property located at 286 Rider Avenue, Bronx, New York (collectively, the "Loan Documents").

2.     As additional collateral for the Loan, Development executed and delivered to Lender a pledge of the Membership Interests in the Debtor pursuant to a Membership Interest Pledge Agreement (the "Pledge Agreement") and a corresponding Assignment of those Membership Interests, both dated September 19, 2019.

3.     By letter dated March 2, 2021, Lender notified Debtor of a purported default under the Loan Documents and demanded immediate payment of all amounts then due (the "First Default Notice").

4.     Following receipt of the First Default Notice, the Debtor and certain of its affiliates filed a complaint against Lender and others in the Supreme Court of the State of New York, Kings County, for, among other things, Lender's failure to advance funds as required by

the Loan Documents and certain other bad acts giving rise to lender liability claims, *In re: Heritage 875 4ᵗʰ Avenue LLC, et al. v. Aviv Arava Management, LLC, et al.*, Index No. 506131/2021 (the "State Court Proceeding").

5.      By letter dated April 27, 2021, Lender notified Debtor that it was in (purported) continuing default of the Loan Documents and Lender then transferred the Membership Interests to Lender's own name as if Lender was the absolute owner thereof (the "Transfer of Membership Interests").  Shortly thereafter, on July 15, 2021, the Debtor filed this unauthorized and bad  faith Bankruptcy Case to advance its interests in what is essentially a two party dispute in a pending litigation in which the lender had defaulted, to effect an expedited bankruptcy sale of the Property in clear violation of New York law regarding the improper clogging of the equity of redemption where a lender holds dual collateral (a pledge of equity and a mortgage), an unlawful exercise of a Pledge, and numerous other defects and improper actions. The myriad fatal defects of this bankruptcy case will be detailed in Development's motion to dismiss the Bankruptcy Case that will be set forth at length

## Objection

6.      Lender caused the purported "debtor" to file this Bankruptcy Case in bad faith, to avoid liability for Lender's own bad acts which are the subject of the State Court Proceeding while using chapter 11 as a collection proceeding.  Lender's transfer of the Membership Interests of the Debtor to itself, to the extent effective, are subject to turnover to Development. As such, Development intends to file a motion to dismiss the Bankruptcy Case pursuant to, *inter alia*, 11 U.S.C. §§ 303, 305, 543, and 1112(b)(1) for those and other reasons.

7.      The 2004 Order directs Ms. Moskovits and Mr. Lichtenstein each to produce documents responsive to eleven (11) broad and largely duplicative categories of requests, many

of which are irrelevant to even a good faith chapter 11 filing (which this is not). At a minimum, the Court should require Lender to confer with Development's counsel in good faith prior to narrow the scope of the requests prior to requiring Development to engage in any production.

8.      For the foregoing reasons, Development objects to the 2004 Order and respectfully requests that compliance with such order be held in abeyance until after the Court rules on the MTD.    Development reserves the right, pursuant to Local Rule 7007-1, to seek Court intervention to resolve discovery disputes whether by conference or motion.

Dated: New York, New York
August 3, 2021

**AKERMAN LLP**

By:   */s/Mark S. Lichtenstein*
Mark S. Lichtenstein
Joshua D. Bernstein
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
Tel. (212) 880-3800
E-mail: mark.lichtenstein@akerman.com
E-mail: joshua.bernstein@akerman.com

*Counsel for 286 Rider Ave Development LLC*