**HEARING DATE AND TIME: AUGUST 26, 2021 @ 10:00 A.M. ET**

**MORRISON COHEN LLP**
909 Third Avenue
New York, New York 10022
(212) 735-8600
Joseph T. Moldovan, Esq.
Latisha Thompson, Esq.
David J. Kozlowski, Esq.

*Attorneys for Be-Aviv 286 Rider LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **286 RIDER AVE ACQUISITION LLC,** | Case No. 21-11298-LGB |
| Debtor. | |

**BE-AVIV 286 RIDER LLC'S RESPONSE TO MOTION BY 286 RIDER AVE DEVELOPMENT LLC TO (I) DISMISS BANKRUPTCY CASE PURSUANT TO 11 U.S.C. §§ 303, 305, AND 1112, AND (II) FOR TURNOVER OF CERTAIN MEMBERSHIP INTERESTS UNDER 11 U.S.C. § 543, AND JOINDER BY RESPONDENT TO DEBTOR'S RESPONSE TO THE MOTION**

Be-Aviv 286 Rider LLC ("**Lender**"), by its undersigned counsel, Morrison Cohen LLP, (a) files this response ("**Response**") to the Motion to (i) Dismiss Bankruptcy Case Pursuant to 11 U.S.C. §§ 105, 305, and 1112 and (ii) for Turnover of Certain Membership Interests under 11 U.S.C. § 543 ("**Motion**"), dated August 5, 2021, filed by 286 Rider Ave Development LLC ("**Pledgor**"), and (b) joins in the response filed by the Debtor in response to the Motion. In support of this Response, Lender respectfully sets forth and represents as follows:

## PRELIMINARY STATEMENT

1.      Unable to pay its debts, which include a $1.2 million judgment in favor of a third party creditor, an $8 million fully-matured loan ("**Loan**") provided by the Lender, overdue taxes, and other sums likely owed to tradesmen and professionals,[1] on July 15, 2021, 286 Rider Ave Acquisition LLC ("**Debtor**") filed for bankruptcy protection.

2.      The filing was validly authorized by 286 Rider Lender LLC ("**Rider Lender**"), the Managing Member of the Debtor and by the Petition and other documents executed by Lee Buchwald, the independent manager of the Debtor ("**Independent Manager**"). A copy of the corporate authorization for the filing is attached as Exhibit A to the Declaration of Ben Harlev, ("**Harlev Decl.**") submitted in support of this Response.[2]

3.      In brief, the Motion argues that the filing was unauthorized because Rider Lender lacked requisite corporate authority to take over the management of the Debtor and authorize the commencement of this case ("**Bankruptcy Case**"). Pledgor is simply wrong. As explained in detail below, the facts, despite all attempts to embellish and obfuscate them, are simple: Lender made the Loan. The Debtor defaulted. Lender agreed to extend the maturity date of the Loan in exchange for the typical release of all prior acts and conduct, acknowledgement of the default, and

---

[1] Lender uses the word "likely" here because neither Lender nor the Debtor have visibility into the full extent of the Debtor's liabilities because the Pledgor has refused to release the books and records of the Debtor to the Debtor.

[2] References to the Declaration will be in the format: "Declaration Exhibit __, at __."

acknowledgment that the Debtor had no defenses to the obligations evidenced by the

Loan. The Loan matured. The Debtor did not satisfy the Loan. The Lender informed

the Debtor and Pledgor that it was in default. Debtor did nothing. Lender then

properly exercised its rights under a pledge ("**Pledge**") of the membership interest

("**Membership Interest**") the Pledgor had in the Debtor that the Pledgor provided

Lender as collateral and consideration for the Loan. A copy of the Pledge is attached

to the Harlev Decl. as Exhibit B.

4.      The Pledge provides very explicitly that upon default, the Lender can

take control of the Debtor. This is the language at the heart of this Motion and the

issues before this Court, all the rest is just noise:

> If an Event of Default shall occur and be continuing, then
> all Membership Interests at Lender's option, may be
> registered in the name of Lender or its nominee (if not
> already so registered), and Lender or its nominee may
> thereafter exercise (i) all voting and all equity, membership
> and other rights pertaining to the Membership Interests
> and (ii) any and all rights of conversion, exchange, and
> subscription and any other rights, privileges or options
> pertaining to such Membership Interests as if it were the
> absolute owner thereof (including, without limitation, the
> right to exchange at its discretion any and all of the
> Membership Interests upon the merger, consolidation,
> reorganization, recapitalization or other fundamental
> change in the organizational structure of any member or
> upon the exercise by Pledgor or Lender of any right,
> privilege or option pertaining to such Membership
> Interests, and in connection therewith, the right to deposit
> and deliver any and all of the Membership Interests with
> any committee, depositary, transfer agent, registrar or
> other designated agency upon such terms and conditions as
> it may determine), all without liability except to account
> for property actually received by it, but Lender shall have
> no duty to exercise any such right, privilege or option and

3

shall not be responsible for any failure to do so or delay in
so doing.

*See* Decl. Ex. B at 2–3, § 5(a).

5.      In accordance with the rights expressly granted to it by the Pledgor, the
Lender exercised its rights under the Pledge, took control of the Debtor, appointed
Rider Lender as the Managing Member, appointed Buchwald as the Independent
Manager, and authorized Buchwald to seek Chapter 11 relief for the Debtor. Pledgor,
obviously unhappy with this result, filed the Motion more than three months after
the exercise of the Pledge.

6.      The Motion should be denied because despite a lot of verbiage and what
might be charitably called, misstatements of the facts, Movant fails to articulate a
single valid legal argument why this case should be dismissed. In support of the
Motion, Pledgor makes the following arguments:

(i)      *the Pledge which transferred management of Debtor, including the right
to commence a bankruptcy case, was invalid as it was not executed pursuant to
a signed consent*—the problem with this argument is that there is a signed
consent attached to the loan documents, *see* Section C, *infra*;

(ii)      *Lender was required to commence a public UCC Sale in order to take
advantage of the rights under the Pledge*—the language of the Pledge belies
this position and this is simply not the law, *see* Section D, *infra*;

(iii)      *the bankruptcy is really a two-party collection dispute*—this is a
disingenuous statement; Movant knows that on the same day it entered into
the Loan, in contravention of the Loan Documents (as defined below), it caused

4

the Debtor to grant a \$1 million confession of judgment to the entity that sold it the land, in addition (a judgment was thereafter entered against the Debtor on the confession in the amount of \$1.2 million), there are debts owed to the New York State taxing authorities, and likely various vendors and professionals who have represented the Debtor over the past several years, *see* Sections B, F *infra*;

(iv)    *the bankruptcy case was filed to avoid state-court litigation where Lender is not faring well*—since nothing has happened in a pending state court action other than a change of venue motion and a meretricious attempt by the Pledgor to claim the Lender defaulted on an answer, this argument is, at best, a waste of time, *see* Section F, *infra*;

(v)    *the effect of the bankruptcy case is to deprive the Pledgor of the equity of redemption*—in addition to misperceiving who owns the equity of redemption (the Debtor owns it, not the Pledgor), Pledgor has studiously avoided citing cases from this Circuit that make clear that in a case such as this, the equity of redemption is one of the Debtor's assets, and that nothing Lender has done or could do can alter that legal reality or impair, clog, or otherwise affect, the Debtor's equity of redemption, *see* Section G, *infra*;

(vi)    *the Court should order the Lender to turn over the Membership Interest to the Pledgor under 11 U.S.C. § 543*—since the Membership Interest is not an asset of the Estate and neither the Pledgor nor the Lender are debtors in this

case, it is difficult to fathom how Section 543 applies or how this Court could have jurisdiction to resolve this request, *see* Section H, *infra*.

7.    It should also be noted that Pledgor's inaction with respect to the Lender's exercise of the Pledge and the Debtor's post petition activities, renders Pledgor's complaint about what has happened to it hollow, artificial, and desperate. Pledgor took no action after it was notified of the default and Lender's exercise of the Pledge on April 27, 2021. It took no action after this Bankruptcy Case was commenced on July 15, 2021, until the filing of the Motion three weeks later. It failed to comply with this Court's 2004 Order that required Pledgor to provide the Debtor with the Debtor's books and records. Meanwhile, the Lender has done everything by the book. It made protective advances in order to pay for the management of the Debtor, insurance for the Property, and counsel fees. And the Debtor has been working assiduously since the Petition Date to obtain the books and records or the Debtor and satisfy its Chapter 11 administrative obligations.

8.    Each of Pledgor's arguments is utterly and completely without merit and the Motion should be denied.

## **BACKGROUND**

9.    Debtor is the owner of the real property located at 286 Rider Avenue, Bronx, New York ("**Property**"), which it purchased on or around September 19, 2019. To facilitate its purchase of the Property, Debtor obtained the Loan in the original principal amount of $8,000,000.00 from Lender. The Loan is evidenced by a Promissory Note dated as of September 19, 2019 ("**Note**"), as amended by the First Amendment to Promissory Note ("**Amendment**") dated as of September 18, 2020

(collectively with Loan and Note, "**Loan Agreement**"). A copy of the Note and the Amendment are attached to the Harlev Decl. as Exhibits C and D, respectively.

10.    Contemporaneously with the execution of the Note, Debtor granted Lender a mortgage and security interest in the Property. The mortgage dated September 19, 2019, made by and between Debtor and Lender in the principal amount of the Loan was recorded with the Office of the City Register for the City of New York on September 30, 2019, under CRFN 201900315617 ("**Mortgage**") against the property located at 286 Rider Avenue, Bronx, New York. A copy of the Mortgage is attached to the Harlev Decl. as Exhibit E.

11.    Contemporaneously with the execution of the Note and Mortgage, Debtor and Pledgor also executed a Document Re-Execution Agreement ("**Document Re-Execution Agreement**"). A copy of the Document Re-Execution Agreement is attached to the Harlev Decl. as Exhibit F. The Debtor also provided the Lender with the Certificate for Limited Liability Company Interests in 286 Rider Ave Acquisition LLC, dated September 17, 2019, signed by Toby Moskovits as authorized signatory, wherein the Debtor certified that 286 Rider Ave Development LLC was the sole owner of 100% of the limited liability company interests in the Debtor ("**Certificate**"). Attached to the Certificate was the Assignment of Interest in blank, also executed by Toby Moskovits on behalf of the Pledgor, whereby the Pledgor, as assignor, "irrevocably constitutes and appoints Transferee and its authorized officers, as attorney-in-fact, to transfer the same on the books and records of the Company, with full power of substitution in the premises" ("**Assignment of Interest**"). The

Certificate and the Assignment of Interest are attached to the Harlev Decl. as Exhibit G.

12.    Contemporaneously with the execution of the Note and Mortgage, Pledgor, then the managing member of Debtor, pledged 100% of its membership interests in Debtor to Lender in order to secure repayment of the Loan. *See* Harlev Decl. Ex. B.

13.    The Note, Loan Agreement, Pledge, Mortgage, Certificate, Assignment of Interest, Document Re-Execution Agreement, Amendment, and all other documents evidencing or securing the Loan including the "Written Consent" as defined below, shall hereinafter collectively be referred to as "**Loan Documents**."

14.    As part of the Loan Documents, Pledgor and Debtor provided a Written Consent in Lieu of a Meeting dated as of September 19, 2019 ("**Written Consent**"). The Written Consent at page 2 states:

> RESOLVED, that the Sole Member is authorized to execute and deliver to Lender the Pledge;
>
> RESOLVED, that Toby Moskovits (the "Authorized Signatory") be, and hereby is, authorized to execute and deliver on behalf of the Borrower and the Sole Member all agreements and collateral documents, including, without limitation, the Loan Documents, Membership Interest Pledge Agreement and any security agreements with any such changes as the Authorized Signatory shall deem necessary or appropriate to effectuate the Loan, the execution of each of the same with any such changes thereto to be conclusive evidence of the approval of such changes by the members as if specifically approved in these resolutions; and
>
> RESOLVED, that the Authorized Signatory, be, and hereby is, authorized and directed to execute and deliver on behalf of the Borrower and the Sole Member any and all

> such agreements, instruments and other documents, to pay
> all such amounts, costs, fees and expenses and to take all
> such further action as may be required or appropriate,
> under the provisions of the Loan, as such officer, deems
> necessary or appropriate to effectuate the intent and
> purposes of the foregoing resolutions;....

The Written Consent is attached hereto as Exhibit H to the Harley Decl. Toby
Moskovits signed the Loan Documents and the Written Consent as she was
authorized to do.

15.     Debtor failed to repay the Loan on the original maturity date of
September 18, 2020, and on the same date, entered into the Amendment, which
extended the maturity date of the Loan to February 1, 2021, with options for two
possible one-month extensions. *See* Harley Decl. Ex. D.

16.     The Amendment is signed by Toby Moskovits on behalf of Debtor and by
Toby Moskovits and Yechial Michael Lichtenstein as Guarantors. *Id.*

17.     As is standard when a lender grants a borrower a reprieve in connection
with a defaulted loan, the borrower and the guarantors ratify all the loan documents,
acknowledge that that the amounts in default are due and owing and that the amount
owed is due without offset, claim, defense, counterclaim or right of recoupment, and
release the lender on account of any conduct or action that preceded the loan
amendment, which is precisely what Debtor did here.

18.     In the Amendment, Debtor made the following representations:

> <u>Section 3(c)</u>. As of the effective date hereof, [Debtor] is
> legally, validly and enforceably indebted to the Lender
> under the Note in the principal amount of $8,000,000.00
> which is due without offset, claim, defense, counterclaim or
> right of recoupment.

Section 3(d). There is no pending or threatened (in writing) action or proceeding affecting the [Debtor] before any court, governmental agency or arbiter, which may materially and adversely affect the financial condition or operations or prospects of the [Debtor] or which purports to affect the legality, validity or enforceability of this Amendment or the Note, as amended hereby.

Harlev Decl. Ex. D at 3

19.    Debtor also affirmatively released the Lender.

Section 10. Release. [Debtor] hereby shall forever release, discharge and acquit Lender, its past, present and future successors, assigns, predecessors, administrators and affiliates, and each of their respective officers, directors, employees, agents, affiliates, representatives, parents, divisions, subsidiaries and attorneys (each, a "Lender Party" and collectively the "Lender Parties") from and against any and all claims, demands, causes of action, suits, debts, obligations, promises, costs, expenses, damages and liabilities, and irrevocably waive and relinquish any and all rights of setoff, counterclaims and defenses, whether known or unknown, contingent or absolute, liquidated or unliquidated or otherwise, arising from or related to any act or omission of any Lender Party with respect to or in connection with the Note or obligations evidenced by the Note and any notices, conversations, negotiations, disputes or litigation regarding any of the foregoing occurring prior to the date of this Amendment.

Harlev Decl. Ex. D at 4.

20.    On January 3, 2021, Debtor exercised its right to extend the maturity date of the Loan to March 1, 2021. The Extension Notice, dated January 3, 2021 is attached to the Harlev Decl. as Exhibit I ("**Extension Notice**"). The Extension Notice reconfirmed the representations in the Amended Note: "This letter shall serve as the Extension Notice pursuant to the **FIRST AMENDMENT TO PROMISSORY NOTE** dated September 18, 2020" (emphasis in original).

21.    Lender provided the Debtor with the option for a second extension, provided that the Debtor met certain conditions. Debtor failed to meet the agreed-upon conditions for a second extension, and the Loan matured on March 1, 2021.

22.    By letter dated March 2, 2021, Lender advised Debtor that the Loan had matured on March 1, 2021, demanded immediate payment of all amounts due under the Loan, which totaled $8,207,680.65 as of that date, and reserved all its rights ("**March 2021 Default Letter**"). This letter is attached to the Harlev Decl. as Exhibit J.

23.    On April 27, 2021, the Lender completed the Assignment of Interest by inserting its name as the "Transferee" and dating the document April 27, 2021 (*see* Harlev Decl. Ex. G), and by letter of the same date, advised Debtor and the Pledgor that Debtor's continued failure to pay the amounts due under the Loan constituted an event of default under the Loan documents, allowing Lender to exercise its rights under the Pledge. Accordingly, Lender advised Debtor and Pledgor that it had assigned, transferred, and registered, as applicable, all membership and equity interest of Debtor to and in the name of Lender as if Lender were the absolute owner ("**April 2021 Pledge Exercise Notification**"). The April 2021 Pledge Exercise Notification also demanded the immediate turnover of all books and records of the Debtor. This letter is attached to the Harlev Decl. as Exhibit K.

24.    On June 14, 2021, Lender appointed 286 Rider Ave Lender LLC as managing member of Debtor by entering into an assignment and assumption

agreement between Debtor and Lender ("**Assignment**"). The Assignment is attached to the Harlev Decl. as Exhibit L.

25.    Lender reiterated the contents of the April 2021 Pledge Exercise Notification in a second notice, dated July 14, 2021, and made a second demand for the books and records of the Debtor. This letter is attached to the Harlev Decl. as Exhibit M.

## A.    The Pledge Grants Lender the Absolute Right to Control Debtor and Manage the Debtor Upon Default

26.    The Pledge provides, among other things, that upon an Event of Default under the Pledge, Lender is entitled to have the Membership Interests registered in its name and to exercise absolute and total control over Debtor. The Pledge provides in pertinent part:

> If an Event of Default shall occur and be continuing, then all Membership Interests at Lender's option, may be registered in the name of Lender or its nominee (if not already so registered), and Lender or its nominee may thereafter exercise (i) all voting and all equity, membership and other rights pertaining to the Membership Interests and (ii) any and all rights of conversion, exchange, and subscription and any other rights, privileges or options pertaining to such Membership Interests as if it were the absolute owner thereof (including, without limitation, the right to exchange at its discretion any and all of the Membership Interests upon the merger, consolidation, reorganization, recapitalization or other fundamental change in the organizational structure of any member or upon the exercise by Pledgor or Lender of any right, privilege or option pertaining to such Membership Interests, and in connection therewith, the right to deposit and deliver any and all of the Membership Interests with any committee, depositary, transfer agent, registrar or other designated agency upon such terms and conditions as it may determine), all without liability except to account for property actually received by it, but Lender shall have

> no duty to exercise any such right, privilege or option and
> shall not be responsible for any failure to do so or delay in
> so doing.

Harlev Decl. Ex. B, at 2–3, § 5(a).

27.    Moreover, the Pledge provides expressly that Lender would be treated

as "absolute owner" upon an Event of Default under the Pledge. *Id*.

28.    Furthermore, the Pledge could not be waived or modified by Pledgor,

except in a signed writing; inaction by Pledgor could not be deemed a waiver:

> None of the terms or provisions of this Agreement may be
> waived, amended, or otherwise modified except by a
> written instrument executed by the party against which
> enforcement of such waiver, amendment, or modification is
> sought.

Harlev Decl. Ex. B at 10, § 20.

## B.    <u>Pledgor Defaulted on the Note and the Pledge</u>

29.    The Note provides that non-payment is an Event of Default. Harlev

Decl. Ex. C at 3. There is no question that Pledgor has not repaid the Note and that

a balance of at least $8,000,000 remains unpaid; in fact, Pledgor has never disputed

that an Event of Default under the Note has occurred.

30.    To the contrary, the Amendment expressly acknowledges the validity of

the debt and waives any defenses to repayment of the $8,000,000 Loan. Specifically,

the Amendment, provides, in relevant part, as follows:

> As of [September 18, 2020], [Debtor] is legally, validly and
> enforceably indebted to the Lender under the Note in the
> principal amount of $8,000,000.00 which is due without
> offset, claim, defense, counterclaim or right of recoupment.

Harlev Decl. Ex. D, at ¶ 3(c).

31.    Debtor has made no payment on the $8,000,000 principal amount of the Note since it executed the Amendment. Accordingly, the Loan, as extended, matured on March 1, 2021.

32.    In addition to the payment default, Lender recently discovered that Pledgor also caused Debtor to be in default of the Loan Documents' prohibition against further encumbering the Debtor and Property. On the very day the initial Loan Documents were executed, the Debtor's principals, Moskovits and Lichtenstein, executed a confession of judgment ("**Confession of Judgment**") on behalf of the Debtor pursuant to which Debtor guaranteed repayment of $1 million borrowed by an affiliate of Pledgor, 286 Rider Ave Holdings LLC from the former owner of the Property. Moskovits and Lichtenstein were also obligors of the debt underlying the Confession of Judgment. A copy of the Confession of Judgment is attached to the Harlev Decl. as Exhibit N.

33.    The $1 million indebtedness has not been repaid. On December 17, 2020, a judgment in the amount of $1.2 million ("**Judgment**") was entered against the Debtor in the Supreme Court State of New York. A copy of the Judgment is attached to the Harlev Decl. as Exhibit O.

34.    Both the Debtor's execution of the Confession of Judgment and the entry of Judgment constitute defaults under the Loan Documents. The Note specifically provides that the failure to comply with covenants of other Loan Documents as well as defaults in payment obligation to third parties constitute defaults under the Note:

> **Other Defaults**. Borrower fails to comply with or to perform, beyond any applicable grace or cure periods, any

other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Guarantor, including, without limitation, the Mortgage.

**Default In Favor of Third Parties**. Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related.

Harlev Decl. Ex. C at 3.

35.     The Mortgage in turn provides:

**Restrictions on Leasing and Further Encumbrances**. The Mortgagor shall not, without first obtaining the prior consent of the Mortgagee in each such instance:

(a) mortgage, convey or grant a lien subordinate to this Mortgage on the Mortgaged Property, or on any or all of the Real Property, Improvements, Personal Property or Appurtenances of which it is comprised except to the Mortgagee;

. . .

(c) further pledge, transfer, mortgage or otherwise encumber or assign the Leases and Rents except to the Mortgagee;

Harlev Decl. Ex. E at 14, § 1.12.

**Indebtedness and Liens**. (1) Except for trade debt incurred in the normal course of business; unsecured short-term indebtedness in connection with pre-development work approved in advance by Lender; and Debt to Mortgagee, create, incur or assume indebtedness for borrowed money, including capital leases or (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Mortgagor's assets.

Harlev Decl. Ex. E at 33–34, § 3.1.

36.    As a result of the various defaults and maturity of the Loan, Lender notified the Debtor and the Pledgor that it had exercised its rights under the Pledge. These rights included Lender or its nominee exercising all voting and all equity, membership, and other rights pertaining to the Membership Interests including appointing Rider Lender as Managing Member, Lee Buchwald as the Independent Manager, and commencing this Bankruptcy Case.

### C.    The Lender's Rights under the Pledge Were Validly Exercised and the Bankruptcy Case was Properly Commenced

37.    Pledgor contends that the Pledge that transferred management of Debtor to the Lender, including the right to commence a bankruptcy case, was invalid because the Lender had to foreclose on the Pledge under Article 9 of the Uniform Commercial Code and because the Pledge was not validity executed. Pledgor is wrong on both counts.

38.    Section 301(a) of the Bankruptcy Code provides, in pertinent part that:

> A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter.

39.    As discussed above, Debtor filed its Petition with this Court on July 15, 2021. Attached to the Petition is the Written Consent: "Resolution to File Chapter 11 Reorganization by the Manager of 286 Ride Ave Acquisition" dated July 15, 2021 and signed by Lee E. Buchwald as the Manager. (Exhibit A to the Harlev Decl.) Also attached to the Petition is a "Declaration pursuant to Local Rule 1007-2" dated July

15, 2021 and signed by Lee E. Buchwald as the Manager ("**1007 Declaration**"). A copy of the 1007 Declaration is attached to the Harlev Decl. as Exhibit P.

40.    The Written Consent authorizes the filing of the Petition by Debtor. As the United States Supreme Court has stated, "the initiation of [bankruptcy] proceedings, like the run of corporate activities, is left to the corporation itself, i.e. to those who have the power of management." *Price v. Gurney*, 324 U.S. 100, 104 (1945). The determination of who has the power of management is governed by state law. *Id*. at 106–07; *see also, In re Pasta Bar by Scotto II, LLC*, No. 15-12766 (MG), 2015 Bankr. LEXIS 3941, at *7 (Bankr. S.D.N.Y. Nov. 19, 2015), citing *In re Quad-C Funding LLC*, 496 B.R. 135, 141 (Bankr. S.D.N.Y. 2013) (citations omitted) (stating "[T]he Bankruptcy Code does not establish express rules relating to authority to file a voluntary petition for relief. In order to determine authority to file, bankruptcy courts initially look to the state law governing the entity").

41.    In the context of a New York limited liability company, such as Debtor, the power of management rests in the members of the company. N.Y. Ltd. Liab. Co. Law § 401 (Consol. 2004). Debtor is a limited liability company formed under the laws of New York, the New York Limited Liability Company Law ("**NYLLCL**"). Attached to the Harlev Decl. as Exhibit Q are true and correct copies of the Articles of Organization of 286 Rider Ave Acquisition LLC and the Amended and Restated Limited Liability Company Operating Agreement of 286 Rider Ave Acquisition LLC.

42.    Under the Loan Documents, upon default and a demand by Lender, the Debtor was obligated to deem and treat Lender as the member of Debtor and to afford

17

Lender all of the rights, powers, and privileges appertaining to such membership in Debtor, including but not limited to, all voting rights of Debtor. Section 5(a) of the Pledge is unambiguous: "If an Event of Default shall occur and be continuing, then all Membership Interests at Lender's option, may be registered in the name of Lender or its nominee (if not already so registered), and Lender or its nominee may thereafter exercise (i) all voting and all equity, membership and other rights pertaining to the Membership Interests and (ii) any and all rights of conversion, exchange, and subscription and any other rights, privileges or options pertaining to such Membership Interests as if it were the absolute owner thereof…" Harlev Decl. Ex. B at 2–3, § 5(a).

43.     In furtherance of this provision, in the April 2021 Pledge Exercise Notification, Lender told Pledgor and Debtor that "[p]ursuant to Section 5(a) of the Pledge…Lender is exercising Lender's right to assign, transfer and register, as applicable, all membership and equity interest of the [Debtor] to and in the name of Lender as if Lender was the absolute owner thereof." Harlev Decl. Ex. K at p.2. Further Lender directed Debtor "to register Lender as the record owner of the [Debtor], effective immediately, update its corporate record books to reflect the forgoing, and notify Lender upon completion." *Id.* Accordingly the Pledge was validly exercised.

### D.     The Lender Was Under No Obligation to Foreclose on the Pledge In order to Exercise Rights

44.     Pledgor's argument that Lender was obligated to foreclose on the Pledge is patently wrong and without any legal support. Section 9–601(a) of the Uniform

Commercial Code applicable in New York provides "[a]fter default, a secured party **has the rights provided in this part and**, except as otherwise provided in Section 9–602, **those provided by agreement of the parties. . ."** (emphasis supplied). The Pledge at issue here expressly provides by agreement that foreclosure is not required. Sophisticated commercial parties, especially knowledgeable in the area of real estate finance, negotiated the Loan and the transaction including the Pledge.

45.     Lender had a number of options available to it upon the Debtor's default and chose to exercise the path and process it believed was in its best interest. It could have chosen to foreclose, but it did not have to.

46.     Taking over management and then putting a debtor into bankruptcy may be a path that is less often taken by a Lender; however, it is authorized by the negotiated Pledge and it is part of a lender's toolbox when a lender negotiates for a pledge. Pledgor cites no cases to the contrary or that support its argument. The reason for Pledgor's lack of case law is that the law is to the contrary and does not support Pledgor's position.

47.     The cases are clear that broad pledge agreements, like the one at issue here, will be enforced to allow an exercising lender to authorize the commencement of a bankruptcy case without the necessity of a foreclosure action. In *In re Eastern Bancorporation*, 23 B.R. 474, 478 (Bankr. E.D. Pa. 1982), the Bankruptcy Court of the Eastern District of Pennsylvania held that the debtor's Chapter 11 petition, authorized by the lender after it acceded to the debtor's membership interest through the exercise of a pledge, was properly authorized. The Court specifically noted that

because the pledge agreement allowed the lender upon default of the underlying loans to exercise all voting and corporate rights of the debtor, the Lender had the authority to cause the debtor to commence a bankruptcy case.

48.     The language in the pledge agreement in *In re Eastern Bancorporation* is similar to the unrestricted language in the Pledge Agreement at issue in this action, which allows the exercise of all voting after a default: "If an Event of Default shall occur and be continuing, then all Membership Interests at Lender's option, may be registered in the name of Lender or its nominee (if not already so registered), and Lender or its nominee may thereafter exercise (i) all voting and all equity, membership and other rights pertaining to the Membership Interests . . . ." Harlev Decl. Ex. B, at 2–3, § 5(a). Given the broad language in the Pledge Agreement, there can be no doubt that Lender, like the lender in *In re Eastern Bancorporation*, had the requisite authority to authorize the Debtor to commence this Bankruptcy Case.

49.     Similarly, in *In re Riverair LLC*, where after the lender had exercised its rights under a pledge, the debtor filed for bankruptcy, Judge Bernstein had no hesitation, on the lender's motion to dismiss the bankruptcy due to the lack of corporate authority of the members of the debtor, in dismissing the bankruptcy filing as lacking in corporate authority. Judge Bernstein ruled from the bench that "the expressed terms of the Pledge Agreement entitled to [the lender] to become the absolute owner of Riverair without the need to foreclose and hence foreclosure was unnecessary." *In re Riverair LLC*, Case No. 04-17586-smb (Bankr. S.D.N.Y. 2005), hearing transcript dated February 3, 2005, p. 24, ln. 19–23, citing *In re Domestic Fuel*

*Corp.*, 71 B.R. 734, 738 (Bankr. S.D.N.Y. 1987) (dicta). The February 3, 2005 *Riverair* hearing transcript is attached to the Declaration of Latisha Thompson in support of Be-Aviv 286 Rider LLC's Response to Motion by 286 Rider Ave Development LLC to Dismiss, dated August 19, 2021 ("Thompson Decl.") as Exhibit J.

50.    In *Riverair*, in denying the former managing members' motion for reconsideration, Judge Bernstein further noted that upon default and upon the acting sole managing member [the lender] exercising its rights under the pledge agreement, the acting sole managing member [lender] "acquired all the right to control the destiny of [debtor] as if it was the sole managing member." *In re Riverair LLC*, Case No. 04-17586-smb (Bankr. S.D.N.Y. 2005), hearing transcript dated February 15, 2005, p. 25, ln. 5–7. The February 15, 2005 *Riverair* hearing transcript is attached to the Thompson Decl. as Exhibit K.

51.    There is nothing about the facts of this case that should cause this Court to hold differently than the Courts *In re Riverair* and *In re Eastern Bancorporation* and Pledgor offers nothing to support its argument.

### E.    The Pledge Agreement is Valid

52.    In its last gasp attack on Lender's proper exercise of the Pledge, Pledgor basically makes the classic plea of the hypocrite, who Abraham Lincoln defined as the man who murdered his parents then pleaded for mercy on the grounds that he was an orphan. Pledgor argues that the Pledge and other Loan Documents are invalid because Ms. Moskovits, who executed the Pledge and is identified in the Pledge as the Pledgor and sole owner of 100% of the Membership Interests in the Debtor, was not the proper signatory and that Pledgor never executed a consent authorizing Ms.

Moskovits to execute documents on behalf of the Pledgor is just, to put it mildly, fiction.

53.     The Written Consent attached to the Loan Agreement, executed by the Pledgor, authorizes Ms. Moskovits, on behalf of the Pledgor, to execute the Pledge Agreement:

> RESOLVED, that Toby Moskovits (the "Authorized Signatory") be, and hereby is, authorized to execute and deliver on behalf of the [Debtor] and the Sole Member [Pledgor] all agreements and collateral documents, including, without limitation, the Loan Documents, Membership Interest Pledge Agreement and any security agreements with any such changes as the Authorized Signatory shall deem necessary or appropriate to effectuate the Loan, the execution of each of the same with any such changes thereto to be conclusive evidence of the approval of such changes by the members as if specifically approved in these resolutions.

Harlev Decl. Ex. H, at p.2.

54.     Because Ms. Moskovits was authorized to execute and deliver the pledge by corporate resolution, Pledgor's argument that her execution was unauthorized necessarily fails. *See UBS AG, Stamford Branch v. HealthSouth Corp.*, 645 F. Supp. 2d 135, 144 (S.D.N.Y. 2008) (upholding the validity of agreements signed pursuant to board resolutions) ("First, there is no question that the Board resolutions in this case conferred express actual authority on Brown to execute the Credit Agreement. . . . "). Even if that were not the case, the various representations about the validity of the agreements made by Pledgor, the Debtor, and its principals, would preclude the argument that an improper signatory invalidated the agreements and the subsequent obligation to pay. *See id*. at 143 (precluding a party from disavowing its obligations

to repay a monetary instrument on the basis that its agents authority was suspect because of the contradictory representations made throughout the corporate agreements deeming the agreements as valid); *see also Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320 (1959).

55.    Faced with a similar argument in *Riverair*, Judge Bernstein noted the doctrine of prevention under contract law: "A party to a contract that prevents a condition to his performance cannot insist the condition must occur before he becomes obligated to perform." Thompson Decl. Ex. J, at p. 23, ln. 5–10 (citing *Pereira v. Nelson (In re Trace Int'l Holdings)*, 284 B.R. 32, 36 (Bankr. S.D.N.Y. 2002)).

56.    Even if, there were any defect or problem with the Pledge, as is typical in any commercial loan transaction, the Debtor had executed the Document Re-Execution Agreement, whereby the Debtor, the Pledgor, and the Guarantors covenanted and agreed, among other things, that they would "re-execute any document or instrument signed in connection with the Loan, or will execute any document or instrument that should have been signed at or before the closing of the loan, or which was incorrectly drafted and/or signed." The Re-Execution Agreement is attached to the Declaration as Exhibit F. Consequently the Debtor and the Pledgor would be obligated today to correct any defect in the Loan Documents.

57.    Last, Respondent also notes the ancient and apt legal doctrine: *ex turpi causa non oritur actio,* which, applied in this context, means that reliance on one's own misconduct and misdeeds has never and will never be grounds for relief from liability.

**F.      Movant's Claim that this is a Bad Faith Filing and that the
Bankruptcy Should be Dismissed and its Claim that this
Court Should Abstain From this Case, are Utterly without
Merit**

58.      "The standard in this Circuit [for dismissal] is that a bankruptcy

petition will be dismissed if **both** objective futility of the reorganization process **and**

subjective bad faith in filing the petition are found." *In re Kingston Square Assocs,*

214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997) (emphasis in original, citation omitted).

Dismissal on the grounds of lack of good faith "is to be used sparingly to avoid denying

bankruptcy relief to statutorily eligible debtors except in extraordinary

circumstances." *In re Century/ML Cable Venture*, 294 B.R. 9, 34 (Bankr. S.D.N.Y.

2003). The determination of whether a filing is made in good faith requires a "full

examination of all the circumstances of the case" and is a "highly factual

determination." *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113

F.3d 1304, 1312 (2d Cir. 1997). The movant has the initial burden to allege a bad

faith-filing, which the responding party can rebut. *Fraternal Composite Servs. v.

Karczewski*, 315 B.R. 253, 256 (N.D.N.Y. 2004).

59.      Putting aside that Pledgor fails even minimally to satisfy its burden of

alleging a bad faith-filing, a full examination of all the circumstances of this case

clearly renders the poorly pleaded arguments as invalid for a multitude of reasons.

60.      Movant makes what appears to be the two-party dispute argument.

This, as has been discussed, fails because of the Judgment, the tax claims, and the

likely other vendor and professional fee claims. Nevertheless, in support of the two-

party dispute argument, Movant attempts to conjure all kinds of state court activity

in order to convince the Court that this action belongs in state court. The problem with this argument is that while there is an action pending in state court, it involves no creditors of this Estate. It involves other properties that are not assets of this Estate, and the complaint in the action has not even been served on all the defendants. Bottom line, virtually nothing is going on in state court that is relevant to this Bankruptcy Case.

61.    Also, the argument that this Bankruptcy Case has been filed by the Lender "as a litigation tactic," is bizarre. The Lender has not initiated any state court collection litigation against the Debtor. Rather, it was the Debtor and affiliates of the Pledgor which engaged in improper litigation tactics. The State Court Action was commenced ***against*** the Lender only after the Debtor defaulted on the Loan. It makes claims against the Lender that were expressly released by the Debtor in the Amendment. The State Court litigation, which is obviously meritless, had nothing to do with the decision to commence the Bankruptcy Case. For the sake of the record, this is what is actually happening.[3]

62.    On March 16, 2021, shortly after the Debtor defaulted on payment of the Loan but prior to the commencement of the Bankruptcy Case, Debtor along with several of its affiliates ("**State Court Plaintiffs**") instituted an action in the Supreme Court of New York State, Kings, County, entitled *Heritage 875 4th Avenue LLC, et al. v. Aviv Arava Management, et al.*, Index No. 506131/2021, in the New York

---

[3] Post Petition, Lender has commenced an action against the Guarantors in New York State Supreme Court. Obviously, this was not a factor in the determination to commence the Bankruptcy Case, since it took place after the Bankruptcy Case was commenced, and is not stayed by the Bankruptcy Case.

Supreme Court, Kings County ("**State Court Action**"), against Lender, its principals, and several of Lender's affiliates ("**State Court Defendants**"). The Pledgor is not a party to the State Court Action, nor is it a creditor of the Debtor. Thompson Decl. ¶ 2.

63.    In that action, the Debtor and its affiliates claim that Lender reneged on obligations to fund additional loans to Debtor and its affiliates. *Id.* at ¶ 3. Putting aside that none of the State Court Plaintiffs' claims concerning an alleged promise to loan additional funds in the future is reflected in a writing signed by Lender and that they are expressly refuted by the loan documents themselves, as previously stated, the Debtor and its prior ownership expressly waived any defenses to repayment of the $8,000,000 Loan and released Lender and its affiliates from any claims related to the Loan and the Parties' relationship. See pp. 9–10, *supra*.

64.    Notwithstanding the clear language of the Loan Documents, the State Court Plaintiffs pressed their claims against some, but not all of the State Court Defendants. Thompson Decl. ¶ 3. Between late March and Mid-April of 2021, the Debtor purported to serve its complaint in the state action on three of the six named State Court Defendants. *Id.* The remaining State Court Defendants have not been served. *Id.*

65.    In early April, before Lender's time to answer the complaint had expired, Lender's counsel, Morrison Cohen LLP, requested an extension for its response to the Complaint. *Id.* at ¶ 4. Debtor's then-counsel agreed. *Id.* Counsel for the parties thereafter reached an agreement on a briefing schedule, which was later

memorialized in a stipulation ("**Stipulation**"). *Id.* A copy of the Stipulation is annexed to the Thompson Decl. as Exhibit E.

66.    In breach of the parties' agreement, the day after receiving the Stipulation, State Court Plaintiffs filed a Motion for Default Judgment against Lender and one of its affiliates. Thompson Decl. ¶ 5.

67.    On May 10, 2021, State Court Defendants filed a motion to transfer venue to New York County because State Court Plaintiffs contractually agreed that the venue for their claims related to the Loan would be in New York County. *Id.* at ¶ 6. A copy of the State Court Defendants' motion to change venue is attached to the Thompson Decl. as Exhibit F.

68.    On May 17, 2021, the State Court Defendants moved by Order to Show Cause for an extension to respond to the Complaint and for sanctions against the State Court Plaintiffs and their Counsel for their frivolous and dishonest conduct in connection with attempting to obtain a default judgment through deceit. Thompson Decl. ¶ 7. A copy of this motion is annexed to the Thompson Decl. as Exhibit G. The Court granted the Order to Show Cause and the determination of this motion is pending and has been stayed by the Bankruptcy Case. Thompson Decl. ¶ 7.

69.    The Court granted State Court Defendants' motion to change venue on June 14, 2021. *Id.* at ¶ 8. In the decision granting the State Court Defendants' Motion to change venue to New York Supreme Court New York County, Justice James examined the validity of the Loan Documents in order to evaluate the validity of the

forum selection clause that State Court Defendants urged to be enforced and opined as follows:

> [State Court Plaintiffs'] contention that such guaranty and other agreements between the parties are permeated by fraud in the inducement by petitioners' alleged intention not to fulfill their promises to continue lending money to respondents is belied by the aforesaid waiver signed by [the] guarantors. Thus, the record at bar does not support, and in fact refutes [State Court Plaintiffs'] allegations that the entire agreement between the parties was permeated by fraud.

*Aviv Arava Management, et al. v. Heritage 875 4th Avenue LLC, et al.*, Index No. 653088/2021 (Sup. Ct. N.Y. Cty. 2021), NYSCEF Doc. No. 28, attached to the Thompson Decl. as Exhibit H, at p. 5.

70.    The action was thereafter re-assigned to the New York County Commercial Division, where it is pending before Justice Schecter. *Heritage 875 4th Avenue LLC, et al. v. Aviv Arava Management, et al.*, Index No. 452010/2021 (Sup. Ct. N.Y. Cty. 2021). Thompson Decl. ¶ 10. No discovery has been undertaken and Justice Schecter has taken no substantive action in the case. *Id.* at ¶ 11.

71.    In fact, on August 2, 2021, the parties to the State Court litigation jointly wrote to Justice Schecter and requested that the State Court take no further action in the matter, so that this Court may have an opportunity to rule on Debtor's authority to commence this Bankruptcy Case and any challenges raised by Debtor's former ownership. *Id.* at ¶ 12. A copy of the August 2, 2021 letter is attached to the Thompson Decl. as Exhibit I.

72.    Consequently, as is clear, other than some preliminary procedural skirmishes, absolutely nothing has happened in the State Court Action and neither dismissal nor abstention are warranted.[4]

73.    Just as the actual facts do not support Movant's argument, the cases it cites are equally unpersuasive and actually support the decision to file bankruptcy. Here Debtor is "experiencing a level of financial difficulty that, if it did not file at that time, it would likely need to file in the future" because the Debtor has never made a single payment on an $8,000,000 principal amount of the Note which matured on March 1, 2021. *Fraternal Composite Servs.*, 315 B.R. at 256–57 (affirming dismissal of Chapter 11 petition because it was filed prematurely by a completely solvent, profit-earning corporation which was current on its payment obligations, and was done solely in anticipation of a "worst possible scenario" where a state court judgment would affect its ability to pay debt). The amount actually due as of the date of the filing of the petition is in excess of $8.75 million. While in *Fraternal Composite Servs.*, the debtor filed a bankruptcy petition in anticipation of a mere possibility of a judgment, the worst possible scenario has already taken place as Debtor here has defaulted on an $8,000,000 loan.

74.    The second case cited for support by Pledgor actually resulted in a denial of the motion to dismiss the bankruptcy petition because the Court found that Debtor had demonstrated an intent to reorganize and even if the filing was commenced solely

---

[4] As previously noted, Lender joins in the Debtor's Response to the Motion and rather than repeating legal argument relating to dismissal and abstention, adopts the Debtor's argument as if set forth herein.

to prevent a purchaser from buying real property pursuant to a contract, where "the mortgagee supports the filing," the filing is not made in bad faith. *See In re UNED Assocs. LLC*, No. 07-10412 (ALG), 2007 Bankr. LEXIS 1467, at *10 (Bankr. S.D.N.Y. Apr. 20, 2007).

75.     And the third case cited by Plaintiff is completely inapposite as the Chapter 11 filing there occurred on the eve of an enforcement of a judgment when the filing party was "otherwise losing badly on numerous fronts in the state court litigation." *In re Bridge to Life, Inc.*, 330 B.R. 351, 356 (Bankr. E.D.N.Y. 2005), *aff'd sub nom by Bridge to Life, Inc. v. Lucadamo (In re Bridge to Life, Inc.)*, No. 05-19154 (JF), 2006 U.S. Dist. LEXIS 29652 (E.D.N.Y. May 16, 2006). Given the "highly factual determination," of whether a filing is made in good faith, *C-TC 9th Ave. P'ship,* 113 F.3d at 1312, the decision is not applicable to the case here as the state court has issued only a single decision and it has been decided in State Court Defendants' favor.

### G.     Pledgor Misunderstands the Law and Application of a Debtor's Equity of Redemption in Bankruptcy Cases. Nothing Lender has done in any Manner Clogs or Affects the Debtor's <u>Equity of Redemption.</u>

76.     Pledgor repeatedly asserts that the Debtor's equity of redemption has been impaired by the bankruptcy filing. Pledgor cites no case law or statutory support that would suggest that the filing of a bankruptcy case destroys Debtor's right of redemption. To the contrary, the case law is abundantly clear that "if a petition is filed while the redemption right is unexpired, the equitable right of redemption becomes a part of the bankruptcy estate." *In re Haynes*, 283 B.R. 147, 155 (Bankr.

S.D.N.Y. 2002) (citing *Canney v. Merchants Bank (In re Frazer)*, 284 F.3d 362, 372 (2d Cir. 2002)); *see also In re Brown*, 734 F.2d 119, 123 (2d Cir. 1984) (explaining that the phrase "all legal or equitable interests of the debtor in property" used in section 541 of the Bankruptcy Code has been given the broadest possible interpretation).

77.    The reason for this is that under section 541(a)(1) of the Bankruptcy Code, the filing of a petition in bankruptcy creates an estate consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." An equity of redemption comes within the scope of "all legal or equitable interests of the debtor in property" and, becomes property of the estate pursuant to section 541(a)(1). *See* 3 L. Distressed Real Est. § 34:16, *Estate and property of estate: §§ 541–543— Property of estate—Real property interests—Miscellaneous real property interests of estate.* Property interests are created and defined by state law. *See In re Augusta Ctr., LLC*, 491 B.R. 298, 303 (Bankr. S.D. Ga. 2013) (*quoting Butner v. U.S.*, 440 U.S. 48, 55 (1979)) ("[P]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.").

78.    In New York, this means that "if the Debtor had an equitable ownership interest and right of redemption as of the Petition Date, then those rights became part of his bankruptcy estate." *Oligbo v. Louis (In re Oligbo)*, 328 B.R. 619, 637 (Bankr. E.D.N.Y. 2005) (citations omitted). Pledgor has given no reason to reach a different conclusion here.

79.    The difference in how the equity of redemption is treated in a foreclosure

and in a bankruptcy stems from the fundamental differences in the processes. In a

foreclosure, the borrower can redeem its property until the hammer falls at the

foreclosure sale by paying the lender 100% of what it owes the lender. In that case

the holders of the debtor's equity retain their equity interests. The foreclosure then

ends with all creditors of the debtor still in place and still owed whatever they might

have been owed prior to the foreclosure. Because the lender's debt has been satisfied,

the claims of junior creditors are not foreclosed and they remain due and owing

obligations of the borrower.

80.    Bankruptcy is a collectivist process. All assets of the Debtor are

marshalled for the benefit of all creditors and distributed in accordance with the

priority scheme of the bankruptcy code either from the proceeds of a sale of the

property or under a plan of reorganization. The case law is clear that in connection

with real property, the equity of redemption is just one of the marshalled assets to be

used to satisfy claims of creditors. Equity cannot receive any benefit unless the claims

of all creditors are paid. If it were otherwise, and the Debtor's equity holders were

able to redeem the property by simply paying of a single creditor's debt—the

lender's—so that the property would then vest in equity, creditors would be deprived

of a source of repayment of their debts while equity would be made whole. This would

plainly violate the absolute priority rule and would be impermissible.

81.    Pledgor's final attempt to invalidate the bankruptcy filing by claiming

that a loan collateralized by both property and an equity pledge is invalid, has no

support in law, and if accepted by this Court, WOULD turn the commercial real estate market on its head, invalidating billions of dollars of security. Pledgor fails to cite any case law holding that a dual collateral loan clogs the equity of redemption or case law that holds that the exercise of the pledge should lead to a dismissal of the bankruptcy petition.

82.     Pledgor's reliance on *HH Mark Twain LP v. Acres Capital Servicing LLC*, No. 656280/2019, 2020 N.Y. Misc. LEXIS 2515 (Sup. Ct. N.Y. Cty. June 2, 2020), is misplaced. As Pledgor recognizes, that case did not hold that dual collateral loans are impermissible. Nor did it involve a bankruptcy. In that case, the borrowers defaulted on a dual collateral loan secured by both the mortgage on a real property and a pledge of equity interest in the borrower entities, who were the owners of the real property. The lender sought to exercise its right to conduct a UCC sale of the equity interests and the borrowers sought a preliminary injunction, which was denied by the court in an earlier decision in 2018. The 2020 decision on a motion to dismiss clarified that the "Court has not ruled on the merits of plaintiffs' clogging claim," and thus the Court was at liberty to and did deny the motion to dismiss in 2020. *Id.*, at *4.

83.     An examination of the 2020 decision shows that it is completely devoid of any reasoning on the merits of the clogging claim and merely recites adages of civil procedure—that a preliminary injunction does not collaterally estop a subsequent ruling on the merits and that on a motion to dismiss, the Court is tasked with affording the pleadings a liberal construction to determine if they fit with any

cognizable legal theory.[5] *HH Mark Twain LP* is inapposite because (1) the properties were sold at a UCC sale and not pursuant to a judicial process and (2) plaintiffs alleged that the conduct of the sale resulted in the potential loss of valuable historic tax credits and an absence of bidders permitted Lender to submit credit bids to acquire control of the properties at issue for allegedly millions of dollars below their actual value, exposing plaintiffs to millions of dollars in deficiency.

84.    The 2018 decision on the preliminary injunction, however, is instructive. In *HH Cincinnati Textile L.P. v. Acres Capital Servicing LLC*, No. 652871/2018, 2018 N.Y. Misc. LEXIS 2472 (Sup. Ct. N.Y. Cty. June 19, 2018), the New York Supreme Court rejected the argument that the UCC sale clogged the right of redemption and denied the injunction:

> Plaintiffs' equitable right of redemption has not been, as they assert, "clogged" by the operative agreements. Plaintiffs, at this very moment, retain a right of redemption under UCC § 9-623, which provides that redemption may occur at any time before a secured party disposes of the collateral at a foreclosure sale. Thus, the UCC provides a right of redemption if Plaintiffs can fulfill their obligations under the applicable agreements. Additionally, there is nothing to prevent Plaintiffs from taking part in the bidding process at the UCC sale.

*Id.*, at *4.

85.    In short, because the Debtor maintains its right of redemption and nothing in the law would invalidate the Lender's commencement of this Bankruptcy case, Pledgor's argument must be rejected.

---

[5] The case settled shortly after the Court's 2020 decision was issued.

### H.    Pledgor's Request for Turnover Simply Makes no Sense

86.    Movant seeks to have this Court order the Lender to turn over the membership interest it holds in the Debtor to Pledgor under 11 U.S.C. § 543. The problem with this request is that the "Membership Interest" is not property of the Debtor's estate. It does not belong to the Debtor. It belonged to the Pledgor, which is not a debtor, and it now belongs to the Lender, which is also not a debtor. Section 543 only applies to the turnover of assets belonging to the estate of a debtor and turnover of those assets to the Debtor. Hence, it is simply inapplicable.

## MEMORANDUM OF LAW

87.    Lender submits that the relevant legal authorities are set forth herein and that the requirement, pursuant to Local Bankruptcy Rule 9013–1, that a separate memorandum of law be filed in support of this Motion, be waived.

## CONCLUSION

88.    For all of the foregoing reasons, it is clear that the Petition was validly authorized and the Bankruptcy Case properly commenced. Therefore Lender respectfully requests that the Motion be denied and that the Court grant Respondent such other and further relief as is just and proper.

Dated: New York, New York
        August 19, 2021

                                MORRISON COHEN LLP


                                By: /s/ Joseph T. Moldovan
                                        Joseph T. Moldovan, Esq.
                                        Latisha Thompson, Esq.

David J. Kozlowski, Esq.
909 Third Avenue
New York, New York 10022
(212) 735-8600

*Attorneys for Be-Aviv 286 Rider LLC*