# EXHIBIT B

## MEMBERSHIP INTEREST PLEDGE AGREEMENT

THIS MEMBERSHIP INTEREST PLEDGE AGREEMENT (the "Pledge") dated as of the 19th day of September, 2019 by **286 RIDER AVE DEVELOPMENT LLC**, a New York limited liability company, having an address at 679 Driggs Avenue, Brooklyn, New York 11211, Attention: Toby Moskovits (the "Pledgor") and **BE-AVIV 286 RIDER LLC,** a Delaware limited liability company having an office at 41 Wooster Street, 2nd Floor, New York, New York 10013 (collectively, with its successors and assigns, the "Lender"). Capitalized terms used herein without definition shall have the meanings given them in that certain Mortgage and Security Agreement by and between Borrower (as hereinafter defined) and Lender of even date herewith (the "Agreement").

### RECITALS

WHEREAS, Borrower has requested Lender to make and Lender has made a loan to Borrower (the "Loan") in the principal amount of $8,000,000.00 to 286 Rider Ave Acquisition LLC, a New York limited liability company (the "Borrower"), evidenced by a Promissory Note, of even date herewith, made by Borrower for the benefit of Lender (the "Note"), and secured by, among other things, the Agreement;

WHEREAS, Pledgor owns one hundred (100%) percent of the limited liability company membership interest of Borrower (the "Membership Interests");

WHEREAS, Pledgor has executed and delivered to Lender the Assignment of the Membership Interests in 286 Rider Ave Acquisition LLC, of even date herewith (the "Assignment");

WHEREAS, in order to secure the payment of the Note, Pledgor has agreed to pledge the Membership Interests to Lender in accordance with the terms and conditions of this Pledge; and

WHEREAS, it is a condition precedent to the obligation of Lender to make the Loan to Borrower under the Note, that Pledgor shall have executed and delivered this Agreement to Lender;

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the mutual receipt and legal sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

SECTION 1. Pledge. To secure the prompt and complete payment of the Note, Pledgor hereby pledges to Lender and grants to Lender, a security interest in: (i) all of Pledgor's right, title and interest in and to the Membership Interests, including, without limitation, Pledgor's right to receive distributions of assets, (ii) all rights, privileges, authority and powers of Pledgor as owner or holder of the Membership Interests, (iii) all interest, dividends, distributions, cash, instruments and other property from time to time received, receivable or otherwise distributed in respect of or in exchange for the Membership Interests, (iv) all proceeds now or hereafter becoming due and payable to Pledgor by the Borrower with respect to the Membership Interests including without limitation, sale proceeds, profits, distributions, asset distributions, all contract rights, general intangibles, claims, powers, privileges, benefits and remedies of Pledgor relating to the foregoing; and (v) all cash or non-cash

proceeds of any of the foregoing (all of the foregoing being referred to collectively as the "Collateral").

SECTION 2.  <u>Perfection of Security Interest</u>.  Pledgor hereby agrees to deliver to Lender all certificates, instruments or other documents evidencing any of the Collateral which may at any time become issuable to Pledgor, and hereby authorizes Lender to record now or hereafter a UCC-1 financing statement with respect to the Collateral.

SECTION 3.  <u>Representations and Warranties</u>.  Pledgor represents and warrants as follows:

(a) Pledgor is the sole record and beneficial owner of, and has good and marketable title to, the Membership Interests free of any and all liens or options in favor of, or claims of, any other person, except the lien created by this Agreement and the Membership Interests have not previously been assigned, sold, transferred, pledged or encumbered (except pursuant to this Agreement).

(b) Pledgor has full power and authority to enter into this Pledge and this Pledge does not violate any other agreements to which Pledgor is a party;

(c) Except with respect to the restrictions set forth in the loan documents executed in connection with the Loan, there are no restrictions, other than those contained in the limited liability company agreement of Borrower, dated as of August 15, 2019 (the "Borrower Operating Agreement") arising from undertakings or agreements of Pledgor upon any of the rights associated with, or the transfer of, any of the Collateral;

(d) A true, correct and complete copy of the Borrower Operating Agreement has been delivered to Lender prior to the date hereof; and

(e) No authorization, approval, or other action by, and no notice to or filing with, any governmental authority or regulatory body is required either for the pledge by Pledgor of the Collateral pursuant to this Pledge or for the execution, delivery or performance of this Pledge by Pledgor, other than the filing of any financing statements as may be appropriate.

SECTION 4.  <u>Further Assurances</u>.  Pledgor agrees that at any time and from time to time, at the expense of Pledgor, Pledgor will promptly execute and deliver, or cause to be executed and delivered, at Pledgor's sole cost and expense, all assignments, instruments, powers, proxies and documents and take all further action that may be necessary or desirable, or that Lender may reasonably request, in order to perfect and protect the security interest granted or purported hereby or to enable Lender to exercise and enforce its rights and remedies hereunder with respect to the Collateral or to otherwise realize the benefit of the agreements set forth herein.

SECTION 5.  <u>Rights; Distributions</u>.

(a) If an Event of Default under the Note shall occur and be continuing, Lender shall have the right to receive any and all income, distributions, proceeds or other property received or paid in respect of the Membership Interests or other Collateral and make application thereof to the Loan, in such order as Lender, in its sole discretion, may

elect. If an Event of Default shall occur and be continuing, then all Membership Interests at Lender's option, may be registered in the name of Lender or its nominee (if not already so registered), and Lender or its nominee may thereafter exercise (i) all voting and all equity, membership and other rights pertaining to the Membership Interests and (ii) any and all rights of conversion, exchange, and subscription and any other rights, privileges or options pertaining to such Membership Interests as if it were the absolute owner thereof (including, without limitation, the right to exchange at its discretion any and all of the Membership Interests upon the merger, consolidation, reorganization, recapitalization or other fundamental change in the organizational structure of any member or upon the exercise by Pledgor or Lender of any right, privilege or option pertaining to such Membership Interests, and in connection therewith, the right to deposit and deliver any and all of the Membership Interests with any committee, depositary, transfer agent, registrar or other designated agency upon such terms and conditions as it may determine), all without liability except to account for property actually received by it, but Lender shall have no duty to exercise any such right, privilege or option and shall not be responsible for any failure to do so or delay in so doing.

(b) The rights of Lender under this Agreement shall not be conditioned or contingent upon the pursuit by Lender of any right or remedy against Borrower or Pledgor or against any other person which may be or become liable in respect of all or any part of the Loan or against any other security therefor, guarantee thereof or right of offset with respect thereto. Lender shall not be liable for any failure to demand, collect or realize upon all or any part of the Collateral or for any delay in doing so, nor shall it be under any obligation to sell or otherwise dispose of any Collateral upon the request of Pledgor or any other person or to take any other action whatsoever with regard to the Collateral or any part thereof.

(c) Pledgor authorizes Lender, at any time and from time to time, to execute, solely in connection with the sale provided for in Section 7 or Section 13, any endorsements, assignments or other instruments of conveyance or transfer with respect to the Collateral.

(d) The powers conferred on Lender hereunder are solely to protect Lender's interest in the Collateral and shall not impose any duty upon Lender to exercise any such powers. Lender shall be accountable only for amounts that it actually receives as a result of the exercise of such powers, and neither it nor any of its officers, directors, employees or Lender shall be responsible to Pledgor for any act or failure to act hereunder, except for its or their gross negligence or willful misconduct.

(e) If Pledgor fails to perform or comply with any of its agreements contained herein and Lender, as provided for by the terms of this Agreement, shall itself perform or comply, or otherwise cause performance or compliance, with such agreement, the reasonable and necessary out-of-pocket expenses of Lender actually incurred in connection with such performance or compliance, together with interest at the Default Rate if such actual out-of-pocket expenses are not paid on demand, shall be payable by Pledgor to Lender on demand and shall constitute obligations secured hereby.

SECTION 6.  <u>Transfers and Other Liens</u>.  Pledgor shall not (i) sell, transfer, divide, pledge, assign, hypothecate or otherwise dispose of, or grant any option with respect to, any of the Collateral or the Membership Interests without the prior written consent of Lender, which may be withheld in Lender's sole discretion, or (ii) create or permit to exist any lien, security interest, additional debt or other charge or encumbrance upon or with respect to any of the Collateral or the Membership Interests, except for the security interest granted under this Pledge without the prior written consent of Lender.  A default by Pledgor to this Section 6 shall constitute an immediate Event of Default hereunder and under the Note and shall not require any notice of default to be delivered to Pledgor by Lender.

SECTION 7.  <u>Private Sales</u>.

(a)  Pledgor recognizes that Lender may be unable to effect a public sale of any or all of the Membership Interests, by reason of certain prohibitions contained in the Securities Act of 1933, as amended, and applicable state securities laws or otherwise, and may be compelled to resort to one or more private sales thereof to a restricted group of purchasers which will be obliged to agree, among other things, to acquire such securities for their own account for investment and not with a view to the distribution or resale thereof.  Pledgor acknowledges and agrees that any such private sale may result in prices and other terms less favorable to Lender than if such sale were a public sale and, notwithstanding such circumstances, agrees that any such private sale shall not be deemed to have been made in a commercially unreasonable manner solely by virtue of being a private sale.  Lender shall be under no obligation to delay a sale of any of the Membership Interests for the period of time necessary to permit Borrower or Pledgor to register such securities for public sale under the Securities Act of 1933, as amended, or under applicable state securities laws, even if Borrower or Pledgor would agree to do so.

(b)  Pledgor further shall use its commercially reasonable efforts to do or cause to be done all such other acts as may be reasonably necessary to make any sale or sales of all or any portion of the Membership Interests pursuant to this Section 7 valid and binding and in compliance with any and all other requirements of applicable law.  Pledgor further agrees that a breach of any of the covenants contained in this Section 7 will cause irreparable injury to Lender, that Lender has no adequate remedy at law in respect of such breach and, as a consequence, that each and every covenant contained in this Section 7 shall be specifically enforceable against Pledgor, and Pledgor hereby waives and agrees not to assert any defenses against an action for specific performance of such covenants except for a defense of payment in full or that no Event of Default has occurred under the Loan Documents.

(c)  Lender shall not incur any liability as a result of the sale of any Collateral, or any part thereof, at any private sale conducted in a commercially reasonable manner, it being agreed that some or all of the Collateral is or may be of one or more types that threaten to decline speedily in value and that are not customarily sold in a recognized market.  Pledgor hereby waives any claims against Lender arising by reason of the fact that the price at which any of the Collateral may have been sold at such a private sale was less than the price which might have been obtained at a public sale or was less than the aggregate amount of the Debt, even if Lender accepts the first offer received and does not offer any Collateral to more than one offeree, provided that Lender has acted in a commercially reasonable manner in conducting such private sale.

(d)     The Code states that Lender is able to purchase the Membership Interests only if they are sold at a public sale. Lender has advised Pledgor that SEC staff personnel have issued various No-Action Letters describing procedures which, in the view of the SEC staff, permit a foreclosure sale of securities to occur in a manner that is public for purposes of Article 9 of the Code, yet not public for purposes of Section 4(2) of the Securities Act of 1933. The Code permits Pledgor to agree on the standards for determining whether Lender has complied with its obligations under Article 9 of the Code. Pursuant to the Code, Pledgor specifically agrees (x) that it shall not raise any objection to Lender's purchase of the Membership Interests (through bidding on the obligations or otherwise) and (y) that a foreclosure sale conducted in conformity with the principles set forth in the No-Action Letters (i) shall be considered to be a "public" sale for purposes of the Code; (ii) will be considered commercially reasonable notwithstanding that the Lender, has not registered or sought to register the Membership Interests under the Securities Laws, even if Pledgor or Borrower agrees to pay all costs of the registration process; and (iii) shall be considered to be commercially reasonable notwithstanding that Lender purchases the Membership Interests at such a sale.

(e)     Pledgor agrees that Lender shall not have any general duty or obligation to make any effort to obtain or pay any particular price for any Membership Interests sold by Lender pursuant to this Agreement. Lender, may, in its sole discretion, among other things, accept the first offer received, or decide to approach or not to approach any potential purchasers. Without in any way limiting Lender's right to conduct a foreclosure sale in any manner which is considered commercially reasonable, Pledgor hereby agrees that any foreclosure sale conducted in accordance with the following provisions shall be considered a commercially reasonable sale and hereby irrevocably waives any right to contest the commercial reasonableness of any such sale:

(i)     Lender conducts the foreclosure sale in the State of New York;

(ii)    The foreclosure sale is conducted in accordance with the laws of the State of New York;

(iii)   Not more than ten (10) business days before, and not less than five (5) business days in advance of the foreclosure sale, Lender notifies Pledgor at the address set forth herein of the time and place of such foreclosure sale;

(iv)    The foreclosure sale is conducted by an auctioneer licensed in the State of New York and is conducted in front of the New York Supreme Court located in New York City or such other New York State Court having jurisdiction over the Collateral on any Business Day between the hours of 9 a.m. and 5 p.m.;

(v)     The notice of the date, time and location of the foreclosure sale is published in the New York Times or Wall Street Journal (or such other newspaper widely circulated in New York, New York) for seven (7) consecutive days prior to the date of the foreclosure sale; and

(vi)    Lender sends notification of the foreclosure sale to all secured parties identified as a result of a search of the UCC financings statements in the filing offices

located in the States of Delaware and New York conducted not later than twenty (20) days and not earlier than thirty (30) days before such notification date.

SECTION 8. <u>WAIVER OF JURY TRIAL, DAMAGES, JURISDICTION</u>. WAIVER OF JURY TRIAL, DAMAGES, JURISDICTION. PLEDGOR AND LENDER EACH HEREBY AGREES TO WAIVE ITS RIGHTS TO A JURY TRIAL ON ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, OR ANY DEALINGS BETWEEN PLEDGOR AND LENDER. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. PLEDGOR AND LENDER EACH ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO LENDER TO ENTER INTO A BUSINESS RELATIONSHIP WITH PLEDGOR. PLEDGOR REPRESENTS AND WARRANTS THAT IT HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT SUCH WAIVER IS KNOWINGLY AND VOLUNTARILY GIVEN FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED, EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, REPLACEMENTS, REAFFIRMATIONS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, OR ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

WITH RESPECT TO ANY ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT, PLEDGOR SHALL AND HEREBY DOES SUBMIT TO THE NON EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK AND THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA LOCATED IN THE STATE OF NEW YORK (AND ANY APPELLATE COURTS TAKING APPEALS THEREFROM). PLEDGOR HEREBY WAIVES AND AGREES NOT TO ASSERT, AS A DEFENSE IN ANY ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, (A) THAT IT IS NOT SUBJECT TO SUCH JURISDICTION OR THAT SUCH ACTION, SUIT OR PROCEEDING MAY NOT BE BROUGHT OR IS NOT MAINTAINABLE IN THOSE COURTS OR THAT THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS MAY NOT BE ENFORCED IN OR BY THOSE COURTS OR THAT IT IS EXEMPT OR IMMUNE FROM EXECUTION, (B) THAT THE ACTION, SUIT OR PROCEEDING IS BROUGHT IN AN INCONVENIENT FORUM OR (C) THAT THE VENUE OF THE ACTION, SUIT OR PROCEEDING IS IMPROPER.

SECTION 9. <u>Irrevocable Proxy</u>. With respect to Article 8 Matters (as defined below), Pledgor hereby irrevocably grants and appoints Lender, from the date of this Agreement until the termination of this Agreement in accordance with its terms, as Pledgor's true and lawful proxy, for and in Pledgor's name, place and stead to vote the pledged Membership Interests, whether directly or indirectly, beneficially or of record, now owned or hereafter acquired, with respect to such Article 8 Matters. The proxy granted and appointed in this Section 9 shall include the right to sign Pledgor's name (as a partner or member of Borrower) to any consent, certificate or other document relating to an Article 8 Matter and the pledged Membership Interests that applicable law may permit or require, to

cause the pledged Membership Interests to be voted in accordance with the preceding sentence. Pledgor hereby represents and warrants that there are no other proxies and powers of attorney with respect to an Article 8 Matter that Pledgor may have granted or appointed. Pledgor will not give a subsequent proxy or power of attorney or enter into any other voting agreement with respect to the pledged Membership Interests with respect to any Article 8 Matter and any attempt to do so with respect to an Article 8 Matter shall be void and of no effect. The proxies and powers granted by Pledgor pursuant to this Agreement are coupled with an interest and are given to secure the performance of Pledgor's obligations. As used herein, "Article 8 Matter" means any action, decision, determination or election by Borrower or its member(s) that its membership interests or other equity interests, or any of them, be, or cease to be, a "security" as defined in and governed by Article 8 of the Code, and all other matters related to any such action, decision, determination or election.

SECTION 10. <u>Lender Appointed Attorney-in-Fact</u>. Pledgor hereby appoints Lender Pledgor's attorney-in-fact, with full authority in the place and stead of Pledgor and in the name of Pledgor or otherwise, from time to time in Lender's discretion, subject to the provisions of the Borrower Operating Agreement, to take any action and to execute any instrument which Lender may deem necessary or advisable to accomplish the purposes of this Pledge. This power of attorney created under this Section 10, being coupled with an interest, shall be irrevocable for the term of this Pledge.

SECTION 11. <u>Additional Covenants of Pledgor Relating to Covenants of Borrower</u>. Pledgor covenants and agrees with Lender that, from and after the date of this Agreement until the Debt (exclusive of any indemnification or other obligations which are expressly stated in any of the Loan Documents to survive satisfaction of the Note) are paid in full, Pledgor shall take and shall cause Borrower to take, (a) any and all actions either necessary or reasonably requested by Lender to ensure Borrower's compliance in all material respects with the Loan Documents, (b) such actions as are required by or to comply with the terms of the Loan Documents, in each case, applicable to it, and shall not take any actions that violate any such documents and (c) such actions that are reasonably necessary to ensure that Borrower shall not apply amounts disbursed to Borrower pursuant to the requirements of the Loan in a manner contrary to the requirements of the Loan Documents.

SECTION 12. <u>Termination of Pledge</u>. If Pledgor pays all obligations due under the Mortgage and Security Agreement and Note when due, this Pledge shall terminate, Lender shall deliver the Assignment to Pledgor and Lender shall cause UCC-3 termination statements to be filed with respect to any UCC-1s it may have filed with respect to the Collateral at Pledgor's sole cost and expense. If the Note is not paid when due, then the remedies under Section 12 will apply.

SECTION 13. <u>Remedies Upon Default</u>. If an Event of Default under the Note shall have occurred and is continuing, subject to the Borrower Operating Agreement, Lender shall have, in addition to all other rights given by law or otherwise, all of the rights and remedies with respect to the Collateral of a secured party under the Uniform Commercial Code as in effect in the State of New York, and Lender, at its option, may liquidate the Collateral or any part thereof to the extent and in the manner permitted under the Borrower Operating Agreement.

Without limiting the generality of the foregoing, Lender, without demand of performance or other demand, presentment, protest, advertisement or notice of any kind (except any notice required by law referred to below or otherwise required hereby) to or upon Pledgor, Borrower, or any other Person (all and each of which demands, presentments, protests, advertisements and notices, or other defenses (other than the defense of payment or no Event of Default), are hereby waived to the extent permitted

under applicable law), may in such circumstances upon which an Event of Default shall occur and be continuing forthwith collect, receive, appropriate and realize upon the Collateral, or any part thereof, and/or may forthwith sell, assign, give option or options to purchase or otherwise dispose of and deliver the Collateral or any part thereof (or contract to do any of the foregoing), in one or more parcels at public or private sale or sales, in the over-the-counter market, at any exchange, broker's board or office of Lender or elsewhere upon such terms and conditions as it may deem advisable and, provided commercially reasonable conduct, at such prices as it may deem best in its sole discretion, for cash or on credit or for future delivery without assumption of any credit risk.  Lender shall have the right, without notice or publication, to adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at the time and place fixed for such sale, and any such sale may be made at any time or place to which the same may be adjourned without further notice. Lender shall have the right upon any such public sale or sales, and, to the extent permitted by law, upon any such private sale or sales, to purchase the whole or any part of the Collateral so sold, free of any right or equity of redemption of Pledgor, which right or equity of redemption is hereby waived or released.  Lender shall apply any Proceeds from time to time held by it and the net proceeds of any such collection, recovery, receipt, appropriation, realization or sale, after deducting all reasonable and actual out-of-pocket costs and expenses of every kind incurred therein or incidental to the care or safekeeping of any of the Collateral or in any way relating to the Collateral or the rights of Lender hereunder, including, without limitation, reasonable attorneys' fees and disbursements, to the payment in whole or in part of the Debt, in such order as Lender may elect, and only after such application and after the payment by Lender of any other amount required by any provision of law, including, without limitation, Sections 9-610 and 9-615 of the Code, need Lender account for the surplus, if any, to Pledgor.  To the extent permitted by applicable law, Pledgor waives all claims, damages and demands it may acquire against Lender arising out of the exercise by Lender of any of its rights hereunder, except for any claims, damages and demands it may have against Lender arising from the willful misconduct or gross negligence of Lender or its affiliates, or any agents or employees of the foregoing. If any notice of a proposed sale or other disposition of Collateral shall be required by law, such notice shall be deemed reasonable and proper if given at least ten (10) business days before such sale or other disposition.

The rights, powers, privileges and remedies of Lender under this Agreement are cumulative and shall be in addition to all rights, powers, privileges and remedies available to Lender at law or in equity.  All such rights, powers and remedies shall be cumulative and may be exercised successively or concurrently without impairing the rights of Lender hereunder.

SECTION 14. <u>Expenses</u>.  Pledgor agrees to pay to Lender upon demand the amount of any and all reasonable expenses which Lender may incur in connection with (i) the redemption of any of the Collateral, (ii) the exercise or enforcement of any of its rights hereunder or (iii) the failure by Pledgor to perform or observe any of the provisions hereof.

SECTION 15. <u>Successors and Assigns</u>.  This Pledge shall be binding upon and inure to the benefit of Pledgor, Lender and their respective successors and assigns.  Pledgor's successors and assigns shall include, without limitation, a receiver, trustee or debtor-in-possession of or for Pledgor.

SECTION 16. <u>Law</u>.  This Pledge shall be governed by and construed in accordance with the laws of the State of New York.  Whenever possible, each provision of this Pledge shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Pledge shall be held to be prohibited or invalid under applicable law, such provision shall be ineffective only

to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Pledge.

SECTION 17. <u>Notices</u>.

All notices or other communications required or otherwise given pursuant to this Agreement shall be in writing and shall be personally delivered, delivered by overnight courier or mailed by registered or certified mail, postage prepaid, with return receipt requested, addressed as follows:

If to the Pledgor:

286 Rider Ave Development LLC
679 Driggs Avenue
Brooklyn, New York 11211
Attention: Toby Moskovits

With a copy to:

Treff & Lowy PLLC
481 Wythe Avenue, 2nd Floor
Brooklyn, New York 11249
Attention : Mark Schlanger, Esq.

If to the Lender:

Be-Aviv 286 Rider LLC
41 Wooster Street, 2nd Floor
New York, New York 10013
Attention: Ben Harlev and Eyal Epstein

With a copy to:

Wachtel Missry LLP
One Dag Hammarskjold Plaza
885 Second Avenue, 47th Floor
New York, New York 10017
Attention:  Eli D. Dweck, Esq.

Any party may change the person or address to whom or which notices are to be given hereunder, by notice duly given hereunder; provided, however, that any such notice shall be deemed to have been given hereunder only when actually received by the party to which it is addressed. Any notice or other communication given hereunder shall be deemed to have been given or delivered, if personally delivered, upon delivery, if sent by overnight courier, on the first (1st) business day of the Lender after being sent, and if sent by mail, on the fifth (5th) business day of the Lender after mailing. Each party shall be entitled to rely on all

communications which purport to be given on behalf of any other party hereto and purport to be signed by an authorized signatory of such party or the above indicated attorneys.

SECTION 18. <u>Section Headings</u>.  The section headings herein are for convenience of reference only, and shall not affect in any way the interpretation of any of the provisions hereof.

SECTION 19. <u>Severability</u>.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

SECTION 20. <u>Waivers and Amendments</u>.  None of the terms or provisions of this Agreement may be waived, amended, or otherwise modified except by a written instrument executed by the party against which enforcement of such waiver, amendment, or modification is sought.

SECTION 21. <u>Joint and Several Liability</u>.  If Pledgor consists of more than one person or party, the obligations and liabilities of each such Person or party hereunder shall be joint and several.

SECTION 22. <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts and all the counterparts taken together shall be deemed to constitute one and the same instrument.

IN WITNESS WHEREOF, Pledgor and Lender have executed this Pledge as of the date set forth below.

Pledgor: 286 RIDER AVE DVELOPMENT LLC

By: _____
Name: Toby Moskovits
Title: Authorized Signatory

Notice Address: 679 Driggs Avenue
Brooklyn, New York 11211
Attention: Toby Moskovits

Lender: **BE-AVIV 286 RIDER LLC**

By: _____
Name: Eyal Epstein.
Title: Managing Member

Notice Address: 41 Wooster Street, 2nd Floor,
New York, New York 10013
Attention: Ben Harlev & Eyal Epstein