# EXHIBIT C

# PROMISSORY NOTE

$8,000,000.00                                                                                           Date:   September 19, 2019

**PROMISE TO PAY.** 286 RIDER ACQUISITION LLC, a New York limited liability company having an address at 679 Driggs Avenue, Brooklyn, New York 11211 (the "Borrower") promises to pay to BE-AVIV 286 RIDER LLC, a Delaware limited liability company having an office at 41 Wooster Street, 2nd Floor, New York, New York 10013 (the "Lender"), in lawful money of the United States of America, the principal amount of **EIGHT MILLION AND 00/100 ($8,000,000.00) DOLLARS** (the "Loan Amount") or so much as may be outstanding, together with interest on the unpaid outstanding principal balance thereof. Borrower also promises to pay all applicable fees and expenses.

**PAYMENT.**  Borrower will pay this loan in one payment of all outstanding principal plus all accrued and unpaid interest thereon on September 18, 2020 (the "Maturity Date"). In addition, beginning November 1, 2019 and on the first of each month thereafter, until the Loan Amount is paid in full, Borrower will pay regular monthly payments of all accrued and unpaid interest due as of each payment date on the principal amount then outstanding. All payments of interest hereunder shall be payable in arrears.

Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's principal office at 41 Wooster Street, Suite 2, New York, New York 10013 or at such other place as Lender may designate in writing.

**GUARANTY.**  The loan evidenced hereby is guaranteed by Toby Moskovits (the "Guarantor"), principal of the Borrower, and is secured by a first priority mortgage (the "Mortgage") on the property known as 286 Rider Avenue, Bronx, New York 10451 (the "Property").

**INTEREST RATE.**  The interest rate on this Note shall equal the sum of: (a) One Month LIBOR, plus (b) 8.50% per annum; provided, however, that in no event shall One Month LIBOR as used herein ever be less than One Month LIBOR for the month of September, 2019 (the "LIBOR Floor").

**LIBOR.** "LIBOR" shall mean the interest rate (expressed as a percentage per annum and rounded upward, as necessary, to the next nearest 1/1000 of 1%) equal to the rate reported for deposits in U.S. dollars, for a one-month period, that appears on Reuters Screen LIBOR01 Page (or the successor thereto) as of 11:00 a.m., London time, on the date hereof; _provided_ that, if such rate does not appear on Reuters Screen LIBOR01 Page as of 11:00 a.m., London time, on such date, Lender shall have a right to determine LIBOR in its own reasonable discretion. Notwithstanding anything to the contrary set forth herein, in no event shall LIBOR ever be less than the LIBOR Floor for purposes of calculating the Interest Rate hereunder.

**INTEREST CALCULATION METHOD.**  Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days before the first full payment cycle, monthly interest is calculated by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days. Interest for the odd days before the first full month is calculated on the basis of the actual days and a 360-day year. All interest payable under this Note is computed using this method.

**REQUIRED EQUITY**.  It shall be a condition to funding hereunder that Borrower has delivered evidence to Lender at or prior to Closing that Borrower has contributed at least Three Million and 00/100 Dollars

($3,000,000.00) to Borrower. Lender's funding of the Loan Amount hereunder shall be conclusive as to Lender's determination the Borrower has provided evidence satisfactory to Lender of same.

**INTEREST RESERVE.** At the Closing of the Loan, Borrower shall deposit into a non-interest bearing account with Lender a portion of the principal amount of the Loan, in the amount equal $980,000.00 (the "Interest Reserve"). Lender shall draw all interest payments from the Reserve for the first twelve (12) months of the Loan. In no event shall Lender be obligated to release funds from the Reserve account following the occurrence of an Event of Default (as defined in the Note). All funds in the Reserve account shall be pledged to Lender, as additional security for the payment of the Loan, and may be retained or applied by Lender, in Lender's sole discretion, upon the occurrence of an Event of Default and during the continuance thereof.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Borrower shall have the right to prepay this Note in full or in part at any time without the imposition of any prepayment fee or penalty except as set forth below, provided that Borrower (i) delivers to Lender not less than ten (10) days' prior written notice (the "Prepayment Notice") specifying the date of such prepayment and (ii) remits to Lender on or before the prepayment date an amount equal to the positive difference (if any) between (a) six (6) months of interest due under the Loan at the Interest Rate, and (b) the amount of interest actually paid by Borrower as of the date of prepayment, and (c) remits to Lender on or before the prepayment date any and all other amounts due under the Loan. Any partial prepayments shall be applied first to any accrued and unpaid interest due under this Note and the balance, if any, to the outstanding principal balance of this Note. The prepayment Notice shall be irrevocable, provided that Borrower shall have the right to revoke the Prepayment Notice once during the term of the Loan.

**EXIT FEE.** In addition to any sum due to Lender pursuant to the Prepayment provision above, at the time any portion of the principal of this Note is repaid, Borrower shall pay Lender an exit fee equal to one percent (1.0%) of the original principal amount of the loan hereunder (the "Exit Fee") simultaneously therewith. The Exit Fee shall be payable at any time the principal amount of the Loan is paid, whether upon prepayment of the Loan, on the Maturity Date, at the time of the acceleration of the Loan, or at any time when the Loan shall be repaid.

**LATE CHARGE.** If any of the regularly recurring monthly payments is ten (10) days or more late following notice thereof from Lender to Borrower, Borrower will be charged five percent (5.0%) of the unpaid portion of the regularly scheduled payment (but not with respect to the final payment due hereunder on the Maturity Date). This late charge shall be paid to Lender by Borrower for the purpose of defraying the expense incident to the handling of the delinquent payment.

**RETURNED CHECKS.** In the event that any check payable to Lender is returned for any reason, Borrower shall be required to make all subsequent payments via certified check or wire.

**INTEREST AFTER DEFAULT.** Upon an Event of Default, including failure to pay upon final maturity, the interest rate on this Note shall be increased to the lesser of twenty-one percent (21%) or the maximum rate permitted by applicable law. The aforementioned default rate shall exist only for as long as the Event of Default remains uncured with Lender having no obligation to accept any offered cure. When the Event of Default is cured the interest rate shall revert to the interest rate set forth in the paragraph entitled "INTEREST RATE".

**DEFAULT.**  Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.**  Borrower fails to make any payment when due under this Note.

**Other Defaults.**  Borrower fails to comply with or to perform, beyond any applicable grace or cure periods, any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Guarantor, including, without limitation, the Mortgage.

**Default In Favor of Third Parties.**  Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related.

**False Statements.**  Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Note or the related documents in connection with the obtaining of the loan evidenced by this Note or any security document directly or indirectly securing repayment of this Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.**  The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or any Guarantor.

**Creditor or Forfeiture Proceedings**. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender.

**Execution; Attachment.**  Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change In Zoning or Public Restriction.**  Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Borrower's property (the "Collateral"), as specified in the related documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.**  A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral or the asserted or actual invalidity of any provision in this Note, any other agreement between the Borrower and Lender or any document delivered by the Borrower to the Lender.

**Judgment.**  Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to

Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Change In Ownership.** A sale or transfer of all or a portion of the Property or, any change in the beneficial ownership of the equity ownership of Borrower in violation of the Mortgage, or a change in the management or control of Borrower.

**Adverse Change.** The occurrence of any event or events that individually or in the aggregate would have or has had a material adverse effect upon (i) the assets, business, operations, properties or condition, financial or otherwise, of Borrower, (ii) the ability of Borrower to make payment as and when due of any amounts due hereunder, or (iii) the Collateral, which occurrence and effect will be determined by the Lender in the exercise of its reasonable judgment.

**Events Affecting Guarantor.** Any Guarantor dies (unless a reasonably acceptable replacement is not provided within sixty (60) days) or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Criminal or Civil Action.** The Borrower or any Guarantor becomes the subject of criminal action or Borrower's civil action that may impair ability to perform if determined adversely to Borrower, except as previously disclosed to Lender. In the event that Lender delivers a default notice to Borrower in connection with a civil action under this Section, Borrower shall have a period of ninety (90) days to prepay the loan in full without penalty.

**Insecurity.** Lender in good faith believes that the prospect of payment or performance of this Note is impaired or otherwise deems itself insecure.

**LENDER'S RIGHTS.** Upon an Event of Default, the entire unpaid principal balance under this Note and all accrued unpaid interest shall become immediately due, and then Borrower shall pay that amount, including, without limitation, any prepayment premium due in connection with the payment of the amounts due hereunder prior to maturity of this Note.

**ATTORNEYS' FEES; EXPENSES.** Upon the occurrence of an Event of Default, Lender may hire or pay someone else to enforce its rights hereunder, at Borrower's sole cost and expense. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's reasonable legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of New York.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of New York County, State of New York.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all

accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. During an Event of Default, Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** Borrower acknowledges this Note is secured by, among other things, a Mortgage on the Property, of even date herewith, by Borrower in favor of Lender; a pledge by 286 Rider Ave Development LLC of 100% of the membership interests in Borrower in favor of Lender; a partial payment guaranty from 286 Rider Ave Acquisition LLC in favor of Lender; a non-recourse carveout guaranty from 286 Rider Ave Acquisition LLC in favor of Lender; and a carry costs guaranty from Toby Moskovits and Yechial Michael Lichtenstein in favor of Lender.

**FINANCIAL STATEMENTS.** Borrower agrees to provide Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**COMPLIANCE WITH USURY LAWS.** All agreements between Borrower and Lender are hereby expressly limited so that in no event shall the amount paid or agreed to be paid to Lender for the use, forbearance, or detention of the money loaned under this Promissory Note exceed the maximum amount permissible under the laws of the State of New York. If, at the time of any interest payment, the payment amount due under this Promissory Note is in excess of the legal limit, the obligation shall be reduced to the legal limit. If Lender should ever receive, as interest, an amount that exceeds the highest lawful rate, the amount that would be excessive as interest shall be applied to the reduction of the principal amount owing under this Promissory Note, and not the payment of interest.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. If more than one person has executed this Note, then the obligations under this Note are joint and several.

Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to the Lender at the address set forth above.

This Note and rights thereunder are registered obligations and the right, title, and interest of each Lender and their assignees in and to this Note (or any rights under this Note) shall be transferable at no additional cost, expense or liability to Borrower, and participation rights may be granted or transferred, only in accordance with the provisions of Section 1.11 of the Mortgage and Security Agreement. It is the intent of the parties hereto that this Note and interests therein be in "registered form" for purposes of Code Sections 163(f), 871(h) and 881(c) and Treasury Regulations Section 5f.103-1(c) and 1.871-14, and the provisions of this paragraph shall be interpreted and applied consistently with such purpose.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

286 RIDER AVE ACQUISITION LLC

By: _____
Name: Toby Moskovits
Title: Authorized Signatory

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK  )

On the 15th day of September in the year 2019 before me, the undersigned, personally appeared Toby Moskovits, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in her capacity, and that by her signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
Notary Public

[Notary Seal: CHAVA ROSENWASSER, STATE OF NEW YORK, NOTARY PUBLIC, Qualified in Kings County, 01RO6390342, My Commission Expires 04/15/20__]