# EXHIBIT E

Loan No.
Title No.:

| | |
|---|---|
| Premises: | 286 Rider Avenue, Bronx, New York 10451 |
| Block: | 2333 |
| Lot: | 33 |
| County: | Bronx |
| State: | New York |

---

## 286 RIDER AVE ACQUISITION LLC

In Favor of

## BE-AVIV 286 RIDER LLC

---

## MORTGAGE AND SECURITY AGREEMENT

---

RETURN BY MAIL TO:

Wachtel Missry LLP
885 Second Avenue, 47th Floor
New York, New York 10017
Attention: Eli D. Dweck, Esq.

# MORTGAGE AND SECURITY AGREEMENT

By

## 286 RIDER AVE ACQUISITION LLC

For the benefit of

## BE-AVIV 286 RIDER LLC

**THIS MORTGAGE AND SECURITY AGREEMENT** is made this 19th day of September, 2019, by **286 RIDER AVE ACQUISITION LLC**, a New York limited liability company having an address at 679 Driggs Avenue, Brooklyn, New York 11211 (the "Mortgagor") in favor of **BE-AVIV 286 RIDER LLC,** a Delaware limited liability company having an office at 41 Wooster Street, 2nd Floor, New York, New York 10013 (the "Mortgagee").

WITNESSETH, that the Mortgagor is indebted to the Mortgagee for the payment of an indebtedness in the principal sum of **EIGHT MILLION AND 00/100 ($8,000,000.00) DOLLARS** lawful money of the United States, to be paid, with interest thereon (as such sum may be reduced from time to time, together with the interest thereon, hereinafter sometimes collectively referred to and described as the "Debt"), according to a certain note or obligation bearing even date herewith (which, as now exists, and as the same may hereafter, from time to time be extended, amended, modified, restated or superseded, hereinafter collectively referred to as the "Note").

NOW THIS INDENTURE WITNESSETH that for better securing the payment of the Debt, and the performance by the Mortgagor of the terms, covenants, conditions and obligations contained herein, in the Note and in any other documents and agreements given to secure payment of the Note according to the true intent and meaning thereof, and also for and in consideration of one dollar to the Mortgagor in hand paid by the Mortgagee at or before the sealing and delivery of these presents, and other good and valuable consideration, the mutual receipt and legal sufficiency of which are hereby acknowledged, the Mortgagor has mortgaged, granted, bargained, sold, aliened, released, conveyed and confirmed, and by these presents does mortgage, grant, bargain, sell, alien, release, convey and confirm unto the Mortgagee, forever, and grants the Mortgagee a security interest in:

## MORTGAGED PROPERTY

   A. All the land located in the County of Bronx, State of New York and described in Schedule A annexed hereto and made a part hereof (the "Real Property") consisting of that certain property known as 286 Rider Avenue, Bronx, New York 10451.

   B. All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Real Property (the "Improvements").

TOGETHER with all and singular rights, hereditaments, and appurtenances belonging or in any way incident or appertaining thereto, including, but not limited to:

C.      All fixtures, machinery, appliances, materials, equipment, furniture and personal property of every nature whatsoever now or hereafter owned by the Mortgagor and located in or on, or attached to, or used, or intended to be used, in connection with the operation of, or with construction on, the Real Property or the Improvements, including all extensions, additions, improvements, betterments, renewals and replacements to any of the foregoing and all of the right, title and interest of the Mortgagor in and to any such personal property or fixtures together with the benefit of any deposits or payments now or hereafter made by the Mortgagor or on its behalf with regard thereto (the "Personal Property").

D.      All right, title and interest of the Mortgagor, if any, in and to the land in the bed of the streets or highways abutting the Real Property to the center line thereof; all easements, rights of way, strips and gores of land, streets, ways, sidewalks, curbs, alleys, passages, sewer rights, waters, water courses, water rights and powers, any air or development rights appurtenant to the land or any portion thereof, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments, remainders, reversions and appurtenances whatsoever, in any way belonging, relating or appertaining to the Real Property or the Improvements, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by the Mortgagor (the "Appurtenances").

E.      All leases, lettings, occupancy agreements and licenses (collectively, the "Leases") of the Real Property and/or the Improvements or any part thereof now or hereafter entered into and all right, title and interest of the Mortgagor thereunder (including, without limitation, the cash and securities deposited thereunder), the right to receive and collect the rents, issues and profits from the Leases (the "Rents") (subject to Mortgagor's rights granted in the Assignment of Leases and Rents entered  into between Mortgagor and Mortgagee of even date herewith) and all the estate, right, title, interest, property, possession, claim and demand whatsoever, at law as well as in equity, of the Mortgagor of, in and to, and all proceeds of any sales or other dispositions of, the property described in Paragraphs (A), (B), (C) and (D) above and this Paragraph (E).

F.      All proceeds of and any unearned premiums on any insurance policies covering the Improvements or the Personal Property or the Rents including, without limitation, the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof.

G.      All awards ("Awards"), heretofore made and hereafter to be made by any municipal, state or federal authorities to the Mortgagor and all subsequent owners of the property described above in Paragraphs (A) through (E) including any awards for any changes of grade of streets affecting the property described above in Paragraphs (A) through (E) as the result of the exercise of the power of eminent domain (a "Taking").

H.      All the other estate, right, title, interest, use, possession, property, claim and demand whatsoever, contract rights, general intangibles, actions and rights in action, relating to the property described above in Paragraphs (A) through (G) and proceeds, products, replacements, additions, substitutions, renewals and accessions of any of the foregoing.

All the property, interests and rights referred to in Paragraphs (A) through (H) above and any additional property, interests or rights hereafter acquired by the Mortgagor and subject to the

lien of this Mortgage or intended to be so are referred to in this Mortgage as the "Mortgaged Property".

TO HAVE AND TO HOLD the Mortgaged Property to the Mortgagee, its successors and assigns, forever.

The Mortgagor hereby grants to the Mortgagee a security interest in all rights and property described above in Paragraphs (C) and Paragraphs (E) through Paragraph (H) (collectively, the "Collateral").   This Mortgage shall constitute a self-operative Security Agreement under Article 9 of the Uniform Commercial Code with respect to such rights and property, but the Mortgagor agrees to execute and deliver on demand such other instruments as the Mortgagee may request in order to create or perfect its security interest or to impose the lien hereof more specifically upon any of such rights and property. Should an Event of Default (as defined below in Section 4.1.1) occur and be continuing, the Mortgagor hereby appoints the Mortgagee its agent and attorney-in-fact (which appointment shall be deemed to be an agency coupled with an interest), with full power of substitution, to execute, deliver and file on its behalf any UCC-1 financing statements, UCC-3 continuation statements and any other instruments necessary to create or perfect the Mortgagee's security interest upon any of the Collateral granted in this Paragraph.  The Mortgagee shall have all the rights and remedies under this Mortgage, or under any applicable law or agreements with the Mortgagor, of a Secured Party under the Uniform Commercial Code in addition to those specified herein.

And the Mortgagor covenants, represents and warrants with the Mortgagee that:

## ARTICLE I

## TERMS, COVENANTS, CONDITIONS, REPRESENTATIONS AND WARRANTIES

The Mortgagor covenants, represents and warrants to the Mortgagee as follows:

Section 1.1.  Payment of Debt.  The Mortgagor will pay the Debt as provided in the Note.

Section 1.2.  Maintenance of the Mortgaged Property and Compliance with Laws.  The Mortgagor shall (at its expense in so far as is applicable by the context):

(a)     maintain the Improvements in good and substantial order and repair and in such fashion that the value and utility of the Mortgaged Property will not be diminished and will make or cause to be made all necessary and appropriate repairs, replacements, and renewals thereof, whether interior or exterior, structural or non-structural; all repairs, replacements and renewals to be at least equal, in quality and class, to that of the original Improvements;

(b)     not use or cause the whole or any part of the Mortgaged Property to be used in such a manner as to cause the same to be subject to forfeiture under applicable laws. In the event that any person or entity, in possession of the whole or any part of the Mortgaged Property, or otherwise, may, by acts or omissions, cause the Mortgaged Property to be subject to forfeiture, the Mortgagor, within five (5) days after receiving notice of the occurrence of any such act or omission, shall notify the Mortgagee of the occurrence of such act or omission and shall

commence such legal proceedings against the party committing or permitting the acts or omissions as shall be necessary to prevent such forfeiture;

(c)     comply with, or cause to be complied with, all laws, statutes, codes, acts, ordinances, orders, judgments, decrees, injunctions, rules, regulations, permits, licenses, authorization, directions and requirements of all governments, departments, commissions, boards, courts, authorities, agencies, officials and officers which may, as at the date of this Mortgage or thereafter, affect the Mortgaged Property or any part thereof or its use or condition, or which may affect any adjoining sidewalks, curbs, vaults and vault space if any, or streets or ways in so far as the Mortgagor is required to comply therewith;

(d)     comply with, or cause to be complied with, all requirements of the issuer of any policy(s) of insurance covering or affecting the whole or any part of the Mortgaged Property, and all orders, rules, regulations and other requirements of such governmental or regulatory authorities having jurisdiction over the Mortgaged Property or any part thereof; and

(e)     not do or permit any act or thing which is contrary to the requirements or prohibitions of any document of record affecting the Mortgaged Property nor commit or permit any waste of or any nuisance in, at or on the Mortgaged Property or any part thereof.

Section 1.3.  Alterations.  None of the Improvements or any part or portion thereof, and none of the Personal Property or any part or  portion thereof, shall be removed, altered or demolished except for any such removal, alteration or demolition carried out in accordance with the construction plans approved by Mortgagee, without the prior written consent of the Mortgagee in each instance, provided, however, that the Mortgagor shall have the right, without the consent of the Mortgagee, to remove and dispose of, free from the lien of this Mortgage, such Personal Property as from time to time may become worn out or obsolete, provided that, simultaneously with or prior to such removal, any such Personal Property shall be replaced with Personal Property of like kind and value at least equal to that of the replaced Personal Property and free from any title retention, security interest or other encumbrance.

Section 1.4.  Taxes and Other Charges; Mortgage Taxes.  (a) The Mortgagor has paid and will pay when due (i) all liens of any kind, taxes of any kind and nature (including but not limited to real and personal property taxes and income, franchise, withholding, profits and gross receipts taxes), assessments, water and sewer charges, rents and rates, and other governmental or municipal charges, fines or impositions relating to the Mortgaged Property or any part thereof, and (ii) taxes upon the rents, revenues, income or profits of the Mortgaged Property, or taxes arising in respect of the occupancy, use or possession of the whole or any part thereof, which, if not paid, shall result in the imposition of a lien upon the Mortgaged Property, and the Mortgagor will promptly deliver official receipts therefor to the Mortgagee.

(b)     The Mortgagor will not claim any deduction from the taxable value of the Mortgaged Property by reason of this Mortgage nor shall the Mortgagor claim or be entitled to any credit against the principal and interest due and owing under the Note and this Mortgage for any taxes, assessments, water rates or other governmental or municipal charges, bonds or impositions paid by the Mortgagor relating to the Mortgaged Property.

(c)     In the event of the passage after the date of this Mortgage of any law of the state wherein the Mortgaged Property is located deducting from the value of land for the

purposes of taxation any lien thereon, or changing in any way the laws for the taxation of mortgages or debts secured by mortgages for state or local purposes, or the manner of the collection of any such taxes so as to affect this Mortgage, or the Debt, the Mortgagee shall have the right to give thirty (30) days written notice to the owner of the Mortgaged Property requiring the payment of the Debt, and if such notice be given, the Debt shall become due, payable and collectible at the expiration of said thirty (30) days. Unless prohibited by applicable law, any notice given pursuant to this Subsection requiring the payment of the Debt shall provide an option to the Mortgagor, in lieu of such acceleration, to either pay to the Mortgagee an amount or amounts equal to any and all sums payable by the Mortgagee as taxes or otherwise by reason of such laws including taxes, if any, payable on the amounts so paid to the Mortgagee or, in the alternative, pay the Debt in full. If the notice as provided above be given, the payment of said sums described in the preceding sentence or the Debt, as may be the case, shall become due, payable and collectible at the expiration of the thirty (30) day period referred to above.

(d)    If at any time the United States of America, any state thereof or any governmental subdivision of any such state, shall require (i) revenue or other stamps to be affixed to the Note or this Mortgage, or (ii) the payment of any taxes or fees on this Mortgage, or the Note or in connection with the recording of this Mortgage or any amendment, extension or modification hereof, the Mortgagor will pay the same, with interest and penalties thereon, if any.

Section 1.5.  Reserve

(a)    Tax and Insurance Deposits.  The Mortgagor shall, deposit with the Mortgagee, on a monthly basis, $1/12^{th}$ of the annual charges for ground or other rent, if any, real estate taxes, assessments, water, sewer (if not metered) and other charges which might become a lien upon the Mortgaged Property (or any part thereof) and insurance premiums, and the Mortgagor shall, accordingly, make such deposits.  All funds so deposited with the Mortgagee, if any, shall be held by it, but not in escrow and, except to the extent required by applicable law, without interest, and, provided that no "Event of Default" (as defined below in Section 4.1.1), shall have occurred and be continuing, shall be applied in payment of the charges aforementioned when and as payable, to the extent the Mortgagee shall have such funds on hand.  Should an Event of Default occur and be continuing, the funds deposited with the Mortgagee, as aforementioned, may be applied in payment of the charges for which such funds shall have been deposited or to the payment of the Debt or any other charges affecting the security of the Mortgagee, as the Mortgagee sees fit, but no such application shall be deemed to have been made by operation of law or otherwise until actually made by the Mortgagee as herein provided, nor shall any application be deemed to affect any right or remedy of the Mortgagee hereunder or under any statute or rule of law.  If deposits are being made with the Mortgagee, the Mortgagor shall furnish the Mortgagee with bills for the charges for which such deposits are required to be made hereunder and/or such other documents necessary for the payment of same, at least fifteen (15) days prior to the date on which the charges first become payable.

(b)    Interest Reserve.  At the Closing of the Loan, Borrower shall deposit into a non-interest bearing account with Lender a portion of the principal amount of the Loan, in the amount equal to $980,000.00 (the "Interest Reserve"). Lender shall draw all interest payments from the Reserve for the first twelve (12) months of the Loan. In no event shall Lender be obligated to release funds from the Reserve account following

the occurrence of an Event of Default (as defined in the Note). All funds in the Reserve account shall be pledged to Lender, as additional security for the payment of the Loan, and may be retained or applied by Lender, in Lender's sole discretion, upon the occurrence of an Event of Default and during the continuance thereof.

Section 1.6. Warranty of Title. The Mortgagor represents and warrants that it is the fee simple owner of the Mortgaged Property free of defects, liens, and encumbrances of any nature other than those exceptions to title as set forth in the Mortgagee's title insurance policy or the marked title insurance commitment delivered to the Mortgagee as of the date hereof and insuring the lien of this Mortgage. The Mortgagor warrants that this Mortgage is and will be maintained as a valid first lien on the Mortgaged Property subject only to the above-mentioned exceptions, and will defend the same against the claims of all persons or entities whomsoever. At the Mortgagor's sole cost and expense, the Mortgagor forthwith upon the execution and delivery of this Mortgage, and thereafter from time to time, will cause this Mortgage, and any security instrument creating or evidencing the lien or security interest hereof upon the Mortgaged Property and each instrument of further assurance, to be filed, registered or recorded in such manner and in such places as may be required by any present or future law to publish notice of and fully to protect the lien hereof upon, and the lien of the Mortgagee in, the Mortgaged Property.

Section 1.7. Right of Mortgagee to Defend and Uphold the Lien; Costs. (a) The Mortgagee shall have the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of the Mortgagor, which the Mortgagee, in its sole discretion, believes should be brought to protect its interest in or the title to the Mortgaged Property. The Mortgagee may take such action by attorneys selected by the Mortgagee.

(b)    If any action or proceeding be commenced, whether adversary or not (including an action to foreclose this Mortgage or to collect the Debt), to which action or proceeding the Mortgagee is made a party, or in which it becomes necessary to defend, uphold or enforce the lien of this Mortgage, the Mortgagee may prosecute, defend or participate in such action or proceeding by attorneys selected by the Mortgagee.

(c)    All sums paid by the Mortgagee for the expense of any such action or proceeding described in this Section including any appellate proceeding in connection herewith (including without limitation, reasonable attorneys' fees and disbursements at trial and appellate level) shall be paid by the Mortgagor to the Mortgagee, upon demand, together with interest from the date that such sum is advanced, payment made or expense incurred, to and including the date of reimbursement, computed at the default rate provided in the Note (the "Default Rate"). Any such sum paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note.

(d)    In the event the maturity of the principal amount of the Debt shall be accelerated by reason of a default under the Note, this Mortgage, or any other instrument given to secure the payments provided to be made pursuant to the Note, in addition to the costs and fees described above in Subsection (c), the Mortgagor shall pay to the Mortgagee, upon demand, together with the interest thereon at the Default Rate, the fees and costs actually incurred by the

Mortgagee, following such acceleration, in obtaining an appraisal of the fair market value of the Mortgaged Property prepared by an appraiser, duly qualified under applicable law and governmental regulations to issue appraisals of real property to the Mortgagor in connection with the approval of loans so secured, and the fees and costs actually incurred by the Mortgagee in obtaining an Environmental Survey of the Mortgaged Property, as defined below in <u>Subsection 1.22 (f)</u>. Upon reasonable notice to the Mortgagor, the Mortgagee, its officers, employees, agents and contractors, may enter the Mortgaged Property to conduct the Environmental Survey. Any such fees and costs paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note.

Section 1.8.   Insurance Coverage.   (a) The Mortgagor, until the Debt secured by this Mortgage shall be fully paid and satisfied, shall keep, as applicable, the Mortgaged Property, the Improvements and the Personal Property insured, by a company or companies and in form, amounts and with coverage and deductibles satisfactory to Mortgagee, with at least the following coverages:

(A)    comprehensive "special causes of loss" form of insurance (or its equivalent) on the Improvements and the Personal Property (I) in an amount equal to not less than one hundred percent (100%) of the "Full Replacement Cost," which for purposes of this Mortgage shall mean actual replacement value (exclusive of costs of excavations, foundations, underground utilities and footings); (II) written on a replacement cost basis and containing either an agreed amount endorsement with respect to the Improvements and Personal Property or a waiver of all co-insurance provisions; (III) providing for no deductible in excess of $10,000.00 for all such insurance coverage; (IV) at all times insuring against at least those hazards that are commonly insured against under a "special causes of loss" form of policy, as the same shall exist on the date hereof, and together with any increase in the scope of coverage provided under such form after the date hereof; and (V) if any of the Improvements or the use of the Mortgaged Property shall at any time constitute legal non-conforming structures or uses, providing coverage for contingent liability from Operation of Building Laws, Demolition Costs and Increased Cost of Construction Endorsements and containing an "Ordinance or Law Coverage" or "Enforcement" endorsement. In addition, Mortgagor shall obtain: (y) if any portion of the Improvements is currently or at any time in the future located in a "special flood hazard area" designated by the Federal Emergency Management Agency, flood hazard insurance in an amount equal to the maximum amount of such insurance available under the National Flood Insurance Act of 1968, the Flood Disaster Protection Act of 1973 or the National Flood Insurance Reform Act of 1994, as each may be amended; and (z) earthquake insurance in amounts and in form and substance reasonably satisfactory to Mortgagee in the event the Mortgaged Property is located in an area with a high degree of seismic risk, provided that the insurance pursuant to clauses (y) and (z) hereof shall be on terms consistent with the special causes of loss form required under this subsection (A);

(B)    commercial general liability insurance against claims for personal injury, bodily injury, death or property damage occurring upon, in or about the Mortgaged Property, with such insurance (I) to be on the so-called "occurrence" form with a general aggregate limit of not less than $2,000,000 and a per occurrence limit of not less than $1,000,000; (II) to continue at not less than the aforesaid limit until required to be changed by Mortgagee in writing by reason of changed economic conditions making such protection inadequate; and (III) to cover at least the

following hazards: (1) premises and operations; (2) products and completed operations; (3) independent contractors; and (4) contractual liability;

(C)    at all times during which construction, demolition repairs, soil testing or alterations are being made with respect to the Improvements (i) Mortgagor shall carry owner's liability insurance with limits of not less than $1,000,000 per occurrence and not less than $2,000,000 in the aggregate covering claims related to renovation, construction and demolition that may not be covered by or under the terms or provisions of the above mentioned (section 1.8 (B) commercial general liability insurance policy (including NY labor law claims, or any property damage); and (ii) the insurance provided for in subsection (a) above written in a so-called Builder's Risk Completed Value form (1) on a non-reporting basis, (2) against "special causes of losses" insured against pursuant to subsection (i) above, (3) including permission to occupy the Mortgaged Property, and (4) with an agreed amount endorsement waiving co-insurance provisions; in addition all contractors engaged by Mortgagor should maintain a) General liability insurance with limits of not less than $1,000,000 per occurrence and not less than $2,000,000 in the aggregate; b) all contractors involved in any exterior work should maintain additional excess coverage of $4,000,000 per occurrence, the General liability and excess coverage should cover claims related to the work done by the contractor and should not exclude NY labor law claims or contain a Hammer clause for work done by any independent contractor or subcontractor, in addition Mortgagor and Mortgagee should be added as an additional insured for ongoing and completed operations on a primary none contributory basis; c) workers compensation with NY state statuary limits and d) Auto liability with CSL limits of $1,000,000 and coverage shall include hired none owed auto liability coverage, contractor's policies should have a provision that it waves subrogation to the Mortgagor and Mortgagee;

(D)    upon sixty (60) days' written notice, such other reasonable insurance and in such reasonable amounts as Mortgagee from time to time may reasonably request against such other insurable hazards which at the time are commonly insured against for property similar to the Mortgaged Property located in or around the region in which the Mortgaged Property is located.

(i)    With respect to the Policies required to be maintained pursuant to clauses (A) through (D) above, Mortgagor shall use commercially reasonable efforts, consistent with those of prudent owners of institutional quality commercial real estate, to maintain insurance coverage against Losses resulting from acts of terrorism.

(ii)    All insurance provided for herein shall be obtained under valid and enforceable policies (collectively, the "Policies" or in the singular, the "Policy"), and shall be subject to the reasonable approval of Mortgagee as to insurance companies, amounts, deductibles, loss payees and insureds. The Policies shall be issued by financially sound and responsible insurance companies authorized to do business in the State and having a claims paying ability rating of "BBB" or better by S&P and "Baa2" by Moody's (or such other ratings promulgated from time to time by S&P and Moody's for properties and transactions similar in type and size to the Mortgaged Property and the Loan) and/or a general policy rating of "A" or better and a financial class of VIII or better by A.M. Best Company, Inc. The Policies described herein shall designate Mortgagee and its successors and assigns as additional insureds, mortgagees and/or loss payee as deemed appropriate by Mortgagee. Not less than ten (10) days prior to the expiration dates of any insurance coverage in place with respect to the Mortgaged Property, Mortgagor shall deliver to Mortgagee an Acord 28 or similar certificate, accompanied

by evidence satisfactory to Mortgagee of payment of the premiums due in connection therewith (the "Insurance Premiums"), and, as soon as available thereafter, certified copies of all renewal Policies.

(iii)    Any blanket insurance Policy shall specifically allocate to the Mortgaged Property the amount of coverage from time to time required hereunder and shall otherwise provide the same protection as would a separate Policy insuring only the Mortgaged Property in compliance with the provisions of Section 1.8(a).

(iv)    All Policies provided for or contemplated by Section 1.8(a), shall name Mortgagor as the insured and Mortgagee as the additional insured, as its interests may appear, and in the case of property damage, boiler and machinery, flood and earthquake insurance, shall contain a standard non-contributing mortgagee clause in favor of Mortgagee providing that the loss thereunder shall be payable to Mortgagee.

(v)    All Policies provided for in Section 1.8(a) shall contain clauses or endorsements to the effect that:

(A)    no act or negligence of Mortgagor, or anyone acting for Mortgagor, or of any Tenant or other occupant, or failure to comply with the provisions of any Policy, which might otherwise result in a forfeiture of the insurance or any part thereof, shall in any way affect the validity or enforceability of the insurance insofar as Mortgagee is concerned;

(B)    the Policies shall not be materially changed (other than to increase the coverage provided thereby) or canceled by the insurer without at least thirty (30) days' (ten (10) days' in the case of non-payment of premium) prior written notice to Mortgagee and any other party named therein as an additional insured;

(C)    the issuers thereof shall give written notice to Mortgagee if the Policies have not been renewed thirty (30) days prior to its expiration; and

(D)    Mortgagee shall not be liable for any Insurance Premiums thereon or subject to any assessments thereunder.

(vi)    If at any time Mortgagee is not in receipt of written evidence that all insurance required hereunder is in full force and effect, Mortgagee shall have the right, without notice to Mortgagor, to take such action as Mortgagee deems necessary to protect its interest in the Mortgaged Property, including, without limitation, obtaining such insurance coverage as Mortgagee in its sole discretion deems appropriate.  All premiums incurred by Mortgagee in connection with such action or in obtaining such insurance and keeping it in effect shall be paid by Mortgagor to Mortgagee upon demand and, until paid, shall be secured by the Mortgage and shall bear interest at the Default Rate.

(b)    In the event that any one or more of the properties comprising any of the Improvements or the Personal Property shall be damaged or destroyed, in whole or in part, by fire or other casualty, the Mortgagor shall promptly restore, replace, rebuild or alter the damaged or destroyed Improvements and Personal Property, in either case as nearly as possible to the condition the Improvements and Personal Property were in prior to such damage or destruction, without regard to the availability or adequacy of insurance proceeds and without regard to

whether the Mortgagee shall make any insurance proceeds obtained by it available to Mortgagor to pay for such work. If the damage be of such nature as to require the Mortgagor to construct a replacement for, or to alter the damaged or destroyed items in any material or substantial way, the Mortgagor shall, before commencing any such work, submit to the Mortgagee for the Mortgagee's approval, which shall not be unreasonably withheld or delayed, copies of the plans and specifications therefor to be prepared by an architect or engineer selected by the Mortgagor, subject to the approval of the Mortgagee, who shall then be licensed by the state in which the Mortgaged Property is located, and who shall have been placed in charge of the completion of the repair and restoration of the Mortgaged Property as nearly as possible to the condition the Mortgaged Property was in immediately prior to such casualty, with such alterations as may be reasonably approved by Mortgagee.

(c)    Until the full payment of the Debt, the Mortgagee shall have and hold the insurance policies described in this Section as collateral and further security for the payment of the Debt. In default of the Mortgagor's compliance with this Section, (i) the Mortgagor hereby agrees to indemnify and hold the Mortgagee harmless against all damage, loss or liability resulting from all risks that would have been covered by such insurance to the extent of the benefit which would have been received by the Mortgagee had the insurance coverage required to be obtained under this Subsection been obtained and maintained by the Mortgagor as required hereunder and (ii) the Mortgagee or its successors or assigns may, but shall have no obligation to, place such insurance as described above, from time to time, in an amount in the aggregate not exceeding the amount of insurance required to be obtained under this Section, for the purpose aforesaid, and pay the premium or premiums therefor. In the event of such payment, the Mortgagor will pay to the Mortgagee, its successors or assigns such premium or premiums so paid by the Mortgagee, upon demand, together with interest from the date that such sum is advanced, payment made or expense incurred, to and including the date of reimbursement, computed at the Default Rate. Any such sum paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, title or interest in, to or on or claim upon the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage and shall be deemed to be secured by this Mortgage and evidenced by the Note. In addition, in the event of a default of such payment by the Mortgagor or of the delivery of policies as provided above in this Section, the Debt shall, at the option of the Mortgagee, its successors or assigns, immediately become due and payable.

(d)    The insurance required pursuant to this Section may be effected by a policy of blanket insurance which may cover property in addition to the Mortgaged Property, provided that the coverage shall be the same as if the Mortgaged Property were the sole property insured and the Mortgagor shall deliver to the Mortgagee a duplicate original copy or copies thereof or original insurance certificates therefor.

Section 1.9.   Insurance Proceeds.   (a) The Mortgagor shall give the Mortgagee prompt notice of any damage or destruction by fire or casualty occurring at the Mortgaged Property and the Mortgagor shall make such temporary repairs as are necessary for the protection of the Improvements. The proceeds of any insurance paid on account of any damage or destruction to the Mortgaged Property shall be paid over to the Mortgagee to be applied as hereinafter provided. In the event any such insurance proceeds shall be paid to the Mortgagor or by two-party check delivered to the Mortgagor, the Mortgagor shall forthwith pay such insurance proceeds to the Mortgagee, or endorse such two-party check and deliver it to Mortgagee (as the case may be), and the Mortgagor shall be personally liable for any such insurance proceeds not paid to the

Mortgagee, notwithstanding any exculpation provision contained in this Mortgage or in any other Loan Document (as defined in <u>Section 4.1.1(h)</u> of this Mortgage).

(b)    If by reason of any Damage any sums are paid under any insurance policy hereinabove mentioned or contemplated, such sums shall be paid as follows:  If the aggregate insurance proceeds received by reason of any single instance of Damage shall be $5,000.00, or less, such insurance proceeds shall be paid over to the Mortgagor, who shall hold the same as a trust fund to be used first for the payment of the entire cost of the Restoration, and the balance, shall, at the option of the Mortgagee, be retained by the Mortgagor or be paid to the Mortgagee in reduction of the Debt; provided, however, that if the Mortgagor shall, at that time, be in default under this Mortgage beyond any applicable grace period, such proceeds shall be paid over to the Mortgagee and shall be applied first to the payment of interest accrued to the date of payment on the Debt and the balance in reduction of the principal portion thereof.

(c)    If the aggregate insurance proceeds to be received by reason of any single instance of Damage shall be more than $5,000.00, all such proceeds shall be paid to the Mortgagee, and each such insurance company concerned is hereby authorized and directed to make payment of such loss directly to the Mortgagee instead of the Mortgagor. The Mortgagee shall have the option, in its sole discretion, to apply any insurance proceeds it may receive by reason of damage or destruction to the Mortgaged Property toward payment of the Debt, or the same may be paid over either wholly or in part to the Mortgagor or to the heirs, successors or assigns of the Mortgagor for the repair of the Improvements and Personal Property or for the erection of new Improvements and the acquisition and installation of new Personal Property in their place, or for any other purpose or object satisfactory to the Mortgagee, and, if the Mortgagee shall receive and retain insurance money for such damage to the Mortgaged Property, the lien of this Mortgage shall be affected only by a reduction of the amount of said lien by the amount of such insurance money received and retained by the Mortgagee and applied toward payment of the obligations secured hereby.  Notwithstanding anything set forth herein or in the Note, the application of all or part of any insurance proceeds toward payment of the Debt shall not be considered a prepayment of the Debt and shall not be subject to any prepayment premiums or penalties (if any are provided for under the Note) in connection therewith.

(d)    The Mortgagee and its officers, employees and agents may inspect the Mortgaged Property from time to time to determine the Mortgagor's compliance with this Subsection.

<u>Section 1.10.</u>  <u>Condemnation.</u>  (a) The Mortgagor shall give the Mortgagee prompt notice of any condemnation or eminent domain proceedings affecting the Mortgaged Property.

(b)    The Mortgagor will not enter into any agreement for a Taking of the Mortgaged Property, or any part thereof, without the prior written consent of the Mortgagee.

(c)    In the event the whole or any part of the Mortgaged Property shall be the subject of a Taking, or shall be voluntarily conveyed in lieu thereof prior to the payment in full of the Debt, the Mortgagor shall pay to the Mortgagee, during the period from the date of a Taking (or conveyance in lieu thereof) to the payment in full of the Debt, the difference, if any, between the interest payable thereon at the rate stipulated in the Note in respect of the Debt and the interest actually paid to the Mortgagor by the entity exercising the right of eminent domain or to whom the Mortgaged Property was conveyed in lieu of the exercise of such power.

(d)    All Awards are hereby assigned to the Mortgagee. The Mortgagee and its legal representatives, successors and assigns (at its or their option) are hereby irrevocably authorized and empowered to collect and receive the Awards from the authorities making the same, to give proper receipts and acquittances therefor in any of their names or in the name of the Mortgagor, and to apply the same toward the payment of the Debt, the Note or this Mortgage, in such priority and proportions as the Mortgagee in its discretion shall deem proper, although the Debt secured by this Mortgage then may not be due and payable. If the Mortgaged Property is sold, through foreclosure or otherwise, prior to the receipt by the Mortgagee of any Awards, the Mortgagee shall have the right, whether or not a deficiency judgment on the Note shall have been sought, recovered or denied, to receive any Awards, or a portion thereof sufficient to pay the Debt, whichever is less.    Notwithstanding anything set forth herein or in the Note, the application of all or part of any Awards toward payment of the Debt shall be considered a prepayment of the Debt and shall not be subject to any prepayment premiums or penalties (if any are provided for under the Note) in connection therewith.

(e)    Notwithstanding any Taking, the Mortgagor shall continue to pay the Debt at the time and in the manner provided for in the Note and in this Mortgage and the Debt shall not be reduced until any Awards shall have been actually received and applied by the Mortgagee to the discharge of the Debt. The Mortgagor shall file and prosecute its claim or claims for any Awards in good faith and with due diligence and cause the same to be collected and paid over to the Mortgagee.  The Mortgagor, further, hereby irrevocably appoints the Mortgagee and its officers and employees the attorney-in-fact of the Mortgagor, coupled with an interest, to file, prosecute, settle, and compromise its claims for any Awards, to receive any Awards and to endorse any instruments with respect thereto. The Mortgagor further agrees that although it is hereby expressly agreed that the same shall not be necessary in any event, the Mortgagor shall, upon demand, of the Mortgagee, make, execute and deliver to it any and all assignments and other instruments sufficient for the purpose of assigning any Awards to the Mortgagee, free, clear and discharged of any encumbrances of any kind or nature whatsoever.

Section 1.11.  Restrictions on Sales and Transfers. The Mortgagor shall not, without the consent in writing of the Mortgagee, voluntarily change the use of the Mortgaged Property or sell, transfer, or convey its interest in the Mortgaged Property, or any part thereof in or by any one or series of transactions or permit the Mortgaged Property, or any part thereof or any interest therein to be sold, transferred, divided or conveyed.  For the purposes of this Section a "sale" shall include:  (I) if the Mortgagor is a corporation, an aggregate of not more than nineteen (19%) percent or more of its voting shares of stock may be sold, transferred, issued  or pledged, in any one or series of transactions; or, (II) if the Mortgagor is a partnership, limited liability company, joint venture or similar entity, an aggregate of not more than nineteen (19%) percent or more of the interest or interests in the Mortgagor be issued, sold, transferred or pledged or the majority of the interests therein be transferred or diluted by the admission of new partners, members or otherwise, in any one or series of transactions. Consent to one such transaction shall not be deemed to be a waiver of the right to require such consent to further or successive transactions.

Notwithstanding the foregoing, Lender's consent shall not be required in connection with the following:

(a)    provided no Event of Default shall then exist, gifts by the indirect owners of borrower parties for estate planning purposes of their indirect interests in Borrower or in any of borrower party's indirect partners, members or joint venturers to a revocable inter vivos trust having such natural person as both trustor and trustee of such trust and one or more immediate family members of such natural person as the sole beneficiaries of such trust, provided that after giving effect to such transfer, the transferor retains control over such inter vivos trust; and

(b)    the transfer of publicly traded shares on a nationally or internationally recognized stock exchange in any indirect equity owner of Borrower; and

(c)    the transfers among existing members of Borrower; and

(d)    any transfer(s) of up to forty-nine percent (49%) in the aggregate (for all such transfers from and after the Closing Date) of the non-controlling indirect interest in Borrower or Sole Member to anyone who is not an Embargoed Person.

Section 1.12.    Restrictions on Leasing and Further Encumbrances.  The Mortgagor shall not, without first obtaining the prior consent of the Mortgagee in each such instance:

(a)    mortgage, convey or grant a lien subordinate to this Mortgage on the Mortgaged Property, or on any or all of the Real Property, Improvements, Personal Property or Appurtenances of which it is comprised except to the Mortgagee;

(b)    collect any Rents for a period of more than one month in advance other than the security deposited in connection with a Lease;

(c)    further pledge, transfer, mortgage or otherwise encumber or assign the Leases and Rents except to the Mortgagee;

(d)    waive, excuse, condone, discount, set-off, compromise, cancel, terminate or in any manner release or discharge, any tenant under any Lease, of and from any obligations, covenants and agreements by said tenant to be kept, observed and performed, including the obligation to pay rent thereunder, in the manner and at the place and time specified therein;

(e)    cancel, terminate or consent to any surrender of any Lease, except as may be provided in any such Lease, or commence an action of ejectment or any summary proceedings for dispossession of the tenant under any Lease or execute any right to recapture provided in any Lease where such action, in the sole discretion of the Assignee, would have a material adverse effect on the value and/or the marketability of the Premises;

(f)    execute or permit to exist any Lease except for occupancy by the lessee under and pursuant to a written lease in form and substance satisfactory to the Mortgagee and with a lessee satisfactory to Mortgagee where such lease, in the sole discretion of the Mortgagee, would have a material adverse effect on the value and/or the marketability of the Mortgaged Property;

(g)    modify, amend, extend or renew any Lease, or permit the lessee under any Lease to assign the tenancy thereunder unless such lessee has such right of assignment under its lease without the necessity of obtaining Mortgagor's consent thereto where such action, in the sole discretion of the Mortgagee, would have a material adverse effect on the value and/or the marketability of the Mortgaged Property;

(h)    relocate any tenant under any Lease, nor consent to any modification of the express purposes for which such space has been leased, nor consent to any subletting of all or any portion of the Mortgaged Property, or to an assignment of any Lease or a further subletting of any sublease, except as may be provided in any Lease where such action, in the sole discretion of the Mortgagee, would have a material adverse effect on the value and/or marketability of the Mortgaged Property;

(i)    consent or agree to accept a subordination of any Lease to any mortgage or other encumbrance (other than this Mortgage) now or hereafter affecting the Mortgaged Property;

(j)    create or permit to exist any easement or restrictive covenant affecting the Mortgaged Property.

Consent to one such transaction shall not be deemed to be a waiver of the right to require such consent to future or successive transactions.

Section 1.13. Liens. The Mortgagor shall discharge of record, by the filing of a bond pursuant to court order or otherwise, any mechanic's or materialmen's lien or a judgment lien filed against the Mortgaged Property, within sixty (60) days after the filing thereof.

Section 1.14. No Recorded Restrictions Based on Race, Etc. The Mortgagor shall not execute or file or record any instrument which imposes a restriction upon the sale or occupancy of the Mortgaged Property on the basis of race, sex, religion, national origin, color or creed. Upon any violation of this undertaking, the Mortgagee may, at its option, declare the unpaid balance of the Debt to be immediately due and payable.

Section 1.15. Organization. Mortgagor is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of [Delaware]. Mortgagor is duly authorized to transact business in all other states in which Mortgagor is doing business, having obtained all necessary filings, governmental

licenses and approvals for each state in which Mortgagor is doing business. Specifically, Mortgagor is, and at all times shall be, duly qualified as a foreign LLC in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Mortgagor has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Mortgagor maintains an office at the address set forth in the preamble to this Mortgage. Unless Mortgagor has designated otherwise in writing, the principal office is the office at which Mortgagor keeps its books and records including its records concerning the Collateral. Mortgagor may not change the location of Mortgagor's state of organization or any change in Mortgagor's name. Mortgagor shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Mortgagor and Mortgagor's business activities.

Section 1.16. <u>Usury</u>. Nothing herein or in the Note, and none of the terms, covenants, conditions or obligations hereof or thereof shall impose or shall be deemed to impose upon the Mortgagor an obligation to make any payment, pay any interest or late charges in excess of, or do any act or take any action, or forbear from doing any act or taking any action, in violation of any statute, rule, ordinance or regulation in effect and effective as of the date of such payment, act, action or forbearance. In no event shall the Mortgagor be required to make any such illegal or impermissible payment or to take or do any such illegal or impermissible act or forbear from so doing or so taking nor shall any such failure so to pay or act or such forbearance be deemed a default hereunder. If the provisions of this Mortgage would at any time otherwise require payment by the Mortgagor to the Mortgagee of an amount of interest in excess of the maximum amount then permitted by law, the interest payments to the Mortgagee shall be reduced to the extent necessary so that the Mortgagee shall not receive interest in excess of such maximum amount. To the extent that, pursuant to the foregoing sentence, the Mortgagee shall receive interest payments hereunder in an amount less than the amount otherwise provided, such deficit (the "Interest Deficit") will accumulate and will be carried forward (without interest) until the Debt is paid in full. Interest otherwise payable to the Mortgagee hereunder for any subsequent period shall be increased by the maximum amount of the Interest Deficit that may be so added without causing the Mortgagee to receive interest in excess of the maximum amount then permitted by law. The terms, covenants, conditions and obligations hereof or of the Note requiring any such illegal or impermissible payment, act, action or forbearance on the part of the Mortgagor to be made or taken are deemed amended, modified or altered in such a manner as to bring all and each of them into conformity with the applicable statutes, rules, ordinances or regulations in respect of the Mortgagor and the Mortgagor hereby covenants and agrees to abide by, conform to and comply with any and all such terms, covenants, conditions and obligations as so amended, modified or altered.

Section 1.17. <u>Payment of Charges; Advances and Disbursements; Costs of Administration and Enforcement.</u>

(a)    Upon default of the Mortgagor in the performance of any term, covenant, condition or obligation by the Mortgagor to be performed under the Note or this Mortgage, or to pay, when due, any of the sums which the Mortgagor is required to pay as provided above in Section 1.4, the Mortgagee may, but shall not be obligated to, cure such default, or make such payment in the name and on behalf of the Mortgagor. All sums advanced and all expenses actually incurred at any time by the Mortgagee pursuant to this Section 1.17 or as otherwise provided under the terms, covenants, conditions or obligations of this Mortgage or under applicable law shall be reimbursed by the Mortgagor to the Mortgagee, upon demand, and shall bear interest from the date that such sum is advanced, payment made or expense incurred, to and including the date of reimbursement, computed at the Default Rate. Any such sum paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note.

(b)    The Mortgagor shall bear and pay all direct and incidental expenses (including, without limitation, reasonable attorneys' fees and disbursements for legal services of every kind at trial and appellate level) relating to the administration of this Mortgage and the other Loan Documents (as defined in Section 4.1.1(h) of this Mortgage) including, without limitation, the performance of new appraisals of the Mortgaged Property necessitated by (i) the Mortgagee's credit policy guidelines applicable to mortgage loans made by Mortgagee or (ii) any regulatory requirements imposed upon Mortgagee by any governmental or quasi-governmental entity having jurisdiction over Mortgagee. All such expenses paid by the Mortgagee shall be reimbursed by the Mortgagor to the Mortgagee, upon demand, and shall bear interest from the date that such sum is advanced, payment made or expense incurred, to and including the date of reimbursement, computed at the Default Rate. Any such sum paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note.

Section 1.18. Assignment of Leases and Agreements.

(a)    Neither the Mortgagor nor any tenant under any Lease shall have the right or power, as against the Mortgagee without its consent, to cancel, abridge or otherwise modify tenancies, subtenancies, leases or subleases now or hereafter in effect in respect of all or any part of the Mortgaged Property or the Improvements or to accept or make, as the case may be, prepayments of installments of rent to become due thereunder. The Rents of the Mortgaged Property are hereby transferred and assigned to the Mortgagee, and the Mortgagee shall have the right to enter upon the Mortgaged Property for the purpose of collecting the same and to let and operate the Mortgaged Property or any part thereof and to apply the Rents, either in whole or in part, as the Mortgagee elects, to the payment of all charges and expenses of the Mortgaged Property or in reduction of any part of the Debt or other sums due or to become due under the Note or this Mortgage. This assignment and grant shall continue in effect until the Debt and all

other obligations secured by this Mortgage are paid if full. The Mortgagee hereby waives the right to enter upon the Mortgaged Property for the purpose of collecting the Rents and the Mortgagor shall have a license to collect and receive the Rents until an Event of Default hereunder, but such license of the Mortgagor may be revoked by the Mortgagee upon any such Event of Default. From and after the occurrence of an Event of Default hereunder all Rents collected or received by Mortgagor shall be accepted and held for Mortgagee in trust and shall not be commingled with the funds and property of Mortgagor, but shall be promptly paid over to Mortgagee. The Mortgagee may apply all Rents or any part thereof so received hereunder, after the payment of all of its expenses including costs and attorneys' fees, to the Debt in such manner as it elects or at its option the entire amount or any part thereof so received may be released to the Mortgagor.

(b)    All future commercial Leases entered into after the execution of this Mortgage for the whole or any part of the Mortgaged Property shall contain the following provision:

> "Tenant/Lessee hereby agrees not to look to the mortgagee of (i)the fee interest in the premises demised by this Lease or (ii) the lease to which this Lease is subordinate, in such mortgagee's capacity as mortgagee, mortgagee in possession, successor in title to such interest, or otherwise, for accountability for any security deposit required by the landlord hereunder, unless said sums have actually been received by said mortgagee as security for the tenant's performance of this Lease."

Section 1.19. **Inconsistency With Related Laws**. Nothing contained in this Mortgage shall be construed as depriving the Mortgagee of any right or advantage available under applicable law of the state in which the Mortgaged Property is located, but all terms, covenants, conditions or obligations herein differing therefrom shall be construed as conferring additional and not substitute rights and advantages.

Section 1.20. **Right of Inspection**. The Mortgagee and its agents shall have the right to enter and inspect the Mortgaged Property at all reasonable times upon reasonable notice, and the Mortgagor shall reimburse the Mortgagee for each such inspection the sum of $500.00.

Section 1.21. **Late Charges**. In the event that any payment shall become overdue for a period in excess of ten (10) days or such payment cannot be debited on its due date (if applicable), a "late charge" of five (5%) percent, or such lesser amount as may be permitted by law in respect of the Mortgagor, of the amount so overdue may be charged by the Mortgagee for the purpose of defraying the expenses incident to handling such delinquent payment.

Section 1.22. **Environmental Matters**. (a) For purposes of this Mortgage, the following terms shall have the following meanings:

"Environmental Complaint" - shall mean any judgment, lien, order, complaint, notice, citation, action, proceeding or investigation pending before any Governmental Authority, including, without limitation, any environmental regulatory body, with respect to or threatened against or affecting the Mortgagor or relating to its business, assets, property or facilities or the Mortgaged Property, in connection with any Hazardous Material or any Hazardous Discharge or any Environmental Law.

"Environmental Laws" - shall mean any applicable federal, state or local laws, rules, regulations, resolutions, ordinances, directives or orders (whether now existing or hereafter enacted or promulgated) or any judicial or administrative interpretation of such laws, rules, regulations, resolutions, ordinances, directives or orders or any other applicable determination regarding land, water, air, health, safety or environment including, for example but not limited to, the Federal Statutes and the State Statute.

"Governmental Authority" - shall mean any federal, state, or local government, governing body, agency, court, tribunal, authority, subdivision, bureau or other recognized body having jurisdiction to enact, promulgate, interpret, enforce, review or repeal any Environmental Law.

"Hazardous Discharge" - shall mean any release of a Hazardous Material caused by the seeping, spilling, leaking, pumping, pouring, emitting, using, emptying, discharging, injecting, escaping, leaching, dumping or disposing of any Hazardous Material into the environment, and any liability for the costs of any cleanup or other remedial action.

"Hazardous Materials" - shall mean, without limitation, flammables, explosives, radioactive materials, radon, asbestos, urea formaldehyde foam insulation, polychlorinated biphenyls or related or similar materials, petroleum products, explosives, radioactive materials, or any other hazardous or toxic or harmful materials, wastes and substances or any other chemical, material, substance or element which is hereinafter defined, determined, identified, prohibited, limited or regulated by the Environmental Laws, or any other chemical, material, substance or element which is known to be harmful to the health or safety of occupants of property or which is hereinafter defined as a hazardous or toxic substance by any Federal, State, or local law, ordinance, rule or regulation, including, but not limited to the Toxic Substances Control Act (15 U.S.C. 2601 et seq.), the Federal Water Pollution Control Act (33 U.S.C. 1251 et seq.), the Clean Air Act (42 U.S.C. 7401 et seq.), the Resource Conservation and Recovery Act (42 U.S.C. 6901 et seq.), the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. 9601 et seq.), the Hazardous Materials Transportation Act (49 U.S.C. 1801 et seq.), and/or the regulations promulgated in relation thereto, all as the same may be amended from time to time (collectively, the "Federal Statutes"); the New York State Environmental Conservation Law Article 27, Title 13 (the "State Statute") and the regulations promulgated in relation thereto, all as the same may be amended from time to time.

(b)    The Mortgagor covenants, represents and warrants that:

(i)    to the best of the Mortgagor's knowledge, after due inquiry and investigation, the Mortgaged Property has never been used by previous owners, operators or occupants or the Mortgagor to generate, manufacture, refine, transport, treat, store, handle or dispose, transfer, produce, process or in any manner deal with any Hazardous Material,

(ii)    the Mortgagor has not received a summons, citation, directive, letter or other communication, written or oral, from any Government Authority concerning any intentional or unintentional action or omission on the Mortgagor's part which had resulted in the violation of any Environmental Laws, as the same may relate to the Mortgaged Property,

(iii)    to the best of the Mortgagor's knowledge, after due inquiry and investigation, no lien has been attached to any revenues or any real or personal property owned by the Mortgagor and located in the state where the Mortgaged Property is located, including, but not limited to the Mortgaged Property, for "Damages" and/or "Cleanup and Removal Costs", as such terms are hereinafter defined in any Environmental Law, or arising from an intentional or unintentional act or omission in violation thereof by the Mortgagor or by any previous owner and/or operator of such real or personal property, including, but not limited to the Mortgaged Property,

(iv)    the Mortgagor has duly complied, and shall continue to comply, with the provisions of the Environmental Laws governing it, its business, assets, property, facilities and the Mortgaged Property, and shall keep the Mortgaged Property free and clear of any liens imposed pursuant to such laws,

(v)    the Mortgagor shall not, and shall not permit any of its officers, partners, members, employees, agents, contractors, licensees, tenants, occupants or others to generate, manufacture, refine, transport, treat, store, handle, dispose, transfer, produce, process or in any manner deal with any Hazardous Material on the Mortgaged Property except in accordance with all Environmental Laws applicable thereto,

(vi)    to the best of Mortgagor's knowledge, after due inquiry and investigation, there is not now outstanding any Environmental Complaint issued by any Governmental Authority to the Mortgagor or relating to the Mortgagor's business, assets, property, and facilities or the Mortgaged Property under any Environmental Law, and there is not now existing any condition which, if known by the proper authorities, could result in any Environmental Complaint, and that

(vii)    the Mortgagor has, and will continue to have, all necessary licenses, certificates and permits under the Environmental Laws relating to the Mortgagor and its facilities, property, assets, and business, and the Mortgaged Property and the foregoing are in compliance with all Environmental Laws.

(c)    If the Mortgagor receives any notice of (i) the presence of Hazardous Materials on the Mortgaged Property, (ii) any violation of or noncompliance with any Environmental Law, (iii) the occurrence of a Hazardous Discharge on or about any asset, business, facility or property of the Mortgagor or caused by the Mortgagor, or (iv) any Environmental Complaint affecting the Mortgagor or the Mortgaged Property or the Mortgagor's operations, assets, business, facilities or properties, then the Mortgagor will give written notice of the foregoing to the Mortgagee within ten (10) days of receipt thereof and shall (1) promptly comply with the Environmental Laws and all other laws, regulations, resolutions and ordinances to correct, contain, cleanup, remove, resolve or minimize the impact of such Hazardous Materials, Environmental Discharge or Environmental Complaint and (2) shall at the Mortgagee's option, (i) post a bond from a surety or (ii) cause a lending institution to issue a letter of credit for the benefit of the Mortgagee and any Governmental Authority requiring the same; the surety or the lending institution, and the form, the substance and the amount of the bond or letter of credit to be satisfactory to the Mortgagee and satisfactory to the applicable Governmental Authority, or shall give to the Mortgagee and the applicable Governmental Authority such other security satisfactory in form, substance and amount to both the Mortgagee and the applicable Governmental Authority to assure that the Mortgagor does correct, contain, cleanup, remove, resolve or minimize the impact of such Hazardous Materials, Environmental Discharge or Environmental Complaint.

(d)    Notwithstanding the foregoing provisions of Subsection (c) above, the Mortgagor shall have the right (i) to contest (a "Contest") by appropriate administrative, legal or equitable proceedings, diligently prosecuted, in good faith, in its name or in the name of the Mortgagee if required by law, at the sole cost and expense of the Mortgagor, the validity or applicability of any Environmental Laws, or any Environmental Complaint against the Mortgaged Property or the Mortgagor, and (ii) to postpone compliance with the Environmental Laws until the final determination of such Contest without violating the provisions of this Mortgage provided that Mortgagor delivers to Mortgagee not less than ten (10) business days' prior written notice, however:

(i)    enforcement proceedings with respect to any and all Environmental Laws are deferred or stayed during the pendency of the Contest,

(ii)    the Mortgagee shall not be subject to any civil or criminal or other penalties or liabilities, costs or expenses by reason of any such Contest or postponement in complying with the Environmental Laws,

(iii)    the Mortgagor, at Mortgagee's request, shall (i) post a bond, cause the issuance of a letter of credit or provide such other security required under the provisions of Subsection (c) above,

(iv)    Mortgagee shall have confirmed in writing, prior to the commencement of such Contest, that the lien of this Mortgage shall not be impaired in the sole judgment of the Mortgagee and no default shall exist under this Mortgage,

(v)    any Contest shall be instituted promptly after Mortgagor receives notice of the existence of any Environmental Law which imposes an obligation upon the Mortgagor or the Mortgagee or the Mortgagor receives notice of any Environmental Complaint which asserts any obligation or liability affecting the Mortgagor, the Mortgagee or all or any portion of the Mortgaged Property, and such Contest shall at all times be diligently prosecuted until a final disposition is obtained that negates such assertion of obligation or liability,

(vi)    the Mortgagor shall give the Mortgagee a monthly written report, during the period of a Contest, on the Mortgagor's progress with respect thereto, and shall promptly give the Mortgagee such other information with respect thereto as the Mortgagee shall reasonably request, and

(vii)    The Mortgagee will, at the expense of the Mortgagor, execute and deliver any documents jurisdictionally necessary or proper to prosecute such Contest proceedings. The Mortgagee, at the cost and expense of the Mortgagor, shall have the right (but not the obligation) to join in any Contest.

(e)    Without limitation of the Mortgagee's rights under this Mortgage or applicable law, the Mortgagee shall have the right, but not the obligation, to exercise any of its rights to cure as provided in this Mortgage or to enter onto the Mortgaged Property or to take such other actions as it deems necessary or advisable to correct, contain, cleanup, remove, resolve or minimize the impact of, or otherwise deal with, any such Hazardous Material, Hazardous Discharge or Environmental Complaint upon its receipt of any notice from any person or entity or Governmental Authority, informing the Mortgagee of such Hazardous Material, Hazardous Discharge or Environmental Complaint, which if true, could adversely affect the Mortgagor or any part of the Mortgaged Property or which, in the sole opinion of the Mortgagee, could adversely affect its collateral security under this Mortgage. All reasonable costs and expenses incurred and paid by the Mortgagee in the exercise of any such rights shall be paid by the Mortgagor to the Mortgagee upon demand, together with interest from the date that such sum is advanced, payment made or expense incurred, to and including the date of reimbursement, computed at the Default Rate. Any such sum paid by the Mortgagee and the interest thereon shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note.

(f)    Upon reasonable notice to the Mortgagor, the Mortgagee, its officers, employees, agents and contractors, may enter the Mortgaged Property to inspect it and to conduct, complete and take such tests, samples, analyses and other processes (an "Environmental Survey") as the Mortgagee shall require to determine the Mortgagor's compliance with this

Subsection and the Environmental Laws. The costs, expenses and fees of the Mortgagee of such entry, inspection, tests, samples, analyses and processes shall be paid and reimbursed by the Mortgagor to the Mortgagee, upon demand, together with interest from the date that such sum is advanced, payment made or expense incurred, to and including the date of reimbursement, computed at the Default Rate. Any such sum paid by the Mortgagee, with interest thereon at the rate provided to be paid on the indebtedness secured by this Mortgage, shall be a lien on the Mortgaged Property prior to any claim, lien, right, title or interest in, to or on the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage, and shall be deemed to be secured by this Mortgage and evidenced by the Note.

(g)    Upon written request, the Mortgagor shall provide to the Mortgagee the following information pertaining to all operations conducted in or on the Mortgaged Property:

(i)    copies of all licenses, certificates and permits under the Environmental Laws;

(ii)    material safety data sheets and maps, diagrams and site plans showing the location of all storage areas and storage tanks for all Hazardous Materials or other chemicals in, used at, manufactured at, brought to or stored at the Mortgaged Property;

(iii)    copies of all materials filed with any Governmental Authority;

(iv)    a description of the operations and processes of the Mortgagor; and

(v)    any other information which the Mortgagee may reasonably require.

(h)    The Mortgagor and each of the general partners in Mortgagor if Mortgagor is a partnership and each of the members of Mortgagor if Mortgagor is a limited liability company, covenants and agrees, at its sole cost and expense, to indemnify, protect, and save the Mortgagee harmless against and from any and all damages, losses, liabilities, obligations, penalties, claims, litigation, demands, defenses, judgments, suits, proceedings, costs, disbursements or expenses of any kind or of any nature whatsoever (including, without limitation, costs and reasonable attorneys' fees and disbursements, generally, and at trial and appellate level and experts' fees and disbursements) which may at any time be imposed upon, incurred by or asserted or awarded against the Mortgagee and arising from or out of:

(i)    the Mortgagor's failure to perform and comply with this Section, or

(ii)    any Hazardous Material, any Hazardous Discharge, any Environmental Complaint, or any Environmental Law applicable to the Mortgagor, its operations, business, assets, property or facilities, or the Mortgaged Property, or

(iii)    the imposition of any lien against the Mortgaged Property to the extent of damages caused by, or the extent of the recovery of any costs for the cleanup, release or threatened release of any Hazardous Material; or

(iv)    any action against the Mortgagor under this indemnity or the assertion by the Indemnitor of any defense to its obligations hereunder.

Section 1.23.  Trust Funds.  The Mortgagor will receive the advances secured by this Mortgage and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of improvement (as defined in Section 13 of the Lien Law of the State of New York, whether or not the Mortgaged Property is located in that State), and the Mortgagor will apply the same first to the payment of the cost of improvement before using any part of the total of the same for any other purpose.

Section 1.24.  Assessments.    To Mortgagor's knowledge, there are no pending or proposed special or other assessments for public improvements or otherwise affecting the Mortgaged Property, nor are there any contemplated improvements to the Mortgaged Property that may result in such special or other assessments.

Section 1.25  Use of Mortgaged Property.  The Mortgaged Property is used exclusively for commercial purposes and other appurtenant and related uses.

Section 1.26  Certificate of Occupancy; Licenses.  All certifications, permits, licenses and approvals, including, without limitation, certificates of completion or occupancy and any applicable liquor license required for the legal use, occupancy and operation of the Mortgaged Property for the purpose intended herein, have been obtained and are valid and in full force and effect.

Section 1.27  Flood Zone.  The Mortgaged Property is not located in an area identified by the Federal Emergency Management Agency as an area having special flood hazards.

Section 1.28  Physical Condition.  The Mortgaged Property, including, without limitation, all buildings, improvements, parking facilities, sidewalks, storm drainage systems, roofs, plumbing systems, HVAC systems, fire protection systems, electrical systems, equipment, elevators, exterior sidings and doors, landscaping, irrigation systems and all structural components, are in good condition, order and repair in all material respects.  There exists no structural or other material defects or damages in the Mortgaged Property, whether latent or otherwise.  Mortgagor has not received notice from any insurance company or bonding company of any defects or inadequacies in the Mortgaged Property, or any part thereof, which would adversely affect the insurability of the same or cause the imposition of extraordinary premiums or charges thereon or of any termination or threatened termination of any policy of insurance or bond.

Section 1.29    Boundaries.    (a) None of the Improvements which were included in determining the appraised value of the Mortgaged Property lie outside the boundaries and building restriction lines of the Mortgaged Property to any material extent, and (b) no improvements on adjoining properties encroach upon the Mortgaged Property and no easements or other encumbrances upon the Mortgaged Property encroach upon any of the Improvements so as to materially affect the value or marketability of the Mortgaged Property.

Section 1.30    Leases and Rent Roll.    If, as and to the extent that there are tenants occupying the Mortgaged Property, Mortgagor has delivered to Mortgagee a true, correct and complete rent roll for the Mortgaged Property (a "**Rent Roll**") which includes all Leases affecting the Mortgaged Property (including schedules for all executed Leases for Tenants not yet in occupancy or under which the rent commencement date has not occurred).    Except as set forth in the Rent Roll (as same has been updated by written notice thereof to Mortgagee) and estoppel certificates delivered to Mortgagee on or prior to the date hereof:  (a) each Lease is in full force and effect; (b) the premises demised under the Leases have been completed and the Tenants under the Leases have accepted possession of and are in occupancy of all of their respective demised premises; (c) the Tenants under the Leases have commenced the payment of rent under the Leases, there are no offsets, claims or defenses to the enforcement thereof, and Mortgagor has no monetary obligations to any Tenant under any Lease; (d) all rents due and payable under the Leases have been paid and no portion thereof has been paid for any period more than thirty (30) days in advance; (e) the rent payable under each Lease is the amount of fixed rent set forth in the Rent Roll, and there is no claim or basis for a claim by the Tenant thereunder for an offset or adjustment to the rent; (f) no Tenant has made any written claim of a material default against the landlord under any Lease which remains outstanding nor has Mortgagor received, by telephonic, in-person, e-mail or other communication, any notice of a material default under any Lease; (g) there is no present material default by the Tenant under any Lease; (h) all security deposits under the Leases have been collected by Mortgagor; (i) Mortgagor is the sole owner of the entire landlord's interest in each Lease; (j) each Lease is the valid, binding and enforceable obligation of Mortgagor and the applicable Tenant thereunder and there are no agreements with the Tenants under the Leases other than as expressly set forth in the Leases; (k) no person or entity has any possessory interest in, or right to occupy, the Mortgaged Property or any portion thereof except under the terms of a Lease; (l) none of the Leases contains any option or offer to purchase or right of first refusal to purchase the Mortgaged Property or any part thereof; (m) neither the Leases nor the rents payable thereunder have been assigned, pledged or hypothecated except to Mortgagee, and no other Person has any interest therein except the Tenants thereunder; and (n) no conditions exist which now give any Tenant or party the right to "go dark" pursuant to the provision of its Lease.

Section 1.31    Filing and Recording Taxes.    All mortgage, mortgage recording, stamp, intangible or other similar tax required to be paid in connection with the execution, delivery, recordation, filing, registration, perfection or enforcement of any this Mortgage and the Loan Documents, have been paid or will be paid, the Mortgage is enforceable in accordance with its terms by Mortgagee (or any subsequent holder thereof).

Section 1.32    Illegal Activity. No portion of the Mortgaged Property has been or will be purchased, improved, equipped or fixtured with proceeds of any illegal activity, and no part of the proceeds of the Loan will be used in connection with any illegal activity.

Section 1.33    Construction Expenses. All costs and expenses of any and all labor, materials, supplies and equipment used in the construction maintenance or repair of the Improvements by Mortgagor through the date hereof have been paid in full. Any such expenses which are not payable by Mortgagor are the responsibility of a Tenant at the Mortgaged Property. To Mortgagor's knowledge, there are no claims for payment for work, labor or materials affecting the Mortgaged Property for which Mortgagor is responsible which are or may become a lien prior to, or of equal priority with, the liens created by this Mortgage.

Section 1.34    Compliance. The use and operation of the Mortgaged Property comply in all material respects with all Legal Requirements, including, without limitation, building and zoning ordinances and codes and the Americans with Disabilities Act. Mortgagor is not in default or violation of any order, writ, injunction, decree or demand of any Governmental Authority and Mortgagor has received no written notice of any such default or violation. There has not been committed by Mortgagor or, to Mortgagor's knowledge, any other person in occupancy of or involved with the operation or use of the Mortgaged Property any act or omission affording any Governmental Authority the right of forfeiture as against the Mortgaged Property or any part thereof or any monies paid in performance of Mortgagor's obligations under this Mortgage, the Note or any of the documents delivered in connection therewith. For purposes hereof, "Legal Requirements" shall mean all statutes, laws, rules, orders, regulations, ordinances, judgments, decrees and injunctions of Governmental Authorities affecting the Mortgaged Property or any part thereof, or the construction, use, alteration or operation thereof, whether now or hereafter enacted and in force, and all permits, licenses, authorizations and regulations relating thereto, and all covenants, agreements, restrictions and encumbrances contained in any instruments, either of record or known to Mortgagor, at any time in force affecting the Mortgaged Property or any part thereof, including, without limitation, any which may (a) require repairs, modifications or alterations in or to the Mortgaged Property or any part thereof, or (b) in any way limit the use and enjoyment thereof.

Section 1.35    Special Purpose Entity. At all times that the Note is outstanding, the Mortgagor shall have no other purpose and shall conduct no other business, other than the ownership, operation, management and sale of the Mortgaged Property.

Section 1.36. Specific Clause. This Mortgage does not cover real property principally improved or to be improved by one or more structures containing in the aggregate not more than six (6) residential dwelling units, each having their own separate cooking facilities.

Section 1.37. Indemnified Taxes. (a) All payments made by Borrower hereunder shall be made free and clear of, and without reduction for or on account of, Indemnified Taxes, excluding

(i) Indemnified Taxes measured by Lender's net income, and franchise taxes imposed on it, by the jurisdiction under the laws of which Lender is resident or organized, or any political subdivision thereof, (ii) taxes measured by Lender's overall net income, and franchise taxes imposed on it, by the jurisdiction of Lender's applicable lending office or any political subdivision thereof or in which Lender is resident or engaged in business, and (iii) withholding taxes imposed by the United States of America, any state, commonwealth, protectorate territory or any political subdivision or taxing authority thereof or therein as a result of the failure of Lender which is a Non-U.S. Entity to comply with the terms of paragraph (b) below. If any non-excluded Indemnified Taxes are required to be withheld from any amounts payable to Lender, the amounts so payable to Lender shall be increased to the extent necessary to yield to Lender (after payment of all non-excluded Indemnified Taxes) interest or any such other amounts payable hereunder at the rate or in the amounts specified hereunder. Whenever any non-excluded Indemnified Tax is payable pursuant to Legal Requirements by Borrower, Borrower shall send to Lender an original official receipt showing payment of such non excluded Indemnified Tax or other evidence of payment reasonably satisfactory to Lender. Borrower hereby indemnifies Lender for any incremental taxes, interest or penalties that may become payable by Lender which may result from any failure by Borrower to pay any such non excluded Indemnified Tax when due to the appropriate taxing authority or any failure by Borrower to remit to Lender the required receipts or other required documentary evidence.

(ii)    In the event that Lender or any successor and/or assign of Lender is not incorporated under the laws of the United States of America or a state thereof (a "Non-U.S. Entity") Lender agrees that, prior to the first date on which any payment is due such entity hereunder, it will deliver to Borrower two duly completed copies of United States Internal Revenue Service Form W 8BEN, W-8IMY or W 8ECI or successor applicable form, as the case may be, certifying in each case that such entity is entitled to receive payments under the Note, without deduction or withholding of any United States federal income taxes. Each entity required to deliver to Borrower a Form W 8BEN, W-8IMY or W 8ECI pursuant to the preceding sentence further undertakes to deliver to Borrower two further copies of such forms, or successor applicable forms, or other manner of certification, as the case may be, on or before the date that any such form expires (which, in the case of the Form W 8ECI, is the last day of each U.S. taxable year of the Non-U.S. Entity) or becomes obsolete or after the occurrence of any event requiring a change in the most recent form previously delivered by it to Borrower, and such other extensions or renewals thereof as may reasonably be requested by Borrower, certifying in the case of a Form W 8BEN, W-8IMY or W 8ECI that such entity is entitled to receive payments under the Note without deduction or withholding of any United States federal income taxes, unless in any such case an event (including, without limitation, any change in treaty, law or regulation) has occurred prior to the date on which any such delivery would otherwise be required which renders all such forms inapplicable or which would prevent such entity from duly completing and delivering any such form with respect to it and such entity advises Borrower that it is not capable of receiving payments without any deduction or withholding of United States federal income tax.

ARTICLE II

## AFFIRMATIVE COVENANTS

Mortgagor covenants and agrees with Mortgagee that, so long as this Mortgage remains in effect, Mortgagor will:

Section 2.1    Notices of Claims and Litigation. Promptly inform Mortgagee in writing of (1) all material adverse changes in Mortgagor's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Mortgagor or any guarantor of the Debt, or any portion thereof (the "Guarantor") which is reasonably likely to materially affect the financial condition of Mortgagor or the financial condition of any Guarantor. Mortgagor (i) shall observe and perform all the obligations imposed upon the landlord under the Leases and shall not do or permit to be done anything to impair the value of any of the Leases as security for the Loan; (ii) shall promptly send copies to Mortgagee of all notices of default which Mortgagor shall send or receive thereunder; (iii) shall enforce all of the material terms, covenants and conditions contained in the Leases upon the part of the tenant thereunder to be observed or performed; (iv) shall not collect any of the Rents more than one (1) month in advance (except security deposits shall not be deemed Rents collected in advance); (v) shall not execute any other assignment of the landlord's interest in any of the Leases or the Rents; and (vi) shall not consent to any assignment of or subletting under any Leases not in accordance with their terms, without the prior written consent of Mortgagee.

Section 2.2    Financial Records. Maintain its books and records in accordance with sound accounting method commonly used for assets similarly situated to the Property, applied on a consistent basis, and permit Mortgagee to examine and audit Mortgagor's books and records at all reasonable times.

Section 2.3    Financial Statements. Furnish Mortgagee with the following, upon Mortgagee's request:

(i)    Annual Statements. Mortgagor's balance sheet and income statement for the year ended, certified by a certified public accountant reasonably satisfactory to Mortgagee and personal financial statements for the Guarantors, if any, together with bank statements confirming liquidity stated therein.

(ii)    Tax Returns for Mortgagor and Guarantor. Federal and other governmental tax returns of the Mortgagor and Guarantor, prepared by a certified public accountant satisfactory to Mortgagee.

(iii)    Rent Roll. A certified rent roll and updated leases with respect to the Mortgaged Property.

To the extent that Mortgagor or and guarantor does not comply with this Section 2.3 within thirty

(30) days after notice thereof by Mortgagee, Mortgagor shall be responsible for a fee of Five Hundred ($500.00) Dollars for each violation thereof plus an additional One Hundred ($100.00) Dollar fee for each month thereafter that Mortgagor or Guarantor remains in violation thereof.

All financial reports required to be provided under this Mortgage shall be prepared in accordance with sound accounting method commonly used for assets similarly situated to the Property, applied on a consistent basis, and certified by Mortgagor as being true and correct.

Section 2.4    Registry.    Borrower shall maintain at its principal executive office (or such other office or agency of the Borrower as it may designate from time to time by notice to Lender) a register (the "Register") showing the principal amount (and stated interest) of the Loans, Debt and related Notes held by each Lender, the amounts owing to each Lender, and the interests therein of each Lender, from time to time, and such Register shall, absent manifest error, conclusively be presumed to be correct and accurate.  Notwithstanding anything to the contrary contained in this agreement, the Note and Loan made under this agreement are registered obligations and the right, title, and interest of each Lender and their assignees in and to such Loan, Debt and Note (or any rights under this agreement) shall be transferable only upon notation of such transfer in the Register.  It is the intent of the parties hereto that the Obligations and interests therein be in "registered form" for purposes of Code Sections 163(f), 871(h) and 881(c) and Treasury Regulations Section 5f.103-1(c) and 1.871-14, and the provisions of this Section 10.1 shall be interpreted and applied consistently with such purpose. The Borrower shall keep the Register open and available at all times during normal business hours for inspection of any Lender or its respective representatives.

Section 2.5    Insurance.    Maintain the insurance required pursuant to Section 1.8 herein.

Section 2.6    Zoning.    Mortgagor shall not initiate or consent to any zoning reclassification of any portion of the Mortgaged Property or seek any variance under any existing zoning ordinance or use or permit the use of any portion of the Mortgaged Property in any manner that could result in such use becoming a non-conforming use under any zoning ordinance or any other applicable land use law, rule or regulation, without the prior consent of Mortgagee.

Section 2.7    Guaranties.  Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Mortgagee, executed by the Guarantors (if any) on Mortgagee's forms, and in the amounts and under the conditions set forth in those guaranties.

Section 2.8    Other Agreements.  Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Mortgagor and any other party and notify Mortgagee immediately in writing of any default in connection with any other such agreements.

Section 2.9    Loan Proceeds.  Use all Loan proceeds solely for the purchase of the Mortgaged Property and working capital purposes only, unless specifically consented to the

contrary by Mortgagee in writing.

Section 2.10   Estoppel Statement.   (A)   After request by Mortgagee, Mortgagor shall within five (5) Business Days furnish Mortgagee with a statement, duly acknowledged and certified, setting forth (i) the amount of the original principal amount of the Note, (ii) the rate of interest on the Note, (iii) the unpaid principal amount of the Note, (iv) the date installments of interest and/or principal were last paid, (v) any offsets or defenses to the payment of the Debt, if any, and (vi) that the Note, this Mortgage and the other Loan Documents are valid, legal and binding obligations and have not been modified or if modified, giving particulars of such modification.

(B)   Mortgagor shall use its  commercially reasonable efforts to deliver to Mortgagee, promptly upon request, duly executed estoppel certificates from any one or more Tenants as required by Mortgagee attesting to such facts regarding the related Lease as Mortgagee may require, including, but not limited to attestations that each Lease covered thereby is in full force and effect with no defaults thereunder on the part of any party, that none of the rents have been paid more than one month in advance, except as security, and that the Tenant claims no defense or offset against the full and timely performance of its obligations under the Lease (the "Estoppel").

Section 2.11   Performance. Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Mortgage, in the Loan Documents, and in all other instruments and agreements between Mortgagor and Mortgagee. Mortgagor shall notify Mortgagee immediately in writing of any default in connection with any agreement.

Section 2.12   Operations.   Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Mortgagee of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

Section 2.13   Compliance with Governmental Requirements. (a)   Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Mortgagor's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Mortgagor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Mortgagor has notified Mortgagee in writing prior to doing so and so long as, in Mortgagee's sole and absolute opinion, Mortgagee's interests in the Collateral are not jeopardized. Mortgagee may require Mortgagor to post adequate security or a surety bond, satisfactory to Mortgagee, to protect Mortgagee's interest.

(b) Patriot Act. Borrower will use its good faith and commercially reasonable efforts to comply with the Patriot Act and all applicable requirements of governmental authorities having jurisdiction over Borrower and/or the Property, including anti-money laundering laws and laws

pertaining to terrorism and shall put into place all policies, practices and procedures as required by legal requirements to insure that each borrower party and each of their direct or indirect owners are in compliance with the representations, warranties and covenants set forth in this Section 2.13. Lender shall have the right to audit Borrower's compliance with the Patriot Act and all applicable requirements of governmental authorities having jurisdiction over Borrower and/or the Property, including anti-money laundering laws and laws relating to terrorism. In the event that Borrower fails to comply with the Patriot Act or any such requirements of governmental authorities, then Lender may, at its option, cause Borrower to comply therewith and any and all reasonable costs and expenses incurred by Agent in connection therewith shall be secured by the Mortgage and the other Loan Documents and shall be due and payable promptly following written demand.

(c)    Neither Borrower nor any borrower party nor any direct or indirect owner of any borrower party (i) is listed on any government lists, (ii) is a person who has been determined by competent authority to be subject to the prohibitions contained in Presidential Executive Order No. 13224 (Sept. 23, 2001) or any other similar prohibitions contained in the rules and regulations of OFAC or in any enabling legislation or other Presidential Executive Orders in respect thereof, (iii) has been previously indicted for or convicted of any felony involving a crime or crimes of moral turpitude or for any Patriot Act Offense, or (iv) is currently under investigation by any governmental authority for alleged criminal activity. For purposes hereof, the term "Patriot Act Offense" means any violation of the criminal laws of the United States of America or of any of the several states, or that would be a criminal violation if committed within the jurisdiction of the United States of America or any of the several states, relating to terrorism or the laundering of monetary instruments, including any offense under (A) the criminal laws against terrorism; (B) the Anti-Money Laundering Laws, (C) the Bank Secrecy Act, as amended, (D) the Money Laundering Control Act of 1986, as amended, or (E) the Patriot Act. "Patriot Act Offense" also includes the crimes of conspiracy to commit, or aiding and abetting another to commit, a Patriot Act Offense. For purposes hereof, the term "Government Lists" means (1) the Specially Designated Nationals and Blocked Persons Lists maintained by the Office of Foreign Assets Control ("OFAC"), (2) any other list of terrorists, terrorist organizations or narcotics traffickers maintained pursuant to any of the Rules and Regulations of OFAC that Agent notified Borrower in writing is now included in "Government Lists", or (3) any similar lists maintained by the United States Department of State, the United States Department of Commerce or any other Governmental Authority or pursuant to any Executive Order of the President of the United States of America that Agent notified Borrower in writing is now included in "Government Lists".

(d)    At all times throughout the term of the Loan, including after giving effect to any Transfers permitted pursuant to the Loan Documents, (a) none of the funds or other assets of Borrower or any borrower party or any direct or indirect owner thereof are or shall constitute property of, or are or shall be beneficially owned, directly or indirectly, by any person subject to trade restrictions under United States law, including, but not limited to, the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701 et seq., The Trading with the Enemy Act,

50 U.S.C. App. 1 et seq., and any Executive Orders or regulations promulgated thereunder, with the result that the investment in Borrower or any other Borrower Party, as applicable (whether directly or indirectly), would be prohibited by law (each, an "Embargoed Person"), or the Loan made by Lender would be in violation of law, (b) no Embargoed Person shall have any interest of any nature whatsoever in Borrower or any other borrower party or any direct or indirect owner thereof , as applicable, with the result that the investment in Borrower or any other borrower party, as applicable (whether directly or indirectly), would be prohibited by law or the Loan would be in violation of law, and (c) none of the funds of Borrower, any other borrower party or any direct or indirect owner thereof, as applicable, shall be derived from any unlawful activity with the result that the investment in Borrower or any other borrower party, as applicable (whether directly or indirectly), would be prohibited by law or the Loan would be in violation of law.

Section 2.14   Government Reports. Mortgagor shall furnish to Mortgagee promptly and in any event within five (5) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Mortgagor's part including without limitation, in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

Section 2.15   Maintenance and Use of Mortgaged Property.  Mortgagor shall cause the Mortgaged Property to be maintained in a good and safe condition and repair. The Improvements and the Personal Property shall not be removed, demolished or materially altered (except for normal replacement of the Personal Property) without the consent of Mortgagee.  If under applicable zoning provisions the use of all or any portion of the Mortgaged Property is or shall become a nonconforming use, Mortgagor will not cause or permit the nonconforming use to be discontinued or the nonconforming Improvement to be abandoned without the express written consent of Mortgagee.

Section 2.16   Waste.  Mortgagor shall not commit or suffer any waste of the Mortgaged Property or make any change in the use of the Mortgaged Property which will in any way materially increase the risk of fire or other hazard arising out of the operation of the Mortgaged Property, or take any action that might invalidate or give cause for cancellation of any Policy, or do or permit to be done thereon anything that may in any way impair the value of the Mortgaged Property or the security for the Loan.  Mortgagor will not, without the prior written consent of Mortgagee, permit any drilling or exploration for or extraction, removal, or production of any minerals from the surface or the subsurface of the Mortgaged Property, regardless of the depth thereof or the method of mining or extraction thereof.

Section 2.17   Litigation.  Mortgagor shall give prompt written notice to Mortgagee of any litigation or governmental proceedings pending or threatened in writing against Mortgagor which might materially adversely affect Mortgagor's condition (financial or otherwise) or business or the Mortgaged Property.

Section 2.18    Notice of Default.    Mortgagor shall promptly advise Mortgagee of any material adverse change in the condition (financial or otherwise) of Mortgagor, Guarantor or the Mortgaged Property or of the occurrence of any Default or Event of Default of which Mortgagor has knowledge.

Section 2.19    Cooperate in Legal Proceedings.    Mortgagor shall at Mortgagor's expense cooperate fully with Mortgagee with respect to any proceedings before any court, board or other Governmental Authority which may in any way affect the rights of Mortgagee hereunder or any rights obtained by Mortgagee under this Mortgage or any of the other Loan Documents and, in connection therewith, permit Mortgagee, at its election, to participate in any such proceedings.

Section 2.20    Performance by Mortgagor.    Mortgagor shall in a timely manner observe, perform and fulfill each and every covenant, term and provision to be observed and performed by Mortgagor under this Mortgage and the other Loan Documents and any other agreement or instrument affecting or pertaining to the Mortgaged Property and any amendments, modifications or changes thereto.

Section 2.21.    Additions to Security. All rights, title and interests of Mortgagor in and to all Improvements and additions hereafter constructed or placed on the Mortgaged Property and in and to any accessories hereafter acquired shall, without any further mortgage, conveyance, assignment or other act by Mortgagor, become subject to the lien of this Mortgage as fully and completely, and with the same effect, as though now owned by Mortgagor and specifically described in the granting clauses hereof.  Mortgagor agrees, however, to execute and deliver to Mortgagee such further reasonable documents as reasonably may be required by the terms of the Loan Documents.

Section 2.22.    Subrogation. To the extent permitted by Law, Mortgagee shall be subrogated, notwithstanding its release of record, to any lien now or hereafter existing on the Mortgaged Property to the extent that such lien is paid or discharged by Mortgagee whether or not from the proceeds of the Loan.  This Section 2.22 shall not be deemed or construed, however, to obligate Mortgagee to pay or discharge any lien.

ARTICLE III

NEGATIVE COVENANTS

Mortgagor covenants and agrees with Mortgagee that while this Mortgage is in effect, Mortgagor shall not, without the prior written consent of Mortgagee:

Section 3.1    Indebtedness and Liens. (1) Except for trade debt incurred in the normal course of business; unsecured short-term indebtedness in connection with pre-development work approved in advance by Lender; and Debt to Mortgagee, create, incur or assume indebtedness for borrowed money, including capital leases or (2) sell, transfer, mortgage, assign, pledge, lease,

grant a security interest in, or encumber any of Mortgagor's assets.

Section 3.2    Continuity of Operations. (1) Engage in any business activities substantially different than those in which Mortgagor is presently engaged, (2) divide, cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, (3) make any distributions (cash or otherwise) to its members, or (4) purchase or retire any of Mortgagor's outstanding interests or alter or amend Mortgagor's capital structure.

Section 3.3    Loans, Acquisitions and Guaranties. Loan, invest in or advance money or assets to any other person, enterprise or entity; purchase, create or acquire any interest in any other enterprise or entity, or incur any obligation as surety or guarantor.

Section 3.4    Member Loans; Fees.  Make any payment on any loan or fees to any third party, including any members of Mortgagor, affiliates of any members of Mortgagor, or family members of the Mortgagor.

Section 3.5    Additional Improvements. Mortgagor will not construct any Improvements other than those presently on the land and without the prior express written consent of Mortgagee.

Section 3.6    Restrictive Covenants, Zoning, etc. Without the prior express written consent of Mortgagee, Mortgagor will not initiate, join in, or consent to any change in, any restrictive covenant, easement, zoning ordinance, or other public or private restrictions limiting or defining the uses which may be made of the Mortgaged Property.  Mortgagor (a) will promptly perform and observe, and cause to be performed and observed, all of the terms and conditions of all agreements affecting the Mortgaged Property, and (b) will do or cause to be done all things necessary to preserve intact and unimpaired any and all easements, appurtenances and other interests and rights in favor of, or constituting any portion of, the Mortgaged Property.

ARTICLE IV

DEFAULTS AND REMEDIES

Section 4.1.1.  Events of Default-Optional Acceleration.  The Debt shall become due, at the option of the Mortgagee, upon the occurrence of any of the following events, which event shall, upon the expiration of the notice and cure period (if any) specified in Section 4.2 below, be an "Event of Default":

(a)    after default in the payment of any installment of principal or interest as provided in the Note or any other Event of Default provided for therein,

(b)      after default in the payment when due and payable of any other sum of money required to be paid or expended under this Mortgage, the Note, or any other Loan Document (as hereinafter defined),

(c)      if any warranty, representation, covenant or certification made herein or in any financial statement furnished pursuant hereto or in connection with the indebtedness evidenced by the Note and secured by this Mortgage (the "Loan") shall be materially false or inaccurate in any manner as of the date made,

(d)      after default in keeping the Mortgaged Property insured as herein provided,

(e)      after default after notice and demand either in assigning and delivering the policies insuring the Improvements or the Personal Property against loss as hereinafter provided for or in reimbursing the Mortgagee for premiums paid on such insurance, as hereinabove provided for,

(f)      after default upon request in furnishing a statement of the amount due on this Mortgage and whether any offsets or defenses exist against the Debt, as hereinabove provided for,

(g)      if the Mortgagor does or permits to be done anything that may in any way impair the lien of this Mortgage or impair the value of the Mortgaged Property or any of the Improvements or weaken or diminish the security intended to be given under and by virtue of this Mortgage,

(h)      upon the failure of the Mortgagor to perform or comply with any other material term, covenant, condition or obligation of this Mortgage or of the Note or of any term, covenant, condition or obligation of any other agreement or instrument executed by the Mortgagor which secures the indebtedness evidenced by the Note (collectively, the "Loan Documents"), or of any other agreement between the Mortgagor and the Mortgagee, in accordance with the terms hereof and thereof,

(i)      a default under, or any attempted withdrawal, cancellation or disclaimer of liability under, any guarantee which guarantees payment of the Debt or any part thereof, or under any agreement giving security for any such guarantee;

(j)      INTENTIONALLY OMITTED

(k)      if a default occurs under any mortgage which is prior, equal or subordinate to the lien of this Mortgage or the mortgagee under any such prior, equal or subordinate mortgage commences a foreclosure action in connection with said mortgage;

(l)    the further mortgage, pledge or encumbrance by the Mortgagor of the Mortgaged Property or any part thereof or any interest therein without the prior written consent of the Mortgagee;

(m)    the further assignment or encumbrance by the Mortgagor of the Rents arising from the Mortgaged Property, or any part thereof, without the prior written consent of the Mortgagee in each instance;

(n)    if the Mortgagor leases all or any part of the Mortgaged Property in violation of Section 1.14 hereof, or effects any changes in any lease in violation of Section 1.14 hereof;

(o)    the occurrence, in the sole judgment of the Mortgagee, of a material adverse change in the identity, control, financial condition or operation of the Mortgagor or the Mortgaged Property;

(p)    any default, for thirty (30) days after notice and demand, in the payment of any taxes of any kind and nature, assessments, water and sewer charges, rents and rates, and other governmental or municipal charges, fines or impositions relating to the Mortgaged Property or any part thereof;

(q)    any failure for thirty (30) days after notice and demand to exhibit to the Mortgagee receipted bills for any taxes of any kind and nature, assessments, water and sewer charges, rents and rates, and other governmental or municipal charges, fines or impositions herein referred to;

(r)    if the Mortgagee shall give the written notice specified above in Section 1.4(c);

(s)    any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented that limits or defines the uses which may be made of the Mortgaged Property such that the present or intended use of the Mortgaged Property, as specified in the Loan Documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed and such use may not continue as a pre-existing non-conforming use; or

(t)    if the Mortgagor or any Guarantor, who is an individual shall die and a reasonably acceptable replacement is not provided within sixty (60) days; or

(u)    if Mortgagor or any Guarantor generally not pay their debts as such debts become due.

Notwithstanding the foregoing, in the event that Lender elects to accelerate in connection with an Event of Default by Guarantor of this <u>Section 4.1.1</u> that is unrelated to the Mortgaged Property and/or to Mortgagor, Borrower shall have a period of ninety (90) days to prepay the loan in full without penalty.

<u>Section 4.1.2.</u>    <u>Events of Default-Automatic Acceleration.</u>    The Debt shall forthwith and automatically become due, upon the occurrence of any of the following events which event shall also be an "Event of Default":

if the Mortgagor or any Guarantor shall:

(i)    call a meeting of or make an assignment for the benefit of creditors,

(ii)    file a petition in bankruptcy, under Title 11 of the U.S. Code, as amended (the "Bankruptcy Code"), or be adjudicated insolvent or bankrupt, file a petition in bankruptcy, or be adjudicated insolvent or bankrupt,

(iii)    be the subject of an order for relief under the Bankruptcy Code, or petition or apply to any tribunal for the appointment of a receiver or a trustee for it or a substantial part of its assets,

(iv)    file any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, whether now or hereafter in effect,

(v)    have filed against it a petition, application or proceeding described above in subdivision (iv) or such a petition, application or proceeding shall have been commenced against it, which remains undismissed or unstayed for a period of sixty (60) days or more,

(vi)    by any act or omission indicate its consent to, approval of or acquiescence in any petition, application or proceeding described above in subdivision (iv) or in the appointment of a custodian, receiver or any trustee for it or any substantial part of any of its property,

(vii)    suffer any such custodianship, receivership or trusteeship to continue undischarged for a period of thirty (30) days or more,

(viii)    conceal, remove or permit to be concealed or removed, any part of its property, with intent to hinder, delay or defraud its creditors or any of them,

(ix)    make or suffer a transfer of any of its property which may be fraudulent under any bankruptcy, fraudulent conveyance or similar law,

(x)    make any transfer of its property to or for the benefit of a creditor at a time when other creditors similarly situated have not been paid, or

(xi)    shall suffer or permit, while insolvent, any creditor to obtain a lien upon any of its property through legal proceedings or distraint which is not vacated within thirty (30) days from the date thereof.

Section 4.2. Remedies. (a) Immediately upon the occurrence of an Event of Default pursuant to Section 4.1.1 (a), upon the occurrence of a monetary Event of Default listed in Section 4.1.1 other than 4.1.1 (a), that is not cured within ten (10) days after notice thereof, and upon the occurrence of any non-monetary Event of Default hereunder, that is not cured within (30) days after notice thereof, the Mortgagee may, in addition to any rights or remedies available to it hereunder or under any of the Loan Documents, or at law, take such action as it deems advisable to protect and enforce its rights against the Mortgagor and in and to the Mortgaged Property, including the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as the Mortgagee may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of the Mortgagee:

(i)    declare the entire unpaid Debt to be immediately due and payable;

(ii)    enter into or upon the Mortgaged Property, either personally or by its agents, nominees or attorneys, and dispossess the Mortgagor and its agents and servants therefrom, and thereupon the Mortgagee may (A) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Mortgaged Property and conduct the business thereat, (B) complete any construction on the Mortgaged Property in such manner and form as the Mortgagee deems advisable, (C) make alterations, additions, renewals, replacements and improvements to or on the Mortgaged Property, (D) exercise all rights and powers of the Mortgagor with respect to the Mortgaged Property, whether in the name of the Mortgagor or otherwise, including the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all earnings, revenues, rents, issues, profits and other income of the Mortgaged Property and every part thereof, and (E) apply the receipts from the Mortgaged Property to the payment of the Debt, after deducting therefrom all expenses (including reasonable attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the taxes, assessments, insurance and other charges in connection with the Mortgaged Property, as well as compensation for the services of the Mortgagee, its agents and employees;

(iii)    institute proceedings for the complete foreclosure of this Mortgage, in which case the Mortgaged Property may be sold for cash or credit in one or more parcels, and in such order as the Mortgagee shall determine;

(iv)    with or without entry and, to the extent permitted, and pursuant to the procedures provided by, applicable law, institute proceedings for the partial foreclosure of this Mortgage for the portion of the Debt then due and payable, subject to the lien of this Mortgage continuing unimpaired and without loss of priority so as to secure the balance of the Debt not then due;

(v)    sell the Mortgaged Property or any part thereof and all estate, claim, demand, right, title and interest of the Mortgagor therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, in whole or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law, and in the event of a sale, by foreclosure or otherwise, of less than all of the Mortgaged Property, this Mortgage shall continue as a lien on the remaining portion of the Mortgaged Property;

(vi)    institute an action, suit or proceeding in equity for the specific performance of any covenants, conditions or agreements contained herein or in the Note;

(vii)    recover judgment on the Note before, during, after or in lieu of any proceedings for the enforcement of this Mortgage;

(viii)    apply for the appointment of a custodian, trustee, receiver, liquidator or conservator of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Mortgagor, or of any person, party or entity liable for the payment of the Debt;

(ix)    pursue such other remedies as the Mortgagee may have under one or more of the other Loan Documents and/or any other collateral given as security for the Loan, including without limitation the Collateral;

(x)    pursue such remedies as the Mortgagee may have under applicable law; and

(b)    The purchase money proceeds or avails of any sale made under or by virtue of this Section 4.2, together with any other sums which then may be held by the Mortgagee under this Mortgage, whether under the provisions of this Section 4.2 or otherwise, shall be applied as follows:

First:    To the payment of the costs and expenses of any such sale, including, without limitation, compensation to the Mortgagee, its agents and counsel, and of any judicial proceedings, including, without limitation, the costs and legal expenses of the Mortgagee in foreclosing or otherwise enforcing this Mortgage, wherein the same may be made, and of all

expenses, liabilities and advances made or incurred by the Mortgagee under this Mortgage, together with interest at the Default Rate, and all taxes or assessments, except any taxes, assessments or other charges subject to which the Mortgaged Property shall have been sold.

Second:        To the payment of the whole amount then due, owing or unpaid upon the Note for principal and interest with interest on the unpaid principal at the Default Rate from and after the happening of any Event of Default described above in Section 4.1 until the same is paid.

Third:        To the payment of any other sums required to be paid by the Mortgagor pursuant to any provision of this Mortgage, the Note and all other Loan Documents.

Fourth:        To the payment of the surplus, if any, to whosoever may be lawfully entitled to receive the same.

The Mortgagee and any receiver or custodian of the Mortgaged Property or any part thereof shall be liable to account for only those rents, issues and profits actually received by it.

(c)        The Mortgagee may adjourn from time to time any sale by it to be made under or by virtue of this Mortgage by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise provided by any applicable provision of law, the Mortgagee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

(d)        Upon the completion of any sale or sales made by the Mortgagee under or by virtue of this Section 4.2, the Mortgagee, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, granting, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. The Mortgagee is hereby irrevocably appointed the true and lawful attorney-in-fact of the Mortgagor (coupled with an interest), in its name and stead, to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Mortgagee may execute all necessary instruments of conveyance, assignment, transfer and delivery, and may substitute one or more persons or entities with like power, the Mortgagor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Nevertheless, the Mortgagor, if so requested by the Mortgagee, shall ratify and confirm any such sale or sales by executing and delivering to the Mortgagee or to such purchaser or purchasers all such instruments as may be advisable, in the judgment of the Mortgagee, for such purpose, and as may be designated in such request. Any such sale or sales made under or by virtue of this Section 4.2, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and

in equity against the Mortgagor and against any and all persons or entities claiming or who may claim the same, or any part thereof, either from, through or under the Mortgagor.

(e)    Upon any sale made under or by virtue of this <u>Section 4.2</u> (whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale), the Mortgagee may bid for and acquire the Mortgaged Property or any part thereof and in lieu of paying cash therefor may take settlement for the purchase price by crediting upon the Debt of the Mortgagor secured by this Mortgage the net sale price after deducting therefrom the expenses of the sale and the costs of the action and any other sums which the Mortgagee is authorized to deduct under this Mortgage.

(f)    The obligation of this Mortgage and of the Note shall continue until the Debt is paid in full notwithstanding any action or actions or partial foreclosure which may be brought to recover any amount or amounts for installments of principal, interest, taxes, assessments, water and sewer charges, rents and rates or insurance or other sums or charges due and payable under the provisions of this Mortgage.

(g)    No recovery of any judgment by the Mortgagee and no levy of an execution under any judgment upon the Mortgaged Property or upon any other property of the Mortgagor shall affect in any manner or to any extent, the lien of this Mortgage upon the Mortgaged Property or any part thereof, or any liens, rights, power or remedies of the Mortgagee hereunder, but such liens, rights, powers and remedies of the Mortgagee shall continue unimpaired as before, and notwithstanding any statutory rate of interest applicable with respect to judgments, after the entering or execution of any judgment, the Debt shall bear interest at the rate or rates payable under the Note and this Mortgage until the Debt shall have been paid in full.

(h)    In the event of a foreclosure of this Mortgage or the succession by the Mortgagee to the interests of the Mortgagor hereunder, the purchaser of the Mortgaged Property or such successor shall succeed to all rights of the Mortgagor, including any right to proceeds of insurance and to unearned premiums, and in and to all policies or certificates of insurance assigned and delivered to the Mortgagee pursuant to this Mortgage.

(i)    During such time that the Mortgagor shall be in default under this Mortgage, or under the Note, the Mortgagee, in the event that the Mortgagor shall not file a protest against any proposed assessed valuation of the Mortgaged Property at least fifteen (15) days prior to the last date on which such protest may be legally filed, or having filed such protest and the same having been denied, shall not have commenced a proceeding for the reduction of said assessed valuation at least fifteen (15) days prior to the last date of which such proceedings may be legally commenced, the Mortgagee may, but shall have no obligation to, file such protest or commence and prosecute such proceeding, in its own name or in the name of the Mortgagor, and the Mortgagor agrees to cooperate fully, in good faith, with the Mortgagee in the conduct of any such proceeding. All expenses of any such filing by the Mortgagee or its commencement of any such proceeding, including, but limited to, reasonable counsel fees, shall be borne by the

Mortgagor, and if paid by the Mortgagee shall be reimbursed by the Mortgagor to the Mortgagee, its successors or assigns, upon demand, together with interest from the date that such sum is advanced, payment made or expense incurred, to and including the date of reimbursement, computed at the Default Rate. All expenses incurred by the Mortgagee, as described above in this Subsection, and the interest thereon, shall be a lien on the Mortgaged Property prior to any claim, lien, title or interest in, to or on or claim upon the Mortgaged Property attaching or accruing subsequent to the lien of this Mortgage and shall be deemed to be secured by this Mortgage and evidenced by the Note.

(j)    THE MORTGAGOR HEREBY WAIVES THE RIGHT TO TRIAL BY JURY, THE RIGHT TO CLAIM ANY OFFSET AND THE RIGHT TO ASSERT A COUNTERCLAIM IN ANY ACTION OR PROCEEDING BROUGHT BY THE MORTGAGEE TO ENFORCE ANY OF ITS RIGHTS UNDER THE NOTE OR UNDER THIS MORTGAGE.

(k)    Any assignee of this Mortgage and the Note shall take the same free and clear of all offsets, counterclaims and defenses of any nature whatsoever which the Mortgagor may have against any assignor of this Mortgage and the Note and no such offset, counterclaim or defense shall be interposed or asserted by the Mortgagor in any action or proceeding brought by any such assignee upon this Mortgage and/or the Note and any such right to interpose or assert any such offset, counterclaim or defense in any such action or proceeding is hereby expressly waived by the Mortgagor.

(l)    The Mortgagor shall not be relieved of the Mortgagor's obligation to pay the Debt at the time and in the manner provided for in the Note and this Mortgage by reason of (i) failure of the Mortgagee to comply with any request of the Mortgagor or any guarantor of the payment of the Note and/or of this Mortgage to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note or of any other mortgage, instrument or document evidencing, securing or guaranteeing payment of the Debt or any portion thereof, (ii) the release, regardless of consideration, of the whole or any part of the Mortgaged Property or any other security for the Debt or the release of any individual or entity guaranteeing the payment of the Note and/or of this Mortgage, or (iii) the extension or modification of this Mortgage or any other mortgage, instrument or document evidencing, securing or guaranteeing payment of the Note and/or of this Mortgage or any portion thereof, without first having obtained the consent of the Mortgagor, and in the last event, the Mortgagor shall continue to be obligated to pay the Debt at the time and in the manner provided in the Note and this Mortgage, as so extended or modified, unless expressly released and discharged by the Mortgagee. Regardless of consideration, and without the necessity for any notice to or consent by the holder of any subordinate lien, encumbrance, right, title or interest in or to the Mortgaged Property, the Mortgagee may release any person or entity at any time liable for the payment of the Debt or any portion thereof or any individual or entity guaranteeing the payment of the Note and/or of this Mortgage or any part of the security held for the Debt or with respect to any guarantee, and may extend the time of payment or otherwise modify any of the terms, covenants, conditions or

obligations of the Note and/or this Mortgage, including, without limitation, a modification of the interest rate payable on the principal balance of the Note, without in any manner impairing or affecting this Mortgage or the lien thereof or the priority of this Mortgage, as so extended and modified, as security for the Debt over any such subordinate lien, encumbrance, right, title and interest. The Mortgagee may resort for the payment of the Debt to any other security or guarantee held by the Mortgagee in such order and manner as the Mortgagee, in its discretion, may elect. The Mortgagee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every additional right and remedy now or hereafter afforded by law or equity.

(m)    The Mortgagee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right to the Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by the Mortgagor existing at the time such earlier action was commenced.

(n)    The Mortgagee shall have the right to receive and accept partial payment of any sum or sums which constitute a part of the Debt or the interest accrued thereon and such receipt and acceptance by the Mortgagee shall not be deemed a waiver or modification of any default or defaults by the Mortgagor existing at such time.

(o)    All remedies provided in this Mortgage are distinct from and cumulative to any other right or remedy under this Mortgage, the Note, any guarantee of the payment of the Note and/or of this Mortgage or any other agreement between, among others, if any, the Mortgagor and the Mortgagee executed simultaneously or in connection herewith, or afforded by law or equity, and may be exercised concurrently, independently or successively. Wherever in this Mortgage the prior consent of the Mortgagee is required, the consent of the Mortgagee given as to one such transaction shall not be deemed to be a waiver of the right to require such consent to future or successive transactions. Any such consents shall be in writing.

(p)    Any forbearance by the Mortgagee in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by the Mortgagee or other corrective or security protecting measures by the Mortgagee shall not be a waiver of the Mortgagee's right to accelerate the maturity of the Debt.

(q)    In any action or proceeding to foreclose this Mortgage, or to recover or collect the Debt, the provisions of law respecting the recovery of costs, disbursements and allowances shall also be applicable.

Section 4.3.    Interest After Default.    If any payment due hereunder or under the Note is not paid when due, whether on any stated due date, any accelerated due date or any other date or at any other time specified under any of the terms, covenants, conditions or obligations hereof or

thereof, then and in such event, the Mortgagor shall pay interest on the entire outstanding and unpaid principal balance of the Debt, from and after the date on which such amount first became due, at the Default Rate and such interest shall be due and payable, on demand, at such rate until the entire amount due is paid to the Mortgagee, whether or not any action shall have been taken or proceeding commenced to recover the same or to foreclose this Mortgage. All accrued but unpaid interest shall be secured by this Mortgage as part of the Debt together with interest from the date that such sum is advanced, payment made or expense incurred, to and including the date of reimbursement, computed at the Default Rate. Nothing in this <u>Section 4.3</u> or in any other provision of this Mortgage shall constitute an extension of the time of payment of the Debt or shall increase the maximum principal amount which may under any contingency be secured by this Mortgage.

Section 4.4.    <u>Possession of Property Not Required</u>. Upon any sale of any item of the Mortgaged Property made pursuant to judicial proceedings for foreclosure (hereinafter referred to as a "<u>Judicial Sale</u>"), it will not be necessary for any public officer acting under execution or order of the court (hereinafter referred to as a "<u>Selling Official</u>") to have any of the Mortgaged Property present or constructively in his possession.

Section 4.5.    <u>Mortgages of Conveyance and Transfer</u>. Upon the completion of every Judicial Sale, the Selling Official will execute and deliver to each purchaser a bill of sale or deed of conveyance, as appropriate, for the items of the Mortgaged Property that are sold. Mortgagor hereby grants every such Selling Official the power as the attorney-in-fact of Mortgagor to execute and deliver in Mortgagor's name all deeds, bills of sale and conveyances necessary to convey and transfer to the purchaser all of Mortgagor's rights, title and interest in the items of Mortgaged Property which are sold. Mortgagor hereby ratifies and confirms all that such attorneys-in-fact lawfully do pursuant to such power. Nevertheless, Mortgagor, if so requested by the Selling Official or by any purchaser, will ratify any such sale by executing and delivering to such Selling Official or to such purchaser, as applicable, such deeds, bills of sale or other mortgages of conveyance and transfer as may be specified in any such request.

Section 4.6.    <u>Possession of the Mortgaged Property</u>. Upon the occurrence of any Event of Default hereunder, it is agreed that the Mortgagor, if it is then the occupant of the Mortgaged Property or any part thereof, shall immediately surrender possession of the space so occupied to the Mortgagee, custodian, trustee, receiver, liquidator or conservator of the Mortgaged Property, as may be the case, and if the Mortgagor is permitted to remain in possession, the possession shall be as a month-to-month tenant of the Mortgagee, and, on demand, the Mortgagor shall pay to the Mortgagee monthly, in advance, a reasonable rental for the space so occupied and in default thereof the Mortgagor may be dispossessed by the usual summary proceedings. The covenants herein contained may be enforced by a receiver of the Mortgaged Property or any part thereof. Nothing in this Section 4.4 shall be deemed to be a waiver of the provisions of this Mortgage prohibiting the sale or other disposition of the Mortgaged Property without the Mortgagee's prior written consent.

Section 4.7. Collection of Rents. Upon the occurrence and during the continuance of an Event of Default, the license granted to Mortgagor to collect the Rents shall be automatically and immediately revoked, without further notice to or demand upon Mortgagor. Mortgagee may, but shall not be obligated to, perform any or all obligations of the landlord under any or all of the Leases, and Mortgagee may, but shall not be obligated to, exercise and enforce any or all of Mortgagor's rights under the Leases. Without limitation to the generality of the foregoing, Mortgagee may notify the tenants under the Leases that all Rents are to be paid to Mortgagee, and following such notice all Rents shall be paid directly to Mortgagee and not to Mortgagor or any other Person other than as directed by Mortgagee, it being understood that a demand by Mortgagee on any tenant under the Leases for the payment of Rent shall be sufficient to warrant payment by such tenant of Rent to Mortgagee without the necessity of further consent by Mortgagor. Mortgagor hereby irrevocably authorizes and directs the tenants under the Leases to pay all Rents to Mortgagee instead of to Mortgagor, upon receipt of written notice from Mortgagee, without the necessity of any inquiry of Mortgagor and without the necessity of determining the existence or non-existence of an Event of Default. Mortgagor hereby appoints Mortgagee as Mortgagor's attorney-in-fact with full power of substitution, which appointment shall take effect upon the occurrence of an Event of Default and is coupled with an interest and is irrevocable prior to the full and final payment and performance of the obligations hereunder, in Mortgagor's name or in Mortgagee's name: (a) to endorse all checks and other instruments received in payment of Rents and to deposit the same in any account selected by Mortgagee; (b) to give receipts and releases in relation thereto; (c) to institute, prosecute and/or settle actions for the recovery of Rents; (d) to modify the terms of any Leases including terms relating to the Rents payable thereunder; (e) to cancel any Leases; (f) to enter into new Leases; and (g) to do all other acts and things with respect to the Leases and Rents which Mortgagee may deem necessary or desirable to protect the security for the obligations under this Mortgage. Any Rents received shall be applied first to pay all expenses and next in reduction of the other obligations hereunder. Mortgagor shall pay, on demand, to Mortgagee, the amount of any deficiency between (i) the Rents received by Mortgagee, and (ii) all expenses incurred together with interest thereon as provided in the Loan Agreement and the other Loan Documents.

Section 4.8. Receivership. Mortgagee may apply to any court of competent jurisdiction to have a receiver appointed to enter upon and take possession of the Mortgaged Property, collect the Rents therefrom and apply the same as the court may direct, such receiver to have all of the rights and powers permitted under the Laws of the State. To the extent permitted by law, the right of the appointment of such receiver shall be a matter of strict right without regard to the value or the occupancy of the Mortgaged Property or the solvency or insolvency of Mortgagor. The expenses, including receiver's fees, reasonable attorneys' fees, costs and agent's commission incurred pursuant to the powers herein contained, together with interest thereon at the default rate under the Note, shall be secured hereby and shall be due and payable by Mortgagor immediately without notice or demand. Notwithstanding the appointment of any receiver or other custodian, Mortgagee shall be entitled as pledgee to the possession and control of any cash or deposits at the time held by, payable, or deliverable under the terms of this Mortgage to Mortgagee, and

Mortgagee shall have the right to offset the unpaid obligations of this Mortgage against any such cash or deposits in such order as Mortgagee may elect.

Section 4.9.    Uniform Commercial Code. Mortgagee may exercise any or all of its rights and remedies under the Uniform Commercial Code as adopted by the State as in effect from time to time, (or under the Uniform Commercial Code in force from time to time in any other state to the extent the same is applicable Law) or other applicable Law as well as all other rights and remedies possessed by Mortgagee, all of which shall be cumulative. Mortgagee is hereby authorized and empowered to enter the Mortgaged Property or other place where the Personal Property may be located without legal process, and to take possession of the Personal Property without notice or demand, which hereby are waived to the maximum extent permitted by the Laws of the State. Upon demand by Mortgagee, Mortgagor shall make the Personal Property available to Mortgagee at a place reasonably convenient to Mortgagee. Mortgagee may proceed under the Uniform Commercial Code as to all or any part of the Personal Property, and in conjunction therewith may exercise all of the rights, remedies and powers of a secured creditor under the Uniform Commercial Code. Any notification required by the Uniform Commercial Code shall be deemed reasonably and properly given if sent in accordance with the Notice provisions of this Mortgage at least ten (10) days before any sale or other disposition of the Personal Property. Mortgagee may choose to dispose of some or all of the Property, in any combination consisting of both Personal Property and Real Property, in one or more public or private sales to be held in accordance with the Law and procedures applicable to real property, as permitted by Article 9 of the Uniform Commercial Code. Mortgagor agrees that such a sale of Personal Property together with Real Property constitutes a commercially reasonable sale of the Personal Property. Mortgagee may proceed under the Uniform Commercial Code as to all or any part of the Personal Property, and in conjunction therewith may exercise all of the rights, remedies and powers of a secured creditor under the Uniform Commercial Code. Any notification required by the Uniform Commercial Code shall be deemed reasonably and properly given if sent in accordance with the Notice provisions of this Mortgage at least ten (10) days before any sale or other disposition of the Personal Property.

Section 4.10.    Credit of Mortgagee. To the maximum extent permitted by the Laws of the State, upon any sale made under or by virtue of this Article IV, Mortgagee may bid for and acquire the Mortgaged Property, or any part thereof, and in lieu of paying cash therefor may apply to the purchase price, any portion of or all of the unpaid obligations of this Mortgage in such order as Mortgagee may elect.

Section 4.11.  Waiver of Redemption, Notice, Marshaling, Etc. Mortgagor hereby waives and releases, for itself and anyone claiming through, by, or under it, to the maximum extent permitted by the Laws of the State: (a) all benefit that might accrue to Mortgagor by virtue of any present or future Law exempting the Mortgaged Property, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale on execution, or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment; (b) unless specifically required herein, all notices of default, or

Mortgagee's actual exercise of any option or remedy under the Loan Documents, or otherwise; and (c) any right to have the Mortgaged Property marshaled.

Section 4.12.  Mortgagee's Actions. Mortgagee may, at any time without notice to any person and without consideration, do or refrain from doing any or all of the following actions, and neither Mortgagor, any guarantor, endorser, co-maker, or surety of the obligations hereunder, nor any other person (hereinafter in this Section 4.10 collectively referred to as the "Obligor") now or hereafter liable for the payment and performance of the obligations hereunder shall be relieved from the payment and performance thereof, unless specifically released in writing by Mortgagee:  (a) renew, extend or modify the terms of the Note, this Mortgage, the Guaranty and the other Loan Documents, or any of them; (b) forbear or extend the time for the payment or performance of any or all of the obligations hereunder; (c) apply payments by any Obligor to the reduction of the unpaid obligations hereunder in such manner, in such amounts, and at such times and in such order and priority as Mortgagee may see fit; (d) release any Obligor; (e) substitute or release in whole or in part the Mortgaged Property or any other collateral or any portion thereof now or hereafter held as security for the obligations hereunder without affecting, disturbing or impairing in any manner whatsoever the validity and priority of the lien of this Mortgage upon the Mortgaged Property which is not released or substituted, or the validity and priority of any security interest of Mortgagee in such other collateral which is not released or substituted; (f) subordinate the lien of this Mortgage or the lien of any other security interest in any other collateral now or hereafter held as security for the obligations hereunder; (g) join in the execution of a plat or replat of the land (provided, however, notwithstanding the foregoing, Mortgagee will join in such plat or replat of the land so long as such plat or replat is acceptable to Mortgagee); (h) join in and consent to the filing of a declaration of condominium or declaration of restrictive covenants regarding all or any part of the land; (i) consent to the granting of any easement on the land; and (j) generally deal with any Obligor or any other party as Mortgagee may see fit.

## ARTICLE V

## MISCELLANEOUS

Section 5.1.  Notices.  All notices or other communications required or otherwise given pursuant to this Mortgage shall be in writing and shall be personally delivered, delivered by overnight courier or mailed by registered or certified mail, postage prepaid, with return receipt requested, addressed as follows:

If to the Mortgagor:

286 Rider Ave Acquisition LLC
679 Driggs Avenue
Brooklyn, New York 11211

Attention: Toby Moskovits

With a copy to:

Treff & Lowy PLLC
481 Wythe Avenue, 2nd Floor
Brooklyn, New York 11249
Attention: mark Schlanger, Esq.

If to the Mortgagee:

Be-Aviv 286 Rider LLC
41 Wooster Street, 2nd Floor
New York, New York 10013
Attention: Ben Harlev and Eyal Epstein

With a copy to:

Wachtel Missry LLP
One Dag Hammarskjold Plaza
885 Second Avenue, 47th Floor
New York, New York 10017
Attention:  Eli D. Dweck, Esq.

Any party may change the person or address to whom or which notices are to be given hereunder, by notice duly given hereunder; provided, however, that any such notice shall be deemed to have been given hereunder only when actually received by the party to which it is addressed.  Any notice or other communication given hereunder shall be deemed to have been given or delivered, if personally delivered, upon delivery, if sent by overnight courier, on the first (1st) business day of the Mortgagee after being sent, and if sent by mail, on the third (3rd) business day of the Mortgagee after mailing.  Each party shall be entitled to rely on all communications which purport to be given on behalf of any other party hereto and purport to be signed by an authorized signatory of such party.

Section 5.2.  Consent to Jurisdiction; Waivers.  (a) The Mortgagor hereby consents to the jurisdiction of the courts of the State of New York and the state where the Mortgaged Property is located if the Mortgaged Property is not located in the State of New York in any actions, suits or proceedings arising out of or in connection with the Note or this Mortgage. In addition, the Mortgagor irrevocably and unconditionally waives any objection which the Mortgagor may now or hereafter have to the laying of venue of any of the aforesaid actions, suits, or proceedings arising out of or in connection with the Note or this Mortgage brought in any of the aforesaid courts, and hereby further irrevocably and unconditionally waives the right to plead or claim that

any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum; and

(b)   The Mortgagor waives the requirements of personal service in connection with any actions, suits or proceedings arising out of or in connection with the Note or this Mortgage, and consents that all service of process may be made by certified mail, return receipt requested, addressed to the Mortgagor at the address of the Mortgagor set forth above in Section 3.1 as such address may be changed as therein set forth.

Section 5.3.   Governing Law.   This Mortgage shall be construed in accordance with the laws of the State of New York.

Section 5.4.   Binding Obligations.   The terms, covenants, provisions and conditions herein contained shall bind and inure to the benefit of the heirs, distributees, executors, administrators, successors and assigns of the parties hereto but the foregoing provisions of this Section shall not constitute a waiver of the provisions of Sections 1.11 and 1.12 above.

Section 5.5.   Further Assurances.   The Mortgagor will, at the request of the Mortgagee and at the cost and expense of the Mortgagor (a) promptly correct any defect, error or omission which may be discovered in the contents of this Mortgage, or in the execution, acknowledgment or recordation hereof, or (b) promptly do, execute, acknowledge and deliver any and all such further acts, deeds, conveyances, mortgages, deeds of trust, amendments, supplements, assignments, estoppel certificates, financing statements and continuations thereof, notices of assignment, transfers, certificates, assurances and other instruments as the Mortgagee may reasonably require from time to time in order to (i) effectuate the purposes of this Mortgage, (ii) subject to the lien and security interest hereby created any of the Mortgagor's properties, rights or interests covered or now or hereafter intended to be covered hereby, (iii) perfect and maintain such lien and security interest, or (iv) convey, grant, assign, transfer and confirm unto the Mortgagee the rights granted or now or hereafter intended to be granted to the Mortgagee hereunder or under any other instrument executed in connection with this Mortgage or which the Mortgagor may be or become bound to convey, mortgage or assign to the Mortgagee in order to carry out the intention or facilitate the performance of the provisions of this Mortgage. The Mortgagor hereby appoints the Mortgagee as its attorney-in-fact to execute, acknowledge and deliver for and in the name of the Mortgagor any and all of the instruments mentioned in this Section 5.5 and this power, being coupled with an interest, shall be irrevocable as long as any part of the Debt remedies unpaid.

Section 5.6.   Captions.   The title of this document and the captions used herein are inserted only as a matter of convenience and for reference and shall in no way define, limit or describe the scope or intent of this Mortgage or any of the provisions hereof.

Section 5.7. Severability. If any term, covenant, condition or obligation of this Mortgage shall be held to be invalid, illegal or unenforceable in any respect, this Mortgage shall be construed without such term, covenant, condition or obligation.

Section 5.8. General Conditions. (a) No provision of this Mortgage may be waived, changed, amended, modified or discharged orally and no executory agreement shall be effective to modify or discharge it in whole or in part, unless it is in writing and signed by the party against whom enforcement of the waiver, change, amendment, modification or discharge is sought.

(b)     The Mortgagee may take or release other security for the payment of the Loan, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the reduction or satisfaction of the Loan without prejudice to any of its rights under this Mortgage.

(c)     No remedy herein conferred upon or reserved to the Mortgagee is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute.  No delay or omission of the Mortgagee in exercising any right or power accruing upon any Event of Default shall impair any such right or power, or shall be construed to be a waiver of any such Event of Default, or any acquiescence therein. Nothing in this Mortgage or in the Note shall affect the obligation of the Mortgagor to pay the Debt in the manner and at the time and place therein respectively expressed.  All rights and remedies of the Mortgagee shall be cumulative and may be exercised singly or concurrently. Notwithstanding anything herein contained to the contrary, the Mortgagor: (i) will not (A) at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect any of the terms, covenants, conditions or obligations of this Mortgage, or (B) claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision hereof, or pursuant to the decree, judgment or order of any court of competent jurisdiction; (ii) waives all benefit or advantage of any such law or laws; (iii) covenants not to hinder, delay or impede the execution of any power herein granted or delegated to the Mortgagee, but to suffer and permit the execution of every power as though no such law or laws had been made or enacted; and (iv) waives all right to have the Mortgaged Property, or any other property of the Mortgagor to which the Mortgagee has, or may in the future have, a claim, marshaled upon any foreclosure hereof.

(d)     No waiver by the Mortgagee or modification of the terms hereof shall be effective unless it is in writing and then only in the specific instance and for the specific purpose for which given and, notwithstanding anything to the contrary herein, all such waivers and modifications may be given or withheld in the sole judgment of the Mortgagee.  Without limiting the generality of the foregoing, any payment made by the Mortgagee for insurance premiums,

taxes, assessments, water rates, sewer rentals, levies, fees or any other charges affecting the Mortgaged Property, shall not constitute a waiver of the Mortgagor's default in making such payments and shall not obligate the Mortgagee to make any further payments. The Mortgagor hereby irrevocably waives any right to claim that any provision of this Mortgage, including the provisions set forth in this Subsection, have been waived orally or by the acts or omissions of the Mortgagee.

(e)    THE MORTGAGOR ACKNOWLEDGES THAT IT HAS RECEIVED A TRUE COPY OF THIS MORTGAGE.

(f)    If the Mortgagor shall request the Mortgagee's consent or approval pursuant to any of the provisions of this Mortgage or otherwise, and the Mortgagee shall fail or refuse to give, or shall delay in giving, such consent or approval, the Mortgagor shall in no event make, or be entitled to make, any claim for damages (nor shall the Mortgagor assert, or be entitled to assert, any such claim by way of defense, set-off, or counterclaim) based upon any claim or assertion by the Mortgagor that the Mortgagee unreasonably withheld or delayed its consent or approval, and the Mortgagor hereby waives any and all rights that it may have, from whatever source derived, to make or assert any such claim. The Mortgagor's sole remedy for any such failure, refusal, or delay shall be an action for a declaratory judgment, specific performance, or injunction, and such remedies shall be available only in those instances where the Mortgagee has expressly agreed in writing not to unreasonably withhold or delay its consent or approval or where, as a matter of law, the Mortgagee may not unreasonably withhold or delay the same.

(g)    This Mortgage shall (i) be binding upon the Mortgagor and its successors and assigns, and (ii) inure, together with all rights and remedies of the Mortgagee hereunder, to the benefit of the Mortgagee and its successors, transferees and assigns. Without limiting the generality of clause (ii) of the immediately preceding sentence, the Mortgagee may assign or otherwise transfer all or any portion of its rights and obligations under any Loan Document, to any other person or entity, and such other person or entity shall thereupon become vested with all of the rights and obligations in respect thereof granted to the Mortgagee herein or otherwise. None of the rights or obligations of the Mortgagor hereunder may be assigned or otherwise transferred without the prior written consent of the Mortgagee.

(h)    (1)    Without limiting the generality of Subsection (g) above, the Mortgagor hereby acknowledges that the Mortgagee may sell, grant or assign participation interest(s) in the Loan and in the Mortgagee's rights and obligations in respect of the Loan Documents, including this Mortgage, to one or more lending institutions satisfactory to the Mortgagee, on terms satisfactory to the Mortgagee. In the event that the Mortgagee shall sell, grant or assign participation interest(s) in the Loan and in the Mortgagee's rights and obligations in respect of the Loan Documents, (i) the Mortgagee may, in its sole discretion, disclose financial and other information to prospective participant(s) with respect to the Mortgagor, (ii) the Mortgagor shall cooperate with the Mortgagee in connection with any such participation and shall execute any and all documents which may be required or desirable, in the Mortgagee's or

such participants' judgment, to effectuate any such participation(s), and (iii) each representation and agreement made by the Mortgagor in this Mortgage or in any of the other Loan Documents shall run to, and each reference to the Mortgagee shall be deemed to refer to, the Mortgagee and all of its participants(s).

(2)     Any Lender that sells participations shall maintain, as a non-fiduciary agent of the Borrower, a register on which it enters the name and the address of each participant and the principal amounts (and stated interest) of each participant's participation interest in the Loan, Debt and Note (or other rights or obligations) held by it (each, a "Participant Register"). The entries in each Participant Register shall be conclusive, absent manifest error, and such Lender shall treat each Person whose name is recorded in the Participant Register as the owner of such participation interest as the owner thereof for all purposes notwithstanding any notice to the contrary. Notwithstanding anything to the contrary contained in this agreement, the Debt, Note and Loan made under this agreement are registered obligations and the right, title, and interest of each participant and its assignees in and to such Loans, Debt and Note (or any rights under this agreement) shall be granted or transferable only upon notation of such grant or transfer in the Participant Register. In maintaining the Participant Register, such Lender shall be acting as the non-fiduciary agent of the Borrower, solely for purposes of applicable United States federal income tax law. Each Participant Register shall be available for inspection by the Borrower and participants from time to time upon reasonable prior notice. Borrower hereby authorizes each Lender to obtain as its agent the applicable IRS Form W-9 or W-8 from each participant.

(i)     If the Mortgagor consists of more than one person or entity, the obligations and liabilities of each such person or entity hereunder shall be joint and several. The relative words herein of single or plural number, or masculine or feminine or neuter gender shall be read as if written in the single or plural, or in the male, neuter or female gender, as the context and as the case may be.

(j)     Any check, draft, money order or other instrument given in payment of all or any portion of the Note or pursuant to this Mortgage may be accepted by the Mortgagee and handled in collection in the customary manner, but the same shall not constitute payment hereunder or diminish any rights of the Mortgagee, except to the extent that actual cash proceeds of such instrument are unconditionally received by the Mortgagee and applied as the case may be to the Debt in the manner provided in the Note or to the sum due under this Mortgage.

(k)     The Mortgaged Property is not improved nor is it to be improved by one or more structures containing any residential units that are occupied by affiliates of the Mortgagor.

(l)     If the Mortgagor shall well and truly pay to the Mortgagee the Debt at the time and in the manner provided in the Note and this Mortgage and shall well and truly abide by and comply with each and every term, covenant, condition and obligation set forth in this Mortgage and in the Note, then these presents and the estate hereby granted shall cease, terminate and be void.

(m)      This Mortgage may be executed in any number of duplicate originals and each such duplicate original shall be deemed to constitute but one and the same instrument.

(n)      Upon Mortgagee's full receipt of the outstanding principal balance of the Loan and the prepayment premium, if any, as provided for in the Note, the Mortgagee shall, at Mortgagor's request, assign this Mortgage to a third party lender.  In connection therewith, the Mortgagee shall prepare and issue an assignment of mortgage (in recordable form to be filed in the Bronx County Clerk's Office) and any other documentation required to effectuate the assignment of the Mortgage; provided Mortgagor pays Mortgagee an assignment fee of $1,000.00 and Mortgagee's attorney $2,000.00 for preparation of the foregoing assignment of this Mortgage and any other costs and expenses incurred in connection with the filing and recordation thereof.

[SIGNATURE PAGE TO FOLLOW]

**286 RIDER AVE ACQUISITION LLC**

By: _____

Name:  Toby Moskovits
Title:   Authorized Signatory

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NEW YORK  )

On the 15 day of September in the year 2019 before me, the undersigned, personally appeared Toby Moskovits, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
Notary Public

CHAVA ROSENWASSER
STATE OF NEW YORK
NOTARY PUBLIC
Qualified in Kings County
01RO6390342
MY COMMISSION EXPIRES 04/15/2023

009960-012/00205245-4Mortgage  53

SCHEDULE A

Legal Description

All that certain plot, piece or parcel of land, situate, lying and being in the Borough of Bronx, County of Bronx, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the northerly side of East 139th Street and the easterly side of Rider Avenue;

RUNNING THENCE northerly along the easterly side of Rider Avenue, 175.58 feet;

THENCE easterly on a line at right angles to the easterly side of Rider Avenue, 110.48 feet;

THENCE southerly on a line parallel to the easterly side of Rider Avenue, 208.73 feet to the northerly side of East 139th Street;

THENCE westerly along the northerly side of 139th Street, 115.35 feet to the point or place of BEGINNING.

Designated as Block 2333, Lot 33, Bronx County and also known as 286 Rider Avenue, Bronx, NY 10451.