**ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.**
875 Third Avenue
New York, New York 10022
Tel. No.: 212-603-6300
Fred B. Ringel
Steven B. Eichel
*Attorneys for the Debtor and Debtor in
Possession*

Hearing Date: August 26, 2021
Hearing Time: 10:00 A.M. (ET)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:                                          Chapter 11

**286 RIDER AVE ACQUISITION LLC,**            Case No: 21-11298 (LGB)

                                 Debtor.
-----------------------------------------------------------X

**286 RIDER AVE ACQUISITION LLC'S (I) RESPONSE TO MOTION OF 286
RIDER AVE DEVELOPMENT LLC TO (A) DISMISS BANKRUPTCY CASE
PURSUANT TO 11 U.S.C. §§ 105, 305 AND 1112, (B) FOR TURNOVER OF
CERTAIN MEMBERSHIP INTERESTS UNDER 11 U.S.C. § 543 AND (II)
<u>JOINDER TO LENDER'S RESPONSE TO THE MOTION TO DISMISS</u>**

Debtor 286 Rider Ave Acquisition LLC ("286 Rider" or "Debtor"), by its counsel,

submits this (I) response ("Response") to the motion ("Motion") of 286 Rider Ave

Development LLC ("Development"), the Debtor's former equity holder (A) to Dismiss

Bankruptcy Case Pursuant to 11 U.S.C. §§ 105, 305 and 1112, (B) seeking Turnover

of Certain Membership Interests Under 11 U.S.C. § 543 and (II) Joinder to Lender's

Response to the Motion to Dismiss.  In support of this Response, the Debtor

respectfully represents as follows[1]:

---

[1] Be-Aviv 286 Rider LLC, the Debtor's pre-petition senior secured lender will be filing a response to
the Motion made by Development. As a result, there may be some overlap in the factual recitals and
the legal arguments advanced by the parties.

{01115009.DOCX;1 }

## PRELIMINARY STATEMENT

1.      While Be-Aviv 286 Rider LLC, ("Be-Aviv" or "Lender"), the Debtor's pre-petition senior secured lender, addresses the arguments made by Development over enforcement of a Pledge Agreement (hereinafter defined) in its response, the Debtor is constrained to respond to Development's inflammatory "the sky is falling" rhetoric that claims this Court, by allowing Be-Aviv, and by extension, the Debtor, to proceed with this chapter 11 case, the Court would unleash a "parade of horribles" that will allow lenders to "run roughshod over borrower's equity of redemption and due process rights." Development alleges that the course followed by the Lender here diverts "so far over the line" from "typical," and in Development's value judgment, "appropriate" creditor enforcement schemes, and that such strategic enforcement action should never be permitted. Motion at pp. 1-2.

2.      If that were not enough, Development then implores this Court to ignore the parties' validly executed loan documents and stop this bankruptcy case from continuing, because, if the case is permitted to continue, "nothing" will stop any lender who desires to avoid having to conduct a UCC Article 9 sale or judicial foreclosure action from merely exercising a pledge of the borrower's equity interests. *Id.*

3.      What Development fails to appreciate is that the direction pursued by Be-Aviv is precisely the conduct that a secured creditor may pursue, and indeed is entitled to pursue, as part of its bundle of enforcement options where it holds a secured claim that includes a pledge of a borrower's membership interests. While

many lenders holding a mortgage and a pledge choose a strategy of a judicial foreclosure or a UCC sale, they do not have to do so after their borrower defaults. Suppose the loan documents permit a transfer of the Debtor's membership interests upon default, as they do here. In that case, Article 9-601 of the UCC respects the borrowers' and lenders' freedom to contract and sets out the lenders' enforcement rights and borrowers' obligations under a pledge agreement after a default, just as Be-Aviv and Development have in this case. Enforcement by Be-Aviv of its Pledge Agreement (defined below) by transferring Development's membership interests to itself is permissible and contemplated under the parties' agreement as embodied in their Loan Documents[2] and as contemplated by Article 9 of the UCC.

4.       Article 9-601(a) of New York's version of the Uniform Commercial Code provides "[a]fter default, a secured party has the rights provided in this part and, except as otherwise provided in Section 9-602, **those provided by agreement of the parties.** . ." Simply put, and as will be addressed later herein and by Be-Aviv, once the Debtor failed to repay the $8,000,000 it borrowed from Be-Aviv by the extended maturity date as set forth in the default notice sent to it on March 2, 2021, Be-Aviv was free to proceed down whichever strategic collection path it determined was in its best interests including enforcing its rights under the Pledge Agreement which were "… the rights … provided by the [pledge agreement] of the parties…." As discussed below and in the Lender's Response to the Motion ("Lender Response"), nothing in

---

[2] The term "Loan Documents" is defined to include the Note, (as amended by the First Amendment to Promissory Note), Pledge Agreement, Mortgage, and all other documents evidencing or securing the Loan including the Written Consent and Document Re-Execution Agreement."

Article 9 of the UCC or foreclosure law requires a secured lender whose borrower has defaulted to foreclose on its mortgage or conduct a UCC Article 9 sale when the UCC permits it to enforce its bargained-for rights under a pledge agreement.

5.    Development is a disgruntled former owner of the Debtor. It is seeking an order (i) dismissing the Debtor's bankruptcy case under §§ 105, 305 and 1112 of title 11 of the United States Code (as amended, the "Bankruptcy Code") and (ii) for turnover of all the Membership Interests (defined below) in the Debtor to it.[3] Specifically, Development contends that the Debtor's bankruptcy case should be dismissed for these reasons:

(i)    the Membership Interests Pledge Agreement dated as of September 19, 2019 (the "Pledge Agreement") was defective because it was not signed by the proper party with authority to bind pledgor Development;

(ii)    Lender has "weaponized" its defective pledge to commence a bankruptcy case to sell its real estate collateral, allowing Lender to avoid (a) the consequences of its purported bad faith pre-petition conduct, (b) its purported default in the State Court Action (defined below); and (c) due process inherent in a state law foreclosure action or UCC sale;

(iii)    Lender has acted improperly by clogging the pledge/borrower's equity of redemption;

(iv)    the case is a two-party collection dispute for which there is no proper purpose for a bankruptcy case;

---

[3] The Development Notice of Hearing for the Motion [ECF Doc. No. 17] ("Notice") seeks the turnover of "certain" Membership Interests to Development while the proposed order seeks the turnover of "possession of **the** membership interests in the Debtor", or apparently 100% of such interests.  Notice at p. 1. The Proposed Order also seeks other relief not requested in the Notice or in the Motion including (i) the immediate termination of all professionals retained by the estate, (ii) the payment of any United States Trustee Fees, (iii) that the order is immediately effective and (iv) for a waiver of the 14-day period  provided for under Bankruptcy Rule 6004(h). Since Development failed to give notice of the request for this relief in its Motion, such relief should not be entertained by the Court.

    (v)    the bankruptcy case is a disguised involuntary proceeding where the debt is in bona fide dispute;

    (vi)    the Court should abstain from hearing the case under Section 305 of the Bankruptcy Code and then dismiss it.

6.    Development also seeks an order from this Court directing the Lender to turn over the Membership Interests in the Debtor to Development under Section 543 of the Bankruptcy Code.

7.    In short, the Motion should be denied because:

    (i)    The Pledge Agreement was not defective and was validly executed.

        (a)    Although Development claims no consent was entered into authorizing execution of the Pledge Agreement by Toby Moskovits ("Moskovits"), the statement is simply incorrect. At the closing of the Loan ("defined below"), a document entitled "Written Consent in Lieu of a Meeting" was executed authorizing, *inter alia,* Moskovits as "Authorized Signatory" to execute and deliver on behalf of Development and the Debtor, as applicable, without limitation, the Loan Documents  and the Pledge Agreement, and any security agreements;

        (b)    At Closing the Debtor, Development, Moskovits and Michael Lichtenstein ("Lichtenstein") individually executed a "Document Re-Execution Agreement" pursuant to which they agreed to re-execute any document or instrument which was incorrectly drafted and/or signed in connection with the Loan at Closing, which would include the Pledge Agreement (had it been improperly executed, which it was not); and

        (c)     as a matter of equity, Development may not reap the benefit of the Loan by its purposeful action in having an allegedly unauthorized representative of Development execute the Pledge Agreement and then claiming it is not bound by the Pledge Agreement;

(ii)    the Lender properly exercised its rights under the Pledge Agreement as a secured creditor after a default under the Uniform Commercial Code, including section 9-601(a);

(iii)   the right of redemption belongs to the Debtor and its estate, and no actions taken by the Lender, or any other party, clogged the right of redemption;

(iv)   the case is not a two-party dispute and should not be dismissed or analyzed on that basis; and

(v)    the case is not a disguised involuntary bankruptcy.

8.      Moreover, the Court should not abstain from hearing the case under Section 305 of the Bankruptcy Code or otherwise because the interests of the Debtor and its creditors are best served by their respective issues being resolved in this Court rather than in the State Court Action where neither the movant Development nor any of the Debtor's known creditors (other than the Lender) are parties to the action.

9.      Furthermore, Development's request to have the Lender turn over the Membership Interests should be denied because (i) the Lender is not the current custodian of the Membership Interests, (ii) the Membership Interests are not property of the Debtor's estate, and (iii) Development is neither the trustee nor the Debtor and thus is not entitled to have the Membership Interests turned over to it under Section 543 of the Bankruptcy Code. Turnover under Section 543 of the Bankruptcy Code is unavailable to Development.

## BACKGROUND

10.     On September 19, 2019, 286 Rider, as borrower, entered into a mortgage loan ("Loan") in the original principal amount of $8,000,000.00 with Lender in its capacity as lender. In connection with the Loan, 286 Rider executed a promissory

note (as amended, the "Note") and granted Lender a first priority senior secured mortgage and security interest in its property owned by the Debtor and located at 286 Rider Avenue, Bronx, New York 10451 ("Property").

11.     The Note provides that an Event of Default includes 286 Rider's failure to make any payments when due under the Note. On March 2, 2021, the Loan matured by its terms in accordance with an extended maturity date. A maturity date notice was sent by the Lender demanding full payment. *See* Declaration of Ben Harlev in Support of Lender Response (hereinafter, "Lender Declaration"), Exhibit J, (Note at p. 3). There can be no dispute that 286 Rider is in default and has not paid the Note.

12.     To secure payment of the Note, 286 Rider's sole member, Development, pledged its one hundred percent (100%) of the membership interests in 286 Rider ("Membership Interests") to Lender under the Pledge Agreement.

13.     The Pledge Agreement provides, among other things, that upon an Event of Default, the Lender has a right to have the Membership Interests registered in its name or its nominee and to exercise control over the Debtor as if it were the absolute owner. Section 5(a) of the Pledge Agreement provides:

> If an Event of Default shall occur and be continuing, then all Membership Interests at Lender's option, may be registered in the name of Lender or its nominee (if not already so registered), and Lender or its nominee may thereafter exercise (i) all voting and all equity, membership and other rights pertaining to the Membership Interests and (ii) any and all rights of conversion, exchange, and subscription and any other rights, privileges or options pertaining to such Membership Interests as if it were the absolute owner thereof (including, without limitation, the right to exchange at its discretion any and all of the Membership Interests upon the merger, consolidation, reorganization,

recapitalization or other fundamental change in the organizational structure of any member or upon the exercise by Pledgor or Lender of any right, privilege or option pertaining to such Membership Interests, and in connection therewith, the right to deposit and deliver any and all of the Membership Interests with any committee, depositary, transfer agent, registrar or other designated agency upon such terms and conditions as it may determine), all without liability except to account for property actually received by it, but Lender shall have no duty to exercise any such right, privilege or option and shall not be responsible for any failure to do so or delay in so doing.

A copy of the Pledge Agreement is attached to the Lender Declaration as Exhibit B.

14.    Moreover, the Pledge Agreement could not be waived or modified by Development, except in a signed writing:

> None of the terms or provisions of this [Pledge] Agreement may be waived, amended or otherwise modified except by a written instrument executed by a party against which enforcement of such waiver, amendment, or modification is sought.

Lender Declaration, Exhibit B (Pledge Agreement) at ¶20.

15.    On or about September 17, 2019, in connection with the closing on the Loan, (i) the Debtor executed a Certificate For Limited Liability Company Interests in 286 Rider ("Certificate"), under which the Debtor certified that Development is the registered owner of 100% of the limited liability company interests in 286 Rider, and (ii) Development, by its authorized signatory Moskovits, signed an Assignment of Interest in blank, selling, assigning and transferring its Membership Interests in 286 Rider and irrevocably appointing the transferee of the Assignment of Interests (i.e., the Lender) to transfer the same on the books and records of 286 Rider. A copy of the Assignment of the Membership Interest signed by Moskovits is attached to the Lender Declaration as Exhibit G.

16. By letter dated March 2, 2021 ("March 2nd Letter"), the Lender (i) notified 286 Rider that the Loan matured on March 1, 2021, (ii) demanded immediate payment of all amounts due under the Loan Documents by 286 Rider, through March 1, 2021, which totaled $8,207,680.65 as of that date, and (iii) advised 286 Rider that its failure to make payment of all sums due to Lender on or before March 15, 2021 (together with per diem interest) will result in the Lender taking such action as it considers necessary and appropriate to protect and enforce its rights, (iv) informed 286 Rider that if payment in full is not made before March 15, 2021, interest will accrue at the default rate as of March 2, 2021, and (v) reserved its rights. A copy of the March 2nd Letter is attached to the Lender Declaration as Exhibit J.

17. 286 Rider did not respond to the March 2nd Letter.

18. On April 27, 2021, ("April 27th Pledge Notification Letter"), Lender advised that 286 Rider's continued failure to pay the amounts due under the Loan constituted an event of default under the Loan Documents, allowing Lender to exercise its rights under the Pledge Agreement. As a result, Lender advised Debtor and pledgor Development that it had assigned, transferred, and registered, as applicable, all membership and equity interest of Debtor to and in the name of Lender as if Lender were the absolute owner. This letter also demanded the immediate turnover of all books and records of the Debtor. A copy of the April 27th Pledge Notification Letter is attached to the Lender Declaration as Exhibit K.

19. On June 14, 2021, Lender appointed 286 Rider Ave Lender LLC ("286 Rider Lender") as managing member of Debtor by entering into an assignment and

assumption agreement between Debtor and Lender ("Assignment").  The Assignment also conveyed the Membership Interests in 286 Rider to 286 Rider Lender. The Assignment is attached to the Lender Declaration as Exhibit L.

20.    Neither Development nor 286 Rider ever responded to the April 27th Pledge Notification Letter. In fact, no response was received from Development until it filed the Motion.

21.    Effective July 1, 2021, 286 Rider Lender retained Lee E. Buchwald ("Buchwald") as manager of 286 Rider to file a Chapter 11 petition for the Debtor, manage the Debtor during the bankruptcy case, and oversee the bankruptcy case as the Debtor's sole authorized representative.

22.    By letter dated July 14, 2021 ("July 14th Letter"), Lender's counsel advised 286 Rider and Development that (i) 286 Rider was previously notified in the March 2nd Letter that the Loan matured on the extended maturity date of March 1, 2021, (ii) by the April 27th Pledge Notification Letter, 286 Rider was notified that its failure to pay all sums due under the Loan constituted an Event of Default under the Loan Documents, (iii) because of the Event of Default, Lender executed its right under the Pledge Agreement to assign, transfer and register the Membership Interests in and to the name of the Lender as if the Lender was the absolute owner thereof.  The July 14th Letter confirmed again that the Lender had exercised its rights under the Pledge Agreement and made a second demand for all the books and records of the Debtor.  A copy of the July 14th Letter is attached to the Lender Declaration as Exhibit M.

23.    On July 15, 2021, Lee Buchwald, the manager of 286 Rider, duly authorized the Debtor's filing of its Chapter 11 bankruptcy case.  Resolutions were adopted that 286 Rider should (i) file for bankruptcy protection, (ii) obtain debtor in possession financing (subject to court approval), (iii) retain Robinson Brog Leinwand Greene Genovese & Gluck P.C. as bankruptcy counsel, and (iv) retain Rosewood Realty Group, as real estate broker, to sell the Property.  A copy of the resolution is attached as the Declaration of Buchwald in Support of Response ("Buchwald Declaration") as Exhibit A.

24.    On July 15, 2021, 286 Rider filed for voluntary relief under Chapter 11 of the Bankruptcy Code.

25.    As a result of (i) the membership change brought on by 286 Rider's default under the Loan and the Lender's exercise of its rights under the Pledge Agreement, and (ii) transferring the Membership Interests in 286 Rider to 286 Rider Lender, the Debtor is currently not in possession of its books and records and could not file its list of 20 largest unsecured creditors, schedules, and statement of financial affairs.

26.    As the new owners of the Debtor had no access to the Debtor's books and records to prepare its schedules and statement of financial affairs, on July 15, 2021, the Debtor filed an application ("Rule 2004 Application") under Bankruptcy Rule 2004 to subpoena the Debtor's books and records and examine Moskovits and Lichtenstein to obtain the information needed to prepare and file a complete set of schedules and statement of financial affairs.

27.    On July 15, 2021, the Debtor also moved to extend its deadline to file its schedules and statement of financial affairs so that upon receipt of its books and records and other financial information, the Debtor will have sufficient time to review all information and complete its schedules and statement of financial affairs.

28.    By Order dated July 16, 2021 ("Rule 2004 Order"), this Court granted the 2004 Application.  As a result, and through counsel, Debtor issued subpoenas for Rule 2004 examinations seeking documents from (i) Development, Moskovits and Lichtenstein by August 5, 2021 and the examination of Lichtenstein on August 9, 2021 and Moskovits on August 12, 2021. Rule 2004 subpoenas were served on counsel for Development, Moskovits and Lichtenstein, who represented that he accepted service of the subpoenas with his client's consent. No documents have been produced and thus both Lichtenstein and Moskovits have not been examined.

29.    By order dated July 21, 2021, this Court extended the Debtor's deadline to file its Statement of Financial Affairs and Schedule of Assets and Liabilities and other documents to and including August 26, 2021.

30.    On August 3, 2021, Development filed its Objection To Order Granting 286 Rider Ave Acquisition LLC's Ex-Parte Motion For Entry Of An Order Pursuant To Bankruptcy Rule 2004 Authorizing Discovery Examinations Of (I) Moskovitz And (II) Lichtenstein ("Rule 2004 Objection").   Subsequently, on August 12, 2021, Development filed a motion under Federal Rule of Bankruptcy Procedure 9023 and Federal Rule of Civil Procedure 60 for relief from the Rule 2004 Order, *inter alia,* authorizing discovery examinations of (i) Moskovits and (ii) Lichtenstein.

31.    As Moskovits and Lichtenstein have refused to timely turn over the Debtor's books and records or comply with the Rule 2004 subpoenas, on August 12, 2021, the Debtor filed a second motion to extend the deadline to file its statement of financial affairs and schedules.  The hearing on the motion is scheduled for August 26, 2021.

## ARGUMENT

32.    Development incorrectly asserts that (i) the Court should dismiss or abstain from hearing the bankruptcy case in favor of the State Court Action, and (ii) the Lender should turn over the Membership Interests to it.    Contrary to Development's contentions, and as addressed below and in the Lender Response,[4] the Court should not abstain in favor of the State Court Action. The bankruptcy case was not filed in bad faith but was properly filed because (i) the Lender properly exercised its rights under the Pledge Agreement, (ii) the Lender properly assigned its Membership Interests in 286 Rider to 286 Rider Lender, (iii) 286 Rider properly retained Buchwald as manager of the Debtor, and (v) Buchwald properly determined to file for bankruptcy on behalf of 286 Rider.  Moreover, as set forth below, there is no basis for the Lender to turn over the Membership Interests in the Debtor to Development.

---

[4] The Debtor hereby joins and incorporates by reference the Lender Response.

## Dismissal Is Not Warranted Under Section 305 of the Bankruptcy Code

33.    Development asserts that the Court should abstain from hearing this case and dismiss it under Section 305(a)(1) of the Bankruptcy Code. Section 305(a)(1) provides as follows:

> The court, after notice and a hearing, may dismiss a case under this title or may suspend all proceedings in a case under this title, at any time if … the interests of creditors and the debtor would better be served by such dismissal or suspension.

11 U.S.C. §305(a)(1).

34.    "The courts that have construed §305(a)(1) are in general agreement that abstention in a properly filed bankruptcy case is an extraordinary remedy, and that dismissal is appropriate under §305(a)(1) only in the situation where the court finds that both 'creditors and the debtor' would be better served by a dismissal." *In re Monitor Single Lift I Ltd.,* 381 B.R. 455, 462 (Bankr. S.D.N.Y. 2008).

35.    "Granting an abstention motion pursuant to §305(a)(1) requires more than a simple balancing of harm to the debtor and creditors; rather, the interests of both the debtor and its creditors must be served by granting the requested relief." *Id.* Moreover, "[t]he moving party bears the burden to demonstrate that the interests of the debtor and its creditors would benefit from dismissal or suspension of proceedings under §305(a)(1)." *Id.* at 462-63. *See In re Condominium Association of Plaza Towers South, Inc.,* 43 B.R. 18, 20 (Bankr. S.D. Fla 1984) ("[G]iven the non-appealability of dismissal under §305 of the Bankruptcy Code, this Court finds that [creditor] carries a substantial burden in advocating abstention in this case …)".

36.     Courts have found these seven factors relevant to the decision whether to abstain:

> (1) the economy and efficiency of administration; (2)whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time-consuming to start afresh with the federal bankruptcy process; and (7)the purpose for which bankruptcy jurisdiction has been sought.

*Monitor*, 381 B.R. at 464-465.   "While all factors are considered, not all are given equal weight in every case." *Id.* at 465.   Moreover, when evaluating these factors, the Court should consider that Development is not a creditor of the Debtor's estate, but a disgruntled former owner of the Debtor that has provided no evidence to meet its burden.

37.     Instead of evidence, Development mistakenly relies on the state court litigation[5] filed by Heritage 875 4th Avenue LLC, Heritage 286 Rider Ave LLC, 875 4th Avenue Acquisition LLC, 286 Rider Avenue Acquisition LLC, Toby Moskovitz and Michael Lichtenstein (collectively, "State Court Plaintiffs") against Aviv Arava Management, LLC, Be-Aviv 4th Avenue Mortgage Lender LLC, Be-Aviv 286 Rider LLC, Be-Aviv 4th Avenue Lender LLC, Ben Harlev and Eyal Epstein (collectively, "State Court Defendants") in the Supreme Court of the State of New York, County of

---

[5] Plaintiff in the State Court Action appear to be parties related to Development. Still, Development is not a plaintiff or a defendant in the State Court Action for which it is seeking abstention. Nor does Development appear to be a creditor of the Debtor. It appears merely to be a former interest holder.

Kings[6] ("State Court Action") for its contention that this Court should abstain from

hearing this bankruptcy case in favor of the State Court Action.  For the reasons

below, the seven factors establish that Development has not satisfied its burden to

show that the interests of the Debtor and its creditors would affirmatively benefit

from dismissal or suspension of the bankruptcy case under §305(a)(1).

> **Factors 1, 2 and 3** - Contrary to Development's contention, the State
> Court Action does not resolve the "central issues".  The litigation
> concerns <u>three loans</u> by <u>different lenders</u> to <u>different borrowers</u>
> concerning <u>two pieces of property</u>, only one of which is estate property.
> Development is not a party to the State Court Action, and thus <u>any</u>
> <u>issues that it may have, including its motion to turn over the</u>
> <u>Membership Interests, will not be resolved in that litigation</u>.
> Furthermore, the State Court Action is in its infancy and has barely
> progressed: (i) not all the State Court Defendants have been served with
> the summons and complaint, (ii) the State Court Defendants that have
> been served have not answered the complaint, (iii) no discovery has been
> taken in the State Court Action, (iv) no discovery deadlines have been
> set, (v) no dispositive motions have been filed, and (vi) the parties are
> not ready for trial.  Lender Response at ¶¶ 60-70.  Thus, there is no
> economy and efficiency of administration by abstaining because other
> than the Lender, the Debtor's creditors are not parties to the State Court
> Action and their respective claims cannot be resolved in that litigation.
> The Debtor is a State Court Plaintiff in the State Court Action and none
> of the creditor's rights would be protected in that action.  In contrast, all
> creditors and parties in interest have a right to be heard in the
> bankruptcy case, and the creditors' claims can be resolved in the
> bankruptcy case. Thus, a federal bankruptcy proceeding is necessary to
> reach a just and equitable solution for all creditors, including 286 Rider
> Associates LLC, which has a $1,178,725 Judgment By Confession
> against the Debtor.  A copy of the Judgment by Confession is attached
> to the Lender Declaration as Exhibit O.

> **Factor 4** –Without providing any factual support or any analysis for its
> position, Development asserts that "there is undoubtedly an alternative
> means of achieving an equitable distribution of assets in this dispute,
> and that is to allow the State Court [Action] continue to resolve the
> central issues between the parties." As demonstrated above, the central

---

[6]  Venue in this action has since been transferred to New York County in accordance with the venue
selection provision in the operative Loan Documents.

issue in the State Court Action is a dispute between the several borrowers, including 286 Rider, and their lenders; it has nothing to do with an equitable distribution of assets to the Debtor's creditors as it does not provide an opportunity for the Debtor's creditors to resolve their claims in the State Court Action.  It is not an alternative means of achieving an equitable distribution of assets.

**Factor 5** - Although it is unclear whether the Debtor and its creditors will be able to work-out a less expensive out-of-court arrangement which better serves all interests in the case, it is clear that mediation between non-creditor Development (who is not a party to the State Court Action) and the Debtor will not serve all interests in the case because without selling the Property in bankruptcy and distributing the sale proceeds in order of the creditor's respective priorities, creditors' claims will not be addressed.

**Factor 6** —No state insolvency proceeding has commenced and thus it is not costly and time consuming to start afresh with the federal bankruptcy process, especially because the State Court Action will not address (i) the claims of all parties, and (ii) the issues that Development raised in its Motion in this Court.

**Factor 7** —Contrary to Development's contention, the Debtor filed the bankruptcy case and not the Lender. The Debtor's purpose in filing the bankruptcy case is to maximize the sale of the Property and pay all the Debtor's allowed claims in the order of their respective priority.

38.    Thus, the seven factors show that neither dismissal or suspension is appropriate because the Debtor and its creditors are not better served by the Court abstaining or dismissing the bankruptcy case.  As for the Debtor's actual creditors, dismissal or abstention is not in their best interest as between the State Court Action and this bankruptcy proceeding, only the bankruptcy proceeding provides a mechanism for them to liquidate the Debtor's assets and resolve their claims in the order of their priority.  In contrast, the current State Court Action resolves no claims against the Debtor and does not affect any of Debtor's creditors other than the Lender. Thus, as dismissal and abstention are not in the interests of both the Debtor and its

creditors, Development's Motion under Section 305 of the Bankruptcy Code therefore should be denied. *See In re Foundry of Barrington P'ship,* 129 B.R. 550, 555 (Bankr. N.D. Ill. 1991) (denying motion to dismiss under Section 305 of the Bankruptcy Code when dismissal is not in the interest of the debtor and other creditors).

39.     Despite Judge Glenn's ruling in *Monitor* that granting an abstention motion under Section 305 of the Bankruptcy Code both the interest of the debtor and the creditors must be served, Development seeks to rely on *In re Duratech Indus, Inc.*, 241 B. R. 291 (Bankr. E.D.N.Y. 1999) for the proposition that courts have (i) dismissed chapter 11 proceedings over the objection of debtors and (ii) dismissed or abstained from hearing bankruptcy cases under Section 305(a)(1) of the Bankruptcy Code on the same or similar factual predicates as this case. Development's reliance on *Duratech* is misplaced as that case was not suspended over the objection of the debtor and factual predicates between the cases are not similar and easily distinguishable.

40.     In *Duratech*, Judge Bernstein, on his own *sua sponte* motion, determined that the Court should abstain from (or suspend) any further administration of the dormant chapter 11 case under sections 105 and 305(a)(1) of the Bankruptcy Code until the various substantive matters between the creditor and the debtor are determined by the U.S. Magistrate Judge and the U.S. District Court Judge in several different matters. *Id.* at 292-293. In that case, the District Court was actively involved for many months in the pending civil action between the creditor and the debtor, and the litigation "ha[d] proceeded fairly far down the road

toward a full determination of the merits ….” *Id.* at 293.    Moreover, *Duratech's* counsel continually pointed out during the bankruptcy case that his client's ability to reorganize turned on its successful prosecution of civil claims against the creditor. Furthermore, the Bankruptcy Court determined that no party in interest could propose a plan in good faith that could be confirmed given the contingency of the litigation between the parties.  As a result, the Bankruptcy Court determined that there was no justification to administer a dormant chapter 11 case in which its success or failure depends on the outcome of the pending litigation before the Magistrate/District/Appeals Court. Thus, the *Duratech* Court determined that it was in the interests of both creditors and the debtor that it suspend any further proceedings to conserve the debtor's modest resources.  *Id.* at 296.  This case is easily distinguishable from *Duratech*.  Here, the State Court Action is in its infancy and the State Court Defendants have not even answered the complaint.  Second, the Debtor's bankruptcy does not turn on the outcome of a litigation against the Lender. Third, unlike *Duratech*, Debtor's counsel is advising the Court that suspension is not in its interest and that it can sell the Property and confirm a plan without waiting for the results of the State Court Action, which could take years and does not involve the movant Development or any of the Debtor's other creditors (other than the Lender).

41.    Development's reliance on *In re Northshore Mainland Services, Inc.,* 537 B.R. 192 (Bankr. D. Del 2015) and *In re of Fitzgerald Group,* 38 B.R. 16 (Bankr. S.D.N.Y 1983) is also misplaced, as those cases are easily distinguishable. In *Northshore Mainland Services*, the debtors consisted of several Bahamian

corporations and a Delaware corporation. Creditors moved to dismiss the bankruptcy cases under Sections 305 and 1112 of the Bankruptcy Code. The Court denied the motion under Section 1112 of the Bankruptcy Code and with respect to the motion under Section 305 of the Bankruptcy Code, it denied the motion as to the Delaware corporation (retaining jurisdiction over the case) and granted the motion to dismiss as to the Bahamian companies' bankruptcy cases because (i) the central focus of the proceeding was an unfinished resort in the Bahamas, (ii) the government of the Bahamas had a deep and important economic interest in the future of the project, (iii) the Bahamian Supreme Court had appointed provisional liquidators with limited powers to preserve debtors' assets while promoting a plan of compromise among all stakeholders, (iv) the proceedings that occurred to date in the Bahamian Supreme Court demonstrated that the debtors were being treated fairly and impartially, (v) many stakeholders in the project would likely expect that any insolvency proceedings would take place in the Bahamas, (vi) there was no evidence that the Bahamian laws contravened U.S. public policy, and (vii) there were considerations of comity as a result of the foreign insolvency proceeding. *Northshore*, 537 B.R. at 205-208.

42.    *Northshore* is also clearly distinguishable from the present case on the facts. In fact, the Delaware court dismissed only with respect to the Bahamian companies in favor of the Bahamian insolvency proceedings after concluding that "considerations of comity support abstention pursuant to §305(a)." *Id.* at 208.

43.    Finally, *Fitzgerald Group* is easily distinguishable as well. In that case, the Court dismissed the bankruptcy case under Section 305 of the Bankruptcy Code

where (i) the debtor had one asset valued at $2,500, (ii) there were nine unsecured creditors without priority with total claims of approximately $23,000, (iii) the debtor failed to file operating statements, a plan or a disclosure statement, and  (iv) the partnership was dissolved under New York Partnership Law as one of the two partners died and the partnership only continued to exist to wind up the affairs of the partnership. *Fitzgerald*, 38 B.R. at 18.  The Court indicated that the primary consideration should be given to the efficiency and the economy of administration. *Id.* Thus, in dismissing the case, the Bankruptcy Court found that the interests of the debtor and creditors would be better served by the debtor winding up the partnership in accordance with New York Partnership Law rather than in a federal forum, given that the unsecured debts are minimal without priority, the only asset is valued at $2,500, and the administration of the estate would deplete the estate further and not serve the interests of either the creditors or the debtor. *Id.* This is not our case.  The Debtor is not liquidating under New York Partnership Law and it is in the interest of the Debtor and creditors to proceed with the bankruptcy case so that the creditor claims can be resolved and paid in the order of their respective priority.

## Bankruptcy Case Was Not Filed in Bad Faith

44.    Development contends that there are multiple indicia of bad faith in this case which warrant dismissal of the bankruptcy case.  Contrary to Development's assertions, as set forth below and in the Lender's Response, there was no bad faith by either the Lender or the Debtor that warrants dismissal of the bankruptcy case.

For the reasons below, Development's Motion on the basis the Debtor's case was commenced in bad faith should be denied.

### Pledge Agreement Is Valid and Should Be Enforced

45.    Development contends that the Pledge Agreement is invalid and void because the proper party on behalf of pledger Development did not execute the Pledge Agreement.  As explained in more detail in the Lender Response (which the Debtor joins), Development is wrong.  Contrary to Development's contention that no consent was executed authorizing Moskovits, on behalf of Development, to execute the Pledge Agreement, on September 19, 2019, Moskovitz, Lichtenstein, individually and on behalf of Development, 286 Rider Ave Holdings LLC, and Heritage 286 Rider Ave LLC executed a Written Consent In Lieu of a Meeting authorizing Moskovits to execute, among other things, the Pledge Agreement.  A copy of the Written Consent in Lieu of a Meeting is attached to the Lender Declaration as Exhibit H.  Moreover, on September 15, 2019, 286 Rider and Development executed a "Document Re-Execution Agreement", which authorized Moskovits and Lichtenstein on behalf of 286 Rider and Development to re-execute any document or instrument signed in connection with the Loan which was incorrectly drafted or signed.  A copy of the Document Re-Execution Agreement is attached to the Lender Declaration as Exhibit F. The Court is respectfully referred to Lenders Response at ¶¶51-56 for additional support for the validity of the Pledge Agreement.

## Lender Was Not Required to Foreclose on
## Membership Interests to Gain Control Over Debtor

46.     The Debtor joins and incorporates the arguments set forth in the Lender

Response at ¶¶43-50 that Lender was not required to foreclose on the Membership

Interests to properly exercise its rights. *See, In re Riverair LLC*, Case No. 04-17586

(SMB), Bankr. S.D.N.Y 2005, *citing*, *In re Domestic Fuel Corp.*, 71 B.R. 734, 738

(Bankr. S.D.N.Y. 1987) (dicta); *In re Eastern Bancorporation*, 23 B.R. 474, 478

(Bankr. E.D. Pa. 1982).

## Bankruptcy Case Was Not Filed as a Litigation Tactic

47.     Development contends that the Lender is using the bankruptcy process

as a litigation tactic because the State Court Action is a two-party dispute involving

only state law claims for the purported Lender's misconduct and alleged defaults by

Lender under the Loan.[7]

48.     Development asserts, among other things, that (i) this case should be

dismissed because the bankruptcy case is a two-party dispute (although it does not

make it clear which two parties are in dispute) and (ii) the Debtor only has three

unsecured creditors with claims totaling approximately $1,000,000 (although the

Motion does not identify the creditors).   In the bankruptcy context, a typical two-

party dispute is usually between a secured creditor trying to foreclose on its collateral

and a debtor (trying to prevent the foreclosure).   Here, the movant Development is

neither a creditor of the Debtor nor a party in the State Court Action.[8]   Rather, it is

---

[7] Debtor joins and incorporates the Lender Response with respect to Development's contentions.

[8] The State Court Plaintiffs are Heritage 875 4th Avenue LLC, Heritage 286 Rider Ave LLC, 875 4th
Avenue Acquisition LLC, 286 Rider Avenue Acquisition LLC, Toby Moskovitz and Michael

a disgruntled former owner of the Debtor with no claim other than its motion to turn over the Membership Interests, which fails for the reasons set forth below.

49.     Although the Debtor is currently without its books and records because Moskovits and Lichtenstein have not produced it in violation of the Court's Rule 2004 Order and the subpoenas that were issued in connection therewith, the Debtor is aware of the following:[9]

(i)     a Judgment by Confession in favor of 286 Rider Associates, LLC in the amount of $1,178,725, entered on December 17, 2020, a copy of which is attached to the Lender Declaration as Exhibit O;

(ii)    outstanding real estate taxes owed as of June 5, 2021, in the amount of $54,421.82, as evidenced by the NYC Department of Finance Property Tax Bill Quarterly Statement, a copy of which is attached to the Buchwald Declaration as Exhibit B;

(iii)   anticipated[10] attorneys' fees were incurred in the State Court Action by the State Court Plaintiffs, including the Debtor, to their attorneys — Goldberg & Markus PLLC and Jonathan Schwartz Law LLC in an unknown amount;

(iv)    the Lender is owed more than $8,000,000 based on the Loan and the Loan Documents plus interest, default interest, protective advances, legal fees, and other charges due under the loan in the approximate amount of not less than $8,207,680.65 as of March 1, 2021; and

(v)     there may be claims by (i) an insurance company for coverage on the warehouse structure located on the premises at 286 Rider Avenue and Property and (ii) one or more utility companies if utilities were used but remain unpaid.

---

Lichtenstein, and the State Court Defendants are Aviv Arava Management, LLC, Be-Aviv 4th Avenue Mortgage Lender, LLC, Be-Aviv 286 Rider LLC, Be-Aviv 4th Avenue Lender, LLC, Ben Harlev and Eyal Epstein.

[9] In addition to the creditors that the Debtor is aware of based upon publicly available information, Development served three additional entities identified as creditors of the Debtor with the Motion — Fischer Makooi Architects, Titan Engineers PC, and Robert Newblatt — although the Motion does not set forth the amounts owed to each creditor

[10] The amount is unknown because the Debtor has not had access to its books and records.

50.    Thus, even without the Debtor's books and records, this case is not a mere two-party dispute. *See In re Euro-American Lodging Corp.,* 357 B.R. 700, 730 (Bankr. S.D.N.Y. 2007) (Court declined to abstain or dismiss an involuntary petition, even though debtor had at most eight creditors as of the petition date); *In re Lake Mich. Beach Pottawattamie Resort LLC*, 547 B.R. 899, 908 (Bankr. N.D. Ill. 2016 (Court did not find bad faith two party dispute when debtor had at least three scheduled creditors) *In re Cent. Jersey Airport Servs.*, 282 B.R. 176, 180 (Bankr. D.N.J. 2002) (case with 13 creditors cannot be characterized as a two-party dispute); *see also In re Sletteland*, 260 B.R. 657, 667 (Bankr. S.D.N.Y. 2001) (case with just a few creditors is more than a two-party collection dispute where other parties' rights could be impacted).   Finally, the alleged two-party dispute does not even involve Development as it is neither a party to the State Court Action nor a creditor in this case.

## The Equity of Redemption Is Not Clogged

51.    Development contends that the Lender's improper actions clogged the equity of redemption.  As explained in the Lender Response, Development's argument has no support in law and would invalidate billions of dollars of security. Further, the equity of redemption, a creature of state law is not destroyed by the filing of s chapter 11 case but merely is another property right belongs to the borrower, and upon the bankruptcy filing becomes part of the Debtor's estate and like any other asset subject to Section 541 of the Bankruptcy Code. *In re Haynes*, 283 B.R. 147, 155–56 (Bankr. S.D.N.Y. 2002) (*citing Canney v. Merchants Bank*, 284 F.3d 362, 372 (2d Cir. 2002)).

The Debtor joins and incorporates the Lender's Response on this issue as if it were fully set forth herein. See Lender Response at ¶¶74-84.

52.    Development contends that it has established a prima facie case for turnover of the Membership Interests.  Development has mangled the statute and is just plain wrong.

53.    Section 543 of the Bankruptcy Code provides:

(a)  A custodian with knowledge of the commencement  of a case under this title concerning the debtor may not make any disbursement from, or take any action in the administration of, property of the debtor,…or property of the estate, in the possession, custody, or control of such custodian, except such action as is necessary to preserve such property.

(b)  A custodian shall – (1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case…

11 U.S.C. §543(a) and (b)(1).

54.    Based on Section 543 of the Bankruptcy Code, the Lender need not turn over the Membership Interests to Development because (i) it is not holding the Membership Interests as they were assigned to 286 Rider Lender on June 14, 2021, (ii) the Membership Interests are not property of the Debtor's estate and the statute only applies to such property, and (iii) under Section 543, property of the Debtor shall be turned over to the trustee (or debtor in possession) and Development is neither. As a result, Section 543 does not apply and there is no basis under Section 543 for any entity to turn over the Membership Interests to Development.

**Bankruptcy Case Is Not a Disguised Involuntary Bankruptcy Case**

55.     Development asserts that the Lender's actions are a bad faith filing and "a disguised involuntary proceeding where the debt is in bona fide dispute" because it is using the bankruptcy forum as a collection device without exhausting its state law remedies.  Motion at p. 3.  As shown above and in the Lender's Response, the filing of the bankruptcy case is not a bad faith filing.  The Motion fails to set forth any facts or law or seek any relief  that supports its contention that the Debtor's authorized voluntary filing of a bankruptcy case should be considered a disguised involuntary proceeding.  As Development has failed to assert any factual or legal basis for this contention, it should be rejected.

**WHEREFORE**, Debtor submits that the Court deny Development's Motion in its entirety.

Dated:        New York, New York
              August 19, 2021

                              **ROBINSON BROG LEINWAND GREENE
                              GENOVESE & GLUCK P.C.**
                              **Attorneys for Debtor**
                              875 Third Avenue, 9th Floor
                              New York, New York 10022
                              Tel. No.:  212-603-6300

                              By: /s/ Fred B. Ringel_____
                                   **Fred B. Ringel**
                                   **Steven B. Eichel**