HEARING DATE AND TIME: _____, 2021 AT _____: ___ __.M. (ET)

OBJECTION DEADLINE DATE AND TIME: _____, 2021 AT _____:
.M. (ET)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

In re:                                          Chapter 11

286 RIDER AVE ACQUISITION LLC,                  Case No: 21-11298-LGB

        Debtor.

-----------------------------------------------------------X

## NOTICE OF MOTION OF 286 RIDER AVE DEVELOPMENT LLC TO ALTER OR AMEND THE JUDGMENT UNDER BANKRUPTCY RULE 9023 AND FEDERAL RULE OF CIVIL PROCEDURE 59(e)

**PLEASE TAKE NOTICE** that a telephonic hearing on the Motion of 286 Rider Ave Development LLC to alter or amend the judgment under Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59(e) will be held on_____, 2021 at _____: _____ __.m.(ET) before the Honorable Lisa G. Beckerman, United States Bankruptcy Judge, or as soon thereafter as counsel may be heard, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom 601, New York, NY 10004.

**PLEASE TAKE FURTHER NOTICE** that pursuant to General Order M-543, dated March 20, 2020 (Morris, C.J.) ("General Order M-543"), the Hearing will be conducted telephonically. Parties wishing to appear at, or attend, the Hearing must refer to and comply with

the Bankruptcy Court's guidelines for telephonic appearances and make arrangements with Court

Solutions LLC by telephone at (917) 746-7476.

**PLEASE TAKE FURTHER NOTICE** that any objections, or other responses shall be

filed and served no later than _____, 2021 <u>at</u> _____:_____ __.m. (ET),

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the

Hearing telephonically so long as General Order M-543 is in effect or unless otherwise ordered by

the Bankruptcy Court. Failure to appear may result in relief being granted as requested.

**PLEASE TAKE FURTHER NOTICE** that unless responses are received by that time,

the relief may be granted as requested.

Dated: New York, New York
      September 13, 2021

JACOBS, P.C.
Attorneys for 286 Rider Ave.
Development LLC
667 Madison Avenue - 5th Floor
New York, NY 10065
(718) 228-2576
By: <u>/s/ Leo Jacobs_____</u>
      Leo Jacobs

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

In re:                                                         **Chapter 11**

**286 RIDER AVE ACQUISITION LLC,**                              **Case No.:  21-11298-lgb**

                              **Debtors.**
-----------------------------------------------------------------X

## MOTION OF 286 RIDER AVE DEVELOPMENT LLC TO
## ALTER OR AMEND THE JUDGMENT UNDER BANKRUPTCY RULE 9023
## AND FEDERAL RULE OF CIVIL PROCEDURE 59(e)

## PRELIMINARY STATEMENT

Party in interest, 286 Rider Ave Development LLC ("Development"), asks this Court to issue orders: a.) pursuant to Fed.R.Bankr.P. 9023 and 9024 and Fed.R.Civ.P. 59, and 60(b), granting it relief from and a rehearing concerning this Court's order of August 30, 3021 (the "Order"A copy of the First Order is annexed hereto and incorporated herein as Exhibit "A") which denied Development's motion seeking orders dismissing this case or having the Court abstain from hearing this case (the "Prior Motion") and b.) granting such other and further relief as this Court deems proper (the "Motion").

Motions to vacate, alter, or reconsider a bankruptcy court's decisions or findings are governed by Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure ("Federal Rule"), which are made applicable to bankruptcy proceedings through Rules 9023 and 9024, respectively, of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule").  As discussed below, cause exist to reconsider the Order because (i) the effect of the order is to vitiate Development's right of

redemption in violation of anti-clogging prohibitions under state law; (ii) the pledge is subordinate and subject to the operating agreement which was not complied with; (iii) the Lender acquired nothing more than the economic rights in the Debtor; and (iv) the Lender's exercise of so-called voting rights as equity security holder post-petition is void as a violation of the automatic stay.  In support of the Motion, Development respectfully alleges as follows:

## BACKGROUND AND JURISDICTION

On July 15, 2021, the Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

The Debtor was continued as a debtor-in-possession, pursuant to 11 U.S.C. §§ 1107 and 1108,

No creditors' committee was appointed in this case.

This Court has jurisdiction over this Motion, pursuant to 28 U.S.C. §§ 1334 and 157.

This Motion is a "core proceeding" as that term is defined by 28 U.S.C. § 157.

This Motion concerns a "public right."

Development consents to this Court entering a final order in this matter.

This district is the correct venue for this Motion, pursuant to 28 U.S.C. § 1408.

## FACTS

On September 19, 2019, in conjunction with an agreement by the Lender to provide financing, Development entered into a Membership Interest Pledge Agreement (the "Pledge").  See Docket Entry 24-2.  The purpose and spirit of the Pledge was to provide the Lender with recourse in the event of a default to enable relief under the UCC.  See Id. at § 2 (authorizing "Lender to record now or hereafter a *UCC-1* financing statement"); § 7(e)(vii) (referencing notification of foreclosure sale to all secured parties identified as result of the *UCC* financings [*sic*]

statements; § 12 (terminating Pledge upon payment of obligations and requiring UCC-3 termination statements with respect to any UCC-1s filed); § 13 (providing Lender with all of the rights and remedies under the UCC to liquidate Collateral as permitted by Operating Agreement).

Further, while the Pledge provides broad rights to effectuate its purpose (see Id. § 13, providing Lender with all other rights given by law or otherwise), all such rights were at all times subject and subordinate to the Operating Agreement. Id. ("…subject to the Borrower Operating Agreement, Lender shall have…"); § 3 (representing and warranting that the Borrower Operating Agreement restricts Lender's rights with respect to the loan documents); and § 10 (allowing Lender to appoint attorney-in-fact with full authority in the place and stead of Development *subject to the provisions of the Borrower Operating Agreement*).

Crucially, the Debtor's Operating Agreement provides that: (i) Development is the sole member of the Company and shall have the *sole* power to do any and all acts in furtherance of its purpose; (ii) that a certificate indicating its membership interest may be issued to evidence ownership; and that the only circumstances upon which a new certificate may be issued are to rectify a lost, stolen or destroyed certificate, to provide a certificate to a *purchaser for value in good faith and without notice of an adverse claim*, to a surety in connection with indemnification against any claims, and to satisfy any other reasonable requirements imposed by the Debtor. See Operating Agreement annexed hereto as **Exhibit C** at §§ 11(b)(i) and (ii). There is no other basis under the Operating Agreement upon which a certificate may be issued.

In that regard, and as set forth further below, the assignment of interest executed on April 27, 2021 was executed in contravention of the Operating Agreement. See Docket Entry 24-7. This was evidenced by the Lender's eleventh hour amendment to "ratify" its conduct to place some

imprimatur of propriety to its completely inappropriate conduct which constitutes a violation of the Bankruptcy Code's stay provisions.


### **THE ORDER**

The Order was entered on August 30, 2021 following a hearing on the same date regarding Development's motion seeking dismissal or abstention. The motion was denied for reasons set forth in the hearing[2]. A copy of the Order is annexed hereto as **Exhibit A**.

---

[2] In deciding the issues on the underlying motion, Development respectfully submits that this Court overlooked the foregoing facts in holding that:

(i) Development's motion pursuant to 11 U.S.C. § 305(a)(1) because there is no pending insolvency proceeding in a nonfederal forum with respect to the debtor, there is no foreclosure proceeding pending in the state court with respect to the debtor, and there is no other proceeding in the state court seeking to enforce the lender's collection rights against the debtor, in addition to the fact that there are only a few other known creditors of the debtor such that this petition does not arise out of a two-party dispute, and that the state court actions would not resolve the parties' dispute in any event;

(ii) this petition was a voluntary filing because the "debtor" chose to file for Chapter 11 relief despite the fact that the record abundantly reveals debtor's purchase to develop and rent – rather than sell – and the evidence of the debtor's principals' efforts to secure funding to keep the debtor as a going concern;

(iii) Development's motion pursuant to 11 U.S.C. § 1112 was largely unfounded because the Lender properly obtained a pledge of the membership interest at the time that the loan was made under the *pledge agreement, the certificate, and assignment of interest*, and because the certificate provides that the membership interests are to be treated as a security interest rather than as an intangible pursuant to Section 8 of the UCC, which is sufficient to perfect the lender's interest and the membership's interest, in addition to the fact that the *consent* exercised executed at the time of the loan on behalf of Development is sufficient authorization for the execution of the loan documents including the pledge, certificate, assignment, mortgage, and the document re-execution agreement;

(iii) the Lender's new rights to step into the shoes of the Debtor, if given any effect, are not limited to economic rights but that the Lender obtained *all* rights under the LLC Law and the loan documents;

(iv) the Lender's filing of the instant petition to effectuate a sale of assets was not made in bad faith because a weighing of factors finds that the debtor has only one asset, little or no cash flow, may not be able to meet current expenses, may be seeking debtor-in-possession financing, and has no employees, is not the subject of a foreclosure action, and there is no evidence of delay or frustration of legitimate efforts of secured creditors' rights; and

(v) the ownership of the Debtor's membership interest was appropriately transferred to the Lender under the terms of the loan documents and New York law despite the fact that the Operating Agreement does not provide for amendments and LLC Law § 402 allowing for a majority vote to amend the operating agreement was validly exercised by what the Court found to be a self-executing pledge despite the fact that, by its very terms, it is subject and subordinate to the Operating Agreement and LLC Law § 401 which requires that members may be replaced with or without cause by a vote of majority interest of the members (which never occurred and was not otherwise evidenced in the record). See Exhibit B.

A copy of the Hearing Transcript is annexed hereto as **Exhibit B**.

The Motion should not have been denied because the provision at issue in the Pledge Agreement is unenforceable under the General Obligations Law and forces Borrowers to waive their right to the equity of redemption.

Under case law, the equity of redemption cannot be clogged. Under the UCC, the equity of redemption cannot be waived before a default. The Loan documents and collateral security were all issued in September 2019, prior to any alleged default. A transfer of rights, if any, occurred before any alleged default.

## **ARGUMENT**

### THE COURT SHOULD VACATE, ALTER, OR RECONSIDER ITS AUGUST 30, 2021 ORDER DENYING DEVELOPMENT'S MOTION TO DISMISS

Fed.R.Civ.P. 59 and 60, made applicable to this case by Fed.R.Bankr.P. 9023 and 9024, authorize this Court to vacate, alter, or reconsider its decisions and orders.

Rule 59(e) permits a court to "alter or amend judgment to correct a clear error of law or prevent manifest injustice." See ING Glob. v. United Parcel Serv. Oasis Supply Corp., 757 F.3d 92, 96 (2d Cir. 2014) (quoting Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135, 153 (2d Cir. 2008)).

Reconsideration can be granted where "the moving party can point to controlling decisions *or data* that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (emphasis added).

The Motion should be granted because this Court overlooked relevant facts and applicable law.

### I.    Paragraph 5 of The Pledge Agreement is Unenforceable Because It Violates General Obligations Law § 5-334 and Clogs The Equity of Redemption

This Court overlooked NY General Obligations Law § 5-334.  The Order permits Lender to clog the Debtor's and secondary obligors' (Development and the Guarantors) equity of redemption.

The Lender took an equity interest in Debtor without a foreclosure or UCC sale.  Instead, it invoked paragraph 5(a) of the Pledge Agreement:

> If an Event of Default shall occur and be continuing, then all Membership Interests at Lender's option, may be registered in the name of Lender or its nominee (if not already so registered), and Lender or its nominee may thereafter exercise (i) all voting and all equity, membership and other rights pertaining to the Membership Interests and (ii) any and all rights of conversion, exchange, and subscription and any other rights, privileges or options pertaining to such Membership Interests as if it were the absolute owner thereof (including, without limitation, the right to exchange at its discretion any and all of the Membership Interests upon the merger, consolidation, reorganization, recapitalization or other fundamental change in the organizational structure of any member or upon the exercise by Pledgor or Lender of any right, privilege or option pertaining to such Membership Interests, and in connection therewith, the right to deposit and deliver any and all of the Membership Interests with any committee, depositary, transfer agent, registrar or other designated agency upon such terms and conditions as it may determine), all without liability except to account for property actually received by it, but Lender shall have no duty to exercise any such right, privilege or option and shall not be responsible for any failure to do so or delay in so doing.

See Docket Entry 24-2, § 5(a).

However, paragraph 5(a) of the Pledge Agreement is not enforceable.

### a.    Equity of Redemption

The Order permits the Lender to clog the equity of redemption. Bankruptcy Courts are adverse to clogs on debtors' equity of redemption.

In *In re Greene*, 2007 WL 1309047, at *7 (Bkrtcy.E.D.Va.,2007), that debtor's waiving their equity of redemption could be subject to a fraudulent conveyance action, 11 U.S.C. § 548 (Having found (i) that the Debtor's disposition of her right to an equity of redemption was a transfer of an interest in property, (ii) that the transfer occurred within the two-year period proceeding the Petition Date, and (iii) that the transfer was made (as a matter of law) for less than reasonably equivalent value. . . )

In *In re Augusta Center, LLC,* 491 B.R. 298, 306 (Bkrtcy.S.D.Ga.,2013), the court overruled an objection to use rents, subject to an absolute assignment of rents, as cash collateral. 11 U.S.C. § 363. If found that debtor retained and could not alienate its equity of redemption right in the assigned rent. So, it retained an interest in the rent, which it could use. *Id.*

*In re Webb Mtn, LLC,* 414 B.R. 308, 351 (Bkrtcy.E.D.Tenn.,2009) found that:

> . . . the courts of our sister states have, without exception, held that the equity of redemption cannot be waived in the mortgage instrument or at any time prior to default.... The purpose of that principle of law was to prevent the creditor-mortgagee from thwarting the grant of the equity of redemption by courts of equity to relieve the harshness of the mortgage instruments vesting of fee simple title in the mortgage upon the instant of default.[1]

The basic rule is: "[T]he owner of the equity of redemption has a right to redeem at any time before an actual sale under a judgment of foreclosure." See Bank of New York v. Ortiz, 30 A.D.3d 551, 551 (2d Dept. 2006). The right of redemption is inextricably intertwined with the mortgage. See Mooney v. Byrne, 163 N.Y. 86, 92 (1900). And such right comes into existence on the creation of the mortgage and continues until it is "cut off by the judgment of a court of competent jurisdiction." Id.

---

[1] The court found that the transaction in question did not improperly clog that debtor's equity of redemption

Crucially, the right of redemption is absolute. It cannot be waived, altered, or otherwise "clogged" by an agreement executed at the time of the mortgage. See id.; see also Goodell v. Silver Creek Nat. Bank, 48 N.Y.S.2d 572, 577 (Sup. Ct.) ("The right to redeem the property . . . is a 'favorite equity', so that strict compliance will be required with the steps necessary to divest it."), aff'd, A.D. 1020 (4th Dep't 1944).

A *necessary* corollary to the right of redemption, the anti-clogging doctrine, was designed "to prevent forfeitures by borrowers whose mortgage instruments contained clauses that *indefeasibly vested title to their property in the mortgagee*, if payment for the indebtedness was even one day later than required." See Jeffrey L. Licht, The Clog on the Equity of Redemption and its Effects on Modern Real Estate Finance, 60 St. John's L. Rev. 452, 453 (1986) (emphasis added).

The anti-clogging prohibition's scope is broad:

> "Given a mortgage in intent, whatever form the instruments took, the courts have been very zealous to protect the debtor's equity of redemption from incursions of all descriptions, no matter how devious."

See Goldblatt v. Iris Const. Corp., 211 N.Y.S.2d 234, 235 (N.Y. Sup. Ct. 1960).

Accordingly, any provision "found in a mortgage instrument or executed contemporaneously with a mortgage" that *infringes* on the right of redemption is void. Licht, 60 St. John's L. Rev. at 453 (emphasis added). That is the case here.

This Court applied the Pledge Agreement to permit the Lender to take over the Debtor and file a bankruptcy without complying with the General Obligations law and Operating Agreement, cutting off the Debtor's right of redemption. The Pledge Agreement gave the Lender access to the membership interests, the functional equivalent of the real property, *prior to a judgment of foreclosure and a foreclosure sale*, which typically may take months or years to be complete.

Thus, the Lender impermissibly clogged the equitable right of redemption, which came into being on the execution of the underlying loan documents and could only be extinguished following a judgment of foreclosure and a sale, or a UCC sale.

### b. General Obligations Law § 5-334

General Obligations Law § 5-334 states, in relevant part:

> 1. An option or right to acquire an equity or other ownership interest in property or in a partnership, corporation, trust or other entity that owns property shall not be unenforceable because the owner of such interest grants such option or right to the holder of a mortgage which is a lien on such property or to the holder of a security interest in such property, simultaneously with or in connection with any loan or forbearance of money secured by such mortgage or security interest, if (a) the power to exercise such option or right is not dependent upon the occurrence of a default with respect to such loan, forbearance, mortgage or security interest, and (b) such loan or forbearance is for the principal sum of two million five hundred thousand dollars or more when the option or right is granted. Loans or forbearances aggregating two million five hundred thousand dollars or more which are to be made or advanced to any one borrower in one or more installments pursuant to a written agreement by one or more lenders shall be deemed a single loan or forbearance for the total amount which the lender or lenders have agreed to make or advance pursuant to such agreement.

NYGOL § 5-334, makes unenforceable a mortgage which grants an option to obtain an equity interest in an entity that owns property, dependent upon a default.

Be Aviv acquired an equity or ownership interest in the Debtor, which owns the property, by invoking Paragraph 5(a) of the Pledge, which was conditioned upon an event of default. This is prohibited by § 5-334.

Therefore, Paragraph 5(a) of the Pledge is unenforceable. All interests obtained must revert back to Development.

---

Section 5-334[3] thus precludes "circumvention of the normal foreclosure procedures by excluding from statutory coverage those options that are conditionally exercisable on default." See Licht, *supra*, 60 St. John's L. Rev. at 495.

The import of Section 5-334 has been missed. Loan provisions that cut off a borrower's right to of redemption before a foreclosure or UCC sale and do not fall under Section 5-334's scope are void. If a provision prevents redemption at any time before an actual sale under a judgment of foreclosure and does not meet the criteria for exemption under Section 5-334, it is void. ," see Bank of New York v. Ortiz, 30 A.D.3d at 551

This Pledge Agreement's scheme in the loan documents does not qualify for Section 5-334's exemption from the broad anti-clogging rule. The collateral structure here allowed control of the Debtor before a foreclosure judgment and sale or a UCC sale and conditioned that control on the event of default. Therefore, it is not protected by 5-334 and thus clogged Borrowers' right of redemption; therefore, the Pledge is void.

Accordingly, this law was overlooked in that the Debtor's right of redemption was clogged by the pledge agreement such that it must be void.

### c.   **Right of Redemption Cannot be Waived Prior to a Default Per UCC 9-602**

---

[3] It is anticipated that the Lender will argue that Section 5-334 does not apply to the pledge agreement because it operates to take over the membership interest of Development.  This argument is meritless, as the law encompasses shares of a corporate entity.

[5] "Except as otherwise provided in Section 9-624, to the extent that they give rights to a debtor or obligor and impose duties on a secured party, the debtor or obligor may not waive or vary the rules stated in the following listed sections: (1) Section 9-207(b)(4)(C), which deals with use and operation of the collateral by the secured party; (2) Section 9-

The Pledge agreement forces Debtor to waive its right of redemption under UCC 9-623:

> (a) [Persons that may redeem.]
> > A <u>debtor</u>, any <u>secondary obligor</u>, or any other <u>secured party</u> or lienholder may redeem collateral.
> (b) [Requirements for redemption.]
> > To redeem collateral, a person shall tender:
> > (1) fulfillment of all obligations secured by the collateral; and
> > (2) the reasonable expenses and attorney's fees described in Section <u>9-615(a)</u>(1).
> (c) [When redemption may occur.]
> > A redemption may occur at any time before a <u>secured party</u>:
> > (1) has collected collateral under Section <u>9-607</u>;
> > (2) has disposed of collateral or entered into a contract for its disposition under Section <u>9-610</u>; or
> > (3) has accepted collateral in full or partial satisfaction of the obligation it secures under Section <u>9-622</u>.

Lender took control of Debtor, and, although the Debtor has the right of redemption as part of its estate, the Debtor is controlled by the lender. This right is illusory as the obligor (Development) does not have that right. This change in the organization and control of the Debtor vitiates and clogs the right of redemption.

The Pledge agreement forces Debtor to waive UCC 9-607(c):

> (c) [Commercially reasonable collection and enforcement.]
> A <u>secured party</u> shall proceed in a commercially reasonable manner if the secured party:
> (1) undertakes to collect from or enforce an obligation of an <u>account debtor</u> or other person obligated on collateral; and

---

210, which deals with requests for an accounting and requests concerning a list of collateral and statement of account; (3) Section 9-607(c), which deals with collection and enforcement of collateral; (4) Sections 9-608(a) and 9-615(c) to the extent that they deal with application or payment of noncash proceeds of collection, enforcement, or disposition; (5) Sections 9-608(a) and 9-615(d) to the extent that they require accounting for or payment of surplus proceeds of collateral; (6) Section 9-609 to the extent that it imposes upon a secured party that takes possession of collateral without judicial process the duty to do so without breach of the peace; (7) Sections 9-610(b), 9-611, 9-613, and 9-614, which deal with disposition of collateral; (8) Section 9-615(f), which deals with calculation of a deficiency or surplus when a disposition is made to the secured party, a person related to the secured party, or a secondary obligor; (9) Section 9-616, which deals with explanation of the calculation of a surplus or deficiency; (10) Sections 9-620, 9-621, and 9-622, which deal with acceptance of collateral in satisfaction of obligation; (11) Section 9-623, which deals with redemption of collateral; (12) Section 9-624, which deals with permissible waivers; and (13) Sections 9-625 and 9-626, which deal with the secured party's liability for failure to comply with this article." UCC 9-602.

> (2) is entitled to charge back uncollected collateral or otherwise to full or limited recourse against the <u>debtor</u> or a <u>secondary obligor</u>.

The manner in which Lender obtained equity or membership interests in Debtor is not commercially reasonable because Lender failed to foreclose or effectuate a UCC sale.

Only UCC 9-624(c) permits waiver of the right of redemption; however, it may be waived "only by an agreement to that effect entered into and authenticated after default." There is no such agreement.

Lender also forced waivers of UCC Sections <u>9-620</u>, which requires debtor to consent to full or partial disposition of collateral only after default; <u>9-621</u>, concerning notice requirements; and <u>9-622</u>, concerning the effects of accepting collateral in satisfaction of the obligation and the transfer of debtor's rights. Lender did not comply with any of these provisions, yet retained an interest in the collateral and is seeking to recover on personal guarantees.

Lender's actions are not in accordance with the law and this Court should not have ratified them.

## II.    **<u>The Court Overlooked The Lender's Automatic Stay Violation</u>**

After the Lender violated Development's and the Debtor's right of redemption, this Court ratified the Lender's violation of the automatic stay afforded the Debtor. See, 11 U.S.C. § 362(a).

During the Prior Motion's oral argument, the Lender's counsel admitted the Lender violated the automatic stay to improve its position on the eve of oral argument.  He stated

> 4.        . . . we,
> 5        just to make this a complete nonissue, amended the operating
> 6        agreement to define member as Rider Ave Lender, and we
>           deleted
> 7         Section 5 of the operating agreement, which is the provision
> 8         relied on by the movants that underpins all of the "subject
>           to
> 9        operating agreement" arguments. And we inserted a new
>           section

10      that makes clear that Rider Lender was the managing
         member and

11       the manager of the debtor, not the movants.

Exhibit "A", pg. 23:4-11.

The described amendment and conduct were to obtain further control of the Debtor and its property for the Lender's benefit.  This case was filed by the Lender's proxy, for the Lender's benefit.  The Lender is using this case to further clog the Debtor's and Development's equity of redemption.  The amendment was to bolster the Lender's collection efforts.

Direct and indirect violations of the automatic stay are forbidden. *Matter of Raymond Const. Co. of Fla., Inc.*, 6 B.R. 793, 796 (Bkrtcy.Fla., 1980), citing,  *In re Hailey*, 23 C.B.C. 89, 621 F.2d 169 (5th Cir. 1980), *In re Smith*, 876 F.2d 524, 525 (6th Cir. 1989).("The § 362(a) automatic stay is broad and "extends to virtually all formal and informal actions against property of the bankruptcy estate.")

"There is no legal uncertainty as to whether a creditor who attempts to improve her position, post-petition, is in violation of the automatic stay"  *In re Mattera*, 2007 WL 594908, at *7 (Bkrtcy.D.N.J.,2007)

Creditors using their co-status as equity security holders to improve their position as creditors violate the automatic stay. See, *In re GenCanna Global USA, Inc*., 619 B.R. 364, 370 (Bkrtcy.E.D.Ky., 2020) ("Shareholders violated the automatic stay when they exercised their shares to appoint new directors for GenCanna Parent and GenCanna USA," to improve their position as creditors). See also. *In re Country Estates Nursing Home, Inc.*, 268 B.R. 316, 320 (Bkrtcy.D.Mass.,2001).

Instead of dismissing this case, the Court ratified the Lender improperly gaining control over the Debtor and its assets.  The Court should have reversed the Lender's stay violation and dismissed this case for abusing its jurisdiction.

**III.    The Pledge Agreement was Designed to Effectuate Remedies Only Under the UCC, Not the Bankruptcy Code**

Under New York law, contracts are construed to "give[ ] a reasonable and effective meaning to all terms" and not to leave "a part unreasonable or of no effect." See State St. Glob. Advisors Tr. Co. v. Visbal, 431 F. Supp. 3d 322, 338 (S.D.N.Y. 2020) (quoting Encyclopedia Brown Prods. v. Home Box Office, Inc., No. 91-CIV.-4092 (PKL), 1998 WL 734355, at *9 (S.D.N.Y. Oct. 15, 1998). Indeed, "[a] familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." See W.W.W. Assocs. v. Giancontieri, 77 N.Y.2d 157, 162 (1990). In interpreting a contract under the laws of New York, the intent of the parties governs. See Sheets v. Sheets, 22 A.D.2d 176, 180 (1st Dept. 1964).

The contract should be construed so as to give full meaning and effect to *all of its provisions*. See Trump–Equitable Fifth Ave. Co. v. H.R.H. Constr. Corp., 106 A.D.2d 242, 244 (1st Dept. 1983); aff'd, 66 N.Y.2d 779 (1985) (emphasis added).

Here, the loan documents that were signed were designed to give the Lender security to ensure repayment and, in that vein, provided the Lender with the ability to step into the shoes of the Debtor in the event it was required to effectuate a sale under the UCC, not to force the Debtor into bankruptcy. This is evident from giving reasonable and effective meaning to *all the terms* within the pledge agreement, which is permeated with references to the UCC, and is barren as to any reference to the Bankruptcy Code.

In its decision, this Court analyzed the terms of the pledge agreement in a vacuum and on a standalone basis[6] to give the document powers that detract from its true purpose in allowing the Lender to effectuate a sale under the UCC in the event the Debtor did not cooperate.  It is respectfully submitted that the Court overlooked the broad and true purpose of the pledge agreement in doing so.  This is all the more evident when examining the Debtor's operating agreement, which terms prevail by the black and white letters within the pledge agreement, and which is incorporated by reference within it.

Indeed, the purpose of the Debtor under operating agreement is to purchase, develop, and rent the property it owns, not to sell it.  In that regard, allowing the reading of the Pledge agreement to permit the Lender to conduct a fire sale under 11 U.S.C. § 363 is antithetical and repugnant to the operating agreement's provisions. Because Lender is committing an end run around state court procedures by avoiding a foreclosure or UCC sale, Lender is clogging the equity of redemption by taking control of the Debtor through an unenforceable provision in the Pledge. Development respectfully submits that this Court should therefore reconsider its interpretation of the pledge agreement as authorizing Lender's conduct.

## IV.    <u>The Pledge is Subordinate to the Operating Agreement which was not Complied With</u>

The Pledge Agreement allowed the Lender to step into the Debtor's shoes for securing its interest. However, the Lender skipped the crucial step of removing Development as a member or manager and all of the Lender's actions should therefore be rendered a nullity.

---

[6] <u>See</u> Exhibit B at 71 (finding that § 5(a) of the pledge agreement did not reference the operating agreement to hold that the operating agreement was not relevant despite the fact the pledge agreement is subordinate to the operating agreement).

The LLC Law requires execution of and compliance with a limited liability company's operating agreement as a prerequisite to membership.  See LLC Law §§ 417 and 602.  Indeed, LLC Law § 417 provides, in pertinent part, that:

> Subject to the provisions of this chapter, the members of a limited liability company shall adopt a *written operating agreement* that *contains any provisions not inconsistent with law* or its articles of organization relating to (i) the business of the limited liability company, (ii) *the conduct of its affairs* and (iii) the rights, powers, preferences, limitations or responsibilities of its members, managers, employees or agents, as the case may be.

See LLC Law § 417 (emphasis added).  Further, LLC Law § 602 provides, in pertinent part, that:

> (a) A person becomes a member of a limited liability company on the later of: (1) the effective date of the initial articles of organization; or (2) the date as of which the person becomes a member *pursuant to this section or the operating agreement*; ….
> (b) After the effective date of a limited liability company's initial articles of organization, a person may be admitted as a member: …
> (2) in the case of an assignee of a membership interest of a member *who has the power, as provided in the operating agreement, to grant the assignee the right to become a member, upon the exercise of that power* and *compliance with any conditions limiting the grant or exercise of the power*; ….

See LLC Law § 602 (emphasis added).  In other words, under § 602, the operating agreement determines under what circumstances a person becomes a member of a limited liability company.

Numerous legal treatises have found as much.  See White, 5 N.Y. Business Entities ¶ L602.01 (after filing the initial articles of organization, others may be admitted to the LLC as members; such admission, however, requires compliance with the LLC's operating agreement); see also Rich, Practice Commentaries, McKinney's Cons Laws of NY, Book 32A, § 6(A), 2007 Pamph, at 19–20 ("The operating agreement may set forth the requirements for membership. A person becomes a member of an LLC (i) upon formation of the LLC, [or] (ii) after formation either by acquiring the membership interest directly from the LLC or by assignment or transfer from an

existing member.... *The operating agreement may specify what percentage of membership interests must approve the issuance of an interest to a non-member, and absent such specification, a majority in interest of the members is required to approve the issuance*") (emphasis added).

The Operating Agreement here makes  Development the Debtor's sole member and that a certificate, which is a security interest under Article 8 of the UCC, indicating its membership interest can only be changed in certain prescribed circumstances: (i) to rectify a lost, stolen or destroyed certificate; (ii) to provide a certificate to a *purchaser for value in good faith and without notice of an adverse claim*; (iii) to a surety in connection with indemnification against any claims; and (iv) to satisfy any other reasonable requirements imposed by the Debtor.  <u>See</u> Exhibit C at §§ 11(b)(i) and (ii).  <u>There is no other basis under the Operating Agreement upon which a certificate may be issued.</u>  Notwithstanding, relying in part on the notion that the operating agreement leaves a lot to be desired (despite arguments by the Lender that the parties are sophisticated business people in arms-length transactions), this Court gave credence to the assignment of interest appended to Development's certificate when there was no provision in the Operating Agreement to do so.  The Court misapprehended the Operating Agreement as being silent on the issue of when a member may be replaced and reconsideration is warranted.

**V.**      **<u>If Effective, Lender Acquired Nothing More Than Economic Rights in the Debtor</u>**

This Court properly found that the Pledge Agreement is  a "security" under Article 8 of the UCC, because the Operating Agreement provides that the security is certificated, Therefore, the only way for Lender to perfect its interest would be to take possession and control of the Debtor. Here, it has failed to do so because it did not amend the operating agreement prior to filing the instant chapter 11 case:

8       In addition to the foregoing, Your Honor, we also
9       point out that in the record there's no evidence of the
10      registration in the books and records of the debtor of the
11      membership interest in the name of the pledgee or its
        assignee.

Exhibit A, pg. 7:8-11.

The Operating Agreement is silent on assigning membership interests. Therefore, the NYLLCL controls and prevents anything more than a transfer of economic rights.

Even if this Court holds, on reconsideration, that the Pledge Agreement was validly acted upon and the terms of the Operating Agreement were not violated, the Lender acquired nothing more than an economic interest. This is because, although a membership interest in a limited liability company is assignable in whole or in part (see LLC Law § 603(a)(1)), the assignment of a membership interest "does not ... entitle the assignee to participate in the management and affairs of the limited liability company or to become or to exercise any rights or powers of a member." See LLC Law § 603(a)(2).

Rather, "the only effect of an assignment of a membership interest is to entitle the assignee to receive, to the extent assigned, the distributions and allocations of profits and losses to which the assignor would be entitled." See LLC Law § 603(a)(3). The Debtor's purpose was to purchase, renovate, and rent units to make money. In executing the loan documents with the Lender, it never intended to give the Lender the power to kill the Debtor. That was not the purpose of the loan documents.

One can become a member of a limited liability company by assignment. That is only where the operating agreement grants the assignor such power, and then, where the conditions of such authority have been complied with. See LLC Law § 602(b)(2); See, e.g., In re Abbale, 475 B.R. 334, 341 (Bankr.E.D.N.Y. 2012); 1 N.Y. Practice Series, New York Limited Liability Companies and Partnerships § 7.7 (2012).

**<u>CONCLUSION</u>**

For the foregoing reasons, 286 Ride Ave Development LLC requests that the Court grant

the instant motion and vacate, modify, or alter the Order entered on August 30, 2021 denying the

motion to dismiss, and grant other relief as it deems just and proper.

Dated: New York, New York
      September 13, 2021

                                           JACOBS, P.C.
                                          Attorneys for 286 Rider Ave.
                                          Development LLC
                                          667 Madison Avenue - 5th Floor
                                          New York, NY 10065
                                          (718) 228-2576
                                          By: <u>/s/ Leo Jacobs      </u>
                                                    Leo Jacobs