**MORRISON COHEN LLP**
909 Third Avenue
New York, New York 10022
(212) 735-8600
Joseph T. Moldovan, Esq.
Terence K. McLaughlin, Esq.
David J. Kozlowski, Esq.

*Attorneys for Be-Aviv 286 Rider LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **286 RIDER AVE ACQUISITION LLC,** | Case No. 21-11298-LGB |
| Debtor. | |

**BE-AVIV 286 RIDER LLC'S RESPONSE TO MOTION BY
286 RIDER AVE DEVELOPMENT LLC TO ALTER OR
AMEND JUDGMENT UNDER BANKRUPTCY RULE 9023
AND FEDERAL RULE OF CIVIL PROCEDURE 59(e)**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...........................................................................................ii

PRELIMINARY STATEMENT .................................................................................... 1

BACKGROUND........................................................................................................... 3

    I.     INCORPORATION BY REFERENCE ................................................... 3

ARGUMENT ................................................................................................................ 5

    I.     THE MOTION MUST BE DENIED TO THE EXTENT
           IT MERELY SEEKS TO REHASH THE SAME
           ARGUMENTS PREVIOUSLY CONSIDERED AND
           REJECTED BY THE COURT ................................................................. 5

    II.    THE TWO "NEW" ARGUMENTS RAISED IN THE
           MOTION CANNOT BE CONSIDERED FOR THE FIRST
           TIME ON REARGUMENT AND, IN ANY EVENT, DO
           NOT WARRANT ANY RELIEF FROM THE ORDER .......................... 8

           A.    The Arguments Concerning GOL 5-334 And Section
                  11 Of The Operating Agreement Were Available To
                  Pledgor But Never Raised During The Briefing And
                  Argument On Its Motion To Dismiss............................................ 9

           B.    Neither GOL 5-334 Nor Section 11 Of The Operating
                  Agreement Warrants Relief From the Order ............................. 10

                  1.    GOL 5-334 Does Not Render The Pledge
                        Unenforceable ................................................................. 10

                  2.    Section 11 Has No Relevance To The Validity
                        Of The Pledge Or Its Exercise By The Lender. ............... 12

CONCLUSION........................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

FEDERAL CASES

*4 Pillar Dynasty LLC v. New York & Co., Inc.*,
    933 F.3d 202 (2d Cir. 2019).................................................................................9

*Banco Central Del Paraguay v. Paraguay Humanitarian*
    *Foundation, Inc.*, No. 01 Civ. 9649 (JFK), 2007 WL 2493684
    (S.D.N.Y. Sept. 5, 2007)....................................................................................6

*Banister v. Davis*,
    — U.S. —, 140 S.Ct. 1698, 207 L.Ed. 58 (2020)...................................................9

*Griffin Indus., Inc. v. Petrojam, Ltd.*,
    72 F. Supp. 2d 365 (S.D.N.Y. 1999).......................................................................6

*ING Glob. v. United Parcel Serv. Oasis Supply Corp.*,
    757 F.3d 92 (2d Cir. 2014)..................................................................................5

*In re Evergreen Mut. Funds Fee Litig.*,
    240 F.R.D. 115 (S.D.N.Y. 2007) ...........................................................................6

*In re Fairfield Sentry Limited*,
    596 B.R. 275 (Bankr. S.D.N.Y. 2018)..................................................................15

*In re General Motors LLC Ignition Switch Litig.*,
    427 F. Supp.3d 374 (S.D.N.Y. 2019)......................................................................5

*In re Health Management Sys, Inc. Secs. Litig.*,
    113 F. Supp.2d 613 (S.D.N.Y. 2000).......................................................................6

*In re Johns-Manville Corp.*,
    623 B.R. 242 (Bankr. S.D.N.Y. 2020)....................................................................6

*In re Otal Investments Ltd.*,
    No. 03 Civ. 4303 (HB), 2006 WL 895212 (S.D.N.Y.
    Apr. 7, 2006) ......................................................................................................6

*Kroemer v. Tantillo*,
    758 Fed. Appx. 84 (2d Circ. 2018) ........................................................................7

*New York University v. Factory Mutual Ins. Co.*,
    2020 WL 1033532 (S.D.N.Y. Mar. 3, 2020) ..........................................................9

*Pal v. Apfel*,
    14 Fed. Appx. 113 (2d Cir. 2001) ..........................................................................9

*Parts & Elec. Motors, Inc. v. Sterling Elec.*, Inc.,
    866 F.2d 228 (7th Cir. 1988) ................................................................6

*Perez v. Terrestar Corp.* (*In re Terrestar Corp.*),
    No. 11-10612 (SHL), 2016 WL 197621 (Bankr. S.D.N.Y.
    Jan. 15, 2016) ....................................................................................5

*Range Road Music, Inc. v. Music Sales Corp.*,
    90 F. Supp.2d 390 (S.D.N.Y. 2000) ...................................................8-9

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995) ...................................................................7

*Spizz v. Eluz (In re Ampal-Am. Isr. Corp.)*,
    2020 WL 5242956 (Bankr. S.D.N.Y. Sept. 1, 2020) .............................5

*U.S. v. Local 1804-1, Intern. Longshoremen's Ass'n*,
    831 F. Supp. 167 (S.D.N.Y. 1993) ........................................................9

*Whitaker v. New York University*,
    543 Fed. Appx. 113 (2d Cir. 2013) ........................................................7

STATE CASES

*McConnell v. Commonwealth Pictures Corp.*,
    7 N.Y.2d 465, 166 N.E.2d 494, 199 N.Y.S.2d 483 (1960) ...................14

*Weir* v. *Barker*,
    104 A.D. 112 (2d Dep't 1905) .............................................................12


STATUTES, RULES AND
OTHER AUTHORITIES

    N.Y. Gen. Oblig. L. § 5-334(1).............................................................12

    N.Y. Gen. Oblig. L. § 5-334(2).............................................................12

#10630650 v1 \029220 \0001

Be-Aviv 286 Rider LLC ("**Lender**"), by its undersigned counsel, Morrison Cohen LLP, (a) files this response ("**Response**") to the Motion to Alter or Amend the Judgment Under Bankruptcy Rule 9023 and Federal Rules of Civil Procedure 59(e) ("**Motion**"), dated September 13, 2021, filed by 286 Rider Ave Development LLC ("**Pledgor**"), and (b) joins in the response filed by 286 Rider Ave Acquisition LLC ("**Debtor**") in response to the Motion. In support of this Response, Lender respectfully sets forth and represents as follows:

## PRELIMINARY STATEMENT

1.      This Motion seeks to alter, amend, or reconsider the Court's August 30, 2021 Order ("**Order**") denying Pledgor's motion to dismiss this bankruptcy case ("**Motion to Dismiss**") pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure ("**Federal Rules**"), as made applicable in this proceeding by Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**").[1]

2.      For numerous reasons, the Motion should be denied.

3.      To obtain relief under the Reargument Rules, Pledgor must identify material facts or controlling authority that Pledgor placed before the Court but which the Court overlooked, thereby demonstrating that the Court made an obvious and glaring mistake with respect to the Order at issue. Pledgor nowhere identifies any such mistake.

---

[1]      For ease of reference, Bankruptcy Rules 9023 and 9024 and Federal Rules 59(e) and 60(b) are collectively referring to throughout this Response as the "**Reargument Rules**."

4.    In fact, as set forth in Point I of the Argument below, the vast bulk of the Motion represents little more than a regurgitation of the very same arguments that Pledgor previously presented, and this Court considered and rejected, in connection with the underlying Motion to Dismiss. The Motion's arguments regarding the equity of redemption, the interaction between the terms of the Pledge and provisions in the Debtor's operating agreement identifying the Pledgor as the Debtor's then-manager, the supposed "bad faith" of the bankruptcy filing, and the supposed limitations on the Lender's "economic" rights under the Pledge, were all briefed and argued extensively on the record of the Motion to Dismiss. The Court duly considered those matters and appropriately rejected them under applicable law. The Reargument Rules do not permit Pledgor a second opportunity to rehash those same matters in the futile hope that the Court would reach a different decision.

5.    Furthermore, as set forth in Point II.A, below, a Court can only "overlook" a fact or an argument that has actually been presented to it by a litigant. Pledgor was completely in control of the content of its Motion to Dismiss. Pledgor decided what material facts to put before the Court and what arguments, statutes, and case law authority to present to the Court to support its entitlement to the relief sought in that motion. Pledgor had not one, but two, opportunities to gather, craft and present its facts and arguments in the hundred-plus pages consisting of its opening papers and its reply papers in support of the Motion to Dismiss. Although Pledgor identifies two putatively "overlooked" matters in the Motion, both were fully known or knowable to the Pledgor at the time the Motion to Dismiss was briefed and

2

argued and neither was presented to the Court by the Pledgor at that time. These matters cannot now be raised for the first time on a motion for reargument on the fiction that it was the Court, not the Pledgor, who "overlooked" them.

6.      Finally, as set forth in Point II.B., below, denial of this Motion would be warranted *even if* the putatively "overlooked" matters *could* properly be considered for the first time in connection with this Motion (which they cannot). Pledgor's arguments about New York State's General Obligations Law Section 5-334 ("**GOL 5-334**") fatally misunderstand and mischaracterize that statute. Pledgor's argument about Section 11 of the Debtor's Operating Agreement is likewise meritless. That section does not prohibit Pledgor from pledging and assigning its ownership of the Debtor's membership interests. Furthermore, Pledgor's argument about a supposed stay violation misleadingly ascribes to the Lender actions actually taken by the Debtor itself, which are not subject to the automatic stay.

7.      For these reasons, and others as amplified below, Lender respectfully submits that the Motion should be denied in its entirety and joins in the Debtor's Response seeking the same relief with respect to the Motion.

## BACKGROUND

## INCORPORATION BY REFERENCE.

8.      Because the Motion largely seeks to rehash the same matters that were comprehensively presented to the Court in connection with the underlying Motion to Dismiss, to avoid needless duplication, Lender respectfully refers the Court to, and incorporates by reference, its *Response to Motion by 286 Rider Ave Development LLC*

3

*to (i) Dismiss Bankruptcy Case Pursuant to 11 U.S.C. §§ 303, 305 and 1112, and (ii)*

*for Turnover of Certain Membership Interests Under 11 U.S.C. § 543, and Joinder by*

*Respondent to Debtor's Response to the Motion* and in the Affidavits and Declarations

submitted in connection therewith, together with the exhibits thereto (collectively,

"**Motion to Dismiss Opposition**"), [Docket Nos. 23–25], as if full set forth herein,

for a full and complete recitation of the facts and law relevant to the Motion. [2]

---

[2]      Although fully addressed and resolved in connection with the Motion to Dismiss, one item regurgitated in support of the Motion bears repeating Lender's prior response. Pledgor renews its erroneous contention that the Lender's exercise of management and voting rights over the Debtor after exercising the Pledge was somehow defective because the Pledge provides that it is "subject to the [Debtor's] Operating Agreement." (Motion at 5.) However, as Lender previously demonstrated in opposition to the Motion to Dismiss, this argument mischaracterizes section 5 of the Debtor's Amended and Restated LLC Agreement ("**Debtor's Operating Agreement**"). Pledgor contended that this section confers upon Pledgor the "'sole power' to manage the affairs and exercise voting rights" for the Debtor, seeming for perpetuity and irrevocably. (*See Omnibus Reply of 286 Rider Ave Development LLC to Responses of Be-Aviv Rider LLC and Rider Ave Acquisition LLC to Motion to (i) Dismiss Bankruptcy Case Pursuant to 11 U.S.C. §§ 105, 305, and 1112 and (ii) for Turnover of Certain Membership Interests under 11 U.S.C. § 543* [Docket No. 36] ("**Pledgor's Motion to Dismiss Reply**") at ¶ 2. *See also id.* at ¶¶ 23, 28.) This just is not so. Section 5 identifies the Pledgor as having sole management rights because, at the time the Debtor's Operating Agreement was executed, *Pledgor held 100% of Debtor's limited liability company membership interests.* That is why Section 5 refers to Pledgor as "*the sole member of the Company*" possessed with management powers. (*See* Exhibit C to the Motion [Docket No. 47-3] at § 5.) Notably, Section 5 does *not* refer to Pledgor as the Debtor's "sole *manager.*" (*Id.*) In a "member-managed" limited liability company like the Debtor, the holder of the membership interests also holds the management rights. N.Y. L.L.C. Law § 401(a) ("Unless the articles of organization provides for management of the limited liability company by a manager or managers . . . management of the limited liability company shall be vested in its members.") Upon exercise of the Pledge, the Lender, and not the Pledgor, became the sole member of the Debtor and, thus, became its "member-manager." In short, the fact that the Pledge provides that it is "subject to" the Debtor's Operating Agreement is a complete red herring. The Lender's exercise of voting and management rights over the Debtor as the Debtor's 100% sole member after exercising the Pledge was not in any way inconsistent with Section 5, or any other provision, in the Debtor's Operating Agreement.

#10630650 v1 \029220 \0001

**ARGUMENT**

I.   **THE MOTION MUST BE DENIED TO THE EXTENT IT MERELY SEEKS TO REHASH THE SAME ARGUMENTS PREVIOUSLY CONSIDERED AND REJECTED BY THE COURT.**

9.   Motions brought pursuant to the Reargument Rules will generally be denied "unless the moving party can point to controlling decisions or data that the court overlooked." *Perez v. Terrestar Corp. (In re Terrestar Corp.)*, No. 11-10612 (SHL), 2016 WL 197621, at *3 (Bankr. S.D.N.Y. Jan. 15, 2016). "The major grounds for justifying reconsideration are an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *In re General Motors LLC Ignition Switch Litig.*, 427 F. Supp.3d 374, 378 (S.D.N.Y. 2019) (internal quotations and citations omitted). Pledgor does not identify any change in the law that was handed down, or any new and previously unavailable evidence that it came to possess, after the Order was issued in late August. Nor does the Motion identify any "manifest injustice" or "clear error" as those requirements are narrowly construed under applicable case law.

10.   To satisfy the "manifest injustice" standard, Pledgor must show that the Order "is wholly without legal support," *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014), and that the error is obvious to all who view it. *Spizz v. Eluz (In re Ampal-Am. Isr. Corp.)*, 2020 WL 5242956 at *2 (Bankr. S.D.N.Y. Sept. 1, 2020). In the colorful words of a famous jurist on the Seventh Circuit, "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must. . . strike us as wrong with the force of a five-week-old,

5

unrefrigerated dead fish." *In re Johns-Manville Corp.*, 623 B.R. 242, 248 (Bankr. S.D.N.Y. 2020) (*quoting* Posner, J, *Parts & Elec. Motors, Inc. v. Sterling Elec.*, Inc., 866 F.2d 228, 233 (7th Cir. 1988), *cert. denied*, 493 U.S. 847 (1989)).

11.    Thus Pledgor faces a "high bar" and its Motion must "be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been fully considered by the court." *In re Otal Investments Ltd.*, No. 03 Civ. 4303 (HB), 2006 WL 895212, at *1 (S.D.N.Y. Apr. 7, 2006). *See also Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999); *In re Health Management Sys, Inc. Secs. Litig.*, 113 F. Supp.2d 613, 614 (S.D.N.Y. 2000). These exacting standards serve "the interests of finality and conservation of scarce judicial resources." *Banco Central Del Paraguay v. Paraguay Humanitarian Foundation, Inc.*, No. 01 Civ. 9649 (JFK), 2007 WL 2493684, at *2 (S.D.N.Y. Sept. 5, 2007); *In re Evergreen Mut. Funds Fee Litig.*, 240 F.R.D. 115, 117 (S.D.N.Y. 2007).

12.    The Motion does not come close to meeting these stringent standards.

13.    The vast majority of the Motion is simply a regurgitation of the very same arguments previously advanced by Pledgor and already considered and rejected by the Court in connection with the Motion to Dismiss. Specifically, Pledgor argues that the Order should be altered, amended, or reconsidered because the Court supposedly "overlooked" the following:

- The Lender's exercise of the Pledge, and further exercise of management and voting rights to cause the Debtor to commence this bankruptcy case, somehow vitiates, amounts to a "clog" on, or "forces the Debtor to waive" the Pledgor's or the Debtor's common law and UCC-based equities of redemption; (Motion at 3, 8-11, 12-14);

6

- The Lender's rights under the Pledge are "subject to" the provisions in the Debtor's operating agreement designating Pledgor (i.e., the then-sole owner of the Debtor's membership interests) as the Debtor's member-manager; (*id.* at 4, 5, 17-19);

- The Lender supposedly "acquired nothing more than the economic rights" associated with the Debtor's membership interests, but not managerial or voting rights; (*id.* at 4, 5 n.2, 19-20);

- The Lender's rights under the Pledge were somehow limited to facilitating a foreclosure or a UCC sale; (*id.* at 4, 16-17);

- The Debtor's filing supposedly violated Section 305(a)(1) of the Bankruptcy Code because this is supposedly a "two-party" dispute; (*id.* at 5 n.2);

- The Debtor's filing supposedly was not a voluntary filing; (*id.*);

- The Debtor's filing supposedly violated Section 1112 of the Bankruptcy Code because of alleged defects in the Pledge and its authorization at the time the loan transaction was effectuated; (*id.*);

- The Debtor's filing supposedly was made in bad faith; (*id.*); and

- The Lender's exercise of its rights under the Pledge supposedly violated the anti-amendment provisions of the Debtor's Operating Agreement and Section 402 of the NY LLC Law; (*id.*).

14.     No doubt these arguments are familiar to the Court: each and every one of them was presented to the Court by Pledgor in the extensive briefing and argument in connection with its Motion to Dismiss. However, "[a] 'motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided.'" *Kroemer v. Tantillo*, 758 Fed. Appx. 84, 87 (2d Circ. 2018) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). *See also Whitaker v. New York University*, 543 Fed. Appx. 113, 114 (2d Cir. 2013) ("a Rule 60(b) motion is properly denied where it seeks only to relitigate issues already decided"); *Range Road Music,*

7

*Inc. v. Music Sales Corp.*, 90 F. Supp.2d 390, 392 (S.D.N.Y. 2000) (denying relief under Rule 59(e) because motion "largely restates the arguments that they made to the Court in their submissions and at oral argument").

15.     To the extent the Motion seeks to relitigate the very same arguments that this Court previously heard and considered, the law is crystal clear, it must be denied.

## II.     THE TWO "NEW" ARGUMENTS RAISED IN THE MOTION CANNOT BE CONSIDERED FOR THE FIRST TIME ON REARGUMENT AND, IN ANY EVENT, DO NOT WARRANT ANY RELIEF FROM THE ORDER.

16.     Apart from regurgitating the very same arguments that were considered and rejected by the Court the first go-around, Pledgor also claims to raise two "new" arguments that it contends warrant relief under one or both of the Reargument Rules. First, Pledgor contends that the Court "overlooked" and "missed" the "import" of GOL 5-334 which, Pledgor contends, renders the Lender's rights under the Pledge "unenforceable." (*See* Motion at 11-12.) And second, Pledgor contends that the Lender's exercise of the Pledge, registration of the Debtor's membership interests in the Lender's name, and subsequent exercise of the management and voting rights attributable to those membership interests somehow violated Section 11 of the Debtor's Operating Agreement and/or amounted to a violation of the automatic stay. (*Id.* at 14-15 and 17-19.)

17.     Neither of these arguments was advanced at the time of the Motion to Dismiss and they cannot be advanced now for the first time on reargument. Furthermore, and in any event, neither argument warrants any relief from the Order.

8

**A.    The Arguments Concerning GOL 5-334 And Section 11 Of The Operating Agreement Were Available To Pledgor But Never Raised During The Briefing And Argument On Its Motion To Dismiss.**

18.    The United States Supreme Court has made clear that, on a motion for reargument, "courts will not address new arguments or evidence that the moving party could have raised before the decision issued." *Banister v. Davis*, — U.S. —, 140 S.Ct. 1698, 1703, 207 L.Ed. 58 (2020). Thus, a reargument motion cannot "be employed to introduce evidence that was available at trial but was not proffered [or] to advance new theories." *U.S. v. Local 1804-1, Intern. Longshoremen's Ass'n,* 831 F. Supp. 167, 169 (S.D.N.Y. 1993). Indeed, "a party who realizes, with the acuity of hindsight, that he failed to present his strongest case at trial, is not entitled to a second opportunity by moving to amend a finding of fact or a conclusion of law." *Id. See also Pal v. Apfel*, 14 Fed. Appx. 113, 114 (2d Cir. 2001) (affirming denial of Rule 60(b) motion where movant had always been in possession of "new" evidence it raised for first time at reargument); *New York University v. Factory Mutual Ins. Co.*, 2020 WL 1033532, at *2 (S.D.N.Y. Mar. 3, 2020) ("[M]otions under Rule 59(e) or 60(b) 'may not be used . . . . to raise arguments or present evidence that could have been raised prior to the entry of judgment.'") (quoting *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 216 (2d Cir. 2019)).

19.    Leaving aside that neither matter actually warrants any relief from the Order (as discussed in Point II.B. below), both of these "new" matters were fully known or knowable at the time the Motion to Dismiss was briefed and argued, but

neither was raised by the Pledgor at that time. GOL 5-334 has been in existence since 1985. Section 11 of the Operating Agreement has been a part of that agreement since at least September 19, 2019. Despite hundreds of pages of briefing and evidentiary submissions encompassing its opening and reply papers in support of the Motion to Dismiss, Pledgor never raised any arguments about either GOL 5-334 or Section 11 of the Debtor's Operating Agreement. In fact, Pledgor actually submitted the Operating Agreement as an Exhibit and cited to and argued extensively about other provisions of the Operating Agreement that Pledgor contended supported its motion. But it never presented any arguments about Section 11. It cannot raise this, or the GOL 5-334 argument, now for the first time on reargument.

20.    The Court did not "overlook" anything with respect to either GOL 5-334 or Section 11 of the Debtor's Operating Agreement. It was *Pledgor* that "overlooked" those matters. For this reason alone, the Motion must be denied.

### B.    Neither GOL 5-334 Nor Section 11 Of The Operating Agreement Warrants Relief From the Order.

#### (i)    GOL 5-334 Does Not Render The Pledge Unenforceable.

21.    While conceding (as it must) that Section 5(a) of the Pledge expressly grants the Lender the right to (among other things) "register[]" the pledged Membership Interests "in the name of the Lender" and to "thereafter exercise . . . all voting and all equity, membership and other rights pertaining to the Membership Interests," Pledgor nonetheless contends that the Court "overlooked" the fact that

GOL 5-334 supposedly renders these material provisions in the Pledge "unenforceable." (Motion at 11.)

22.     GOL 5-334 does no such thing. Nor does Pledgor cite a single case where any court so held.[3]

23.     GOL 5-334 does not "prohibit" or invalidate anything. Rather, it provides a non-exclusive example of *permissible* conduct. Specifically, the statute provides that an option or right to acquire an equity or other ownership interest in property simultaneously with or in connection with any loan or forbearance of money secured by such mortgage or security interest *is enforceable* where the power to exercise the option or right is not dependent upon the occurrence of a default with respect to the loan, forbearance, mortgage, or security interest, and the loan or

---

[3]    Pledgor categorically declares that "Loan provisions that cut off a borrower's right of redemption before a foreclosure or UCC sale and do not fall under Section 5-334's scope are void." (Motion at 13.) As a threshold matter, and as fully briefed in the Motion to Dismiss Opposition, cases in the Second Circuit make clear that the borrower's equity of redemption is not cut off in a bankruptcy. (*See* Docket No. 23 at 30-34 and cases cited therein). Pledgor did not refute, or even address, this case law in connection with the Motion to Dismiss nor does it do so now. Furthermore, Pledgor does not identify any authority to support the sweeping assertion that GOL 5-334 operates to invalidate routine pledge provisions such as at issue here. The only case cited by Pledgor to support this assertion, *Bank of New York v. Ortiz*, 30 A.D.3d 551, 551 (2d Dep't 2006), does not even discuss GOL 5-334, much less say anything about whether that statute invalidates commonly-negotiated pledge provisions. Pledgor's entire argument with respect to GOL 5-334 appears to rely exclusively on a single 40-year-old law review article. Jeffrey L. Licht, *The Clog on the Equity of Redemption and its Effects on Modern Real Estate Finance*, 60 St. John's L. Rev. 452 (1986). This article, however, is largely critical of the anti-clogging doctrine, favorably cites English law describing the doctrine as "an unruly dog, which, if not securely chained to its own kennel, is prone to wander into places where it ought not to be," and argues the anti-clogging doctrine has no modern rationale in sophisticated lending arrangements between arms-length contracting parties. See, e.g., 60 St. John's L. Rev. at 461-62 and 477-78. *See also id.* at 496 (arguing that GOL 5-334 does not go far enough to pare back the anti-clogging doctrine.) Nor does the article address the impact of bankruptcy on the issue and is therefore completely irrelevant to any analysis.

#10630650 v1 \029220 \0001

forbearance is for the principal sum of $2.5 million or more when the option or right

is granted. N.Y. Gen. Oblig. L. § 5-334(1).

24.     Critically—but conveniently omitted by Pledgor—the second

subparagraph of GOL 5-334 expressly notes that the statute should _not_ be used to

"limit, impair, or otherwise affect" the enforceability of *other* structures.

> This section shall not be construed to limit, impair or otherwise affect the
> power of the holder of any option or right to acquire an equity or other
> ownership interest in property or in a partnership, corporation, trust or other
> entity that owns property, if such option or right is or would be enforceable
> without reference to this section.

(*Id.* § 5-334(2).) Thus, it could not be clearer that GOL 5-334 does *not* make *anything*

unenforceable. Its purpose is simply to make clear that the structure described in

subsection (1) is enforceable while also making clear in subsection (2) that the statute

has no effect on other structures. *See*, e.g., *Weir* v. *Barker*, 104 A.D. 112, 119 (2d Dep't

1905) ("permissive language used in a statute should not be construed as restricting

or limiting the power theretofore existing").

25.     In short, GOL 5-334 does not invalidate the terms of the Pledge and

would not have required a result different than that reached by the Court in the Order

even if Pledgor had raised this statute as it should have in connection with the

underlying Motion to Dismiss.

### (ii)    Section 11 Has No Relevance To The Validity Of The Pledge Or Its Exercise By The Lender.

26.     Pledgor's alternative argument in support of reargument is that "[T]he

assignment of interest executed on April 27, 2021, was executed in contravention of

the Operating Agreement." (Motion at 5 (citing Docket No. 24-7). *See also id.* at 17-19.) More specifically, Pledgor argues that when Lender exercised its rights under the Pledge, it "skipped the crucial step of removing [Pledgor] as a member or manager" of the Debtor. (*Id.* at 17.) Although this argument is not articulated in a particularly clear fashion in the Motion, Pledgor's theory appears to be as follows:

- because "the operating agreement determines under what circumstances a person becomes a member of a limited liability company,"

- and because the Debtor duly issued a membership certificate to Pledgor identifying Pledgor as the original holder of the Debtor's membership interests,

- and because Section 11 of the Debtor's Operating Agreement describes *certain* circumstances under which such a certificate "can be changed,"

- and because (according to Pledgor) none of those circumstances applies to the Pledge;

- Pledgor must, therefore, have remained the "sole member" of the Debtor (notwithstanding the clear and unambiguous language of the Pledge and the exercise thereof by Lender) because Pledgor is still holding a certificate that identifies Pledgor as the member and because any certificate identifying Lender as the member of the Debtor is void under Section 11 of the Debtor's Operating Agreement.

(*See* generally id. at 18-19.) This argument is entirely specious.

27.    Pledgor blithely ignores that, at the time of the loan transaction, years before the Pledge was exercised, *the Debtor* and the Pledgor (not the Lender) delivered to the Lender a blank certificate and agreed, in the Pledge, that upon a default the Lender may "register" its name on the certificate as the holder of the membership interests, a copy of which was provided to the Court as part of Lender's opposition to the Motion to Dismiss. (*See* Docket No. 24-7.) The Lender did not forcibly take the

13

membership interests away from the Pledgor. To the contrary, the Pledgor willingly and knowingly assigned those membership interests to the Lender and contractually agreed that the Lender could register them in its own name in the event of a Default in exchange for getting $8,000,000 from the Lender. (*See* id. at p. 3.) Pledgor also represented and warranted to Lender at the time of that pledge and delivery that it had the "full power and authority" to pledge and assign the membership interests and that doing so "does not violate any other agreements to which Pledgor is a party (which would include the Debtor's Operating Agreement). (See Docket No. 24-2 (Pledge Agreement) at § 3 (b). Pledgor is estopped from now claiming that the assignment was prohibited by Section 11 of the Debtor's Operating Agreement.

28.    To the extent Pledgor is again claiming that it should nonetheless be permitted to evade its contractual promise and representations—the Pledgor made a similar argument in its Motion to Dismiss—this is tantamount to a concession that the Pledgor successfully defrauded the Lender at the time the pledge was originally given. Pledgor cannot seriously expect this Court of equity to allow Pledgor to benefit from its own fraudulent misconduct. *See, e.g., McConnell v. Commonwealth Pictures Corp.*, 7 N.Y.2d 465, 469, 166 N.E.2d 494, 498, 199 N.Y.S.2d 483, 486 (1960) ("No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes.") The maxim *ex turpi causa non oritur actio* would likewise correctly prevent

14

the Court from endorsing such an outcome. *In re Fairfield Sentry Limited*, 596 B.R. 275, 297 (Bankr. S.D.N.Y. 2018) (Over 200 years ago, Lord Mansfield described this doctrine as '[n]o court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act.'") (quoting *Holman v. Johnson*, (1775) 1 Cowp 341, 343)).

29.    In a further extension of its baseless argument with respect to the alleged invalidity of the pledge and the exercise thereof by the Lender, Pledgor further contends that Lender "violated the automatic stay to improve its position on the eve of oral argument." (Motion at 14.) This argument is based on a deliberate mischaracterization of the events it purports to be premised upon. Citing nothing more than comments made by Lender's counsel at oral argument,[4] Pledgor claims that *Lender* took certain steps (including amending the Debtor's Operating Agreement to eliminate Section 5 and to replace it with a new provision identifying Rider Lender as the sole member, and therefore manager, of the Debtor). (*Id.* at 14-15 (citing Transcript of Argument held on August 30, 2021 at 23:4-11).) These actions, however, were not taken by the Lender; they were taken by the Debtor-in-Possession as directed by its sole member, Rider Lender and, as such, the actions are not subject to the automatic stay which, exists to protect the Debtor and its property from acts of creditors of the Debtor. The entire automatic stay argument is a complete sideshow.

---

[4]    Lender's counsel during argument imprecisely used the pronoun "we" to describe actions that had been taken by the Debtor, not by the Lender.

#10630650 v1 \029220 \0001

30.    Although the Court need not consider the argument any further, it must be noted that the actions of which Pledgor complains were not taken "to improve [Lender's] position." The membership interests were pledged and conditionally assigned in 2019, long before the bankruptcy filing. The Pledgor likewise delivered the blank certificate to Lender at the same time, well before the petition was ever filed. The actions taken by the Debtor — not the Lender — of which Pledgor complains were not necessary to "improve" the Lender's position. The Lender's position was already clear, well documented, and fully compliant with the governing documents and applicable law. The actions were appropriate corporate ratifications of actions taken pre-petition by the sole member of the Debtor solely to remove any and all doubts that Pledgor unsuccessfully attempted to raise in its Motion to Dismiss.

31.    For all of these reasons, Section 11 of the Debtor's Operating Agreement would not have warranted a result any different from that reached by the Court in the Order even if Pledgor had timely raised its arguments with respect that section when the Court first adjudicated the Motion to Dismiss. The Motion should, therefore, be denied.

16

## **CONCLUSION**

32.    For all of the foregoing reasons, and those set forth in the Debtor's Response in which Lender respectfully joins, Lender submits that the Motion should be denied in its entirety and the Court should grant such other and further relief as it deems just and proper.

Dated: New York, New York
          September 24, 2021

MORRISON COHEN LLP

By: /s/ Joseph T. Moldovan
        Joseph T. Moldovan, Esq.
        Terence K. McLaughlin, Esq.
        David J. Kozlowski, Esq.
        909 Third Avenue
        New York, New York 10022
        (212) 735-8600

*Attorneys for Be-Aviv 286 Rider LLC*

17