**ROBINSON BROG LEINWAND GREENE**
**GENOVESE & GLUCK P.C.**
875 Third Avenue
New York, New York 10022
(212) 603-6300
Fred B. Ringel, Esq.
William A. Rome, Esq.
Steve B. Eichel, Esq.

*Attorneys for the Debtor and Debtor-in-Possession*

**Hearing Date: October 5, 2021**
**Hearing Time: 10:00 a.m.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

In re:

**286 RIDER AVE ACQUISITION LLC,**

　　　　Debtor.

---

Chapter 11

Case No. 21-11298 (LGB)

**286 RIDER AVENUE ACQUISITION LLC'S**
**MEMORANDUM OF LAW IN OPPOSITION TO MOTION BY**
**286 RIDER AVE DEVELOPMENT LLC TO ALTER OR**
**AMEND JUDGMENT UNDER BANKRUPTCY RULE 9023**
**AND FEDERAL RULE OF CIVIL PROCEDURE 59(e)**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ............................................................................................................... 3

    A.  The Court Addressed the Arguments in the Underlying Motion and Overlooked

        Nothing ....................................................................................................................... 4

    B.  The Claims Related to The Supposedly New Material in Section 11 Of The

        Operating Agreement and GOL 5-334 .................................................................... 6

ARGUMENT ..................................................................................................................... 6

    I.    THE STRICT LEGAL STANDARD OF REVIEW PRECLUDES RELIEF .................... 6

    II.    TO THE EXTENT THAT THE MOTION SEEKS TO RE-LITIGATE ALREADY

          DECIDED MATTERS, IT MUST BE REJECTED .......................................................... 8

    III.    THE TWO ARGUMENTS THE PLEDGOR ASSERTS FOR THE FIRST

          TIME ON REARGUMENT CANNOT BE CONSIDERED BY THE

          COURT AND THEY DO NOT WARRANT RELIEF FROM THE

          ORDER…………………………………………………………………………….…9

    A.  The Arguments Relating to GOL 5-334 And Section 11 Of The Operating Agreement

        Could Have Been, But Were Not Raised By the Pledgor, During The Briefing And

        Argument On Its Motion to Dismiss .................................................................... 9

    B.  Neither GOL 5-334 Nor Section 11 Of The Operating Agreement Justifies

        Relief From the Order................................................................................................ 11

        (i)    Nothing in GOL 5-334 Renders The Pledge Unenforceable. ...................................... 11

        (ii)    Section 11 of the Operating Agreement Does Not Invalidate The Pledge Or Its

            Exercise By The Lender............................................................................................... 13

CONCLUSION.................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
    684 F.3d 36 (2d Cir. 2012)............................................................................................7

*Banco Cent. Del Paraguay v. Paraguay Humanitarian Foundation, Inc.*,
    No. 01 Civ. 9649 (JFK), 2007 WL 2493684 (S.D.N.Y. Sept. 5, 2007)....................................6

*Banister v. Davis*,
    — U.S. —140 S.Ct. 1698, 1703, 207 L.Ed. 58 (2020)............................................................9

*Bank of New York v. Ortiz*,
    30 A.D.3d 551 (2d Dep't 2006) ......................................................................................11

*In re Crozier Bros. Inc.*,
    60 B.R. 683 (Bankr. S.D.N.Y. 1986)...................................................................................7

*In re Evergreen Mut. Funds Fee Litig.*,
    240 F.R.D. 115 (S.D.N.Y. 2007) .....................................................................................7

*In re Fairfield Sentry Limited,*
    *596 B.R. 275, 297 (Bankr. S.D.N.Y. 2018)*  ........................................................................14

*In re General Motors LLC Ignition Switch Litig.*,
    427 F. Supp. 3d 374 (S.D.N.Y. 2019).................................................................................7

*Griffin Indus., Inc. v. Petrojam, Ltd.*,
    72 F. Supp. 2d 365 (S.D.N.Y. 1999)..................................................................................8

*In re Health Mgmt. Sys. Inc. Sec. Litig.*,
    113 F. Supp. 2d 613 (S.D.N.Y. 2000)................................................................................6

*ING Glob. v. United Parcel Serv. Oasis Supply Corp.*,
    757 F.3d 92 (2d Cir. 2014).............................................................................................7

*In re Johns-Manville Corp.*,
    623 B.R. 242 (Bankr. S.D.N.Y. 2020) ...............................................................................7

*Kroemer v. Tantillo*,
    758 Fed. Appx. 84 (2d Circ. 2018) ...................................................................................8

*McConnell v. Commonwealth Pictures Corp.*,
    7 N.Y.2d 465, 166 N.E.2d 494, 199 N.Y.S.2d 483 (1960)......................................................14

*New York University v. Factory Mut. Ins. Co.*,
  2020 WL 1033532 (S.D.N.Y. Mar. 3, 2020) ..........................................................................10

*In re Otal Investments Ltd.*,
  No. 03 Civ. 4303 (HB), 2006 WL 895212 (S.D.N.Y. Apr. 7, 2006)........................................8

*Pal v. Apfel*,
  14 Fed. Appx. 113 (2d Cir. 2001) ........................................................................................10

*Perez v. Terrestar Corp.* (*In re Terrestar Corp.*),
  No. 11-10612 (SHL), 2016 WL 197621 (Bankr. S.D.N.Y. Jan. 15, 2016) ..............................7

*Range Rd. Music, Inc. v. Music Sales Corp.*,
  90 F. Supp. 2d 390 (S.D.N.Y. 2000)........................................................................................8

*In re Santoli*,
  627 B.R. 595 (Bankr. S.D.N.Y. 2021) .....................................................................................7

*Spizz v. Eluz (In re Ampal-Am. Isr. Corp.)*,
  2020 WL 5242956 (Bankr. S.D.N.Y. Sept. 1, 2020) ...............................................................7

*United States v. Local 1804-1, Intern. Longshoremen's Ass'n*,
  831 F. Supp. 167, 169 (S.D.N.Y. 1993) ..................................................................................9

*Virgin Atl. Airways Ltd. v. National Mediation Bd.*,
  956 F.2d 1245 (2d Cir. 1992)..................................................................................................8

*Weir* v. *Barker*,
  104 A.D. 112 (2d Dep't 1905)...............................................................................................12

*Whitaker v. New York Univ.*,
  543 Fed. Appx. 113 (2d Cir. 2013)..........................................................................................8

**Statutes and other Authorities**

11 U.S.C. § 303.............................................................................................................................4

11 U.S.C. § 305..........................................................................................................................4,5

11 U.S.C. § 543.............................................................................................................................4

11 U.S.C. § 1112........................................................................................................................4,5

New York State's General Obligations Law Section 5-334 ...........................................................3

NY LLC Law Section 402 .............................................................................................................5

**Other Authorities**

Federal Rules of Bankruptcy Procedure Rules 9023 and 9024 ........................................................1

Federal Rules of Civil Procedure 59(e) ..........................................................................1, 8, 9, 10

Federal Rules of Civil Procedure Rules 60(b) ...................................................................1, 8, 10

Jeffrey L. Licht, *The Clog on the Equity of Redemption and its Effects on Modern Real Estate Finance*, 60 St. John's L. Rev. 452 (1986)...........................................................11

Debtor 286 Rider Ave Acquisition LLC ("**286 Rider**" or "**Debtor**"), by its undersigned counsel, (a) submits this Memorandum of Law in Opposition ("**Opposition**") to the Motion to Alter or Amend the Judgment Under Bankruptcy Rule 9023 and Federal Rules of Civil Procedure 59(e) ("**Motion**"), dated September 13, 2021, filed by 286 Rider Ave Development LLC ("**Pledgor**"), and (b) joins in the response filed by Be-Aviv 286 Rider LLC ("**Lender**") in response to the Motion. In support of this Opposition, Debtor respectfully represents as follows:

## PRELIMINARY STATEMENT

This Motion seeks to alter, amend or reconsider the Court's August 30, 2021 Order ("**Order**") denying Pledgor's motion to dismiss this bankruptcy case ("**Motion to Dismiss**") under Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure ("**Federal Rules**"), as made applicable in this proceeding by Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**").[1]   The Motion lacks merit – procedurally and substantively – and should be denied.

Often made by disgruntled litigants but rarely granted, motions to reconsider are considered an "extraordinary remedy" and thus must overcome a high legal barrier to ensure that the interests of finality and conservation of scarce judicial resources are promoted. (Point I). Accordingly, to obtain relief, Pledgor must identify material facts or controlling authority that Pledgor placed before the Court but which the Court overlooked, thereby establishing that the Court made a blatant error, fatally undermining the order at issue. Pledgor nowhere identifies any such mistake.

---

[1]     Rule 59(e) authorizes the filing of a "motion to alter or amend a judgment." Fed. R. Civ. P. 59(e).  Although Pledgor notices the Motion under Rule 60(b) as well, the submission does not cite any case law as to which, if any, of the six clauses therein are allegedly applicable.

Indeed, in contrast to the standard that reconsideration is an "extraordinary remedy" to be employed sparingly, the Motion is transparently a pedestrian attempt to obtain a second bite of the apple. As set forth below, a substantial portion of the Motion consists of a regurgitation of the very same arguments that Pledgor previously presented, which this Court considered and rejected in deciding the Motion to Dismiss. *Infra,* at pp. 4-5. The Motion's arguments about the equity of redemption, the interaction between the terms of the Pledge and provisions in the Debtor's operating agreement identifying the Pledgor as the Debtor's then-manager, the supposed "bad faith" of the bankruptcy filing, and the supposed limitations on the Lender's "economic" rights under the Pledge, were all briefed and argued extensively on the record of the Motion to Dismiss. In a thorough analysis spanning fourteen pages, the Court duly considered those matters and appropriately rejected them under applicable law. Motion at Exhibit A (Oral Argument Tr. at 59-73).   Contrary to the tenor of Pledgor's motion, reconsideration is not a safe harbor for second chance litigation based on a mere hope that the Court might reach a different decision. (Point II).

In fact, a Court  can only "overlook" a fact or an argument that had been presented to it by a litigant in the Motion to Dismiss. Thus, arguments raised for the first time on a motion to reconsider are untimely and are legally deficient.  (Point III). Here, Pledgor was the master of its legal destiny in submitting the Motion to Dismiss: it decided what material facts to put before the Court and what arguments, statutes, and case law to present to the Court to support its entitlement to relief. Pledgor's opening papers and reply papers presented its facts and arguments in hundreds of pages. Although Pledgor identifies two putatively "overlooked" matters in the Motion, both were fully known or knowable to the Pledgor when the Motion to Dismiss was briefed and argued, and neither was presented to the Court by the Pledgor at that time. These matters cannot now be

raised for the first time on a motion for reargument on the theory that it was the Court, not the Pledgor, who "overlooked" them.

Finally, even if the purportedly "overlooked" matters *could* properly be considered for the first time in connection with this Motion (which they cannot), the Motion should still be denied. Neither matter warrants a different result than that reached in the Order. First, Pledgor's arguments about New York State's General Obligations Law Section 5-334 ("**GOL 5-334**") misconstrues and mischaracterize that statute. Second, Pledgor's argument about Section 11 of the Debtor's Operating Agreement is also meritless. That section does not prohibit the Pledgor from pledging its ownership of the Debtor's membership interests. Nor does Pledgor's argument account for the blank certificate that Pledgor and Debtor delivered to Lender at the time of the loan, Pledgor's contractual representation that such pledge and certificate was valid, lawful and authorized, or its agreement for the Lender to register its own name onto that certificate upon a default. Furthermore, Pledgor's argument about a supposed stay violation misleadingly ascribes to the Lender actions taken by the Debtor itself, which are not subject to the automatic stay.

For these reasons, as discussed below, Debtor respectfully submits that the Motion should be denied in its entirety and joins in the Lender's submission seeking the same relief.

## BACKGROUND

The Motion to Dismiss was fully briefed by the parties on August 19, 2021, and the subject of a lengthy oral argument on August 30, 2021. Following oral argument, the Court dictated a comprehensive ruling on the record and issued the Order memorializing the ruling. This Motion ensued.

A.    **The Court Addressed the Arguments in the**
      **Underlying Motion and Overlooked Nothing**

Nearly all the Motion is simply a regurgitation of the very same arguments previously

advanced by Pledgor and already rejected by the Court in connection with the Motion to

Dismiss. Each of these bullet points reflects an argument made by Pledgor in the Motion.[2]

However, this Court considered and rejected every claim as follows:

- The Lender's exercise of the Pledge, and further exercise of management and voting rights to cause the Debtor to start this bankruptcy case, somehow vitiates, amounts to a "clog" on, or "forces the Debtor to waive" the Pledgor's or the Debtor's common law and UCC-based equities of redemption. (Motion at 3, 8-11, 12-14). This Court held that "the lender validly exercised its rights under the pledge agreement" and thus there had been no unlawful impairment of Pledgor's rights. Motion at Exhibit A (p. 67).

- The Lender's rights under the Pledge are "subject to" the provisions in the Debtor's operating agreement designating Pledgor (i.e., the then-sole owner of the Debtor's membership interests) as the Debtor's member-manager (Motion at 4, 5, 17-19). This Court rejected the "subject to" argument made under section 5(a) of the pledge agreement, finding that "Section 5(a) of the pledge agreement which does not specifically reference the operating agreement, allows the lender, upon foreclosure – sorry, upon the exercise of its pledge rights, by exercising its pledge rights, its rights under the pledge agreement, to take over the membership interests… [and] that the lender, then, had all voting, all equity, membership, and other rights pursuing [sic] to the membership interest." Motion at Exhibit A (pp. 72-73). In other words, the Court found that Lender's exercise of voting and management rights over the Debtor was not in any way inconsistent with Section 5.

- The Lender supposedly "acquired nothing more than the economic rights" associated with the Debtor's membership interests, but not managerial or voting rights (Motion at 4, 5 n.2, 19-20). This Court rejected the "economic rights"

---

[2]    Because the Motion largely seeks to rehash the same matters that were comprehensively presented to the Court in connection with the underlying Motion to Dismiss, to avoid needless duplication, Debtor respectfully refers the Court to, and incorporates by reference, the factual recitation set forth in Debtor's Response to Motion by 286 Rider Ave Development LLC to (A) Dismiss Bankruptcy Case Pursuant to 11 U.S.C. §§ 303, 305 and 1112, and (B) for Turnover of Certain Membership Interests Under 11 U.S.C. § 543, and Joinder to Lender to Debtor's Response to the Motion and in the Affidavits and Declarations submitted in connection therewith, together with the exhibits thereto (collectively, "**Motion to Dismiss Opposition**"), [Docket Nos. 23-27], as if fully set forth herein, for a full and complete recitation of the facts and law relevant to the Motion.

assertion for the reasons set forth in the above bullet point. Motion at Exhibit A (pp. 67-68).

- The Lender's rights under the Pledge were somehow limited to facilitating a foreclosure or a UCC sale (Motion at 4, 16-17). This Court held that the filing of a Chapter 11 case to "effectuate a quick sale of assets through the 363 sale process" was common and the Debtor was not limited to the foreclosure route. Motion at Exhibit A (pp. 65-66); *see also id.* at 66 ("Neither the pledge agreement nor any other loan agreements require the lender to commence a foreclosure action…").

- The Debtor's filing supposedly violated Section 305(a)(1) of the Bankruptcy Code because this is supposedly a "two-party" dispute (Motion at 5 n.2). This Court held that it "does not find that there is sufficient evidence that this is a two-party case…" Motion at Exhibit A  (p. 70); *see also id.*  (p. 64).

- The Debtor's filing supposedly was not a voluntary filing (Motion at 5 n.2). This Court found that the filing was voluntary. Motion at Exhibit A (p. 64).

- The Debtor's filing supposedly violated Section 1112 of the Bankruptcy Code because of alleged defects in the Pledge and its authorization when the loan transaction was effectuated (Motion at 5 n.2). This Court held that movant's argument was "largely unfounded" because "the lender properly obtained a pledge of the membership interest…" Motion at Exhibit A (p. 66).

- The Debtor's filing supposedly was made in bad faith (Motion at 5 n.2). After exhaustively analyzing the factors for determining a bad-faith filing, the assertion was rejected. Motion at Exhibit A (pp. 68-70); and

- The Lender's exercise of its rights under the Pledge supposedly violated the anti-amendment provisions of the Debtor's Operating Agreement and Section 402 of the N.Y. LLC Law (Motion at 5 n.2). This Court rejected the argument under Section 402, stating, "this Court doesn't get there because Section 5(a) of the pledge agreement provides specifically that if an event of default shall occur and be continuing, then all membership interests, at the lender's option, may be registered in the name of the lender…" Motion at Exhibit A (p. 71).

As discussed below, the fact that each of these arguments was raised and adjudicated by the Court dooms this Motion. *Infra* at Point II.

**B.      The Claims Related to The Supposedly New Material in
Section 11 Of The Operating Agreement and GOL 5-334**

Pledgor contends that, under Sections 11(b)(i) and (ii) of the Debtor's Operating Agreement, there are only limited circumstances when a "new" certificate reflecting a change in the ownership of the Debtor's membership interests can be issued. (*See, e.g.*, Motion at 5 and Exhibit C § 11.)

There is nothing "new" or concealed about this section of the Debtor's Operating Agreement. Pledgor submitted the same operating agreement as Exhibit A to the Declaration of Michael Lichtenstein dated August 25, 2021 ("**Lichtenstein Dec.**") in connection with Pledgor's Motion to Dismiss Reply. [Docket No. 36-1 Exhibit A]. Pledgor cited extensively to provisions in the Debtor's Operating Agreement (including, without limitation, section 5) in its briefing and in oral argument on the Motion to Dismiss.

Although Section 11 was in that same operating agreement, Pledgor never once raised any arguments about it in connection with the briefing or the argument on its Motion to Dismiss. It was the Pledgor, not the Court, that "overlooked" this section of the Debtor's Operating Agreement. Similarly, the invocation of GOL 5-334 was overlooked by Pledgor; the statute was passed decades ago and is not "new." Furthermore, and in any event, as stated in the Argument below, these assertions in no way demonstrate any error in the Order nor require any different result.

## ARGUMENT

### I.      THE STRICT LEGAL STANDARD OF REVIEW PRECLUDES RELIEF

Reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys. Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000); *Banco Cent. Del Paraguay v. Paraguay Humanitarian*

*Foundation, Inc.*, No. 01 Civ. 9649 (JFK), 2007 WL 2493684, at *2 (S.D.N.Y. Sept. 5, 2007); *In re Evergreen Mut. Funds Fee Litig.*, 240 F.R.D. 115, 117 (S.D.N.Y. 2007). The burden rests with movant. *In re Crozier Bros. Inc.*, 60 B.R. 683, 688 (Bankr. S.D.N.Y. 1986); *In re Santoli*, 627 B.R. 595, 600 (Bankr. S.D.N.Y. 2021). Given that the standard is "strict" (*Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)), requests for relief under Rule 59 will generally be denied "unless the moving party can point to controlling decisions or data that the court overlooked." *Perez v. Terrestar Corp.* (*In re Terrestar Corp.*), No. 11-10612 (SHL), 2016 WL 197621, at *3 (Bankr. S.D.N.Y. Jan. 15, 2016). "The major grounds for justifying reconsideration are an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *In re General Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 378 (S.D.N.Y. 2019) (internal quotations and citations omitted).

Pledgor does not identify any change in the law that was handed down, or any new and previously unavailable evidence that it came to possess, after the Order was issued in late August. Nor does the Motion identify any "manifest injustice" or "clear error" as those requirements are narrowly construed under applicable case law.

To satisfy the "manifest injustice" standard, Pledgor must show that the Order "is wholly without legal support," *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014), and that the error is obvious to all who view it. *Spizz v. Eluz (In re Ampal-Am. Isr. Corp.)*, 2020 WL 5242956, at *2 (Bankr. S.D.N.Y. Sept. 1, 2020). In the colorful words of a famous jurist on the Seventh Circuit, "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must. . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *In re Johns-Manville Corp.*, 623 B.R. 242, 248 (Bankr. S.D.N.Y.

2020) (*quoting* Posner, J, *Parts & Elec. Motors, Inc. v. Sterling Elec.*, Inc., 866 F.2d 228, 233 (7th Cir. 1988), *cert. denied*, 493 U.S. 847 (1989)).

Thus, Pledgor faces a "high bar" and its Motion must "be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been fully considered by the court." *In re Otal Investments Ltd.*, No. 03 Civ. 4303 (HB), 2006 WL 895212, at *1 (S.D.N.Y. Apr. 7, 2006). *See also Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999).

The Motion does not come close to meeting these stringent standards.

## II.   TO THE EXTENT THAT THE MOTION SEEKS TO RE-LITIGATE ALREADY DECIDED MATTERS, IT MUST BE REJECTED

As discussed above, the Motion to seeks to relitigate many issues already decided, a point which is indisputable even if Pledgor "hides" them in a lengthy footnote. Each of the bullet points (*supra* at pp. 4-5) are familiar arguments to the Court because each of them was presented to the Court by Pledgor in the extensive briefing and argument in connection with its Motion to Dismiss. Yet "[a] 'motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided.'" *Kroemer v. Tantillo*, 758 Fed. Appx. 84, 87 (2d Circ. 2018) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). *See also Whitaker v. New York Univ.*, 543 Fed. Appx. 113, 114 (2d Cir. 2013) ("a Rule 60(b) motion is properly denied where it seeks only to relitigate issues already decided"); *Range Rd. Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000) (denying relief under Rule 59(e) because motion "largely restates the arguments that they made to the Court in their submissions and at oral argument").

"Where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Virgin Atl. Airways Ltd. v. National*

*Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992). Accordingly, to the extent that the Motion

seeks to relitigate the very same arguments that this Court heard and considered, it must be denied.

### III. THE TWO ARGUMENTS THE PLEDGOR ASSERTS FOR THE FIRST TIME ON REARGUMENT CANNOT BE CONSIDERED BY THE COURT AND THEY DO NOT WARRANT RELIEF FROM THE ORDER

Apart from regurgitating the very same arguments considered and rejected by the Court the

first go-around, Pledgor also purports to assert two "new" arguments that it contends warrant relief

under Rules 59(e) or 60(b). First, Pledgor contends that the Court "overlooked" and "missed" the

"import" of GOL 5-334 which, Pledgor contends, renders the Lender's rights under the Pledge

"unenforceable." (*See* Motion at 11-12.) Second, Pledgor contends that the Lender's exercise of

the Pledge, registration of the Debtor's membership interests in the Lender's name, and subsequent

exercise of the management and voting rights attributable to those membership interests somehow

violated Section 11 of the Debtor's Operating Agreement or amounted to a violation of the

automatic stay. (*Id.* at 14-15 and 17-19.) Neither of these arguments was advanced at the time of

the Motion to Dismiss and they cannot be advanced now for the first time on reargument.

Furthermore, and in any event, neither argument warrants any relief from the Order.

### A. The Arguments Relating to GOL 5-334 And Section 11 Of The Operating Agreement Could Have Been, But Were Not Raised By the Pledgor, During The Briefing And Argument On Its Motion to Dismiss.

The United States Supreme Court has made clear that, on a motion for reargument,

"courts will not address new arguments or evidence that the moving party could have raised

before the decision issued." *Banister v. Davis,* — U.S. —140 S.Ct. 1698, 1703, 207 L.Ed. 58

(2020). Thus, a reargument motion cannot "be employed to introduce evidence that was

available at trial but was not proffered [or] to advance new theories." *United States v. Local*

*1804-1, Intern. Longshoremen's Ass'n,* 831 F. Supp. 167, 169 (S.D.N.Y. 1993). Indeed, "a party

who realizes, with the acuity of hindsight, that he failed to present his strongest case at trial, is

not entitled to a second opportunity by moving to amend a finding of fact or a conclusion of

law." *Id. See also Pal v. Apfel*, 14 Fed. Appx. 113, 114 (2d Cir. 2001) (affirming denial of Rule

60(b) motion where movant had always been in possession of "new" evidence it raised for first

time at reargument); *New York University v. Factory Mut. Ins. Co.*, 2020 WL 1033532, at *2

(S.D.N.Y. Mar. 3, 2020) ("[M]otions under Rule 59(e) or 60(b) 'may not be used . . . . to raise

arguments or present evidence that could have been raised prior to the entry of judgment.'")

(quoting *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 216 (2d Cir. 2019)).

Leaving aside that neither matter warrants any relief from the Order (as discussed in Point

III.B. below), both of these "new" matters were fully known or knowable when the Motion to

Dismiss was briefed and argued, but the Pledgor raised neither at that time. GOL 5-334 has existed

since 1985. Section 11 of the Operating Agreement has been a part of that agreement since at least

September 19, 2019. Despite hundreds of pages of briefing and evidentiary submissions

encompassing its opening and reply papers supporting the Motion to Dismiss, Pledgor never raised

any arguments about either GOL 5-334 or Section 11 of the Debtor's Operating Agreement.

Pledgor submitted the Operating Agreement as an Exhibit and cited and argued extensively about

other provisions of the Operating Agreement that Pledgor contended supported its motion. (Docket

No. 36-2 ¶23, citing §5 of Operating Agreement). But it never presented any arguments about

Section 11. It cannot raise this, or the GOL 5-334 argument, now for the first time on reargument.

The Court did not "overlook" anything about either GOL 5-334 or Section 11 of the

Debtor's Operating Agreement. It was *Pledgor* that "overlooked" those matters. For this

procedural reason alone, the Motion must be denied.

**B.      Neither GOL 5-334 Nor Section 11 Of The Operating Agreement Justifies Relief From the Order**

**(i)      Nothing in GOL 5-334 Renders The Pledge Unenforceable.**

While conceding (as it must) that Section 5(a) of the Pledge expressly grants the Lender the right to (among other things) "register[]" the pledged Membership Interests "in the name of the Lender" and to "thereafter exercise . . . all voting and all equity, membership and other rights pertaining to the Membership Interests," Pledgor still contends that the Court "overlooked" the fact that GOL 5-334 supposedly renders these material provisions in the Pledge "unenforceable." (Motion at 11.)

GOL 5-334 does no such thing. Nor does Pledgor cite a single case in which any court so held.[3]

GOL 5-334 does not "prohibit" or render anything unenforceable. Instead, it provides non-exclusive examples of *permissible* conduct. The statute provides that an option or right to acquire equity or other ownership interest in property simultaneously with or in connection with any loan or forbearance of money secured by such mortgage or security interest *is enforceable* where the power to exercise the option or right is not dependent upon the occurrence of a default with respect

---

[3]      Pledgor categorically declares that "Loan provisions that cut off a borrower's right of redemption before a foreclosure or UCC sale and do not fall under Section 5-334's scope are void." (Motion at 13.) As a threshold matter, and as fully briefed in the Motion to Dismiss Opposition, cases in the Second Circuit make clear that the borrower's equity of redemption is not cut off in bankruptcy (*See* Docket No. 23 at 30-34 and cases cited therein; Docket No. 26 at 25), but merely is another property right belonging to the borrower which, upon the bankruptcy filing, becomes part of the Debtor's estate.  Pledgor did not refute, or even address, this case law in connection with the Motion to Dismiss, nor does it do so now.  Furthermore, Pledgor does not identify any authority to support the assertion that GOL 5-334 operates to invalidate routine pledge provisions such as the one at issue here. *Bank of New York v. Ortiz*, 30 A.D.3d 551, 551 (2d Dep't 2006), the only case cited by Pledgor to support this assertion, does not even discuss GOL 5-334, much less say anything about whether that statute invalidates commonly negotiated pledge provisions.  Pledgor's entire argument with respect to GOL 5-334 appears to rely exclusively on a single 40-year-old law review article which, to say the least, is not the law. Jeffrey L. Licht, *The Clog on the Equity of Redemption and its Effects on Modern Real Estate Finance*, 60 St. John's L. Rev. 452 (1986)].

to the loan, forbearance, mortgage, or security interest, and the loan or forbearance is for the principal sum of $2.5 million or more when the option or right is granted. N.Y. Gen. Oblig. L. § 5-334(1).

Critically — but conveniently omitted by Pledgor — the second subparagraph of GOL 5-334 expressly notes that the statute should _not_ be used to "limit, impair, or otherwise affect" the enforceability of *other* structures.

> This section shall not be construed to limit, impair or otherwise affect the power of the holder of any option or right to acquire an equity or other ownership interest in property or in a partnership, corporation, trust or other entity that owns property, if such option or right is or would be enforceable without reference to this section.

(*Id.* § 5-334(2).) Thus, it could not be clearer that GOL 5-334 does *not* make *anything* unenforceable. Its purpose is simply to make clear that the structure described in subsection (1) is enforceable while also making clear in subsection (2) that the statute does not affect other structures. *See*, e.g., *Weir* v. *Barker*, 104 A.D. 112, 119 (2d Dep't 1905) ("permissive language used in a statute should not be construed as restricting or limiting the power theretofore existing").

In short, GOL 5-334 does not invalidate the terms of the Pledge and would not have required a result different than that reached by the Court in the Order even if Pledgor had raised this statute as it should have in connection with the Motion to Dismiss.

### (ii)    Section 11 of the Operating Agreement Does Not Invalidate
### The Pledge Or Its Exercise By The Lender

Pledgor's alternative argument in support of reargument is that "[T]he assignment of interest executed on April 27, 2021 was executed in contravention of the Operating Agreement." (Motion at 5 (citing Docket No. 24-7). *See also id.* at 17-19.) More specifically, Pledgor argues that when Lender exercised its rights under the Pledge, it "skipped the crucial step of removing [Pledgor] as a member or manager" of the Debtor. (*Id.* at 17.) Although this argument is not explained in a particularly clear fashion in the Motion, Pledgor's theory appears to be as follows:

- because "the operating agreement determines under what circumstances a person becomes a member of a limited liability company,

- and because the Debtor duly issued a membership certificate to Pledgor identifying Pledgor as the holder of the Debtor's membership interests,

- and because Section 11 of the Debtor's Operating Agreement describes *certain* circumstances under which such a certificate "can be changed,"

- and because (according to Pledgor) none of those circumstances applies to the Pledge; then

- Pledgor must have thus remained the "sole member" of the Debtor (despite the clear and unambiguous language of the Pledge and its exercise by Lender) because Pledgor is still holding a certificate that identifies Pledgor as the member and because any certificate identifying Lender as the member of the Debtor is void under Section 11 of the Debtor's Operating Agreement.

(*See* generally *id*. at 18-19.) This argument is specious for a host of reasons.

First, the certificate described in the Debtor's Operating Agreement is merely evidence of the membership interest, it is a document by which such membership rights arise or are extinguished.  Second, Pledgor blithely ignores that, at the time of the loan transaction, years before the Pledge was exercised, *the Debtor* and the Pledgor (not the Lender) delivered to the Lender a blank certificate and agreed, in the Pledge, that upon a default the Lender may "register" its name on the certificate as the holder of the membership interests. The Lender did not forcibly

take the membership interests away from the Pledgor. To the contrary, the Pledgor willingly and conditionally assigned those membership interests to the Lender and contractually agreed that the Lender could register then in its own name upon a Default in exchange for getting the $8,000,000 loan from the Lender. Pledgor also represented and warranted to Lender at the time of that pledge and delivery that it had the corporate and legal power and authority to do so (Docket No. 24 at Exhibit B (Pledge Agreement ¶3(b)).

If Pledgor is again claiming that it should still be permitted to evade its contractual promise and representations because, ab initio, the pledge made by Pledgor was improper – the Pledgor made a similar argument in its Motion to Dismiss - and the blank certificate delivered to Lender was invalid under Section 11 of the Operating Agreement, this amounts to a concession that the Pledgor successfully defrauded the Lender when the pledge was originally given. As Lender explained in its opposition to the Motion to Dismiss (and supported with case law), Pledgor cannot seriously expect this Court of equity to allow Pledgor to benefit from its own fraudulent misconduct. See, e.g., *McConnell v. Commonwealth Pictures Corp*., 7 N.Y.2d 465, 469, 166 N.E.2d 494, 498, 199 N.Y.S.2d 483, 486 (1960) ("'No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes." The maxim *ex turpi causa non oritur actio* would likewise correctly prevent the Court from endorsing such an outcome. *In re Fairfield Sentry Limited*, 596 B.R. 275, 297 (Bankr. S.D.N.Y. 2018) (Over 200 years ago, Lord Mansfield wrote that '[n]o court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act.'") (quoting *Holman v. Johnson*, (1775) 1 Cowp 341, 343)).

In another extension of its baseless argument about the alleged invalidity of the pledge and its exercise by the Lender, Pledgor also contends that Lender "violated the automatic stay to improve its position on the eve of oral argument." (Motion at 14.) This argument is based on a deliberate mischaracterization of the events it purports to be based on. Citing merely comments made by Lender's counsel at oral argument, Pledgor claims that *Lender* took certain steps (including amending the Debtor's Operating Agreement to eliminate Section 5 of and to replace it with a new provision identifying Rider Lender as the sole member, and therefore manager, of the Debtor. (*Id.* at 14-15 (citing Transcript of Argument held on August 30, 2021 at 23:4-11).) These actions, however, were not taken by the Lender. They were taken by the Debtor-In-Possession as directed by its sole member, Rider Lender and, as such, the actions are not subject to the automatic stay, which protects the Debtor and its property from acts of creditors of the Debtor. The entire automatic stay argument is a complete sideshow.

Although the Court need not consider the argument any further, the actions of which Pledgor complains were not taken "to improve [Lender's] position." The membership interests were conditionally assigned in 2019, long before the bankruptcy filing. The Pledgor likewise delivered the blank certificate to Lender at the same time, well before the petition was ever filed. The actions taken by the Debtor — not the Lender — of which Pledgor complains were not necessary to "improve" the Lender's position. The Lender's position was already clear, well documented, and fully compliant with the governing documents and applicable law. The actions were appropriate corporate ratifications of actions taken pre-petition by the sole member of the Debtor solely to remove all doubt, that Pledgor unsuccessfully sought to raise in its Motion to Dismiss.

For all of these reasons, Section 11 of the Debtor's Operating Agreement would not have warranted a result any different from that reached by the Court in the Order even if Pledgor had timely raised its arguments with respect that section when the Court first adjudicated the Motion to Dismiss. The Motion should thus be denied.

## **CONCLUSION**

For these reasons, and those set forth in the Lender's Response in which Debtor respectfully joins, Debtor submits that the Court deny the Motion in its entirety and the Court should grant such other relief as it deems just and proper.

Dated: New York, New York
      September 28, 2021

                    ROBINSON BROG LEINWAND
                    GREENE GENOVESE & GLUCK
                    P.C.

                    By: /s/ Fred B. Ringel, Esq.
                           William A. Rome, Esq.
                           Steve B. Eichel, Esq.
                           875 Third Avenue
                           New York, New York 10022
                           (212) 603-6300

                    *Attorneys for Debtor and Debtor-in-Possession*