**OFFIT KURMAN, P.A.**
Jason A. Nagi
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900
Email: Jason.nagi@offitkurman.com
                and
Joyce A. Kuhns, Esq. (pro hac)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
Tel (410) 209-6463
Email: Jkuhns@offitkurman.com

*Attorneys for 286 Rider Ave Development LLC,*
*Toby Moskovits and Yechial Michael Lichtenstein*


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

286 Rider Ave Acquisition LLC,

                Debtor.
-----------------------------------------------------------X

Chapter 11

Case No.  21-11298-lgb


**NOTICE OF TELEPHONIC HEARING ON MOTION OF 286 RIDER AVE
DEVELOPMENT LLC, TOBY MOSKOVITS AND YECHIAL MICHAEL
LICHTENSTEIN TO DISMISS BANKRUPTCY CASE PURSUANT TO
11 U.S.C. § 305 OR § 1112 BASED ON NEW EVIDENCE**


**PLEASE TAKE NOTICE** that a telephonic hearing on the Motion of 286 Rider Ave

Development LLC to Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 305 or § 1112 Based on

New Evidence (the "Motion") will be held on **November 16, 2021 at 10:00 a.m. (ET)** before the

Honorable Lisa G. Beckerman, United States Bankruptcy Judge, or as soon thereafter as counsel

may be heard, at the United States Bankruptcy Court for the Southern District of New York, One

Bowling Green, Courtroom 601, New York, NY 10004.

**PLEASE TAKE FURTHER NOTICE** that pursuant to General Order M-543, dated March 20, 2020 (Morris, C.J.) ("General Order M-543"), the Hearing will be conducted telephonically. Parties wishing to appear at, or attend, the Hearing must refer to and comply with the Bankruptcy Court's guidelines for telephonic appearances1 and make arrangements with Court Solutions LLC by telephone at (917) 746-7476.

**PLEASE TAKE FURTHER NOTICE** the Hearing may be continued or adjourned from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or at a later hearing.

**PLEASE TAKE FURTHER NOTICE** that any objections, or other responses shall be filed and served no later than **November 9, 2021 at 4:00 p.m. (ET)**, must be made in writing, state with particularity the grounds therefore, shall conform to the United States Bankruptcy Rules and the Local Rules of the Bankruptcy Court, include in the upper right hand corner of the caption, the ECF docket number to which the filing relates, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (with an electronic copy to be e-mailed to Chambers of Lisa G. Beckerman at beckerman.chambers@nysb.uscourts.gov. Should you be unable to e-mail a document due to its size, you should contact Chambers by e-mail), and served via e-mail upon Offit Kurman, P.A., Counsel for 286 Rider Ave Development LLC, to Jason A. Nagi, Esq. at Jason.nagi@offitkurman.com and Joyce A. Kuhns, Esq. at Jkuhns@offitkurman.com together with proof of service thereof.

ii

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the

Hearing telephonically so long as General Order M-543 is in effect or unless otherwise ordered

by the Bankruptcy Court. Failure to appear may result in relief being granted as requested.

**PLEASE TAKE FURTHER NOTICE** that unless responses are received by that time,

the relief may be granted as requested.


Dated:  New York, New York
        November 2, 2021                          OFFIT KURMAN, P.A.


                                         By:/s/ Jason A. Nagi
                                            Jason A. Nagi
                                            590 Madison Avenue
                                            New York, New York 10022
                                            (212) 545-1900
                                            Jason.nagi@offitkurman.com

                                            and

                                            Joyce A. Kuhns, Esq. (pro hac)
                                            300 East Lombard Street, Suite 2010
                                            Baltimore, Maryland 21202
                                            (410) 209-6463
                                            Jkuhns@offitkurman.com

                                            *Attorneys for 286 Rider Ave*
                                            *Development LLC, Toby Moskovits and*
                                            *Yechial Michael Lichtenstein*

iii

**OFFIT KURMAN, P.A.**
Jason A. Nagi
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900
Email: Jason.nagi@offitkurman.com
         and
Joyce A. Kuhns, Esq. (pro hac pending)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
Tel (410) 209-6463
Email: Jkuhns@offitkurman.com

*Attorneys for 286 Rider Ave Development LLC,*
*Toby Moskovits and Yechial Michael Lichtenstein*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

286 Rider Ave Acquisition LLC,

                            Debtor.
-----------------------------------------------------------X

Chapter 11

Case No.  21-11298-lgb

**MOTION OF 286 RIDER AVE DEVELOPMENT LLC, TOBY MOSKOVITS AND
YECHIAL MICHEAL LICHTENSTEIN TO DISMISS BANKRUPTCY CASE
PURSUANT TO 11 U.S.C. § 305 OR § 1112 BASED ON NEW EVIDENCE**

286 Rider Ave Development LLC ("**Development**"), as 100% owner of the membership

interests of the debtor, 286 Rider Ave Acquisition LLC (the "**Acquisition**" or "**Nominal**

**Debtor**"), Toby Moskovits and Yechial Michael Lichtenstein, as indirect owners of the Nominal

Debtor and Co-Debtors/Guarantors ("**Co-Debtors/Guarantors**"), by undersigned counsel,

hereby files this Motion to Dismiss Bankruptcy Case Pursuant to 11 U.S.C. § 305 or § 1112

Based on New Evidence  (the "**Motion**") with proposed form of Order granting the Motion

attached hereto as **Exhibit** ("**Ex.**") **"A,"** and, in support, states:

## I.    PRELIMINARY STATEMENT

1.      As Movants will show through the undisputed record in this case, Lender

fraudulently caused its alter ego, the Nominal Debtor, to file a Chapter 11 case for Lender's

exclusive benefit and at significant cost to the detriment of other creditors and parties-in-interest,

all due to Lender's attempt to shield itself from scrutiny for its improper and ineffective transfer

of membership interests in Acquisition to itself, in violation of the New York Uniform

Commercial Code and applicable law.

## II.    UNDISPUTED FACTS

2.      Development owns 100% of the membership interests in the Nominal Debtor (the

"**Membership Interests**").

3.      On or about September 19, 2019, Acquisition received a loan in the principal

amount of $8,000,000.00 (the "**Loan**") from Be-Aviv 286 Rider LLC ("**Lender**"), secured by a

Mortgage and Security Agreement of even date pursuant to which Acquisition granted Lender a

mortgage on certain real property located at 286 Rider Avenue, Bronx, New York ("**Property**").

4.      As additional collateral for the Loan, Development executed and delivered to

Lender a pledge of the Membership Interests in Acquisition ("**Member Interests**") pursuant to a

Membership Interest Pledge Agreement (the "**Pledge Agreement**") and a corresponding

Assignment of those Membership Interests, both dated September 19, 2019. *See* Dkt. No. 24,

Exs. B and G.

5.      By letter dated March 2, 2021, Lender notified Acquisition c/o Toby Moskovits,

with a copy to Michael Lichtenstein, of a purported default under the Loan documents and

2

demanded immediate payment of all amounts then due (the "**First Default Notice**"). *See* Dkt. No. 24, Ex. J.

6.      By letter dated April 27, 2021, Lender notified Acquisition c/o Toby Moskovits that Acquisition was in purported continuing default under the Loan documents and that Lender was exercising its right to assign, transfer, and register all Member Interests into the name of Lender.  Lender further instructed Acquisition, as borrower under the Loan, to register the Member Interests in the Lender's name in its books and records. *See* Dkt. No. 24, Ex. K.

7.      On April 27, 2021, Lender filled in its own name on the Assignment of Member Interests. *See* Dkt. No. 24, Ex. G. Subsequently, Lender entered into an Assignment and Assumption Agreement "as of" June 14, 2021 purporting to assign the Member Interests to its affiliate, 286 Rider Ave Lender LLC. *See* Dkt. No. 24, Ex. L.

8.      On July 1, 2021, 286 Rider Ave Lender LLC engaged Lee E. Buchwald as a manager of Acquisition and authorized him to file a Chapter 11 case as soon as practical. *See* Dkt No. 24, Ex. P.

9.      On June 14, 2021, Lender appointed 286 Rider Ave Lender LLC as managing member of Acquisition. *See* Dkt No. 24, Ex. P.

10.      On July 14, 2021, counsel for Lender sent a letter to Acquisition and Development, both care of Toby Moskovits, advising that Lender had exercised its rights under the Loan documents and the Pledge Agreement to assign, transfer and register all Member Interests in Acquisition into the name of Lender, as if Lender was the absolute owner thereof. *See* Dkt. No. 24, Ex. M.

11.    On July 15, 2021 ("**Petition Date**"), the Lender, on behalf of the Nominal Debtor, caused Acquisition to file this bankruptcy case (the "**Bankruptcy Case**").

12.    More than three months after filing the Bankruptcy Case, the Nominal Debtor through its manager, filed Schedules of Assets and Liabilities ("Schedules") and Statement of Financial Affairs (SOFA)  under penalties of perjury. *See* Dkt. No. 97.

13.    At Schedule H of the Schedules, the Nominal Debtor listed Toby Moskovits and Michael Lichtenstein, each as a Co-Debtor/Guarantor on Loan obligations to Lender.

13.    In the SOFA at Part 6, no. 11.1, the Nominal Debtor disclosed that all Pre-Petition Date fees to Nominal Debtor's counsel had been paid for by Lender. This arrangement was further confirmed in "Disclosure of Compensation of Attorney for Debtor" attached to the SOFA and signed by Nominal Debtor's counsel.

14.    At Part 13, no. 28 of the SOFA, Nominal Debtor stated that 286 Rider Ave Lender LLC held 100% of the Member Interests in Acquisition.

15.    In SOFA Part 13, no. 29, Nominal Debtor stated that Lender held the Member Interests in Acquisition from April 27, 2021 through June 14, 2021.

16.    In the "List of Equity Security Holders" submitted along with the SOFA, the manager of the Nominal Debtor listed 286 Rider Lender LLC as holding 100% of the Member Interests in Acquisition.

17.    The Schedules and SOFA disclose that the Nominal Debtor's primary asset is the non-income producing Property.

18.    The Schedules further disclose that, other than obligations to Lender, there are four creditors holding $143,100.00 in unsecured claims and a judgment lien creditor holding a

4

claim in the amount of $1,178,725.00.

19.     The Monthly Operating Reports confirm that the Nominal Debtor has no income and little to no cash on hand. *See* Dkt. Nos. 22, 51, and 77.

20.     Between October 11 and 22, 2021, Development and the Co-Debtors/Guarantors and their counsel, provided notice to the Nominal Debtor and the Lender that they have the requisite funding to pay off the Loan and requested a pay off letter.  (Declaration of Jason A. Nagi, dated November 2, 2021 (the "**Nagi Decl.**") **Exhibits 1 – 4**) Bankruptcy counsel for the Lender and the Nominal Debtor responded in writing that there was no right for a payoff.  (Nagi Decl., **Exhibit 5**.)  Lender continues to refuse to issue a pay off letter which only unnecessarily delays an ultimate closing.

### III.    JURISDICTION AND VENUE

21.     This Court has jurisdiction of this Bankruptcy Case and this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431) dated January 31, 2012 (Preska, C.J.). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). The statutory predicates for the relief requested in this Motion are sections 305 and 1112 of title 11 of the United States Code ("**Bankruptcy Code**").

### IV.    RELIEF REQUESTED

22.     By this Motion, Movants seek dismissal of the Bankruptcy Case pursuant to 11 U.S.C. § 305 because: (i) the Bankruptcy Case was filed fraudulently by the Lender "gaming" the bankruptcy system as discussed below; (ii) Lender blatantly and repeatedly violated the strict

foreclosure requirements mandated by UCC Section 9-620 as described below; (iii) Lender repeatedly ignored the payoff demands of Development and the Co-Debtors/Guarantors, and as a result of all of the above, the interests of creditors and the Nominal Debtor would be better served by dismissal, or, alternatively, because cause exists for such dismissal under 11 U.S.C. § 1112(b).

## V.   <u>MOTION TO DISMISS BANKRUPTCY CASE</u>

**A.    The Court Should Abstain From Hearing the Bankruptcy Case, and Dismiss It Under 11 U.S.C. § 305 .**

23.    Section 305 of the Bankruptcy Code Provides that a court may dismiss a bankruptcy case if, among other things, the interests of creditors and the debtor would be betters served by such dismissal. *See* 11 U.S.C. §§ 305(a)(1).

24.    Courts have made clear that "gaming" or manipulating the bankruptcy system, as Lender did here, is sufficient cause for dismissal under section 305(a)(1). *See In re Spade*, 258 B.R. 221 (Bankr. D. Colo. 2001) (dismissing involuntary case in which creditor admitted that the bankruptcy petition was primarily used as a strategy to obtain leverage over debtor in another proceeding). In *Monitor Single Lift I Ltd.,* 381 B.R. 455, 464 (Bankr. S.D.N.Y. 2008), the Court concluded that "[t]he decision to abstain under § 305(a)(1) should be made on a case-by-case basis" to "consider the circumstances…in determining whether there is cause for dismissal ..."

25.    The *Monitor* Court applied a seven-factor test to determine whether to grant relief under § 305(a)(1): (1) the economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution;

(4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all int rests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

26.    In this Bankruptcy Case, all relevant factors weigh in favor of dismissal. First, the dispute between Lender and Co-Debtors/Guarantors under the Loan precipitated the bankruptcy filing. Lender's attempt to gain leverage over and fraudulently strip the Co-Debtors/Guarantors of their indirect equity interests through 286 Rider Development LLC in Acquisition is what caused Lender to instigate the Bankruptcy Case, which is now creating substantial and unnecessary administrative expenses to the detriment of non-Lender creditors.  The Monthly Operating Reports evidence that the Nominal Debtor generates no income and has no assets to fund this Bankruptcy Case. Consistent with its use of the Bankruptcy Case to advance Lender's own interest, as Lender's alter ego, the Nominal Debtor has now filed a Motion for Debtor in Possession Financing ("**DIP Financing Motion**"), whereby the Lender would be given a priming lien on the Property, among other protections, for advancing at closing on any sale of the Property up to $500,000 to cover administrative expenses Lender has caused the Nominal Debtor to incur while charging 12% interest.  *See* Dkt. No. 101. The DIP Financing Motion is being pursued by the Lender for its own benefit, while ignoring repeated payoff requests and demands from Development and Co-Debtors/Guarantors since the beginning of October to move towards a payoff of the Loan. Second, Lender and the other creditors may avail themselves as some have

7

already done of the state court forum to protect their interests without the burden of

administrative expenses that solely benefit the Lender, and such forum would be more efficient

for a payoff of the Loan by Development and Co-Debtors/Guarantors as has been repeatedly

requested without incurring the added costs of a bankruptcy process. Third, a federal court is not

central to any issue in this Bankruptcy Case but is merely creating unnecessary administrative

costs born by all non-Lender creditors without any apparent benefit. Fourth, there is an

alternative means of achieving an equitable distribution of assets in state court, especially since

Development and Co-Debtors/Guarantors have offered and demanded to pay off the Loan. Fifth,

as noted, the bankruptcy forum is expensive and non-Lender creditors are bearing the burden

whereas in state court they could seek less expensive alternatives such as mediation, or a payoff,

which Development and Co-Debtors/Guarantors have repeatedly requested since the beginning

of October. The sixth factor is inapplicable as there are no state court insolvency proceedings

pending, but there is no doubt given the administrative costs and the proposed DIP Financing,

that the Bankruptcy Case will be unnecessarily costly to non-Lender creditors for the Lender's

sole economic benefit. In short, as will be more fully explained in Section V.B. below, Lender

has caused the Nominal Debtor, its alter ego, to fraudulently pursue the Bankruptcy Case for its

exclusive benefit and to shield Lender from an examination into its improper attempt to control

Acquisition's equity interests.

**B.      The Court Should Dismiss the Bankruptcy Case Under 11 U.S.C. § 1112 as Fraudulent.**

        27.      Section 1112 of the Bankruptcy Code governs the conversion or dismissal of a

case under chapter 11. It states, in part, that

> the court shall convert a case under this chapter to a case under
> chapter 7 or dismiss a case under this chapter, whichever is in the
> best interest of the creditors and the estate, for cause unless the court
> determines that the appointment under section 1104(a) of a trustee
> or examiner is in the best interests of creditors and the estate.

*See* 11 U.S.C. § 1112(b).

28.     Although, subsection (b)(4) sets forth examples of "cause" for relief

under § 1112(b), these factors are "'not exhaustive' and courts are free to consider other[s]...'"

*See In re BH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010), citing

*In re Ameribuild Const. Mgmt., Inc.*, 399 B.R. 129, 131 n.3 (Bankr. S.D.N.Y. 2009).

29.     Prior to and after the Bankrupty Case's inception, Lender knowingly and

improperly acted as both Lender and Debtor/borrower under the Loan, using Acquisition as its

alter ego solely to advance Lender's interest.

**(i)     The Pledge Agreement Explicitly Limits Relief to a Private UCC Sale**

30.     Assuming *arguendo* a pre-petition default occurred under the Loan, the Pledge

Agreement is explicit in allowing a private sale only of Member Interests on execution.  The

Pledge Agreement provides in pertinent part:

SECTION 5.   Rights; Distributions.

> (a)        ... If an Event of Default shall occur and be continuing, then all
> Membership Interests at Lender's option, may be registered in the name of Lender
> or its nominee (if not already so registered), and Lender or its nominee may
> thereafter exercise (i) all voting and all equity, membership and other rights
> pertaining to the Membership Interests and (ii) any and all rights of conversion,
> exchange, and subscription and any other rights, privileges or options pertaining
> to such Membership Interests as if it were the absolute owner thereof...

SECTION 7.   Private Sales.

> (a)        Pledgor recognizes that Lender may be unable to effect a public
> sale of any or all of the Membership Interests... Pledgor acknowledges and agrees

9

that any such private sale may result in prices and other terms less favorable to Lender than if such sale were a public sale and, notwithstanding such circumstances, agrees that any such private sale shall not be deemed to have been made in a commercially unreasonable manner solely by virtue of being a private sale...

(b)      Pledgor further shall use its commercially reasonable efforts to do or cause to be done all such other acts as may be reasonably necessary to make any sale or sales of all or any portion of the Membership Interests pursuant to this Section 7 valid and binding and in compliance with any and all other requirements of applicable law....

(c)      Lender shall now incur any liability as a result of the sale of any Collateral, or any part thereof, at any private sale conducted in a commercially reasonable manner, it being agreed that some or all of the Collateral is or may be of one or more types that threaten to decline speedily in a value and that are not customarily sold in a recognized market...

(d)      The Code states that Lender is able to purchase the Membership Interests only if they are sold at a public sale... Pursuant to the Code, Pledgor specifically agrees (x) that it shall not raise any objections to Lender's purchase of the Membership Interests (through bidding on the obligations or otherwise) and (y) that a foreclosure sale conducted in conformity with the principles set forth in the No-Action Letters (i) shall be considered to be a "public" sale for purposes of the Code... shall be considered to be commercially reasonable notwithstanding that Lender purchases the Membership Interests in such a sale.

(e)      Pledgor agrees that Lender shall not have any general duty or obligation to make any effort to obtain or pay any particular price for any Membership Interests sold by Lender pursuant to this Agreement... Pledgor hereby agrees that any foreclosure sale conducted in accordance with the following provisions shall be considered a commercially reasonable sale and hereby irrevocably waives any right to contest the commercial reasonableness of any such sale:

　　　　　(i)      Lender conducts the foreclosure sale in the State of New York;

　　　　　(ii)      The foreclosure sale is conducted in accordance with the laws of the State of New York;

　　　　　(iii)      Not more than ten (10) business days before; and not less than five (5) business days in advance of the foreclosure sale, Lender

10

notifies Pledgor at the address set forth herein of the time and place of such foreclosure sale;

(iv)    The foreclosure sale is conducted by an auctioneer licensed in the State of New York and is conducted in front of the New York Supreme Court...

(v)    The notice of the date, time and location of the foreclosure sale is published in the New York Times or Wall Street Journal...

(vi)    Lender sends notification of the foreclosure sale to all secured parties identified as a result of a search of the UCC financings statements in the filing offices located in the States of Delaware and New York conducted not later than twenty (20) days and not earlier than thirty (30) days before such notification date.

(emphasis added)

**(ii)    Having Declined to Proceed by Private Sale, Lender Attempted a Strict Foreclosure**

31.    Despite the Pledge Agreement only providing for private sale as a means of foreclosure, Lender proceeded to "foreclose" on the Member Interests, not by public or private sale, but by executing an assignment to itself and recertificating the Member Interests in its own name. *See* Dkt. No. 24, Ex. B and G.  Lender, therefore, purported to foreclose via "strict foreclosure."

32.    "Strict Foreclosure" is "a procedure by which the secured party acquires the debtor's interest in the collateral without the need for a sale or other disposition under [Uniform Commercial Code] Section 9-610 in partial or full satisfaction of its debt." *See e.g.* Kansas statutes Annotated 2030 Supp. 844-9-620, Comment 2. Under New York's version of the Uniform Commercial Code ("**UCC**"), the remedy of strict foreclosure is only available if the debtor consents to strict foreclosure after it has defaulted. *In re CBGB Holdings, LLC*, 439 B.R. 551, 555 (Bankr. S.D.N.Y. 2010). Thus, a debtor cannot consent to strict foreclosure at the time

11

it enters into the debtor and security instrument. *Id*. Section 9-620 of the UCC governs strict foreclosure. *Id*; s*ee generally*, 4 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 34-10 (5th ed. 2002).

**(iii)**      **Lender Failed to Comply With the UCC's Strict Foreclosure Requirements**

33.      UCC Section 9-611, entitled "Notification Before Disposition of Collateral," mandates that a secured party must send a debtor a notice before disposition of its collateral. UCC Section 9-612 states that in a non-consumer transaction "a notice of disposition of collateral sent after default and 10 days or more before the earliest time of disposition set forth in the notification is sent in a reasonable time..."

34.      Lender, however, failed to follow these clear advanced notification pre-requisites required to conduct a strict foreclosure under the UCC.  First, Lender sent a default and reservation of rights letter to Acquisition, on March 2, 2021.  Second, Lender sent a letter dated April 27, 2021 to Acquisition and Development that Lender was exercising its right to assign, transfer and register Member Interests of Acquisition into the name of Lender "as if Lender was the absolute owner thereof."  Lender, however, never provided Acquisition and Development the requisite advanced notice of the disposition of the Member Interests.  Instead, Lender exercised foreclosure by filling in its own name in the assignment of Member Interests on April 27, 2021, in violation of UCC Section 9-612(b). *See* Dkt. No. 24, Exs. B and G.

12

35.     In further disregard of the advance notification requirements of strict foreclosure

requirements of UCC Section 9-613(1)(D), Lender failed to ever advise Acquisition of its right

to an accounting of any indebtedness.[1]

36.     UCC Section 9-620 requires a debtor to consent to strict foreclosure in full or

partial satisfaction of a debt. In the case of partial strict foreclosure, a debtor must expressly

consent to the terms of the acceptance in a record authenticated after default. UCC 9-620(c)(1).

Alternatively, after default, a secured party can send a proposal to a debtor "that is unconditional

or subject only to a condition that collateral not in the possession of the secured party be

preserved or maintained," UCC Section 9-620(c)(2)(A), and "proposes to accept collateral in full

satisfaction of the obligation it secures." UCC Section 9-620(c)(2)(B). If the debtor does not

accept the proposal within twenty days, it is deemed accepted. UCC Section 9-620(c)(2)(C).

37.     Lender is a sophisticated party and opted for the application of New York law to

the Loan documents. *See* Dkt. No. 24, Exs. B-E. Lender, through its counsel, is charged with

knowing the mandated requirements for notification by a secured party to a debtor under UCC

Section 9-620.

38.     Nonetheless, Lender blatantly and repeatedly violated the strict foreclosure

requirements mandated by UCC Section 9-620 in an attempt to transfer the equity interests in

Acquisition to itself on April 27, 2021 and thereby take control of its borrower and prevent any

investigation into its prior conduct or the extent of the debt owed under the Loan. The purported

---

[1]     Despite repeated requests for a payoff or accounting of indebtedness under the Loan, Lender and Nominal
Debtor have failed and refused to provide either to the Co-Debtors/Guarantors, further demonstrating that the
Nominal Debtor/borrower under the Loan remains in control of the Lender.

transfer of Member Interest violated the UCC and is ineffective. Development remains the holder of 100% of the Member Interests in Acquisition.

39.      Cognizant that it could cause a bankruptcy filing if it held itself out as holding the equity but could not pursue its status as a secured creditor entitled to principal, interest, and fees, Lender assigned its purported Member Interests in Acquisition to its affiliate, 286 Rider Ave Lender LLC, prior to the Petition Date.

40.      In its Schedules and SOFA filed under penalties of perjury more than three months after the Petition Date, the Nominal Debtor, through its manager, continues to misrepresent that the equity interests disclosed in the Schedules and SOFA are held by the Lender affiliate, and not by Development.

41.      Thus, from prior to and after the Petition Date, Lender through its alter ego, the Nominal Debtor, has run the case for Lender's exclusive benefit and not in the interests of legitimate creditors, repeatedly representing that Lender's affiliate owns the equity interest, which is false, causing substantial and unnecessary administrative expenses to accrue to the prejudice and detriment of legitimate creditors and parties-in-interest.

42.      Movants therefore maintain that more than sufficient "cause" exists to dismiss this Bankruptcy Case, the filing of which was predicated on a fraudulent scheme.

### IV.    <u>CONCLUSION</u>

WHEREFORE, for all the foregoing reasons, 286 Rider Ave Development LLC, Toby Moskovits and Yechial Michael Lichtenstein respectfully request that the Court enter an order: (i) dismissing this Bankruptcy Case under 11 U.S.C. § 305; or (ii) dismissing this Bankruptcy Case under 11 U.S.C. § 1112; and (iii) granting such other relief as the Court deems just.

14

## V.    <u>NO SEPARATE MEMORANDUM OF LAW</u>

Movant relies on this Motion and the authorities cited therein in lieu of filing a separate

Memorandum of Law.

Dated: New York, New York
      November 2, 2021

OFFIT KURMAN, P.A.

By: */s/ Jason A. Nagi*
    Jason A. Nagi
    590 Madison Avenue
    New York, New York 10022
    (212) 545-1900

    and

    Joyce A. Kuhns, Esq. (pro hac)
    300 East Lombard Street, Suite 2010
    Baltimore, Maryland 21202
    (410) 209-6463
    Jkuhns@offitkurman.com

    *Attorneys for 286 Rider Ave*
    *Development LLC, Toby Moskovits and*
    *Yechial Michael Lichtenstein*

15

# Exhibit A

# "Proposed Order"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

286 Rider Ave Acquisition LLC,

                    Debtor.
-----------------------------------------------------------X

Chapter 11

Case No.  21-11298-lgb

## ORDER DISMISSING BANKRUPTCY CASE PURSUANT TO 11 U.S.C. § 305 OR § 1112 BASED ON NEW EVIDENCE

Upon the Motion of 286 Rider, Toby Moskovits and Yechial Michael Lichtenstein to Dismiss the Bankruptcy Case Pursuant to 11 U.S.C. § 305 or § 1112 Based on New Evidence (the "**Motion**")[1]; for entry of an order, pursuant to sections 305 and 1112(b) of the Bankruptcy Code and Bankruptcy Rule 1017, dismissing this Chapter 11 case and granting related relief; and it appearing that this Court has jurisdiction to decide this matter pursuant to 28 U.S.C. §§ 157(a) - (b) and 1334(b) as a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of these case and the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been given; and any objections to the requested relief at the hearing having been heard and overruled; and upon the record of the hearing held by the Court on the Motion on November 16, 2021 (the "**Hearing**"); and, after deliberation, the Court having found and concluded that Movants have established sufficient cause for the dismissal of this Chapter 11 case in the best interest of creditors and the estate; therefore, it is hereby

     **ORDERED:**

     1.      The Motion is GRANTED as set forth herein.

---

[1]     Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

2.        The Debtor's Chapter 11 case is dismissed pursuant to Sections 1112(b) and/or

Section 305 of the Bankruptcy Code.

3.        The retention of all professionals retained by the estate under section 327 of the

Bankruptcy Code or otherwise, is hereby terminated.

4.        The Debtor shall within ten (10) business days of the entry of this order (i) pay to

the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930 and any applicable

interest pursuant to 31 U.S.C. § 3717 and (ii) provide to the U.S. Trustee a declaration disclosing

all disbursements made by the Debtor during the calendar quarter in which this Order is entered.

5.        The Debtor is authorized and directed to execute and deliver all instruments and

documents and take such other actions as may be necessary or appropriate to implement and

effectuate the transactions contemplated by this Order.

6.         The terms and conditions of this Order shall be immediately effective and

enforceable upon entry of this Order.

7.        The Court retains jurisdiction with respect to all matters arising from or relating to

the interpretation, implementation and/or enforcement of this Order.

8.        To the extent applicable, the 14-day stay to effectiveness of this Order provided

by Bankruptcy Rule 6004(h) is waived and this Order shall be effective and enforceable

immediately upon entry.

Dated: _____, 2021                    _____
                                                    The Honorable Lisa G. Beckerman,
                                                    United States Bankruptcy Judge

2