Hearing Date & Time:  [_____] at [_____] (Eastern Time)
Objection Deadline:  [_____] at [_____] (Eastern Time)

MAYER BROWN LLP
Douglas Spelfogel
Leah Eisenberg
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) 506-1910

*Special Counsel to 286 Rider Ave Development LLC*

OFFIT KURMAN, P.A.
Jason A. Nagi
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900

and

Joyce A. Kuhns, Esq. (Admitted *Pro Hac Vice*)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
Tel (410) 209-6463

*Attorneys for 286 Rider Ave Development LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re:* | **Chapter 11** |
| **286 Rider Ave Acquisition LLC** | **Case No. 21-11298 -(LGB)** |
| **Debtor.** | |

**NOTICE OF TELEPHONIC HEARING ON**
**MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS**
**105(a), 363, 364, 305(a), 349(b), AND 1112(b) OF THE BANKRUPTCY**
**CODE AUTHORIZING PAYOFF OF LENDER THROUGH EXIT**
**REFINANCING, CLAIMS PROCEDURES, SUBSEQUENT DISMISSAL**
**OF THIS BANKRUPTCY CASE, AND RELATED RELIEF**

**PLEASE TAKE NOTICE** that a telephonic hearing on the enclosed Motion for Entry of

An Order Pursuant to Sections 105(a), 363, 364, 305(a), 349(b), and 1112(b) of the Bankruptcy

Code Authorizing Payoff of Lender Through Exit Refinancing, Claims Procedures, Subsequent

Dismissal of This Bankruptcy Case, and Related Relief will be held on **[_____], 2021 at [_____] a.m. (ET)** before the Honorable Lisa G. Beckerman, United States Bankruptcy Judge, or as soon thereafter as counsel may be heard, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom 601, New York, NY 10004.

**PLEASE TAKE FURTHER NOTICE** that pursuant to General Order M-543, dated March 20, 2020 (Morris, C.J.) ("<u>General Order M-543</u>"), the Hearing will be conducted telephonically. Parties wishing to appear at, or attend, the Hearing must refer to and comply with the Bankruptcy Court's guidelines for telephonic appearances[1] and make arrangements with Court Solutions LLC by telephone at (917) 746-7476.

**PLEASE TAKE FURTHER NOTICE** the Hearing may be continued or adjourned from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or at a later hearing.

**PLEASE TAKE FURTHER NOTICE** that any objections, or other responses shall be filed and served no later than **[_____], 2021 at 4:00 p.m. (ET),** must be made in writing, state with particularity the grounds therefore, shall conform to the United States Bankruptcy Rules and the Local Rules of the Bankruptcy Court, include in the upper right hand corner of the caption, the ECF docket number to which the filing relates, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (with an electronic copy to be e-mailed to Chambers of Lisa G. Beckerman at <u>beckerman.chambers@nysb.uscourts.gov</u>.  Should you be unable to e-mail a document due to its size, you should contact Chambers by e-mail), and served via e-mail upon Mayer Brown LLP and Offit Kurman, P.A., as special counsel and counsel to 286

---

[1] The Bankruptcy Court's procedure for telephonic appearances is available at:
<u>http://www.nysb.uscourts.gov/general-orders-and-guidance-created-covid-19</u>

Rider Ave Development LLC, to Douglas Spelfogel, Leah Eisenberg, Jason A. Nagi, and Joyce A. Kuhns, at dspelfogel@mayerbrown.com, leisenberg@mayerbrown.com, jason.nagi@offitkurman.com, and jkuhns@offitkurman.com, together with proof of service thereof.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing **telephonically** so long as General Order M-543 is in effect or unless otherwise ordered by the Bankruptcy Court. Failure to appear may result in relief being granted as requested.

**PLEASE TAKE FURTHER NOTICE** that unless responses are received by that time, the relief may be granted as requested.

Dated: November 22, 2021
         New York, New York

Respectfully submitted,

By: _/s/ Douglas Spelfogel_
Douglas Spelfogel
Leah Eisenberg
Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) 506-1910
Email: dspelfogel@mayerbrown.com
         leisenberg@mayerbrown.com

*Special Counsel to 286 Rider Ave
Development LLC*

**OFFIT KURMAN, P.A.**

Jason A. Nagi
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900
Email: jason.nagi@offitkurman.com

and

Joyce A. Kuhns, Esq. (Admitted *Pro Hac Vice*)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
Tel (410) 209-6463
Email: jkuhns@offitkurman.com

*Attorneys for 286 Rider Ave Development LLC*

**MAYER BROWN LLP**
Douglas Spelfogel
Leah Eisenberg
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) 506-1910

*Special Counsel to 286 Rider Ave Development LLC*

**OFFIT KURMAN, P.A.**
Jason A. Nagi
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900

and

Joyce A. Kuhns, Esq. (Admitted *Pro Hac Vice*)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
Tel (410) 209-6463

*Attorneys for 286 Rider Ave Development LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re:* | **Chapter 11** |
| **286 Rider Ave Acquisition LLC** | **Case No. 21-11298 (LGB)** |
| Debtor. | |

**MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS
105(a), 363, 364, 305(a), 349(b), AND 1112(b) OF THE BANKRUPTCY
CODE AUTHORIZING PAYOFF OF LENDER THROUGH EXIT
REFINANCING, CLAIMS PROCEDURES, SUBSEQUENT DISMISSAL
OF THIS BANKRUPTCY CASE, AND RELATED RELIEF**

286 Rider Ave Development LLC ("Development"), by and through its undersigned

counsel Mayer Brown LLP and Offit Kurman, P.A., hereby submits this *Motion for Entry of An*

*Order Pursuant to Sections 105(a), 363, 364, 305(a), 349(b), and 1112(b) of the Bankruptcy Code*

744913660

*Authorizing Payoff of Lender Through Exit Refinancing, Claims Procedures, Subsequent Dismissal of This Bankruptcy Case, and Related Relief* (the "Motion") and in support thereof state as follows:

## PRELIMINARY STATEMENT

1.      By this Motion, Development seeks to repay the allowed amounts due to Be-Aviv 286 Rider LLC (the "Lender"), together with all other allowed claims, in cash, and in full, as detailed more fully below.  To this end, Development, together with its principals Toby Moskovits and Michael Lichtenstein (collectively with Development, the "Borrower Parties") have arranged for exit refinancing, which, together with an equity contribution, exceeds $12 million to fund such payments, which would be distributed to creditors under the protocol proposed herein following this Court's approval of the instant Motion.  The foregoing would put an end to the continuing contested proceedings, and facilitate a quicker, less expensive, and far more equitable resolution of this bankruptcy case.

2.      In contrast, the one-sided auction sale and plan proposed by the Lender controlled Debtor, would chill and/or vitiate the value of the underlying property, worth, by the Lender's own appraisal in 2019, $12 million (Development submits the value exceeds $15 million), and would be severely prejudicial to other creditors and Development, as equity holders, resulting in a windfall to the Lender.  Such course, is not only contrary to any equitable distribution to stake holders, but the contested nature of such, would result in an unnecessary waste of time and money.

3.      Here, Development proposes putting an end to this dispute, and their approach will ensure that all allowed claims are paid in full while minimizing unnecessary costs, after which this case will be dismissed with the full recognition of Development's equity interests in the Debtor.

4.      This Court is no doubt familiar with decisions pursuant to which negotiated settlements are sought to be effectuated through a "structured dismissal" of a pending Chapter 11

case. The most notable such case is the Supreme Court's *Jevic* decision, in which the Court held

that a bankruptcy court may not "approve a structured dismissal that provides for distributions that

do not follow ordinary priority rules without the affected creditors' consent[.]" *Czyzewski v. Jevic*

*Holding Corp.*, 137 S. Ct. 973, 983 (2017). Such cases often put difficult decisions in front of the

Court, which must balance competing interests of efficiency, maximizing value to stakeholders,

reducing administrative expenses, and, perhaps most importantly, respecting the priority scheme

set forth in the Bankruptcy Code.

     5.     This is not one of those cases. Rather, this Motion sets forth an easy issue for this

Court's approval—the decision to ensure that all stakeholders are made whole rather than

permitting the Lender's self-dealing proposal to move forward. Here, Development's proposal

will achieve this result through the following multi-step process:

- First, Development proposes that this Court enforce its contractual and legal rights to pay off the debt to the Lender.

- The Borrower Parties have an executed commitment from a bonafide third party to provide in excess of $12 million as part of a capital investment and loan (the "Funding Commitments")[1] that will provide sufficient funds to satisfy any outstanding claim amount that could possibly be asserted by the Lender.

- To avoid any conceivable risk to the Lender as this process is carried out, but while still recognizing the fact that the Lender is being made whole and receiving the entire benefit of its bargain, the Lender's claim will be secured by 100% of the proceeds of the Borrower Parties' Funding Commitments up to the full amount of Lender's claim, while its interest in the Borrower Equity and Property will be released.

- Second, the Borrower Parties will contribute sufficient additional funds to ensure that any allowed administrative expenses and claims of all other creditors are paid in full up to their allowed claim. To avoid any unnecessary delays in effectuating

---

[1] As set forth herein, Development requests approval to file certain funding documentation under seal and disseminate such documentation further only pursuant to a confidentiality agreement. It should also be noted, that Development has a separate term sheet included as an exhibit to the Reply Declaration Supporting Motion to Terminate Exclusivity and Related Relief [ECF No. 158], however, the Fund Commitments provide for infusion of funds unconditionally, other than entry of a final order by the Court, satisfaction and release of the Lender's first priority lien and claims, and management rights, and execution of the applicable loan documents.

this process, Development proposes the establishment of an expedited claims evaluation and allowance process pursuant to which all valid asserted claims will be allowed and paid in full.

- Finally, given that the preceding two steps will provide a better outcome for all interested parties than the Debtor's intended approach possibly could, the Development proposes that this case is dismissed pursuant to Section 305(a) or 1112(b) of the Bankruptcy Code, with such dismissal order being "structured" under Sections 349(b) and 105(a) to protect and effectuate the other relief sought herein.  This approach recognizes the Bankruptcy Code's priority scheme and satisfies the absolute priority rule by (1) paying secured claims in full with interest, (2) paying unsecured claims in full, and (3) delivering the residual value in the Debtor to the Debtor's legitimate equityholders.

6.      This approach is in the best interests of the Debtor, the Debtor's creditors, and other interest holders.  This is also consistent with Judge Glenn's decision in *KG Winndown*, in which the court reaffirmed the use of structured dismissals to provide for the orderly payment of claims in a manner consistent with the Bankruptcy Code.  *In re KG Winndown, LLC*, 628 B.R. 739, 747 (Bankr. S.D.N.Y. 2021).

7.      In contrast, the Debtor's proposed approach—which is plainly being driven by the Lender for its own benefit—will saddle the Debtor with more debt owed to the Lender itself in advance of a needlessly accelerated (yet still costly) sale and plan process, all of which is designed to chill bidding and deliver the Debtor's real estate to the Lender.  Even if this process delivers enough money to satisfy the added costs of a plan and sale process, including the interest and expense reimbursement costs incident to Lender's unnecessary DIP financing proposal, it is unlikely to provide enough money to satisfy unsecured claims, and it surely will not provide any value to the Debtor's legitimate equityholders.

8.      Further, unlike in many similar cases, there is no need for the Court consider approval of a settlement here, as the Motion presents the best possible outcome for all interested parties, including parties that have already expressed opposition to the Lender's preferred approach.  The alternative is to permit the Lender to steer the Debtor though a process designed

4

solely to enrich the Lender at the expense of all other interested parties, and to wipe out or severely

prejudice the Debtor's creditors and equityholders.  This is particularly concerning, given the value

of the underlying property, and the devastating impact of the Lender's Approach on other creditors

and equityholders.

**JURISDICTION AND VENUE**

9.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and

1334.

10.     The statutory bases for the relief requested herein include Sections 105, 362, 363,

364, 305, 349, and 1112 of Title 11 of the United States Code.

11.     This is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court is statutorily

and constitutionally authorized to enter final orders with respect to the relief requested herein.

12.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

13.     Given the amount of motion practice undertaken in this bankruptcy case, the factual

background leading to the filing of this case has already been rehashed *ad nauseum*.  Nevertheless,

the key facts supporting the relief sought herein are set forth below.

14.     The Debtor is a limited liability company that was established by Toby Moskovits

and Michael Lichtenstein to own and develop the real estate located at 286 Rider Ave, Bronx, New

York (the "Property").  As is common in the real estate development industry, Moskovits and

Lichtenstein hold their ownership interest in the Debtor indirectly through Development.

15.     To finance the Debtor's acquisition of the Property, the Debtor and Borrower

Parties obtained a loan from the Lender in the original principal amount of $8 million (the

"Prepetition Loan").  The Prepetition Loan was secured both by a mortgage in the Property and by

a pledge of Development's equity interest in the Debtor (the "Debtor Equity").

5

16.     Following the Lender's allegation of a maturity date default on the Prepetition Loan, rather than going through the process of either a real estate foreclosure or a foreclosure of the Debtor Equity conducted under the UCC, the Lender instead claimed to exercise its rights under the pledge to control the Debtor Equity, remove the Borrower Parties' manager of the Debtor, and replace it with Buchwald Capital Advisors LLC (the "Replacement Manager").

17.     As was the Lender's plan all along, the Replacement Manager promptly caused the Debtor to file this voluntary chapter 11 case with the ultimate goal of wiping out the Debtor's creditors and equityholders.

18.     The Debtor's Motion to Approve Debtor in Possession Financing [ECF No. 101] (the "DIP Motion") makes the Lender's intentions clear. While the Court required amendments to the terms provided for under the DIP Motion, given certain overreaching provisions, the initial proposed terms are indicative of the Lender controlled proceeding.  Under the DIP Motion, first, the Debtor would borrow up to $500,000 from the Lender (as DIP Lender) not to pay the Debtor's operating expenses but primarily to pay its professionals (including the Replacement Manager). DIP Motion Ex. C.  Second, the Lender would be granted a security interest in all of the Debtor's assets, including its avoidance actions under Chapter 5 of the Bankruptcy Code, giving the Lender *de facto* control over the Debtor's potentially valuable claims against it.  DIP Motion Ex. A p. 3. Third, the Debtor would conduct an expedited sale process subject to onerous and bid-chilling milestones (at which the Lender could credit bid both the Prepetition Loan and the DIP Loan), with an auction to be completed no later than the end of 2021—now less than six weeks away. DIP Motion p. 11.

19.     Rather than allow the Lender to run roughshod over the Debtor and its other stakeholders through its contemplated value-confiscating plan, the Borrower Parties have obtained

a commitment with a third party (the "New Lender"), pursuant to which $12million will be infused, up to $1.5 million to Development which will be contributed into the Debtor as new capital and a loan of up to $10.5 million to finance the payoff of the Lender and exit from bankruptcy.[2]  The only conditions for the funding is Court approval authorizing the payoff, including the exit refinancing satisfying and releasing the Lenders' claims and liens and purported management rights in the Debtor; execution of the new loan documents, including, note, mortgage, and membership pledge in satisfactory form, which shall provide that the New Lender receive  a first priority, valid, binding, enforceable and non-avoidable and properly perfected lien and security interest and first mortgage in the underling property and a collateral pledge of the equity interests in the Debtor.  A redacted letter evidencing the Loan Commitments, together with verification of funds, is attached hereto as Exhibit C.

20.    Pursuant to the protocol discussed below, this will provide more than enough funding to pay off the allowed Prepetition Loan in full with interest, satisfy all other allowed prepetition claims against the Debtor, pay all valid administrative expense claims and UST fees in full, and, as a result of all of the foregoing, restore Development's control over the Debtor without the need for a time-consuming, expensive, and messy sale and plan process.

## ARGUMENT[3]

### A.    The Exit Refinancing Transaction Should Be Approved

21.    As the first step in their efforts to resuscitate the Debtor and preserve going-concern value, Development seeks authorization to pay off the Lender and approve the exit refinancing to

---

[2] The Loan Commitments are for funds aggregating $14 million, of which $12 million is committed to the exit herein.

[3] To the extent that any relief requested in this Motion is not squarely authorized by one of the specific provisions of the Bankruptcy Code cited herein, this Court may use its powers under Section 105(a) to fashion appropriate relief. Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

facilitate such, in the amount of up to $10.5 million from the New Lender (the "Exit Refinancing").

In addition, in connection with the Exit Refinancing, and to provide for payment in full of all

conceivable claims against the Debtor, the Borrower Parties have arranged for the contribution up

to $1.5 million of additional equity capital into the Debtor, either directly or through Development

(the "Supplemental Capital") to a total infusion of up to $12 million.

22.    To satisfy the requirements of the New Lender and provide for an orderly exit from

this bankruptcy case, the following steps would occur simultaneously (collectively, the "Exit

Refinancing Transaction"):

    a.    The New Lender will fund the Exit Refinancing, all or a portion of the proceeds of which (plus Supplemental Capital, if necessary) will go to pay the principal and contract rate, non-default interest payable to the Lender under the Prepetition Loan (and, if necessary, the DIP Loan);

    b.    Any remaining amount of the Exit Refinancing will be held in escrow pending resolution of other claims (as set forth below).  The escrow shall be established at Riverside Title Abstract (or other nationally recognized bank), and shall be subject to disbursement pursuant to further order of the Court as provided herein;

    c.    The Borrower Parties will provide the Supplemental Capital, which amounts (together with the Exit Refinancing) as necessary to cover allowed and disputed claims will be held in escrow pending resolution of such claims;

    d.    Upon payment to Lender (or, as applicable, into escrow pursuant to the process detailed below), Lender's claims and liens against the Debtor, the Property, and the Debtor Equity shall be deemed released, its rights under the underlying loan documents, including with respect to the stock pledge (including management rights), shall be released, and Development shall be authorized to execute any and all rights and powers, including, to appoint replacement manager over the Debtor, provided, however, that the Replacement Manager shall continue in place solely to implement the transactions set forth herein.

---

While Section 105(a) does not grant this Court freewheeling equitable power to do whatever its sees fit, it does give the power to grant relief not otherwise circumscribed by the Bankruptcy Code.  Development does not believe that any of the relief requested herein is contrary to either the letter or the spirit of the Bankruptcy Code.

     e.     To secure the satisfaction of whatever minimal disputed obligations remain owing to the Lender, the Lender will be granted a first priority lien (the "Replacement Lien") on the amount of the Exit Refinancing and Supplemental Capital remaining after the payment to the Lender made pursuant to subparagraph (a) hereof;

     f.     The New Lender will be granted a perfected first priority lien on the Property, senior in all respects to any and all existing lien(s) of the Lender (including as DIP Lender) that are otherwise being released and channeled pursuant to the Exit Refinancing Transaction.

23.     Section 364 of the Bankruptcy Code gives the Bankruptcy Court the power to approve post-petition financing transactions outside of the debtor's ordinary course of business, and to grant administrative expense status and lien priority to the provider of the financing. 11 U.S.C. § 364. Section 363 of the Bankruptcy Code provides that a trustee may, after notice and a hearing, enter into a transaction "other than in the ordinary course of business" involving property of the estate. See 11 U.S.C. § 363(b)(1). Section 105 of the Bankruptcy Code complements such provision by providing, in pertinent part, that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

24.     Here, Development maintains the right to repay the debt due to the Lender in full pursuant to its unwaiveable rights under Article 9 of the Uniform Commercial Code. Specifically Section 9-623 of New York's adoption of the UCC preserves the right of any debtor (such as Development), any secondary obligor, or any other secured party or lienholder to redeem collateral by tendering an amount sufficient to fulfill all obligations secured by the collateral plus reasonable expenses and attorneys' fees chargeable under UCC Section 9-615(a)(1). N.Y. U.C.C. Law § 9-623 (McKinney). This may occur at any time prior to the disposition of the collateral, contracting for disposition of the collateral, or acceptance of the collateral in satisfaction of the debt, none of which have occurred to date. *Id.* Importantly, this redemption right may not be waived in the loan documents or at any other point prior to default. *Id.* § 9-624(c).

25.     By this Motion, Development is tendering payment in full to the Lender and, accordingly, its right to redeem the collateral—its equity interests in the Debtor and, by extension, the Debtor's interest in the Property—should be enforced. *Id.* § 9-623; *see In re Tidewater Finance Company v. Moffett (In re Moffett),* 356 F.3d 518 (4th Cir. 2004) (confirming right to redeem collateral in bankruptcy at any time before the creditor disposed of it).

26.     Here, Development seeks entry of an order of the Court approving the instant relief in order to facilitate the repayment of the full allowed amounts due to the Lender, the release of the Lender's liens and stock pledge/powers, and the funding of the Exit Refinancing (and capital contribution), with Lender's liens to attach to the cash proceeds.  The foregoing is required by the New Lender to facilitate the closing and funding of the Exit Refinancing.

27.     As has been made abundantly clear in the short history of this bankruptcy case, the Lender has no interest whatsoever in the reorganization of the Debtor.  Instead, the Lender wants to liquidate the Debtor through forced sale designed to destroy any residual value that does not go to the Debtor or its other stakeholders (other than for payment of administrative expense claims and UST fees).  Rather, as discussed above, Development's approach will not only satisfy all of the Lender's allowed claims, but will satisfy all other allowed claims in full and preserve equity in the Debtor, which is worth millions of dollars.

28.     As noted above, the foregoing will also reduce costs in what surely would be a contested bankruptcy process, which the Debtor estimated for its professionals alone could cost hundreds of thousands of dollars in additional fees (not counting the costs of the Lender, and Development, all of which would unnecessarily reduce the value of the estate).  Authorizing the Exit Refinancing Transaction would preserve the value of the underlying property, provide for

10

payment in full to all creditors on account of their allowed claims, and reduce costs.  Accordingly,

such is in the best interests of the Debtor and all of its stakeholders.

29.    Even the Lender's legal rights will be unimpaired by the Exit Refinancing

Transaction, as it will be more than adequately protected by the granting of the Replacement Lien.

In connection with sale and financing transactions, a prepetition secured creditors liens can be

affected if its payment rights are adequately protected.  *See generally*, 11 U.S.C. §§ 362-364.

Adequate protection can manifest in the form of cash payments, a replacement lien, or such other

relief that results in realization of the indubitable equivalent of the affected creditor's interest in

property.  11 U.S.C. § 362; *see In re WestPoint Stevens, Inc.*, 600 F.3d 231, 257 (2d Cir. 2010)

(noting that a secured creditor is adequately protected where it obtains replacement liens on

proceeds of a transaction in same priority as original liens); *In re Dairy Mart Convenience Stores,*

*Inc.*, 351 F.3d 86, 90 (2d Cir.2003).

30.    At the time of the granting of the Replacement Lien, the vast majority of the

Lender's claims—if not the entire allowable claim—will have been paid in full with interest.

Whatever relatively minimal (disputed) claim it has remaining will be vastly oversecured secured

by the Replacement Lien, and any amount allowed will be required to be paid in full before this

bankruptcy case is dismissed.  Moreover, at all times prior to such payment in full, the Debtor,

Development, and cash securing the Replacement Lien will be subject to this Court's jurisdiction

and supervision and shall not be disbursed without further order of the Court.  This is far more

than the Bankruptcy Code requires.

## B.    The Claims Procedures Should Be Approved

31.    The approval and consummation of the Exit Refinancing Transaction set forth in

the preceding section will set the stage for the payment in full of all remaining allowed prepetition

and administrative expense claims against the Debtor, including any remaining amounts owed to the Lender.

32.     To achieve this result, Developments' proposed Refinancing and Claims Adjudication Order will establish expedited procedures for presenting, adjudicating, and paying out claims that does not disrupt the existing claims filing deadlines that have been set in this case.

33.     Among other things, the order will provide for the following procedures for paying and resolving disputes related to claims (the "Claims Procedures"):

   a.    First, all undisputed claims (including the principal and contract non-default interest amount of the Prepetition Loan and DIP Loan, if any) will be paid in full in cash.

   b.    Second, all holders of administrative expense claims (the "Administrative Claimants") will have the opportunity to present requests for payment of both accrued fees and expenses and of anticipated expenses to be incurred prior to the dismissal of this case.  As with other secured and unsecured claims, the undisputed amount of the administrative expense claims will be promptly paid in full in cash.

   c.    Third, the Debtor and Development will have a short window in which to object to the validity or amount of any claims not already paid or provided for.  Any claims not objected to within that time frame will be deemed allowed.

   d.    Fourth, holders of claims with respect to which an objection has been filed will have the opportunity to file a responsive pleading, following which the claim dispute will be presented to the Court for adjudication.  In the event that such dispute is not promptly resolved by the Court or by agreement, to preserve all of the creditors' rights while promoting the expeditious resolution of this bankruptcy case, an amount of funds reasonably necessary to satisfy the disputed amount of each such claim will remain in escrow subject to further order of this Court following dismissal.

   e.    Finally, as disputed claims are resolved, they will be promptly paid.  Any excess amounts remaining in escrow after resolution of all claims herein, shall be returned to Development.

34.    Thus, all allowed claims against the Debtor will either be paid in full prior to dismissal, or their subsequent payment by Development or the post-dismissal Debtor will be ensured, either by agreement or by court order.

35.    This proposal strikes a balance between preserving all of the creditors' legal rights and obtaining the value-enhancing benefits of this expeditious process.  Moreover, because no discharge order is being requested in connection with the structured dismissal, any potential creditors who did not receive notice of the bankruptcy case, or whose claims are otherwise unresolved the time this case is dismissed, will be unimpaired by the procedures set forth herein. And because the schedule proposed in the attached order is consistent with the existing claims filing schedule, this procedure will not require creditors to accelerate their submissions.

36.    Procedures similar to this have been approved in other bankruptcy cases in similar circumstances.  For example, in *Wickes Holdings*, the bankruptcy court approved of a structured dismissal in connection with which funds would be placed in trust for the benefit of unsecured creditors subject to post-dismissal claims resolution and payment procedures.  *In re Wickes Holdings, LLC*, No. 08-10212 (KJC) (Bankr. D. Del.) [ECF No. 1418] (structured dismissal order entered May 12, 2009); see also *In re Princeton Ski Shop, Inc.*, No. 07-26206 (Bankr. D.N.J.) [ECF No. 546] (order entered Dec. 23, 2008 authorizing payment of administrative claims and dismissing bankruptcy cases); *In re New Weathervane Retail Corp.*, No. 04-11649 (Bankr. D. Del.) [ECF No. 566] (order entered Sept. 2, 2005 authorizing structured dismissal including distributions to administrative claimants and unsecured creditors).[4]

---

[4] Copies of the cited orders are attached hereto as <u>Exhibit B</u>.

37.     Accordingly, the claims resolution procedures set forth above should be approved in connection with the approval and consummation of the Exit Refinancing Transaction and, as set forth below, the structured dismissal of this bankruptcy case.

**C.      The Dismissal Should Be Approved Because a Prompt and Orderly End to This Chapter 11 Cases Is in the Best Interests of Creditors and the Debtor's Estate**

38.     Upon the consummation of the Exit Refinancing Transaction and the payment, or provision for payment and/or escrowing, of all allowed secured, unsecured, and administrative expense claims, this case should be dismissed, whether pursuant to Section 305 or Section 1112 of the Bankruptcy Code.[5]

39.      Section 1112(b) of the Bankruptcy Code provides that a court may dismiss a Chapter 11 case "for cause." 11 U.S.C. § 1112(b).  Section 1112(b)(1) states, in relevant part, that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." *Id.*

40.     Whether "cause" exists is determined on a case-by-case basis, and the decision to dismiss a chapter 11 case rests in the sound discretion of the Court. *See In re Preferred Door Co.*, 990 F.2d 547, 549 (10th Cir. 1993) (noting that the bankruptcy court has broad discretion to dismiss a bankruptcy case for several causes, including the debtor's inability to effectuate a plan); *In re Nugelt, Inc.*, 142 B.R. 661, 665 (Bankr. D. Del. 1992) (stating that "[c]ourts have wide latitude in determining whether cause exists to convert or dismiss" a chapter 11 bankruptcy case).

---

[5] Note that the cause for dismissal specified herein differs markedly from the basis for dismissal set forth in Development's earlier motion [ECF No. 17] regarding the Debtor's corporate authority to file this bankruptcy case, which is currently on appeal.

41.     One of the enumerated bases for "cause" under Section 1112 is the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). Courts have interpreted a "'reasonable likelihood of rehabilitation' to refer to the debtor's ability to restore the viability of its business." *Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 516 (8th Cir. 2004) (citations omitted).

42.     In addition to the non-exhaustive list outlined by section 1112(b)(4) of the Bankruptcy Code, courts may also consider the "totality of the circumstances" in determining whether sufficient cause exists. *See In re SGL Carbon Corp.*, 200 F.3d 154, 160 (3d Cir. 1999) (noting that the court may consider whether other facts and circumstances qualify as "cause"); *In re Squires Motel, LLC*, 416 B.R. 45, 49 (Bankr. N.D.N.Y. 2009) (considering totality of circumstances under Section 1112(b)(4)).

43.     Once a court determines that cause exists to dismiss a chapter 11 case, the court must also evaluate whether dismissal is in the best interests of creditors and of the estate. 11 U.S.C. § 1112(b); *see In re Mazzocone*, 183 B.R. 402, 411 (Bankr. E.D. Pa. 1995).  Among the factors courts consider in this analysis are whether equality of distributions would be achieved through dismissal, whether rights would be lost if the case were dismissed, and whether dismissal would maximize the estate's value as an economic enterprise.  *See, e.g.*, *In re Ramallo Bros. Printing Inc.*, No. 14-01948, 2015 WL 3862970 (Bankr. D.P.R. Jun. 22, 2015) (citing *In re Costa Bonita Beach Resort*, 513 B.R. 184 (Bankr. D.P.R. 2014); *In re Helmers*, 361 B.R. 190, 196 (Bankr. D. Kan. 2007).

44.     Section 305(a) of the Bankruptcy Code similarly permits dismissal at any time "if the interests of creditors and the debtor would be better served by such dismissal." 11 U.S.C. § 305(a)(1). Dismissal under section 305(a) requires a showing that both the Debtor and its creditors

15

will benefit, rather than merely a weighing of the interests between the two groups. *See In re Globao Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 255 (Bankr. S.D.N.Y. 2004) (citing *In re Eastman*, 188 B.R. 621 (B.A.P. 9th Cir. 1995)).

45.     Finally, though dismissal of a bankruptcy case ordinarily reverts the Debtor's relationships with other parties to the status quo as it existed prior to the bankruptcy filing, the Court may order otherwise "for cause."  11 U.S.C. § 349(b).  Among the accepted purposes for altering the ordinary effect of a dismissal order for cause are to protect rights obtained in reliance on proceedings that have occurred in the bankruptcy case and to provide for equitable treatment of creditors.  *Wiese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 590 (7th Cir. 2009); *KG Winddown*, 682 B.R. at 747.

46.     In other words, Sections 305 and 1112 of the Bankruptcy Code both give the Bankruptcy Court wide latitude to dismiss a pending bankruptcy case when dismissal is in the best interests of the debtor and its stakeholders, and Section 349(b) gives the Court the power to shape the dismissal order in a manner consistent with those interests.

47.     Here, there is ample cause for dismissal upon consummation of the Exit Refinancing Transaction and approval of the Claims Procedures.  The value of the Debtor is being diminished by the continued incurrence of professional fees, fees and expenses of the Replacement Manager, and the opportunity costs to the Debtor of being barred from moving forward with its pre-bankruptcy plans to develop the Property.  If this case is allowed to progress as the Lender desires, these costs will only increase, and the damage will be compounded by a needless litigation, the permanent loss of value caused by the fire sale of the Property (and the concomitant elimination of any prospect of rehabilitation), and broker's fees incurred in connection with such sale.  This,

by itself, justifies dismissal, even without the many structural and procedural protections for parties in interest that are set forth herein.

48.    But the Borrower Parties offer much more than just the dismissal of this bankruptcy case and reversion to the status quo *ex ante*.  Pursuant to the procedures set forth herein, the Development has proposed a structured dismissal that will guarantee that all parties are made whole.

49.    As one court has noted, "[a] bankruptcy court cannot insure that all creditors will make a pro-rata recovery of their debts after dismissal of a bankruptcy case. But, when a court determines that a debtor's economic value is likely to be greater by dismissing the case rather than converting it [or allowing it to proceed in Chapter 11], the court maximizes the opportunity of individual creditors to recover their claims."  *In re OptInRealBig.com, LLC*, 345 B.R. 277, 290 (Bankr. D. Colo. 2006).

50.    When determining how best to maximize a debtor's economic value, courts consider whether going forward with the case "would interfere with prompt and efficient payment to creditors" and whether it is beneficial to "go through the time and expense of a plan, which will cause the pool of money left to be greatly diminished."  *In re Buffet Partners, L.P.*, No. 14-30699-HDH-11, 2014 WL 3735804, at *3 (Bankr. N.D. Tex. July 28, 2014) (approving of structured dismissal).

51.    These factors easily weigh in favor of approving of the structured dismissal proposed in this Motion.  Here, the instant relief would not only a pro-rata distribution to creditors, but payment in full of all of their allowed claims (including the Lender's), while preserving the Debtor as a going concern and delivering value to the Debtor's equityholders.  This is the best

17

possible outcome in any bankruptcy case, and far exceeds any outcome the Lender could possibly

hope to obtain in a Section 363 sale (which would almost certainly leave the Debtor insolvent).

52.     Structured dismissals like this have been approved even over the opposition of the

Debtor.  For example, in *Petersburg Regency*, the court approved of a structured dismissal based

upon a settlement among non-insider creditors for the distribution of the bankruptcy estate's

limited resources.  *In re Petersburg Regency LLC*, 540 B.R. 508, 532 (Bankr. D.N.J. 2015).  In

that case, the continuation of the bankruptcy served "no legitimate bankruptcy purpose" and was

being pursued by the debtor only as a "litigation tactic" or to "orchestrate pending litigation." *Id.*

at 533 (citation omitted).

53.     That reasoning is equally applicable here.  The Lender proposed plan process

(through its control over the Debtor) is to set down a fire sale of the underlying property so that it

can credit bid, and effectively wipe out or severely prejudice other creditors and equity holders,

and result in the Lender obtaining a windfall.  Further, the costs in moving forward with a contested

sale and plan process (even if proper, which it decidedly is not) would further diminish the value

of the assets, in particular, where the Debtor estimates professional fees alone of hundreds of

thousands of dollars to get through a plan process.  Moreover, the Lender is using its control over

the Debtor to shape this bankruptcy case to its benefit, and to the detriment of all other

stakeholders, including the Borrower Parties.  The only reason the Lender is utilizing bankruptcy

to exercise its remedies with respect to the Debtor is to capture the excess value of the Property

for itself, rather than permit its debt to be paid off and allow the Debtor, its creditors, and the

Borrower Parties, to retain the value to which they are entitled.

54.    In order to protect and balance the interests set forth above, the entry of the proposed order dismissing this bankruptcy case will be subject to the following conditions precedent (the "Conditions Precedent to Dismissal"):

    a.    An order substantially in the form attached hereto as Exhibit A shall have been entered by this Court.

    b.    The Exit Refinancing Transaction shall have been consummated.

    c.    The undisputed amount of all secured, unsecured, and administrative expense claims shall have been paid in cash, except as to any claim for which the holder thereof has agreed to different treatment.

    d.    An amount of funds necessary to pay the disputed amount of any such claims in full shall be held in escrow subject to the jurisdiction of this Court, and subject to distribution pursuant to further order of this Court.

55.    Additionally, prior to entry of a dismissal order, interested parties will be given seven days' notice and an opportunity to object to entry of such order on the basis of either (i) the failure of any of the foregoing Conditions Precedent to Dismissal or (ii) a material change in circumstances that justifies reconsideration of the dismissal granted herein. A seven-day pre-dismissal objection period was approved of (indeed, required) by Judge Glenn in the *KG Winddown* case and is appropriate here as well as an additional measure of protection for creditors, including the Lender. *See KG Winddown*, 682 B.R. at 747.

56.    Accordingly, the procedures set forth above will ensure that no parties have their rights violated or claims extinguished without their express consent, will provide for this Court's continued jurisdiction over escrowed funds until all claims are resolved, and will set the Debtor back on a path to success.

**D.    Request to File Documents on Confidential Basis**

57.    Development also respectfully requests entry of an order in the form filed contemporaneously herewith, under sections 105 and 107(b) of the Bankruptcy Code and

Bankruptcy Rule 9018, authorizing Development to redact certain portions of the Exit Refinancing

and other funding documents, which information Development will provide to the Court and US

Trustee under seal, and will provide such to the Debtor and any parties-in-interest upon execution

of a confidentiality agreement in standard form, providing that such information shall be kept

confidential.  Such information is limited in nature, and designed to avoid any public dissemination

of sensitive information.

## **CONCLUSION**

58.     The relief requested in this Motion has been devised in a way to maximize benefits

to all concerned parties, by paying the Lender and all other claimholders in full, maintaining the

Debtor's existence as a going concern, and preserving residual equity value in the Debtor.  The

Lender's preferred approach to this case, as set out in its DIP Motion, achieves none of those goals.

This Court should consider the best interests of the Debtor and all of its stakeholder and therefore

it should approve of the Exit Refinancing Transaction, Claims Procedures, and structured dismissal

set forth herein.

WHEREFORE Development respectfully requests that the Court grant the relief requested

herein and such other and further relief as it deems just and proper.

Dated:  November 22, 2021
      New York, New York

Respectfully submitted,

By:  _/s/Douglas Spelfogel_____
Douglas Spelfogel
Leah Eisenberg
Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) 506-1910
Email: dspelfogel@mayerbrown.com
      leisenberg@mayerbrown.com

*Special Counsel to 286 Rider Ave*
*Development LLC*

**OFFIT KURMAN, P.A.**

Jason A. Nagi
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900
Email: jason.nagi@offitkurman.com

and

Joyce A. Kuhns, Esq. (Admitted *Pro Hac Vice*)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
Tel (410) 209-6463
Email: jkuhns@offitkurman.com

*Attorneys for 286 Rider Ave Development LLC*

**Exhibit A**

**The Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re:* | **Chapter 11** |
| **286 Rider Ave Acquisition LLC** | **Case No. 21-11298 (LGB)** |
| **Debtor.** | |

**ORDER PURSUANT TO SECTIONS 105(a), 363, 364, 305(a), 349(b), AND 1112(b) OF THE BANKRUPTCY CODE AUTHORIZING (I) PAYOFF OF LENDER THROUGH EXIT REFINANCING, (II) CLAIMS PROCEDURES, (III) SUBSEQUENT DISMISSAL OF THIS BANKRUPTCY CASE, AND (IV) RELATED RELIEF**

Upon the Motion, dated November 22, 2021 (the "Motion"),[1] of Development, for an order pursuant to Sections 105(a), 364, 305(a), 349(b), and 1112(b) of title 11 of the United States Code (the "Bankruptcy Code") and seeking approval of the Exit Refinancing Transaction, the Claims Procedures, and of a form of Dismissal Order dismissing the Debtor's chapter 11 case under certification of counsel, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to all interested parties, including the Debtor, the Lender, the Creditors, and the United States Trustee (the "Notice Parties"); and it appearing that no other or further notice need be provided; and, if necessary, a hearing having been held to consider the relief requested in the Motion (the "Hearing"); and due and proper notice of the Hearing having been provided; and the appearances of all interested parties

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

having been noted in the record of the Hearing; and upon the record of the Hearing, if any, and all

of the proceedings had before the Court; and the Court having found and determined that the relief

sought in the Motion is in the best interests of the Debtor, their estates and creditors, and all parties

in interest and that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED** that:

1.      The Motion is granted to the extent set forth herein.

**<u>The Exit Refinancing Transaction</u>**

2.      The Exit Refinancing Transaction is approved in full and the New Lender shall be

and is granted a first priority valid, biding, enforceable, and non-avoidable, and automatically and

property perfected lien and security interest and first mortgage in the Property and a collateral

pledge in the Debtor's membership interest.

3.      The Lender shall be paid and shall accept [$_____], comprising the full

$8,000,000 principal amount of its Prepetition Claim, plus [$_____] in contract rate, non-default

interest thereon, through the date of filing of the Motion, plus [$_____] in principal and interest

on the DIP Loan, plus such additional amounts as may be allowed by the Court as provided

hereunder, and which shall be subject to the Replacement Lien as defined below, in full and final

satisfaction thereof (the "<u>Closing Date Lender Payment</u>").

4.      Development, on behalf of the Debtor, may obtain the Exit Refinancing from the

New Lender, the proceeds of which, after payment of the Closing Date Lender Payment, shall be

held by a third-party escrow account with Riverside Abstract title company [or other nationally

recognized bank] (the "<u>Escrow Agent</u>") subject to further distribution as set forth in this Order.

5.      Additionally, Development (or their designee) shall provide the Supplemental

Capital to be held by the Escrow Agent, in an amount not to exceed $1,500,000, such amount being

2

sufficient, together with the Exit Refinancing, to satisfy all amounts owing or potentially owing to the allowed Administrative Claimants, the Lender, and the Creditors.

6.      The Escrow Agent shall hold the net proceeds of the Exit Refinancing and the Supplemental Capital after payment of the Lender Date Closing Payment in escrow for the payment of the Allowed Administrative Claimants, the Lender, and the Creditors as provided for under this Order.

7.      Upon receipt the Escrow Agent of the Exit Refinancing and Supplemental Capital, the Lender shall be deemed to hold a perfected first priority lien on all such funds held in the Escrow as security for the payment in whole of its Prepetition Claim and the DIP Loan, to the same extent and in the same priority as the liens of the Lender securing the Property and other assets of the Debtor (the "Replacement Lien").

8.      The remaining liens of the Lender on the Debtor and the Property, and the Lender's management rights in the Debtor, shall automatically be deemed released and extinguished.  Any remaining amount of the Lender's Prepetition Claim after making of the Closing Date Lender Payment shall be paid and resolved pursuant to the Claims Procedures set forth below.

9.      Contemporaneously with the deposit of the Exit Refinancing with the Escrow Agent and the granting of the Replacement Lien, pursuant to Sections 105(a), 362, and 364(d) of the Bankruptcy Code, the New Lender shall be deemed to have a perfected first priority lien on the Property.  The New Lender shall be authorized but not directed to file any mortgage and/or financing statements with regard to its perfected first priority lien on the Property, the Debtors' Membership Interest, and any and all proceeds from any of the foregoing.

10.     Pursuant to Sections 105(a) and 349(b) of the Bankruptcy Code, upon the making of the Closing Date Lender Payment, Development shall be deemed to own 100% of the equity

interests in the Debtor, and such interests and the Property shall be free and clear of all liens, claims, encumbrances, and interests of the Lender and any of its affiliates, and Michael Lichtenstein shall be deemed to have replaced the Replacement Manager as the manager of the Debtor.

**The Claims Procedures**

11.     Except as otherwise provided herein, all allowed administrative expense claims, secured claims, and unsecured claims against the Debtor shall be paid in full, in cash, prior to the entry of the Dismissal Order, in a manner consistent with 11 U.S.C. § 1129(a)(9), (b)(2)(A), and (b)(2)(B)(i) of the Bankruptcy Code.

12.     No later than January 11, 2022, any party intending to assert an administrative expense claim against the Debtor shall file a statement setting forth in detail the amount and basis of such party's administrative expense claim accrued through and including December 31, 2021 together with a good faith estimate of the amount of administrative expense claims such party expects to become entitled to between January 1, 2022 and the entry of the Dismissal Order.

13.     No later than February 1, 2022, the Debtor or Development may object, in whole or in part, to the allowance, classification, or payment, of any secured, unsecured, or administrative expense claims.  Each such claimant shall respond to such objection within seven calendar days after the filing and service of such objection.  The objecting party and claimant shall work together expeditiously and in good faith towards either the consensual resolution of such objection or the resolution by the Court of such objection.

14.     After February 1, 2022, all allowed secured, unsecured, claims and administrative expense claims against the Debtor, to the extent not objected to by the Debtor or Development, shall be deemed payable from the Escrow pursuant to this Order.

4

15.     After the earlier of February 14, 2022 or the resolution of all claims with respect to which objections have been filed or, if Development does not intend to file any such objections, then at any time after January 11, 2021, subject to the satisfaction of the Conditions Precedent to Dismissal set forth in the Motion, Development may file and serve the Notice of Filing of Dismissal Order.

16.     In the event any objections to claims remain outstanding as of February 14, 2022, upon the request of Development, the Court may reserve the resolution of such objections to after the entry of the Dismissal Order, and any such disputed amounts deemed to be payable shall be paid upon allowance from the Escrow.

17.     Notwithstanding anything to the contrary in this Order or the Dismissal Order, any holder of a claim against the Debtor may, together with Development, file a stipulation consenting to the continuation and reinstatement of such claim, in whole or in part, following and notwithstanding the entry of the Dismissal Order, which stipulation may provide for the retention of jurisdiction by this Court for the resolution of any dispute with respect to the amount of such claim that is properly payable by the Debtor.

18.     After all claims have been paid and/or adjudicated by the Court, any remaining balance of funds held in the Escrow shall be paid to Development.  At an time after February 14, 2022, and subject to the foregoing, Development may direct Abstract Title to release from escrow any funds not needed for payment or potential payment of any disputed or undisputed secured, unsecured, and administrative expense claims.

19.     All funds released from escrow by Abstract Title, whether for payment of claims or otherwise, shall be deemed to be released free and clear of all liens and claims of the Lender.

5

**Dismissal of this Bankruptcy Case**

20.     Upon satisfaction of all Conditions Precedent to Dismissal of this chapter 11 case set forth in the Motion, Development is authorized to submit to the Court a Notice of Filing of Dismissal Order, the form of which is attached hereto as Exhibit 1, and serve such Notice upon all Notice Parties.

21.     As set forth in the Notice of Filing of Dismissal Order, the Notice Parties shall have seven days from the filing of such Notice to object to this Court's entry of a Dismissal Order in the form attached hereto as Exhibit 2, provided that the only permissible bases for objecting to entry of the Dismissal Order shall be either (i) the failure of any of the Conditions Precedent to Dismissal set forth in the Motion or (ii) a material change in circumstances since the entry of this Order that justifies reconsideration of the dismissal granted herein.

22.     Upon the later to occur of either (i) the passing of seven days from the filing of the Notice of Filing of Dismissal Order or (ii) the resolution by this Court or by agreement of all timely filed objections to entry of the Dismissal Order, this Court will enter the Dismissal Order.

23.     As set forth in more detail in the Dismissal Order, upon dismissal of this chapter 11 case, (i) all obligations of the Debtor and Development to the Lender and any of its affiliates shall be deemed fully and finally satisfied; (ii) all of the Lender's rights in and to the Property and the equity in the Debtor (including, but not limited to, management rights) shall be discharged; and (iii) the Property shall vest in the post-dismissal Debtor free and clear of all liens, claims, and encumbrances other than the lien of the New Lender.

**Miscellaneous Relief**

24.     This Order shall be binding on the Debtor, the Lender, all creditors, and parties-in-interests, Development, any affiliates or insiders of any of the forgoing, and any of their successors and assigns.

6

25.    The Debtor and Development are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

26.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order and any other order of this Court entered in this chapter 11 case.

Dated: _____, 2021
        New York, New York

_____
Hon. Lisa G. Beckerman
United States Bankruptcy Judge

## **Exhibit 1**

**Notice of Filing of Dismissal Order**

MAYER BROWN LLP
Douglas Spelfogel
Leah Eisenberg
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) 506-1910

*Special Counsel to 286 Rider Ave Development LLC*

OFFIT KURMAN, P.A.
Jason A. Nagi
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900

and

Joyce A. Kuhns, Esq. (Admitted *Pro Hac Vice*)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
Tel (410) 209-6463

*Attorneys for 286 Rider Ave Development LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re:* | **Chapter 11** |
| **286 Rider Ave Acquisition LLC** | **Case No. 21-11298 (LGB)** |
| **Debtor.** | |

<u>**NOTICE OF FILING OF DISMISSAL ORDER**</u>

Pursuant to the *ORDER PURSUANT TO SECTIONS 105(a), 363, 364, 305(a), 349(b), AND 1112(b) OF THE BANKRUPTCY CODE AUTHORIZING (I) PAYOFF OF LENDER THROUGH EXIT REFINANCING, (II) CLAIMS PROCEDURES, (III) SUBSEQUENT DISMISSAL OF THIS BANKRUPTCY CASE, AND (IV) RELATED RELIEF* entered _____,

2021 [ECF No. ___] (the "Refinancing and Claims Adjudication Order"),[1] Development, by and

through its counsel Mayer Brown LLP and Offit Kurman, P.A. hereby provides this Notice of

Filing of Dismissal Order and, in support thereof, state and certify as follows:

**THIS CHAPTER 11 CASE MAY BE DISMISSED AND OTHER RELIEF MAY BE GRANTED IF NO OBJECTIONS ARE FILED ON OR BEFORE [_____][2] (THE "OBJECTION DEADLINE").  ALL PARTIES IN INTEREST MAY FILE AN OBJECTION TO THE ENTRY OF THE DISMISSAL ORDER (DEFINED BELOW) NO LATER THAN THE OBJECTION DEADLINE, BASED UPON EITHER A FAILURE OF THE CONDITIONS PRECEDENT TO ENTRY OF THE DISMISSAL ORDER REQUIRED IN THE REFINANCING AND CLAIMS ADJUDICATION ORDER OR A MATERIAL CHANGE IN CIRCUMSTANCES THAT JUSTIFIES REVISITNG THE REFINANCING AND CLAIMS ADJUDICATION ORDER.  ABSENT THE TIMELY FILING OF ANY SUCH OBJECTION, THE DISMISSAL ORDER MAY BE ENTERED WITHOUT FURTHER NOTICE TO PARTIES IN INTEREST OR AN OPPORTUNITY TO BE HEARD.**

1.      The Refinancing and Claims Adjudication Order approved the consummation of

the Exit Refinancing Transaction, the payment or provision for payment of all allowed secured,

unsecured, and administrative expense claims against the Debtor, and other related relief.

2.      The Refinancing and Claims Adjudication Order also approved the form of order

enclosed hereto as **Attachment 1** (the "Dismissal Order"), authorizing dismissal of the Debtor's

chapter 11 case after consummation of the Exit Refinancing Transaction and satisfaction of all

known claims against the Debtor, including administrative expense claims, upon the filing and

service of this Notice of Filing of Dismissal Order.

3.      The Exit Refinancing Transaction has been consummated and, to the best of the

Debtor's knowledge, all known allowed claims against the Debtor (other than claims of the New

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Refinancing and Claims Adjudication Order.

[2] [Seven days after filing and service of the Notice of Filing of Dismissal Order.]

Lender or claims otherwise provided for pursuant to the terms of the Refinancing and Claims Adjudication Order [as set forth in the subsequent paragraph(s)]), including administrative expense claims, have been paid in full in all respects.

4.      [The following claims remain unresolved and, accordingly, Development requests that the Court retain jurisdiction to enter an order resolving such claims, with the final allowable amount of such claim being a joint and several obligation of the post-dismissal Debtor and Development:]

5.      [By agreement of Development and the claimant, the following claims shall be obligations of the post-dismissal Debtor:]

6.      All United States Trustee quarterly fees accrued through the date hereof have been paid.

7.      Pursuant to the terms of the Refinancing and Claims Adjudication Order, Development hereby requests entry of the Dismissal Order substantially in the form annexed hereto as **Attachment 1** dismissing the chapter 11 case of the Debtor, 286 Rider Ave Acquisition LLC, and granting related relief.

Dated: _____, 2021
        New York, New York

Respectfully submitted,

By:  */s/ Douglas Spelfogel*
Douglas Spelfogel
Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) 506-1910
Email: dspelfogel@mayerbrown.com

*Special Counsel to 286 Rider Ave Development LLC*

**OFFIT KURMAN, P.A.**

Jason A. Nagi
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900
Email: jason.nagi@offitkurman.com

and

Joyce A. Kuhns, Esq. (Admitted *Pro Hac
Vice*)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
Tel (410) 209-6463
Email: jkuhns@offitkurman.com

*Attorneys for 286 Rider Ave Development
LLC*

**<u>Exhibit 2 / Attachment 1</u>**

**Dismissal Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re:* | Chapter 11 |
| **286 Rider Ave Acquisition LLC** | **Case No. 21-11298 (LGB)** |
| **Debtor.** | |

**ORDER PURSUANT TO SECTIONS 105(a), 349(b), 305(a) AND 1112(b) OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 1017 DISMISSING
BANKRUPTCY CASE AND GRANTING RELATED RELIEF**

Upon the Motion, dated November 22, 2021 (the "Motion"),[1] of Development, for an order

pursuant to Sections 105(a), 364, 305(a), 349(b), and 1112(b) of title 11 of the United States Code

(the "Bankruptcy Code") and seeking approval of the Exit Refinancing Transaction, the Claims

Procedures, and of a form of Dismissal Order dismissing the Debtor's chapter 11 case under

certification of counsel, all as more fully described in the Motion; and the Court having jurisdiction

to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334; and consideration of the Motion and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and due and proper notice of the Motion having been provided to all interested

parties, including the Debtor, the Lender, the all other known administrative and unsecured

creditors (the "Creditors"), and the United States Trustee (the "Notice Parties"); and it appearing

that no other or further notice need be provided; and, if necessary, a hearing having been held to

consider the relief requested in the Motion (the "Hearing"); and due and proper notice of the

Hearing having been provided; and the appearances of all interested parties having been noted in

the record of the Hearing; and upon the record of the Hearing, if any, and all of the proceedings

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtor, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor; and the Court having entered the *ORDER PURSUANT TO SECTIONS 105(a), 363, 364, 305(a), 349(b), AND 1112(b) OF THE BANKRUPTCY CODE AUTHORIZING (I) PAYOFF OF LENDER THROUGH EXIT REFINANCING, (II) CLAIMS PROCEDURES, (III) SUBSEQUENT DISMISSAL OF THIS BANKRUPTCY CASE, AND (IV) RELATED RELIEF*, entered _____, 2021 [ECF No. ___] (the "Refinancing and Claims Adjudication Order"); and Development having filed and served the Notice of Filing of Dismissal Order, which certified that all transactions contemplated by the Motion and the Refinancing and Claims Adjudication Order that were preconditions to entry of this Order have been completed and that all known allowed claims and administrative expense claims against the Debtor have been paid, resolved, or otherwise settled by Development on behalf of the Debtor (or provision for such payment or resolution of any dispute as to the amount of such payment having been established pursuant to the terms of the Refinancing and Claims Adjudication Order); and any objections to the entry of this Order having been withdrawn or overruled; and after due deliberation and sufficient cause appearing therefor, it is hereby **ORDERED** that:

1.      The Motion is granted to the extent set forth herein and to the extent not previously granted pursuant to the Refinancing and Claims Adjudication Order.

2.      Pursuant to Sections 105(a), 305(a) and 1112(b) of the Bankruptcy Code and Bankruptcy Rule 1017, the chapter 11 case of the Debtor, 286 Rider Ave Acquisition LLC, is hereby dismissed.

3.      Pursuant to Sections 105(a) and 349(b) of the Bankruptcy Code, upon the entry of this Order, the Property and all other assets of the Debtor shall vest in the post-dismissal Debtor free and clear of all liens, claims, encumbrances, and interests, other than claims and liens of the New Lender with respect to the Property.

4.      Pursuant to Section 349(b) of the Bankruptcy Code, all prior orders of this Court, including the Refinancing and Claims Adjudication Order, shall survive dismissal of this chapter 11 case.

5.      Development and the Debtor are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

6.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order and any other order of this Court entered in this chapter 11 case, including, but not limited to, with respect to any disputed claims that have not been resolved prior to the entry of this Order.

Dated: _____, 2022
        New York, New York

_____
Hon. Lisa G. Beckerman
United States Bankruptcy Judge

**<u>Exhibit B</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| NEW WEATHERVANE RETAIL | ) | Case No. 04-11649 (PJW) |
| CORPORATION, et al., | ) | (Jointly Administered) |
|  | ) |  |
| Debtors. | ) | **Re: D.I. 543** |
|  | ) |  |
|  | ) |  |

### ORDER GRANTING JOINT MOTION TO DISMISS CHAPTER 11 BANKRUPTCY CASES OF NEW WEATHERVANE RETAIL CORPORATION AND NEW WEATHERVANE REAL ESTATE CORPORATION PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE AND TO AUTHORIZE DISTRIBUTION OF FUNDS TO CREDITORS

Upon the joint motion dated July 26, 2005, (the "Motion")[1] of New Weathervane

Retail Corporation and New Weathervane Real Estate Corporation, debtors and debtors-in-

possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors in the

above-captioned cases (the "Committee," and together with the Debtors, the "Movants"), for an

order pursuant to sections 105(a) and 1112(b) of title 11 of the United States Code (the

"Bankruptcy Code") (a) dismissing the Debtors' chapter 11 bankruptcy cases, (b) authorizing the

Movants to distribute any funds remaining their possession to creditors, and (c) granting such other

and further relied as the Court deems just and proper; and this Court having reviewed the Motion

and having conducted a hearing on the Motion on August 29, 2005, at which time the Movants and

all parties in interest were given an opportunity to be heard; and it appearing that the notice of the

Motion haven been given to (a) the Office of the United States Trustee, and (b) all creditors who

have (i) filed claims as of their respective bar dates, (ii) are listed in the Debtors' Schedules, or (iii)

who have filed a notice of appearance; and the Court finding that (a) the Court has jurisdiction

---

[1]     Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and this is a core proceeding pursuant to

28 U.S.C. § 157(b)(2), (b) notice of the Motion and the opportunity for a hearing thereon were

adequate and appropriate and no other notice need be given, (c) the legal and factual bases set forth

in the Motion constitute just cause for the relief granted herein, and (d) the requested relief in the

Motion is in the best interests of the Debtors' estates and their creditors; and after due deliberation

and sufficient cause appearing therefore, it is

**ORDERED,** that the Motion is hereby granted; and it is further

**ORDERED,** that pursuant to section 1112(b) of the Bankruptcy Code, the Debtors' chapter

11 bankruptcy cases are hereby dismissed; and it is further

**ORDERED,** that the Movants are authorized to distribute the funds remaining in the

Account to the creditors listed on Exhibits A and B attached hereto; and it is further

**ORDERED,** that the counsel to the Committee, Kronish Lieb Weiner & Hellman LLP

("Kronish Lieb"), is authorized to distribute the funds in the Carveout Fund to the creditors listed

on Exhibits B and C attached hereto; and it is further

**ORDERED,** that if a party-in-interest disputes the amount of any unsecured claim as listed

on **Exhibit C** and objects to the distribution on **Exhibit C,** such party-in-interest (the "Objecting

Party") must mail, fax or e-mail its objection with documentation supporting its objection **on or**

**before September 30, 2005** to: (a) Counsel to the Committee: Kronish Lieb Weiner & Hellman

LLP, 1114 Avenue of the Americas, New York, New York 10036 (Attn: Gregory Plotko, Esq.,

e-mail: gplotko@kronishlieb.com; Fax No. 212-479-6275); and (b) the holder of the unsecured

claim to which the Objecting Party is objecting. In its objection, the Objecting Party must state the

grounds for the objection with particularity. Kronish Lieb shall review all claim objections within

30 days after receipt of such objection and supporting documentation and consult with the

2

Objecting Party and the holder of any such claim in order to attempt to resolve the objection. If Kronish Lieb, the Objecting Party and/or the holder of such claim cannot agree, then Kronish Lieb shall refer the matter to binding arbitration. All fees and expenses relative to the resolution of a claims objection incurred by Kronish Lieb and the Debtors shall be borne by the Objecting Party; and it is further

**ORDERED,** it shall be within the Movants' sole discretion to determine when a distribution from the Account and the Carveout Fund shall be made; and it is further

**ORDERED,** that it shall be within the Movants' sole discretion to determine whether to make any distribution that would result in a distribution of less than $25.00; and it is further

**ORDERED,** that any distributed check(s) that have not been claimed and/or cashed after 90 days from the date of such check(s) shall be deemed void; and it is further

**ORDERED,** that any funds that remain in the Account after said 90 day period, after reduction for the costs of administration of the fund shall be paid *pro rata* to creditors listed on the Exhibits attached to the Motion to the extent that such a distribution is economically reasonable; and it is further

**ORDERED,** that if any funds remain in the in the Account or the Carveout Fund after payment of the above and such amounts are such that after the cost of distribution the amount distributed to each creditor would be *de minimis* then Kronish Lieb is authorized to donate said funds to a recognized charitable organization; and it is further

**ORDERED,** that any party not objecting to the relief requested by the Motion is barred from asserting any claims against the Account, against counsel to the Debtors acting as escrow agent for the Account, and against Kronish Lieb as escrow agent for the Carveout Fund; and it is further

3

**ORDERED,** that $20,000.00 be set aside from the Account and Carveout Fund for costs necessary for the administration of the distributions from the Account and the Carveout Fund; and it is further

**ORDERED,** that the Movants shall provide a report or reports to the U.S. Trustee after the distribution contemplated in the Motion and authorized by this Order is made, on the specific distributions made to the creditors and on any checks that were unclaimed; and it is further

**ORDERED**, that the resignation of Russell Burns as Treasurer of the Debtors shall be effective as of the date of this Order; and it is further

**ORDERED**, that, notwithstanding his resignation, Russell Burns shall be authorized to execute checks on behalf of the Debtors for the disbursement of the Account; and it is further

**ORDERED,** from and after the date of this Order, none of the Debtors, nor the Committee, and none of the Debtors' and Committee's respective present or former directors, officers, employees, members, attorneys, consultants, advisors, and agents (acting in such capacity), shall have or incur any liability to any person, for any act taken or omitted to be taken in connection with or related to the formation, preparation, dissemination, implementation, confirmation or consummation of the Motion (other than an action in contravention of the Motion or the implementation of this Order), or any contract, instrument, release or agreement or document created or entered into, or any other act taken or omitted to be taken in connection with the Motion; provided, however, that the foregoing shall not affect the liability that otherwise would result from any such act or omission to the extent that such act or omission is determined by this Order to have constituted gross negligence or willful misconduct; and it is further

**ORDERED**, that, notwithstanding section 349 of the Bankruptcy Code, prior Orders of the Court shall survive the dismissal of this case; and it is further

4

**ORDERED**, that the Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or relating to the implementation of any Order of this Court and to rule on the allowance of the interim and final compensation of professionals retained in these cases.

Dated: Wilmington, Delaware
Sept 2 , 2005

THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

*Estimated Administrative Claims and Expenses:*

| Claimant | | Amount |
|---|---|---|
| The CIT Group | | $11,355.03 |
| State of Illinois | | $ 7,000.00 |
| | TOTAL: | $18,355.03 |

*Estimated Outstanding United States Trustee Fees:* $2,000.00

*Estimated Compensation and Expenses of Russell Burns:* $15,000.00

*Estimated Compensation and Expenses of Donlin, Recano & Company*: $15,000.00

*GRAND TOTAL*: **$54,355.03**

## Exhibit B

**Estimated Outstanding Amounts of Professional Fees and Expenses:**[1]

| | |
|---|---|
| *Morris, Nichols, Arsht & Tunnell:* | $ 56,959.53 |
| *Kronish Lieb Weiner & Hellman:* | $ 81,619.08 |
| *Jaspan Schesinger Hoffman LLP:* | $ 12,396.20 |
| *Trenwith Securities LLC:* | $ 16,022.86 |
| *BDO Seidman LLP:* | $ 33,385.51 |
| *TOTAL:* | $200,383.18 |

*Estimated Additional Outstanding Professional Fees and Expenses:* $40,000.00

*GRAND TOTAL*: **$240,383.18**

---

[1] These numbers represent the estimated, outstanding amounts owed to each professional for fees and expenses through July for Morris, Nichols, Arsht & Tunnell and Jaspan Schesinger Hoffman LLP, June for Kronish Lieb Weiner & Hellman and March for BDO Seidman LLP.

**NEW WEATHERVANE REATIL CORP.**
**LIST OF UNSECURED CREDITORS EXHIBIT "C"**
**(See Note 1)**

| Creditor's Name<br>And Mailing Address | Exhibit C<br>Total Amount<br>of Claim |
|---|---|
| 1704 SIMON PROPERTY GROUP L.P. | - |
| 2307 SIMON PROPERTY GRP LP | 174,795.03 |
| 24 SEVEN INC | 325.00 |
| 3917 SIMON CAPITAL L.P. | 145,096.86 |
| 4670 ORLAND LP | - |
| 4674 S HILLS VILLAGE ASSOC | 190,390.26 |
| 4773 SDG MACERICH PROP L.P. | - |
| 4822 BELLWETHER PROPERTIES OF | - |
| 4823 CRYSTAL MALL LLC | 188,537.68 |
| 4835 ROCKAWAY CENTER ASSOC. | - |
| 4838 BRAINTREE PROPERTY ASSOC | - |
| 4920 MAYFLOWER EMERALD SQUARE | - |
| 4923 - NORTHSHORE MALL LIMITED | - |
| 4924-MALL AT SOLOMAN POND | - |
| 4926 ROCKSALL MALL LLC | - |
| 7604 PHEASANT LANE REALTY TRU | - |
| 8099 SIMON CAPITAL L.P. | - |
| 8675 SIMON PROPERTY GRP L.P. | 130,331.91 |
| 8700 SIMON PROPERTY GRP L.P. | - |
| ABF FREIGHT SYSTEM INC. | 707.00 |
| ADAM B. DANNER | 4,615.00 |
| ADAM R. FLANAGAN | 1,077.00 |
| ADT SECURITY SYSTEMS | 105.00 |
| ADVANCED CLEANING CONCEPTS | 159.00 |
| ALBA WHEELS UP | 27,746.00 |
| ALBANY FIRE EXTINGUISHER | 179.00 |
| ALICE COSTA WILKIE | 4,662.00 |
| ALISON D. KUIPER | 1,525.00 |
| ALL CLEAN WINDOWS | 194.00 |
| ALL REACH | 1,193.00 |
| ALLIANCE MANAGEMENT | 356.00 |
| ALLIANCE RETAIL CONSTRUCTION | 28,798.00 |
| ALLIANT ENERGY | 1,759.00 |
| ALLISON L. SCHNEIDER | 329.00 |
| ALLISON R. KUDERA | 655.00 |
| ALYSSA GATZIMOS | 792.00 |
| ALYSSA PROCACCINI | 1,469.00 |
| AMANDA BUPP | 36.00 |
| AMANDA D. RUNYEON | 692.00 |
| AMANDA M. BROWN | 270.00 |
| AMANDA M. BROWN | 270.00 |
| AMBER L. ROGERS | 948.00 |
| AMBER M. CHAMPAGNE | 354.00 |
| AMELIA V. BURDACKI | 983.00 |
| AMEREN UE | 1,921.00 |
| AMEREN UE | 4,355.00 |
| AMERICAN CONSOLIDATION INC | 17,627.00 |
| AMERICAN ELECTRIC POWER | 336.00 |
| AMERICAN ELECTRIC POWER | 402.00 |
| AMERICAN WINDOW & FLOOR CLNG. | 42.00 |
| AMEX BUSINESS FINANCE | 120.00 |
| AMPAC | 4,321.00 |
| AMY EDWARDS | 187.00 |
| AMY M. STORMS | 1,308.00 |
| AMY R. EDWARDS | 1,682.00 |
| ANDREA Y. LEE | 2,930.00 |
| ANDREW B. GRADY | 1,962.00 |

**NEW WEATHERVANE REATIL CORP.**
**LIST OF UNSECURED CREDITORS  EXHIBIT "C"**
**(See Note 1)**

| Creditor's Name And Mailing Address | Exhibit C Total Amount of Claim |
|---|---|
| ANGELA G. WISE | 1,096.00 |
| ANGELA M. YEAGER | 309.00 |
| ANNA M. MUCCINO | 1,570.00 |
| ANNAPOLIS MALL | - |
| ANNETTE S HARGROVE | 4,019.00 |
| ANTHONY L. DEATON JR. | 396.00 |
| ANTIQUE TEXTILE RESOURCE | 290.00 |
| APRIL L. GUYETTE | 1,426.00 |
| APRIL R. PELLETIER | 80.00 |
| ARGIX DIRECT (ASSIGNED TO RIVERSIDE CLAIMS, LLC) | 15,769.00 |
| ARNOT REALTY CORP | 23,375.72 |
| ARUNDEL MILLS LP | 271,153.46 |
| ARUNDEL MILLS UTILITY ACCOUNT | 1,344.00 |
| ASHI | 14,635.00 |
| ASILYNN A. TORCHIO | 855.00 |
| AT & T | 131.00 |
| AT & T WIRELESS | 124.00 |
| AT & T WIRELESS | 1,393.00 |
| ATLANTIC WASTE SYSTEMS | 526.00 |
| ATLAS CONTAINER LLC | 4,842.00 |
| AUDI FINANCIAL SERVICES | 566.00 |
| AUTOMATIC DATA PROCESSING | 9,066.00 |
| AUTOMATIC FIRE PROTECTION | 50.00 |
| AVERY DENNISON | 20,796.84 |
| AZTEC OFFICE SUPPLIES DIRECT | 967.00 |
| B P TRUCKING INC | 1,069.00 |
| BAILEE G. PETTOGRASSO | 915.00 |
| BALLET JEWELS | 47,456.00 |
| BALTIMORE GAS & ELECTRIC | 2,050.00 |
| BANMAK ASSOCIATES 7700 | - |
| BARE NOTHINGS | 10,553.00 |
| BARRY D. GOLDBERG | 6,650.00 |
| BAY PARK SQUARE | 255.00 |
| BAY STATE GAS | 86.00 |
| BEAN TOWN SHINERS | 90.00 |
| BECKY M. KENDALL | 1,184.00 |
| BELL SOUTH | 101.00 |
| BELMONT SPRINGS WATER | 85.00 |
| BERTOLINI & SONS | 74.00 |
| BEST SECURITY INDUSTRIES INC | 4,355.00 |
| BEST SOFTWARE INC | 1,293.00 |
| BETHANY L. PREBLE | 2,700.00 |
| BKM TOTAL OFFICE (ASSIGNED TO RIVERSIDE CLAIMS, LLC) | 10,647.00 |
| BOARD OF WATER COMMISSION | 1,232.00 |
| BOB FINKELSTEIN | 125,108.00 |
| BRAINTREE ELECTRIC | 2,518.00 |
| BRANDY L. HOKE | 467.00 |
| BRASK FOX RUN SERVICES | 535.00 |
| BRASS MILL CENTER | - |
| BRE/COLONIE CENTER | - |
| BREAKAWAY COURIER SYSTEMS | 238.00 |
| BRIAN FRANKS | 100,000.00 |
| BRIAN SOBELMAN | 5,193.00 |
| BRIDIE DUFFY | 2,925.00 |
| BRIERE & PAQUETTE INC | 181.00 |
| BROADWAY GARMENT | 16,378.00 |
| BROWNING FERRIS INDUSTRIES | 174.00 |
| BROWNING FERRIS INDUSTRIES | 433.00 |

**NEW WEATHERVANE REATIL CORP.**
**LIST OF UNSECURED CREDITORS  EXHIBIT "C"**
**(See Note 1)**

| Creditor's Name<br>And Mailing Address | Exhibit C<br>Total Amount<br>of Claim |
|---|---|
| BUDGET TERMITE & PEST CONTROL | 60.00 |
| BUILD RETAIL INC | 23,299.00 |
| BUSINESS ALLIANCE CAPITAL | 15,031.00 |
| C L & P | 1,335.00 |
| C L & P | 9,959.00 |
| C.H. ROBINSON WORLDWIDE | 19,719.00 |
| CAFARO COMPANY | - |
| CAITLIN C. ROSSIER | 535.00 |
| CAREER MANAGEMENT INTERNATIONL | 74,225.00 |
| CAROL A. DOMBROV | 164,423.00 |
| CAROLINA HOISERY MILLS | 13,747.00 |
| CAROUSEL CENTER COMPANY LP | - |
| CARRIE A. PEAVEY | 1,322.00 |
| CASEYVILL TOWNSHIP SEWER | 123.00 |
| CBL & ASSOCIATES INC | - |
| CBL & ASSOCIATES MANAGEMENT IN | - |
| CBL & ASSOCIATES MGMT. INC. | - |
| CBL & ASSOCIATES MGMT. INC. | - |
| CCI LOGISTICS LLC | 3,132.00 |
| CDC MORTGAGE INC MORTGAGEE | - |
| CDW DIRECT LLC | 10,998.00 |
| CENTRAL MAINE POWER | 968.00 |
| CENTURYTEL | 69.00 |
| CERTEGY CHECK SERVICES | 8,737.00 |
| CERVALIS LLC | 2,015.00 |
| CHAIN LINK GRAPHIX II | 206,391.00 |
| CHAIN STORE MAINTENANCE INC | 1,522.00 |
| CHARLOTTE BUSH | 1,923.00 |
| CHASE AUTOMOTIVE FINANCE | 657.00 |
| CHERYL BENEDICT | 17.00 |
| CHESTERFIELD | 140,406.33 |
| CHRISTA R. PIJACKI | 982.00 |
| CHRISTINA M. WEBER | 1,190.00 |
| CHRISTINA WEBER | 7.00 |
| CHRISTINE M CAPOLDO | 2,192.00 |
| CHRISTINE O. ROHRICK | 1,328.00 |
| CHRISTOPHER D. DUHAMEL | 4,096.00 |
| CHRISTOPHER M. WEITZ | 3,462.00 |
| CHRISTOPHER S. CLARK | 360.00 |
| CIARA J. KENTNER | 520.00 |
| CINCINNATI BELL TELEPHONE | 373.00 |
| CINERGY / CG&E | 1,139.00 |
| CINERGY / PSI | 624.00 |
| CINTAS | 174.00 |
| CITIZENS GAS & COKE UTILITY | 14.00 |
| CITY OF AURORA | 15.00 |
| CITY OF CHESTERFIELD | 241.00 |
| CITY OF NORTH CANTON | 35.00 |
| CITY OF STERLING HEIGHTS | 33.00 |
| CITY OF WARWICK | 68.00 |
| CLASS ACT CLEANING SERVICE | 633.00 |
| CLASSIFIED / NEDCO INTERN. | 7,986.00 |
| CLS FACILITIES MANAGEMENT SERV | 227.00 |
| COMED | 797.00 |
| CONCEPT IMAGING GROUP INC | 53,218.00 |
| CONCORDIA PROPERTIES LLC | 165,245.36 |
| CONNECTICUT BUSINESS SYSTEMS | 1,112.00 |
| CONNECTICUT FIRE EQUIPMENT | 59.00 |

**NEW WEATHERVANE REATIL CORP.**

**LIST OF UNSECURED CREDITORS  EXHIBIT "C"**

**(See Note 1)**

| Creditor's Name And Mailing Address | Exhibit C Total Amount of Claim |
|---|---|
| CONNECTICUT NATURAL GAS | 3,108.00 |
| CONNECTICUT POST | - |
| CONNECTICUT WATER CO | 28.00 |
| CONSUMERS ENERGY | 516.00 |
| CONSUMERS OHIO WATER | 23.00 |
| COPLAY - WHITEHALL | 21.00 |
| CORAL RIDGE MALL | - |
| CORBIN RUSSWIN INC | 227,100.00 |
| CORRINE A. MESSINA | 2,710.00 |
| COURTENEY R. GREEN | 1,251.00 |
| COURTNEY J. STROTER | 1,070.00 |
| COURTNEY L. ZELLNER | 1,084.00 |
| COURTNIE A. KYDE | 1,288.00 |
| COX COMMUNICATIONS | 82.00 |
| CREATIVE DIMENSIONS | 31,301.00 |
| CRISTALS | 2,117.00 |
| CROSSGATES MALL CO | - |
| CROSSROADS MALL | - |
| CRS RETAIL SYSTEMS | 44,685.19 |
| CRYSTAL F. RYAN | 948.00 |
| CRYSTAL R. GAGAN | 891.00 |
| CRYSTAL WATER COMPANY | 11.00 |
| CT COMMUNICATIONS, INC. | 88.00 |
| CT PERFORMING ARTS PARTNERS | 6,240.00 |
| CURBELL INC | 3,791.00 |
| CWPM | 5,586.00 |
| CYBERSTAFF AMERICA LTD | 3,080.00 |
| DALE G. HUNT | 1,538.00 |
| DANBURY MALL ASSOC. | - |
| DANBURY MALL MARKETING FUND | 486.00 |
| DANIEL KEENAN | 31.00 |
| DANIEL M. PIZZOFERRATO | 4,604.10 |
| DANIEL T. DETUCCIO | 1,615.00 |
| DANIELLE C PORTER | 1,280.00 |
| DANIELLE R. FITZGERALD | 948.00 |
| DARCIE L. SCHALL | 661.00 |
| DARCIE SCHALL | 34.00 |
| DARTMOUTH MALL | - |
| DARTMOUTH MALL | - |
| DAVID B. ENGLISH | 2,000.00 |
| DAVID J. PRENDERGAST | 159.00 |
| DAVID LEWIS SCHWING | 2,325.00 |
| DAVID R SOLTIS | 7,885.00 |
| DAWN L CASO | 2,942.00 |
| DAWN R. PORCO | 1,308.00 |
| DAYTON MALL VENTURE LLC | - |
| DAYTON POWER AND LIGHT CO. | 1,019.00 |
| DE LAGE LANDEN FINANCIAL SERV | 1,049.00 |
| DEBORAH FIGUEROA | 480.00 |
| DECCO INC | 301.00 |
| DELL | 2,336.00 |
| DELOITTE & TOUCHE LLP | 153,037.00 |
| DEMODAZE | 3,750.00 |
| DENISE LOCKHART | 82.00 |
| DENISE R. SIMS | 1,096.00 |
| DESIGN PRODUCTS COMPANY | 1,161.00 |
| DIANA M. JOHNSON | 575.00 |
| DINA M. PEREIRA | 1,581.00 |

**NEW WEATHERVANE REATIL CORP.**
**LIST OF UNSECURED CREDITORS  EXHIBIT "C"**
**(See Note 1)**

| Creditor's Name<br>And Mailing Address | Exhibit C<br>Total Amount<br>of Claim |
|---|---|
| DMX MUSIC | 24,689.00 |
| DOMINION EAST OHIO | 5.00 |
| DOMINION EAST OHIO | 42.00 |
| DONNA CALOGERO | 1,710.00 |
| DONNA JAMES | 58.00 |
| DONNA L. JAMES | 5,289.00 |
| DOUGLAS HECKMAN | 750.00 |
| DUNN MCCORMACK MACPHERSON | 1,140.00 |
| E.L. HARVEY & SONS INC. | 446.00 |
| ECO SYSTEMS PEST CONTROL | 90.00 |
| ECONOCO CORPORATION | 5,301.00 |
| EDWARD H. BRIMACOMB | 4,212.00 |
| EDWIN SEDA | 5,919.00 |
| EIRANNE E. HART | 395.00 |
| ELIZABETH M. ATTARDI | 884.00 |
| EMMA D. KEMP | 2,423.00 |
| ERADICO SERVICES INC | 60.00 |
| ERICA L. WELKER | 757.00 |
| ERIKA L. JOHANSON | 840.00 |
| ERIKA M. REICHNACH | 840.00 |
| ERIN J. PAINE | 824.00 |
| ERIN M. KOTAS | 749.00 |
| ERIN M. SMITH | 1,923.00 |
| ERIN R. KENNEDY | 80.00 |
| EVERETT ELECTRIC | 334.00 |
| EXECUTIVE PAINTING & WALLCOVER | 150.00 |
| FARMINGTON VALLEY PEST CONTROL | 313.00 |
| FASHION LINKS INTERNATIONAL LIMITED (See Note 2) | 1,147,657.00 |
| FASHION SQUARE MALL | 126,091.95 |
| FAST TRUCKING CORP | 955.00 |
| FEDEX | 84.00 |
| FEDEX | 1,083.00 |
| FEDEX | 18,019.00 |
| FEDEX | 40,202.00 |
| FEDEX | 71,609.00 |
| FEDEX | 93,878.00 |
| FIRE CONTROL SERVICE INC | 95.00 |
| FIREPROTEC | 35.00 |
| FIRST UNION / WACHOVIA PROCESS | - |
| FLEET FUELING | 8,910.00 |
| FLOORESOURCE | 525.00 |
| FLORENCE MALL L.L.C. | - |
| FOLEY HOAG LLP | 867.00 |
| FOREIGN SOURCES LTD | 198.00 |
| FOX RIVER MALL | - |
| FOX VALLEY MALL LLC | - |
| FRADES DISPOSAL INC | 827.00 |
| FRANCES MANGIOFICO | 790.00 |
| FRANKLIN VILLAGE TRUST | - |
| G E CAPITAL | 1,889.00 |
| GATEWAY LIMOUSINES | 925.00 |
| GB EQUITY PARTNERS LLC | 4,796.00 |
| GENERAL GROWTH PROPERTIES | - |
| GENERAL SERVICES INC | 358.00 |
| GENESYS CONFERENCING | 2,574.00 |
| GEORGIA K. PETROPOULOS | 1,058.00 |
| GERBER TECHNOLOGY | 907.00 |
| GGP / HOMART INC. | 75,058.44 |

**NEW WEATHERVANE REATIL CORP.**
**LIST OF UNSECURED CREDITORS  EXHIBIT "C"**
**(See Note 1)**

| Creditor's Name<br>And Mailing Address | Exhibit C<br>Total Amount<br>of Claim |
|---|---:|
| GGP GLENBROOK LLC | 132,713.26 |
| GGP MAINE MALL LLC | - |
| GGP/HOMART II LLC-NATICK MALL | 159,873.67 |
| GINA M. STODDARD | 634.00 |
| GINGER C. GUNTER | 468.00 |
| GLANCE EYEWEAR/SUN BAN FASH | 32,284.00 |
| GLOBAL CROSSING | 20,736.00 |
| GRAMERCY MODELS INC | 1,269.00 |
| GRAND MISSION LIMITED | 41,804.00 |
| GRANITE STATE ELECTRIC | 596.00 |
| GRUNFELD DESIDERIO LEBOWITZ | 58,234.00 |
| GURNEE MILLS OPERATING CO. | - |
| GWENDOLYNE MOREIRA | 453.00 |
| H.J. HEYMAN SONS LLC. | - |
| HAMILTON CONNECTIONS INC | 8,295.00 |
| HEATHER M. HARTLEY | 1,077.00 |
| HEATHER R. ROSE | 857.00 |
| HEY DOLL (ASSIGNED TO RIVERSIDE CLAIMS, LLC) | 16,916.00 |
| HILDA RODRIGUEZ | 870.00 |
| HITCHCOCK PRINTING | 42,844.00 |
| HOLLIE B. PICKARD | 1,360.00 |
| HOLLY J. BORGES | 1,188.00 |
| HOLYOKE MALL COMPANY | 167,828.96 |
| HOMEWOOD SUITES | 17,093.00 |
| HORIZON NATIONAL CONTRACT SER.(ASSIGNED TO RIVERSIDE CLAIMS, LLC) | 23,065.33 |
| I.T. RESOURCES LLC | 818.00 |
| IBM CORPORATION | 17,064.00 |
| IC PRINT INC. | 1,714.00 |
| ICICI INFOTECH INC. | 101,038.00 |
| IEM INC | 2,998.00 |
| ILLUMINATING COMPANY | 886.00 |
| ILLUMINATING COMPANY | 1,614.00 |
| ILMARS LABRENCIS | 2,407.00 |
| INDEPENDENCE CENTER LLC | - |
| INDIANAPOLIS WATER COMPANY | 80.00 |
| INNOVATIVE METHODS , PACKING | 166.00 |
| INTERIORS LTD | 124,072.00 |
| INTERNATIONAL INTIMATES INC | 19,196.00 |
| INTIMATE APPEAL | 2,922.00 |
| IRMA S SALAD | 1,342.00 |
| IVETTE V. SANTIAGO | 495.00 |
| J & L FOOTWEAR INC. | 27,262.00 |
| JAMES DICKENS | 2,240.00 |
| JAMES H KELLEY | 5,192.00 |
| JAMES RITCHIE | 19,438.00 |
| JAMIE LEE SCIASCIA | 1,829.00 |
| JANICE D KOWALEC | 3,801.00 |
| JASIN R. KITCHENS | 1,441.00 |
| JASMINA STOJANOVIC | 1,493.00 |
| JASON C. HARRIS | 574.00 |
| JASON M. BATCH | 408.00 |
| JBA GROUP INC | 5,453.00 |
| JENNASYS R. PELLERIN | 1,107.00 |
| JENNIFER A. LETTOW | 1,205.00 |
| JENNIFER ALBERT | 3,077.00 |
| JENNIFER B. BRONHARD | 802.00 |
| JENNIFER J. MOSS | 2,021.00 |
| JENNIFER K. PTACEK | 330.00 |

# NEW WEATHERVANE REATIL CORP.
## LIST OF UNSECURED CREDITORS EXHIBIT "C"
### (See Note 1)

| Creditor's Name<br>And Mailing Address | Exhibit C<br>Total Amount<br>of Claim |
|---|---|
| JENNIFER L. BOWEN-SMITH | 1,601.00 |
| JENNIFER L. BRETT | 948.00 |
| JENNIFER L. COMISH | 749.00 |
| JENNIFER L. GOW | 1,022.00 |
| JENNIFER L. LEBEAU | 951.00 |
| JENNIFER L. RIEGER | 1,386.00 |
| JENNIFER L. UNGETHUM | 376.00 |
| JENNIFER M. CAPRIOLA | 1,347.00 |
| JENNIFER WARD | 1,692.00 |
| JESSICA A. RAZOR | 1,376.00 |
| JESSICA L. RAPOSO | 1,681.00 |
| JG NORTH RALEIGH LLC | 200,376.94 |
| JIGSAW SERVICES INC | 28,133.00 |
| JILLIAN M. GAUDENCIO | 310.00 |
| JILLIAN M. MUNSON | 1,009.00 |
| JOAN D. TURGEON | 1,280.00 |
| JOAN PATRICIA HANNEGAN | 4,900.00 |
| JOANNA L. GERVAIS | 494.00 |
| JOANNA MCQUAID | 200,000.00 |
| JOANNE C. BURNETT | 1,555.00 |
| JOHANNA L. DAVIDSON | 614.00 |
| JOHN CASABLANCAS MODEL | 1,808.00 |
| JOHN J KACZYNSKI III | 3,200.00 |
| JOSEPHINE E. APOSTOLIDIS | 4,050.00 |
| JOY C. PENROSE | 2,258.00 |
| JOY PENROSE | 24.00 |
| JUDITH MORALES | 1,345.00 |
| JULIANA T. FERRACIOLI | 1,440.00 |
| JULIE A. PAQUETTE | 982.00 |
| JULIE K. RANAZZI | 1,280.00 |
| JULIE K. YAPOUJIAN | 923.00 |
| JUMP CLOTHING | 53,094.00 |
| K & K CREATIVE MARKETING (Assigned to Riverside Claims) | 42,540.00 |
| KANTER INTERNATIONAL LLC | 38,373.00 |
| KAP - PAKISTAN | 3,367.00 |
| KARA R. BRUNETTE | 794.00 |
| KATHERINE B. RITCHIE | 228.00 |
| KATHRYN B. LABRENCIS | 731.00 |
| KATHRYN M. KLUKAS | 640.00 |
| KATIE CARMICHAEL | 4,375.00 |
| KEELERGORDON | 5,500.00 |
| KEENE GAS CORPORATION | 66.00 |
| KEITH C. CHAMBERS | 2,250.00 |
| KELLEY L. PAVIA | 847.00 |
| KELLY GARZA | 1,225.00 |
| KELLY J. PHELPS | 731.00 |
| KERRI L. SCOTTALINE | 918.00 |
| KERRY A. TUBBS | 366.00 |
| KEW (Assigned to Riverside Claims, LLC) | 19,300.00 |
| KEYSPAN | 118.00 |
| KEYSPAN ENERGY DELIVERY | 26.00 |
| KEYSPAN ENERGY DELIVERY | 82.00 |
| KIMBERLY K ROSSETTI | 1,189.00 |
| KING OF PRUSSIA ASSOC. 7703 | 88,208.64 |
| KISTLER OBRIEN | 79.00 |
| KNITWEAR NETWORK | 950.00 |
| KORIN E. BRUNO | 1,101.00 |
| KRISTE N. STEVENSON | 2,966.00 |

**NEW WEATHERVANE REATIL CORP.**
**LIST OF UNSECURED CREDITORS  EXHIBIT "C"**
**(See Note 1)**

| Creditor's Name<br>And Mailing Address | Exhibit C<br>Total Amount<br>of Claim |
|---|---|
| KURT GARDNER PHOTOGRAPHY INC | 875.00 |
| LAKE COUNTY | 66.00 |
| LAKESIDE MALL  LLC | - |
| LANDRY COMMUNICATIONS L.L.C. | 759.00 |
| LANESBOROUGH ENTERPRISES MEWCO | 84,351.78 |
| LARON R JOHNSON | 3,200.00 |
| LATIFA N. ABRAMS | 1,072.00 |
| LAURA A. HOMBURG | 686.00 |
| LAURA B. MILLER | 160.00 |
| LAURA J. PROVOST | 934.00 |
| LAURA M. ZEIGLER | 841.00 |
| LAWRENCE J. DAVIDSON.JR | 381,102.00 |
| LEA A. LAWSON | 515.00 |
| LEHIGH VALLEY ASSOC  7711 | 1,365.00 |
| LEHIGH VALLEY ASSOC  7712 | 931.00 |
| LEHIGH VALLEY ASSOCIATES | - |
| LEILA NATH | 1,125.00 |
| LEOMINSTER PARTNERS L.P. | 156,323.58 |
| LG & E | 161.00 |
| LIPA | 744.00 |
| LISA A PRICE | 1,521.00 |
| LISA A. SADDIG | 951.00 |
| LISA L SMITH | 555.00 |
| LISA M. KNIGHT | 2,369.00 |
| LLR PARTNERS INC | - |
| LON RESNICK | 114.00 |
| LORA J. BLANKENBURG | 1,050.00 |
| LOREN M. CLARKE | 1,724.00 |
| LORI A. MARCANTONIO | 536.00 |
| LUCILIA L. PEREIRA | 2,530.00 |
| MAGE ELECTRICAL CONTRACTORS | 13,268.00 |
| MAGGIE FRANCISCO | 1,945.00 |
| MAINE MALL | 125.00 |
| MALL ST. MATTHEWS | - |
| MARATHON INVESTMENT PARTNERS | 2,000,000.00 |
| MARGEAUX G. RICCHIUTO | 1,160.00 |
| MARIA A. JOHNSTONE | 588.00 |
| MARIA A. MIANO | 2,136.00 |
| MARIA G. MARTIN | 510.00 |
| MARIBETH A. CONWAY | 1,539.00 |
| MARISA A. SAMOORIAN | 1,030.00 |
| MARISA L. OBERCON | 276.00 |
| MARK A. MOOT | 1,760.00 |
| MARSHA LINDSTROM | 8,077.00 |
| MARTYS CLEANING SERVICE | 112.00 |
| MARY JO SAMARITANO | 1,920.00 |
| MARYANN BITTNER | 3,462.00 |
| MARYANN CULLUM | 3,119.00 |
| MASSACHUSETTS ELECTRIC CO | 6,292.00 |
| MAYFAIR PROPERTY INC | - |
| MAYFLOWER AUBURN L.P  4918 | - |
| MAYFLOWER CAPE COD LLC | - |
| MAYO GILLIGAN & ZITO | 1,115.00 |
| MCCOY LTD | 155,210.00 |
| MCLAIN ELECTRIC CO INC | 4,789.00 |
| MDI | 199.00 |
| MEDWAY INC (Assigned to Riverside Claims, LLC) | 15,550.00 |
| MEGA MIAMI | 3,600.00 |

**NEW WEATHERVANE REATIL CORP.**
**LIST OF UNSECURED CREDITORS  EXHIBIT "C"**
**(See Note 1)**

| Creditor's Name And Mailing Address | Exhibit C Total Amount of Claim |
|---|---|
| MEGAN M. DAVIS | 515.00 |
| MELINDA C. KESTERSON | 452.00 |
| MELISSA FEHLER | 372.00 |
| MELISSA H. HARDY | 3,384.00 |
| MELISSA HOWARD | 906.00 |
| MELODEE N. CIOTTI | 869.00 |
| MERCHANDISE LIGHTING INC | 2,100.00 |
| MEREDITH J. HARRELL | 1,129.00 |
| MERIDEN SQUARE | - |
| MERIDIAN MALL LIMITED PARTN. | - |
| METRO DOOR | 17,402.00 |
| MGE | 36.00 |
| MICAH L. FINDLEY | 1,622.00 |
| MICHAEL F. COON JR. | 5,077.00 |
| MICHAEL R. CRENSHAW | 1,000.00 |
| MICHELLE D. ETHERIDGE | 981.00 |
| MICHELLE FAIRCHILD | 121.00 |
| MICHELLE L. MILLER | 1,020.00 |
| MICHELLE M. ERBE | 1,026.00 |
| MICHELLE M. FAIRCHILD | 3,404.00 |
| MID RIVERS MALL | - |
| MIKE ALBERT LEASING INC | 16,228.00 |
| MILLENNIUM R.M.S. INC. | 292.00 |
| MNH MALL  L.L.C 4927 | - |
| MODERATO (Purchased By Argo Partners) | 19,184.00 |
| MODERN PEST SERVICES | 70.00 |
| MONTGOMERYVILLE ASSOC  7710 | 170,486.85 |
| MPD TRANSPORT INC | 321.00 |
| MUZAK | 759.00 |
| NANCY MORSE | 52,287.00 |
| NARRAGANSETT ELECTRIC | 1,634.00 |
| NATALIE M. BARTOLONE | 1,270.00 |
| NATALIE M. HOLTZCLAW | 152.00 |
| NATIONAL SERVICES GROUP INC | 2,243.00 |
| NATIVE INTIMATES | 16,148.00 |
| NEW CASTLE ASSOCIATES (Claim of Herry Hill Center, LLC c/o Jeffrey Kurtzman, Esq.) | 197,149.29 |
| NEW ENGLAND GAS COMPANY | 28.00 |
| NEW WEATHERVANE REAL ESTATE CP | 2,407.00 |
| NEW YORK STATE | 2,455.00 |
| NEWMARK & COMPANY REAL ESTATE | 1,797.00 |
| NIAGARA MOHAWK | 2,072.00 |
| NICOLE A YUTZ | 1,285.00 |
| NICOLE A. CARTEN | 906.00 |
| NICOLE M. HASPERG | 380.00 |
| NICOLE M. MCMANUS | 859.00 |
| NICOLE S. PRIMROSE | 378.00 |
| NIKELLE K. HINCKLEY | 2,497.00 |
| NIXON PEABODY LLP | 3,158.00 |
| NMHG FINANCIAL SERVICE INC | 525.00 |
| NORTEL NORSTAR | 3,427.00 |
| NORTHERN UTILITIES | 37.00 |
| NSB / STS | 30,632.00 |
| NSTAR | 2,985.00 |
| NSTAR ELECTRIC | 3,670.00 |
| OAKDALE MALL ASSOCIATES LP | 7,117.31 |
| OAKLEAF WASTE MANAGEMENT | 1,425.00 |
| OBERMAYER REBMANN | 3,347.00 |
| OFALLON | 64.00 |

**NEW WEATHERVANE REATIL CORP.**
**LIST OF UNSECURED CREDITORS  EXHIBIT "C"**
**(See Note 1)**

| Creditor's Name<br>And Mailing Address | Exhibit C<br>Total Amount<br>of Claim |
|---|---:|
| OFFICE DEPOT | 780.00 |
| OFFICE TEAM | 5,851.00 |
| ONE HOUR MOTOPHOTO | 1,579.00 |
| ONYX WASTE SERVICES INC | 290.00 |
| OUTSOURCE SOLUTIONS | 3,080.00 |
| P S N H | 4,831.00 |
| PACE | 5,833.00 |
| PACIFIC LOGISTICS CORP | 14,132.00 |
| PALM DESIGN LIMITED | 480.00 |
| PAMELA M KLUKAS | 3,451.00 |
| PAPERPOUND LLC | 309.00 |
| PATRICIA A. SCRIBNER | 1,288.00 |
| PAVILLION AT BUCKLAND HILLS | - |
| PC CONNECTION | 1,960.00 |
| PEABODY MUNICIPAL LIGHT PLANT | 2,480.00 |
| PELLITTERI WASTE SYSTEMS | 167.00 |
| PENELEC | 918.00 |
| PENN ROSS JOINT VENTURE | 187,281.38 |
| PEPPER HAMILTON | 85,835.88 |
| PLANET LINGERIE | 11,379.00 |
| POUGHKEEPSIE GALLERIA COMPANY | - |
| POWER DEL VALLE LLP | 1,610.00 |
| PRALINES ICE CREAM | 126.00 |
| PREFERRED MECHANICAL SERVICE | 1,730.00 |
| PROGRESSIVE BUSINESS PUB | 95.00 |
| PROVIDENCE PLACE GROUP LP. | 87.00 |
| PURETECH WATERS OF AMERICA | 953.00 |
| PYRAMID CO. OF BUFFALO | 120.00 |
| PYRAMID MALL OF GLENN FALLS | 99,250.14 |
| PYRAMID WALDEN CO | - |
| QWEST | 95.00 |
| RAINBOW | 13,808.00 |
| RAMO COFFEE SERVICE | 580.00 |
| RANDI RAIMONDO | 1,528.00 |
| RAYMOND GUERRERO | 160.00 |
| REBECCA A. DAVEY | 861.00 |
| REBECCA L. DUTTON | 824.00 |
| REBECCA M. CATRICALA | 1,070.00 |
| REEL UNLIMITED PRODUCTIONS | 570.00 |
| RENEE M. GORDON | 3,335.00 |
| REPUBLIC SERVICES OF NJ  INC | 393.00 |
| RIGHTER CORPORATION | 4,114.00 |
| RIVERTOWN CROSSINGS | - |
| RIVERTOWN CROSSINGS | - |
| ROBELAN DISPLAYS | 211.00 |
| ROBERT FINKELSTEIN | 6,924.00 |
| ROBERT WILSON | 80.00 |
| ROSA D CORMIER | 2,258.00 |
| ROTH BROS INC | 27,081.00 |
| ROTTERDAM SQ.MARKETING & PROMO | 123.00 |
| ROTTERDAM SQUARE LP | 105,686.07 |
| ROUSE PROVIDENCE LLC | - |
| ROUSE PROVIDENCE LLC | - |
| ROYAL TIRE COMPANY | 114.00 |
| RUSSELL L. BURNS | 7,500.00 |
| RYAN MOVING & STORAGE INC | 3,759.00 |
| RYAN P. MAINS | 480.00 |
| SABRYNA T. ACEVEDO-BURRILL | 464.00 |

**NEW WEATHERVANE REATIL CORP.**
**LIST OF UNSECURED CREDITORS  EXHIBIT "C"**
**(See Note 1)**

| Creditor's Name<br>And Mailing Address | Exhibit C<br>Total Amount<br>of Claim |
|---|---|
| SAGINAW CHARTER TOWNSHIP WATER | 52.00 |
| SAMALID N. ROSARIO | 2,656.00 |
| SAMALID ROSARIO | 100.00 |
| SAMANTHA A. ROSARIO | 654.00 |
| SAMARA L. WADE | 230.00 |
| SANDAIR | 7,475.00 |
| SANDERSON SEASONALS SERVICES | 1,057.00 |
| SANDRA J. DECARLO | 4,067.00 |
| SARAH A. DAVIS | 3,090.00 |
| SARAH M. THOMPSON | 1,040.00 |
| SBC | 653.00 |
| SBC | 723.00 |
| SBC | 1,236.00 |
| SBC | 1,287.00 |
| SBC | 2,056.00 |
| SCHALLER AUTO BODY | 2,405.00 |
| SCHWARZ | 74,718.00 |
| SECRET FASHIONS | 13,289.00 |
| SENSORMATIC ELECTRONICS | 743.00 |
| SERVICE SPECIALISTS INC | 407.00 |
| SHANNON L. SOUTHERN | 1,189.00 |
| SHANNON R. SCHMIDT | 1,070.00 |
| SHARON M. ELLIS | 1,926.00 |
| SHARON N. HAUSE | 2,131.00 |
| SHELLEY BAILEY | 300.00 |
| SHERRY L. ROTHENBERGER | 1,030.00 |
| SHERYL A. BENWAY | 1,267.00 |
| SHOWBEST FIXTURE CORP | 1,034.00 |
| SIEGEL O'CONNOR ZANGARI | 2,838.00 |
| SIEMENS BUILDING TECH | 535.00 |
| SILVER CITY GALLERIA L.L.C | - |
| SIMON PROPERTY GROUP LP | 129,547.81 |
| SIMONE A. MULLA | 1,080.00 |
| SIMPLEX GRINNELL | 810.00 |
| SIZZLE BEACH | 150,671.00 |
| SNET CARRIER SERVICES | 1,085.00 |
| SNET CO | 5,723.00 |
| SNOWBIRD CORP | 26.00 |
| SOLO MECHANICAL MAINTENANCE (Assigned to Riverside Claims, LLC) | 14,392.00 |
| SONIA E. MULLAHY | 413.00 |
| SONITROL COMMUNICATIONS CORP | 88.00 |
| SOUTH COUNTY SHOPPINGTOWN LLC | 190,299.04 |
| SOUTH SHORE MALL | 120,220.69 |
| SOUTHLAKE | - |
| SOUTHLAND JOINT VENTURE | - |
| SOVEREIGN BANK | 568.00 |
| SOXLAND INTERNATIONAL | 493.00 |
| SPENCER TECHNOLOGIES | 20,052.00 |
| STACEY A. CSAPO | 3,185.00 |
| STACY M VIEIRA | 2,082.00 |
| STANDARD ELECTRIC | 4,975.00 |
| STANLEY B. SILVER | 15,000.00 |
| STAPLES BUSINESS ADVANTAGE | 10,505.00 |
| STATE OF NEW HAMPSHIRE | 100.00 |
| STEFANIE L. SZYMANSKI | 948.00 |
| STEPHAN CARAMMA | 4,846.00 |
| STEPHANIE D. GAINES | 435.00 |
| STEPHANIE D. LINNEHAN | 324.00 |

**NEW WEATHERVANE REATIL CORP.**
**LIST OF UNSECURED CREDITORS  EXHIBIT "C"**
**(See Note 1)**

| Creditor's Name<br>And Mailing Address | Exhibit C<br>Total Amount<br>of Claim |
|---|---|
| STEPHANIE SHEN | 4,327.00 |
| STEVEN COFFEY | 2,285.00 |
| STORED VALUE SYSTEMS INC | 34,410.00 |
| STUDIO CENTER | 925.00 |
| STYLMARK INC | 275.00 |
| SUNSHINE ENTERPRISES | 487.00 |
| SUSAN L. HICKS | 2,850.00 |
| SYNNOTT IMAGING SYSTEMS (Assigned to Riverside Claims, LLC) | 6,485.00 |
| T MOBILE | 62.00 |
| T.A.L. TEXTILES ASSOCIATION | 2,496.00 |
| TABITHA L. KEEFE | 2,454.00 |
| TAMARA L. O'SHEA | 1,358.00 |
| TAMMELA JO BAKER SALVETT | 3,750.00 |
| TAMMY S. DORRANCE | 1,414.00 |
| TAMMY SALVETT | 118.00 |
| TANYA T. AHLSWEDE | 1,006.00 |
| TARA J. PICHETTE | 1,976.00 |
| TARGET AIRFREIGHT | 2,418.00 |
| TAUBMAN AUBURN HILLS ASSOC LP | 355,861.97 |
| TDS TELECOM | 66.00 |
| TERESA M. GONZALES | 576.00 |
| TERRIE A. SEAVEY | 1,406.00 |
| THERESA D. ERIKS | 379.00 |
| THOMAS H DAVIDSON | 195,821.00 |
| TKL - EAST LLC | 139,534.60 |
| TRACY J. MEYERS | 990.00 |
| TRACY L. CLEAR | 428.00 |
| TRACY L. OUELLETTE | 554.00 |
| TRACY M. CELLA | 3,173.00 |
| TRACY M. LAMBDIN | 550.00 |
| TRAE D. CUNNINGHAM | 1,386.00 |
| TRAVEL FORUM | 1,238.00 |
| TRI COUNTY LOCK | 75.00 |
| TRISHA L. SAWALL | 476.00 |
| TUTTLE CROSSING ASSOCIATES LLC | 229,808.01 |
| U.S. POSTAL SERVICE | 920.00 |
| UNISOURCE WORLDWIDE INC. | 9,349.00 |
| UNITED ILLUMINATING | 1,853.00 |
| UNITED PAINT & WALLPAPER INC | 365.00 |
| UNITIL CONCORD ELECTRIC | 1,540.00 |
| UNIVERSITY MALL OPERATING ACCT | - |
| UPPER MERION TOWNSHIP | 42.00 |
| US COLOR LABS | 260.00 |
| US CUSTOMS SERVICE | 49,194.00 |
| VALUE LOCKSMITH CORP INC | 210.00 |
| VALUE OFFICE FURNITURE | 1,120.00 |
| VANDALE INDUSTRIES INC. | 14,898.00 |
| VARSITY CONTRACTORS INC | 65.00 |
| VERIZON | 119.00 |
| VERIZON | 220.00 |
| VERIZON | 256.00 |
| VERIZON | 285.00 |
| VERIZON | 345.00 |
| VERIZON | 1,735.00 |
| VERIZON | 2,591.00 |
| VERIZON NORTH | 421.00 |
| VERIZON WIRELESS | 466.00 |
| VERIZON WIRELESS | 864.00 |

**NEW WEATHERVANE REATIL CORP.**
**LIST OF UNSECURED CREDITORS  EXHIBIT "C"**
**(See Note 1)**

| Creditor's Name And Mailing Address | Exhibit C Total Amount of Claim |
|---|---|
| VERIZON WIRELESS | 1,320.00 |
| VERIZON WIRELESS | 6,336.00 |
| VERIZON WIRELESS MESSAGING SER | 316.00 |
| VERMONT GAS SYSTEM INC | 17.00 |
| VICTORIA J. BATTISTA | 791.00 |
| VILLAGE OF ORLAND PARK | 42.00 |
| VIRA MANUFACTURING INC | 32,516.00 |
| VISION POINT OF SALE INC. | 31,512.00 |
| WARWICK MALL | 27,188.31 |
| WARWICK MALL MERCHANTS ASSOC. | 1,088.00 |
| WARWICK SEWER AUTHORITY | 93.00 |
| WASTE MANAGEMENT | 1,558.00 |
| WASTE MANAGEMENT | 2,170.00 |
| WASTE MANAGEMENT OF OHIO | 349.00 |
| WATKINS MOTOR LINES INC | 256.00 |
| WE ENERGIES | 636.00 |
| WEA BELDEN LLC | - |
| WEA SOUTHPARK LLC | - |
| WELCH ENTERPRISES NC | 1,866.00 |
| WENDY WEST HICKEY | 244.00 |
| WEST COUNTY | 280,005.23 |
| WESTCOTT DESIGN LTD | 1,000.00 |
| WESTFARMS MALL, LLC | - |
| WESTFIELD SHOPPINGTOWN | 50.00 |
| WESTFIELD SHOPPINGTOWN | 50.00 |
| WESTFIELD SHOPPINGTOWN HAWTHOR | - |
| WHITEHALL TOWNSHIP AUTHORITY | 15.00 |
| WILHELMINA INTERNATIONAL | 986.00 |
| WILLIAM J. STERLING | 3,173.00 |
| WISCONSIN PUBLIC SERVICE CORP | 628.00 |
| WOMACK | 795.00 |
| WORKER TRAINING FUND | 333.00 |
| WORLD OMNI FINANCIAL CORP | 879.00 |
| XCELLENET | 7,208.00 |
| XEROX CORPORATION | 13,152.00 |
| YAKEDRA T. MCKINNON | 1,265.00 |
| YANKEE GAS SERVICES | 69.00 |
| YELLOW FREIGHT SYSTEM | 1,000.00 |
| | 13,027,784.87 |

Note (1) Approximate Distibution amount is 3.6% per $1.  In accordance with the Motion, there shall be no distribution if the amount to be paid is less than $25.

Note (2) The Committee is still in the process of identifying the correct claim holder(s) and reserves its right to distribute the funds to an entity other than Fashion Links International Limited

Order Filed on 12/23/2008 by Clerk U.S. Bankruptcy Court District of New Jersey

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**
COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
A Professional Corporation
Court Plaza North
25 Main Street, P.O. Box 800
Hackensack, NJ 07602-0800
(201) 489-3000
(201) 489-1536 Facsimile
Michael D. Sirota, Esq.
David M. Bass, Esq.
Attorneys for Princeton Ski Shop, Inc., *et al.,* Debtors-in-Possession

COOLEY GODWARD KRONISH LLP
1114 Avenue of the Americas
New York, NY 10021
Tel. (212) 479-6000
Fax. (212) 479-6275
Jay R. Indyke, Esq.
Brent Weisenberg, Esq.

LOWENSTEIN SANDLER PC
65 Livingston Avenue
Roseland, NJ 07068-1791
Tel. (973) 597-2500
Fax. (973) 597-2400
Sharon L. Levine, Esq.
Attorneys for the Official Committee of Unsecured
Creditors of Princeton Ski Shop, Inc., *et al.*

In re:

PRINCETON SKI SHOP, INC., *et al.,*

        Debtors-in-Possession.

Case Nos. 07-26206 (MS), 07-26207 (MS),
          07-26208 (MS), 07-26209 (MS)

Judge:  Honorable Morris Stern

Chapter 11

(Jointly Administered)

Hearing Date: December 19, 2008, at 11:30 a.m.

**ORDER (I) DISMISSING THE DEBTORS' CHAPTER 11 CASES PURSUANT TO
SECTION 1112(b) OF THE BANKRUPTCY CODE AND (II) AUTHORIZING THE
<u>PAYMENT OF FUNDS TO ADMINISTRATIVE CREDITORS</u>**

The relief set forth on the following page, numbered two (2) through seven (7), is hereby
**ORDERED**.

**DATED: 12/23/2008**

Honorable Morris Stern
United States Bankruptcy Judge

(Page 2)

| | |
|---|---|
| Debtor: | PRINCETON SKI SHOP, INC., *et al.* |
| Case No: | 07-26206 (MS) Jointly Administered |
| Caption of Order: | ORDER (I) DISMISSING THE DEBTORS' CHAPTER 11 CASES PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE AND (II) AUTHORIZING THE PAYMENT OF FUNDS TO ADMINISTRATIVE CREDITORS |

---

Upon the motion (the "Motion")[1] dated November 21, 2008 of Princeton Ski Shop, Inc.,

*et al.* (collectively, the "Debtors") and their Official Committee of Unsecured Creditors (the

"Committee," and collectively with the Debtors, the "Movants"), requesting entry of an order,

*inter alia*, (i) dismissing the Debtors' chapter 11 cases pursuant to § 1112(b) of title 11 of the

United States Code (the "Bankruptcy Code") and (ii) authorizing the Debtors to pay the funds

remaining in their possession to administrative creditors holding allowed claims against the

Debtors, including to professionals of these estates; and it appearing that the Court has

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

§§ 157 and 1334; and due notice of the Motion having been provided to (a) the Office of the

United States Trustee and (b) all creditors who (i) have filed claims as of the respective bar dates

set forth in these cases, (ii) have filed notices of appearance; (iii) appear in Schedules E and F to

the Debtors' schedule of liabilities or (iv) appear on the Debtors' most recent Master Service

List; and this Court having reviewed the Motion and having conducted a hearing on the Motion

at which time the Movants and all parties in interest were given an opportunity to be heard; and it

further appearing that the relief requested in the Motion is in the best interests of the Debtors and

their estates and creditors; and upon all of the proceedings had before the Court; and after due

deliberation and sufficient cause appearing therefor, it is hereby

ORDERED as follows:

---

[1]     Any term not defined herein shall have the meaning ascribed to it in the Motion.

*Approved by Judge Morris Stern December 23, 2008*

(Page 3)

| | |
|---|---|
| Debtor: | PRINCETON SKI SHOP, INC., *et al.* |
| Case No: | 07-26206 (MS) Jointly Administered |
| Caption of Order: | ORDER (I) DISMISSING THE DEBTORS' CHAPTER 11 CASES PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE AND (II) AUTHORIZING THE PAYMENT OF FUNDS TO ADMINISTRATIVE CREDITORS |

1.      Pursuant to § 1112(b) of the Bankruptcy Code, the Debtors' chapter 11 cases are hereby dismissed.

2.      All objections to the Motion, to the extent not withdrawn, are overruled.

3.      Subject to the other disbursements authorized by this Order, the Debtors are authorized to distribute on a *pro rata* basis from the Accounts all of the Debtors' remaining funds (which total $372,636.33) to (i) creditors holding allowed administrative claims and (ii) the professionals in accordance with the final orders of the Court granting estate professionals' respective fee applications (all of which were entered December 19, 2008), up to the amounts as set forth in **Exhibit "A"** hereto.

4.      The Debtors are authorized to further distribute the sum of $8,125 from the Accounts to pay any fees incurred by the Debtors pursuant to 28 U.S.C. § 1930.

5.      The Debtors are authorized to retain (and not distribute on account of allowed administrative claims) (i) up to the sum of $1,360.00 to be utilized solely with respect to storage fees incurred or to be incurred for the period December 2008 through January 2009; (ii) up to the sum of $2,500.00 to be utilized solely with respect to shredding expenses to destroy the Debtors' books and records (to the extent not retained or turned over in accordance with this Court's Order Authorizing the Debtors to Abandon and Destroy the Debtors' Books and Records Pursuant to 11 U.S.C. § 554 and Fed. R. Bankr. P. 6007(a) entered November 10, 2008 [Docket No. 463]); (iii) the sum of $792 to be utilized solely with respect to the Debtors' payroll service so that it will issue W-2 statements to the Debtors' former employees; and (iv) up to the sum of

*Approved by Judge Morris Stern December 23, 2008*

| | |
|---|---|
| Debtor: | PRINCETON SKI SHOP, INC., *et al.* |
| Case No: | 07-26206 (MS) Jointly Administered |
| Caption of Order: | ORDER (I) DISMISSING THE DEBTORS' CHAPTER 11 CASES PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE AND (II) AUTHORIZING THE PAYMENT OF FUNDS TO ADMINISTRATIVE CREDITORS |

$2,000 to Richard Carp, to be utilized solely with respect to services to be rendered and expenses incurred in connection with his duty to wind up the affairs of the Debtors, including but not limited to making the requisite disbursements under this Order (collectively, the "Wind Down Holdback"); provided, however, that prior to the payment of any amounts on account of the Wind Down Holdback, Mr. Carp shall present appropriate invoices or time records to counsel for the Debtors and counsel for the Committee, either of which may authorize the disbursement of such sums, including the amounts payable to Mr. Carp consistent with his employment agreement with the Debtors' estates.

6.      The Debtors are authorized to retain (and not distribute on account of allowed administrative claims) up to the sum of $9,976.67 to be utilized solely with respect to alleged administrative sales taxes due to the State of New York (the "Sales Tax Holdback"), to be disbursed upon the consent of counsel for the Debtors and counsel for the Committee; provided, however, that nothing herein shall require the Debtors to pay to the Sales Tax Holdback to the State of New York.

7.      Counsel and/or the financial advisor to the Debtors are authorized to retain (and not distribute on account of allowed administrative claims) up to the sum of $2,000.00 to be utilized solely by the Debtors to file tax returns and/or dissolve the Debtors under applicable state law (the "Corporate Dissolution Holdback"), to be disbursed upon the consent of either counsel for the Debtors or counsel for the Committee.

*Approved by Judge Morris Stern December 23, 2008*

(Page 5)
Debtor:              PRINCETON SKI SHOP, INC., *et al.*
Case No:             07-26206 (MS) Jointly Administered
Caption of Order:    ORDER (I) DISMISSING THE DEBTORS' CHAPTER 11 CASES
                     PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE
                     AND (II) AUTHORIZING THE PAYMENT OF FUNDS TO
                     ADMINISTRATIVE CREDITORS

---

8.      Any payment authorized by this Order that would result in a payment of less than $100 shall not be made.

9.      Within 30 days of entry of this Order, the Debtors shall distribute the funds from the Accounts to creditors holding allowed administrative claims solely as set forth in Exhibit "A." The Debtors shall not make any payment other than as expressly set forth in this Order (including those payments set forth on Exhibit "A") without the prior written consent of counsel for the Debtors or counsel for the Committee.

10.     Any distributed check(s) that have not been claimed and/or cashed after three months from the date of such check(s) shall be deemed void.

11.     Any funds that remain in the Accounts after said three-month period, including on account of the Wind Down Holdback, the Sales Tax Holdback and/or the Corporate Dissolution Holdback, shall, after reduction for the costs of administration of the funds, be turned over to the Debtors for either (i) the *pro rata* distribution to administrative creditors listed on Exhibit "A", to the extent not otherwise paid in full, (ii) the filing of tax returns or the dissolution of the Debtors under applicable state law, or (iii) to be donated to a Newark-based charity.

12.     Any party not objecting to the relief requested in the Motion is barred from asserting any claims against the Accounts, or against the Debtors, counsel to the Debtors and/or counsel for the Committee with respect to any actions taken in furtherance of this Order.

*Approved by Judge Morris Stern December  23, 2008*

| | |
|---|---|
| Debtor: | PRINCETON SKI SHOP, INC., *et al.* |
| Case No: | 07-26206 (MS) Jointly Administered |
| Caption of Order: | ORDER (I) DISMISSING THE DEBTORS' CHAPTER 11 CASES PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE AND (II) AUTHORIZING THE PAYMENT OF FUNDS TO ADMINISTRATIVE CREDITORS |

13.     Any Objecting Creditor who failed to follow the objection procedures set forth in the Motion and the Notice is barred from asserting any claims against the Accounts and is deemed to have accepted the payment as outlined in Exhibit "A".

14.     Upon disbursement of all funds of the Debtors' estates, the Committee shall be dissolved.

15.     Pursuant to § 554(a) of the Bankruptcy Code, the Debtors, in consultation with counsel for the Committee, is authorized to abandon any property of the estates without further order of this Court.

16.     The Movants shall provide a report or reports to the U.S. Trustee after the payment to administrative creditors contemplated in the Motion and authorized by this Order is made, on the specific payments made to administrative creditors, on any checks that were unclaimed and on the time spent and expenses incurred by Movants with respect to the administration of the payments to administrative creditors.

17.     Notwithstanding § 349 of the Bankruptcy Code, prior Orders of this Court shall survive the dismissal of these cases.

18.     This Order shall be filed consistent with this Court's Order Directing Joint Administration of the Debtors' Chapter 11 Cases Pursuant to Fed. R. Bankr. P. 1015(b) dated November 5, 2007, and may be filed on the separate dockets maintained with respect to Case No. 07-20207 (MS) through Case No. 07-20209 (MS).

*Approved by Judge Morris Stern December 23, 2008*

(Page 7)

| | |
|---|---|
| Debtor: | PRINCETON SKI SHOP, INC., *et al.* |
| Case No: | 07-26206 (MS) Jointly Administered |
| Caption of Order: | ORDER (I) DISMISSING THE DEBTORS' CHAPTER 11 CASES PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE AND (II) AUTHORIZING THE PAYMENT OF FUNDS TO ADMINISTRATIVE CREDITORS |

19.     This Court shall retain jurisdiction with respect to any matters, claims, rights or

disputes arising from or relating to the implementation of any Order of this Court.

*Approved by Judge Morris Stern December  23, 2008*

**A  UbTb  G**

*Approved by Judge Morris Stern December  23, 2008*

**Princeton Ski et. al.**
**Administrative Claim**
**As of 12/19/08**

| | TOTAL | To be paid @ 85.789% |
|---|---|---|
| ACTION CARTING | 823.00 | 706.04 |
| ALARM SPECIALISTS | 624.25 | 535.54 |
| BLACK BEAR | 223.73 | 191.94 |
| CABLEVISION | 409.16 | 351.01 |
| CAREFREE BUS TRIPS | 1,800.00 | 1,544.20 |
| COMCAST | 194.75 | 167.07 |
| COMMAND SECURITY SYSTEMS INC | 882.15 | 756.79 |
| CON EDISON | 20,754.00 | 17,804.66 |
| CRAZEE HEADS | 311.86 | 267.54 |
| EAGLE LEASING | 410.74 | 352.37 |
| FEDEX | 6.05 | 5.19 |
| GRENADE LLC | 2,930.09 | 2,513.70 |
| HOME DEPOT CREDIT SERVICES | 58.96 | 50.58 |
| KEYSPAN | 4,955.00 | 4,250.85 |
| L.I.P.A. | 8,230.64 | 7,060.99 |
| MANSELL GROUP | 929.80 | 797.67 |
| MASTER FIT | 1,350.00 | 1,158.15 |
| NYSIF | 3,745.20 | 3,212.97 |
| OBERMEYER | 7,995.00 | 6,858.84 |
| POLAND SPRING | 731.40 | 627.46 |
| PSE&G | 2,547.00 | 2,185.05 |
| PURE HEALTH SOLUTIONS, INC | 223.00 | 191.31 |
| RAINY PASS REPAIR | 43.00 | 36.89 |
| STAPLES | 1,742.83 | 1,495.16 |
| STATE OF NEW JERSEY (SALES TAX) | 16,831.82 | 14,439.86 |
| VERIZON | 446.92 | 383.41 |
| **Professionals:** | | |
| BEDERSON | 66,969.87 | 57,452.82 |
| COLE SCHOTZ | 106,571.19 | 91,426.42 |
| COOLEY | 90,349.86 | 77,510.29 |
| JH COHN | 40,830.00 | 35,027.67 |
| KURTZMAN | 15,000.00 | 12,868.36 |
| LOWENSTEIN | 35,442.21 | 30,405.54 |
| **TOTAL** | **$ 434,363.48** | **$ 372,636.33** |

B&Co. LLP

*Approved by Judge Morris Stern December 23, 2008*

Form 148 – ntcdsmcs

# UNITED STATES BANKRUPTCY COURT

District of New Jersey
MLK Jr Federal Building
50 Walnut Street
Newark, NJ 07102

---

Case No.:  07–26206–MS
Chapter:  11
Judge:  Morris Stern

In Re: Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):
Princeton Ski Shop, Inc.
dba Princeton Ski Shops
700 Route 3 West
Clifton, NJ 07012

Social Security No.:

Employer's Tax I.D. No.:
61–1473574

---

## NOTICE OF ORDER DISMISSING CASE

NOTICE IS HEREBY GIVEN that an Order Dismissing the above captioned Case was entered on December 23, 2008
Any discharge which was granted in this case is revoked. All outstanding fees to the Court are due and owing and must be paid within five days from the date of this Order.

Dated: December 23, 2008
JJW: rah

James J. Waldron
Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WICKES HOLDINGS, LLC and<br>WICKES FURNITURE COMPANY, INC., | Case No. 08-10212 (KJC)<br>(Jointly Administered) |
| Debtors. | **Ref. Docket Nos. 1346, 1393** |

## ORDER, PURSUANT TO SECTIONS 105(c), 349 AND 1112(b) OF THE BANKRUPTCY CODE, (A) AUTHORIZING GUC TRUST AGREEMENT, (B) DISMISSING THE DEBTORS' CHAPTER 11 CASES, AND (C) GRANTING CERTAIN RELATED RELIEF

Upon the motion of Wickes Holdings, LLC and Wickes Furniture Company, Inc., the debtors and debtors-in-possession in the above-captioned cases (collectively, the "**Debtors**"), pursuant to sections 105(c), 349 and 1112(b) of the Bankruptcy Code, for the entry of an Order (a) approving procedures for (i) the resolution of all general unsecured claims against the Debtors and the distribution of funds held in trust for the benefit of general unsecured creditors and (ii) the dismissal of the Debtors' bankruptcy cases; and (b) granting certain related relief [Docket No. 1346] (the "**Motion**");[1] and this Court having reviewed the Motion and having conducted a hearing on the Motion, at which time the Debtors and all parties-in-interest were given an opportunity to be heard; and it appearing that the notice of the Motion having been given to (a) the United States Trustee for the District of Delaware, (b) counsel to Wells Fargo, (c) counsel to Ableco Finance LLC, (d) counsel to the Committee, (e) counsel to equity holders, (f) all creditors and (g) parties that have requested service of papers pursuant to Bankruptcy Rule 2002; and the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (b)

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Motion.

notice of the Motion and the opportunity for a hearing thereon were adequate and appropriate under the circumstances and no other notice need be given, (c) the legal and factual bases set forth in the Motion constitute just cause for the relief granted herein, and (d) the requested relief in the Motion is in the best interests of the Debtors' estates and their creditors; and after due deliberation and sufficient cause appearing therefore, it is

ORDERED, ADJUDGED AND DECREED, THAT:

1.      The Motion is hereby GRANTED, in part, as set forth herein.

2.      The Debtors and Committee are hereby authorized to enter into that certain GUC TRUST AGREEMENT, a copy of which is attached hereto as **Exhibit "A,"** and to take all necessary steps to effectuate the terms of that agreement.  The Committee is authorized to transfer the GUC Funds to the GUC Trust pursuant to the GUC Trust Agreement.  The GUC Trustee is authorized to administer the GUC Trust and distribute the GUC Funds in accordance with the terms of the GUC Trust Agreement.

3.      Wells Fargo shall have the sole authority to prosecute and settle the Excluded Insider Actions and any other causes of action other than Avoidance Actions.

4.      Wells Fargo's insurance unit, Wells Fargo Insurance Services, Inc. shall have the sole authority to resolve any claims under the Debtors' insurance policies with Old Republic pursuant to the Insurance Stipulation and to settle all workers' compensation claims.

5.      From and after the date of this Order, none of the Debtors, nor the Committee, nor any of the Debtors' and the Committee's respective present or former directors, officers, employees, members, attorneys, consultants, advisors and agents (acting in such capacity), shall have or incur any liability to any person for any act taken or omitted to be taken in connection with or related to the formation, preparation, dissemination, implementation, confirmation or consummation of the Motion (other than an action in contravention of the Motion or the

implementation of this Order), or any contract, instrument, release or agreement or document created or entered into, or any other act taken or omitted to be taken in connection with the Motion or this Order.

6.    Pursuant to section 1112(b) the Bankruptcy Code, the Debtors' chapter 11 cases are hereby dismissed.

7.    All quarterly U.S. Trustee fees shall be paid in full.

8.    Notwithstanding section 349 of the Bankruptcy Code, prior Orders of the Court shall survive dismissal of these cases.

9.    The Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or relating to the implementation of any Order of this Court and to rule on the allowance of the interim and final compensation of professionals retained in these cases. A final hearing on compensation of professionals shall be held on May 20, 2009.

Dated: May 11, 2009

Honorable Kevin J. Carey
Chief United States Bankruptcy Judge

# EXHIBIT A

## GUC TRUST AGREEMENT

This GUC TRUST AGREEMENT (the "Agreement" or "GUC Trust Agreement") is made and entered into, as of the ___<sup>th</sup> day of March, 2009, by and among Wickes Holdings, LLC and Wickes Furniture Company, Inc., the debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors" or "Wickes"), the official committee of unsecured creditors appointed in the chapter 11 case of Wickes (the "Committee"), and Anthony C. Labrosciano (the "GUC Trustee"). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the DIP Order (as hereinafter defined).

### RECITALS

WHEREAS, On February 3, 2008, each of the Debtors filed a voluntary petition for reorganization under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"); and

WHEREAS, on March 28, 2008, the Court entered that certain order (the "DIP Order") (Docket No. 513) approving a $30 million senior secured financing facility with Wells Fargo Retail Finance LLC, as collateral agent and administrative agent, and the lenders party thereto; and

WHEREAS, under the terms of the DIP Order, among other things, (i) the GUC Trust was established for the benefit of general unsecured creditors, (ii) the ability to pursue certain assets of the Debtors was transferred to the Committee on behalf of the GUC Trust including, but not limited to, the Avoidance Actions, and (iii) the GUC Trust was provided with certain rights to the proceeds of Collateral identified therein; and

WHEREAS, this GUC Trust Agreement is established under and pursuant to Paragraphs 9 and 11 of the DIP Order which provides for the appointment of the GUC Trustee to administer the GUC Trust for the benefit of general unsecured creditors of the Debtors; and

WHEREAS, the GUC Trustee has agreed to serve upon the terms and subject to the conditions set forth in this Agreement.

NOW, THEREFORE, in accordance with the DIP Order and in consideration of the promises and of the mutual covenants and agreements contained herein, the parties hereto agree as follows:

### DECLARATION OF TRUST

The Committee hereby absolutely assigns to the GUC Trust, and to its successors in trust and its successors and assigns, all right, title and interest of the Committee in and to the Trust Assets (as defined below);

TO HAVE AND TO HOLD unto the GUC Trust and its successors in trust and its successors and assigns forever;

IN TRUST NEVERTHELESS upon the terms and subject to the conditions set forth herein and for the benefit of the holders of general unsecured claims, as and to the extent provided in the DIP Order, and for the performance of and compliance with the terms hereof;

PROVIDED, HOWEVER, that upon termination of the GUC Trust in accordance with Article V hereof, this Agreement shall cease, terminate and be of no further force and effect; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED that the Trust Assets are to be held and applied by the GUC Trustee upon the further covenants and terms and subject to the conditions herein set forth.

## I    NAME; PURPOSE; TRUST ASSETS

1.1    <u>Name of Trust</u>.  The trust created by this Agreement shall be known as the "Wickes GUC Trust" or sometimes herein as the "GUC Trust".

1.2    <u>Transfer of Trust Assets</u>.  In accordance with the provisions of the DIP Order, the Committee and Debtors shall be deemed and by this Declaration of Trust do hereby transfer, assign and convey to the beneficiaries of the GUC (i) the Avoidance Actions, (ii) the right to share in the proceeds of specified Collateral pursuant to Paragraph 11 of the DIP Order, and (iii) any and all other interests, rights, claims, defenses and causes of action of the Debtors or their estates related to the Avoidance Actions (the "Trust Assets"), followed by a deemed transfer by such beneficiaries to the GUC Trust, to be held by the GUC Trustee in trust for the holders, from time to time, of general unsecured claims (such holders collectively, the "Trust Beneficiaries").

1.3    <u>Purposes</u>.  The purposes of the GUC Trust are to hold and effectuate an orderly disposition of the Trust Assets and to distribute or pay over the Trust Assets or proceeds thereof in accordance with this Agreement, with no objective or authority to engage in any trade or business.

1.4    <u>Acceptance by the GUC Trustee</u>.  The GUC Trustee is willing and hereby accepts the appointment to serve as GUC Trustee pursuant to this Agreement and agrees to observe and perform all duties and obligations imposed upon the GUC Trustee by this Agreement, including, without limitation, to accept and hold and administer the Trust Assets and otherwise to carry out the purpose of the GUC Trust in accordance with the terms and subject to the conditions set forth herein.  The GUC Trustee shall have fiduciary duties to the beneficiaries of the GUC Trust in the same manner that members of an official committee of creditors appointed pursuant to section 1102 of the Bankruptcy Code have fiduciary duties to the constituents represented by such a committee.

1.5    <u>Further Assurances</u>.  The Debtors and any successor in interest will, on request of the GUC Trustee, execute and deliver such further documents and perform such further acts as may be necessary or proper to transfer to the GUC Trustee any portion of the Trust Assets or to vest in the Trust the powers or property hereby conveyed.  The Debtors, for themselves and their predecessors and successors, disclaim any right to any reversionary interest in any of the Trust Assets, but nothing herein will limit the right and power of the GUC Trustee to abandon any Trust Assets to the Debtors in the event the GUC Trustee determines it is in the best interests of the GUC Trust and its beneficiaries to do so.

## II   RIGHTS, POWERS AND DUTIES OF GUC TRUSTEE

2.1   <u>General</u>. As of the date hereof, the GUC Trustee shall take possession and charge of the Trust Assets and, subject to the provisions hereof, shall have full right, power and discretion to manage the affairs of the GUC Trust. Except as otherwise provided herein, the GUC Trustee shall have the right and power to enter into any covenants or agreements binding the GUC Trust and in furtherance of the purpose hereof and to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the GUC Trustee to be consistent with and advisable in connection with the performance of his or her duties hereunder. The GUC Trustee shall retain existing counsel to the Committee as well as any other necessary legal or other professionals. The GUC Trustee, shall have the power and responsibility to do all that may be necessary or appropriate in connection with the disposition of the Trust Assets and the distribution of the proceeds thereof, including, without limitation:

(a)   To exercise all power and authority that may be or could have been exercised, commence all proceedings that may be or could have been commenced and take all actions that may be or could have been taken by the Committee with respect to the Trust Assets;

(b)   To maintain escrows, bank accounts (including checking and money market accounts) and other accounts, make distributions to holders of allowed general unsecured claims and take other actions consistent with the implementation hereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the GUC Trust;

(c)   To collect and liquidate all Trust Assets and to engage in all acts that would constitute ordinary performance of all obligations of a trustee of a general unsecured creditor trust;

(d)   To do all other acts or things not inconsistent with the provisions of this Agreement that the GUC Trustee deems reasonably necessary or desirable with respect to implementing and administering this Agreement;

(e)   To reconcile all scheduled and filed general unsecured claims and determine which claims are entitled to a distribution from the Trust Assets;

(f)   To make all distributions to holders of allowed general unsecured claims;

(g)   To enter into any agreement or execute any document required by or consistent with the DIP Order and this Agreement and perform all of the obligations of the GUC Trustee thereunder;

(h)   To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization, any assets that the GUC Trustee concludes are of no benefit to general unsecured creditors, are determined to be too impractical to distribute, store or otherwise maintain;

(i)   To investigate, prosecute and/or settle Avoidance Actions and defenses, participate in or initiate any proceeding before the Bankruptcy Court or any other court of

appropriate jurisdiction, participate as a party or otherwise in any administrative, arbitrative or other nonjudicial proceeding, and litigate or settle any or all such Committee Avoidance Actions;

Other than the obligations of the GUC Trustee enumerated or referred to herein, the GUC Trustee shall have no duties or obligations of any kind or nature respecting the implementation and administration of the this Agreement.

2.2     Costs.  On and after the date hereof, the GUC Trustee shall reserve Cash reserves from the Trust Assets to be held in a GUC Trust wind-down fund (the "Wind-down Reserve"). The Wind-down Reserve shall be used to pay amounts due to the GUC Trustee pursuant to Section 2.7 hereof and the fees and expenses of any counsel, consultant or other advisor or agent retained by the GUC Trustee pursuant to this Agreement.  In the event that amounts held in the Wind-down Reserve, together with proceeds of any disposition of Trust Assets available for such purpose, are insufficient to make payments as provided in this Section 2.2, the GUC Trustee shall have no obligation to make such payments.

2.3     Distributions.  The GUC Trustee shall record and account for all proceeds received upon any disposition of Trust Assets for distribution to general unsecured creditors.

(a)     After a distribution occurs, any distributed check(s) that have not been claimed and/or cashed within a 90 day period of the date of the check shall be deemed void and the claim disallowed.  In addition, any Trust Assets that remain after said 90 day period shall be used first to pay any reasonable costs for the administration of the distribution of the Trust Assets, if any and, thereafter, paid to a recognized charitable organization acceptable to the GUC Trustee;

(b)     For purposes of efficiency, the GUC Trustee will refrain from making any distribution that would result in a distribution of less than $50.00 if the GUC Trustee determines in its discretion that such a distribution would be administratively burdensome.

2.4     Limitations on Investment Powers of GUC Trustee.  Funds in the GUC Trust shall be invested in demand and time deposits in banks or other savings institutions, or in other temporary, liquid investments, such as Treasury bills, consistent with the liquidity needs of the GUC Trust as determined by the GUC Trustee, and need not be invested in accordance with section 345 of the Bankruptcy Code unless the Bankruptcy Court otherwise requires.

2.5     Liability of GUC Trustee.

(a)     Standard of Care.  Except in the case of willful misconduct, gross negligence or fraud, the GUC Trustee shall not be liable for any loss or damage by reason of any action taken or omitted by it pursuant to the discretion, powers and authority conferred, or in good faith believed by the GUC Trustee to be conferred, on the GUC Trustee by this Agreement.

(b)     No Liability for Acts of Predecessors.  No successor GUC Trustee shall be in any way responsible for the acts or omissions of any GUC Trustee in office prior to the date on which such successor becomes the GUC Trustee, unless a successor GUC Trustee expressly assumes such responsibility.

(c)     No Implied Obligations. Subject to Section 1.4 hereof, the GUC Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the GUC Trustee.

(d)     No Liability for Good Faith Error of Judgment. The GUC Trustee shall not be liable for any error of judgment made in good faith, unless it shall be proved that the GUC Trustee was grossly negligent in ascertaining the pertinent facts.

(e)     Reliance by GUC Trustee on Documents or Advice of Counsel or Other Persons. Except as otherwise provided herein, the GUC Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by the GUC Trustee to be genuine and to have been signed or presented by the proper party or parties. The GUC Trustee also may engage and consult with legal counsel for the GUC Trust and other agents and advisors and shall not be liable for any action taken or suffered by the GUC Trustee in reliance upon the advice of such counsel, agents or advisors. The GUC Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Trust Assets.

(f)     No Personal Obligation for Trust Liabilities. Persons dealing with the GUC Trustee shall look only to the Trust Assets to satisfy any liability incurred by the GUC Trustee to any such person in carrying out the terms of this Agreement, and the GUC Trustee shall have no personal, individual obligation to satisfy any such liability.

2.6     Selection of Agents. The GUC Trustee may engage any employee of the Debtor or other persons, and also may engage or retain brokers, banks, custodians, investment and financial advisors, attorneys (including existing counsel to the Committee or the Debtor), accountants (including existing accountants for the Committee or the Debtor) and other advisors and agents, in each case without Bankruptcy Court approval. The GUC Trustee may pay the salaries, fees and expenses of such persons from amounts in the Wind-down Reserve, or, if such amounts are insufficient therefor, out of the Trust Assets or proceeds thereof. In addition, the parties acknowledge that Trust Assets may be advanced to satisfy such salaries, fees and expenses. The GUC Trustee shall not be liable for any loss to the GUC Trust or any person interested therein by reason of any mistake or default of any such Person referred to in this Section 2.6 selected by the GUC Trustee in good faith and without either gross negligence or intentional malfeasance.

2.7     GUC Trustee's Compensation, Indemnification and Reimbursement.

(a)     As compensation for services in the administration of this GUC Trust, the GUC Trustee shall be compensated $17,500.00. The GUC Trustee shall also be reimbursed for all documented actual, reasonable and necessary out-of-pocket expenses incurred in the performance of its duties hereunder.

(b)     In addition, the GUC Trustee shall be indemnified by and receive reimbursement from the Trust Assets against and from any and all loss, liability, expense

(including attorneys' fees) or damage which the GUC Trustee incurs or sustains, in good faith and without either gross negligence or intentional malfeasance, acting as GUC Trustee under or in connection with this Agreement.

(c)     It is anticipated and intended that the GUC Trustee devote his or her attention to the prompt and orderly administration of the GUC Trust. If the GUC Trustee and the Committee agree that the GUC Trustee is able to fulfill his or her obligations under this Agreement and by devoting a portion of each work-day or work-week to performing the services set forth herein, the GUC Trustee may be retained only on a part-time basis on terms to be agreed upon between the GUC Trustee. The GUC Trustee may accept employment elsewhere during any period of part-time services, provided such additional employment does not result in a conflict of interest with his obligations hereunder.

(d)     The GUC Trustee is hereby authorized to obtain all reasonable insurance coverage for himself, his agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the GUC Trustee and his agents, representatives, employees or independent contractors under this Agreement.

2.8     Tax Treatment and Obligation to File Returns.

(a)     It is intended that the GUC Trust qualify as a grantor trust for federal income tax purposes, all of the interests which are owned by the Trust Beneficiaries, such that all items of income, gain, loss, deduction and credit will be included in the income of the Trust Beneficiaries as if such items had been recognized directly by the Trust Beneficiaries in the proportions in which they own beneficial interests in the GUC Trust.

(b)     The GUC Trustee shall comply with all tax reporting requirements and, in connection therewith, the GUC Trustee may require Trust Beneficiaries to provide certain tax information as a condition to receipt of distributions, including, without limitation, filing returns for the GUC Trust as a grantor trust pursuant to Treasury Regulation § 1.6714(a).

2.9     Tax Provisions.

(a)     Income Tax Status.

(i)     The GUC Trust is created for the purpose of liquidating the Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and making distributions to holders of allowed general unsecured claims. The GUC Trust is not otherwise authorized to engage in any trade or business.

(ii)     Under the guidelines set forth in Revenue Procedure 94-95, I.R.B. 1994-20.12 and § 1.671-4(a) of the Income Tax Regulations, the GUC Trustee will file returns for the GUC Trust as a grantor trust. The transfer of the Trust Assets will be treated for tax purposes as a transfer to the Trust Beneficiaries, followed by a deemed transfer from such Trust Beneficiaries to the GUC Trust.

(b)     Withholding. The GUC Trustee may withhold from the amount distributable from the GUC Trust at any time to any Trust Beneficiary such sum or sums as may be sufficient to pay any tax or taxes or other charge or charges which have been or may be imposed on such Trust Beneficiary or upon the GUC Trust with respect to the amount distributable or to be distributed under the income tax laws of the United States or of any state or political subdivision or entity by reason of any distribution provided for by any law, regulation, rule, ruling, directive, or other governmental requirement.

(c)     Tax Identification Numbers. The GUC Trustee may require any Trust Beneficiary to furnish to the GUC Trustee its Employer or Taxpayer Identification Number as assigned by the Internal Revenue Service and the GUC Trustee may condition any distribution to any Trust Beneficiary upon receipt of such identification number.

2.10     Claims Process. Because the Trust Assets are limited, the GUC Trustee and counsel will not undertake an extensive claims reconciliation process. The claims reconciliation process will occur, as follows:

(a)     The GUC Trustee will serve a notice (the "Claim Notice") and corresponding Exhibit A, identifying all general unsecured claims listed by the Debtor on Schedule F filed with the Bankruptcy Court and/or filed as a proof of claim by an individual claimant and a statement regarding the validity of each claim. A copy of the Claim Notice will be filed in the chapter 11 bankruptcy cases, for the convenience of the claimants. Such Claim Notice is not intended to subject the GUC Trust or the Trust Assets to the jurisdiction of the Bankruptcy Court;

(b)     If a party-in-interest (i) disputes the amount of any unsecured claim as listed on Exhibit A to the Claim Notice or (ii) wishes to assert a claim that is not reflected on Exhibit A or in a different amount than is reflected, such party-in-interest (the "Objecting Party") will be instructed to mail, fax or e-mail its objection with documentation supporting its objection or claim to the GUC Trustee;

(c)     The GUC Trustee will review all claims and claim objections and supporting documentation timely submitted by an Objecting Party and consult with the Objecting Party in order to attempt to resolve any objection by the GUC Trustee or the Objecting Party. If the GUC Trustee and the Objecting Party cannot agree on a resolution, then the disputed claim shall be submitted to a court of competent jurisdiction for ultimate determination. Any claim to which there was no objection by the GUC Trustee or party in interest or that was allowed pursuant to foregoing claims process shall be deemed an "Allowed General Unsecured Claim."

2.11     Records of GUC Trustee. The GUC Trustee shall maintain accurate records of receipts and disbursements and other activity of the GUC Trust, and duly authorized representatives of the Committee shall have reasonable access to the records of the GUC Trust. The books and records maintained by the GUC Trustee may be disposed of by the GUC Trustee at such time as the GUC Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the GUC Trust or its beneficiaries, or upon the termination of the GUC Trust.

## III    RIGHTS, POWERS AND DUTIES OF BENEFICIARIES.

3.1    <u>Interests of Beneficiaries</u>.  The Trust Beneficiaries shall have beneficial interests in the Trust Assets as provided herein.  The Trust Beneficiaries' proportionate interests in the Trust Assets shall be transferable, subject, as applicable, to Bankruptcy Rule 3001(e) and any other provision of law, but shall not be binding on the GUC Trustee unless and until the transfer has been accepted by the GUC Trustee.  A holder of an Allowed General Unsecured Claim shall be a beneficiary of the GUC Trust and Trust Assets shall be paid *pro rata* to creditors holding Allowed General Unsecured Claims.

3.2    <u>Interests Beneficial Only</u>.  The ownership of a beneficial interest hereunder shall not entitle any Trust Beneficiary to any title in or to the Trust Assets as such (which title shall be vested in the GUC Trustee) or to any right to call for a partition or division of Trust Assets or to require an accounting.

## IV    AMENDMENT OF TRUST OR CHANGE IN TRUSTEE.

4.1    <u>Resignation of the GUC Trustee</u>.  The GUC Trustee may resign by an instrument in writing signed by the GUC Trustee, provided that the GUC Trustee shall continue to serve as such after his resignation for thirty (30) days or, if longer, until the time when appointment of his successor shall become effective in accordance with Section 4.2 hereof.

4.2    <u>Appointment of Successor GUC Trustee</u>.  In the event of the death, resignation, termination, incompetence or removal of the GUC Trustee, the Committee may appoint a successor GUC Trustee without the approval of the Bankruptcy Court, which the parties acknowledge shall nevertheless retain jurisdiction to resolve any disputes in connection with the service of the GUC Trustee or his successor.  If the Committee fails to appoint a successor GUC Trustee within 30 days of the occurrence of a vacancy, any Trust Beneficiary or the outgoing GUC Trustee may petition the Bankruptcy Court for such appointment.  Every successor GUC Trustee appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court and to the predecessor GUC Trustee (if practicable) an instrument accepting such appointment and the terms and provisions of this Agreement, and thereupon such successor GUC Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers and duties of the retiring GUC Trustee.

4.3    <u>Continuity</u>.  Unless otherwise ordered by the Bankruptcy Court, the death, resignation, incompetence or removal of the GUC Trustee shall not operate to terminate or to remove any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the GUC Trustee.  In the event of the resignation or removal of the GUC Trustee, the GUC Trustee shall promptly execute and deliver such documents, instruments, final reports, and other writings as may be reasonably requested from time to time by the Bankruptcy Court, the Committee or the successor GUC Trustee.

4.4    <u>Amendment of Agreement</u>.  This Agreement may be amended, modified, terminated, revoked or altered only upon (i) order of the Bankruptcy Court; or (ii) agreement of the GUC Trustee and the Committee.

## V   TERMINATION OF TRUST

The GUC Trust shall terminate upon the fulfillment of the GUC Trust's purpose by the liquidation of all of the Trust Assets and the distribution of the proceeds of the liquidation thereof in accordance with the Plan (the "Termination Date").  Reasonable efforts shall be made to see to it that the Termination Date shall be no later than the time reasonably necessary to accomplish the GUC Trust's purpose of liquidating Trust Assets and effectuating a prompt distribution of the proceeds thereof.

## VI   RETENTION OF JURISDICTION

Subject to the following sentence, the Bankruptcy Court shall have exclusive jurisdiction over the GUC Trust, the GUC Trustee and the Trust Assets, including the determination of all controversies and disputes arising under or in connection with the GUC Trust or this Agreement. However, if the Bankruptcy Court abstains or declines to exercise such jurisdiction or is without jurisdiction under applicable law, any other court of competent jurisdiction may adjudicate any such matter.  All Trust Beneficiaries consent to the jurisdiction of the U.S. District Court for the District of Delaware and the state district courts sitting in Wilmington, Delaware over all disputes related to this Agreement.

## VII   MISCELLANEOUS

7.1   Applicable Law.  The GUC Trust created by this Agreement shall be construed in accordance with and governed by the laws of the State of Delaware without giving effect to principles of conflict of laws, but subject to any applicable federal law.

7.2   Waiver.  No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

7.3   Relationship Created.  Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership or joint venture of any kind.

7.4   Interpretation.  Section and paragraph headings contained in this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of any provision hereof.

7.5   Savings Clause.  If any clause or provision of this Agreement shall for any reason be held invalid or unenforceable, such invalidity or unenforceability shall not affect any other clause or provision hereof, but this Agreement shall be construed, insofar as reasonable to effectuate the purpose hereof, as if such invalid or unenforceable provision had never been contained herein.

7.6   Entire Agreement.  This Agreement constitute the entire agreement by and among the parties and there are no representations, warranties, covenants or obligations with respect to the subject matter hereof except as set forth herein or therein.   This Agreement together supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto, relating to such subject matter.  Except as

otherwise authorized by the Bankruptcy Court or specifically provided in this Agreement, nothing in this Agreement is intended or shall be construed to confer upon or to give any Person other than the parties hereto, the Committee, and the Trust Beneficiaries any rights or remedies under or by reason of this Agreement.

7.7    Counterparts.   This Agreement may be executed by facsimile or electronic transmission and in counterparts, each of which when so executed and delivered shall be an original document, but all of which counterparts shall together constitute one and the same instrument.

7.8    Notices.

(a)    All notices, requests or other communications required or permitted to be made in accordance with this Agreement shall be in writing and shall be deemed given five Business Days after first-class mailing, one Business Day after sending by overnight courier, or on the first Business Day after facsimile or electronic transmission.

> Anthony C. Labrosciano
> ACL Adjustment Associates, Inc.
> 165 Central Avenue
> Hasbrouck Heights, NJ 07604-0442
> Attn: Wickes GUC Trustee
>
> with a copy to:
>
> COOLEY GODWARD KRONISH LLP
> 1114 Avenue of the Americas
> New York, NY 10036-7798
> Attn:   Cathy Hershcopf, Esq.
>         Jeffrey L. Cohen, Esq.
> Tel: (212) 479-6000
> Fax: (212) 479-6275

(i)    if to any Trust Beneficiary, to such address as such Trust Beneficiary shall have furnished to the Debtors in writing prior to the Effective Date.

(b)    Any Person may change the address at which it is to receive notices under this Agreement by furnishing written notice to the GUC Trustee in the same manner as above.

7.9    Successors and Assigns.   This Agreement shall be binding upon each of the parties hereto and their respective successors and assigns and shall inure to the benefit of the parties, Committee, the Trust Beneficiaries and, subject to the provisions hereof, their respective successors and assigns.

IN WITNESS WHEREOF the undersigned have caused this Agreement to be executed as of the day and year first above written.

Wickes Holdings, LLC and Wickes Furniture Company, Inc.

By:_____

Name:

Title:

TRUSTEE OF THE WICKES GUC TRUST

_____

Anthony C. Labrosciano, as GUC Trustee

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE WICKES, INC.

By:_____

Name: Doug Jermyn, Legacy Classic Furniture

Title: Co-Chairperson

**<u>Exhibit C</u>**



November 22, 2021


286 Rider Ave Development, LLC
679 Driggs Avenue
Brooklyn, NY 11211

      **RE:**    **286 Rider Avenue**
               **Bronx, New York 10451**

To whom it may concern,

      I am a principal at ▇▇▇▇ and have a business relationship with Toby Moskovits and Michael Lichtenstein going back to 2017. I have invested more than $▇▇▇▇ with Ms. Moskovits and Mr. Lichtenstein in various projects to date, including more than $▇▇▇▇ in the property at ▇▇▇▇▇▇▇.

      We are intending to invest $14 million in this project and have committed to provide up to $3.5 million to 286 Rider Ave Development LLC (Development") to be contributed as capital to 286 Rider Ave Acquisition LLC (the "Debtor") and $10.5 million to be advanced as a loan to the Debtor to finance the payoff of the Debtor's current Lender and exit from bankruptcy.  The only conditions for the funding is Court approval authorizing such, including the concurrent exit refinancing satisfying and releasing the current Lender's claim and liens and purported management rights in the Debtor ; the execution and delivery of the loan documents, including, note, mortgage, and membership pledge in satisfactory form, which shall provide for a first priority valid, binding, enforceable  and non-avoidable and automatically and properly perfected lien and security interest and first mortgage in the underlying property and a collateral pledge in the membership interests of the Debtor.

      The within shall be subject to entry of a final order of the Bankruptcy Court authorizing and approving the exit refinancing which shall be in full force and effect and shall not have been vacated, reversed, modified, amended or stayed without the prior written consent of the undersigned.  This commitment shall expire by December 31, 2021, unless extended by written agreement. I am submitting the attached proof of funds in excess of $20 million.


Sincerely,



Partner

# FW:  availability

.com>

Mon 11/22/2021 5:57 PM

To: Toby Moskovits <toby@heritage-equity.com>; mark@northsidedev.com <mark@northsidedev.com>;



**From:** ████████████████████.com>
**Sent:** Monday, November 22, 2021 4:55 PM
**To:** ████████████████████████.com>
**Cc:** ██████████████>; ██████████████.com>
**Subject:** ██████████ availability

This email confirms that between the various ██████████ entities, there exists 15mln in cash and line availability

Best regards

██

████████████████

**brickyard bank**

6676 N. Lincoln Avenue   Lincolnwood, IL 60712-3631
P: 847.679.2265   www.brickyardbank.net

43
6
34

================================================================================
    Brickyard Bank is closely monitoring the coronavirus (COVID-19) situation
    and are following guidance from medical professionals.
    The safety and well-being of our customers and employees is our highest
    priority.
    We have established guidance for all staff on how to protect against
    transmission of the virus. Please be safe during this challenging and
    uncertain time.

================================================================================
                       PERSONAL NOW ACCOUNT
================================================================================

MINIMUM BALANCE              1,415,640.16   LAST STATEMENT 10/20/21    1,986,297.38
                                                      10 CREDITS        4,398,145.97
                                                      51 DEBITS           752,303.46
                                            THIS STATEMENT 11/17/21     5,632,139.89

              - - - - - - - - - - DEPOSITS - - - - - - - - - -
REF #.....DATE......AMOUNT REF #.....DATE......AMOUNT REF #.....DATE......AMOUNT
     10/22    3,000.00         11/08  215,889.00          11/15    6,000.00
     11/03   66,100.00         11/09   16,904.82          11/15   27,197.75

              - - - - - - - - OTHER CREDITS - - - - - - - - -
DESCRIPTION                                              DATE          AMOUNT
Incoming Wire                                           11/02       21,295.36
              ACH                                       11/02       41,529.70
275793 ON-LINE BANKING XFR FROM SIMPLICITY BUS          11/08    4,000,000.00
    ON 11/07/21 10:48 WHA
INTEREST                                                11/17          229.34

              - - - - - - - - - - CHECKS - - - - - - - - - - -
CHECK #..DATE......AMOUNT  CHECK #..DATE......AMOUNT  CHECK #..DATE......AMOUNT
    3951*10/21  102,000.00     3985 10/21     500.00     3989*11/09     145.43
    3956*10/21     500.00      3986 10/26  216,745.00    3991 11/09      98.85
    3977*10/28   2,000.00      3987 11/02     937.50     3992 11/04   9,986.87
    3982*10/26  30,983.00      3988 10/26   4,647.91     3993 11/04   5,000.00
                        * * *  C O N T I N U E D  * * *

Z0100630              Telephone Banking 888.750.3152  ·  Fax 847.679.9077  ·  Member FDIC   Equal Housing Lender