UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:                                                    Chapter 11

**286 RIDER AVE ACQUISITION LLC,**        Case No: 21-11298-lgb
Debtor.
------------------------------------------------------------X

### FINAL ORDER (I) AUTHORIZING DEBTOR TO (A) OBTAIN POSTPETITION FINANCING AND UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 105, 362, 363, 364(c)(1), 364(d), AND 364(e) AND FED. R. BANKR. P. 2002, 4001(c), 4001(d) AND 9014, (B) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDER, (C) MODIFYING THE AUTOMATIC STAY, AND (D) GRANTING RELATED RELIEF

286 Rider Ave Acquisition LLC ("**Debtor**"), having filed a motion dated October 26, 2021 ("**Motion**") for, *inter alia*:

(i)    authority for the Debtor to be a borrower (in such capacity, the "**Borrower**") under the debtor-in-possession facility in the aggregate amount of $750,000 plus interest, fees, and other expenses provided for under the DIP Facility to be provided by Be Aviv 286 Rider LLC ("**DIP Lender**");

(ii)    authority for Debtor to execute and enter into the Senior Secured Super-Priority Debtor-In-Possession Loan Agreement[1] (and, together with any attached exhibits and other agreements related thereto, including, without limitation, all security agreements and all related or ancillary documents and agreements, the "**DIP Loan Agreement**"), and to perform all such other and further

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

acts as may be necessary or appropriate in connection with the DIP Loan Agreement
(the DIP Loan Agreement are annexed as **Exhibit 1**);

(iii)    authority for Debtor to grant a lien senior to all other liens and
security interests and superpriority claims to the DIP Lender, and related protections
to secure all obligations of the Debtor under and with respect to the DIP Facility in
the order of priority and as provided in the Order and the DIP Loan Agreement;

(iv)    the granting of adequate protection in favor of the Prepetition
Secured Lender (as defined below) under the Prepetition Loan Documents (as defined
below) in accordance with this Final Order;

(v)    authorization for the Debtor's use of cash collateral (as such term
is defined in section 363(a) of the Bankruptcy Code, including, without limitation,
any accounts receivable, and general intangible and any other cash or right that
would be included in such definition of "cash collateral" within the meaning of section
363(a) of the Bankruptcy Code) constituting Prepetition Collateral (as defined herein)
(including, without limitation, all cash, and cash equivalents and other amounts from
time to time on deposit or maintained by the Debtor in any deposit or securities
account or accounts as of the Petition Date) or any cash or cash equivalents received
by the Debtor after the Petition Date as proceeds of the Prepetition Collateral
(together, the "**Cash Collateral**") on the terms and conditions set forth in this Final
Order and in the DIP Documentation and subject to the Budget (as defined below),
and the granting of adequate protection to the Prepetition Secured Lender with
respect to such use of Cash Collateral;

(vi)    approval of the stipulations and releases by the Debtor as set forth in this Final Order and the DIP Loan Agreement with respect to the Prepetition Loan Documents and the liens and security interests arising therefrom;

(vii)    authorization for the Debtor to grant security interests, liens, and superpriority claims (including superpriority claims pursuant to section 364(c)(1) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, and priming liens pursuant to section 364(d) of the Bankruptcy Code) to the DIP Lender in each case payable from, and having recourse to, all prepetition property of the Debtor, all postpetition property of the Debtor's estate and all proceeds thereof; *provided* that the DIP Liens (as defined herein) are subject only to the Carve Out (as defined herein) and any Permitted Liens (as defined in the Prepetition Loan Documents), which such liens were valid, perfected, and non-avoidable liens existing on the Petition Date; *provided further* that the DIP Liens shall not attach to any of the claims and causes of action of the Debtor arising under chapter 5 of the Bankruptcy Code (collectively, the "**Avoidance Actions**"), but shall attach to the proceeds of the Avoidance Actions ("**Avoidance Action Proceeds**");

(viii)    authorization for the DIP Lender, to (1) terminate the DIP Facility in accordance with its terms; (2) declare the DIP Facility to be immediately due and payable in full, to the extent permitted by the terms thereof; (3) be granted relief from the automatic stay to foreclose on the DIP Liens; and (4) freeze, take possession of, set off against, and otherwise exercise any remedy available to a secured party under the DIP Loan Agreement, at law or in equity with respect to all

DIP Collateral (including Cash Collateral) until the DIP Obligations and the obligations and the rights granted in this Final Order, have been indefeasibly paid in full in cash, in each case in accordance with this Final Order and the DIP Loan Agreement;

(ix)    authorization of (A) the waivers by the Debtor of the equities of the case exception of section 552(b) of the Bankruptcy Code with respect to the DIP Collateral, right to assert claims to surcharge against the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code to the extent set forth in paragraph 7 hereof, and right to seek marshaling with respect to the DIP Collateral and (B) authorization of the waivers by the Debtor of the equities of the case exception of section 552(b) of the Bankruptcy Code with respect to the Prepetition Collateral, right to assert claims to surcharge against the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code to the extent set forth in paragraph 7 hereof, and right to seek marshaling with respect to the Prepetition Collateral;

(x)    modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Agreement and this Final Order, as applicable;

(xi)    granting the relief requested in the Motion on a final basis; authorizing the balance of the borrowings under the DIP Facility on a final basis as set forth in the Motion and the DIP Facility; and approving the Debtor's notice procedures with respect thereto; and

(xii)    waiver of any applicable stay (including under Rule 6004 of the Bankruptcy Rules) and the provision for immediate effectiveness of this Final Order.

The Court having considered the relief requested in the Motion, the exhibits attached thereto, any declarations in support of the Motion, the DIP Facility, and the evidence submitted and arguments made at the  Hearing held on November 16, 2021 and November 23, 2021(together, "**Hearing**"), and notice of the Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Bankruptcy Rules; and the Hearing having been held; and all objections, if any, to the final relief requested in the Motion having been withdrawn, resolved or overruled by the Court on the record on the Hearing; and it appearing that approval of the final relief requested in the Motion is necessary and otherwise is fair and reasonable and in the best interests of the Debtor and its estate, and is essential for the continued operation of the Debtor's business and the preservation of the value of the Debtor's assets; and it appearing that the Debtor's entry into the DIP Facility is a sound and prudent exercise of the Debtor's business judgment;

**NOW**, upon the record of the Hearing, and after due deliberation, and good and sufficient cause appearing therefor, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[2]

**A.**    *Background.*    On July 15, 2021 ("**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. with the United States Bankruptcy Court for the Southern District of New York ("**Court**").  The Debtor has continued to operate its business as debtor-in-possession under sections 1107 and 1108 of the Bankruptcy Code.   No trustee, examiner, or committee of unsecured creditors has been appointed in the Case.

**B.**    *Prepetition Secured Lender's Consent.* Subject to the terms of this Final Order, the Prepetition Secured Lender as secured party under the Prepetition Secured Note (each as defined below) has agreed to permit the Debtor to use the Cash Collateral, pursuant to the DIP Facility and this Final Order.

**C.**    *Objections Denied and Overruled.*   Except as otherwise expressly provided in this Final Order, and subject to the record of the Hearing, any objection to the entry of this Final Order that has not been withdrawn, waived, resolved or settled is hereby denied and overruled on the merits.

**D.**    *Jurisdiction.*  This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of the Case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409, and this matter is a core proceeding pursuant to 28 U.S.C.  § 157(b)(2).  The statutory predicates for this relief are sections 105, 361,

---

[2]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. Proc. 7052.

362, 363, 364, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014, and Local Bankruptcy Rules 2002-1, 4001-2, 9006, and 9013-1.

E.    *Notice*.  The Debtor has provided notice of the Motion and the Final Hearing via telephone, hand delivery, electronic transmission, or overnight mail to (i) the U.S. Trustee, (ii) the DIP Lender and the Prepetition Secured Lender; (iii) any other known Prepetition secured lender; (iv); the United States Attorney's Office for the Southern District of New York; (v) the Internal Revenue Service; (vi) the New York State Attorney General; (vii) all known parties asserting a lien against the DIP Collateral; and (vii) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

F.    *Debtor's Stipulations.* Without prejudice to the rights of any party in interest (but which rights are subject to the limitations thereon contained in paragraphs 17 and 18 hereof), the Debtor admits, stipulates, and agrees that:

(i)    As of the Petition Date, the Debtor was indebted to the Prepetition Lender under a prepetition loan ("**Prepetition Loan**") in the original principal amount of $8,000,000, evidenced by a Promissory Note dated as of September 19, 2019, as amended by the First Amendment to Promissory Note dated as of September 18, 2020, (collectively, the "**Prepetition Secured Note**"), plus accrued and unpaid interest, in the amount of $443,903.77, default rate interest of $313,620.00, and the exit fee of $80,000, plus all costs, indemnification obligations (including, without limitation, any contingent or unliquidated indemnification obligations), and other charges or amounts, and out-of-pocket expenses, including the

reasonable and documented attorney's fees, charges, and disbursements of counsel incurred in connection with the enforcement or protection of such party's rights, plus all other amounts advanced by the lender prior to the Petition Date to proposed counsel to the Debtor as its retainer and for the filing fee for the chapter 11 case all of which are added to and increase the amount of the Pre-Petition Loan and constitute Obligations under the Prepetition Loan (collectively, the "**Prepetition Indebtedness**").

(ii)    The Debtor granted, prepetition, the mortgage, and security interest in the Property in the principal amount of the Prepetition Loan, which was recorded with the Office of the City Register for the City of New York against the Property on September 30, 2019, under CRFN 201900315617 ("**Prepetition Secured Lien**").

(iii)    The Prepetition Indebtedness constitutes legal, valid, and binding obligations of the Borrower under the Prepetition Loan, enforceable against Borrower in accordance with the terms of the Prepetition Loan (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code).

(iv)    No portion of the Prepetition Loan, the Prepetition Secured Lien, or any payment on account thereof is subject to avoidance, recharacterization, recovery, reduction, subordination, disallowance, impairment, or any other challenges pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and the Debtor does not have, hereby forever releases, and is forever barred from bringing any "claims" (as such term is defined in the Bankruptcy Code), counterclaims, cross claims, causes of action, defenses, recoupment, or setoff rights, whether arising under

the Bankruptcy Code or otherwise, against the Prepetition Lender, solely in its capacity as the Prepetition Lender, and not in any other capacity or in respect to any other relationship the Prepetition Lender may have, or have had, with or in respect to the Borrower, whether arising at law or in equity, including, without limitation, any recharacterization, subordination, avoidance, or other claim arising under the Bankruptcy Code or otherwise.

(v)    The liens and security interests granted to, or for the benefit of, the Prepetition Lender, including with respect to the Cash Collateral, under the Mortgage to secure the Prepetition Indebtedness, constitute legal, valid, binding, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code) and perfected first priority liens on and security interests in, as applicable, substantially all of the assets of the Debtor, and are not subject to defense, counterclaim, avoidance, recharacterization, recovery, disallowance, or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law or regulation by any person or entity, except solely insofar as such liens and security interests are subject to the Carve Out. The Prepetition Secured Lien, including with respect to the Cash Collateral, shall remain in full force and effect on a continuous basis, unimpaired, uninterrupted and undischarged, and shall maintain their same perfected status and priority.

(vi)    The Debtor acknowledges and agrees that all of the Debtor's cash, including cash in its deposit accounts, wherever located, whether as original collateral or proceeds of any Prepetition Collateral, or subject to setoff rights,

constitutes **"cash collateral"** (as such term is defined section 363(a) of the Bankruptcy Code) of the Prepetition Lender.

(vii)    As of the Petition Date, there were no liens on or security interests in the Prepetition Collateral that were or are senior to or *para passu* with the Prepetition Secured Lien.

(viii)    Neither the DIP Lender nor the Prepetition Lender are control persons or insiders of the Debtor or any of its affiliates by virtue of entering into the DIP Loan Agreement and making any loans thereunder.

G.    *Findings Regarding the DIP Facility and Use of Cash Collateral.*

(i)    Good cause has been shown for the entry of this Final Order, including immediate and irreparable harm the estate will suffer if relief is not immediately granted.

(ii)    The Debtor needs to obtain immediate access to the postpetition financing under the DIP Facility and to use Cash Collateral to, among other things, protect and preserve the assets of the Debtor's estate and fund the administration of the Case. The immediate access of the Debtor to sufficient liquidity through the use of Cash Collateral, incurrence of postpetition financing under the DIP Facility, and other financial accommodations is vital to the preservation and maintenance of the value of the Debtor's estate and to achieve an orderly exit for the Debtor.

(iii)    The Debtor is unable to obtain sufficient financing on more favorable terms from sources other than the DIP Lender under the DIP Facility and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the

Bankruptcy Code as an administrative expense. The Debtor is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code without granting to the DIP Lender, subject solely to the Carve Out as provided for herein, the DIP Liens and the DIP Superpriority Claims and incurring the Adequate Protection Obligations (each as defined herein) under the terms and conditions set forth in this Final Order and in the DIP Facility. The only source of secured credit available to the Debtor, other than the use of Cash Collateral (which is *de minimis)*, is the DIP Facility. The Debtor requires both financing under the DIP Facility and the continued use of Cash Collateral under this Final Order to satisfy its postpetition liquidity needs.

(iv)    The DIP Lender is willing to provide the DIP Facility, and the Prepetition Secured Lender is willing to consent to the use of Cash Collateral, subject to the terms set forth in the DIP Documentation and the provisions of this Final Order, as applicable, and *provided* that the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Superpriority Claims, the Adequate Protection Obligations (each as defined here), and other protections granted by this Final Order and the DIP Facility are entitled to the protections of this Final Order and section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility and the use of Cash Collateral approved by this Final Order. The DIP Lender has acted in good faith in agreeing to provide the DIP Facility approved by this Final Order, as further evidenced by the DIP Facility, and the Prepetition Secured Lender has acted in good

faith in consenting to the Debtor's use of Cash Collateral under this Final Order, and its reliance on the provisions of this Final Order is in good faith.

(v)    The DIP Facility, and the use of Cash Collateral, each as authorized hereunder, have been negotiated in good faith and at arm's-length among the Debtor, the DIP Lender, and the Prepetition Secured Lender, respectively, and the terms of the DIP Facility and the use of Cash Collateral, respectively, are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  All the obligations and the rights granted in this Final Order to the DIP Lender, including, without limitation, the Final DIP Loan (as defined below), all accrued, accruing, and unpaid interest thereon, indemnification obligations, and out-of-pocket fees and  expenses required to be reimbursed, including all attorney's fees and costs incurred by the DIP Lender in connection with the negotiation, drafting, and execution of the DIP Facility and all related documents and motions, and this Bankruptcy Case (all  of the foregoing collectively, the "**DIP Obligations**"), and the Adequate Protection Obligations, are being extended or received, as applicable, by the DIP Lender and the Prepetition Secured Lender (and the successors and assigns of each of the foregoing) in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is reversed or modified on appeal.

(vi)    The Debtor has requested entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(1) and 4001(c)(1).  The authorization granted herein on a final basis to use Cash Collateral, and to enter into the DIP Facility, to borrow an aggregate amount of up to $750,000 in new loans, plus interest, fees, and other expenses and amounts provided for in the DIP Facility ("**Final DIP Loan**"), is necessary to preserve the value of the Debtor and its estate.  Consummation of the DIP Facility and approval of the use of Cash Collateral in accordance with this Final Order and the DIP Facility, as applicable, are therefore in the best interests of the Debtor and its estate and creditors.

NOW, THEREFORE, on the Motion of the Debtor and the record before this Court with respect to the Motion, including the record made during the Hearing, and good and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    *Objections Denied and Overruled*.    Except as otherwise expressly provided in this Final Order, and subject to the record of the Final Hearing, any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.    *Authorization of the DIP Facility and the DIP Loan Agreement*.

(i)    The Debtor is hereby authorized to execute, issue, deliver, enter into, and adopt, and to perform under, as the case may be, the DIP Loan Agreement, including but not limited to the DIP Facility and the DIP Loan Agreement.

(ii)    The Debtor is hereby authorized to borrow up to the Final DIP Loan on a final basis, on the terms and subject to the conditions, and limits set forth in this Final Order and the DIP Facility, which borrowings may be used for all purposes permitted under the DIP Facility, pursuant to and subject to the Budget to the extent set forth in the DIP Facility, including, without limitation, (a) to provide agreed liquidity for the Debtor and for general corporate purposes, (b) to pay Adequate Protection Obligations to the Prepetition Secured Lender, (c) to pay administrative expenses approved by the Court for estate professionals, subject to the Budget, (d) subject to paragraph 26 of this Final Order, to pay any other fees, costs, and expenses required under the DIP Facility, and (e) to pay such other expenses to which the DIP Lender may consent in its sole discretion.

(iii)    The proceeds of any borrowing under the DIP Facility shall, until paid to third parties in accordance with the Budget, be held by the Debtor only in a debtor-in-possession account (satisfactory to the DIP Lender (any such account a "**DIP Proceeds Account**")) over which the DIP Lender holds a valid, binding, and enforceable first priority lien pursuant to this Final Order.

(iv)    Upon the closing of the DIP Facility, the security, and pledge agreements, mortgages, deeds of trust, and deposit account control agreements, and any similar documents or agreements that provide liens on and security interests in the real property and personal property assets of the Debtor shall remain in full force and effect and shall be effective to provide liens on and security interests in the DIP

Collateral and shall constitute security for the DIP Facility for all purposes hereunder.

(v)    In furtherance of the foregoing and without further approval of this Court, the Debtor hereby is authorized and has agreed to perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution, or recordation of security agreements, mortgages, pledges, and financing statements), and, without further application to the Court, to promptly pay all fees, costs, and expenses set forth in the DIP Facility, that may be reasonably required or necessary for the Debtor's performance of its obligations under the DIP Facility, including, without limitation:

(a)    the execution, delivery, and performance of the DIP Loan Agreement, including, without limitation, the DIP Facility and all related documents contemplated thereby, if requested by DIP Lender;

(b)    the execution, delivery, and performance of one or more amendments to, modifications of, or waivers relating to the DIP Facility in such form as the Debtor and the DIP Lender (or any portion thereof as provided in the DIP Facility) may agree (it being understood that no further approval of the Court shall be required for non-material amendments to or waivers relating to the DIP Facility) and, subject to and effective only upon entry of this Final Order, any fees paid in connection therewith)or modifications of the Budget; and

(c)    the performance of all other acts required under or in connection with the DIP Loan Agreement.

(vi)    Upon entry of this Final Order, the DIP Facility shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor under the DIP Facility and this Final Order.  No obligation, payment, transfer, or grant of security interest under the DIP Facility or this Final Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment, or counterclaim.

3.    *DIP Superpriority Claims*.    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior superpriority administrative expense claims against the Debtor (without the need to file any proof of claim or request for payment of administrative expense) with priority over any and all other administrative expenses, adequate protection claims, diminution claims (including all Adequate Protection Obligations) and all other claims against the Debtor now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code ("**DIP Superpriority Claims**"), which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code shall be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be

payable from and have recourse to all pre- and post-petition property of the Debtor, and its estate and all proceeds thereof, subject only to the Carve Out.

4. *Carve Out.*

(i)  <u>Carve Out</u>.  As used in this Final Order, the "**Carve Out**" means, in all instances subject to the category and aggregate limitations in the Budget, the sum of (a) all unpaid and accrued fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code; (b) all unpaid and accrued professional fees, as have been or may be approved by the Bankruptcy Court, incurred at any time before the earlier of the occurrence of an event of default as delineated in the DIP Facility (an "**Event of Default**") or the DIP Maturity Date (as defined in the DIP Facility), upon written notice provided by the DIP Lender to counsel to the Debtor ("**Termination Date**"), up to the amounts set forth for each professional in the Budget, by persons or firms retained by the Debtor ("**Debtor Professionals**"), whose retention is approved by the Bankruptcy Court pursuant to sections 327, 328 or 1103 of the Bankruptcy Code (collectively, the "**Professional Persons**," or the "**Professionals**" and the fees, costs and expenses of Professional Persons, the "**Professional Fees**"), to the extent such Professional Fees are allowed by the Bankruptcy Court at any time, whether before or after the Termination Date; (c) the Professional Fees of Debtor Professionals incurred following the Termination Date in an amount not to exceed $50,000 in the aggregate; and (d) $25,000 for reasonable allowed commissions and professional fees

associated with the appointment of a Chapter 7 Trustee appointed in any Successor Case.

(ii)    For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order or the DIP Facility, the Carve Out shall be senior to all liens and claims securing the DIP Facility, the Adequate Protection Liens (as defined herein), the Rider Associates Subordinate Adequate Protection Liens (as defined herein),  the Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or any obligations under the Prepetition Loan Documents.

(iii)    <u>No Obligation to Pay Allowed Professional Fees</u>.  Neither the DIP Lender nor the Prepetition Secured Lender shall be responsible for the payment or reimbursement of any fees or disbursements of any estate professionals incurred in connection with the Chapter 11 Case or any Successor Case under any chapter of the Bankruptcy Code.  Nothing in this Final Order or otherwise shall be construed to obligate the DIP Lender or the Prepetition Secured Lender, in any way, to pay compensation to, or to reimburse expenses of, any estate professional or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement.

5.    *DIP Liens*.  As security for the DIP Obligations effective and perfected as of the Petition Date and without the necessity of the execution by the Debtor (or recordation or other filing) of mortgages, security agreements, control agreements, pledge agreements, financing statements, or other similar documents, or the possession or control by the DIP Lender of, or over, any DIP Collateral, the following

security interests and liens, hereby are granted by the Debtor to the DIP Lender (all property of the Debtor identified in clauses (i), (ii), (iii), and (iv) below being collectively referred to as the "**DIP Collateral**"), subject only to the Carve Out and the Permitted Liens (all such liens on and security interests in the DIP Collateral granted to the DIP Lender pursuant to this Final Order and the DIP Facility, the "**DIP Liens**"):

(i)    <u>First Lien on Any Unencumbered Property</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, first priority senior security interest in and lien upon all prepetition and postpetition property of the Debtor whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date or the date acquired (if acquired after the Petition Date) is not subject to any other valid, perfected, and non-avoidable liens existing on the Petition date, if any (collectively, "**Unencumbered Property**"), including, without limitation, (I) the DIP Proceeds Account and any cash of the Debtors held therein and (II) any other unencumbered cash of the Debtor (wherever maintained), in each of case (I) and (II), any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, minerals, hydrocarbons and other inventory gathered or produced after the Petition Date, as-extracted collateral (including any coal stockpiles or coal stored at mines), patents, copyrights, trademarks, trade names, other intellectual property, equity interests,

chattel paper, tax and related assets (including any net operating or other losses), other general intangibles and any claims and causes of action (excluding Avoidance Actions) of the Debtor and all proceeds (including proceeds of Avoidance Actins) and products thereof.

(ii)     <u>Liens Senior to Prepetition Liens</u>.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, first priority senior priming security interest in and lien upon all pre- and postpetition property of the Debtor and all proceeds thereof (including, without limitation, Cash Collateral) that, on or as of the Petition Date or the date acquired (if acquired after the Petition Date) was subject to the Prepetition Liens.

(iii)     <u>Liens Senior to Certain Other Liens</u>.  The DIP Liens shall not be subject or subordinate to (a) any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code or (b) any liens or security interests heretofore or hereinafter granted in the chapter 11 Case or any Successor Case (as defined herein) or Prepetition, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal, or other governmental unit, commission, board, or court for any liability of the Debtor, except for the Permitted Liens.

The DIP Liens shall be valid and enforceable against any trustee appointed in the Chapter 11 Case, upon the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the

foregoing (such case or proceedings, "**Successor Cases**"), and/or upon the dismissal of the Chapter 11 Case.

6. *Protection of the DIP Lender's Rights.*

(i)    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Lender to exercise, upon the earlier of (x) the Termination Date and (y) three (3) business days' written notice   "**Remedies Notice Period**") provided by the DIP Lender to the U.S. Trustee, and the Debtor through their respective counsel, of the occurrence and continuance of any Event of Default under the DIP Facility, all rights, and remedies against the DIP Collateral provided for in the DIP Facility and this Final Order, including to enforce their lien on the DIP Proceeds Account); *provided that,* during the Remedies Notice Period, (a) the Debtor may use proceeds of the DIP Facility or Cash Collateral to (i) fund operations in accordance with the Budget, and (ii) fund the Carve-Out; and (b) the Debtor and the DIP Lender, shall be entitled to an emergency hearing before the Court for the purpose of contesting whether an Event of Default has occurred, seeking the non-consensual use of Cash Collateral subject to the Carve Out, and/or seeking an extension of the Remedies Notice Period.

(ii)    In no event shall the DIP Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to its liens and security interests upon and in the DIP Collateral.  In no event shall the Prepetition Secured Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to its liens and security interests upon and in the Prepetition Collateral.

(iii)    The DIP Lender's delay or failure to exercise rights and remedies under the DIP Facility or this Final Order shall not constitute a waiver of the DIP Lender's rights hereunder, thereunder, or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Facility.

(iv)    No rights, protections, or remedies of the DIP Lender granted by the provisions of this Final Order or the DIP Facility shall be limited, modified, or impaired in any way by the provision of adequate protection to any party.

7.    ***Limitation on Charging Expenses Against Collateral***.  Except to the extent of the Carve Out and solely as to expenses that may be incurred or paid by the Debtor's estate prior to the Termination Date, no claim may be asserted against the DIP Lender or the Prepetition Secured Lender to (i) charge any such expenses of administration of the Case against the DIP Collateral or the Prepetition Collateral or (ii) recover such expenses from the DIP Collateral or the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, in each case without the prior written consent of the DIP Lender or the Prepetition Secured Lender and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender or the Prepetition Secured Lender.

8.    ***Limitations under Section 552(b) of the Bankruptcy Code***.  The Prepetition Secured Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Lender with

respect to (i) proceeds, products, offspring or profits of any of the Prepetition Collateral or any of the DIP Collateral or (ii) the extension of the Adequate Protection Liens to cover proceeds of the Prepetition Collateral.

9.   ***Payments Free and Clear.***  Any and all payments or proceeds remitted to the DIP Lender, or (subject to and effective upon the expiration of the Challenge Period) to the Prepetition Secured Lender, pursuant to the provisions of this Final Order, or subject to any subsequent order of this Court, shall be received free and clear of any claim, charge, assessment, or other liability.

10.   ***Use of Cash Collateral.***  The Debtor is hereby authorized, subject to the terms and conditions of the DIP Facility and this Final Order, to use all Cash Collateral, including, without limitation, any Cash Collateral on which the DIP Lender or the Prepetition Secured Lender holds a lien to the extent permitted by the Budget; *provided*, *however*, that no Cash Collateral shall be used in a manner that would violate paragraph 18 hereof.  The Debtor's right to use Cash Collateral shall be subject in all respects to the Budget, and such right shall terminate automatically upon the earlier of (x) the expiration of this Final Order or the DIP Facility and (y) five (5) business days' written notice provided by the Prepetition Secured Lender to the U.S. Trustee or the Debtor through their respective counsel, of the occurrence and continuance of any Event of Default under the DIP Facility or this Final Order.

11.   ***Budget.***  The Debtor has provided to the DIP Lender a budget (as may be modified from time to time with the consent of the DIP Lender, and consistent with and subject to the terms of the DIP Facility and the terms hereof, the "**Budget**"),

which such Budget is attached hereto as **Exhibit 2**. All borrowings under the DIP Facility and all use of Cash Collateral shall be in compliance with the Budget, and the Debtor shall not use any portion of the proceeds of the DIP Facility or any Cash Collateral, or accrue any liabilities, directly or indirectly, in excess of the amounts set forth in the Budget on a line item and aggregate basis. The Budget may be updated and amended from time to time with the express prior written consent of the DIP Lender. The Debtor shall not make any payments on account of any prepetition claim except in accordance with the Budget or as otherwise permitted or required by an order of this Court, and the Debtor shall be required always to comply with the Budget. Any fees of the DIP Lender that are due, outstanding, or that have accrued, shall be due and payable on the date the DIP Loan matures.

12.    ***Prepayments of the DIP Facility***. The Debtor may voluntarily prepay the principal of the DIP Loan, in whole or in part, in accordance with the DIP Facility. The Debtor shall be obligated to promptly prepay the principal of the DIP Loan with the proceeds of the collection of any receivables or the sale of any property of the Debtor, subject only to the Carve-Out (to the extent not already expended) and upon such repayment in full, the DIP Facility shall terminate.

13.    ***Adequate Protection***. The Prepetition Secured Lender is entitled, pursuant to sections 361, 363(e), and 364(d)(1) of the Bankruptcy Code, to adequate protection of its interest in the Prepetition Collateral, including the Cash Collateral, for and to the extent of any diminution in the value of the Prepetition Secured Lender's interests in the Prepetition Collateral during the Case, as provided in the

Bankruptcy Code (any such diminution in value, "**Diminution in Value**").   As adequate protection, the Prepetition Secured Lender is hereby granted the following adequate protection to the extent of any Diminution in Value (collectively, the "**Adequate Protection Obligations**"):

(i)     <u>DIP Lender's Adequate Protection Liens</u>.  Effective and perfected as of the Petition Date and without the necessity of the execution by the Debtor of mortgages, security agreements, pledge agreements, financing statements, or other agreements, solely to benefit the Prepetition Secured Lender, a replacement security interest in and lien upon all of the DIP Collateral to the extent of any Diminution in Value, subject and subordinate only to the DIP Liens, the Carve Out, and the Permitted Liens ("**Adequate Protection Liens**").

(ii)    <u>286 Rider Associates LLC's Junior Adequate Protection Liens</u>. As adequate protection for any Diminution in Value of 286 Rider Associates LLC ("**Rider Associate**s") valid, perfected and enforceable Pre-Petition subordinate liens securing its valid, perfected and enforceable pre-petition obligations, if any, against the Property,  Rider Associates shall receive, to the extent of any such Diminution in Value a subordinate, second priority, perfected  replacement security interest in and lien upon all of the DIP Collateral, subject and subordinate to the DIP Liens, the Carve Out, the Adequate Protection Liens and the Permitted Liens ("**Rider Associates Subordinate Adequate Protection Liens**").

(iii)   <u>Adequate    Protection    Superpriority    Claims</u>.    Allowed superpriority claims, solely for the benefit of the Prepetition Secured Lender

("**Adequate Protection Superpriority Claims**"), with priority over any and all other administrative expenses now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all other administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, or 1114 of the Bankruptcy Code, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof; *provided*, *however*, that the Adequate Protection Superpriority Claims shall be subordinate only to the DIP Superpriority Claims and the Carve Out.

(iv)    <u>Prepetition Secured Lender's Fees and Expenses</u>.  The Debtor is authorized and directed to pay (y) all accrued and unpaid fees and disbursements owing to the Prepetition Secured Lender under the Prepetition Secured Note and incurred prior to the Petition Date, including fees and expenses of counsel to the Prepetition Secured Lender and fees and expenses advanced to the Debtor or on behalf of the Debtor to retain counsel and the Manager; and (z) current cash payments of all fees and out-of-pocket disbursements of (1) Morrison Cohen LLP and Barnea Jaffa Lande & Co Law Offices (collectively, "**Lender's Counsel**"), as counsel to the Prepetition Secured Lender, and (2) such other consultants and advisors as may be retained or may have been retained from time to time by the Prepetition Secured

Lender, in its sole discretion.  Payment shall be made in accordance with the Budget

or accrued, as provided in the DIP Facility with the consent of the DIP Lender, but

the accrual of Prepetition Secured Lender fees and expenses, and the obligation of

the Debtor to pay the same, shall not be limited by the amount set forth in the Budget.

14.    *Reservation of Rights of Prepetition Secured Lender.*    Under the

circumstances, the Court finds that the adequate protection provided in this Final

Order is reasonable and sufficient to protect the interests of the Prepetition Secured

Lender.  However, the Prepetition Secured Lender may request further or different

adequate protection, and the Debtor or any other party may contest any such request;

*provided* that any such further or different adequate protection shall at all times be

subordinate and junior to the claims and liens of the DIP Lender granted under this

Final Order, the DIP Facility, and to the Carve Out.  Except as expressly provided

herein, nothing contained in this Final Order (including, without limitation, the

authorization of the use of any Cash Collateral) shall impair or modify any rights,

claims, or defenses available in law or equity to the Prepetition Secured Lender or

the DIP Lender.

15.    *Perfection of DIP Liens and Adequate Protection Liens..*

(i)    The DIP Lender is hereby authorized, but not required, to file or

record financing statements, intellectual property filings, mortgages, notices of lien,

or similar instruments in any jurisdiction, take possession of or control over, or take

any other action, in each case, to validate and perfect the liens and security interests

granted to them hereunder and subject to the priorities set forth herein.  Whether or

not the DIP Lender chooses to file such financing statements, intellectual property

filings, mortgages, notices of lien, or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it under this Final Order, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute, or subordination, as of the Petition Date.

(ii)     The Prepetition Secured Lender, without any further consent of any party, is authorized to take, execute, deliver, and file such instruments (in each case without representation or warranty of any kind) to enable the Prepetition Secured Lender to further validate, perfect, preserve, and enforce the DIP Liens and for the Prepetition Secured Lender to further validate, perfect, preserve, and enforce the Adequate Protection Liens.  The Debtor shall execute and deliver to the DIP Lender and/or the Prepetition Secured Lender all such agreements, financing statements, instruments, and other documents as the DIP Lender and/or the Prepetition Secured Lender may reasonably request to more fully evidence, confirm, validate, perfect, preserve, and enforce the DIP Liens and the Adequate Protection Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(iii)     A certified copy of this Final Order may, in the discretion of the DIP Lender or Prepetition Secured Lender be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording.   For the

avoidance of doubt, the automatic stay of section 362(a) of the Bankruptcy Code shall

be, and hereby is, modified to the extent necessary to permit the DIP Lender or

Prepetition Secured Lender to take all actions, as applicable, referenced in this

subparagraph (ii) and (iii).

(iv)    Any provision of any lease or other license, contract or other

agreement that requires (a) the consent or approval of one or more landlords or other

parties, or (b) the payment of any fees or obligations to any governmental entity, in

order for the Debtor to pledge, grant, sell, assign, or otherwise transfer any such

leasehold interest, or the proceeds thereof, or other postpetition collateral related

thereto, is hereby deemed to be inconsistent with the applicable provisions of the

Bankruptcy Code.  Any such provision shall have no force and effect with respect to

the transactions granting postpetition liens on (x) such leasehold interest or (y) the

proceeds of any assignment and/or sale thereof by the Debtor in favor of the DIP

Lender or the Prepetition Secured Lender in accordance with the terms of the DIP

Facility or this Final Order.

16.    ***Preservation of Rights Granted Under this Final Order***.

(i)    Except as expressly provided herein and subject to the Carve Out,

(a) no claim or lien having a priority superior to or *pari passu* with those granted by

this Final Order to the DIP Lender or the Prepetition Secured Lender, respectively,

shall be granted or allowed while any portion of the DIP Facility or the commitments

thereunder or the DIP Obligations or the Adequate Protection Obligations remain

outstanding, and (b) the DIP Liens and the Adequate Protection Liens shall not be

(1) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or (2) subordinate to or made *pari passu* with any other lien or security interest, whether under section 364 of the Bankruptcy Code or otherwise.

(ii)    Unless all DIP Obligations shall have been indefeasibly paid in full in cash in accordance with the DIP Facility and the Adequate Protection Obligations shall have been paid in full, the Debtor shall not assert, file or seek, or consent to the filing or the assertion of or joinder in, and it shall constitute an Event of Default under the DIP Facility and terminate the right of the Debtor to use any and all Cash Collateral or the proceeds of the DIP Facility if the Debtor asserts, files or seeks, or consents to the filing or the assertion of or joinder in, or if there is entered, without the prior written consent of the DIP Lender and the Prepetition Secured Lender (a) any reversal, modification, amendment, stay, or vacatur of this Final Order; (b) an order dismissing the Case under sections 105, 305, or 1112 of the Bankruptcy Code or otherwise; (c) an order converting the Case to a case under chapter 7 of the Bankruptcy Code; (d) an order appointing a chapter 11 trustee in the Case; or (e) an order appointing an examiner with enlarged powers beyond those set forth in sections 1104(d) and 1106(a)(3) and (4) of the Bankruptcy Code in the Case. If an order dismissing the Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the DIP Superpriority Claims, Adequate Protection Superpriority Claims, and other administrative claims granted under this

Final Order, the DIP Liens, and the Adequate Protection Liens granted to the DIP

Lender and the Prepetition Secured Lender, and the Rider Associates Subordinate

Adequate Protection Liens granted to Rider Associates, pursuant to this Final Order

shall continue in full force and effect and shall maintain their priorities as provided

in this Final Order until all of the DIP Obligations and the Adequate Protection

Obligations shall have been paid and satisfied in full (and that such DIP

Superpriority Claims, Adequate Protection Superpriority Claims, the other

administrative claims granted under this Final Order, the DIP Liens, and the

Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on

all parties in interest) and (y) the Court shall retain jurisdiction notwithstanding

such dismissal, for the purposes of enforcing the claims, liens, and security interests

referred to in clause (x) above.

   (iii) If any or all of the provisions of this Final Order are hereafter

reversed, modified, vacated, or stayed, such reversal, stay, modification, or vacatur

shall not affect (a) the validity, priority, or enforceability of any DIP Obligations or

the Adequate Protection Obligations incurred prior to the actual receipt of written

notice by the DIP Lender or the Prepetition Secured Lender, as applicable, of the

effective date of such reversal, stay, modification, or vacatur or (b) the validity,

priority, or enforceability of any lien or priority authorized or created hereby or

pursuant to the DIP Facility with respect to any DIP Obligations or Adequate

Protection Obligations.  Notwithstanding any such reversal, stay, modification, or

vacatur, any use of Cash Collateral, any DIP Obligations or any Adequate Protection

Obligations incurred by the Debtor to the DIP Lender and/or the Prepetition Secured Lender, as the case may be, prior to the actual receipt of written notice by the DIP Lender and/or the Prepetition Secured Lender, as the case may be, of the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the original provisions of this Final Order, and the DIP Lender and the Prepetition Secured Lender shall be entitled to the protection of section 364(e) of the Bankruptcy Code to the maximum extent possible, this Final Order, and pursuant to the DIP Facility with respect to all such uses of Cash Collateral and proceeds of the DIP Facility, all DIP Obligations and all Adequate Protection Obligations.

(iv)    Except as expressly provided in this Final Order or in the DIP Facility, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Rider Associates Subordinate Adequate Protection Liens, the Adequate Protection Superpriority Claims, and all other rights and remedies of the DIP Lender and the Prepetition Secured Lender granted by the provisions of this Final Order and the DIP Facility shall survive, and shall not be modified, impaired, or discharged by any subsequent order, including (a) the entry of an order converting the Case to a case under chapter 7 of the Bankruptcy Code, dismissing the Case, (b) the entry of an order approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Facility or otherwise approved by the DIP Lender), (c) the entry of an order confirming a plan of reorganization in the Case, and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived any discharge as to any remaining DIP Obligations and

Adequate Protection Obligations, or (d) any other act or omission. The terms and provisions of this Final Order and the DIP Facility shall continue in the Case, in any Successor Case thereto, in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, the DIP Superpriority Claims and all other administrative claims granted pursuant to this Final Order, the Adequate Protection Obligations, and all other rights and remedies of the DIP Lender and the Prepetition Secured Lender granted by the provisions of this Final Order and the DIP Facility shall continue in full force and effect until the DIP Obligations and the Adequate Protection Obligations are indefeasibly paid in full in cash.

17. ***Effect of Stipulations on Third Parties.*** The stipulations and admissions contained in this Final Order, including, without limitation, in paragraph F hereof, shall be binding in all circumstances upon the Debtor and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor), the Debtor's estate, and all parties in interest, including, without limitation, any committee (including the Committee) or any other person or entity acting on behalf of the Debtor, unless and solely to the extent that (i) a properly authorized adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in paragraph 18) has been commenced by the Committee or any other party in interest with requisite standing other than the Debtor (or if the Case is converted to a case under chapter 7 prior to the expiration of the Challenge Period (as defined herein), the chapter 7 trustee in such successor case)

(a) challenging the validity, enforceability, priority, or extent of the Prepetition Indebtedness, the Prepetition Loan Documents, or the Prepetition Secured Lender's liens on the Prepetition Collateral or (b) otherwise asserting or prosecuting any action for preferences, fraudulent conveyances, other avoidance power claims, subordination, recharacterization, or any other claims, counterclaims, or causes of action, objections, contests, or defenses (collectively, "**Claims and Defenses**") against the Prepetition Secured Lender or any of its respective affiliates, representatives, attorneys, or advisors in connection with matters related to the Prepetition Indebtedness, the Prepetition Loan Documents, the Prepetition Collateral, or the Prepetition Secured Lender's liens on the Prepetition Collateral, as applicable (such adversary proceeding or Claims and Defenses, a "**Challenge**"), with respect to all parties in interest with requisite standing other than the Debtor, by no later than the date that is sixty (60) days after the entry of this Final Order, or as otherwise ordered by the Court ("**Challenge Period**"); *provided* that if the chapter 11 case is converted to a case under chapter 7 of the Bankruptcy Code, the chapter 7 trustee shall have until the later of (x) the remaining Challenge Period and (y) 30 days from the date of such conversion to bring any Challenges; and (ii) there is a final order in favor of the plaintiff sustaining any such Challenge in any such properly authorized and timely filed adversary proceeding; *provided* that, as to the Debtor, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date.  For the avoidance of doubt, any trustee appointed or elected in this chapter 11 case shall, until the expiration of the Challenge Period, and thereafter for the duration of any

adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtor's estate), be deemed to be a party other than the Debtor and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Final Order.  The filing of a motion seeking standing to file a Challenge during the Challenge Period, which attaches a proposed Challenge, shall extend the Challenge Period with respect to that party and the Committee until two (2) business days after the Court approves the standing motion, or such other time period ordered by the Court in approving the standing motion.  If no such properly authorized adversary proceeding or contested matter is timely filed, then (x) to the extent not theretofore indefeasibly repaid, the Prepetition Indebtedness and all related obligations of the Debtor shall constitute allowed claims not subject to counterclaim, setoff, recoupment, subordination, recharacterization, defense, or avoidance, for all purposes, in the Case and any subsequent chapter 7 case, (y) the Prepetition Secured Lender's liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be legal, valid, binding, and perfected liens not subject to defense, counterclaim, recharacterization, subordination, or avoidance, and (z) the Prepetition Indebtedness, the Prepetition Loan Documents, and the liens of the Prepetition Secured Lender on the Prepetition Collateral shall not be subject to any other or further challenge by the Debtor, any committee, or any party in interest, including, without limitation, any successor thereto (including, without limitation,

any estate representative or a chapter 7 or chapter 11 trustee appointed or elected for the Debtor with respect thereto). If any such properly authorized adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraph F hereof shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any committee, whether official, *ad hoc*, or other (including the Committee), and any other person or entity, except to the extent that any such findings and admissions were expressly and successfully challenged in such properly authorized and timely filed adversary proceeding. Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including any committee (including the Committee), standing or authority to pursue any cause of action belonging to the Debtor or its estate, including, without limitation, Claims and Defenses with respect to the Loans, the Prepetition Indebtedness, the Prepetition Loan Documents, or the Prepetition Secured Lender's liens on the Prepetition Collateral. Except as expressly provided in this Final Order, the rights and remedies of the Prepetition Secured Lender granted by the provisions of this Final Order shall (x) survive and shall not be modified or affected by the entry of an order converting the Case to a case under chapter 7, dismissing the Case, or by any other act or omission, and (y) continue in the Case or in any successor case in full force and effect.

18.     ***Limitation on Use of Financing Proceeds and Collateral***. Notwithstanding anything to the contrary herein (except for the last sentence of this paragraph 18) or in any other order by this Court, none of the proceeds of the DIP

Facility and none of the DIP Obligations, the Cash Collateral, the Prepetition

Collateral, the DIP Collateral, or the Carve Out may be used for the following

purposes, including any fees or expenses incurred by any professional in connection

therewith: (i) an assertion or joinder in (but excluding any investigation into) any

claim, counter-claim, action, proceeding, application, motion, defense, or other

contested matter seeking any order, judgment, determination or similar relief (a)

challenging the legality, validity, priority, perfection, or enforceability of any amount

due under the DIP Facility, the Prepetition Indebtedness, or the Prepetition Loan

Documents, or the liens, security interests, or claims granted under this Final Order,

the DIP Facility, or the Prepetition Loan Documents; (b) invalidating, setting aside,

recharacterizing, avoiding, or subordinating in whole or in part any amount due

under the DIP Facility, the Prepetition Indebtedness, or the Prepetition Loan

Documents or the liens, security interests, or claims granted under this Final Order,

the DIP Facility, or the Prepetition Loan Documents; (c) preventing, hindering, or

delaying the assertion or enforcement by either of the DIP Lender or the Prepetition

Secured Lender of any of their respective liens, claims, rights, or security interests or

realization upon the Prepetition Collateral, the DIP Collateral, the DIP Liens, the

Obligations, or the DIP Obligations; or (d) seeking to modify any of the rights granted

to either of the DIP Lender or the Prepetition Secured Lender hereunder or under

the DIP Facility or the Prepetition Loan Documents, in each of the foregoing cases

without such parties' prior written consent; (ii) the commencement or prosecution of

any action or proceeding of any claims, causes or action, or defenses against either of

the DIP Lender or the Prepetition Secured Lender or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, including, without limitation, any attempt to recover or avoid any claim or interest from either the DIP Lender or the Prepetition Secured Lender under chapter 5 of the Bankruptcy Code; or (iii) selling or otherwise disposing of any DIP Collateral, using or seeking to use any insurance proceeds, or incurring any indebtedness not permitted under the DIP Facility or without the DIP Lender's express prior written consent.   Nothing herein shall be construed as consent to the allowance of any professional fees of the Debtor or any Committee or shall affect the right of the DIP Lender, the Prepetition Secured Lender, or other parties in interest to object to the allowance of such fees and expenses.

19. *Sales of Collateral; Right to Credit Bid*.  The DIP Lender (subject to the rights, claims, and security interests of the Prepetition Secured Lender with respect to any DIP Collateral that also constitutes Prepetition Collateral or is collateral subject to the Adequate Protection Liens) and the Prepetition Secured Lender shall each have the right to credit bid the DIP Obligations or the Prepetition Indebtedness, as the case maybe,  in connection with any sale of the DIP Collateral or Prepetition Collateral in which such parties hold a security interest conducted pursuant to a plan of reorganization subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code or pursuant to the provisions of section 363 of the Bankruptcy Code. No sale of any DIP Collateral or Prepetition Collateral shall constitute a waiver by the DIP Lender or the Prepetition Secured Lender of any deficiency claim under any

applicable law, regardless of whether the DIP Lender or either Prepetition Secured Lender consents to or opposes such sale and regardless of whether the DIP Obligations are credit bid in connection with such sale. In the event a Challenge is made to the PrePetition Indebtedness of the Prepetition Lender during the Challenge Period and the Court determines that "cause" exists within the meaning of section 363(k), the Court may impose conditions upon the Lender's right to credit bid the Prepetition Indebtedness in connection with a sale of the Property.

20. *Insurance*. The DIP Lender, shall be deemed to be the loss payee or additional insured under the Debtor's applicable insurance policies, shall act in such capacities, and, subject to the terms of the DIP Facility, shall distribute any proceeds recovered or received in respect of any such insurance policies, *first*, to the payment in full of the DIP Obligations, *second*, to the payment of the Adequate Protection Obligations owed to the Prepetition Secured Lender, and *third*, to the payment of the Prepetition Secured Indebtedness.

21. *Proofs of Claim*. The Prepetition Secured Lender shall not be required to file proofs of claim in the Case or Successor Case in respect of any claims arising under or related to Prepetition Indebtedness or the Prepetition Loan Documents. The Debtor's stipulations and admissions contained in this Final Order shall be deemed to constitute timely proofs of claim for the Prepetition Secured Lender on account of the Prepetition Indebtedness upon approval of this Final Order, and the Prepetition Secured Lender shall be treated under section 502(a) of the Bankruptcy Code as if the Prepetition Secured Lender timely filed a proof of claim. Nothing in this

paragraph shall waive, alter, or modify the Prepetition Secured Lender right to file, amend, and/or supplement, in its sole discretion, proofs of claim in the Case or Successor Case for any claim allowed herein.

22.     *Modifications of DIP Facility*.   Without further order of the Court, the Debtor and the DIP Lender are hereby authorized to implement, in accordance with the terms of the DIP Facility, any modifications to the Budget, any extension of the maturity subject to the conditions set forth in the DIP Facility, non-material modifications of the DIP Facility (that do not shorten the maturity of the extensions of credit thereunder, increase the commitments thereunder, or otherwise do not materially change the terms of the DIP Facility in a manner adverse to the interests of the Debtor) or waivers with respect to the DIP Facility; *provided*, *however*, any material modification or amendment to the DIP Facility not expressly authorized hereby or pursuant to the DIP Facility shall be subject to court approval after notice and a hearing.

23.     *Order Governs*. Unless and until such time as an amended Final Order may be entered, the DIP Facility attached hereto as **Exhibit 1**, which is hereby adopted by reference and incorporated herein, and this Final Order shall govern the financial and credit accommodations to be provided to the Debtor by the DIP Lender; *provided* that in the event of any inconsistency between the provisions of the DIP Facility and this Final Order, the provisions of this Final Order shall govern.

24.     *Binding Effect; Successors and Assigns*.   The DIP Facility and the provisions of this Final Order, including all findings herein, shall be binding upon all

parties in interest in the Cases, including, without limitation, each of the DIP Lender and the Prepetition Secured Lender, any committee (including the Committee) appointed in the Case, and the Debtor and its respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtor) and shall inure to the benefit of the DIP Lender and the Prepetition Secured Lender, any committee (including the Committee) appointed in the Case, and the Debtor and its respective successors and assigns; *provided*, *however*, that the DIP Lender shall not have any obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estate of the Debtor.  The DIP Lender shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor by virtue of entering into DIP Facility and making the DIP Loan thereunder (as such terms, or any similar terms, are used in any federal or state law, statute, or regulation.

25.    ***DIP Fees and Expenses***.  Subject to paragraph 26 hereof, the Debtor shall pay, without the need for the DIP Lender to file retention motions or fee applications, or to provide notice to any party except as required under paragraph 26 hereof, all reasonable and documented out-of-pocket expenses incurred by the DIP Lender in connection herewith, including (1) the reasonable and documented out-of-pocket fees, charges, and expenses of Lender's Counsel, and such other professionals or consultants that may be retained or may have been retained from time to time by the DIP Lender, in its reasonable discretion; and (2) all costs and expenses incurred

by the DIP Lender in connection with any filing, registration, recording, or perfection

of any security interest contemplated or permitted by the DIP Facility or any other

DIP Document.

26.    ***Professional Fee Procedural Requirements***.   A copy of each invoice of

any professional of the DIP Lender or the Prepetition Secured Lender shall be

submitted to the Debtor, the U.S. Trustee, and any Committee for professional fees,

expenses, and disbursements (to the extent incurred by such professionals after the

Petition Date, the payment of which is authorized by this Final Order (such fees and

expenses, the "**Lender Professional Fees**").  The invoices for such Lender Professional

Fees may be in summary form only (and shall not be required to contain time entries

and which may be redacted or modified to the extent necessary to delete any

information subject to the attorney-client privilege, any information constituting

attorney work product, or any other confidential information, and the provision of

such invoices shall not constitute any waiver of the attorney-client privilege or of any

benefits of the attorney work product doctrine).  None of the Lender Professional Fees

shall be subject to Court approval (subject to this paragraph 26) or required to be

maintained in accordance with the U.S. Trustee Guidelines and no recipient of any

payment on account thereof shall be required to file with respect thereto any Final or

final fee application with the Court.  If no written objections to the reasonableness of

the fees and expenses charged in any such statement or invoice (or portion thereof) is

made within ten (10) days of presentment of such statements or invoices, the Debtor

shall thereafter promptly pay in cash all such Lender Professional Fees.   Any

objection raised by the Debtor, the U.S. Trustee or any Committee with respect to such fee and expense statements or invoices (with notice of such objection provided to the DIP Lender and to the respective professional) may be made only on the basis of "reasonableness," and shall specify in writing the amount of the contested fees and expenses and the detailed basis for such objection. To the extent an objection only contests a portion of an invoice, the undisputed portion thereof shall be promptly paid. If any such objection to payment of an invoice (or any portion thereof) is not otherwise resolved between the Debtor, any Committee or the U.S. Trustee and the respective professional, either party may submit such dispute to the Court for a determination as to the reasonableness of the relevant disputed fees and expenses set forth in the invoice. This Court shall retain the jurisdiction to resolve any dispute as to the reasonableness of any such fees and expenses. Such fees and expenses shall not be limited by the Budget and shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever unless expressly provided herein. To the extent provided in the DIP Facility and with the DIP Lender's and the Prepetition Secured Lender's consent, the Debtor may accrue these payments.

27.    *City Liens.* Notwithstanding any other provision of this order, any and all valid liens of the City of New York ("City") shall retain their priority, and no lien granted herein, including the DIP Liens, shall have priority over any real property tax liens and charges, water and sewer charges, or any other lien of the City on the Property, whenever lain, which is a tax lien under or within the meaning of sections

11-301 and 11-319 of the Administrative Code of the City of New York, including emergency repair liens.

28. *Indemnification*.  The Debtor is authorized and empowered to jointly and severally indemnify and hold harmless the DIP Lender (solely in its capacity as a DIP Lender), and each other Indemnified Person (as defined in the DIP Facility) to the extent provided in the DIP Facility.

29. *Effectiveness*.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

30. *Retention of Jurisdiction*.  The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Final Order.

Dated:  New York, New York
        November 23, 2021

                              /s/ Lisa G. Beckerman
                              **HONORABLE LISA G. BECKERMAN**
                              **UNITED STATES BANKRUPTCY JUDGE**

# Exhibit 1

## DIP Loan Agreement

{01127310.DOCX;2 }

.

**$750,000**


**SENIOR SECURED SUPER-PRIORITY DEBTOR-IN-POSSESSION LOAN AGREEMENT**

**Dated as of November 22, 2021**



**between**

**286 RIDER AVE ACQUISITION LLC**
*as Borrower*

**and**

**BE-AVIV 286 RIDER LLC**
*as Lender*

{01127253.DOC;2 } {01122906.DOC;2 #10795785 v3 \029220 \000510795785 v2 \029220 \000510539674 v6 \029220 \0001

**SENIOR SECURED SUPER-PRIORITY DEBTOR IN POSSESSION LOAN AGREEMENT**, dated as of November 22, 2021, among 286 Rider Ave Acquisition LLC, as debtor-in-possession, ("**Borrower**") and Be-Aviv 286 Rider LLC ("**Lender**").

## RECITALS

A.      On July 15, 2021 ("**Petition Date**"), the Borrower filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code ("**Case**") in the United States Bankruptcy Court for the Southern District of New York ("**Bankruptcy Court**");

B.      The Borrower has retained possession of its assets and is authorized to continue the operation of its business as a debtor-in-possession;

C.      Subject to entry of the Final Order (defined below) by the Bankruptcy Court, the Borrower shall be authorized to execute and deliver this Agreement and to incur legally enforceable indebtedness and other obligations to the Lender, provided herein and secured on a senior secured basis with respect to all assets and properties of the Borrower; and

D.      Borrower has requested Lender to make a postpetition loan ("**DIP Loan**") on the terms set forth herein, and Borrower and Lender have negotiated in good faith for the extension of such credit.

**NOW, THEREFORE**, in consideration of the mutual conditions and agreements set forth in this Agreement, and for good and valuable consideration, the adequacy and receipt of which are hereby acknowledged, each of the parties hereto agree as follows:

1.      <u>Definitions</u>. As used in this Agreement, the following terms shall have the meanings specified below:

"**Advance**" shall have the meaning assigned to such term in Section 2(a).

"**Affiliates**" shall have the meaning assigned to such term in the Bankruptcy Code and, when used with respect to a specified Person, shall mean another Person that, directly or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with the Person specified.

"**Agreement**" shall mean this Senior Secured Super-Priority Debtor-in-Possession Loan Agreement.

"**Avoidance Actions**" shall mean claims and causes of action under chapter 5 of the Bankruptcy Code, including without limitation sections 502(d), 544, 545, 547,

548, 549 and 550 of the Bankruptcy Code, any other avoidance actions under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act, nonbankruptcy law, or any proceeds therefrom.

"**Bankruptcy Code**" shall mean the United States Bankruptcy Code, being Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as enacted in 1978, as the same has heretofore been amended, recodified, modified or supplemented, together with all rules, regulations and interpretations thereunder or related thereto.

"**Bankruptcy Court**" shall have the meaning assigned to such term in the recitals or any other court having jurisdiction over the Case from time to time.

"**Budget**" shall mean the budget agreed upon by Borrower and Lender from time to time based upon the projected needs of the Borrower as requested by the Borrower and approved by the Lender.

"**Business Day**" shall mean any day other than a Saturday, Sunday, or day on which commercial banks in New York City are authorized or required by law to close.

"**Carve-Out**" shall mean in all instances subject to the category and aggregate limitations in the Budget, the sum of (a) all unpaid and accrued fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code; (b) all unpaid and accrued professional fees, as have been or may be approved by the Bankruptcy Court, incurred at any time before the earlier of the occurrence of an Event of Default or the DIP Maturity Date, upon written notice provided by Lender to counsel to the Debtor (the "**Termination Date**"), up to the amounts set forth for each professional in the Budget, by persons or firms retained by the Debtor ("**Debtor Professionals**"), whose retention is approved by the Bankruptcy Court pursuant to sections 327, 328 or 1103 of the Bankruptcy Code (collectively, the "**Professional Persons**," or the "**Professionals**" and the fees, costs and expenses of Professional Persons, the "**Professional Fees**"), to the extent such Professional Fees are allowed by the Bankruptcy Court at any time, whether before or after the Termination Date; (c) the Professional Fees of Debtor Professionals incurred following the Termination Date in an amount not to exceed $50,000 in the aggregate; and (d) $25,000 (twenty-five thousand dollars) for reasonable allowed commissions and professional fees associated with the appointment of a Chapter 7 Trustee appointed in any Successor Case; provided that this Carve-Out, any cash collateral, and any proceeds of this Agreement may not be used to investigate or to prosecute a motion or an adversary proceeding contesting, or challenging the validity, perfection, priority, extent, or enforceability of this Agreement, or the Liens securing this facility, or any claims against Lender.

"**Case**" shall have the meaning assigned to such term in the recitals.

"**Cash Collateral**" shall mean "cash collateral" as defined in section 363(a) of the Bankruptcy Code.

A "**Change in Control**" shall be deemed to have occurred if (a) there is a material change in Borrower's management; (b) any change in control (or similar event, however denominated) with respect to Borrower shall occur under and as defined in any material agreement in respect of which Borrower is a party; or (c) all or substantially all of the assets of Borrower shall be sold, or a chapter 11 plan shall be confirmed, without the Lender' express written consent; provided however, that any change in control pursuant to a sale or reorganization plan that provides for immediate repayment of the amounts outstanding under this Agreement shall not constitute a Change-in-Control.

"**Closing Date**" shall mean the date of the entry of the Final Order.

"**Collateral Support**" shall mean all property (real or personal) assigned, hypothecated or otherwise securing any Collateral and shall include any security agreement or other agreement granting a lien or security interest in such real or personal property.

"**Confirmation Order**" shall have the meaning assigned to such term in Section 7(l).

"**Court Day**" shall mean any day other than a day on which the Bankruptcy Court is authorized or required by law to close.

"**DIP Administrative Claims**" shall have the meaning assigned to such term in Section 4(g)(i)(l).

"**Final Order**" shall mean an order of the Bankruptcy Court, in form and substance satisfactory to Lender, authorizing, on a permanent basis, the Borrower to enter into this Agreement, and as to which no stay on its execution or enforcement is in effect and which has not been reversed, modified, vacated, or overturned.

"**GAAP**" shall mean generally accepted accounting principles in the United States.

"**Indebtedness**" shall mean, without duplication, (a) all obligations of Borrower for borrowed money, (b) all obligations of Borrower evidenced by bonds, debentures, notes, or similar instruments, (c) all obligations of Borrower under conditional sale or other title retention agreements relating to property or assets acquired by Borrower, (d) all obligations of Borrower in respect of the deferred purchase price of property or services (other than (i) trade accounts payable incurred in the ordinary course of business and not past due for more than 60 days after the date on which such trade account was created and (ii) any earn-out obligation until such obligation

appears on the liability section of the balance sheet of Borrower), (e) all obligations of Borrower, contingent or otherwise, to purchase, redeem, retire, or otherwise acquire for value any equity interests in Borrower, (f) all Indebtedness of others secured by (or for which holder of such Indebtedness has an existing right, contingent or otherwise, to be secured by) any Lien on property owned or acquired by Borrower, whether or not the Indebtedness secured thereby has been assumed, (g) all guarantees by Borrower of Indebtedness of others, (h) all capital lease obligations or synthetic lease obligations of Borrower, (i) all obligations, contingent or otherwise, of Borrower as an account party in respect of letters of credit and letters of guaranty and (j) all obligations, contingent or otherwise, of Borrower in respect of bankers' acceptances. The Borrower's Indebtedness includes the Indebtedness of any other Person to the extent Borrower is liable therefor as a result of Borrower's ownership interest in such other Person.

"**Investments**" shall have the meaning assigned to such term in Section 8(d).

"**Lien**" shall mean, with respect to any asset of the Borrower, (a) any mortgage, deed of trust, lien (statutory or otherwise), pledge, hypothecation, encumbrance, collateral assignment, charge, or security interest in, on, or of such asset, (b) the interest of a vendor or a lessor under any conditional sale agreement, capital lease, or title retention agreement (or any financing lease having substantially the same economic effect as any of the foregoing) relating to such asset and (c) in the case of securities, any purchase option, call or similar right of a third party with respect to such securities.

"**Material Adverse Effect**" shall mean a material adverse condition or material adverse change in or affecting (a) the validity or enforceability of this Agreement or the rights and remedies of Lender thereunder, (b) the condition (financial or otherwise), assets, operations, prospects, or business of Borrower, not contemplated by the Budget, (c) the ability of Borrower to comply with its obligations under this Agreement (d) the Court denying all or part of the collateral package set forth herein, or demanding changes to this Agreement as a condition of approval which are not acceptable to Lender and (e) the validity, legality, priority, or enforceability of any Lien created by this Agreement; provided that, for purposes of all representations and warranties made in connection with this Agreement, none of the following shall be deemed in itself, or in any combination, to constitute, a "Material Adverse Effect": (i) the filing of the Case and (ii) the conditions, events, and changes that ordinarily occur in connection with a filing under chapter 11 of the Bankruptcy Code.

"**Maturity Date**" shall mean the earliest of (i) the closing on the sale of all or substantially all of Borrower's assets pursuant to ssection 363 of the Bankruptcy Code, (ii) March 31, 2022 ("**Back-up Maturity Date**"), provided that this date may be extended by Lender is its sole discretion  for an additional period but in no event later than the date that is three (3) months after the Back-up Maturity Date if such

extension is requested in writing on or prior to the Initial Maturity Date, (iii) the date on which all the obligations under this Agreement have been indefeasibly repaid in full in cash and all of commitments under this Agreement have been permanently and irrevocably terminated, (iv) the date that a chapter 11 plan for Borrower pursuant to chapter 11 of the Bankruptcy Code is declared effective, and (v) the date of termination of the commitments and/or acceleration of any outstanding extensions of credit under this Agreement following the occurrence and during the continuance of an Event of Default.

"**Maximum Loan Amount**" shall have the meaning assigned to such term in Section 2(a).

"**Milestone**" shall have the meaning assigned to such term in Section 7(k).

"**Obligations**" shall mean the obligations of Borrower to Lender evidenced by this Agreement, the Pre-Petition Loan, the Loan Agreement, the Mortgage, or the Pre-Petition Secured Lien, or any of the documents relating to this Agreement, the Pre-Petition Loan, the Loan Agreement, the Mortgage, or the Pre-Petition Secured Lien.

"**Order**" shall mean the Final Order.

"**Other Taxes**" means all present or future stamp, court, or documentary taxes and any other excise, property, intangible, recording, filing, or similar levies or charges which arise from any payment made under, from the execution, delivery, performance, enforcement, or registration of, from the receipt or perfection of a security interest under, or otherwise with respect to this Agreement.

"**Permitted Liens**" shall have the meaning assigned to such term in Section 8(b).

"**Person**" shall mean any natural person, corporation, trust, business trust, joint venture, joint stock company, association, company, limited liability company, partnership, Governmental Authority, or other entity.

"**Petition Date**" shall have the meaning assigned to such term in the recitals.

"**Pre-Petition Loan**" shall mean the loan in the original principal amount of $8,000,000.00 from Lender evidenced by a Promissory Note dated as of September 19, 2019 ("**Note**"), as amended by the First Amendment to Promissory Note ("**Amendment**") dated as of September 18, 2020 (collectively with Loan and Note, "**Loan Agreement**").

"**Pre-Petition Payment**" shall mean a payment made by Borrower (by way of adequate protection or otherwise) on account of any pre-petition Indebtedness or trade payables or other pre-petition claims against Borrower.

"**Pre-Petition Secured Lien**" shall mean the mortgage and security interest in the Property granted by Borrower to Lender evidenced by the mortgage dated September 19, 2019, made by and between Borrower and Lender in the principal amount of the Loan was recorded with the Office of the City Register for the City of New York on September 30, 2019, under CRFN 201900315617 ("**Mortgage**") against the Property.

"**Property**" shall mean the real property located at 286 Rider Avenue, Bronx, New York.

"**Real Property**" shall include, but not be limited to, (i) all mortgaged property and all other real property owned or leased from time to time by Borrower and (iii) the Property.

"**Subsidiary**" shall mean, with respect to any Person, any corporation, partnership, limited liability company, association or other entity (a) of which securities or other ownership interests representing more than 50% of the equity or more than 50% of the ordinary voting power or more than 50% of the general partnership interests are, at the time any determination is being made, owned, controlled or held by such Person or (b) that is, at the time any determination is made, otherwise controlled by the parent or one or more subsidiaries of such Person or by such Person and one or more subsidiaries of such Person.

"**Successor Case**" shall mean any case under chapter 7 of the Bankruptcy Code upon the conversion of this chapter 11 case, or in any other proceedings superseding or related to the Borrower.

"**Superpriority Claim**" shall mean a claim against Borrower in the Case which is an administrative expense claim having priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims including but not limited to claims or expenses arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment.

"**Taxes**" shall have the meaning assigned to such term in Section 3(a).

"**UCC**" shall mean the Uniform Commercial Code in effect in the State of New York.

    2.      Payment of Interest and Principal.

      (a)    <u>Revolving Loan</u>. Until the Maturity Date, and prior to an Event of Default, Borrower may borrow up to an amount outstanding at any one time of up to Seven Hundred and Fifty thousand dollars ($750,000) plus interest, fees, and other expenses and amounts provided for in this Agreement ("**Maximum Loan**

**Amount**") in one or more drawings by borrowing in accordance with the terms and conditions hereof, including the Budget. Until the Maturity Date, the Borrower may from time to time borrow, repay, and re-borrow, under this Section 2.1(a) for the purposes described in Section 7(h). Borrowings under this Agreement (each such event being called an "**Advance**") will be available to Borrower as follows:

(i)    upon entry of the Final Order (in form and substance satisfactory to Lender), an amount outstanding not to exceed the Maximum Loan Amount and in accordance with the Budget.

(ii)    Each Advance shall be in a minimum amount of $25,000 and increments of $25,000.

(b)    <u>Making of Advances</u>. In order to request an Advance under this Agreement, Borrower shall provide Lender with a borrowing request, which shall (1) be irrevocable, (2) be in writing and signed by Borrower, (3) be in compliance with the Budget and Section 5(g), (4) include the amount requested to be borrowed and the requested timing of such borrowing, and (5) state that no Event of Default has occurred or is reasonably likely to occur with the passage of time. The making of any advance hereunder (including the timing thereof and the amount so advanced) shall be subject to Lender' sole determination that the conditions to borrowing hereunder have been satisfied. Lender is authorized to endorse on **Schedule 1** the date and amount of each borrowing, payment, or prepayment of principal. Each such endorsement shall constitute *prima facie* evidence of the accuracy of the information endorsed and shall be binding and enforceable against Borrower, absent manifest error. The failure to make any such endorsement or any error in any such endorsement shall not affect the obligations of Borrower in respect of this Agreement.

(c)    <u>Rate of Interest</u>.

(i)    Until and including the Maturity Date, the unpaid principal amount  of the outstanding DIP Loan shall be increased and accrue at a daily rate equal to 12% *per annum*.

(ii)    During the occurrence and continuance of an Event of Default additional interest shall accrue on the unpaid principal and interest of this Agreement at a rate equal to 15% per annum or the maximum amount of interest allowable by applicable law ("**Default Rate**"). Any judgments obtained for sums due hereunder shall accrue interest at the Default Rate until paid.

(d)    <u>Payment; Maturity</u>. Payment of the outstanding principal amount under this Agreement, together with accrued but unpaid interest due in accordance with Section 2(c) above, plus any accrued, due, or outstanding fees and expenses of Lender, shall be due and payable on the Maturity Date and on demand therefor as provided for herein. Borrower shall have the right to prepay at any time,

in whole and not in part, without penalty or premium, all of the outstanding principal of this Agreement, together with accrued and unpaid interest thereon.

(e)     Place of Payment. Borrower shall make all payments to Lender at the address of Lender as set forth in Section 10(f) hereof or to such other place as Lender, from time to time, shall designate in writing to Borrower not later than 1:00 p.m., New York City time, on the date when due in immediately available dollars, without setoff, defense or counterclaim. Any payment received by Lender after 1:00 p.m., New York City time, may be considered to have been received on the next Business Day in Lender' sole discretion. All payments under this Agreement shall be made in U.S. dollars. Except as otherwise expressly provided herein, whenever any payment (including principal of or interest or other amounts) or performance under this Agreement shall become due, or otherwise would occur, on a day that is not a Business Day, such payment or performance may be made on the next succeeding Business Day, and such extension of time shall in such case be included in the computation of interest or fees, if applicable.

(f)     Obligations Absolute. No provision of this Agreement shall alter or impair the obligations of Borrower, which are absolute and unconditional, to pay the principal of and interest on this Agreement (and any other amounts due hereunder) at the place, times, rate, and in the currency, herein prescribed. Subject to the provisions of Section 9, upon the maturity (whether by acceleration or otherwise) of any of the obligations under this Agreement of Borrower, Lender shall be entitled to immediate payment of such obligations without further application to or order of the Bankruptcy Court.

3.     Taxes Generally.

(a)     All payments by or on account of any obligation of Borrower under this Agreement shall be made free and clear of and without deduction for any present or future excise, stamp or other taxes, fees, duties, levies, imposts, charges, deductions, withholdings, or other charges of any nature whatsoever imposed by any taxing authority, but excluding (A) any taxes imposed on or measured by Lender's net income or franchise taxes imposed in lieu of net income taxes, that would not be imposed but for a present or former connection between the Lender and the jurisdiction imposing such taxes (other than a connection arising solely from such recipient having executed, delivered or performed its obligations or received a payment under, or enforced, this Agreement), and (B) any United States withholding tax that is imposed on amounts payable to Lender on the date hereof (or at the time Lender designates a new lending office) (such non excluded items being collectively called "**Taxes**"). If any withholding or deduction from any payment to be made by Borrower hereunder is required in respect of any Taxes pursuant to any applicable law, then Borrower will:

(i)      make (or cause to be made) such deductions and pay directly to the relevant Governmental Authority the full amount so deducted in accordance with applicable law; and

(ii)      promptly forward to the Lender an official receipt or other documentation satisfactory to Lender evidencing such payment to such Governmental Authority; In addition, Borrower shall pay (or cause to be paid) any Other Taxes to the relevant Governmental Authority in accordance with applicable law.

4.      <u>Security</u>.

(a)      <u>Grant of Security in Personal Property</u>. Subject to the terms of the Final Order and Section 4(e) herein, the Borrower hereby pledges, assigns, transfers, and grants to and creates in favor of Lender a senior security interest and lien under the UCC and all other applicable laws in all of the personal property of Borrower, including, but not limited to, the following property, in each case, wherever located and now owned or at any time hereafter acquired by Borrower or in which Borrower now has or at any time in the future may acquire any right, title or interest (collectively, "**Personal Collateral**") as security for the full and timely payment, observance and performance of this Agreement (defined terms used in this Section 4 but not otherwise defined in this Agreement have the meanings assigned to such terms in the UCC):

(i)      all Accounts;

(ii)      all Chattel Paper;

(iii)      all Collateral Accounts and all Collateral Account Funds;

(iv)      all Contracts;

(v)      all Deposit Accounts;

(vi)      all Documents;

(vii)      all Equipment;

(viii)      all Fixtures;

(ix)      all General Intangibles;

(x)      all Goods;

(xi)      all Instruments;

(xii)      all Insurance;

(xiii)   all Intellectual Property;

(xiv)   all Inventory;

(xv)   all Investment Property;

(xvi)   all Letters of Credit and Letter of Credit Rights;

(xvii)   all Money;

(xviii)   all Receivables and Receivables Records;

(xix)   all Securities Accounts;

(xx)   Proceeds of Avoidance Actions (but not Avoidance Actions);

(xxi)   all books, records, ledger cards, files, correspondence, customer lists, supplier lists, blueprints, technical specifications, manuals, computer software and related documentation, computer printouts, tapes, disks, and other electronic storage media and related data processing software and similar items that at any time pertain to or evidence or contain information relating to any of the Collateral or are otherwise reasonably necessary in the collection thereof or realization thereupon; and

(xxii)   to the extent not otherwise included, all other property, whether tangible or intangible, of Borrower and all proceeds, products, accessions, rents, and profits of any and all of the foregoing and all Collateral Support and guarantees given by any Person with respect to any of the foregoing.

(b)   <u>Grant of Security in Real Property</u>. Subject to the terms of the Final Order, the Borrower, in consideration of the premises, the Indebtedness evidenced herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged (i) has mortgaged, warranted, granted, bargained, sold, alienated, released, confirmed, conveyed, pledged, and assigned, and (ii) by these presents does hereby irrevocably grant and create a first priority lien on and security interest in, subject to the Permitted Encumbrances and the provisions hereof, and does hereby MORTGAGE, GRANT A SECURITY INTEREST IN AND PLEDGE to Lender and its successors and assigns forever, all of Borrower's estate, right, title, and interest now owned or hereafter acquired in, to and under any and all the Real Property (collectively, "**Property Collateral**" and together with the Personal Collateral, "**Collateral**") currently owned or leased by the Borrower, to the extent permitted under the applicable documents.

(c)   <u>Rights in Collateral</u>. Borrower represents, warrants, and covenants that it has and shall have at all times good and valid title to all of the

Collateral, both real and personal, free and clear of all liens, claims, charges, and encumbrances other than Permitted Liens, and Borrower shall defend such title against the claims and demands of all other Persons. Borrower represents and warrants that this Agreement creates a valid security interest in and Mortgage upon the Collateral and, upon entry of the Final Order, such security interest and Mortgage shall constitute a perfected lien on and security interest in all Collateral, subject only to Permitted Liens. Borrower assumes full responsibility for taking any and all steps to preserve its rights with respect to the Collateral.

(d)     <u>Perfection</u>. Borrower hereby covenants and agrees that upon entry of the Final Order, it shall immediately take any and all action(s) necessary to perfect the Lender's security interest and all additional action(s) that Lender deems necessary in its discretion to ensure that Lender's security interest under this Agreement is perfected.

(e)     <u>Preservation of Security Interest</u>. Borrower shall diligently preserve and protect Lender's security interest in the Collateral and shall, at its expense, cause such security interest to be and remain perfected so long as this Agreement or any portion thereof or obligation hereunder remains outstanding and unpaid and, for such purposes, Borrower shall, from time to time at Lender's reasonable request and at Borrower's expense, file or record, or cause to be filed or recorded, such instruments, documents, and notices (including, without limitation, financing statements, Mortgage and related filings, and continuation statements) as may be necessary to perfect and continue such security interests. Borrower shall do all such other acts and things and shall execute and deliver all such other instruments, security agreements, and documents as Lender may reasonably request from time to time to protect and preserve the priority of Lender's security interest in the Collateral, as a perfected security interest in the Collateral subject only to Permitted Liens.

(f)     <u>Remedies on Default</u>. Subject to the Final Order, but without limitation to any and all remedies on default provided therein, if any Event of Default shall occur and be continuing, Lender may (i) to the full extent permitted by law take possession and control of all or any part of the Collateral and any proceeds thereof and the books and records pertaining thereto, with or without judicial process, and (ii) without demand or notice (and if notice is required by law, after ten days prior written notice), proceed to exercise one or more of the rights and remedies accorded to a secured party by the UCC, and the rights accorded to a Mortgagee and otherwise by law or by the terms hereof. Lender's rights and remedies shall include without limitation the power to sell all or any portion of the Collateral at public or private sale at such place and time and on such terms as Lender may see fit (subject to the requirements of applicable law). Without precluding any other methods of sale, the sale of Collateral shall be deemed to have been made in a commercially reasonable manner if conducted in conformity with reasonable commercial practices of secured parties disposing of similar property,

but in any event, Lender may sell the Collateral on such terms as Lender may choose without assuming any credit risk and without any obligation to advertise or give notice of any kind not expressly required under this Agreement, by the UCC or otherwise. All of the rights and remedies of Lender under this Agreement shall be cumulative and not exclusive of other rights and remedies which it otherwise would have, whether under the Agreement, the Bankruptcy Code, the UCC, or otherwise. Lender shall not be under any obligation to marshal any assets in favor of Borrower or any other Person or against or in payment of this Agreement.

(g)   Priority.

(i)   Subject to the Carve-Out, Borrower hereby covenants, represents, and warrants that, upon entry of the Final Order, the obligations of the Borrower under this Agreement:

(1)   pursuant to section 364(c)(1) of the Bankruptcy Code, shall at all times constitute allowed super-priority administrative expenses claims in the Case ("**DIP Administrative Claims**") and a Superpriority Claim having superpriority over any and all administrative expenses, diminution claims, and all other claims against Borrower, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, or 1114 of the Bankruptcy Code or otherwise which Superpriority Claims shall be payable in accordance with the terms of the Final Order.

(2)   pursuant to section 364(d)(1) of the Bankruptcy Code, are secured by a valid, binding, continuing, enforceable, fully-perfected, first priority Lien on, and security interest in, the Collateral. The Liens granted under this clause (2) shall be senior in all respects to the security interests in, and Liens on, the Pre-Petition Secured Liens.

(3)   (I) shall not be subject or subordinate to (A) any Lien or security interest that is avoided and preserved for the benefit of Borrower and its estate under section 551 of the Bankruptcy Code or (B) any Liens arising after the Petition Date or (II) subordinated to or made *pari passu* with any other Lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

5.   Representations and Warranties. Borrower represents and warrants to Lender as follows:

(a)   Organization. Borrower is duly organized and validly existing and, to the extent legally applicable, in good standing under the laws of the State of New York, and has the requisite power and authorization to own its properties and to carry on its business as now being conducted.

(b)    <u>Authorization, Execution, Delivery</u>. Subject to the entry by the Bankruptcy Court of the Final Order, Borrower has the requisite power and authority to enter into and perform its obligations under this Agreement, and to issue this Agreement in accordance with the terms hereof. Subject to the entry by the Bankruptcy Court of the Final Order, the execution and delivery of this Agreement by Borrower and the consummation of the transactions contemplated hereby have been duly authorized by Borrower and no further filing, consent, or authorization is required by Borrower or its shareholders. This Agreement has been duly executed and delivered by Borrower, and constitutes the legal, valid, and binding obligation of Borrower, enforceable against Borrower in accordance with its terms, except as such enforceability may be limited by the Bankruptcy Code.

(c)    <u>Noncontravention</u>. The execution, delivery, and performance of this Agreement by Borrower and the consummation by Borrower of the transactions contemplated hereby will not result in a violation of any certificate of incorporation, certificate of formation, any certificate of designation or other constituent documents of Borrower, any capital stock of Borrower or bylaws of Borrower.

(d)    <u>Governmental Approvals</u>. Other than the entry by the Bankruptcy Court of the Final Order, no action, consent, or approval of, registration or filing with, permit from, notice to, or any other action by, any Governmental Authority is or will be required in connection with this Agreement, except for such as have been made or obtained and are in full force and effect.

(e)    <u>No Material Adverse Change</u>. No event, change, or condition has occurred since the Petition Date that has caused, or could reasonably be expected to cause, a Material Adverse Effect other than events, changes, or conditions that ordinarily would occur in connection with a filing under chapter 11 of the Bankruptcy Code.

(f)    <u>Subsidiaries</u>. Borrower has no Subsidiaries.

(g)    <u>Use of Proceeds</u>. Unless the Lender agrees otherwise, or agrees to accrue some or all of the Debtor's obligations stated in this provision, the proceeds of this Agreement shall be used (a) to pay all interest, charges, fees, and expenses incurred—including, for the avoidance of doubt, attorneys' fees for counsel to Lender, title insurance fees, and any mortgage recording tax incurred in connection with this Agreement, (b) all attorneys' fees, charges, and expenses, incurred by Lender in respect of this Agreement, including for the avoidance of doubt, attorney's fees incurred in connection with drafting and negotiating this Agreement and any related agreements, (c) to fund post-petition operating expenses and other general corporate needs, including working capital needs, (d) to pay certain administrative expenses of the Case, including reasonable fees and expenses of professionals and fees to be paid to the United States Trustee, and (e) to make such other court-approved payments, in each case, solely in the manner

contemplated by and in amounts consistent with the Budget, subject to any permitted variances. Lender agrees to accrue its counsel fees and expenses until the Maturity Date.

(h)    <u>No Material Misstatements</u>. Upon information and belief, none of the information, reports, financial statements, exhibits, or schedules furnished by or on behalf of Borrower for use in connection with this Agreement or in connection with the negotiation of this Agreement or included therein or delivered pursuant thereto (as modified or supplemented by other information so furnished), taken as a whole, contained or contains any material misstatement of fact or omitted or omits to state any material fact necessary to make the statements therein, in the light of the circumstances under which they were, are or will be made, not misleading; provided that to the extent any such information, reports, financial statements, exhibits, or schedules were based upon or constitute a forecast or projection, Borrower represents only that it acted in good faith and utilized reasonable assumptions in light of the conditions existing at the time of preparation. The forecasts and projections that have been or will be made available to Lender by Borrower have been or will be prepared in good faith based upon reasonable assumptions at the time of delivery.

(i)    <u>Liens</u>. There are no Liens of any nature whatsoever on any of the properties or assets of Borrower other than Permitted Liens or Liens otherwise permitted by this Agreement.

(j)    <u>Foreign Corrupt Practices Act</u>. Borrower and its respective directors and officers or, to the knowledge of Borrower, any agent, employee or other Person acting on behalf of Borrower, have not, in the course of their actions for, or on behalf of, Borrower (i) used any corporate funds for any unlawful contribution, gift, entertainment or other unlawful expenses relating to political activity; (ii) made any direct or indirect unlawful payment to any foreign or domestic government official or employee from corporate funds; (iii) violated or are in violation of any provision of the U.S. Foreign Corrupt Practices Act of 1977, as amended (15 U.S.C. §§ 78dd-1, et seq.); or (iv) made any unlawful bribe, rebate, payoff, influence payment, kickback or other unlawful payment to any foreign or domestic government official or employee.

6.    <u>Conditions Precedent</u>. The making of borrowings under this Agreement by Lender is subject to the satisfaction of the following conditions:

(a)    <u>Before the Closing Date or the first Advance</u>:

(i)    The Court shall have entered the Final Order.

(ii)    All representations and conditions set forth in Section 6(b) shall be satisfied.

(b)    <u>All other Advances</u>. On the date of each subsequent Advance:

(i)    The representations and warranties set forth herein shall be true and correct in all material respects on and as of the date of such Advance with the same effect as though made on and as of such date, except to the extent such representations and warranties expressly relate to an earlier date, in which case such representations and warranties shall be true and correct in all material respects on and as of such earlier date (except that such materiality qualifiers shall not be applicable to any representation and warranty that is already qualified by materiality).

(ii)    At the time of and immediately after giving effect to such Advance, no Event of Default shall have occurred and be continuing (unless otherwise waived in writing by Lender).

(iii)    At the time of such Advance, the Final Order shall have been entered.

(iv)    The making of such Advance shall not violate any requirement of applicable law and shall not be enjoined, temporarily, preliminarily, or permanently.

(v)    Each Advance shall be deemed to constitute a representation and warranty by the Borrower on the date of such Advance as to the matters specified in this Section 6(b).

(c)    <u>Deliverables</u>. On or prior to the Closing Date:

(i)    Lender shall have received this Agreement, executed and delivered by a duly authorized officer of Borrower, and any deliverables required thereunder.

(ii)    Lender shall have been granted perfected Liens on the Collateral and shall have received, if applicable, any mortgages and certificated equity interests or instruments accompanied by instruments of transfer, endorsed in blank, deposit account control agreements and other documents necessary to comply with Section 4(d) of this Agreement.

(iii)    There shall be no litigation, or governmental, administrative, or judicial action, actual or threatened, that could reasonably be expected to restrain, prevent, or impose burdensome conditions on Borrower, this Agreement, or the other transactions contemplated hereby, including the repayment hereof.

(iv)    Lender shall have received all documentation and other information required by regulatory authorities under applicable "know your

#10795785 v3 \029220 \0005

customer" and anti-money laundering rules and regulations, including the USA PATRIOT Act.

        (v)     Lender shall have received, with respect to Borrower, (a) customary evidence of authority, (b) customary officer's certificates and other evidence of corporate authorization (including applicable constituent documents), (c) good standing certificates in jurisdiction of formation and (d) a notice of borrowing.

        (vi)     Lender shall have received and approved the Budget in its sole discretion, which approval shall not be unreasonably withheld.

        (vii)     Lender shall have received evidence satisfactory to Lender in its reasonable discretion of the entry of the Final Order (i) approving this Agreement and (ii) granting the Superpriority Claim status and senior priming and other Liens described herein and in the Final Order.

     7.   <u>Affirmative Covenants</u>. Borrower covenants and agrees with Lender that so long as this Agreement shall remain in effect and until this Agreement has been terminated and the principal of and interest hereunder, all fees and all other expenses or amounts payable hereunder shall have been indefeasibly paid in full, Borrower will:

        (a)     <u>Existence; Businesses and Properties</u>.

        (i)     Except as occasioned by the Case, do or cause to be done all things necessary to preserve, renew, and keep in full force and effect its legal existence.

        (ii)     Except to the extent failure to do so could not reasonably be expected to have a Material Adverse Effect or would violate the Final Order, (i) do or cause to be done all things necessary to obtain, preserve, renew, extend, and keep in full force and effect the rights, licenses, permits, franchises, authorizations, patents, copyrights, trademarks, and trade names used in the conduct of its business; (ii) comply with all applicable laws, rules, regulations and decrees, and orders of any Governmental Authority, whether now in effect or hereafter enacted; and (iii) comply with the terms of, and enforce its rights under, each lease of Real Property and each other agreement so as not to permit any uncured default on its part to exist thereunder.

        (b)     <u>Insurance</u>. Keep its insurable properties adequately insured at all times by financially sound and reputable insurers to such extent and against such risks (and with such deductibles, retentions and exclusions), including fire and other risks insured against by extended coverage, as is reasonable and customary for companies in the same or similar businesses operating in the same or similar locations, including public liability insurance against claims for personal injury or death or property damage occurring upon, in, about or in connection with the use of

any properties owned, occupied, or controlled by it; maintain such other insurance as may be required by law; and maintain such other insurance as otherwise required by the this Agreement (and comply with all covenants in the this Agreement with respect thereto).

(c)    Obligations and Taxes. Except to the extent otherwise required by the Final Order, or agreed to by Lender, (i) pay its material Indebtedness and other material obligations arising after the Petition Date that are approved by the Bankruptcy Court and provided in the Budget promptly and in accordance with their terms, subject to a permitted variance of 10% for all weekly disbursements in the aggregate; and (ii) timely file (after giving effect to any valid extensions of time in which to file such filings) all of its tax returns; and (iii) pay and discharge promptly when due all lawful claims for labor, materials and supplies or otherwise that, if unpaid, would reasonably be expected to give rise to a Lien upon such properties or any part thereof; provided, however, that such payment and discharge shall not be required with respect to any such material tax, assessment, charge, levy, or claim so long as the validity or amount thereof shall be contested in good faith by appropriate proceedings and Borrower shall have set aside on its books adequate reserves with respect thereto in accordance with GAAP.

(d)    Financial Statements, Reports, Etc. Furnish to Lender:

(i)    as soon as possible after preparation, copies of financial statements prepared in the ordinary course of business;

(ii)    the Budget and updates as requested by Lender;

(iii)    not later than two weeks following the Closing Date, and monthly thereafter on the date that is ten (10) days after monthly operating reports are due to be filed with the Court, provide the Lender with a line-by-line variance report detailing any variances from the Budget in receipts, disbursements, or both, for the previous two week period, and comparing actual cash receipts and disbursements to amounts projected in the Budget, in form and scope reasonably acceptable to the Lender;

(iv)    if applicable, promptly after the same become publicly available, copies of all periodic and other reports, proxy statements and other materials filed by Borrower with the Securities and Exchange Commission, or any Governmental Authority succeeding to any or all of the functions of said Commission, or with any national securities exchange, or distributed to its public shareholders, as the case may be;

(v)    promptly after the receipt thereof by Borrower, a copy of any "management letter" received by any such Person from its certified public accountants in connection with any audit and the management's response thereto;

(vi)   as soon as possible, a pro forma balance sheet of Borrower's financial condition as of the Petition Date;

(vii)   from the Closing Date forward, copies of all pleadings, motions, applications, judicial information, financial information, and other documents filed by or on behalf of Borrower with the Bankruptcy Court in the Case, or distributed by or on behalf of Borrower to any official committee appointed in the Case;

(viii)   prompt notice of any of the following; (A) changes to any material customer contracts, and (B) any event that has or could reasonably be expected to result in a Material Adverse Effect or Change in Control;

(ix)   promptly provide any other information regarding (A) the operations, business affairs, or financial condition of Borrower, (B) compliance with the terms of any material contract entered into or assumed after the Petition Date and (C) information and updates regarding the achievement or progress towards the Milestones as Lender's may reasonably request; and

(x)   cooperate with Lender's legal and financial advisors and promptly provide all information reasonably requested by Lender's legal and financial advisors with respect to Borrower.

(e)   <u>Litigation and Other Notices</u>. Furnish to Lender prompt written notice of the following:

(i)   any Event of Default, specifying the nature and extent thereof and the corrective action (if any) taken or proposed to be taken with respect thereto; and

(ii)   the filing or commencement of, or any threat or notice of intention of any Person to file or commence, any action, suit or proceeding, whether at law or in equity or by or before any arbitrator or Governmental Authority, against Borrower that could reasonably be expected to result in a Material Adverse Effect.

(f)   <u>Information Regarding Collateral</u>. Furnish to Lender prompt written notice of any change in Borrower's (i) corporate name, (ii) jurisdiction of organization or any office in which it maintains books or records relating to the Collateral owned by it, (iii) identity or corporate structure, or (iv) organizational identification number. Borrower agrees to promptly to notify Lender if any material portion of the Collateral is damaged or destroyed.

(g)   <u>Maintaining Records; Access to Finances</u>. Keep proper books of record and account in which materially full, true, and correct entries in conformity with GAAP are made of all material dealings and transactions in relation to its

business and activities. Borrower will permit any representatives designated by Lender to visit and inspect its respective financial records and properties at reasonable times during normal business hours on reasonable notice and as often as reasonably requested and to make extracts from and copies of such financial records, and permit any representatives designated by Lender to discuss the affairs, finances and condition of Borrower with the officers thereof and independent accountants therefor provided that (i) any such visit or inspection shall be coordinated through Lender and (ii) in respect of any such discussions with any independent accountants, Borrower, as the case may be, shall have received reasonable advance notice thereof and a reasonable opportunity to participate therein.

(h)    <u>Use of Proceeds</u>. The proceeds of this Agreement shall only be used for the purposes set forth herein.

(i)    <u>Additional Collateral, Etc.</u>

(i)    With respect to any Collateral acquired after the Closing Date or, in the case of inventory or equipment (other than inventory or equipment in transit), any material Collateral moved after the Closing Date by Borrower (other than any Collateral described in paragraphs (ii) or (iii) of this Section 7(i)) which is not subject to the Liens created by this Agreement or the Final Order, promptly (and, in any event, within 10 days following the date of such acquisition or move or such longer period as agreed by Lender) (i) execute and deliver to Lender such additional documents and amendments to this Agreement as are necessary or that Lender may deem advisable in their sole discretion to grant to Lender a Lien in such Collateral and (ii) take all actions necessary or that Lender may deem advisable to grant to, or continue on behalf of Lender, a Lien.

(ii)    Subject to Section 7(k), with respect to any Subsidiary created or acquired after the Closing Date by Borrower, promptly (and, in any event, within 30 days following such creation or the date of such acquisition or such longer period as agreed by Lender) (i) execute and deliver to Lender such additional documents as Lender deem necessary or advisable in their discretion to grant to Lender a valid, perfected first priority security interest in the equity interests in such new Subsidiary that are owned by Borrower, (ii) deliver to Lender the certificates, if any, representing such equity interests, together with undated stock powers, in blank, executed and delivered by a duly authorized officer of Borrower, as the case may be, (iii) cause such new Subsidiary (A) to become a party to this Agreement and/or enter into such other documents as determined by Lender in their sole discretion to be required to provide a guaranty of this Agreement and (B) to take such actions necessary or that Lender may deem advisable to grant to Lender a Lien having the priority set forth in this Agreement, and (iv) if requested by Lender, deliver to Lender legal opinions relating to the matters described above,

which opinions shall be in form and substance, and from counsel reasonably satisfactory to Lender.

(j)    <u>Further Assurances</u>. From time to time duly authorize, execute, and deliver, or cause to be duly authorized, executed and delivered, such instruments, certificates, financing statements, agreements, or documents, and take all such actions (including filing UCC and other financing statements), as Lender may reasonably request, for the purposes of implementing or effectuating the provisions of this Agreement, or documenting (other than the Final Order), perfecting or renewing the rights of Lender with respect to the Collateral (or with respect to any additions thereto or replacements or proceeds or products thereof or with respect to any other property or assets hereafter acquired by Borrower which may be deemed to be part of the Collateral), and the Final Order. Upon the exercise by Lender of any power, right, privilege or remedy pursuant to this Agreement or the Final Order which requires any consent, approval, recording, qualification, or authorization of any Governmental Authority, Borrower will execute and deliver, or will cause the execution and delivery of, all applications, certifications, instruments, and other documents and papers that Lender may be required to obtain from Borrower for such governmental consent, approval, recording, qualification, or authorization.

(k)    <u>Budget</u>.

(i)    All payments, expenses and cash receipts received shall be in accordance with the Budget and such Budget will take into account all funds received by Borrower; subject to a permitted variance of 10% for all monthly disbursements in the aggregate.

(ii)    In the event that management of Borrower determines it necessary to take any action or make any payment in an emergency situation, management will obtain the prior written consent of the Lender, which consent may be obtained via e-mail, and shall not be unreasonably withheld.

(l)    <u>Milestones</u>. Borrower shall consult with Lender in connection with carrying out the following Milestones (as defined below), including providing Lender with copies of the material documents prepared to achieve such Milestones in advance of their submission to the Bankruptcy Court:

(i)    Within 10 days after entry of the Final Order (or such later date as the Lender may agree in writing in its sole discretion), Borrower shall have filed a motion ("**Bid Procedures Motion**") seeking the Bankruptcy Court's approval of the bidding procedures order ("**Bid Procedures Order**") and the sale of all, or substantially all, of the Property, together with supporting declarations, in each case, in form and substance acceptable to Lender;

(ii)      December 9, 2021 (or such later date as the Lender may agree in writing in its sole discretion), the Borrower will obtain entry of the Bid Procedures Order, in form and substance reasonably acceptable to Lender;

(iii)      On or Before December 15, 2021, the Borrower shall file a plan of reorganization and seek a prompt hearing requesting conditional approval of its disclosure statement and scheduling a hearing on its plan of reorganization in a form and manner satisfactory to Lender and seek confirmation of the plan;

(iv)      On or before January 15, 2022 (or such later date as the Lender may agree in writing in its sole discretion), the Borrower will conduct the auction contemplated in the Bid Procedures Order ("**Auction Deadline**");

(v)      On or before January 31, 2022, obtain entry of an order confirming a chapter 11 plan ("**Plan**") that authorizes the sale of the Property in a form and manner satisfactory to Lender ("**Confirmation Order**"); and

(vi)      On the Effective Date, close on the sale of the Property

(each of the actions or events set forth above a "**Milestone**," and collectively, "**Milestones**"); provided that, Lender may agree, in its sole discretion, to extend the applicable timing in connection with any of the Milestone.

8.      <u>Negative Covenants</u>. Borrower covenants and agrees that, so long as this Agreement shall remain in effect and until this Agreement has been terminated and the principal of and interest hereunder, all fees and all other expenses or amounts payable hereunder have been indefeasibly paid in full, Borrower will not:

(a)      <u>Indebtedness</u>. Incur, create, assume, or permit to exist any Indebtedness of the Borrower except:

(i)      Indebtedness that exists as of the date hereof and listed on Borrower's "Schedule of Assets and Liabilities" filed in connection with the Case;

(ii)      Indebtedness approved by Lender;

(iii)      Indebtedness specified in the Budget (to the extent such Budget has been approved by Lender);

(iv)      Indebtedness created hereunder, under this Agreement and the Final Order;

(v)      Indebtedness existing on the Petition Date that has not been assumed and the enforcement of which is stayed; and

(vi)    Indebtedness under performance bonds or with respect to workers compensation claims, in each case incurred in the ordinary course of business.

(b)    <u>Liens</u>. Create, incur, assume, or permit to exist any Lien on any property or assets of the Borrower (including equity interests or other securities of any Person) now owned or hereafter acquired by it or on any income or revenues or rights in respect of any thereof, except:

(i)    Liens on property or assets of Borrower existing on the date hereof and listed on Borrower's "Schedule of Assets and Liabilities" filed in connection with the Case; provided that such Liens shall secure only those obligations which they secure on the date hereof and extensions, renewals, and replacements thereof permitted hereunder;

(ii)    Liens approved by Lender;

(iii)    any Lien in favor of Lender created under this Agreement and the Final Order;

(iv)    valid, unavoidable, and perfected Liens in existence immediately prior to the Petition Date;

(v)    valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code;

(vi)    Liens for taxes (i) not yet due, (ii) which are being contested in good faith and by appropriate proceedings, if adequate reserves with respect thereto are maintained on the books of Borrower in accordance with GAAP, or (iii) that are not, either individually or in the aggregate, material;

(vii)    statutory Liens of landlords', carriers', warehousemen's, mechanics', materialmen's, repairmen's, or other like Liens arising in the ordinary course of business and securing obligations that are not overdue for a period of more than 30 days or which are being contested;

(viii)    zoning restrictions, easements, rights-of-way, restrictions on Borrower's use of Real Property and other similar encumbrances and minor title defects affecting Real Property which, in the aggregate, do not interfere with the ordinary conduct of the business of Borrower;

(ix)    any interest or title of a lessor or sublessor under any lease entered into by Borrower in the ordinary course of business and covering only the assets so leased;

(x)        Liens on cash deposits and other funds maintained with a depositary institution, in each case arising in the ordinary course of business by virtue of any statutory or common law provision relating to banker's liens; provided that (i) the applicable deposit account is not a dedicated cash collateral account and is not subject to restrictions against access by Borrower in excess of those set forth in regulations promulgated by the board of directors of Borrower and (ii) the applicable deposit account is not intended by Borrower to provide collateral or security to the applicable depositary institution or any other Person; and

(xi)        leases, licenses, subleases, or sublicenses in each case, granted to others in the ordinary course of business which do not interfere in any material respect with the business of Borrower or secure any Indebtedness (clauses 9(b)(i) to 9(b)(xi), "**Permitted Liens**").

(c)        <u>Sale and Lease-Back Transactions</u>. Enter into any arrangement, directly or indirectly, with any Person whereby Borrower shall sell or transfer any property, real or personal or mixed, used or useful in its business, whether now owned or hereafter acquired, and thereafter rent or lease such property or other property which it intends to use for substantially the same purpose or purposes as the property being sold or transferred.

(d)        <u>Investments, Loans and Advances</u>. Purchase, hold, or acquire any equity interests, evidences of Indebtedness or other securities of, make or permit to exist any loans or advances or capital contributions to, or make or permit to exist any investment or any other interest in, any other Person (all of the foregoing, "**Investments**"), except (i) Investments existing on the date hereof and listed on Borrower's "Schedule of Assets and Liabilities" filed in connection with the Case; (ii) Investments received in connection with the bankruptcy or reorganization of, or settlement of delinquent accounts and disputes with, customers and suppliers, in each case, in the ordinary course of business; (iii) extensions of trade credit in the ordinary course of business; and (iv) investments in the ordinary course of business that are consistent with the terms in the Budget.

(e)        <u>Mergers, Consolidations, Sales of Assets and Acquisitions</u>. Merge into or consolidate with any other Person, or permit any other Person to merge into or consolidate with it, or liquidate or dissolve, or sell, transfer, lease, issue, or otherwise dispose of (in one transaction or in a series of transactions) all or any substantial part of the assets (whether now owned or hereafter acquired) or the equity interests of Borrower, or purchase, lease or otherwise acquire (in one transaction or a series of transactions) all or any substantial part of the assets of any other Person, except for (i) the purchase and sale by Borrower of inventory in the ordinary course of business, or (ii) the sale or discount by Borrower, in each case without recourse and in the ordinary course of business of overdue accounts receivable arising in the ordinary course of business, but only in connection with the

compromise or collection thereof consistent with customary industry practice (and not as part of any bulk sale or financing transaction).

(f)   Restricted Payments; Restrictive Agreements.

(i)   Pay directly or indirectly any dividends or make any distributions on LLC membership interests or with respect to any other interest or participation in, or measured by, its profits, or pay any Indebtedness owed to Affiliates of Borrower or to holders of their LLC membership interests; or sell, lease or transfer any of Borrower's properties or assets to Affiliates of Borrower or to holders of their LLC membership interest (A) without the approval of Lender or (B) that are not contemplated by the Budget;

(ii)   Enter into, incur or assume any agreement or other arrangement that prohibits, restricts or imposes any condition upon the ability of Borrower to create, incur, or permit to exist any Lien upon any of its property or assets; provided that the foregoing shall not apply to restrictions and conditions imposed by law, by this Agreement, by the Final Order or in effect as of the date hereof.

(g)   Business of Borrower. With respect to Borrower, engage at any time in any business or business activity other than the business conducted by it as of the date hereof and business activities reasonably incidental or related thereto.

(h)   Pre-Petition Payments.

(i)   Make Pre-Petition Payments, other than Pre-Petition Payments which are authorized by the Bankruptcy Court pursuant to authority granted by the Final Order, the "first-day orders" or other orders in form and substance satisfactory to Lender in their sole discretion.

(ii)   Pay any management, consulting, or similar fees to or any salary expense for executives, directors, officers, or shareholders of Borrower, in any case by direct payment or otherwise or enter into any employment or consulting agreements with current management, shareholders, or directors of Borrower, in any case, unless (a) contemplated by the Budget or (b) made with the prior written consent of Lender.

(iii)   Permit   any   waiver,   supplement,   modification, amendment, or termination of any organizational document or any material agreement of Borrower in a manner adverse to Lender in any material respect.

(iv)   Without the prior written consent of Lender, which shall not be unreasonably withheld, enter into any contract, term sheet, letter of intent, or similar agreement for the actual or proposed sale, lease, or disposition of any or

all assets except in the ordinary course of business and consistent with past practices.

(i)    <u>Bankruptcy Case Matters</u>. In each case subject to the availability of available funds in the Budget:

(i)    Seek, consent to, or fail to oppose any modification, stay, vacatur, or amendment of the Final Order without the prior written consent of Lender.

(ii)    Seek, consent to, or fail to oppose (i) any grant or imposition, or request that the Bankruptcy Court grant or impose, under section 364 of the Bankruptcy Code or otherwise, Liens on the property of Borrower, whether equal, superior, or subordinate, to the Liens created under this Agreement and the Final Order on that property, except as expressly permitted by this Agreement, or (ii) any request of the Bankruptcy Court to seek authority for Borrower to use Cash Collateral, except as may be approved by Lender.

(iii)    Seek, consent to, or fail to oppose the assertion of any claims against or defenses (including, without limitation, offsets and counterclaims of any nature or kind) to the validity, perfection, enforceability, or non-avoidability (under sections 105, 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), or 553 of the Bankruptcy Code or otherwise) of the Indebtedness (other than the priming thereof pursuant to the Final Order) or the Liens created under this Agreement and the Final Order.

(iv)    Seek, consent to, or fail to oppose the assertion of any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek (or the result of which would be to obtain) any order, judgment, determination, declaration, or similar relief invalidating, setting aside, avoiding or subordinating, in whole or in part, the Indebtedness (other than the priming thereof pursuant to the Final Order) or the Liens created under this Agreement and the Final Order.

(v)    Seek, consent to, or fail to oppose the modification, alteration, or impairment in any manner of the Liens, security interests, rights or remedies granted to Lender pursuant to the Final Order and this Agreement (including, without limitation, Lender' right to demand payment of this Agreement and to enforce its Liens in the Collateral), whether by plan of reorganization or liquidation, order of dismissal, order of confirmation, or any financings of, extensions of credit to, or incurring of debt by Borrower, whether pursuant to section 364 of the Bankruptcy Code or otherwise;

(vi)    Seek, consent to, or fail to oppose any order (i) dismissing the Case under sections 105, 305 or 1112 of the Bankruptcy Code or otherwise; or

(ii) converting the Case under sections 105 or 1112 of the Bankruptcy Code or otherwise;

(vii)    Seek, consent to, or fail to oppose a priority for any administrative expense, secured claim, or unsecured claim against Borrower (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, any administrative expenses of the kind specified in sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726, or 1114 of the Bankruptcy Code or otherwise) which are equal or superior to the priority of the Liens created under this Agreement and the Final Order, except for the Carve-Out and the Pre-Petition Secured Liens;

(viii)    Except pursuant to an order of the Bankruptcy Court after an actual hearing and sufficient notice thereof to Lender with an opportunity to object, prior to the date on which this the obligations incurred to Lender under this Agreement have been paid in full in cash, pay or incur any administrative expenses, except for such expenses which are administrative expense claims incurred in the ordinary course of the business of Borrower or pursuant to the Carve-Out;

(ix)    Make any payments or transfer any property on account of claims asserted by the vendors of Borrower for reclamation in accordance with section 2-702 of any applicable Uniform Commercial Code and section 546(c) of the Bankruptcy Code, unless otherwise ordered by the Bankruptcy Court upon prior notice to Lender;

(x)    Seek to return any property to any party pursuant to section 546(g) of the Bankruptcy Code; and

(xi)    Incur, create, assume, suffer to exist,  or permit any other Superpriority Claim which is *pari passu* with or senior to the claims of Lender against Borrower hereunder, except for the Pre-Petition Secured Liens and the Carve-Out;

(xii)    Form or create a Subsidiary of the Borrower without the prior written consent of Lender.

9.    Events of Default; Remedies.

(a)    Events of Default. The following shall constitute events of default ("**Events of Default**") under this Agreement:

(i)    a default in the payment of all or any part of the amounts due under this Agreement to Lender, as and when the same shall become due and payable under this Agreement either at maturity, by declaration, acceleration, or otherwise, whether or not prohibited by any provisions hereof;

(ii)    a failure on the part of Borrower to duly observe or perform any of the covenants or agreements on the part of Borrower contained in this Agreement;

(iii)    any representation, warranty, or statement made or deemed made by Borrower herein shall prove to be false or misleading in any material respect when so made;

(iv)    there is entered against Borrower a judgment or levy upon the Collateral where such judgment or levy is equal to or greater than $25,000;

(v)    there is a taking of possession of a substantial part of the Collateral;

(vi)    any Lien being granted or placed upon the Collateral other than the lien of Lender and Permitted Liens;

(vii)    a Material Adverse Effect in the financial condition of Borrower, as determined by Lender in its sole discretion;

(viii)    one or more judgments or orders as to any obligation arising after the Petition Date in excess of $25,000 (to the extent not covered by independent third-party insurance) or that, individually or in the aggregate, could reasonably be expected to result in a Material Adverse Effect shall be rendered against Borrower and shall remain undischarged for a period of 30 consecutive days during which execution shall not be effectively stayed by reason of appeal or otherwise, or any action shall be legally taken by a judgment creditor to levy upon assets or properties of Borrower to enforce any such judgment, for the avoidance of doubt, this provision does not include any judgment in respect of litigations previously disclosed that relate to actions occurring in the pre-petition period;

(ix)    there shall have occurred a Change of Control;

(x)    the appointment of an examiner with expanded powers or a trustee in the Case, conversion of the Case to a case or Case under chapter 7 of the Bankruptcy Code or dismissal of the Case by order of the Bankruptcy Court;

(xi)    the Bankruptcy Court shall enter an order granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to a holder of any security interest to permit foreclosure (including under Article 9 of the Uniform Commercial Code and/or applicable state law) on any assets of the Borrower with a value equal to or greater than $25,000;

#10795785 v3 \029220 \0005

(xii)   any order of the Bankruptcy Court shall be entered amending, modifying, superseding, staying, reversing or vacating any of the Final Order or having the effect of doing so without the prior written consent of Lender;

(xiii)  Borrower's failure to achieve any of the Milestones described in the Agreement (except to the extent that Lender has agreed in writing, in its sole discretion, to extend the applicable timing in connection with any of the Milestones), and such failure shall continue unremedied for a period of five (5) days after written notice thereof from Lender to Borrower;

(xiv)   the making of any material cash payment by the Borrower other than payments authorized by the Final Order and Budget;

(xv)    the termination by the Bankruptcy Court of the Borrower's exclusive period to file a plan under section 1121 of the Bankruptcy Code, or the lapsing of such exclusive period unless (a) a plan of reorganization has been filed with sufficient cash in escrow with counsel for the Debtor or a third-party institutional lender to indefeasibly pay all the Obligations in full and that is released to the Lender by the escrow agent without any requirement other than the entry by the Court of a confirmation order prior to the Maturity Date or (b) an alternative to a plan, including a structured dismissal, that provides a binding—no "outs"—commitment from a first class financial institution (such as the institutions on the U.S. Trustee's authorized depository list), or such other lender after notice and a hearing that is determined to be acceptable to the Court, that will satisfy all Obligations, all administrative fees and costs, and all allowed claims filed in the Bankruptcy Case, except as otherwise agreed by a creditor.

(xvi)   Borrower's failure to perform or comply with Bankruptcy Court Final Order in any material respect;

(xvii)  any breach by Borrower of any material term or condition of the Final Order;

(xviii) the payment of, or filing of a motion or other pleading Borrower for authority to pay, any pre-petition claim or administrative expense arising under section 503(b)(9) of the Bankruptcy Code except as may be provided for in the Final Order, as applicable, or this Agreement or as may be approved by the Bankruptcy Court for payments to critical vendors, such critical vendor order to be reasonably acceptable to Lender;

(xix)   Any challenge by Borrower of the validity or priority of the Obligations or the application of any payments or collections received by Lender to the Obligations as provided for herein or in any order approving the execution by and entry by the Debtor into this Agreement; or Borrower challenges the validity, extent, perfection or priority of any Liens granted in the Collateral to secure the Obligations.

#10795785 v3 \029220 \0005

(xx)    Proceeds of any sale of all or substantially all assets of the Borrower are not directly remitted to Lender at the closing thereof (including a closing pursuant to a plan of reorganization) in such amount that fully or partially satisfies the Obligations, unless otherwise consented to in writing by Lender;

(xxi)   the allowance of any claim or claims under section 506(c) of the Bankruptcy Code or otherwise against Lender or any of the Collateral; or

(xxii)  the entry of an order by the Bankruptcy Court authorizing the sale of all or substantially all of the assets of Borrower to which Lender does not expressly consent in writing.

(b)    <u>Remedies</u>.

(i)    Subject to the Final Order (but without prejudice to any rights granted therein), after the occurrence and continuance of an Event of Default and upon seven (7) Business Days' written notice of such Event of Default from Lender to Borrower, Lender shall have the right to declare the entire unpaid principal amount of this Agreement together with all accrued but unpaid interest and any unpaid fees and expenses incurred by Lender immediately due and payable. Borrower hereby waives presentment, protest, demand, notice of dishonor, and all other requirements of any kind. Lender's failure to exercise any right or remedy under this Agreement or acceptance of partial or delinquent payments, shall not be a waiver of any obligation of Borrower or right of Lender, or constitute Lender's waiver of any other default subsequently occurring.

(ii)   The remedies set forth herein shall be in addition to, and not in lieu of, any other additional rights or remedies to which Lender may be entitled, whether at law, in equity or otherwise. After the occurrence and continuance of an Event of Default and upon written notice of such Event of Default from Lender to Borrower, Lender shall have the right to take all or any actions and exercise any remedies available to a secured party under this Agreement or applicable law or in equity subject to any requirements set forth in the Final Order and the automatic stay provided in section 362 of the Bankruptcy Code shall be deemed automatically vacated and Lender shall have the right to exercise any of the remedies under this Agreement, including any rights and remedies provided in the Final Order and the right to realize on all of the Collateral without relief or order of the Bankruptcy Court except as provided in the Final Order.

(iii)  Lender shall have the right to credit bid any and all amounts due and owing under this Agreement, including any unpaid fees and interest, under section 363 of the Bankruptcy Code or pursuant to the Plan or any other plan of reorganization in the Case

10.    <u>Miscellaneous</u>.

(a)    <u>Rights Cumulative</u>. The remedies of Lender as provided in this Agreement shall be cumulative and concurrent; may be pursued singly, successively, or together at the sole discretion of Lender, and may be exercised as often as occasion for their exercise shall occur.

(b)    <u>Manager</u>. Borrower shall continue to retain the services of Lee Buchwald as Manager of Borrower until the entry of a final decree in the Case or as may be otherwise agreed by Lender.

**(c)    <u>Nonliability of Lender and Release</u>. The relationship between Borrower on the one hand and Lender on the other hand shall be solely that of borrower and lender. Lender has no fiduciary responsibility to Borrower by reason of this Agreement or the other Loan Documents. Lender undertakes no responsibility to Borrower to review or inform Borrower of any matter in connection with any phase of Borrower's business or operations. Execution of this Agreement by Borrower constitutes a full, complete, and irrevocable release of any and all claims which Borrower may have at law or in equity in respect of all prior discussions and understandings, oral or written, relating to the subject matter of this Agreement and the Obligations. Lender has no liability with respect to, and Borrower hereby waives, releases, and agrees not to sue for, any special, indirect, punitive, or consequential damages or liabilities relating to the subject matter of this Agreement or the Obligations.**

(d)    <u>GOVERNING LAW</u>. THIS AGREEMENT SHALL BE GOVERNED BY, CONSTRUED IN ACCORDANCE WITH, AND ENFORCED UNDER, THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO THE PRINCIPLES OF CONFLICTS OF LAW OF SUCH STATE (INCLUDING GIVING EFFECT TO GENERAL OBLIGATIONS LAW SECTION 5-1401).

(e)    <u>JURISDICTION, JURY TRIAL WAIVER, ETC</u>.

(i)    EACH PARTY TO THIS AGREEMENT HEREBY IRREVOCABLY AGREES THAT ANY LEGAL ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY AGREEMENTS OR TRANSACTIONS CONTEMPLATED HEREBY SHALL BE BROUGHT IN THE BANKRUPTCY COURT AND HEREBY EXPRESSLY SUBMITS TO THE PERSONAL JURISDICTION AND VENUE OF THE BANKRUPTCY COURT FOR THE PURPOSES THEREOF AND EXPRESSLY WAIVES ANY CLAIM OF IMPROPER VENUE AND ANY CLAIM THAT SUCH COURTS ARE AN INCONVENIENT FORUM. EACH PARTY HEREBY IRREVOCABLY CONSENTS TO THE SERVICE OF PROCESS OF THE BANKRUPTCY COURT IN ANY SUCH SUIT, ACTION OR PROCEEDING BY THE MAILING OF COPIES THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO ITS ADDRESS SET FORTH IN SECTION 10(f) OF THIS

AGREEMENT, SUCH SERVICE TO BECOME EFFECTIVE 5 AFTER SUCH MAILING.

    (ii) EACH PARTY TO THIS AGREEMENT HEREBY WAIVES ITS RIGHT TO A JURY TRIAL WITH RESPECT TO ANY ACTION OR CLAIM ARISING OUT OF ANY DISPUTE IN CONNECTION WITH THIS AGREEMENT, ANY RIGHTS, OR OBLIGATIONS HEREUNDER OR THE PERFORMANCE OF SUCH RIGHTS AND OBLIGATIONS. BORROWER (I) CERTIFIES THAT NEITHER LENDER NOR ANY REPRESENTATIVE OR ATTORNEY OF LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVERS AND (II) ACKNOWLEDGES THAT LENDER HAVE BEEN INDUCED TO MAKE THIS AGREEMENT BY, AMONG OTHER THINGS, THE WAIVERS AND CERTIFICATIONS CONTAINED HEREIN.

    (f) <u>Notices</u>. All notices, requests, demands, waivers, consents, approvals, payments, or other communications which are required by or permitted hereunder shall be in writing and be deemed delivered (a) upon receipt, if by hand delivery, (b) upon transmission, if sent by facsimile with confirmation of receipt during normal business hours for the recipient or on the next Business Day if sent after normal business hours for the recipient, (c) the next business day, if sent by a reputable overnight courier service such as FedEx or DHL, or (d) on the fifth calendar day following deposit in the United States mail, certified, postage prepaid, return receipt requested, addressed in the case of (c) and (d) as follows:

    If to Borrower:

      286 Rider Ave Acquisition LLC
      123 5th Avenue,
      4th Floor
      New York, NY 10003
      Attention: Ben Harlev

    With a copy to:

      Buchwald Capital Advisors LLC
      200 Park Avenue
      Suite 1700
      New York, NY 10166-0005
      Telephone: 212-970-1040
      Facsimile: 212-656-1578
      Attention: Lee E. Buchwald

    And a copy to

Robinson Brog Leinwand Greene Genovese & Gluck P.C.
875 Third Avenue
9th Floor
New York, NY 10022
Telephone:   212-603-6301
Facsimile:   212-956-2164
Attention:   Fred B. Ringel, Esq.
                    Clement Yee, Esq.

If to Lender:

Be-Aviv 286 Rider LLC
123 5th Avenue
4th Floor
New York, NY 10003
Attention:   Eyal Epstein

With a copy to:

Morrison Cohen LLP
909 Third Avenue
New York, New York 10022
Facsimile:   917-522-3168
Attention:   Joseph T. Moldovan, Esq.
                    David J. Kozlowski, Esq.

Any party may alter the address to which communications or copies are to be sent by giving notice of such change of address in conformity with the provisions of this Section for the giving of notice.

(g)    Assignment. This Agreement may be assigned by Lender in whole or in part, and will inure to the benefit of its successors and assigns. This Agreement may not be assigned by Borrower.

(h)    Binding Nature of Agreement. This Agreement shall be binding upon Borrower and its respective successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

(i)    Waiver of Claims. To the extent permitted by applicable law, Borrower waives all claims, damages, and demands that it may acquire against the Lender arising exclusively out of the exercise by the Lender of any rights hereunder; provided, however, that the Borrower does not waive any claims, damages, and demands arising from the Lender's gross negligence or willful misconduct. The Lender may exercise all rights and remedies contained in this Agreement, the Final Order, or provided at law or in equity or otherwise, without

demand of performance or other demand, presentment, protest, advertisement, or notice of any kind (except any notice required by applicable law and expressly provided herein) to or upon Borrower or any other Person (all and each of which demands, defenses, advertisements, and notices are hereby waived).

(j)    Powers Coupled with an Interest. All authorizations and agencies herein contained with respect to the Collateral are irrevocable and powers coupled with an interest.

(k)    Modification. This Agreement may not be modified or amended other than by an agreement in writing signed by Borrower and Lender.

(l)    Headings. Article and Section headings used herein are for convenience of reference only, are not part of this Agreement and are not to affect the construction of, or to be taken into consideration in interpreting, this Agreement.

(m)    Severability. If any provision of this Agreement is held illegal or unenforceable, the validity of the remaining provisions shall not be affected.

(n)    Lender's Expenses. Unless the Lender agrees otherwise, upon receipt of the first borrowing, Borrower shall pay all reasonable fees incurred in connection with the creation of this Agreement, and any related agreements. Borrower agrees to promptly pay all reasonable costs, charges, and expenses incurred by Lender and its assigns (including, without limitation, reasonable costs of collection, court costs, and reasonable and documented attorneys' fees and disbursements incurred in connection with the monitoring of and participation in the Case) in connection with the enforcement of Lender's rights under this Agreement. Borrower shall be liable to the Lender for any reasonable costs and expenses (including, without limitation, all reasonable fees and disbursements of external counsel to the Lender) incurred by the Lender which may arise under, out of, or in connection with, this Agreement and any other document made, delivered, or given in connection therewith or herewith, whether on account of principal, interest, guaranties, reimbursement obligations, fees, indemnities, costs, expenses, or otherwise; and any and all reasonable sums, costs, and expenses which the Lender may pay or incur pursuant to the provisions of this Agreement or in defending, protecting, or enforcing the Liens granted herein or otherwise in connection with the provisions hereof; in each case including without limitation (i) all reasonable search, filing, and recording fees and expenses, (ii) all reasonable fees and expenses for the service and filing of papers, fees of marshals, sheriffs, custodians, auctioneers, and others, reasonable travel expenses, court costs, and collection charges, and (iii) all reasonable fees and expenses, appraisal fees, taxes, levies and reasonable attorneys' and accountants' fees and expenses in any suit, proceeding, or action brought by the Lender under any Account or contract for any sum owing thereunder, or to enforce any provisions of any Account or contract, by

reason of any defense, setoff, counterclaim, recoupment, or reduction or liability whatsoever of the Account debtor or obligor thereunder, or otherwise (iv) in connection with the repossession, holding, preparation for sale and sale of the Collateral, (v) with respect to, or resulting from any delay in paying, any and all excise, sales, or other taxes which may be payable or determined to be payable with respect to any of the Collateral, or (vi) with respect to, or resulting from, any delay in complying with any requirement of law applicable to any of the Collateral: and all such liabilities shall be part of the obligations and shall be payable upon demand. Further, Borrower agrees to pay, on a monthly basis, the reasonable fees and expenses of Lender's legal counsel arising from or related to the Agreement and the Case. Borrower also agrees to pay the fees and expenses of the financial advisor, appraisers, and other third-party consultants of Lender in connection with this Agreement and the Case.

(o)    USA PATRIOT Act Notice. Lender hereby notifies Borrower that pursuant to the requirements of the USA PATRIOT Act, it is required to obtain, verify and record information that identifies Borrower which information includes the name and address of Borrower and other information that will allow the Lender to identify Borrower in accordance with the USA PATRIOT Act.

IN WITNESS WHEREOF, Borrower, intending to be legally bound, has duly executed and delivered this Agreement on the date first written above.

[signature pages follow]

286 Rider Ave Acquisition LLC, *as Borrower*
By: Buchwald Capital Advisors LLC,
Manager


By: _____
    Lee Buchwald, President

[signatures continued on next page]

Be-Aviv 286 Rider LLC,  *as Lender*


By: _____
        Eyal Epstein, Authorized Signatory

<u>Exhibit 2</u>

Budget

| **286 Rider Acquisition Budget 7/1/21 Through 3/31/22 (Projected)** | | | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | 7/15-10/15/21 | 10/15-11/30/21 | Dec. 2021 | Jan. 2022 | Feb. 2022 | Mar. 2022 | Total |
| | | | | | | | |
| Robinson Brog | 301,650 | 112,360 | 65,000 | 55,000 | 45,000 | 35,000 | 629,010 |
| (less Robinson Brog retainer) | (29,158) | | | | | | (29,158) |
| | | | | | | | |
| Buchwald Capital | 68,640 | 36,000 | 10,000 | 7,500 | 5,000 | 4,000 | 134,140 |
| | | | | | | | |
| UST  Fees | | 250 | | 300 | | | 800 |
| Rosewood | | 25,000 | | | | | 25,000 |
| Misc. | | | 5,000 | | | | 5,000 |
| TOTAL | 341,132 | 173,610 | 80,000 | 62,800 | 50,000 | 39,000 | 746,542 |
| | | | | | | | |
| DIP Lender Counsel Fees | 500,000 | 75,000 | 60,000 | | | | 635,000 |

Note 1:  All of the professional fees in this case are based upon reasonably anticipated normal chapter 11 fees and costs. To the extent there is significant litigation in connection with motions or appeals, the budget may need to be adjusted upwards to reflect actual costs.

Note 2:  The DIP Lender has agreed to accrue its counsel fees and costs and is not funding the DIP Loan in order to pay such counsel fees and costs. As provided in the DIP Loan Agreement and in the DIP Order, the Debtor is liable for all of these fees and costs and will pay these amounts to the DIP Lender when the DIP Loan is repaid.