**ROBINSON BROG LEINWAND GREENE**           <u>Hearing Date and Time:</u>
**GENOVESE & GLUCK P.C.**                    December 9, 2021 at 10:00 a.m.
875 Third Avenue
New York, New York 10022
Fred B. Ringel
Steven B. Eichel
*Attorneys for the Debtor and Debtor in*
*Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:                                       Chapter 11

**286 RIDER AVE ACQUISITION LLC,**           Case No: 21-11298-lgb

                                    Debtor.
-----------------------------------------------------------X

## DEBTOR'S RESPONSE TO MOTION OF 286 RIDER AVE DEVELOPMENT LLC FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105(a), 363, 364, 305 (a), 349(b) AND 1112(b) OF THE BANKRUPTCY CODE AUTHORIZING PAYOFF OF LENDER THROUGH EXIT REFINANCING, CLAIMS PROCEDURES, SUBSEQUENT DISMISSAL OF THIS BANKRUPTCY CASE AND RELATED RELIEF

TO THE HONORABLE LISA G. BECKERMAN,
UNITED STATES BANKRUPTCY JUDGE:

**286 Rider Ave Acquisition LLC,** the debtor, and **debtor** in possession in the

above-captioned chapter 11 case ("Debtor"), by its undersigned attorneys, Robinson

Brog Leinwand Greene Genovese & Gluck P.C., submits this response ("Response")

to the motion of 286 Rider Ave Development LLC ("Development") for entry of an

order pursuant to Sections 105(a), 363, 364, 305(a), 349(b) and 1112(b) of the

Bankruptcy Code authorizing payoff of lender through exit refinancing, claims

procedures, subsequent dismissal of the bankruptcy case and related relief

("Structured Dismissal Motion"), and respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      Development's persistent attempts to wrest control of the Debtor's

real property as evidenced by its two (2) prior motions to dismiss this bankruptcy

case, motion for appointment of chapter 11 trustee, motion to terminate

exclusivity, and numerous objections to even the most basic of relief requested by

the Debtor in this case all follow the same script:  inconsistent statements and

conclusions unsupported by evidence, resulting in a failure to meet its evidentiary

burden.  The Structured Dismissal Motion is no different and must fail not only

because of the doctrines of res judicata and law of the case, but because

Development does not have standing to take the actions it describes in the

Structured Dismissal Motion as it is neither the Debtor nor a Trustee seeking

authorization to act under Sections 363 or 364 of the Bankruptcy Code.

2.      Moreover, the "structured dismissal" process by which Development

seeks to dismiss the case is not supported by evidence of Development's financial

wherewithal to satisfy creditor claims at all, let alone in full.[1]  In fact, the

Structured Dismissal Motion itself defines "Exit Refinancing" to be "in the amount

of up to $10.5 million" when the amount due Be-Aviv 286 Rider LLC ("Lender") as

---

[1] The aggregate secured, unsecured and administrative amounts due as of October 31, 2021 is $11,821,813.  This amount is not inclusive of interest and other charges that continue to accrue post-petition and any additional administrative claim amounts since incurred.  The Structured Dismissal Motion does not contemplate the amount of United States Trustee Fees that would be due as a result of the proposed disbursements of up to $14,000,000 which could amount to an additional $112,000 required payment.  The complete universe of unsecured claims against the estate will not be known until after the December 14, 2021 bar date passes.

{01127991.DOC;4 }

of October 31, 2021 was $10,155,114 and continues to grow and accrue post-petition and does not include any DIP loan amounts incurred post-petition.  The Structured Dismissal Motion very clearly states in several places that Development is only going to pay the Lender its "contract non-default interest" on account of its Prepetition Loan and payments to holders of administrative claims will receive the "undisputed amount of the administrative expense claims" which shows Development's true intent is to litigate these claim amounts rather than ensure their payment in full.

3.      Regardless, other than attaching a redacted letter from an unidentified lender that claims the lender is "…intending to invest $14 million in this project and have committed to provide up to $3.5 million to…Development to be contributed as capital to…the Debtor and $10.5 million to be advanced as a loan to the Debtor to finance the payoff of the Debtor's current Lender…", Development provides no evidentiary support for the relief requested.  The "Loan Commitment" letter Development relies upon is not a binding commitment to lend, the language of the letter indicates this is intended to be a loan **to the Debtor**, for which Development has no authority to act, and the purported funding amounts are insufficient to satisfy creditor claims in full.

4.      The Structured Dismissal Motion is an end run around the Court's denial of Development's prior motions to dismiss the Debtor's case and the denial of its motion to terminate the Debtor's exclusivity periods and fails in the most critical respect—it fails to "show the money" to fund payments in full to all of the

Debtor's creditors.  The obvious flaw in Development's attempts to derail the Debtor's efforts to sell its real property is the fact that Development does not have cash in hand that it can deposit with the Debtor to fund payments to creditors.  If Development were offering to escrow sufficient cash with the Debtor to pay all claims—not merely allowed claims (since no claims have yet been allowed)—but all filed claims and an accelerated process for claims resolution after which any remaining funds would be returned to Development by the Debtor, then the proposal would be akin to a traditional structured dismissal motion proposed by a Debtor and not a third party, which could be a potential plan alternative.

5.      In fact, the Debtor in Possession Loan Agreement contemplates and specifically references a structured dismissal as a plan alternative, but requires "a binding—no "outs"—commitment from a first class financial institution (such as the institutions on the U.S. Trustee's authorized depository list), or such other lender after notice and a hearing that is determined to be acceptable to the Court that will satisfy all Obligations, all administrative fees and costs, and all allowed claims filed in the Bankruptcy Case, except as otherwise agreed by a creditor." See, DIP Loan Agreement §9(a)(xv).  Yet, Development will not even identify their anticipated lender much less any of the terms of the Exit Refinancing, seeking the Court's authority to keep critical details of the funding confidential by filing it under seal, without meeting the requirements of Section 107 of the Bankruptcy Code.

6.     Development has had and continues to have an opportunity to reacquire the Property, but proceeding via a structured dismissal is the incorrect vehicle as (1) Development does not have the authority to seek approval of a loan to the Debtor; (2) Development has not evidenced a binding commitment for the Exit Refinancing; and (3) the "Loan Commitment" it relies upon is insufficiently detailed and even in non-redacted form is not for an amount sufficient to satisfy all claims in full. Development should not be permitted to take title to the Debtor's Property without following the same requirements and procedures as any other interested purchaser, specifically providing proof of a binding commitment for financing in an amount sufficient to satisfy in full all claims against the Debtor's estate and confirming the amounts to be paid to satisfy claim in full and its ability to fund all required payments in full.

7.     The Structured Dismissal Motion should be denied for the following reasons:

    a.  The Structured Dismissal Motion seeks an advisory opinion on whether the Court would approve a structured dismissal of the case if Development could obtain the Exit Refinancing from a secret non-institutional lender or investor on undisclosed terms. As evidenced in the redacted letter attached to Exhibit C to the Structured Dismissal Motion ("Redacted Letter"),[2] Development is alleging it (or the Debtor) can borrow $14 million to pay off the claims but is not using any of its own money. Without the purported Exit Refinancing, Development cannot pay off the claims and consummate what it defines as the "Exit Refinancing Transaction". Thus, the Structured Dismissal Motion requesting that the Court approve and allow the Exit Refinancing

---

2 An amended Exhibit C identified on the docket as ECF doc. no. 181 was filed on December 2, 2021 replacing and superseding Exhibit C to ECF doc. no. 171. The only difference between the Exhibits is that the superseding document attaches an additional page which is a redacted letter from CIBC Bank USA that advises that the Unidentified Lender has "access to $15,000,000 of liquidity."
{01127991.DOC;4 }

Transaction is an advisory opinion because Development cannot now
consummate the refinancing without funding it does not yet have.

b.  The Court has previously denied Development's prior motions to
dismiss the bankruptcy case and Development is barred by the
doctrines of res judicata and law of the case from seeking to relitigate
these issues.  If the Court determines that Development is not barred
from seeking to dismiss the bankruptcy case again, Development has
not shown cause to dismiss the case under either Section 305 or
1112(b) of the Bankruptcy Code.

c.  The Structured Dismissal Motion is in essence a *sub rosa* plan which
seeks to circumvent this Court's (i) order dated November 18, 2021
("Exclusivity Order") extending the Debtor's exclusive right to file a
plan of reorganization under Section 1121 of the Bankruptcy Code
through and including January 31, 2022 ("Exclusive Period"), and the
Debtor's exclusive right to solicit acceptances for the plan under
Section 1121(c)(3) of the Bankruptcy Code to March 14, 2022, and (ii)
order dated November 18, 2021 ("Order Denying Termination of
Exclusivity"), which denied Development's motion to terminate the
Debtor's exclusive periods.  If the Court grants the Structured
Dismissal Motion, these orders become a nullity and the Debtor is
denied its exclusive opportunity to propose and confirm a plan of
reorganization.

d.  Development lacks standing to redeem the Property because the right
of redemption is property of the Debtor's estate and not Development's
right to exercise.

e.  Even if Development had the right to redeem the Property, it has not
shown that it can consummate the Exit Refinancing Transaction
necessary to redeem the Property as there is no evidence on (i) the
identity of the purported lender, (ii) whether the purported loan is
real, and (iii) the terms and conditions of the proposed loan.

f.  The Court should not authorize the claims procedures because the
time frames are unduly prejudicial.  For example, the proposed order
at paragraph 12 gives administrative creditors only 11 days to file
their claims and at paragraph 13 gives Development 19 days to file an
objection to which the creditor has only 7 calendar days to respond.
Such hearing must be at least on 30 days' notice under Bankruptcy
Rule 3007(a)(1).

g.  Development's request to file documents under seal pursuant to Section 107 of the Bankruptcy Code should be denied because Development has not justified that it is necessary to file the documents under seal and overcome the presumption related to public access to papers filed in a bankruptcy case.

h.  Finally, all the funds for the Exit Refinancing Transaction are being borrowed from an unknown lender and that Development, Moskovits, and Lichtenstein have no real "skin in the game." The filing of the Structured Dismissal Motion should not have any bearing on the Debtor's ability to proceed with its Bid Procedures Motion and sale process since, if Development's proposal should fail for any reason, Development has nothing at risk while the Debtor's proposed sale may be significantly delayed to its detriment and that of its creditors. This alone is a sufficient reason to deny the Structured Dismissal Motion, but if the Court is inclined to entertain the Structured Dismissal Motion, Development should be required to follow the structured dismissal process suggested by the Lender in its response and the Debtor should be able to continue the sale process with an auction (if necessary) and a sale of the Property in accordance with its pending Bid Procedures Motion.

## BACKGROUND

8.      As the Court is fully familiar with this case, Debtor provides the below limited summary of relevant facts for the purpose of this Response.

9.      On July 15, 2021 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code ("Chapter 11 Case"). The Debtor continues to manage and operate its business as a debtor in possession under sections 1107 and 1108 of the Bankruptcy Code. The Debtor is being managed by an independent fiduciary, Lee E. Buchwald.

10.     No examiner, trustee, or official committee of unsecured creditors has been appointed in this Chapter 11 case.

{01127991.DOC;4 }

11.     The Debtor is the owner of the real property located at 286 Rider

Avenue, Bronx, New York ("Property").  The Property is encumbered by a mortgage

held by Be-Aviv 286 Rider LLC ("Lender") executed in connection with the

$8,000,000 loan made by Lender to the Debtor which loan is evidenced by a since

matured promissory note.

12.     The Debtor retained Rosewood Realty Group ("Rosewood"), led by

Greg Corbin, to market the Property for sale.  Rosewood's retention as the Debtor's

real estate broker was approved by an order entered by this Court on November 17,

2021.  Debtor intends to propose a plan that will be implemented by the sale of the

Property.

13.     A motion seeking approval of bid procedures ("Bid Procedures") in

connection with the proposed property sale is scheduled to be heard on December 9,

2021.

14.     The Court was recently advised that the Property may qualify for a

421-a tax abatement from the City of New York but that the tax abatement will

expire unless construction on the Property begins by June 15, 2022. See, 421-a(16)

Affordable Housing New York Program, ("The New 421-a Program is available to

projects that commence construction between January 1, 2016 and June 15, 2022

and are completed on or before June 15, 2026.") (emphasis added).

https://www1.nyc.gov/site/hpd/services-and-information/tax-incentives-421-a.

Thus, the Debtor's Bid Procedures seek approval of an auction no later than

January 15, 2022, to maximize the Property value by the preservation of the tax

abatement.  The loss of the tax abatement would significantly diminish the Property's value to the detriment of all parties in interest.  Thus, an auction as soon as possible is critical to preserve value for this estate.

15.     The 421-a tax exemption is a property tax exemption that is given to real-estate developers for building new multi-family residential housing buildings in New York City and focuses on promoting affordable housing in the most densely populated areas of New York City. To qualify for the program, all housing developments must include between 25% and 30% affordable units.  Under the program, the exemption lasts for three years of construction and 35 additional years (and in some cases, 40 years) after the project is complete.  Given the amount and length of the property tax exemption, the impact on the value of the property cannot be overstated.

16.     On November 18, 2021, the Court entered the Exclusivity Order and the Order Denying Termination of Exclusivity.

17.     On November 22, 2021, Debtor's counsel and Development's counsel commenced discussions regarding a rapid potential resolution of the case. Development asked that Lender's counsel not be present at this discussion. Debtor's counsel requested that Development provide with a written proposal so that the parties could continue their discussions and also advised that Lender's counsel would be a necessary party for any discussions. Instead of continuing the dialog as ordered by this Court, Development filed the Structured Dismissal

Motion causing the estate, once again, to incur unnecessary expenses that do nothing but cavalierly increase the purchase price for the Property.

<u>Argument</u>

## I.   Bankruptcy Court Should Not Decide the Structured Dismissal Motion Because It Would Be Issuing an Advisory Opinion

18.    "Justiciability is a concept having its basis in Article III of the United States Constitution, which requires a case or controversy, necessarily involving several related doctrines, including standing, ripeness, and the avoidance of advisory opinions." *The Heag Pain Mgmt. Center, P.A. v. Davis (In re Davis), Case No. 19-11318,* 2020 WL 3485122, at *1 (Bankr. M.D.N.C. June 25, 2020) (citing *In re Erikson,* Case No. 12-59165, 2013 WL 2035875. at *2 (Bankr. E.D. Mich.  May 10, 2013). "A case is generally non-justiciable when the 'facts have [not] developed sufficiently to permit an intelligent and useful decision to be made.' Under the Constitution, this means that a case must be ripe for adjudication, that is, it must involve a 'case or controversy.' A federal court may not issue advisory opinions based on hypothetical facts." *Martino v. Rodriguez (In re Martino),* 2012 WL 1439091 at *4 (Bankr. D. Colo. April 26, 2012).  The Structured Dismissal Motion seeks relief based on hypothetical facts.  There is no evidence other than the Redacted Letter, which provides that an unknown entity is "intending to invest $14 million in this project".  The language of the Redacted Letter indicates that Development is seeking Exit Refinancing using the Debtor's assets to pay off the Lender and exit bankruptcy.  Development has shown no financial wherewithal whatsoever to pay claims against the estate.  Development and its owners are not

using their own money to reacquire the Property.  Development has not established

that the Exit Refinancing, regardless of who is intended to be the borrower, will be

sufficient to satisfy all claims in full.  Additionally, and most egregiously,

Development seeks to limit access to the financial information and loan terms to

support the Structured Dismissal Motion.  Thus, Development is seeking a

determination as to whether the Court would approve Exit Refinancing on terms

not yet negotiated, by a lender not yet identified, if it were able to close the Exit

Refinancing at some point in the future.  This is a far cry from the typical

structured dismissal. *See In re KG Winddown LLC*, 628 B.R. 739, 746 (Bankr.

S.D.N.Y. 2021)("The Debtors have sold substantially all of their assets, have no

further operations, and have insufficient resources to fund a plan.").  Development

is seeking authority for the Debtor to take out a loan that, if funded, they claim is

sufficient to pay creditors in full, yet the net funding amounts are insufficient to

satisfy all claims in full.  Development cannot seek authority on the Debtor's behalf

to obtain Exit Refinancing and Development is seeking an advisory opinion from

this Court as to whether it would approve such Exit Refinancing in order to then

proceed with a structured dismissal of the case.

## II.    Bankruptcy Court Has Already Extended Debtor's Exclusive Right to File a Plan and Granting the Structured Dismissal Motion Would Circumvent That Order

19.    On November 18, 2021, the Court entered the Exclusivity Order and

Order Denying Termination of Exclusivity.  Development is attempting to

circumvent these orders by filing the Structured Dismissal Motion which is nothing

more than Development's *sub rosa* plan.  Granting the Structured Dismissal

Motion would nullify the Exclusivity Order and Order Denying Termination of

Exclusivity, thereby denying the Debtor its opportunity to sell the Property under

a plan of reorganization, which right was granted to the Debtor by the Court's

entry of the Exclusivity Order and Order Denying Termination of Exclusivity.

There is no basis to vacate or modify the Exclusivity Order which provides the

Debtor with the opportunity to sell the Property and implement its anticipated

plan. Development has not properly raised arguments or moved to vacate these

rulings.  Granting the Structured Dismissal Motion would in essence result in the

Court's vacating or modifying its prior grant of exclusivity to the Debtor which is

neither warranted nor appropriate.

### III.   Bankruptcy Court Previously Denied Development's Motion to Dismiss and it is Barred by the Doctrines of Res Judicata and Law of the Case From Relitigating Those Issues and Even if Not Barred, Development Has Not Established Cause to Dismiss Case Under Sections 305 and 1112(b) of the <u>Bankruptcy Code</u>

20.     Development filed two motions to dismiss the bankruptcy case, both of

which were denied, as was Development's motion to reargue the initial dismissal

motion, which is now on appeal.[3]  Development's arguments in support of dismissal

---

3 By operation of the appeal that Development is currently prosecuting before the United States District Court for the Southern District of New York, this Court has been divested of jurisdiction to consider the arguments for dismissal of the case pursuant to Sections 305 and 1112(b) of the Bankruptcy Code that are raised in the Structured Dismissal Motion. *See In re Sabine Oil & Gas Corp.*, No. 16-cv-2561 (JGK), 2016 WL 4203551, at *6 (S.D.N.Y. Aug. 9, 2016) ("Bankruptcy courts do not retain exclusive or concurrent jurisdiction with the district court over the subject matter of an appeal.") (*citing In re Emergency Beacon*, 58 B.R. 399, 402 (Bankr. S.D.N.Y. 1986); *In re Adelphia Commc'ns Corp.*, No. 06-cv-4983 (JGK), 2007 WL 4615604, at *2 (S.D.N.Y. Dec. 26, 2007)); *In re Millennium Global Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 348 (Bankr. S.D.N.Y. 2012) ("[t]he filing of an appeal divests a bankruptcy court of jurisdiction over *all aspects of the case* that are the subject of the appeal.") (emphasis added).

{01127991.DOC;4 }

"for cause" pursuant to Section 305 and 1112 (b) are barred by res judicata and by

the "law of the case" doctrine.

21.     Even if the Court does not deny the Structured Dismissal Motion on

the grounds of res judicata and law of the case, Development has not established

cause to dismiss the case under sections 305 or 1112(b) of the Bankruptcy Code.

Section 305(a)(1) of the Bankruptcy Code provides as follows:

> The court, after notice and a hearing, may dismiss a case under this
> title or may suspend all proceedings in a case under this title, at any
> time if…the interests of creditors and the debtor would better be
> served by such dismissal or suspension.

*See* 11 U.S.C. § 305(a)(1).

22.     The courts that have construed section 305(a)(1) are in general

agreement that dismissal is appropriate under  section 305(a)(1) only in the

situation where the court finds that both "creditors and the debtor" would be better

served by a dismissal.  *In re Monitor Single Lift I Ltd.,* 381 B.R. 455, 462 (Bankr.

S.D.N.Y. 2008).  "The moving party bears the burden to demonstrate that the

interests of the debtor and its creditors would benefit from dismissal or suspension

of proceedings under §305(a)(1)." *Id.* at 462-63.  Development has not satisfied its

burden on this issue.

23.     The analysis is simple.  Although dismissal of the case may benefit

Development, dismissal is not in the Debtor's best interest because it and its

creditors are at risk that Development's proposed Exit Refinancing Transaction

will not be consummated or the funding will be insufficient to satisfy claims in full.

If the Debtor is not permitted to pursue a prompt sale of the Property with the tax

abatement intact, creditors may receive a smaller recovery.  Development has not

provided any evidence to support that the Exit Refinancing Transaction will be

consummated or when it will be consummated.  Development instead argues that

the Property value is being diminished by the incurrence of professional fees, fees

and expenses of Mr. Buchwald, and the opportunity costs to the Debtor of being

barred from moving forward with its pre-bankruptcy plans to develop the Property.

Structured Dismissal Motion at ¶47.  Development also argues that if the

bankruptcy case continues, these costs will increase, there will be needless

litigation, permanent loss of value by the fire sale of the Property (and the

elimination of any prospect of rehabilitation), and broker's fees in connection with

the sale.  *Id.*  Development cites no case law that the costs associated with a chapter

11 case establish "cause" to dismiss the case under either Section 305 or 1112(b) of

the Bankruptcy Code. The reason is simple—these ordinary costs and expenses do

not establish "cause" to dismiss a bankruptcy case.

24.    Moreover, there is no evidence to support the contention that the

economic value is likely greater by dismissing the case than proceeding with the

sale of the Property as implemented through a confirmed plan.  There is, however,

uncertainty as to whether Development will be able to consummate the proposed

Exit Refinancing Transaction.

25.    Thus, the portion of Development's Structured Dismissal Motion

seeking to dismiss the case under Section 305 should be denied.  *See In re Foundry*

*of Barrington P'ship,* 129 B.R. 550, 555 (Bankr. N.D. Ill. 1991) (denying motion to

dismiss under Section 305 when dismissal is not in the interest of the debtor and

other creditors).

**IV    Proposed Exit Financing Should Not Be Approved Because Development Does Not Have The Right to Redeem the Property and Even if it Did, it Has Not Provided Evidence That it Has Sufficient Financing to Consummate the Transaction**

26.    Development seeks authorization for the Debtor to obtain a loan to

pay off the Lender and otherwise have its proposed "Exit Refinancing Transaction"

of up to $14 million, from an unknown lender ("Unidentified Lender") approved.  Of

the $14 million, $3.5 million will be contributed into the Debtor as new capital and

up to $10.5 million will be a loan to the Debtor to finance the payoff of the Lender

to exit from bankruptcy.  Structured Dismissal Motion, Exhibit C.[4]  Development

must show the Exit Refinancing Transaction will net sufficient funds to pay off (i)

the Lender, (ii) administrative expenses in full, (iii) the court approved debtor in

possession financing, (iv) 286 Rider Associates LLC, and (v) general unsecured

creditors.  11/16/21 Hr'g Tr. at 73:11-19.

27.    The estimated amount that must be paid through October 31, 2021 is

$11,821,813, which consists of the following: (i) outstanding principal in the

amount of $ 8 million, (ii) accrued and unpaid regular interest in the amount of $

699,351, (iii) accrued and unpaid default interest in the amount of $566,839,[5] (iv)

exit fee under loan in amount of $80,000, (v) Lender's legal fees in the amount of

---

[4] There are inconsistencies between the Structured Dismissal Motion and the terms set forth in the Redacted Letter.  There are references in the Structured Dismissal Motion that the amount being contributed is $12 million.  See Motion at ¶¶1, 5, 19, 21.
[5] Both paragraph 22 of the Motion and paragraph 3 of the proposed order provide that Development will pay the Lender interest at the contract non-default rate. The Debtor anticipates that this issue will be hotly contested by Development and will delay any final payment to the Lender.

{01127991.DOC;4 }

$808,924 (vi) Debtor's counsel's fees in the approximate amount of $300,000,[6] (vii)

Mr. Buchwald's fees in the approximate amount of $100,000, (viii) money owed to

286 Associates LLC on account of judgment in the amount of $1,178,325 (plus

interest at statutory rate of 9% from entry of judgment to October 31st in the

approximate amount of $88,000). Thus, the total debt that will need to be satisfied

just through October 31st will be $11,821,813.[7]  11/16/21 Hr'g Tr. at 102:16-103:10.

28.    The only substantive document attached to the Structured Dismissal

Motion regarding the purported loan is the Redacted Letter, which provides no

information about (i) the identity of the proposed lender and (ii) the specific terms

of the purported loan.[8]  In addition, the amounts identified are insufficient to make

payments as described in the Structured Dismissal Motion.  For these basic

reasons, and as a threshold matter, the Exit Refinancing Transaction should not be

approved.  Further, as no declaration was submitted with the Structured Dismissal

Motion, the Redacted Letter and argument set forth in the Structured Dismissal

Motion carry no evidentiary weight.  Intentionally redacting the lender's name

prevents the Debtor from conducting any due diligence, a tactic that not only

eliminates the Debtor from investigating the Exit Refinancing Transaction, but

prevents other parties in interest from pursuing their own diligence.

---

[6] As of November 15, 2021, the total amount of Debtor's counsel's fees is more than $414,000.
[7] The amount of the debt continues to increase every day.
[8] Footnote 1 to the Motion references a term sheet that was included as an exhibit to Lichtenstein's Reply Declaration Supporting Motion to Terminate Exclusivity and related Relief (ECF doc. no. 158). The term sheet, however, had a maximum loan amount of $9.3 million, was solely for discussion purposes and not a commitment of any kind. Thus, the term sheet does not demonstrate that Development has a commitment to fund payment of all obligations in the Debtor's bankruptcy case.  In fact, at the November 16th hearing, the Court found that it was not convinced that Development had set forth a fully financed "ready to go alternative" to Debtor's proposed plan. 11/16/21 Hr'g Tr. at 33:25-34.4.
{01127991.DOC;4 }

29.     In connection therewith, Development asserts that it has the contractual and legal right to repay Debtor's obligation due to the Lender in full pursuant to section 9-623 of the New York UCC.  *See* Structured Dismissal Motion at ¶¶5, 24.  Development has made this argument in each of its prior motions to dismiss,[9] in its motion for reargument,[10] and in virtually every oral argument before this Court. The Court has ruled and held multiple times that Development is simply wrong and that it has no right to redeem.[11] The Debtor sees no reason to waste any more ink or paper on this topic.[12]

30.     Moreover, all of the arguments advanced by Development about the effect of allowing the Lender to credit bid were made by Development at the hearing on the debtor in possession financing and were rejected by the Court. Development is always free to bid at the auction sale the Debtor is planning on running pursuant to its Bid Procedures. There is simply nothing new in their papers on this point and it does not merit further discussion.

## V.    Development's Request to File Documents on a Confidential Basis Should Be Denied

31.     Development requests the entry of an order authorizing it to redact certain portions of the Exit Refinancing Transaction and other funding documents

---

[9] *See*, Motion to Dismiss, ECF Doc No. 17 at ¶39-46.

[10] *See*, Motion for Reargument, ECF Doc. No. 47, Argument, Section II, at pages 14-15.

[11] *See, e.g.*, 10/5/21 Hr'g Tr. at 33:15-37:16; 11/16/21 Hr'g Tr. at 21:2-16, 25:1-18.

[12] None of the other cases cited by Development support a structured dismissal under the circumstances of this case. For example, Development's reliance on *In re Petersburg Regency LLC*, 540 B.R. 508, 533 (Bankr. D. N.J. 2015) is misplaced. Development acknowledges in ¶52 of its Motion that in *Petersburg*, that continuation of the Bankruptcy case served "no legitimate bankruptcy purpose" whereas here, the sale of the Debtor's property under section 363 of the Bankruptcy Code followed by a plan has been recognized by this Court and numerous others as a legitimate bankruptcy purpose.  All of Development's cases are simply inapposite.

{01127991.DOC;4 }

under sections 105 and 107(b) of the Bankruptcy Code to avoid dissemination of sensitive information without disclosing the type of information it seeks to redact. Structured Dismissal Motion at ¶57. The request should be denied.

32.    Section 107(a) of the Bankruptcy Code provides that, with certain limitations, all papers "filed in a case under this title ... are public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a). "The policy of open inspection, codified generally in section 107(a) of the Bankruptcy Code, evidences [C]ongress's strong desire to preserve the public's right of access to judicial records in bankruptcy proceedings." *In re Ditech Holding Corp.*, Case No. 19-10412, 2019 WL 3294684, at * 7 (Bankr. S.D.N.Y. July 19, 2019) (citing *Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.),* 21 F.3d 24, 26 (2d Cir. 1994). *In re Borders Grp., Inc.,* 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011) (noting that section 107(a) codifies "[t]he presumption of open access to court records[.]"). Section 107(b)(1) contains one such limitation. It provides that:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, may—
>
> > (1) Protect an entity with respect to a trade secret or confidential research, development, or commercial information. ...

*See* 11 U.S.C. § 107(b)(1).

33.    Development has the burden of proof to show grounds for an exception under section 107(b). *See In re Ditech Holding Corp.,* 2019 WL 3294684, at * 8 (Bankr. S.D.N.Y. July 19, 2019) (citing *In re FiberMark, Inc.* 330 B.R. 480, 488

(Bankr. D. Vt. 2005). Section 107(b) speaks to "protect[ing] an entity with respect to … commercial information." *Id.* at *9. It is intended to protect business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury. *Id.* Thus, the term "commercial information" includes information that would cause "'an unfair advantage to competitors by providing them information as to commercial operations of the debtor.'" *Id.* (citations omitted). Here, nothing in the loan documents would provide the Debtor's competitors an unfair advantage. As a result, the request to file documents on a confidential basis should be denied.

## VI.    Claims Procedures Should Be Denied

34.    As Development has not established cause to dismiss the case and the proposed Exit Refinancing is speculative at best, the Structured Dismissal Motion should be denied, including the claims procedures. However, if the Court grants the Structured Dismissal Motion, the time frames proposed for claims procedures are unreasonable and do not follow the time periods established by the Bankruptcy Rules. For example, the proposed order at paragraph 12 gives administrative creditors only 11 days to file their claims. Paragraph 13 of the proposed order gives Development 19 days to file an objection to the allowance, classification or payment of any secured, unsecured, or administrative expense claims to which the creditor has only 7 calendar days to respond. Under Bankruptcy Rule 3007(a)(1), hearings on claim objections are to be held on at least 30 days' notice. Paragraph 13 of the proposed order should be modified to provide for claim objections to be

{01127991.DOC;4 }

filed on at least 30 days' notice and responses to claim objections to be filed 7 days before the hearing on the objection to such claims.

35.    Furthermore, Development's reliance upon *In re Wickes Holdings, LLC*, No. 08-10212 (KJC) (Bankr D. Del.) (ECF No. 1418), *In re Princeton Ski Shop, Inc*, No. 07-26206 (Bankr. D. N.J. (ECF No. 546) and *In re New Weathervane Retail Corp.*, No. 04-11649 (Bankr. D. Del.) (ECF No. 566) for its contention that similar claims procedures to that proposed by Development have been used in other cases is misplaced.  First, none of the cases relied upon by Development are in the Second Circuit — two are from Delaware and one is from New Jersey.  Also, unlike this case, in *Wickes*, the motion for a structured dismissal was made by the debtor and in *Princeton* and *New Weathervane*, the motion for a structured dismissal was made by the debtor and the creditors' committee.  In none of these cases was a motion made by a non-debtor entity.[13] Here, (i) Development is not even a creditor of the Debtor, and (ii) the Court recently granted the Debtor's motion to extend exclusivity and denied Development's motion to terminate exclusivity.

36.    The Bankruptcy Code provides an efficient mechanism to adjudicate claims and claims objections with known and tested processes and procedures.  There is no reason for the Court to even contemplate deviating from the

---

[13] This is probably because Development's standing to make this motion is questionable.  To execute the structured dismissal, Development needs to "use" the Debtor's property under section 363 of the Bankruptcy Code, one of the sections on which the Motion is based, however, section 363 applies only to motions to "use, sell or lease" property of the estate made by a "trustee." Development is not a "trustee" within the meaning of section 363.

{01127991.DOC;4 }

Bankruptcy Code in favor of the Rube Goldberg contraption proposed by Development.

## CONCLUSION

37.    Based on all the above, the Structured Dismissal Motion should be denied.  However, in the event that the Court is inclined to entertain the Structured Dismissal Motion, Development should be required to follow the structured dismissal process suggested by the Lender in its response and the Debtor should be able to continue the sale process with an auction (if necessary) and a sale of the Property in accordance with its pending Bid Procedures Motion.

**WHEREFORE,** the Debtor respectfully requests that the Court deny the Structured Dismissal Motion in its entirety and granting the Debtor such relief as is just and proper.

**Dated:**  New York, New York
        December 2, 2021

> **ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.**
> *Attorneys for Debtor*
> 875 Third Avenue, 9th floor
> New York, NY 10022
> Tel. No.: (212) 603-6300
>
> By:  /s/ Fred B. Ringel
> Fred B. Ringel
> Steven B. Eichel