Hearing Date & Time: December 9, 2021 at 10:00 a.m. (Eastern Time)

**MAYER BROWN LLP**
Douglas Spelfogel
Leah Eisenberg
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Facsimile: (212) 506-1910

*Special Counsel to 286 Rider Ave Development LLC*

**OFFIT KURMAN, P.A.**
Jason A. Nagi
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900

and

Joyce A. Kuhns, Esq. (Admitted *Pro Hac Vice*)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
Tel (410) 209-6463

*Attorneys for 286 Rider Ave Development LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re:* | Chapter 11 |
| **286 Rider Ave Acquisition LLC** | Case No. 21-11298 --(LGB) |
| **Debtor.** | |

**OMNIBUS REPLY SUPPORTING DEVELOPMENT'S MOTION TO AUTHORIZE PAYOFF OF LENDER THROUGH EXIT REFINANCING, CLAIMS PROCEDURES, AND STRUCTURED DISMISSAL**

286 Rider Ave Development LLC ("Development"), by and through its undersigned counsel Mayer Brown LLP and Offit Kurman, P.A., hereby submits this Omnibus Reply (the "Reply") in support of its *Motion for Entry of An Order Pursuant to Sections 105(a), 363, 364, 305(a), 349(b), and 1112(b) of the Bankruptcy Code Authorizing Payoff of Lender Through Exit*

745127535

*Refinancing, Claims Procedures, Subsequent Dismissal of This Bankruptcy Case, and Related Relief* [ECF No. 171] (the "Motion")[1] and in support thereof state as follows:

## REPLY

1. Development, the 100% owner of the Debtor[2], together with Toby Moscovitz and Michael Lichtenstein (collectively, the "Borrowers") have proposed a solution in this bankruptcy case that provides a mechanism to preserve and maximize value for <u>all</u> creditors and equity holders. This solution is much preferred to all parties. The proposal has been joined by 286 Rider Associates LLC ("Associates"), which holds a substantial claim,[3] and would pay off the Lender and all creditors in full, rather than put the property up for fire sale, during Christmas, for the singular benefit of the Lender—almost certainly vitiating any value to other creditors and equity holders contrary to the goals of the Bankruptcy Code.[4] While couched as objections, addressed in turn below, the main parties appear to be in agreement and support the payoff and redemption also discussed below.

2. As an initial matter, despite the fact that Development's proposal guarantees more for the Debtor and its stakeholders than is either promised or likely to be achieved through the Lender's proposed fire sale process, the United States Trustee, the Lender through the nominal Debtor, and the Lender have objected to the relief sought in the Motion. The nominal Debtor's

---

[1] Capitalized terms used by not defined herein have the meanings given in the Motion.

[2] As provided in the Debtor's latest Amended Statement of Financial Affairs, amended by the nominal Debtor, 100% of the membership of the Debtor is owned by Development, and Mr. Buchwald is only the manager of the Debtor without any membership interests. See, Amended Statement of Financial Affairs, dated November 5, 2021 [ ECF No. 116].

[3] Ms. Moscovitz and Mr. Lichtenstein, co-obligors, also filed a joinder [ECF No. 182].

[4] By Lender's own appraisal in 2019, the subject property was valued at $12 million. Development submits that the value exceeds $15 million.

Response [ECF No. 183] ("Debtor Obj.") raises concerns over how "real" Development's proposed exit financing is and presents a hodgepodge of other objections, all of which are either without merit or can be easily resolved. The Lender's Response [ECF No. 185] ("Lender Obj."), raises what appears to be a very minor concern about the time at which the Debtor takes back control over the Debtor, while seemingly acknowledging that the Motion otherwise satisfies all requirements for establishing a clean exit from this bankruptcy case without the need for a value-destroying sale process. The Trustee's Objection [ECF No. 184] ("Trustee Obj.") argues that Development lacks standing and that dismissal is premature, but this is misconstruing the purpose of the Motion as discussed below.

3. As set forth in more detail below, none of these objections sets forth a legitimate reason for denying the Motion and instead forcing a costly sale process to move forward to the detriment of Development (as 100% owner of the Debtor) and the Debtor's creditors. Accordingly, as set forth herein and in the Motion, the proposed redemption and payoff, and claims procedures should be approved, setting the stage for the eventual structured dismissal of this bankruptcy case.

**Settlement**

4. As noted above, despite the Lender parties' mischaracterizations, discussions have continued between movant, the nominal Debtor, and Lender to resolve the pending case. In this regard, while couched as objections, addressed in turn below, the parties appear to be in agreement and support the payoff of the Lender (and other claims). As noted in the nominal Debtor's Response and the Lender's filings, the total amount of claims as of October 31, 2021 was $11,821,000, but since Associates has agreed to take $600,000 at the closing, the amount is only

3

$11,221,000.[5] Even allowing for a cushion of $500,000 (which is more than enough to cover continuing interest through closing and quarterly fees, the only other line items noted by the nominal Debtor), the total amount of claims is less than $12 million, which resolves all claims. To this end, Development is agreeable to the process articulated by the Lender, subject to entry of an agreed stipulation and/or order by the Court. on the substantive terms noted as follows:

- Payment of up to $12.5 million to be paid to Robinson Brog as escrowee (in an appropriate nationally insured bank account), the amount to cover the known claims herein, subject to disposition pursuant to further order of this Court pursuant to agreed process consistent with the below;
- Payoff from the above to the Lender of its principal and contract interest (including default interest[6]);
- Escrow with Robinson Brog of the balance of amounts in excess of above payments to Lender to cover asserted reasonable fees and expenses (payable upon further court order), and allowed claims, to be paid upon agreement or upon court determination;
- Lender's release of the liens in the property and membership interests/stock pledge, and reinstatement of Development, with Lender's remaining claim (comprised of reasonable attorney's fees and expenses in amounts as determined by the court), to be collateralized with a replacement lien for benefit of Lender in the escrow to cover such expenses[7];
- Provide 30 days' notice of claims objections, and deadline for submissions of applications for fees;
- Lee Buchwald/Robinson Brog to continue to oversee claims resolution process pending dismissal, while any party, including Development shall have right to raise objection within the time provided;
- Development and creditors may work out agreement for repayment of any claims on terms as agreed in writing by such parties;
- Once the claims objection process is completed, any surplus funds held in escrow to be paid back to Development; and
- The case to be withdrawn/dismissed once the above is concluded and subject to payment of US Trustee fees.

---

[5] Additional amounts asserted due by Associates will be paid over time, all of which to be memorialized in a written agreement executed by the relevant parties.

[6] In event that the instant relief is not approved, all rights to challenge the Lender's claim, including, with respect to default interest are expressly reserved.

[7] Development reserves the right post-payoff to transfer the property to a new entity, with any claims to attach to the escrow as provided for herein.

4

5.      Regarding the argument that the exit financing funds are contingent, this is factually incorrect, as the only substantive condition to funding is entry of a final order in form as provided in the commitment letter.[8]  Regarding the argument that the exit financing funds are insufficient, the new lender is ready to close as soon as practicable upon entry of the final order, which can be effectuated on or before January 10, 2022.  The new lender has committed to provide up to $12.5 million upon satisfaction of such conditions (which provides as a condition to funding entry of a final order, including satisfaction and release of the Lender's loan and equity interest/pledge in the property and membership rights, a first position lien in favor of the new lender in such assets, reinstatement of equity control).  Also attached to the Motion are verification from new lender's banks confirming available cash liquidity to fund the Exit Refinancing.

**<u>Development May Exercise Its UCC Redemption Right</u>**

6.      In terms of the underlying relief, it is well settled that the Borrowers have the right to redeem its equity in the Debtor.  In this regard, as discussed in the Motion, Section 9-623 of the Uniform Commercial Code, as adopted in New York, provides a non-waivable right to redeem collateral upon tender of payment in full of the underlying debt and related amounts owed.  N.Y. U.C.C. Law § 9-623 (McKinney).  Rights under this provision of the UCC do not fall away despite the fact that one of the debtors or obligors has commenced a bankruptcy case.  *See, e.g.*, *Weber v. SEFCU (In re Weber)*, 719 F.3d 72, 77 (2d Cir. 2013) (noting that UCC redemption right held by debtor preserves its interest in property even after lender exercises remedies with respect to the collateral); *In re Velichko*, 473 B.R. 64, 67 (Bankr. S.D.N.Y. 2012) (same).

---

[8] The exit refinancing is also subject to execution of typical loan documentation as provided in the Commitment Letter.

7. Notwithstanding, the Lender contends that the proposed exit financing structure does not satisfy the UCC because it would not immediately pay the Lender's debt in full, and instead would leave the disputed amount of the Lender's claim in escrow pending final resolution of such dispute. Lender Obj. p. 9. Lender cites no law supporting such an obligation, notwithstanding its perfunctory assertion that procedure set forth in the Motion doesn't satisfy the UCC. *See Taul ex rel. United States v. Nagel Enterprises, Inc.*, No. 2:14-CV-0061-VEH, 2019 WL 718714, at *5 (N.D. Ala. Feb. 20, 2019) (collecting cases holding that a party waives an argument if it "fails to elaborate or provide any citation of authority in support" of such argument). Irrespective, as an initial matter, as noted above, Development is prepared to enter into an agreement/agreed order for payment of all contractual amounts for principal and interest (including default interest) outlined on the record and due to Lender in full, with the exception of amounts that may be due for reasonable attorney's fees and expenses, which would be escrowed pending further court process/review.

8. The Lender is wrong on the merits, too. Setting aside that the Lender will have a court order in hand ensuring payment in full, that the funds will be readily available in escrow, and that it will have a replacement lien as to such funds, any short delay in final payment of a small fraction of the debt should not be allowed to impair Development's redemption rights—and it is necessary to ensure that the amount of the attorney's fees asserted is reasonable and necessary (*i.e.*, fees that are actually payable in connection with a redemption under the UCC).

9. A "tender" of payment in full to satisfy UCC Section 9-623 does not mean payment in full in one lump sum. The UCC does not define "tender" in this context, and Black's Law Dictionary defines "tender" as, among other things, "an unconditional offer of money or performance to satisfy a debt or obligation." TENDER, Black's Law Dictionary (11th ed. 2019).

6

Here, Development is unconditionally offering payment in full of the debt to the Lender, subject (as to the remaining portion of the debt not immediately paid in cash) only to an adjudication or agreement as to the amount actually owed for fees. Once such a determination is made, the remainder of the debt to the Lender, having previously been tendered, will be delivered in final satisfaction of such debt.

10.    In *Moffett*, cited in the Motion, the Fourth Circuit held that a Chapter 13 debtor was entitled to exercise its redemption rights and regain possession of its collateral by curing the delinquency on the debt over time through a Chapter 13 plan, and that this was sufficient to count as a "tender" of the unpaid amount of the debt. *In re Tidewater Finance Company v. Moffett (In re Moffett),* 356 F.3d 518, 522 (4th Cir. 2004). The Fourth Circuit concluded that the payments over time satisfied the requirement of "tendering to [the secured creditor] the full amount due under the contract." *Id.*; *see also In re Brittain*, 435 B.R. 318, 325 (Bankr. D.S.C. 2010) (concurring with the *Moffett* court's analysis); *In re Dierkes*, No. 05-60983-MGD, 2005 WL 6219357, at *4 (Bankr. N.D. Ga. Feb. 15, 2005) (same).

11.    Here, Development is not even asking the Lender to wait an extended period of time for the redemption payments to be completed—Development proposes payment of principal and any contract interest upon the closing, within approximately thirty (30) days on January 10, 2022, and an escrow for fees which it anticipates that any final payments will be made, at most, within a few months of the entry of the Refinancing and Claims Adjudication Order. This is more than enough to protect the Lender's rights in the Debtor while respecting Development's redemption right under the UCC.

12.    Similarly, the nominal Debtor's complaints regarding Section 9-623 are even more unfounded than the Lender's. In asserting that Development lacks redemption rights, the nominal

7

Debtor conflates its own equity of redemption in the Property (which is not at issue in the Motion), with Borrower's UCC redemption rights (upon which the Motion is based), and goes further to state, inaccurately, that the Court has previously barred anyone other than the Debtor from exercising the UCC right of redemption and pay off the Lender. This is simply false.

13.  Rather the argument previously raised in the context of the original Motion to Dismiss [ECF No. 17], was whether the bankruptcy filing was authorized[9] in the first instance to the extent it infringed upon the right of redemption. While the Court found that the bankruptcy was authorized, it never made any determination that there is a bar on Borrowers absolute right to redeem and pay off the Lender under UCC 9-623, which is an unwaivable right under settled law. Further, while Development's Motion for Reargument [ECF No. 47] did raise UCC Section 9-623 rights, this Court's ruling on reconsideration was not based on the availability of those rights, but on the fact that the issues could have been raised in the original Motion to Dismiss and were therefore not a basis for reconsideration. *See* 10/05/21 Hr'g Tr. 33:5-24. Indeed, this Court did not even mention Section 9-623 at the October 5 hearing. The right of the Borrowers to exercise the UCC right of redemption and pay off the Lender is settled law, and Development is proposing to exercise their right to pay off the Lender pursuant to the Motion.

14.  Similarly, the Court has previously correctly noted on a number of occasions that the Lender could be paid off. By the instant motion, the Borrowers have now come forward with a mechanism to pay off the Lender, and other claims. Development's proposal provided for the tender of payment in full of all of the Debtor's allowed debt to the Lender, subject only to a final determination as to certain ancillary amounts owed for fees. This is sufficient under the UCC.

---

[9] This Court's determination regarding the authorization of this bankruptcy case and related dismissal motion is currently on appeal.

8

15. The question that is obvious after dissembling the various arguments - - why is the Lender controlled Debtor and the Lender arguing against a payoff of the loan? What is the Lender trying to achieve by attempting to block the exercise of the UCC right to payoff the Lender that is settled law.

**The Bankruptcy Code Does Not Preclude the Payoff through Refinancing**

16. Next, the Lender, through its nominal Debtor, and the Trustee incorrectly assert that the Bankruptcy Code does not allow exit refinancing to be sought by a Debtor's equityholder on behalf of the Debtor, and that therefore Development lacks standing to make the Motion. Debtor Obj. p. 20 n.13; Trustee Obj. pp. 4-6. However, this misconstrues the relief sought.

17. Here, in order for Borrowers to effectuate the non-waivable right to payoff of the Lender, including the satisfaction and release of Lender's liens, an order is necessarily required to provide clarity to the new lender that the Lender has in fact been paid and satisfied in full. The language in the commitment letter simply provides that any order approving the payoff include as follows:

> The only conditions for the funding is Court approval authorizing such, including the concurrent exit refinancing satisfying and releasing the current Lender's claims and liens and purported management rights in the Debtor; the execution and delivery of the loan documents, including note, mortgage, and membership pledge in satisfactory form, which shall provide for a fist priority valid, binding, enforceable, and non-avoidable and automatically and property perfected lien and security interest and first mortgage in the underlying property and collateral pledge in the member interest of the Debtor.

See Commitment Letter, Motion, Exhibit "C".

18. Accordingly, the relief herein simply provides the mechanism for the entry of an appropriate order confirming the payoff satisfying and releasing the Lender.[10] This is necessary

---

[10] While the objectors also argue that the terms for the exit financing aren't detailed, this is irrelevant given that all claims are to be paid in full from the proceeds.

9

given the pendency of the bankruptcy case and, as the Court has noted previously, to provide clarity that the old liens have been relinquished, thereby providing that any new lender is in fact provided with clear security. This is limited to facilitating the payoff and consistent with the Borrowers right under settled law to pay off the loan under the UCC.[11]

19. Here, the Motion contemplates a simultaneous payoff of the Lender and satisfaction, and reinstatement of the Development appointed manager. The fact that this change in control must occur contemporaneously with the payoff and granting of replacement liens on the Debtor's Property to the new lender should not impede the relief sought in the Motion, whether it is granted through Sections 363 and/or 364 or with the benefit of Section 105(a).

20. This order of operations is necessary to unwind the paradox created by the commencement of this bankruptcy case by the Lender and the Lender controlled nominal Debtor: Development wants to refinance the debt owed to the Lender by exercising its redemption rights. Development has access to offers of financing that are sufficient to pay off the Lender. However, as the Court recognized previously, no new lender would be likely to provide such financing absent confirmation that the Lender has been paid and satisfied, has released its liens and security interest, and consequently, receives security for repayment—namely, the value in Development's equity in the Debtor and the Debtor's ownership of the Property. Outside bankruptcy, this would be easy enough to achieve through a simple refinancing and title guarantee, but in the context of this bankruptcy case, no title company will provide clear title without a court order. Therefore, Development must provide the comfort of an order confirming delivery of the property security

---

[11] Section 1109 of the Bankruptcy Code gives all parties in interest, including "an equity security holder" the right to "raise" and "appear and be heard on any issue" in a Chapter 11 case. 11 U.S.C. § 1109(b). While there are common law prudential limitations on the application of Section 1109(b), those limitations should not apply here, where Development's requested relief, the payoff of the Lender, is a well settled right recognized in bankruptcy, and will actually restore its control over the Debtor.

10

free and clear of the prior claims and liens of the Lender. Development can only do so by providing a court order—the proposed Refinancing and Claims Adjudication Order—ensuring that the new lender's rights will be established and protected. Authorizing this relief, as requested in the Motion, is consistent with the settled law providing for redemption and payoff.

21. Moreover, the Trustee surprisingly misstates the Supreme Court's holding in *Law v. Siegel* and its effect upon Section 105(a). The Supreme Court did not hold, as the Trustee suggests, that "105(a) does not apply when there is a specific Code provision on point." Trustee Obj. p. 2. What the Supreme Court actually held was that a bankruptcy court, when acting under Section 105(a) and its inherent powers "may not contravene specific statutory provisions." *Law v. Siegel*, 571 U.S. 415, 421 (2014). Other than asserting that the proposed exit financing does not fall squarely within the four corners of Sections 363 and 364, the Trustee does not indicate what provision of the Bankruptcy Code is *offended* by authorizing the redemption and payoff, nor could it, because there is none.[12] Thus, even if this Court views Sections 363 and 364 as insufficient to *authorize* Development's proposed payoff and refinancing, because nothing in those sections *precludes* such financing (a simultaneous payoff and grant of new security interest), Section 105(a) may be used to fill in the gap and to provide a mechanism for the overall and overriding right of the Borrowers to exercise the UCC right of redemption and pay off the Lender, under the settled law.

22. Indeed, it is also well recognized that a debtor-in-possession must comply and act in accordance with the state law in which the property it is charged with operating resides. *See*, *28 U.S.C. 959(b)*, which provides in pertinent part, that:

---

[12] The Court is empowered to direct relief to authorize the redemption and payoff, including, any tangential rights provided for under Sections 363 and 364, if any, and 105, to facilitate the payoff, which is in the best interests of the estate and all of its creditors.

11

> a trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

*See also, In re Al Copeland Enters*, 991 F. 2d 233, 237-38 (5th Cir. 1993) (holding that 959(b) requires operating debtors to comply with applicable state law); *Robinson v. Mich Consol. Gas Co. Inc*., 918 F. 2d 579, 585 (6th Cir. 1990) (same); *In re N.P. Mining Co.*, 963 F. 2d 1449, 1453 (11th Cir. 1992) (same).  Accordingly, not only is the instant payoff and refinancing in the interest of all creditors and the estate, and authorized under the Court's equitable powers, but the Debtor, through its nominal Lender installed manager, is required to comply with whatever steps are necessary to effectuate the payoff under the UCC.

**The Claims Procedures are Appropriate**

23.     The Lender, through the nominal Debtor, asserts that the claims procedures are improper because of the short timeframe, noting that Bankruptcy Rule 3007(a)(1) requires at least 30 days' notice on a hearing for claims objections.  Debtor Obj. pp. 19-20.  As noted above, Development has no issue with a 30 day notice process for claims objections (the initial 21 days' notice was provided to provide a more expeditious time line for claimants to resolve open claims and bring any fee applications).

24.     Notwithstanding, as to timing, it should be noted, as a legal matter, this Court is authorized under Bankruptcy Rule 9006(c)(1) to impose the notice periods different than as set forth elsewhere in the Bankruptcy Rules, and the period set forth in Rule 3007(a)(1) is not among the enumerated exceptions.  Fed. R. Bankr. P. 9006(c).  And, as a practical matter, no hearing schedule is set forth in the Claims Procedures and that claims resolution hearings, would be set based upon the Court's calendar and further discussion with the parties.  If this is not held prior to

dismissal, under the procedures, this may expressly be reserved to a date following dismissal if more time is needed.

25. The ordinary claims procedures set forth in the Bankruptcy Code and Bankruptcy Rules serve many purposes, including, most importantly that they give creditors the chance to be heard before all or a part of their claims are discharged. Here, there will be no discharge order entered, and any claims will be addressed under the proposed protocal. And, importantly, no third-party creditors have objected to the Claims Procedures, and the Debtor's largest creditor other than the Lender, Associates, has filed a joinder to the Motion expressly endorsing the procedures set forth therein. [ECF No. 180.]

26. The time frame set forth in the Claims Procedures strikes the balance between the need for expeditious resolution of the issues in this bankruptcy case and the need to ensure that creditors are treated fairly. These procedures were designed ensure payment in full of all allowed claims without slowing down the progress of this bankruptcy case. However, as noted, Development has no objection with a 30 day notice process for claims objections. Further, in the event that this Court believes that the Claims Procedures should be adjusted to accommodate the needs of creditors, and this can be achieved without otherwise impeding a prompt resolution to this bankruptcy case,[13] Development has no objection to such adjustments.

27. Finally, contrary to the Debtor's assertion, it is irrelevant that the *Wickes*, *Princeton Ski Shop*, and *New Weathervane Retail* structured dismissal orders were entered in other

---

[13] Among other things, the timing set forth in the Motion alleviates the Debtor's concerns regarding the Debtor's ability to claim the 421-a Program tax abatement. Debtor Obj. pp. 8-9. Development believes this is a non-issue even in the context of the Debtor's sale motion because, even on a longer sale timeline than the Debtor's proposed schedule, a new owner (including the Lender) would have ample time to break ground on the property in advance of the June 15 deadline. But, in any case, if this Court grants Development's Motion, the Debtor will be able to move forward with construction on the Property *sooner* than if the Property were sold to the Lender or a higher bidder, so the Debtor's timing-related objections ring hollow.

jurisdictions or were supported by the Debtor. *See* Debtor Obj. p. 20. The orders were merely provided as examples of how claims procedures can work in the context of structured dismissal motions, to demonstrate that the procedures put forth in the Motion do not involve some novel or radical proposition. The Claims Procedures are a reasonable approach to a recurring issue in bankruptcy cases, as demonstrated by the aforementioned orders.

**Dismissal Will Be Appropriate In Due Course**

28. The objecting parties put forth a laundry list of arguments as to why this bankruptcy case should not be dismissed, even upon satisfaction of all of the conditions precedent set forth in the Motion, but these arguments are entirely without merit.

29. As initial matter, the objecting parties misconstrue the request for dismissal. As provided in the Motion, dismissal will not occur until after payment or escrow for payment of all claims, and resolution of any claims objection or retention by the court of jurisdiction to resolve such. The resulting case will have no creditors, and nothing to administer, accordingly, it is unclear at that juncture, what the issue is with dismissal. The instant Motion simply sets up the mechanism, upon further notice and right to object to dismissal once the payoff and claims process has been concluded. There are very few creditors in this case, and at the point where all creditors have been paid, dismissal will be the logical next step.

30. In addition, notwithstanding, the Trustee argues that the request to permit structured dismissal is premature because the availability of financing and satisfaction of all claims is "a matter for speculation." Trustee Obj. pp. 6-8. Lender, through the nominal Debtor, takes this argument a step further, suggesting that this Court doesn't even have jurisdiction to consider a structured dismissal because the money hasn't been provided yet. Debtor Obj. pp. 10-11. These arguments are inapt. Development is not asking this Court to dismiss this bankruptcy case today.

14

Instead, it is laying the framework for the ultimate dismissal of this case only upon the satisfaction of the financing and claims resolution conditions set forth in the Motion. The case will not actually be dismissed until those conditions have been satisfied, notice thereof has been provided, and interested parties have the opportunity (again) to object to dismissal.

31.   Further, if the Trustee's and nominal Debtor's arguments were taken literally, that would mean that no financing (or, for that matter, a plan of reorganization) could *ever* be approved without *first* actually providing the promised funds. This is practically impossible, and it is simply not what the Bankruptcy Code requires. Instead, the Court must be satisfied that the means to the consummate the transactions outlined in a financing motion exist.

32.   To the extent that there is any concern over the Development's ability to satisfy existing claims using the proposed exit financing, Development can address these concerns in numerous ways. First, in terms of timing, once the Court enters an order consistent with the requirements under the commitment letter, the parties are prepared to close promptly. In other words, the funds will be in place, upon the closing after entry of a final order, and deposited with Robinson Brog in escrow upfront for distribution in accordance with a mechanism to be included in the proposed approval order, upon agreement of the parties. Second, Development is in discussions with the Debtor's largest creditor other than the Lender—Associates—for payment of the claim in the amount of $600,000, and the rest pursuant to an agreed amount and term over time following dismissal. This alone will guarantee that there is more than enough liquidity available to satisfy the conditions precedent to dismissal set forth in the Motion. Third, Development is more than happy to make adjustments to the proposed framework as are necessary to satisfy legitimate concerns raised in the Objections (and as may be directed by the Court). Development is primarily concerned with the "what" set out in the Motion (*i.e.*, the payoff of the Lender and

15

dismissal of this bankruptcy case) and has flexibility as to the "how" (*i.e.*, the precise contours of the claims resolution procedures).

33.  The Trustee's argument that the case should not be dismissed based on the potential existence of unspecified fraudulent conveyance actions is likewise irrelevant (and, indeed, is a matter for speculation of the exact sort that the Trustee professes to oppose). Trustee Obj. p. 8. First, if all creditors are paid in full, whether there are avoidable transfers, if any, is a moot point, as all creditors will have been paid in full.  Further, the potential existence of fraudulent conveyance actions is completely unfounded.  The Trustee cannot preclude dismissal based on its own feelings about what claims *might* be out there.  And even if there were viable fraudulent conveyance actions in existence, such actions would survive dismissal of this bankruptcy case and could be asserted by any aggrieved creditors pursuant to applicable state law.  However, there cannot be any aggrieved creditors, as they all will be paid in full, so it is quite clear that a fraudulent conveyance action will serve no purpose.

34.  For that same reason, at the time that this bankruptcy case actually comes up for dismissal upon Development's filing of a Notice of Filing of Dismissal Order, there will no longer be any bankruptcy purpose to keeping this case open, which is consistent with bases for dismissal set forth in *KG Winddown* and *Petersburg Regency*.  All pre-bankruptcy creditors will have been paid in full, will have funds set aside for payment in full, or will have agreed to some different treatment.  This is the best possible outcome of any bankruptcy case and keeping the Property subject to this Court's jurisdiction will only impair the Debtor's ability to move forward with its construction plans.  In any case, in the event that there is some reason to prevent dismissal at that time, interested parties will have the opportunity to raise such basis and this Court will of course retain the discretion to modify or decline to enter the proposed dismissal order accordingly.

35.     Additionally, the argument that insufficient notice has been given prior to dismissal is without merit. The Motion was filed on November 22, 2021, and dismissal pursuant to the Motion could not occur until at least January or February of 2022—two to three months later. And even then, dismissal will not be some automatic thing—additional notice and an opportunity to object will be given as noted above and in the Motion. This is more than the Bankruptcy Rules require, and is also consistent with the time period set forth by Judge Glenn in *KG Winddown*.[14]

36.     Finally, there is no merit to the arguments that *res judicata*, law of the case, and lack of jurisdiction bar the structured dismissal of this bankruptcy case. While it is true that this Court lacks jurisdiction to reconsider its ruling on Development's original motion to dismiss while the appeal is pending, that is not what this Motion seeks. Instead, as noted above (and in footnote 5 to the Motion), the Motion lays out a framework for the eventual dismissal of this bankruptcy case upon payoff of all claims. This has nothing to do with whether the bankruptcy filing was authorized in the first instance. To hold otherwise, would incorrectly limit this Court's power to administer the bankruptcy case.[15]

37.     Another part of that framework is ensuring the satisfaction of all claims. It is that satisfaction of all claims that provides the "cause" for the eventual dismissal of this bankruptcy case, cause which was not available or asserted in the original Motion to Dismiss. Development is not seeking to relitigate issues it previously raised regarding the authorization to file the case,

---

[14] The primary basis for the subject relief, to authorize the payoff of the Lender, set procedures to address claims adjudication, and for a two-step process for dismissal upon further notice, is warranted upon regular notice as provided under FRBP 9014.

[15] The Debtor's argument that the Motion proposes a *sub rosa* plan in violation of this Court's existing exclusivity orders is similarly meritless. Development has not proposed a *sub rosa* plan because, unlike a *sub rosa* plan of reorganization, no property is removed from the Debtor's bankruptcy estate, and creditors substantive and procedural rights to be paid in full are entirely preserved. *See In re Tower Auto. Inc.*, 241 F.R.D. 162, 169 (S.D.N.Y. 2006) (noting that impermissible *sub rosa* plans involve the removal of all or substantially all of an estate's assets and restrictions on the rights of creditors to weigh in on a plan of reorganization).

but it is seeking to litigate new issues that could not have previously been litigated (because Development had not yet received its current financing offer or conceived of the structured dismissal mechanism set forth in the Motion).

**Redaction of Sensitive Documents is Appropriate**

38.     Development has no issue providing additional information to Court, the nominal Debtor and Lender (and Trustee) with respect to the exit refinancing provided limited reasonable protections to insure such is not disseminated publicly. In this regard, Development sent a standard form confidentially agreement to the Lender controlled nominal Debtor and Lender advising that it would provide unredacted documents to them upon signing.[16] Development is concerned with filing the new lender information and bank information in a public filing, given that the new lender is a private individual, and out of concern with potential interference with the proposed financing. In this regard, as noted in its objection to bid procedures, there have been prior occurrences where Debtor and/or Lender has acted to undermine Development's efforts to obtain financing. For example. while no bid procedures have been authorized as for yet, the Debtor prematurely violated its own proposed sale process prior to any court approvals of sale process dates or form of any notice by dissemination via the internet of a Bankruptcy Sale Notice through Rosewood Realty.[17] This was not the first time that the broker has acted in advance of court authorization. *Id.* The request to file redacted information was designed to prevent or minimize any unilateral actions to undermine the exit financing. Development has no issue providing the details to the Court and parties regarding the new lender (which information was previously provided to the Trustee),

---

[16] Lender responded to this outreach indicating that it did not have issue with the redaction specific terms of a new loan. Debtor did not respond.

[17] A copy of this sale notice is included as Attachment 3 to Borrowers' objection to the Debtor's bid procedures motion [ECF No. 190-3].

18

provided that information is protected from public dissemination by the broker and/or others or other unauthorized or inappropriate actions that may interfere with the refinancing.

## **CONCLUSION**

39.    The relief requested in Motion has been devised in a way to maximize benefits to all concerned parties, by paying the Lender and all other claimholders in full, maintaining the Debtor's existence as a going concern, and preserving residual equity value in the Debtor. While the Lender through the nominal Debtor, Lender, and Trustee raise numerous objections to the Motion, none of their objections get to the heart of the Motion—that it provides the best possible outcome for all interested parties. Accordingly, as set forth in the Motion, this Court should consider the best interests of the Debtor and all of its stakeholders and therefore it should approve of the Exit Refinancing Transaction, Claims Procedures, and structured dismissal set forth therein.

WHEREFORE Development respectfully requests that the Court grant the relief requested in the Motion and such other and further relief as it deems just and proper.

Dated:  December 6, 2021
       New York, New York

Respectfully submitted,

By: _/s/Douglas E. Spelfogel_
Douglas Spelfogel
Leah Eisenberg
Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) 506-1910
Email: dspelfogel@mayerbrown.com
        leisenberg@mayerbrown.com

*Special Counsel to 286 Rider Ave Development LLC*

**OFFIT KURMAN, P.A.**

Jason A. Nagi
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900
Email: jason.nagi@offitkurman.com

and

Joyce A. Kuhns, Esq. (Admitted *Pro Hac Vice*)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
Tel (410) 209-6463
Email: jkuhns@offitkurman.com

*Attorneys for 286 Rider Ave Development LLC*