Hearing Date: January 5, 2022 at 10 a.m. ET
Objection Deadline: December 29, 2021 at 5 p.m. ET

**MORRISON COHEN LLP**
909 Third Avenue
New York, New York 10022
(212) 735-8600
Joseph T. Moldovan, Esq.
David J. Kozlowski, Esq.

*Attorneys for Be-Aviv 286 Rider LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**286 RIDER AVE ACQUISITION LLC,**<br><br>Debtor. | Chapter 11<br><br>Case No. 21-11298-LGB |

**MOTION UNDER 11 U.S.C. § 105 TO HOLD
TOBY MOSKOVITS AND MICHAEL LICHTENSTEIN
IN CONTEMPT FOR VIOLATING ORDERS
OF THIS COURT AND FOR SANCTIONS**

TO THE HONORABLE LISA G. BECKERMAN,
UNITED STATES BANKRUPTCY JUDGE:

Be-Aviv 286 Rider LLC ("**Lender**" or "**Movant**"), by its undersigned counsel, Morrison Cohen LLP, hereby submits this motion ("**Motion**") pursuant to section 105 of title 11 of the United States Code ("**Bankruptcy Code**") for an order (a) holding Toby Moskovits ("**Moskovits**") and Michael Lichtenstein ("**Lichtenstein**") in contempt for violating the Court's orders ("**Dismissal Orders**") [Docket Nos. 39 and 165] denying the motions to dismiss brought by 286 Rider Ave Development LLC ("**Development**") [Docket No. 17] and by Development, Moskovits, and Lichtenstein [Docket No. 111] ("**Dismissal Motions**") by filing the Florida Lawsuit (as defined

#10860604 v1 \029220 \0005

herein), and (b) for sanctions against Moskovits and Lichtenstein for In support of this Motion, Lender respectfully sets forth and represents as follows:[1]

## Preliminary Statement

1.      In a blatant attempt at forum shopping and making an end-run around decisions of this Court, Moskovits and Lichtenstein have filed a Florida state court complaint against two of the Lender's principals seeking $50 million in damages based largely their claims that ***everything this Court has done in this case is improper*** and that the Lender's principals have conspired to seize the Property, in essence, aided and abetted by this Court.

2.      The linchpin of their arguments—indeed, the facts relied upon for all counts in their Complaint—are the alleged impropriety of the Lender's actions in exercising its rights under the Pledge and the Debtor's subsequent filing for chapter 11 relief in this Court, notwithstanding that this Court has, on multiple occasions, ruled those actions to have been validly performed and effective. Moskovits and Lichtenstein chose not to name the Debtor as a defendant in an attempt to avoid the jurisdiction of this Court but this Court should see through that charade and use its inherent powers to (i) protect the Debtor's bankruptcy filing under section 301 of the Bankruptcy Code and the Court's jurisdiction over the Debtor, (ii) protect the Lender

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in *Be-Aviv 286 Rider LLC's Response to Motion by 286 Rider Ave Development LLC to (i) Dismiss Bankruptcy Case Pursuant to 11 U.S.C. §§ 303, 305, and 1112, and (ii) for Turnover of Certain Membership Interests Under 11 U.S.C. § 543, and Joinder by Respondent to Debtor's Response to the Motion* [Docket No. 23].

#10860604 v1 \029220 \0005

2

and its principals, who are the beneficiaries of findings and holdings of this Court, and (iii) sanction Moskovits and Lichtenstein for their contemptuous conduct.

3.     For the reasons stated herein, and to protect the integrity of its own orders, the Court should hold Moskovits and Lichtenstein in contempt for filing the Florida Lawsuit and require that the Florida Lawsuit be withdrawn. Additionally, this Court should sanction Moskovits and Lichtenstein for again disregarding this Court's orders, and to encourage their future compliance with orders of this Court.

## **Jurisdiction and Venue**

4.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

5.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.     This Court has jurisdiction to enforce its own rulings and orders under Bankruptcy Code § 105(a) and the All Writs Act (28 U.S.C. § 1651). The Court has jurisdiction over Moskovits and Lichtenstein as both have filed declarations in this case [*see*, Docket Nos. 17-1, 36-1, 67, 68, 130-1, and 158], have filed pleadings in this case, most recently on December 2, 2021 [Docket No. 182], and are represented at each hearing by counsel.[2]

---

[2] Development was represented by Akerman LLP [Docket No. 12] and is currently represented by Jacobs P.C. [Docket Nos. 43 and 45], and Mayer Brown LLP [Docket No. 157]. Moskovits and

#10860604 v1 \029220 \0005

3

## Background

7.  The facts in this case are well known to this Court, and Movant will not recite them again here. Rather, for general background, Movant relies on the various submissions to this Court by Debtor and Lender outlining the relevant background and subsequent postpetition activities in this case, in particular, the responses to the Dismissal Motions.

8.  Specific to this Motion, on November 12, 2021, Moskovits and Lichtenstein filed a complaint ("**Complaint**") in the 11th Judicial Circuit Court for Miami-Dade County in Florida (Filing # 138443886) ("**Florida Lawsuit**") against two principals of the Lender, Ben Harlev and Eyal Epstein (together, "**Defendants**"). A copy of the Complaint is attached hereto as **Exhibit A**.

9.  Responses to the Complaint are due on January 18, 2022.

10. The Complaint alleges a variety of misdeeds by the Defendants, ultimately charging six counts, all of which are premised on acts the Lender took in exercising the Pledge, the legitimacy of Debtor's bankruptcy filing, and by clear implication, the decisions of this Court. The Complaint alleges, *inter alia*, that Defendants intentionally deceived Moskovits and Lichtenstein by "forcing a default and executing on the Membership Pledge[.]" Complaint ¶ 28. Moskovits and Lichtenstein claim the Defendants' actions (via Lender) were wrongful, improper, and designed to damage Moskovits and Lichtenstein. *See generally*, *Id*. As this Court and

---

Lichtenstein are represented by and have appeared in this case through Offit Kurman, P.A., most recently through Docket No. 182.

#10860604 v1 \029220 \0005

4

both Lichtenstein and Moskovits are unquestionably aware, in its denial of the Dismissal Motions, this Court has held that the Bankruptcy Case was properly commenced, that the actions the Lender took were appropriate, and that the Lender had the legal right to exercise the Pledge. *See generally*, citations to Transcript from hearing on August 30, 2021 ("**8/30/21 Transcript**") and Transcript from hearing on November 16, 2021 ("**11/16/21 Transcript**"), *infra*.

## Relief Requested

11.     Movant requests that the Court hold Moskovits and Lichtenstein in contempt for filing the Florida Lawsuit, which is based upon claims Moskovits and Lichtenstein know are false and which have been fully and finally adjudicated by this Court. Movant suggests that the sanction for this contempt be tailored by this Court to prevent Moskovits and Lichtenstein from prosecuting the Florida Lawsuit, or requiring that they withdraw the Florida Lawsuit.

12.     Movant also requests the Court award sanctions against Moskovits and Lichtenstein for this instance of what has become a pattern of flagrant violations of this Court's authority, both in their individual capacity and through Development, and the concomitant damage to the Debtor's Estate by needlessly and perniciously increasing the administrative cost of this case.

## Basis for Relief

**A.  Moskovits and Lichtenstein Should Be Held in Contempt for Filing the Florida Lawsuit**

13.  This Court has already found that the Borrower defaulted under the Pledge, the Pledge was valid, Lender's exercise of the Pledge was proper, the appointment of the manager was proper, and the filing of Debtor's bankruptcy petition was valid. *See generally*, 8/30/21 Transcript; 11/16/21 Transcript. In bringing the Florida Lawsuit, Moskovits and Lichtenstein are challenging in another forum core and essential ruling of this Court that are central and inextricably bound to this Court's jurisdiction and supervision and administration of this Bankruptcy Case. Moskovits and Lichtenstein should be held in contempt for filing their lawsuit, which is premised on patently false statements and blatantly disregards and challenges the jurisdiction and orders of this Court.

14.  In the Complaint, Moskovits and Lichtenstein make various statements and allegations involving the Pledge, Lender's execution under the Pledge, the appointment of Mr. Buchwald as manager, and the filing of the bankruptcy, asserting these actions were part of an improper scheme which damaged Moskovits and Lichtenstein. These statements, detailed below, are incorporated by reference and relied upon for every count included in the Complaint (*see*, Complaint ¶¶ 55, 64, 73, 83, 100, and 107):

#10860604 v1 \029220 \0005

a. Defendants "utilized the Pledge … and a corresponding Assignment of its Membership Interests to wrongly and involuntarily thrust 286 Rider Ave Acquisition into bankruptcy" (Complaint ¶ 37);

b. Defendants "through their nominee company filled in its own name on the Assignment of Member Interests" (Complaint ¶ 38);

c. Defendants "executed the lynchpin of their scheme when Defendants … engaged a person chosen by them as manager of 286 Rider Acquisition [*sic*] and authorized him to file the *286 Rider Bankruptcy*" (Complaint ¶ 39);

d. By effectuating the assignment, transfer, and registration of interests in the Debtor to a company under their control, Defendants "wrongfully attempt[ed] to take assets roughly worth double the $8,000,000 in loan principal" (Complaint ¶ 41); and

e. Defendants made "false statements" including in (a) the initial Statement of Financial Affairs, where Defendants "declared that they were the absolute owner of 286 Rider Acquisition [*sic*] with the authority to file a Bankruptcy in the name of the company" (Complaint ¶ 43(a)), implying that the authority to file the bankruptcy derived from the "absolute ownership" of the Debtor's equity and was therefore invalid, rather than deriving from Lender's control of the Debtor after exercising its rights under the Pledge; and (b) the Amended Statement of Financial Affairs, listing 286 Rider Ave Lender LLC as "Managing Member" of

Debtor, which title is allegedly impermissible under New York law, again implying that the authority to file the bankruptcy derived from authority granted a Managing Member, and therefore the filing was invalid, again ignoring Lender's control of Debtor after exercising its rights under the Pledge as the operative grant of authority.

15. In addition, several counts in the Complaint explicitly deal with issues directly ruled on by this Court. For example, *Count VI – Abuse of Process* alleges that, in this bankruptcy case, Defendants filed "false and fraudulent filings as detailed *supra*" (Complaint ¶ 109). The "detail" includes allegations that Defendants engaged in a "scheme to ultimately take ownership in the 286 Rider real property" (Complaint ¶ 37), which "scheme" is essentially the laundry list above.

16. Additional explicit examples include *Count I – Civil Conspiracy*, which alleges that Defendants "did take, use, dissipate and ultimately destroy the corporate business and assets of [] Moskovits and Lichtenstein" (Complaint ¶ 59); and *Count V – Tortious Interference With Advantageous Business Relationship*, which alleges Defendants "knowingly and without justification interfered with those advantageous and prospective business relationships [including Moskovits's and Lichtenstein's relationship as owner and member of the Debtor], by engaging in a scheme to defraud the companies to harm and damage [Moskovits and Lichtenstein]" (Complaint ¶ 104).

17. These statements are used to support and provide "evidence" of Defendants' wrongdoing. Moskovits's and Lichtenstein's assertion is that these actions were wrongful or illegal, and therefore legally substantiate the Complaint.

However, each of these actions has been explicitly considered by this Court, which has ratified and approved of the actions taken. In other words, each of these counts requires consideration of issues concerning claims determined by this Court to be false. To whit, the Court has found:

    a. "The lender properly obtained a pledge of the membership interest at the time that the loan was made under the pledge agreement, the certificate, and assignment of interest." 8/30/21 Transcript, p. 66:12–15.

    b. "The loan matured on March 1st, 2021, and it's unpaid. According, the lender validly exercised its rights under the pledge agreement and became of the owner as of April 27th, 2021 of all the membership interest in the debtor. The lender subsequently transferred the interest of such membership interest to an affiliate, the new owner, on June 14th, 2021." 8/30/21 Transcript, p. 67:8–13.

    c. "[T]he Court finds that Section 5(a) of the pledge agreement . . . allows the lender, . . . by exercising its pledge rights, its right under the pledge agreement, to take over the membership interest[s] . . . that were held by Development, because of the events of default having occurred and been continuing, that the lender, then, had all voting, all equity, membership, and other rights pursuing to the membership interest." 8/30/21 Transcript, pp. 71:19–25 to 72:1–2.

    d. "[L]ender . . . steps into certain rights contractually under the pledge agreement of the membership and with respect to the membership

  interest and then has the right contractually, because the parties have agreed to it, in this pledge agreement to take certain actions, and that's what occurred here and that's what my decision says." 11/16/21 Transcript, p. 17:19–25.

e. Because Lender "had such a right to act as the manager, because it was the member, and obviously the party it assigned those rights to could then, therefore, also act in that role . . . ." 8/30/21 Transcript, p. 73:16.

f. "So the pledge agreement itself in 5(a) basically says that if an event of default shall be continuing, occur and be continuing, then all membership interests may be registered in the name of the lender or its nominee. And the lender has the rights to exercise all voting, equity in membership, and other rights pertaining to the membership interest. So I'm finding that that has occurred, that there's an event of default that's occurred and then continuing, and that the lender has the right or its nominee to exercise all voting equity in membership and other rights pertaining to the membership interest." 8/30/21 Transcript, p. 75:13–22.

g. "I am going to deny the request for the appointment of the trustee or the examiner and deny the motion requesting the same. I find that there has not been sufficient evidence that there has been cause demonstrated here, including fraud, dishonesty, incompetence, or gross mismanagement (indiscernible) by the Debtor or by current

        management in accordance with Section 1104(a)(1)." 11/16/21 Transcript, p. 93:15–21.

    h. "The debtor chose to file for Chapter 11. The Court finds that this is a voluntary filing and not an involuntary filing under Section 303." 8/30/21 Transcript, p. 18–20.

18.   All relevant orders in this case are final, and the 14 day period to appeal under Bankruptcy Rule 8002(a)(1) has expired for each.[3] Moskovits and Lichtenstein should not be permitted to continue to prosecute the Florida Lawsuit premised on claims dispositively ruled on in the bankruptcy, and should be held in contempt for doing so.

19.   The Court's contempt power permits the Court to enforce its orders. Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). This provision is used to support the proposition that, among other things, the Bankruptcy Court always has authority to enforce its rulings. *See*, *In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 97 (2d Cir. 2005) (*citing In re Petrie* Retail,

---

[3] The only orders for which the 14 day appeal period has not expired are the order approving debtor in possession financing [Docket No. 175, entered November 23, 2021] and the order shortening notice to consider the bid procedures [Docket No. 177, entered November 24, 2021]. Development has filed an appeal of the *Order Denying Motion of 286 Rider Ave Development LLC to Alter or Amend the Judgment under Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 50(e)* [Docket No. 69].

#10860604 v1 \029220 \0005

Inc., 304 F.3d 223, 230 (2d Cir. 2002)) ("Bankruptcy courts retain jurisdiction to enforce and interpret their own orders."); *see also*, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009) ("[A]s the Second Circuit recognized ... the Bankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior orders.") (citation omitted). Section 105(a) is also used explicitly to support the proposition that a bankruptcy judge's power to enforce their own orders is by finding violators in civil contempt of court. *Ngang Gung Restaurant v. Official Comm. of Unsecured Creditors of Ngang Gung Restaurant (In re Ngang Gung Restaurant)*, 1996 U.S. Dist. LEXIS 18877, *9 (S.D.N.Y. 1996) ("Although the Court of Appeals for the Second Circuit has not explicitly addressed the scope of the bankruptcy court's contempt powers, the majority of courts to confront this issue agree that in core proceedings bankruptcy courts have civil contempt power pursuant to 11 U.S.C. § 105."); *see also*, *In re Ionosphere Clubs, Inc.*, 171 Bankr. 18, 21 (S.D.N.Y. 1994); *In re Walters*, 868 F.2d 665, 670 (4th Cir. 1989) ("We believe that when a bankruptcy court uses civil contempt to enforce a proper order that such power under Northern Pipeline is also 'incidental to Congress' power to define the right that it has created.'").

20. This Circuit has long held that "The equitable power conferred on the bankruptcy court by section 105(a) is the power to exercise equity in carrying out the provisions of the Bankruptcy Code . . . ." *New England Dairies Inc. v. Dairy Mart Convenience Stores Inc. (In re Dairy Mart Convenience Stores Inc.)*, 351 F.3d 86, 92 (2d Cir. 2003). Here, section 105 relates to this Court's core and essential finding that

#10860604 v1 \029220 \0005

12

the Bankruptcy case was validly commenced under section 301 of the Bankruptcy Code, which provides: "A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter." 11 U.S.C. § 301(a). This finding was upheld twice by this Court when it denied each of Development's dismissal motions, when it denied Development's motion for the appointment of a Trustee, and when it denied Development's motion to terminate exclusivity. Basically by all the orders entered in this Case.

21.    Moskovits and Lichtenstein are thumbing their collective noses at this Court hoping for a more favorable decision in another forum. Moskovits and Lichtenstein are clearly abusing the judicial process and overtly and contemptuously challenging orders and decisions of this Court. This Court should utilize its jurisdiction and enforce its own rulings to prevent Moskovits and Lichtenstein from continuing to prosecute the Florida Lawsuit, relying on this Court's power of civil contempt under section 105(a) of the Bankruptcy Code to compel compliance and compel the withdrawal of the Florida Lawsuit. *See, e.g., Matter of Carroll*, 850 F.3d 811, 815 (5th Cir. 2017) (holding that federal courts have authority under Section 105 and the All Writs Act to "enjoin vexatious litigants" in a case where "the bankruptcy court determined that "the Carrolls' true motives [were] to harass the trustee and thereby delay the proper administration of the estate in the hope that they would be able to retain their assets, or make pursuit of the assets so unappealing that the

trustee would be compelled to settle on terms favorable to the [appellants]"); *In re Kristan*, 395 B.R. 500, 511 (1st Cir. B.A.P. 2008) (same).

**B.  Alternatively, This Court Should Enjoin the Florida Lawsuit From Proceeding Under its Inherent Powers**

22.   The is no question but that the Florida Lawsuit is a direct assault on the integrity of this Court's decisions and orders. The ability of a bankruptcy court, or indeed, any federal court, to protect the integrity of and prevent abuse of its process has been recognized for hundreds of years, including under the prior Bankruptcy Act, today through section 105 of the Bankruptcy Code, and through the All Writs Act embodied in 28 U.S.C. § 1651.

23.   Title 28 of the United States Code, at section 2283, provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court ***except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.***

28 U.S.C. § 2283 (emphasis supplied). This provision makes it clear that this Court has authority to enjoin the Florida Lawsuit under section 105 of the Bankruptcy Code or the All Writs Act, which are within the injunction exceptions noted 28 U.S.C. § 2283 as "expressly authorized by Act of Congress" and where necessary "to protect or effectuate its judgments." The two relevant "Act[s] of Congress" providing the Court's authority are examined below.

24.   First, section 105 of the Bankruptcy Code allows a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." 11 U.S.C. § 105; *see, e.g., In re Michael*

#10860604 v1 \029220 \0005

14

*Bahary & Steven Bahary P'ship*, 528 B.R. 763, 775 (Bankr. N.D.Ill. 2015). As noted above, utilization of section 105 is appropriate to protect this Court's finding of jurisdiction under section 301(a) of the Bankruptcy Code and the Dismissal Orders.

25.   Second is the All Writs Act, which permits federal courts to ". . . issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Despite the express "aid of … jurisdiction," language, the All Writs Act allows the issuance of injunctions to protect that court's judgments. *Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir. 1993); *Ward v. Pennsylvania New York Cent. Transp. Co.*, 456 F.2d 1046, 1048 (2d Cir. 1972); *Olin Corp. v. Insurance Co. of North America*, 807 F. Supp. 1143, 1152 (S.D.N.Y. 1992). Moreover, and relevant here, it permits federal courts "to safeguard not only ongoing proceedings, but potential future proceedings, as well as already-issued orders and judgments." *Klay v. United Healthgroup, Inc.*, 376 F.3d, 1092, 1099 (11th Cir. 2004) (*citing, inter alia, ITT Community Development Corp. v. Barton*, 569 F.2d 1351, 1359–60 (5th Cir. 1978) (the All Writs Act permits a federal court to issue any order "necessary to enable the court to try the issues [in a pending case] to final judgment" and "develop the material issues and to bring them to a complete resolution"); *Heckler v. Redbud Hosp. Dist.*, 473 U.S. 1308, 1313 (1985) (a court may issue an injunction under the All Writs Act to "preserve the status quo while administrative proceedings are in progress . . . to prevent impairment of the effective exercise of appellate jurisdiction"); *United States v. New York Tel. Co.*, 434 U.S. 159, 171 (1977) (the Supreme Court has "repeatedly recognized the power of a

federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued"). The judgments necessary of protection are the rulings and orders on the Dismissal Motions and preservation of the integrity of this Court's own judicial process.

26. This Court should invoke its authority under 28 U.S.C. § 2283 by way of 11 U.S.C. § 105 or the All Writs Act to protect or effectuate its Dismissal Orders and section 301 of the Bankruptcy Code, and enjoin the Florida Lawsuit from proceeding. *See*, *In re Zimmermann*, 66 F.2d 397, 399 (2d Cir. 1933) ("No doubt the court in bankruptcy or equity may enjoin proceedings elsewhere in order to protect its decrees").

**C.   Moskovits and Lichtenstein Should be Sanctioned for Their Blatant Disregard of Orders of This Court**

27. To hold a party in civil contempt, the movant must establish a knowing violation of a sufficient, specific, and precise order and knowledge of such order. *See*, *Fidelity Mortg. Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 51 (2d Cir. 1976), *cert. denied*, 429 U.S. 1093 (1977). "Willfulness is not required and intent is irrelevant because of the remedial and coercive nature of civil contempt." *Shillitani v. United States of America*, 384 U.S. 364, 368 (1966); *In re Damon*, 40 B.R. 367, 374 (Bankr. S.D.N.Y. 1984). The standard to apply to determine whether there is contemptuous activity is clear:

> [i]n order to hold the alleged contemnor in contempt, the court need only (1) have entered a clear and unambiguous order, (2) find it established

#10860604 v1 \029220 \0005

16

by clear and convincing evidence that that order was not complied with, and (3) find that the alleged contemnor has not clearly established his inability to comply with the terms of the order.

*Huber v. Marine Midland Bank*, 51 F.3d 5 (2d. Cir. 1995).

28. Additionally, bankruptcy courts have "inherent authority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons." *In re 680 Fifth Ave. Associates*, 218 B.R. 305, 323 (Bankr. S.D.N.Y. 1998).

29. Here, Moskovitz and Lichtenstein knew intimately of the Court's rulings and the Dismissal Orders, being the driving forces behind motions denied in the Dismissal Orders. Notwithstanding, Moskovitz and Lichtenstein filed the Florida Lawsuit seeking to relitigate issues already decided in the Dismissal Orders and also on appeal before the District Court. The Dismissal Orders and the rulings of the Court are clear and unambiguous, especially since the Court has addressed the same issues on multiple occasions. The Complaint evidences Moskovits and Lichtenstein's wanton failure to comply with the orders, as well as their bad faith, as the Complaint simply appears to be an attempt to harass the Defendants in another forum.

30. This Court needs to end the repeated costly attacks by Development and its principals, Moskovits and Lichtenstein and protect the integrity of its orders and rulings, otherwise Moskovits and Lichtenstein's inappropriate behavior will continue unfettered and unabated. Imposing sanctions will discourage Moskovitz and Lichtenstein from further attempts at end-runs around this Court's jurisdiction.

#10860604 v1 \029220 \0005

**Notice**

31.   Movant will provide notice of this Motion to the following parties and/or their respective counsel, as applicable: (i) the Debtor, (ii) the Office of the United States Trustee for the Southern District of New York, (iii) Toby Moskovits and Michael Lichtenstein (and their counsel in both this bankruptcy case and the Florida Lawsuit), (iv) 286 Rider Ave Development, LLC, and (v) any such other party entitled to notice pursuant to Rule 9013–1(b) of the Local Bankruptcy Rules for the Southern District of New York or that requests notice pursuant to Bankruptcy Rule 2002. Movant submits that in light of the nature of the relief requested, no other or further notice need be given.

**Local Rule 9013–1(a) Statement**

32.   This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, Movant submits that this Motion satisfies Local Rule 9013–1(a).

**No Prior Request**

33.   No prior request for the relief sought herein has been made to this Court or any other court.

**Consent to Jurisdiction**

34.   Movant hereby consents to the entry of a final judgment or order in connection with this Motion if it is determined that this Court cannot—absent the

#10860604 v1 \029220 \0005

consent of the parties—enter such final judgment or order consistent with Article III of the United States Constitution.

**WHEREFORE,** the Debtor respectfully requests that the Court hold Moskovitz and Lichtenstein in contempt, award sanctions against Moskovitz and Lichtenstein, and grant such other and further relief as is just and proper including requiring Moskovits and Lichtenstein to withdraw the Florida Lawsuit, or, in the alternative, enjoining the Florida state court.

Dated: New York, New York
        December 13, 2021

MORRISON COHEN LLP

By: /s/ Joseph T. Moldovan
    Joseph T. Moldovan, Esq.
    David J. Kozlowski, Esq.
    909 Third Avenue
    New York, New York 10022
    (212) 735-8600

*Attorneys for Be-Aviv 286 Rider LLC*

#10860604 v1 \029220 \0005