MAYER BROWN LLP
Douglas Spelfogel
Leah Eisenberg
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Facsimile: (212) 506-1910

*Special Counsel to 286 Rider Ave Development LLC*

OFFIT KURMAN, P.A.
Jason A. Nagi
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900

and

Joyce A. Kuhns, Esq. (Admitted *Pro Hac Vice*)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
Tel (410) 209-6463

*Attorneys for 286 Rider Ave Development LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ***In re:*** | **Chapter 11** |
| **286 Rider Ave Acquisition LLC** | **Case No. 21-11298 -(LGB)** |
| **Debtor.** | |

**NOTICE OF PAYOFF AND CONFIRMATION OF WIRE**

Attached hereto is a copy of Payoff Letter, together with wire transfer confirmation in the amount of $11,918,974.12.

Dated: January 11, 2021
New York, New York

Respectfully submitted,

By: *_/s/ Douglas Spelfogel___*
Douglas Spelfogel
Leah Eisenberg
Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Facsimile: (212) 506-1910
Email: dspelfogel@mayerbrown.com
leisenberg@mayerbrown.com

*Special Counsel to 286 Rider Ave Development LLC*

**OFFIT KURMAN, P.A.**

Jason A. Nagi
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900
Email: jason.nagi@offitkurman.com

and

Joyce A. Kuhns, Esq. (Admitted *Pro Hac Vice*)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
Tel (410) 209-6463
Email: jkuhns@offitkurman.com

*Attorneys for 286 Rider Ave Development LLC*



Attorneys At Law

Trust. Knowledge. Confidence.

**Jason A. Nagi**
Principal
212.380.4108
jason.nagi@offitkurman.com

January 11, 2022

**By Email**

BeAviv Lender LLC
c/o Joseph Moldovan, Esq.
Morrison & Cohen LLP
909 Third Avenue
New York, NY 10022

Re: Payoff of Loan to 286 Rider Ave Acquisition LLC, in the original principal amount of $8,000,000.00

Dear Mr. Moldovan:

As you know, this firm is counsel to 286 Rider Ave Development LLC ("**Development**"), Toby Moskovits and Y. Michael Lichtenstein (collectively the "**Payors**"). Reference is made to that certain Membership Interest Pledge Agreement dated as of September 19, 2019 (the "**Pledge Agreement**") between Development and Be Aviv 286 Rider LLC ("**Lender**"), that certain Promissory Note dated as of September 19, 2019, in the original principal amount of$8,000,000 (as amended, the "**Note**") made by 286 Rider Ave Acquisition LLC ("**Acquisition**") in favor of Lender, the Mortgage and Security Agreement dated as of September 19, 2019 (the "**Mortgage**") collateralized by the subject real property with an address of 286 Rider Avenue, Bronx, NY (the "**Property**"), and that certain Final Order (I) Authorizing Debtor to (A) Obtain Postpetition Financing and Utilize Cash Collateral Pursuant to 11 USC§ 105, 362, 363, 364(c)(1), 364(d), and 364(e) and Fed R. Bankr. P. 2002, 4001(c), 4001 (d), and 9014, (B) Granting Adequate Protection to Prepetition Secured Lender, (C) Modifying the Automatic Stay, and (D) Granting Related Relief, which was entered on November 23, 2021, [Dkt # 175], in the bankruptcy case styled *In re 286 Rider Ave Acquisition, LLC*, Ch. 11 no. 21-11298-lgb, pending in the United States Bankruptcy Court for the Southern District of New York, pursuant to which Acquisition obtained financing from the Lender under a debtor-in-possession loan (the "**DIP Loan Agreement**").

As you are aware, Development is the legal owner of 100% of the equity interests in Acquisition (the "**Acquisition Equity**") and, pursuant to the Pledge Agreement, Development pledged its interest in the Acquisition Equity as security for Acquisition's indebtedness to the Lender under the Note.



Attorneys At Law

Trust. Knowledge. Confidence.

We write to confirm that, this morning, my firm sent a wire  representing all obligations owed under the Note and DIP Loan Agreement in the amount of $11,918974.12 (the "**Payoff Amount**"), in accordance with the Payoff Notice you provided.  The Payoff Amount has been tendered in accordance with Development's redemption rights under N.Y. U.C.C. § 9-623, and redeems the Acquisition Equity from the Lender, in full and final satisfaction of all amounts owed to Lender under Note and DIP Loan Agreement.  (A copy of Lender's Loan Payoff Notice (the "**Payoff Notice**") is attached hereto as **Exhibit A**.)  Please note that, contrary to the Payoff Notice, the Payors have no obligation to release or dismiss any Actions as defined in the Payoff Notice, in order to fully redeem the Acquisition Equity under N.Y. U.C.C. § 9-623.

Rather, as you admitted on behalf of Lender as its counsel, in Lender's opposition to Development's motion confirming the disputed payoff amounts (the "**Payoff Opp.**") [Dkt # 233]:

> If the Lender indefeasibly *receives the full amount it is due in cash* and the *Lender's obligations under the DIP have terminated*, the *lien on the collateral would be released against the Debtor* and, by operation of law—not the Bankruptcy Code or a ruling by this Court—*the right to control and vote the interests of Development pursuant to the pledge of the Membership Interest terminates* and the Membership Interest and all appurtenant rights are returned to Development.

(A copy of Lender's Payoff Opp. is attached hereto as **Exhibit B**, at ¶20) (emphasis added). The Payoff Amount indefeasibly pays in full, all obligations under the Note and DIP Loan Agreement, resulting by operation of law in a release and termination of Lender's lien against the Property and termination of any right Lender ever had to control and vote the member interests of Development in the Acquisition Equity, and appurtenant rights which have immediately reverted to Development.

This letter and the payoff wire sent do not constitute a waiver of any claims or rights, which are expressly reserved.

Sincerely

Jason A. Nagi

cc:     Joyce A. Kuhns, Esq.
        Douglass Spelfogel, Esq.

4856-9741-2873,



January 09, 2022

286 Rider Ave Development LLC

C/O: Toby Moskovits

679 Driggs Avenue

Brooklyn, NY 11211

Loan Payoff Notice

To satisfy the above-captioned loan, the following total payoff amount ("Payoff") must be received by wire transfer by January 12, 2022 at 2:00pm EST.

| | As of 12/31/2021 | As of 01/12/2022 | |
|---|---|---|---|
| Outstanding Principal Amount | $8,000,000.00 | $8,000,000.00 | |
| Accrued and Unpaid Regular Interest | $842,308.21 | $870,430.88 | |
| Accrued and Unpaid Default Interest | $708,548.88 | $736,426.21 | |
| Exit Fee | $80,000.00 | $80,000.00 | |
| Legal Fees and Expenses | $1,376,957.93 | $1,477,004.48 | *1 |
| Total excluding DIP | $11,007,815.02 | $11,163,861.57 | |
| | | | |
| DIP Loan | $340,901.17 | $750,000.00 | *2 |
| DIP Loan Interst | $3,476.15 | $5,112.55 | |
| Total DIP | $344,377.32 | $755,112.55 | |
| | | | |
| **Grand Total** | **$11,352,192.34** | **$11,918,974.12** | |
| *1 | Includes estimate of Legal fees Jan 1-12th of $100,000.00 | | |
| *2 | Assuming DIP lender would fund up to $750,000 | | |

**Be advised that if there are any pending actions or litigation matters, including any appeals in the Bankruptcy Case, *In re 286 Rider Acquisition, LLC*, 21-11298-lgb, between or among the Lender or any of its officers, directors, employees, or agents, and the Borrower, 286 Rider Development LLC, Toby Moskovits, Yechial Michael Lichtenstein, or any of their agents, involving or relating to in any way 286 Rider Ave Acquisition, LLC ("Borrower") (collectively, "Actions") that have not been dismissed or withdrawn with prejudice at the time the Payoff is received, then the Lender is not obligated to accept the Payoff or if it elects to accept the Payoff, the amount received may be, at Lender's sole discretion, considered only a partial payment and the Lender's liens against the Borrower and control of the Membership Interest pledged by 286 Rider Ave Development LLC, shall be unaffected by the Payoff and shall continue to serve as security to secure the Lender's right to payment of any legal fees and costs incurred in connection with any of the Actions.**

Wiring Instructions:

Account Name: Be-Aviv 286 Rider LLC
Account Address: 123 5th Avenue, 4th Floor
New York, NY 10003
Account Number: 9434771900
Bank Name: Bank Leumi USA
Bank Swift Address: LUMIUSN
Bank ABA/Routing #: 026002794





Please note in additional info: RE: Loan Payoff

This loan payoff statement is subject to final verification by the note holder. The note holder reserves the right to adjust these figures and refuse or accept any funds which are insufficient to satisfy the full indebtedness for any reason. If the funds received for payoff are not sufficient to satisfy the full indebtedness of the above-captioned loan, any remaining balance will be deducted from the escrow/impound amount (if applicable). If funds are still not sufficient to satisfy the full indebtedness, the payoff funds will be returned. This delay will cost you (the borrower) additional interest, as interest continues to accrue on the indebtedness until the total amount required for payoff is received. In accordance with the terms of the applicable loan documentation, late charges will continue to be assessed in the event the loan is not current.

The present escrow/impound balance, if any, is subject to any required disbursement to be paid on or before receiving your loan payment in full. Amounts remaining in the escrow/impound will be refunded to the borrower.

Any escrow/impound balance or overpayment of the outstanding loan balance will be mailed to you (the borrower) within thirty (30) business days after the receipt and processing of the funds required to pay the above-captioned loan in full. If the loan to be repaid is a revolving line of credit, the issuance of this loan payoff statement signifies that any available balance under such revolving line of credit is and shall be frozen effective as of the date hereof. Any in- clearing items presented on or after the date hereof will be returned unpaid. Any payments made on or after the date hereof will be processed and any overpayments will be refunded within thirty (30) days of receipt and processing of the funds required to pay the above-captioned loan in full. If you decide to cancel this request, you are required to send written notification (see address above) requesting the reinstatement of your line of credit if applicable. In addition, please make sure all signors of the original note endorse this request. Please provide us with any changes of your (the borrower's) mailing address where the executed release/reconveyance documents should be sent. For any additional questions, please contact Joseph T. Moldovan at Morrison Cohen LLP, 212.735.8603.

**MORRISON COHEN LLP**
909 Third Avenue
New York, New York 10022
(212) 735-8600
Joseph T. Moldovan, Esq.
David J. Kozlowski, Esq.

*Attorneys for Be-Aviv 286 Rider LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **286 RIDER AVE ACQUISITION LLC,** | Case No. 21-11298-LGB |
| Debtor. | |

**BE-AVIV 286 RIDER LLC'S RESPONSE TO MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105(a) AND 541 OF THE BANKRUPTCY CODE CONFIRMING DISPUTED PAYOFF AMOUNTS, SATISFACTION OF DIP LOAN, AND FOR RELATED RELIEF**

Be-Aviv 286 Rider LLC ("**Lender**"), by its undersigned counsel, Morrison Cohen LLP, (a) files this response ("**Response**") to *Motion for Entry of an Order Pursuant to Sections 105(a) and 541of the Bankruptcy Code Confirming Disputed Payoff Amounts, Satisfaction of DIP Loan, and Related Relief* [Docket No. 218] ("**Motion**"), dated December 29, 2021, filed by 286 Rider Ave Development LLC ("**Development**"), and (b) joins in the response to the Motion filed by the Debtor. In support of this Response, Lender respectfully sets forth and represents as follows:

#10914654 v4 \029220 \0005

## Enough is Enough

1. It is critical before saying anything else to say what this motion is not: it is ***not*** a motion to pay off the Lender's debt. It is a motion to make a partial payment on account of the amounts owed by the Debtor to the Lender at some point in the future with an IOU. And, it is simply another attempt to derail the Auction.

2. First things first; at every hearing in this case, Development essentially says, "please grant us the relief we are requesting because we have the money to satisfy all claims against this Estate in full. Really and truly we do." In response, every time, the Court says, "show me the money." Development never does.

3. Now, Development comes back to the Court with a modified version of its prior pay off motion, *Motion for Entry of An Order Pursuant to Sections 105(a), 363, 364, 305(a), 349(b), and 1112(b) of the Bankruptcy Code, Authorizing Payoff of Lender Through Exit Refinancing, Claims Procedures, Subsequent Dismissal of This Bankruptcy Case, and Related Relief* ("**First Pay Off Motion**") filed last month [Docket No. 171].

4. In this new Motion, Development says, again, we have the money to satisfy all claims in this case. And one more time, because Development is nothing if not consistent, it does not show the money. In fact it does not even bother to trot out the worthless "commitment" it has previously shown to the Court.

5. The Court should not waste any time on this.

#10914654 v4 \029220 \0005

**The Court has been Divested of Jurisdiction to Consider the Motion**

6. Sensing that it is on shaky ground with this Motion, Development attempts to preempt the argument that its appeal of the Court's denial of the First Pay Off Motion ("**First Pay Off Motion Denial Order**") [Docket No. 199] does not divest this Court of jurisdiction to consider the Motion by characterizing the issues on appeal of that order "as the ability for Development to incur financing on behalf of the Debtor or Development's right to seek structured dismissal of this bankruptcy case." Motion ¶ 7, n. 4.

7. The problem with this argument is that the First Pay Off Motion requests similar if not identical relief and cites the same UCC provision: 9-623. The chart below shows the First Pay Off Motion requests and the similar if not identical requests in this Motion:

| First Pay Off Motion | The Current Motion |
|---|---|
| By this Motion, Development seeks to repay the allowed amounts due to Be-Aviv 286 Rider LLC (the "Lender"), together with all other allowed claims, in cash, and in full, as detailed more fully below. To this end, Development, together with its principals Toby Moskovits and Michael Lichtenstein (collectively with Development, the "Borrower Parties") have arranged for exit refinancing, which, together with an equity contribution, exceeds $12 million to fund such payments, which would be distributed to creditors under the protocol proposed herein following this | By this Motion, as detailed below, Development seeks, amongst other things, to confirm the pay off to the Lender in full, establish an escrow to pay all of the other allowed claims, and thus preserve and maximize millions of dollars in value for other creditors and Development, as 100% equity holder of the Debtor - - which same value would likely be lost in the impending auction sale. . . . (¶ 1.)<br><br>. . . Development, together with its principals Toby Moskovits and Michael Lichtenstein (collectively with Development, the "Equity Parties") has |

#10914654 v4 \029220 \0005

| | |
|---|---|
| Court's approval of the instant Motion. (¶ 1.) | arranged for and obtained a commitment for financing to be provided to Development (the "Payoff Financing") from the new lender (the "New Lender") in sufficient amounts to pay the Lender (and all other allowed claims) in full ***without*** first requiring that this Court enter an order granting the New Lender any interest in the Property or other assets of the Debtor's bankruptcy estate, nor is it requiring administrative claim status for the Payoff Financing. (¶ 4.) |
| Here, Development maintains the right to repay the debt due to the Lender in full pursuant to its unwaiveable rights under Article 9 of the Uniform Commercial Code. Specifically Section 9-623 of New York's adoption of the UCC preserves the right of any debtor (such as Development), any secondary obligor, or any other secured party or lienholder to redeem collateral by tendering an amount sufficient to fulfill all obligations secured by the collateral plus reasonable expenses and attorneys' fees chargeable under UCC Section 9-615(a)(1). N.Y. U.C.C. Law § 9-623 (McKinney). (¶ 24.) | It is also clear that Development's redemption rights remain in effect irrespective of any other actions the Lender has taken to date, including its purported exercise of voting rights (or, for that matter, its earlier false position that it took absolute title to the Debtor Equity, which it later contradicted by the filing of the second SOFA). Section 9-623(c) of the NY UCC expressly sets forth the right to redeem the collateral, and sets forth the events that would terminate Development's redemption right, and therefore its ownership of the Debtor Equity, none of which have occurred. *See, e.g. McMillen v. Drive Fin. Servs., L.P.*, No. CIV.A.03-2618-CM, 2005 WL 1041343, at *4 (D. Kan. Feb. 7, 2005), aff'd, 172 F. App'x 896 (10th Cir. 2006) (noting that UCC "gives a debtor the right to redeem collateral at any time before the secured party disposes of it" and that "actual ownership . . . does not shift from the debtor until the secured party disposes of it"). (¶ 13.)<br><br>Section 9-623 of New York's adoption of the Uniform Commercial Code (the "NY |

#10914654 v4 \029220 \0005

| | UCC") provides that "a debtor, any secondary obligor, or any other secured party or lienholder may redeem collateral." NY UCC § 9-623(a). Such collateral is to be released upon the tender of "the fulfillment of all obligations secured by the collateral" and certain reasonable expenses and attorney's fees. *Id.* § 9-623(b). (¶ 15.) |
|---|---|
| This may occur at any time prior to the disposition of the collateral, contracting for disposition of the collateral, or acceptance of the collateral in satisfaction of the debt, none of which have occurred to date. *Id.* Importantly, this redemption right may not be waived in the loan documents or at any other point prior to default. *Id.* § 9-624(c). (¶ 24.) | Redemption may occur at any time before the secured party has collected the collateral under NY UCC Section 9-607, disposed of or entered into a contract for the disposal of such collateral under NY UCC Section 9-610, or accepted such collateral in full or partial satisfaction of the obligation it secured under Section 9-622 of the NY UCC. *Id.* § 9-623(c). (¶ 15.) |
| By this Motion, Development is tendering payment in full to the Lender and, accordingly, its right to redeem the collateral—its equity interests in the Debtor and, by extension, the Debtor's interest in the Property—should be enforced. Id. § 9-623; *see In re Tidewater Finance Company v. Moffett (In re Moffett)*, 356 F.3d 518 (4th Cir. 2004) (confirming right to redeem collateral in bankruptcy at any time before the creditor disposed of it). (¶ 25.) | Development will be tendering payment in full to the Lender on or before January 13, 2022 pursuant to its right to redeem the Debtor Equity.[5] Specifically, Development will promptly remit to the Lender the full amount due in principal and interest on the prepetition debt to the Lender, principal and interest on the Lender's DIP financing facility, and reasonable attorney's fees and other expenses payable under NY UCC Section 9-615(a)(1) and this Court's prior orders. . . . (¶ 17.) |

8. And the provisions of the proposed order annexed to the First Pay Off Motion are virtually identical to the provisions in the proposed order annexed to the Motion:

#10914654 v4 \029220 \0005

| First Pay Off Motion Proposed Order | Motion Proposed Order |
|---|---|
| The Lender shall be paid and shall accept [$_______], comprising the full $8,000,000 principal amount of its Prepetition Claim, plus [$_______] in contract rate, non-default interest thereon, through the date of filing of the Motion, plus [$_______] in principal and interest on the DIP Loan, plus such additional amounts as may be allowed by the Court as provided hereunder, and which shall be subject to the Replacement Lien as defined below, in full and final satisfaction thereof (the "Closing Date Lender Payment"). (Proposed Order ¶ 3.) | "Within five business days of the entry of this Order, the Lender shall be paid and shall accept [$_______], comprising the full $8,000,000 principal amount of its Prepetition Claim, plus [$_______] in interest thereon, through the date of filing of the Motion, plus [$_______] in principal and interest on the DIP Loan (subject to confirmation of the amounts advanced under the DIP Loan) (the "P&I Payment"). (Proposed Order ¶ 2.)<br><br>Additionally, Development shall pay to Lender an amount of fees and expenses as determined by the Court (together with the P&I Payment, the "Redemption Amount"). (Proposed Order ¶ 3.) |
| Development, on behalf of the Debtor, may obtain the Exit Refinancing from the New Lender, the proceeds of which, after payment of the Closing Date Lender Payment, shall be held by a third-party escrow account with Riverside Abstract title company [or other nationally recognized bank] (the "Escrow Agent") subject to further distribution as set forth in this Order. (Proposed Order ¶ 4.)<br><br>The Escrow Agent shall hold the net proceeds of the Exit Refinancing and the Supplemental Capital after payment of the Lender Date Closing Payment in escrow for the payment of the Allowed Administrative Claimants, the Lender, and the Creditors as provided for under this Order. (Proposed Order ¶ 6.) | Development shall deposit into escrow ("Escrow") with the Court and/or a title company , the amount of $_____________, representing the amounts needed to satisfy all allowed claims in full. The Escrow shall only be released upon further order of the Court for the purposes of paying allowed claims as determined by the Court upon notice to all parties-in-interest, including Development, or upon written agreement of the Debtor, subject creditor, and Development, with any excess amounts held in the Escrow, after payment of all allowed claims in full, to be promptly repaid to Development. (Proposed Order ¶ 8.) |

9. Development has not filed a statement of issues on appeal, so right now, the entire First Pay Off Motion and the First Pay Off Motion Denial Order are on appeal. But even if Development tried to narrow the issues on appeal to carve out the issues raised above, it would be unavailing: either the issues will be on appeal, in which case this Court has been divested of jurisdiction, or the issues were not appealed, in which case the First Pay Off Motion Denial Order is a final order not subject to attack or appeal, and the decisions of the Court are now law of the case.

10. Bottom line, the Motion should not be permitted to go forward.

**The Motion Does Not Propose to Pay The Lender**
**<u>In Full Before the Auction</u>**

11. Development is trying to buy a postponement of the Auction on the cheap.

12. Development does not propose to pay the Lender anything on account of post-petition interest, legal fees, or costs.

13. The Proposed Order is also silent about when Development will pay the Lender's legal fees and costs.

14. The Motion does not provide any evidence of Development's ability to pay anything.[1]

---

[1] This argument is without prejudice to any argument the Debtor may make regarding whether the amounts proposed to be paid by Development are enough to pay the remaining claims in the bankruptcy case in full (including administrative claims through entry of a final decree) and, if they are not, that the Auction sale must proceed as scheduled to provide liquidity to satisfy those claims.

15. This Court rejected virtually the same proffer when it denied the First Pay Off Motion. Nothing in the Motion should cause the Court to change its mind.

**<u>Development Seeks Relief This Court Cannot Grant</u>**

16. Even if this Court were to conclude that it had not been divested of jurisdiction because of the appeal, it nevertheless lacks jurisdiction to grant Development a key component of the relief requested. Development states:

> Development will be exercising its right to redeem its equity interest in the Debtor ("Debtor Equity"), by tendering payment in full of all allowed amounts due to the Lender, ***and pay or deposit into escrow with the Court, sufficient sums to cover payment of all allowed claims in full by January 13th, 2022***.
>
> Motion ¶ 11 (emphasis added).

17. Basically, Development is asking the Court to compel the Lender to release the Membership Interest so that Development can manage the Bankruptcy Case before the Lender has actually been paid. *See* Motion ¶ 25. This relief is beyond the ability of this Court to grant.

18. The Pledge is a contractual relationship between two non-debtors. Neither the Pledge nor the Membership Interests which collateralize it are assets of the Estate. It, as the Court has already held, provides the Lender with certain rights. These rights are creatures of contract and state law, not the Bankruptcy Code, which enable the Lender to control the Debtor in the Bankruptcy Case. As a consequence, this Court does not have the jurisdiction to do what Development wants and Development appears to acknowledge this:

#10914654 v4 \029220 \0005

> Nor does the fact that the Debtor is a chapter 11 debtor affect the analysis of Development's redemption rights. Development is not asserting any rights to property owned by the Debtor, including any redemption rights owned by the Debtor with respect to the Property or its other assets. Instead, Development is asserting rights in its own property, the Debtor Equity, which is indisputably not property of the Debtor's bankruptcy estate.

Motion ¶ 20.

> Indeed, because only non-bankruptcy rights of non-Debtor parties are directly affected, Development's proposed payoff of the Lender could typically be effectuated without the need for this Court's involvement at all. However, this Motion is being filed for several reasons that justify a ruling from this Court.

Motion ¶ 21.

19. The flaw in this argument is that Development cannot just manufacture a Court's subject matter jurisdiction to provide as Development desires "this Court's involvement." A court either has subject matter jurisdiction or it does not. And with respect to this issue, this Court does not.

20. To be sure, this Court's power to determine claims allows it to fix the amount owed the Lender on account of both the Loan and the DIP Loan—these are claims against the Estate. If the Lender indefeasibly receives the full amount it is due in cash and the Lender's obligations under the DIP have terminated, the lien on the collateral would be released against the Debtor and, by operation of law—not the Bankruptcy Code or a ruling by this Court—the right to control and vote the interests of Development pursuant to the pledge of the Membership Interest terminates and the Membership Interest and all appurtenant rights are returned to Development.

#10914654 v4 \029220 \0005

But this Court cannot compel the Lender to release the Membership Interest or the Lender's exercise of its rights thereunder until it has been indefeasibly paid in full in cash.

21. Development asserts that "tender" is made by "providing an assurance of prompt payment in full." In support of this incorrect statement, it cites a prior pleadng it submitted as authority. Motion ¶ 17, n.5. It is true that there is a statement cited by Development in its prior submission to the Court. This statement cites nothing of consequence or apposite to the case at bar, and is wrong.

22. Tender, as a matter of law, is not satisfied by the conditions Development seeks to impose. As stated in the Official Comment to the Uniform Commercial Code:

> To redeem the collateral a person must tender fulfillment of all obligations secured, plus certain expenses. If the entire balance of a secured obligation has been accelerated, it would be necessary to tender the entire balance. ***A tender of fulfillment obviously means more than a new promise to perform an existing promise. It requires payment in full of all monetary obligations then due and performance in full of all other obligations then matured***. If unmatured secured obligations remain, the security interest continues to secure them (i.e., as if there had been no default).

N.Y. U.C.C. Law § 9-623, Official Comment 2 (emphasis added); *see, e,g,*, *In re Gatson*, No. 04-22668, 2006 Bankr. LEXIS 4187, at *7 (Bankr. N.D. Ohio Apr. 21, 2006); *In re Johnson*, 328 B.R. 234, 236 (Bankr. M.D. Fla. 2005); *see also*, Black's Law Dictionary 1507 (8th ed. 2007) (Tender is defined as "A valid and sufficient offer of performance;

#10914654 v4 \029220 \0005

specif., an ***unconditional*** offer of money . . . to satisfy a debt or obligation . . . ." (emphasis added).

23. Development, a serial breaker of promises, asks the Court to allow it to make another promise and to pay the Lender what already promised the Lender it would pay when it signed the Note and what is indisputably owed—tomorrow. That just will not work. Tender here means the delivery to the Lender of the cash necessary to pay off the debt in full including all interest, fees, and costs.

24. The Lender has provided Development with an updated calculation of all amounts owed that it must pay to redeem its Membership Interests—its pledged collateral—from the Pledge. If Development wires this amount in full to the Lender, then the Lender's Debt is satisfied. If Development does not, then the Debt remains and the Auction must proceed.

25. As the Debtor's response suggests, despite the potential for the redemption of Development's collateral from its Pledge made to the Lender, absent a deposit with the Debtor of sufficient funds to satisfy the administrative and other creditors of the estate, whose claims are approaching $2 million, inclusive of the substantial increase in the Debtor's professional fees solely resulting from Development's vexatious litigation, the Auction sale must still go forward so the Debtor will be able to sell the property to pay the remaining creditors of the estate.

**<u>Conclusion</u>**

26. As previously stated, the Lender would like nothing better than to be paid off in full on account of all of the obligations of the Debtor under the Loan and

under the DIP facility and to stop spending its time and money on unproductive litigation. To this end, the Lender and the Debtor have engaged in good faith discussions with Development. Putting aside that while these discussions are going on, Development, Lichtenstein, and Moskovits are filing frivolous motions, appeals, and a lawsuit in Florida, there seems to be one unresolvable stumbling block: Development just does not have the money to make any kind of a deal. It keeps saying it does, but it does not. If it did, it could show us the money and this case would be over already.

27. In its response to the First Pay Off Motion [Docket No. 185], the Lender proposed a fairly simple solution to the requests before the Court. It called this "Cutting the Gordian Knot." Apparently even this was too complicated and unacceptable to Development, so the Lender will try one more time with an even simpler solution:

a. Development wires $12,750,000 into Debtor's counsel's escrow account on or before January 13, 2022.[2]

b. Upon receipt of the wire transfer, the Auction is then adjourned without date.

c. Within 5 days of when the $12,750,000 is received by the Debtor, the Lender files with the Court (i) its statement of amounts due under the Loan and the DIP Facility ("**Statement**") and (ii) a redacted statement supporting all

---

[2] Robinson Brog will provide wire instructions.

#10914654 v4 \029220 \0005

of its attorney's fees and costs; the Lender will also submit a non-redacted statement of attorney's fees and costs for the Court to review *in camera*.

d. Any party may object to the Statement no later than 3 days after the Statement is filed on the record.

e. The Court will hold a hearing to hear and resolve any objections 7 days thereafter (subject to the Court's convenience).

f. Upon determination by the Court of the amount due the Lender and the entry of a payment order by the Court ("**Payment Order**"), such amount will be disbursed by the Debtor to the Lender in full satisfaction of the Lender's Debt and amounts owed on account of the DIP Facility ("**Payment**").

g. Upon receipt of the Payment, the Lender's lien is deemed released and the Pledge redeemed. The Lender is then no longer party to the case.

h. In the event any appeals are still pending or any appeal is taken of the Payment Order, then in the absence of a stay of the Payment, the Payment shall be made to the Lender, but the Payment shall be considered only a partial payment and the Lender's liens and control of the Membership interest shall remain as they are now so that they can secure the Lender's right to payment of any legal fees and costs incurred in connection with any appeals.

i. The balance of the funds in the Debtor's Counsel's escrow account will be used to fund the all actions needed to close the case, pay the Debtor's

#10914654 v4 \029220 \0005

professionals to complete the prompt administration of the estate, and satisfy all other allowed claims, and for no other purpose.

j. Management of the Debtor reverts to Development. Unless replaced pursuant to an order of the Court, the Debtor's existing professionals remain in place until the entry of a final decree.

28. The simple proposal outlined above is a viable alternative to the Auction that seems to trouble Development, and will provide a rapid conclusion to this Case, providing Development really has the money.

29. For all of the reasons stated above and in the Debtor's responsive papers to the Motion, Development's Motion should be denied.

**Joinder And Incorporation By Reference**

30. Lender respectfully joins in, adopts as its own, and incorporates by reference as if fully set forth herein the entire contents of the Debtor's responsive papers.

Dated: New York, New York
January 4, 2022

MORRISON COHEN LLP

By: /s/ Joseph T. Moldovan
Joseph T. Moldovan, Esq.
David J. Kozlowski, Esq.
909 Third Avenue
New York, New York 10022
(212) 735-8600

*Attorneys for Be-Aviv 286 Rider LLC*

#10914654 v4 \029220 \0005

**From:** Collins, Michael <michael.collins@offitkurman.com>
**Sent:** Tuesday, January 11, 2022 11:53 AM
**To:** Kuhns, Joyce <jkuhns@offitkurman.com>; Nagi, Jason <Jason.Nagi@offitkurman.com>
**Subject:** RE: 286 Rider Wiring Instructions

Here it is:

ent: 1/11/2022 11:44:54 AM

```
A Wire Payment has posted to your M&T Bank account.  Please refer to the following Wire confirmatior

OUTGOING  WIRE PAYMENT CONFIRMATION

ACCOUNT NUMBER -**************5259

OUTGOING MONEY TRANSFER                              $11918974.12
  REF1                               : 220111003265000
  REF2                               : 20220111B2Q8921C000833
  WIRE PAYMENT TYPE    : FEDWIRE
  FGN BANK REF NUM     : DGB99N0002529301

  SENDER                          : **************5259
                                         : OFFIT KURMAN PA-IOLTA ATTORNEY TRUS

  RECEIVING  BANK          : 026002794
                                         : BANK LEUMI USA

  BENEFICIARY                  : **************1900
                                         : Be-Aviv 286 Rider LLC
  ORDER CUSTOMER       : 9864865259
                                         : OFFIT KURMAN PA-IOLTA ATTORNEY TRUS
                                         : T FOR THE STATE
                                         : 300 E LOMBARD ST SUITE 2010
                                         : BALTIMORE MD 21202

  PAYMENT DETAIL          : Loan Payoff on behalf of
                                        : 286 Rider Development LLC
                                        : Toby Moskovits
                                        : Yechial Michael Lichtenstein

  VALUE DATE                    : 220111
  TIME                               : 11:44:53
  CURRENCY CODE          : USD
  FED REFERENCE           : 00833
```