**MORRISON COHEN LLP**
909 Third Avenue
New York, New York 10022
(212) 735-8600
Joseph T. Moldovan
David J. Kozlowski
Heath D. Rosenblat
jmoldovan@morrisoncohen.com
dkozlowski@morrisoncohen.com
hrosenblat@morrisoncohen.com

*Attorneys for Be-Aviv 286 Rider LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**286 RIDER AVE ACQUISITION LLC,**<br><br>Debtor. | Chapter 11<br><br>Case No. 21-11298-LGB |

**BE-AVIV 286 RIDER LLC'S RESPONSE TO SUPPLEMENT TO**
**DEVELOPMENT'S MOTION TO CONFIRM DISPUTED PAYOFF**
**AMOUNTS, SATISFACTION OF DIP LOANS, AND RELATED RELIEF**

Be-Aviv 286 Rider LLC ("**Lender**"), by its undersigned counsel, Morrison Cohen LLP, (a) files this response ("**Response**") to the *Supplement to Development's Motion to Confirm Disputed Payoff Amounts, Satisfaction of DIP Loan, and Related Relief* [Docket No. 272] ("**Supplement**"), filed on January 26, 2022, by 286 Rider Ave Development LLC ("**Development**"), and (b) joins in the response to the Supplement filed by 286 Rider Ave Acquisition LLC ("**Debtor**"). In support of this Response, Lender respectfully sets forth and represents as follows:

## PRELIMINARY STATEMENT

1. Development has again strayed from the path laid out explicitly and implicitly by the Court, the Debtor, Lender, and the U.S. Trustee, which would resolve this case simply and quickly to everyone's benefit and leave no loose ends. Rather than follow the clear instructions of the Scheduling Order (defined below) and from the Court at the hearings on January 12th and 21st, Development's Supplement is a poorly articulated but clear unilateral attempt to revise the Scheduling Order to comport with its own desires. The Court should not permit this continuing type of conduct.[1]

---

[1] The roadmap offered by the Court included, for example, full funding of an escrow for all unpaid expenses. Development instead, intentionally mis-paraphrases the Court, asserting the Court-ordered funding of the escrow was for "allowable administrative expenses." *Id*. at 3.c. In fact, Scheduling Order directed funding of an escrow "in an amount sufficient to pay in full all unpaid administrative expenses, including professional fees . . ." Scheduling Order, ¶8. Development's version changes the word "unpaid" to "allowable." This was clearly by design, as rather than escrowing all unpaid funds, reserving its right to challenge claims or disbursement of funds at a later date, Development's change would allow it to proceed in the reverse order, escrowing only the funds it ostensibly agreed with, and refusing to escrow any funds it did not unilaterally deem "allowable." *See*, *e.g*., Supplement, ¶¶ 6, 12–18. Development's intent is bolstered by its statement that it "should not be required to post a deposit to cover the overstated amounts." *Id*. at ¶14. The reason for requiring the escrow is simple—the Debtor currently has a stalking horse bidder willing to purchase the Debtor's property at an amount that will satisfy all claims asserted in this case, with interest. If Development wants the auction to be delayed, jeopardizing the sale, Development needs to establish that it has sufficient funds to achieve the same result. And because Development spent months claiming it had funds, but being unable to provide sufficient proof, the escrow must be established with a third-party institution with which the Court is comfortable. At the status conference on February 1, 2022 the Court rejected Development's "interpretation," correctly requiring funds to cover all asserted amounts be placed in escrow. Lender notes this is not the first time Development's side of the proverbial table has simply flouted the law in favor of its own opinions and determinations. This Court will remember the Rule 2004 Examination of Michael Lichtenstein, wherein Mr. Lichtenstein testified to responding to discovery requests for all documents of various categories by providing limited documents he determined, in his own opinion, were relevant. Lender believes the Debtor is still awaiting the production of some of these documents.

#10997178

2

2. In its Supplement, Development appears to seek certain relief relative to Lender that was not requested in its *Motion Confirming Disputed Payoff Amount, Satisfaction of DIP Loan, and for Related Relief* ("**Initial Payoff Motion**") [Docket No. 218]. Specifically, Development seeks: (i) a determination of Lender's secured claim under Section 506 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 ("**Bankruptcy Code**") (Supplement ¶3(a)); (ii) an order pursuant to Sections 364 and 503 of the Bankruptcy Code "fixing the unpaid amount of Lender's DIP claims at zero dollars" (Supplement ¶5); and (iii) an order directing Lender to provide "back-up for any fees and expense asserted by Lender with respect to the DIP Loan[,]" (*Id.*).

3. Development's apparent requested relief is predicated on a slew of Bankruptcy Code sections strung together in paragraph 4 of the Supplement supported by only a single inapposite case cite in a footnote. Based upon statements made to the Court at the hearing held on February 1, 2022 ("**Hearing**"), and emails sent from Development's counsel to Lender's counsel after the Hearing, Development is also asking for all of the detailed time records of Lender's counsel in connection with both the pre-petition and postpetition financing provided by Lender.

4. For the reasons stated below, Development is entitled to none of the relief requested relating to Lender: (i) Development is barred by the Voluntary Payment Doctrine under New York law from seeking to recover any of the fees it voluntarily paid Lender, (ii) has no right to review or object to any of Lender's fees incurred for the period after Lender received the Payment (defined below), or even

#10997178

prior to the receipt of the Payment, because of the express provisions in the DIP Order (defined below); and (iii) is barred by the DIP Order from challenging in any manner Lender's secured status or its liens.

5. Lender desires the orderly end to this case in a way that fully resolves all issues and terminates the relationships among the parties. The path of least resistance, and the path laid out by Lender, Debtor, the Court, and the U.S. Trustee, is via a consensual, full-pay plan. For this reason, the reasons identified below, the reason's identified in Lender's response to the Initial Payoff Motion, and the reasons in the Debtor's response to the Supplement—to which Lender joins—the relief sought in the Supplement and the Initial Payoff Motion should be denied.

## ARGUMENT

### I. *The Relief Sought by Development is Unclear and Improper*

6. Development's Supplement is not a supplement to the Initial Payoff Motion along the lines of the roadmap the Court provided, but rather, is a jumbled mish-mosh of previously unasserted claims for relief based on a simple string cite of Bankruptcy Code sections with no legal analysis. As a result, most, if not all, of the relief sought is not properly before this Court. The relief apparently sought in the Supplement was further muddied during the Hearing. For example, the Court initially made the following comment about the DIP Loan (defined herein):

> So I thought the first part of it was going to be determining if the DIP, you know, getting an accounting for the DIP, requiring that there be an accounting filed by the lender, determining that there had been full payment of the DIP, including whatever an estimate of the cost of a legal fees relating to the DIP, which would be then subject to an ability for

#10997178

4

> someone to review the records and have an opportunity to object to them and have me rule on the reasonableness of the fees and expenses associated with the DIP, and then determine that the DIP had been paid off in full and terminated based on the payment that was made by your clients. So that was sort of maybe my simplistic way of looking at things and saying that would be maybe issue one. Did I understand that correctly, just issue one?

Transcript of the Hearing ("**Transcript**") at 11:14–12:2. Mr. Spelfogel replied that the Court was correct. *Id*. at 12:3. Addressing the balance of Lender's claims, the Court commented it was unclear if this issue is being taken up in the Supplement:

> . . . because I don't think the drafting was very clear about this, although you cited to the right statute for it. I guess then, I go to the rest of Mr. Moldovan's client's claims. You know, and this is completely up to you on what you're seeking to do or not do because I think, in theory, there -- I will eventually have to determine Mr. Moldovan's full pre-petition claim if, for example, there's enough funds to pay it through the sale 22 process and how much Mr. Moldovan's client would be getting paid under the plan if Mr. Ringel's path were the path that the debtors filed for.

*Id*. at 12:14–24.

7. The Court next focused on Lender's other potential claims arising under that certain *Promissory Note*, dated September 19, 2019 ("**Note**"), given that there is pending litigation, including that in state court and the extant appeals in this case.[2] *Id*. at 13–14. The Court asks:

> . . . so the reason I'm asking this question is, what isn't in the supplement to me is a request for me to determine the allowed amount of Mr. Moldovan's pre-petition secured claim -- client's pre-petition

---

[2] Although Development comments that stipulations of dismissal for the state court actions have been provided to Lender's attorney, Development fails to note that these stipulations were drafted unilaterally by Development, are defective for multiple reasons, and, before the Supplement was even filed, were rejected by Lender. Development has also said it would adjourn all deadlines with respect to its appeal of the Bid Procedures Order, but has not.

#10997178

secured claim, as opposed to the DIP claim. So what were you intending there?

*Id*. at 14:11–5. Mr. Spelfogel responds that "the intent of the supplement is to address purely any amount of *additional* legal costs that has [*sic*] been asserted by Mr. Moldovan's client on account of the pre-petition claim." *Id*. at 14:18–21 (emphasis added).

8.  However, moments later, Mr. Spelfogel asks for new, additional relief and determinations not sought in the Supplement and contradictory to his previous statements.

> MR. SPELFOGEL: Back to Your Honor's question. So from what we understand, we haven't seen it yet, there is only one invoice run, which, and if this is wrong, I guess it will be clarified, but from what we understand, there's one run that shows legal for both the DIP and the pre-petition facility. We haven't seen that, but that's what we understand. Either way, we would ask and we'd be looking for Your Honor to address any dispute with respect to the amount that is asserted for actual time that's been spent on the pre-petition as well as the DIP facility.
>
> We do note that there was a $100,000 excess payment that was part of the payoff that was paid. We believe that that is not for Your Honor to decide today, we believe that that amount should occur with anything through the date of the payoff and the amounts after are not appropriate once the payment has been made. But notwithstanding, we are looking to get an accounting and the information with respect to both the DIP fees and any fees associated with the pre-petition. And then, to the extent that can't be resolved, to have Your Honor review that. We are not looking for the Court to weigh in on the redemption or any of the other issues, which again, we believe are outside of Your Honors scope and would be something that would be dealt with, if any, in a different court.
>
> THE COURT: Okay. Well, I agree with you that certainly the redemption is outside of my Court. No question about that. Obviously, Mr. Moldovan's client's allowed claim against the debtor is, or is not,

#10997178

outside of my Court. I think it's within my Court's perspective. But if all you're asking me to do with respect to their claim is weigh in on the legal cost amount, that is certainly something and the reasonableness of it that I can do under 506. I don't think there's any question about that.

I do think that technically the fees would need to be apportioned between the DIP and the pre-petition just because of the priorities associated with them. Technically, as strange as that is, but because we have a, you know, a DIP that has higher priority than the pre-petition and, obviously, I think any fees, my guess is that pretty much all the fees since the entry into the DIP would likely be DIP related and presumably the fees incurred before would not.

And your comments about amounts ending at the time of your payment, I just note I don't think that's right under the note. And I think that, realistically, if there has been further fees extended and Mr. Moldovan is telling you he's owed fees, you're going to have to put that amount up in the escrow. That doesn't mean it's going to come out or it's going to get paid, but in order to have sufficient funds for me to allow this case to proceed down this way and not have that asset sale, you're going to have to make sure that those fees are paid if in the end of the day I determine they're allowed. And that means the money is going to have to be up in the escrow.

So you need to figure out from Mr. Moldovan, at least as of some date, presumably the 8th, when you have to put the funds up, you need to know what you're talking about that's in excess and you need to put the money up in the escrow. Again, you know, money's not going to come out of the escrow unless there's an allowance and it's paid, but I just think, realistically, that's what I was telling you had to do. So I think that's just realistic there. So I'm just telling you that right now.

*Id.* at 15:15–17:24.

    9.    It is not clear from the Supplement or Mr. Spelfogel's comments exactly what relief Development seeks in the Supplement as to the Lender. Nor is it clear that the Court's comments at prior hearings noting Development *could* seek certain relief, meant that this relief could be sought simply by reference to Bankruptcy Code sections alone in a single string, thereby dispensing with the requirements of the

#10997178

Bankruptcy Code, Bankruptcy Rules, and the Local Rules concerning motion practice regarding these different forms of desired relief.

10. In short, the relief sought in the Supplement is unclear and not properly raised with this Court, and Lender objects to the same. Notwithstanding, and without waiving its objection that the requested relief is improperly brought, Lender responds in this Response to what it believes are the requests for relief asserted, and apparently (though not explicitly) asserted, by Development, as those requests pertain to Lender, and for the Court's consideration and determination.

## II. *Development is Barred by the Voluntary Payment Doctrine from Challenging, or Seeking an Accounting of, the Lender's Legal Fees Under the Loan and the DIP*

11. From its comments at the Hearing, Development apparently seeks a full accounting of Lender's legal fees both in connection with the Note and that certain *Mortgage and Security Agreement by 286 Rider Ave Acquisition LLC for the benefit of Be-Aviv 286 Rider LLC*, dated September 19, 2019 ("**Mortgage**," and with the Note, "**Loan**") and, also, that certain: (a) *Senior Secured Super-Priority Debtor-In-Possession Loan Agreement*, dated November 22, 2021 ("**DIP Loan**"), and (b) *Final Order (I) Authorizing Debtor To (a) Obtain Postpetition Financing and Utilize Cash Collateral Pursuant to 11 U.S.C. §§ 105, 362, 363, 364(c)(1), 364(d), and 364(e) and Fed. R. Bankr. P. 2002, 4001(c), 4001(d) and 9014, (b) Granting Adequate Protection to Prepetition Secured Lender, (c) Modifying the Automatic Stay, and (d) Granting Related Relief*, dated November 23, 2021 [Docket No. 175] ("**DIP Order**" and, with DIP Loan, "**DIP**"). In so doing, Development evidences its intent to challenge these

#10997178

fees in what would be an improper attempt to recover some of these fees from Lender. However, because of Development's own *voluntary* actions, it is **barred** from doing so.

12. As all the parties in this case are aware and agree, on January 11, 2022, Development—not the Debtor—made a *voluntarily* payment in the amount of $11,918,974.12 to Lender ("**Payment**") in response to a payoff letter ("**Payoff Letter**") [Docket No. 257] requested by Development from Lender on account both the Loan and the DIP.

13. The Payoff Letter provided a statement of the amounts owing, including the amount of all attorneys' fees incurred by Lender under the Loan and the DIP as of December 31, 2021, as well as an estimate of legal fees likely to be incurred as of January 12, 2022, the date requested by Development. Payoff Letter at pp. 5–6.

14. The Payment was accepted by Lender as a partial payment on account of amounts owed under the Loan and the DIP in accordance with the Payoff Letter.

15. Multiple times, this Court characterized the Payment as a "gift." *See*, Transcript from Hearing held on January 12, 2022, at 39:11–18 and 73:9–19. The Court presumably recognized that under the Voluntary Payment Doctrine under New York Law, the entirety of the Payment, including the legal fee component that was

#10997178

9

expressly reflected in the Payoff Letter, was no longer subject to challenge by Development and that no accounting for these fees would be warranted.[3]

16. Succinctly stated, the long-established Voluntary Payment Doctrine under New York law bars Development from recovering any payment it voluntarily made to the Lender "with full knowledge of the facts, and in the absence of fraud or material mistake of fact or law."[4] *Dubrow v. Herman & Beinin*, 157 A.D.3d 620 (1st Dep't 2018) (citation and quotation marks omitted). The Voluntary Payment Doctrine applies equally to Federal Courts interpreting New York law, as federal courts must apply the choice-of-law rules of the forum in which they sit. *Wells Fargo Bank v. Deerbrook Mall, LLC*, 2021 WL 5054644 at *5 (S.D. Tex. Nov. 1, 2021) citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

17. The doctrine is predicated on the principle that "[t]he onus is on a party that receives what it perceives as an improper demand for money to 'take its position at the time of the demand, and litigate the issue before, rather than after, payment is made.'" *DRMAK Realty LLC v. Progressive Credit Union*, 133 A.D.3d 401, 403 (N.Y. App. Div. 2015); *see also*, *WFE Ventures, Inc. v. GBD Lake Placid, LLC*, 2021 WL 3553495 (App. Div. 2021) ("The doctrine . . . essentially prevents the paying party

---

[3] In addition to the protection provided by the Voluntary Payment Doctrine, the Note also contractually protects Lender and its attorney's fees from review, stating, "Borrower agrees not to send Lender payments marked 'paid in full', 'without recourse', or similar language. If Borrower sends such a payment, Lender may accept it **without losing any of Lender's rights under this Note**, and Borrower will remain obligated to pay any further amount owed to Lender." *See* Note at p.5 (emphasis added).

[4] For the avoidance of doubt, payments under the Voluntary Payment Doctrine include amounts for attorney's fees of Lender's counsel here in connection with the DIP.

#10997178

10

from thereafter changing his or her mind by seeking to recoup that payment voluntarily made under those circumstances."); *see, e.g.*, *Spagnola v. Chubb Corp.*, 574 F.3d 64, 72 (2d Cir. 2009) (quoting *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 292 A.D.2d 25, 27 (App. Div. 2002)); *Wells Fargo Bank v. Deerbrook Mall, LLC*, 2021 WL 5054644 (after making full payment including legal fees to Lender to stop the foreclosure sale, borrower sought to challenge the reasonableness of the attorney's fees; the court conducted a thorough analysis of the Voluntary Payment Doctrine and held that the Doctrine barred the borrower's challenge).

18. Here, Development is a sophisticated party that regularly conducts complex real estate transactions and is routinely represented by multiple law firms (four firms in this Chapter 11 Case alone). It had any number of alternative options other than ***voluntarily*** requesting the Payoff Letter then ***voluntarily processing*** the Payment to Lender. In fact, these options were discussed by the parties and with the Court during the pendency of this case.

19. For example, it was discussed that Development could have fully funded an escrow account, or become a plan proponent and made a funding commitment, or wired the funds to Debtor's counsel to be held in trust, or even become a qualified bidder at the Auction. But Development chose, of its own volition, to request the Payoff Letter and wire Lender $11,918,974.12.

20. Development cannot now challenge that which it already paid. To the extent it has or ever had any objections to Lender's legal fees, the law is clear that Development had to take some affirmative action to dispute the Lender's demand for

#10997178

11

fees at the time of receipt of the Payoff Letter and *before* paying the Lender, ***but it did not***. Development has made its bed and now needs to lie in it.

### III.     *The Lender's Legal Fees Continue to Accrue and the Debtor Continues to be Liable for the Payment of Such Fees*

21.    Development's contention that the Payment paid Lender in "full and final satisfaction" (Supplement ¶2) of all obligations owed to Lender is contrary to (a) their own Supplement where they acknowledged the additional attorney's fees of Lender's counsel being outstanding (*Id*. at n.2 (noting Lender claimed, at that time, $115,000 in additional legal fees)) and, more importantly, (b) to the specific language of each of the Mortgage, Note, DIP Loan, and DIP Order. Making a statement does not make it true, and Development's statement is patently false given the actions it has taken and continues to take requiring Lender to protect its lien and rights under the Loan and the DIP. Moreover, this Court has noted on multiple occasions that until Lender is paid in full—a point that will not come until pending litigation ceases and Lender is no longer required to expend time and resources defending itself from Development's claims—Lender retains its lien on the Property. *See*, *e.g.*, Transcript 8:22; 12:25–13:3; 13:25–14:6; and 14:7–10.

22.    Development's "legal" argument—the sole discussion of the law in the Supplement—that Lender is seeking legal fees for seeking its legal fees can only be met with incredulity. Development's lone authority in the Supplement, *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 135 (2015), has no relevance to the issue at hand. Development's attempt to apply a case concerning the entitlement of an estate

#10997178

12

professional—which Lender certainly is not—to payment of legal fees incurred by that professional in preparing a fee application required by the Bankruptcy Code, to a Lender claiming legal fees under various loan documents, is patently frivolous.

23. Under the terms of the Loan and the DIP, Lender's legal fees continue to accrue. Lender's rights to be reimbursed for its attorney's fees are clearly and conspicuously set-out in the Mortgage, which states in relevant part:

> The Mortgagor shall bear and pay all direct and incidental expenses (including, without limitation, reasonable attorneys' fees and disbursements for legal services of every kind at trial and appellate level) relating to the administration of this Mortgage and the other Loan Documents (as defined in Section 4.1.1(h) of this Mortgage) . . . .

*See*, Mortgage §1.17(b).

24. This obligation covers all of the related Loan Documents (as defined in the Mortgage) and, also, is affirmatively set-out in the Note, which states in relevant part:

> Upon the occurrence of an Event of Default, Lender may hire or pay someone else to enforce its rights hereunder, at Borrower's sole cost and expense. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's reasonable legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals.

*See*, Note, p.4.

25. In addition to these pre-petition contractual rights Lender holds, it obtained the right to have its attorney's fees paid in connection with the DIP Loan and DIP Order, which also ratified the pre-petition rights, all of which was approved by the Court in the DIP Order. *See, generally*, DIP Loan, §§ 5(g) and 10(n); DIP Order,

#10997178

¶¶ G(v), 2(v), and 26. Such attorney's fees are a DIP Obligation (as defined in the DIP Order, ¶G(v)) and are: (i) secured against the DIP Collateral (as defined in the DIP Order, ¶5) and, also, (ii) a deemed "allowed senior superpriority administrative expense claim against the Debtor" (DIP Order, ¶3). Development did not appeal the DIP Order or institute a challenge under the DIP Order.

26.    Accordingly, the only amount of Lender's attorney's fees subject to possible challenge—and not, for the reason stated above and also below, by Development—would be the amount outstanding after the Payment. As of January 31, 2022, this amount is $251,705.27. There are also costs attributable to transcripts and telephonic attendance fees that have not been invoiced by vendors. Given Development's anticipated continued interference with a sensible resolution of this case and the need to work on the pending appeal, Lender estimates another $100,000 in fees for the month of February, plus attendant costs. Accordingly, the amount Development must escrow in order to comply with the Scheduling Order is **$351,705.27**.

### IV.    *Lender's Only Remaining Monetary Claim in this Case is for Legal Fees*

27.    As a result of the Payment, all monetary claims that the Lender had in this case other than its legal fees under the DIP have been satisfied. For the reasons detailed above, the remaining monetary claim of Lender arises from the unpaid legal fees of its counsel, which are obligations of the Debtor under both the Loan and the DIP until paid in full. Under the Loan and the DIP, this fee claim (*i.e.*, the amount

#10997178

stated in paragraph 26 above, plus any subsequent amounts that accrue) is secured against the Debtor's Property until paid in full.

28.   Development takes issue with any amounts above the $100,000 estimate Lender provided for fees likely to be incurred for the period from December 31, 2021, through January 12, 2022. *See* Supplement, n.2 and ¶6. This is because Development continues to fail to accept responsibility as the sole cause of the attorney's fees generated—a result of its filing multiple pleadings requiring responses by Lender,[5] and Development's refusal to adjourn an argument on appeal before the District Court. *See*, Transcript from Hearing held on January 12, 2022, at 72:14–22 (the Court suggesting the initial appeal be adjourned, and Mr. Nagi responding "We're not going to do that, Judge. We can't adjourn the appeal."). This self-inflicted problem could have been (and going forward, can be) eliminated by Development's own decisions and conduct. Development also seems to be requesting that the Court make some kind of a determination under Section 506 of the Bankruptcy Code with respect to the Lender's secured status.

29.   However, Development lacks standing and is otherwise barred from making this argument or from challenging Lender's secured status under Section 506 of the Bankruptcy Code. Under the terms of the DIP Order—which Development

---

[5]   In late December and through January, Lender has (a) responded to multiple motions, replies, statements, and letters filed by Development, Toby Moskovits, and Michael Lichtenstein, (b) prepared a counter statement of issues on appeal and designation of additional items to be included in the record for one of the three pending appeals, and (c) has prepared for and participated in five hearings or status conferences in this Court or in the District Court on appeal.

#10997178

neither appealed nor challenged—Development does not have any right to examine or challenge Lender's lien or its fees either under the Loan or DIP. The DIP Order is explicit on this.

30. In the DIP Order the Debtor stipulated to the validity and enforceability of Lender's prepetition liens and secured status (DIP Order, ¶F(v)) and its postpetition liens arising under the DIP (*id.,* ¶5). These stipulations and rights of Lender became binding on all parties in this case after the Challenge Period (as defined in the DIP Order) expired. *Id.,* ¶17. No party, including Development, initiated a challenge and no party in this case has any standing or right to challenge Lender's liens.

31. Moreover, the only parties in this case entitled to review Lender's fees, are the U.S. Trustee and the Debtor after submission of an invoice to the Debtor and the U.S. Trustee. No other party has this right. *Id.*, ¶26.

32. If no objection is made to the payment of the fees by either the Debtor or the U.S. Trustee, no Court approval of the fees is required and the fees invoiced must be paid. If the U.S. Trustee or the Debtor objects to the invoice, and the parties cannot resolve the fee issue, then, and only then, does the DIP provide that the Court can become involved to resolve the dispute. The relevant provisions of the DIP are contained in Paragraph 26 of the DIP Order, which is set forth below:

> Professional Fee Procedural Requirements. A copy of each invoice of any professional of the DIP Lender or the Prepetition Secured Lender shall be submitted to the Debtor, the U.S. Trustee, and any Committee for professional fees, expenses, and disbursements (to the extent incurred by such professionals after the Petition Date, the payment of which is

#10997178

16

> authorized by this Final Order (such fees and expenses, the "Lender Professional Fees"). The invoices for such Lender Professional Fees may be in summary form only (and shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine). None of the Lender Professional Fees shall be subject to Court approval (subject to this paragraph 26) or required to be maintained in accordance with the U.S. Trustee Guidelines and no recipient of any payment on account thereof shall be required to file with respect thereto any Final or final fee application with the Court. If no written objections to the reasonableness of the fees and expenses charged in any such statement or invoice (or portion thereof) is made within ten (10) days of presentment of such statements or invoices, the Debtor shall thereafter promptly pay in cash all such Lender Professional Fees. Any objection raised by the Debtor, the U.S. Trustee or any Committee with respect to such fee and expense statements or invoices (with notice of such objection provided to the DIP Lender and to the respective professional) may be made only on the basis of "reasonableness," and shall specify in writing the amount of the contested fees and expenses and the detailed basis for such objection. To the extent an objection only contests a portion of an invoice, the undisputed portion thereof shall be promptly paid. If any such objection to payment of an invoice (or any portion thereof) is not otherwise resolved between the Debtor, any Committee or the U.S. Trustee and the respective professional, either party may submit such dispute to the Court for a determination as to the reasonableness of the relevant disputed fees and expenses set forth in the invoice. This Court shall retain the jurisdiction to resolve any dispute as to the reasonableness of any such fees and expenses. Such fees and expenses shall not be limited by the Budget and shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever unless expressly provided herein. To the extent provided in the DIP Facility and with the DIP Lender's and the Prepetition Secured Lender's consent, the Debtor may accrue these payments.

DIP Order, ¶26.

33. As stated above, all of Lender's legal fees through December 31, 2021, were paid by Development with the Payment. Consequently, the only legal fees that

#10997178

17

are unpaid and need to be invoiced are Lender's counsel's fees for the period after January 12, 2022 through January 31, 2022,[6] as soon as this invoice is available from counsel's accounting department. Lender will provide it to both the Debtor and the U.S. Trustee for their review in accordance with the DIP Order.

## V.     *The Court's Roadmap and the Path Out of this Case*

34.     Throughout this case, Lender has provided suggestions and solutions to resolve quickly and inexpensively the issues among the parties. Development has also been provided roadmaps to achieve the same result from the Debtor the Lender, and the Court itself. At every turn, Development has refused the path of least resistance, choosing instead to pursue courses it knows, or should know, will draw objections, increase fees, and ultimately, be rejected by this Court. It is no surprise that, again, despite being given a clear course by this Court, Development has chosen to ignore this safe harbor, instead pursuing an alternate track for what must only be its own pecuniary interest or other reasons. Fortunately, there is still time to stop the bleeding, tie-up loose ends, and end this case in an organized, legally cognizable way.

35.     There is a Plan currently before the Court, sitting in reserve pending Development's compliance with certain Court directions in its order dated January 12, 2022 [Docket No. 259] ("**Scheduling Order**"). Should Development fail to adequately fund the escrow or address the other claims in the case as provided in

---

[6] Lender estimated $100,000 for the period from December 31, 2021 to January 12, 2022. To the extent fees and expenses in that period exceeded the estimate, Lender will be providing invoices for those fees as well.

#10997178

18

the Scheduling Order, the Plan will likely be resurrected and the Auction will continue.

36.   However, as stated by Lender's counsel at the end of the Hearing, and further to comments from the U.S. Trustee and this Court, Lender supports the consensual plan that has been provided as an exhibit to the Debtor's reply to the Supplement, which provides for (a) payment in full of all claims (or, if agreed to by claimants, other treatment), (b) dismissal of pending litigation to end the continual accrual of Lenders fees, thereby fixing Lender's remaining claim, and (c) closing this case. As the Court has noted on the record, Development would retain what rights it has to review fees before they are released from the escrow, and the Court would retain its jurisdiction with respect to the escrow. *See*, Transcript 17:7–22.

37.   The Court suggested a plan that incorporates Development's stipulations with various creditors and pays claims against the estate in full as a clear path forward to quickly closing the case without the need for further significant motion practice and likely without drawing an objection from the U.S. Trustee, in stark contrast to the path proposed in the Supplement. *See*, Transcript 53:15–55:2. The draft plan provided by the Debtor does all of these things and is fully supported by the Lender. Lender is open to working with Development, the Debtor, and any other parties-in-interest to ensure the plan is truly consensual, and looks forward to an end of the constant squabbling in which this case has been mired.

#10997178

## JOINDER AND INCORPORATION BY REFERENCE

38. Lender fully incorporates by reference all arguments and positions raised in its response to the Initial Payoff Motion, filed at Docket No. 233, and its letter filed at Docket No. 271.

39. Lender respectfully joins in, adopts as its own, and incorporates by reference as if fully set forth herein the entire contents of the Debtor's responsive papers.

## CONCLUSION

WHEREFORE, Lender respectfully requests that the Court deny the Initial Payoff Motion and the relief sought in the Supplement, determine that Development is barred by both the Voluntary Payment Doctrine and the terms of the DIP Order from (i) challenging the Lender's secured status, (ii) seeking to recover any fees paid to Lender or (iii) examining or challenging any of Lender's extant fees, and grant such other and further relief as is just and proper.

Dated: New York, New York  
      February 4, 2022

MORRISON COHEN LLP

By: /s/ Joseph T. Moldovan
    Joseph T. Moldovan, Esq.
    David J. Kozlowski, Esq.
    Heath D. Rosenblat, Esq.
    909 Third Avenue
    New York, New York 10022
    (212) 735-8600
    jmoldovan@morrisoncohen.com
    dkozlowski@morrisoncohen.com
    hrosenblat@morrisoncohen.com

*Attorneys for Be-Aviv 286 Rider LLC*

#10997178