**OFFIT KURMAN, P.A.**
Jason A. Nagi, Esq.
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900
Email: Jason.nagi@offitkurman.com
        and
Joyce A. Kuhns, Esq. (admitted pro hac vice)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
Tel (410) 209-6463
Email: Jkuhns@offitkurman.com

*Attorneys for 286 Rider Ave Development LLC,*
*Toby Moskovits and Yechial Michael Lichtenstein*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

286 Rider Ave Acquisition LLC,

                                        Debtor.
-----------------------------------------------------------X

Chapter 11

Case No.  21-11298-lgb

### RENEWED MOTION OF 286 RIDER AVE DEVELOPMENT LLC, TOBY MOSKOVITS AND YECHIAL MICHAEL LICHTENSTEIN TO DISMISS BANKRUPTCY CASE FOR LACK OF JURISDICTION AND BASED ON DEBTOR ADMISSIONS PURSUANT TO 11 U.S.C. § 305 OR § 1112

286 Rider Ave Development LLC ("**Development**"), as 100% owner of the membership interests of the debtor, 286 Rider Ave Acquisition LLC ( "**Acquisition**" or "**Debtor**"), Toby Moskovits and Yechial Michael Lichtenstein, as indirect owners of the Debtor and Co-Debtors/Guarantors ("**Co-Debtors/Guarantors**"), by undersigned counsel, hereby file this Renewed Motion to Dismiss Bankruptcy Case For Lack of Jurisdiction and Based on Debtor Admissions Pursuant to 11 U.S.C. § 305 or § 1112 (the "**Renewed Motion**") with proposed form of Order granting the Renewed Motion attached hereto as **Exhibit** ("**Ex.**") "**A,**" and, in support, state:

## I.    REMAND PROCEDURAL BACKGROUND

1.    On November 2, 2021, Movants filed a Motion to Dismiss Bankruptcy Case [Dkt. No. 111]. This Court denied that Motion at a hearing held on November 16, 2021 finding it was divested of jurisdiction regarding all issues relating to Debtor's authority to file this Bankruptcy Case due to an appeal pending before the United States District Court for the Southern District of New York (Judge Abrams) (the "**District Court**") from that Order Denying the Motion of 286 Rider Development LLC to Alter or Amend Judgment [Dkt. No. 69] relating to the denial of Development's prior Motion to Dismiss [Dkt. No. 165] (the "**Appeal**").

2.    As this Court observed:

> -- I don't see how I have any jurisdiction because I think all these issues are already up on appeal and if the issue is that this argument should've been raised below or I should've considered it below, then the District will decide that and tell me that this has to be remanded to me for reconsideration.

(Transcript of November 16, 2021 Hearing [Dkt. No. 176], p. 19, ll: 4-13).

3.    Consistent with the above statement, this Court concluded it was divested of jurisdiction:

> ... [so] I'm going to go ahead and find that I have been divested of jurisdiction under – by virtue of the appeal and therefore I do not have the ability to issue this motion and accordingly I'm going to deny the motion.

(Transcript of November 16, 2021 Hearing [Dkt No. 176], p. 25, ll: 14-28).

4.    By Order of the District Court signed on January 13, 2022 and entered on this Court's docket on January 14, 2022 [Dkt. No. 260], the District Court remanded the action to this Court for consideration of additional materials entered on this Court's docket subsequent to the filing of the Notice of Appeal on October 8, 2021 [Dkt. No. 75], *i.e.*:

2

  (i)  Statement of Financial Affairs ("**SOFA**") listing 286 Rider Ave Lender

      LLC as 100% equity holder on the Petition Date (docketed on October 25,

      2021) [Dkt. No. 97]; and

  (ii)  Replacement SOFA replacing first SOFA and stating that Development

      was 100% equity holder on the Petition Date (docketed on November 5,

      2021) [Dkt. No. 116].

## II.  <u>SUMMARY OF ARGUMENT</u>

  5.  As Movants will show through the undisputed record in this case, Lender

fraudulently caused its *alter ego*, the Debtor, to file a Chapter 11 case for Lender's exclusive

benefit, at significant cost and to the detriment of other creditors and parties-in-interest, all due to

Lender's attempt to shield itself from scrutiny for its improper and ineffective transfer of

membership interests in Acquisition to itself, in violation of Acquisition's Operating Agreement

and controlling New York law.

  6.  The crux of this Renewed Motion is whether the Bankruptcy Case was properly

authorized when filed by a non-member, in violation of New York law, and hence whether all

actions taken in the Bankruptcy Case thereafter were unauthorized. The Motion to Alter or

Amend Judgment was filed to correct what Development believed was this Court's failure to

consider the interplay of the governing statutes and relevant documents, each of which prevent

Lender, as a non-member, from automatically exercising management rights on default, and

which precluded Lender from causing the filing of a duly authorized bankruptcy case: (a) the

New York Limited Liability Company Act (b) the New York Uniform Commercial Code, (c)

Sections 5 and 13 of the Pledge Agreement, and (d) the member management provisions of the

Operating Agreement. Development maintains that this Court's error resulted in the wrongful

stripping from equity of its most valuable asset, the Property. This error has led to Lender's unseemly and impermissible control of the bankruptcy process as evidenced by the Debtor's pursuit of a Plan of Reorganization predicated (a) on a forced sale of the Property likely resulting in recovery only to Lender to the detriment of all other creditors, and (b) by the continuation of a Bankruptcy Case over which this Court lacks jurisdiction.

7. As the District Court decided in opting to remand to this Court for reconsideration, this Court may have predicated its prior decisions on information and assertions by both the Debtor and Lender that were factually incorrect and misleading. While Debtor and Lender made explicit representations in sworn statements, and to the Court that Lender was the sole member of the Debtor, it was not until more than 60 days after the August 30, 2021 argument that the Debtor and Lender flip-flopped *and changed the facts*. These altered facts should be considered by this Court, as they *conclusively undermine* the very basis for this Court's prior denial of Development's Motion to Dismiss. If Development was always the sole member of the Debtor, rather than Lender or its affiliate, then pursuant to the Operating Agreement and New York law, Debtor never had authority to file. It is an existential impossibility for the Operating Agreement to have been amended to allow for management by a non-member without ownership amending the Operating Agreement to provide for this, which it never did.

## III.     <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

### A. <u>The Loan</u>.

8. On or about September 19, 2019, 286 Rider Ave Acquisition LLC ("**Acquisition**") received a loan in the principal amount of $8,000,000.00 (the "**Loan**") from Be-Aviv 286 Rider LLC ("**Lender**"), secured by a Mortgage and Security Agreement of even date pursuant to which

Acquisition granted Lender a mortgage on a vacant non-income producing warehouse property located at 286 Rider Avenue, Bronx, New York (the "**Property**").[1] Lender obtained an independent appraisal for the Property in support of the Loan with a value for the Property of $12 million. It is undisputed that the Property is Acquisition's primary asset. Development's actions in this Bankruptcy Case have been attempts to prevent the Lender from trying to "steal" the Property, and the substantial equity otherwise available to pay other creditors and Development, through an abuse of process in violation of settled state law.

**B.    The Pledge Agreement and Operating Agreement**.

9.       As additional collateral for the Loan, Development executed and delivered to Lender a pledge of the Membership Interests in Acquisition ("**Member Interests**") under a Membership Interest Pledge Agreement (the "**Pledge Agreement**") and a corresponding Assignment of those Membership Interests, both dated, September 19, 2019.[2]

**C.    The Default Notice**.

10.      By letter dated March 2, 2021, Lender notified Acquisition of a purported default under the Loan documents and demanded immediate payment of all amounts then due (the "**First Default Notice**").[3] By letter dated April 27, 2021, Lender notified Acquisition that Acquisition was in purported continuing default under the Loan documents and that Lender was exercising its right to assign, transfer, and register all Member Interests into the name of Lender. Lender further instructed Acquisition, as borrower under the Loan, to register the Member Interests in the Lender's name in its books and records.[4]

---

[1]    *See* Declaration of Ben Harlev ("**Harlev Dec.**"), Dkt. No. 24, Exhibits ("**Ex.**") C-E.
[2]    *See* Harlev Dec., Dkt. No. 24, Exs. B and G.
[3]    *See* Harlev Dec., Dkt. No. 24, Ex. J.
[4]    *See* Harlev Dec., Dkt. No. 24, Ex. K.

**D.  Lender Attempts to "Assign" Itself the Member Interests.**

11.      On April 27, 2021, Lender filled in its own name on the Assignment of Member

Interests.[5] Subsequently, Lender entered into an Assignment and Assumption Agreement "as of "

June 14, 2021 purporting to assign the Member Interests to its affiliate, 286 Rider Ave Lender

LLC ("**Lender LLC**").[6]

**E.  Lender Appoints Its Affiliate as Managing "Member".**

12.      On June 14, 2021, Lender purported to appoint affiliate 286 Rider Ave Lender

LLC as "managing member" of Acquisition as set out in the Declaration of Lee E. Buchwald

pursuant to Local Rule 1007-2 in support of the Bankruptcy Petition.[7] On July 14, 2021, counsel

for Lender sent a letter to Acquisition and Development advising that Lender had exercised its

rights under the Loan documents and the Pledge Agreement to assign, transfer and register all

Member Interests in Acquisition into the name of Lender, **as if Lender was the absolute owner**

**thereof**.[8] But, of course, as later acknowledged in sworn declarations filed by the Lender-

controlled Debtor, Development always maintained its Member Interests.

---

[5]      *See* Harlev Dec., Dkt. No. 24, Ex. G.
[6]      *See* Harlev Dec., Dkt. No. 24, Ex. L.
[7]      *See* Declaration of Lee E. Buchwald ("**Buchwald Dec.**"), Dkt. No. 27 at ¶ 8.
[8]      *See* Harlev Dec., Dkt. No. 24, Ex. M.

**F.  Lender Engages Mr. Buchwald as Manager to File Bankruptcy and Asserts It is the Sole Member of Debtor.**

13.    On July 1, 2021, Lender LLC engaged Lee E. Buchwald as so-called "manager" of Acquisition and purported to authorize him to file a Chapter 11 case as soon as practical.[9] On July 15, 2021 ("**Petition Date**"), the Lender, on behalf of the Debtor, caused Acquisition through its "manager" Lee Buchwald to file the bankruptcy case (the "**Bankruptcy Case**"). In his declaration in support, Mr. Buchwald unequivocally restated under oath that on April 27, 2021, *Lender had "assigned, transferred, and registered, as applicable all membership and equity interests of the Debtor to and in the name of Lender as if Lender were the absolute owner."*[10] (emphasis added).

**G.  Development Moves to Dismiss the Case.**

14.    As noted above, Development promptly filed a Motion to Dismiss the Bankruptcy Case which was denied after a hearing on August 30, 2021.[11] It then filed a Motion to Alter or Amend Judgment ("**Motion for Reconsideration**")[12] under Fed. R. Civ. P. 59 and 60, contending, among other things, that this Court had disregarded in its ruling the effect of the New York Uniform Commercial Code on Lender's exercise of its rights under the Pledge Agreement and had likewise disregarded the supremacy of the Operating Agreement over the Pledge Agreement. As argued here, the "member only" governance provisions rendered all of Lender's actions, including directing the Bankruptcy Case filing through a non-member, a

---

[9]    *See* Buchwald Dec., Dkt. No 27 at ¶ 10.
[10]   *Id.* at ¶ 7.
[11]   *See* Dkt. No. 39.
[12]   *See* Dkt. No. 47.

nullity.  The Motion for Reconsideration was denied by this Court by Order dated October 5,

2021, which Order became the subject of the Appeal.[13]

15.    Both Lender and Debtor were very clear that Lender became the sole member of

Acquisition, until the Motion to Dismiss was filed.  For example, Lender argued at the August

30, 2021 hearing that:

> This action was taken *pursuant to our status as the sole voting member* of
> the debtor in accordance with the pledge and in accordance with Section
> 402 of the limited liability company law of the State of New York, which
> provides that the *members* decide what is in the operating agreement.

(Transcript of August 30, 2021 Hearing [Dkt. No. 41], p. 23, ll: 17-21) (emphasis added).

16.    Indeed, the Court found as much in its ruling when it held:

> According, [sic] the *lender* validly exercised its rights under the
> pledge agreement and *became of the owner as of April 27th, 2021 of
> all the membership interest in the debtor*. The lender subsequently
> transferred the interest of such membership interest to an affiliate,
> *the new owner*, on June 14th, 2021.

(Transcript of August 30, 2021 Hearing [Dkt. No. 41], p. 67, ll: 9-13) (emphasis added).

17.    After the briefing and August argument, Debtor and Lender revised history

arguing that Lender was *never* a member of Debtor.[14]

18.    However, Lender, which purported to amend the Operating Agreement as the

manager of Debtor, could not have amended the Operating Agreement without being the

majority member. Indeed, the Court went so far as to question when this Operating Agreement

was amended, and Lender advised that the operating agreement was amended "on Sunday"—*the

day before the August 30, 2021 hearing.*

---

[13]    *See* Dkt. No. 69.
[14]    As a result, there was no authority to file the Bankruptcy Case based on another New York law, Ltd. Liab.
Co. §401(a), which provides that an LLC shall be managed by its members unless the operating agreement says
otherwise (and it does not). *See infra*, at Section IV..

THE COURT: I just want to ask it.
When was that first amendment done?

MR. MOLDOVAN: Sunday, Your Honor, because we didn't think –

THE COURT: Sunday.

MR. MOLDOVAN: -- that this argument even existed. Your Honor, the amendment was done as a ratification *of actions taken by the member*, and under New York law, that is appropriate and acceptable.

So in April, when we exercised our rights under the pledge, *we became the member*. We took actions. They raised this issue in their reply. We said, whoa, what is this? This is just nonsense. But you know what, just to make certain that this shouldn't even be an issue in this case, let's do what we're entitled to do under the operating agreement and under the law. And we're just going to get rid of any ambiguity that might exist, which is what we did, Your Honor. And that is *specifically appropriate under Section 402 of the limited liability company law* of the State of New York.

(Transcript of August 30, 2021 Hearing [Dkt. No. 41], p. 24, ll: 3-21)  (emphasis added).

### H.   Debtor Files a SOFA Again Asserting Lender is Sole Member of Debtor.

19.     More than three months after filing the Bankruptcy Case, on October 25, 2021, the Debtor through its Lender-controlled manager, filed Schedules of Assets and Liabilities ("**Schedules**") and Statement of Financial Affairs ("**SOFA**") as required under Fed. R. Bankr. P. 1007(b)(1), under penalties of perjury, stating that *Lender LLC* held *100% of the Member Interests* in Acquisition on the Petition Date.[15]

---

[15]     *See* Dkt. Nos. 1 and 97 at Part 13, no. 28.

**I.** **Debtor Files a Replacement SOFA That Asserts _Development_ is the Sole Member of Debtor.**

20.    On November 5, 2021, almost four months after the bankruptcy filing, Debtor, through Lender's agent, Mr. Buchwald, filed an amended SOFA that replaced the SOFA but contradicted the prior sworn statements in the Petition and first SOFA that Lender LLC held 100% of the equity in the Debtor (the "**Replacement SOFA**")[16].    Indeed, in the  Replacement SOFA, Debtor stated, under penalty of perjury, that _Development_ was the _100% member_ of _Acquisition_ on the _Petition Date._

**J.** **Debtor and Lender Move to Sell the Property at Auction by January 14, 2022.**

21.    The Debtor then proceeded to move to retain a real estate broker and on, November 23, 2021, and filed a Motion to Approve Bid Procedures seeking an expedited sale process over the holiday season. Over Development's objections[17] and the objection of the junior lien holder, the Court entered the Order (A) Approving Bid Procedures in Connection with the Sale of the Debtor's Real Property, (B) Approving Form and Manner of Notice of Sale, and (C) Scheduling Auction ("**Bid Procedure Order**") on December 13, 2021 setting a bid deadline of January 7, 2022 and an expedited sale date of January 14, 2022. Appellant filed a Notice of Appeal of the Bid Procedure Order on December 20, 2021.

---

[16]    _See_ Dkt. No. 116 at Part 18, no. 28.

[17]    Development has vigorously opposed the Lender's indirect control over and misdirection of the Bankruptcy Case, having previously filed: a Motion to Appoint Trustee (denied); Motion to Terminate Debtor's Exclusive Periods and for Authority to File its Own Plan (denied); Motion to Provide Exit Financing to pay allowed claims in full (denied); renewed Motion to Dismiss Based on New Evidence (denied).

**K.  Expedited Appeal Granted.**

22.     On December 17, 2021, the District Court granted an expedited appeal and, after briefing and argument, remanded the matter to this Court on January 13, 2022.

**L.  Debtor's Amended Plan of Reorganization.**

23.     On January 6, 2022, the Debtor filed an Amended Disclosure Statement and Amended Plan of Reorganization [Dkt. Nos. 250 and 251] (the "**Debtor's Plan**"), which Plan provides for sale of the Property at Auction and distribution of net proceeds to Lender on account of its pre-petition debt and debt under the DIP Facility with any residual to be paid to creditors on account of their allowed claims and in accordance with their respective priorities. The Court conditionally approved the Debtor's Amended Disclosure Statement and solicitation materials for the Debtor's Plan and set a confirmation schedule by Order of the same date [Dkt. No. 247].

**M.  Payoff Motion.**

24.     On December 29, 2021, Development filed a Motion Confirming Disputed Payoff Amounts, Satisfaction of DIP Loan, and for Related Relief (the "**Payoff Motion**") which asked, among other things, for an order confirming the Payoff to the Lender in full and establishing an escrow to pay all other allowed claims to preserve and maximize value which would likely be lost in the impending Auction sale [Dkt. No. 218]. The Motion was set for hearing on January 12, 2022.

25.     On January 4, 2022, Lender filed its Statement of Loan and DIP Loan Payoff Amounts (the "**Lender Payoff Notice**") in the amount of $11,918,974.12, including a cushion of $100,000.00 for attorney's fees through January 12, 2022 (the "**Lender Payoff Amount**") [Dkt. No. 236]. In advance of the January 12, 2022 hearing, based on the Lender Payoff Notice, Development wired $11,918,974.12 to the Lender, thus redeeming

11

Development's equity in Debtor in full and final satisfaction of the Debtor's pre-petition

debt to Lender and the DIP Facility, and filed a confirmation of that wire with the Court

[Dkt. No. 257].

26.     At the January 12, 2022 hearing, the Court required Development to file a

Supplement to its Payoff Motion and entered a Scheduling Order which, among other

things, set a hearing on the Payoff Motion for February 10, 2022 at 10:00 a.m. and

adjourned the Auction to February 16, 2022 [Dkt. No. 259].

27.     Development filed its Supplement on January 26, 2022 [Dkt. No. 272], which

included copies of ballots from the judgment lien creditor and remaining general creditors

rejecting the Debtor's Plan along with stipulations of settlement signed by each such

creditor with Development providing for full and final satisfaction of their respective claims,

to be paid by Development outside the Bankruptcy Case. After the filing of Responses in

opposition by the Debtor [Dkt. No. 283], the Office of the U.S. Trustee [Dkt. No. 284],

Broker Rosewood Realty Group [Dkt No. 285] and Lender [Dkt. No. 286], Development

filed its Omnibus Response on February 8, 2022 [Dkt. No. 289].

28.     The Renewed Motion is filed to provide an alternative to the Payoff Motion in

the event it is denied. In that event, only a dismissal of this Bankruptcy Case will right the

injustice to equity and to judgment lien creditors and general creditors that occurred when

the Lender wrongfully wrested control of the Debtor and the Property in violation of New

York law and caused an unauthorized bankruptcy filing which has unnecessarily and

improperly wasted the assets and residual value of 286 Rider Ave Acquisition, LLC to the

detriment of its equity and its other creditors.

## IV.    ARGUMENT

### BECAUSE THIS BANKRUPTCY CASE WAS FILED WITHOUT AUTHORITY UNDER NEW YORK LAW, IT MUST BE DISMISSED FOR LACK OF JURISDICTION.

29.    Whether a business entity has authority to file for bankruptcy is controlled by state law. *In re East End Dev., LLC*, 491 B.R. 633, 638 (Bankr. E.D.N.Y. 2013) (citing *In re Am. Globus Corp.*, 195 B.R. 263, 265 (Bankr. S.D.N.Y. 1996)); *In re Crossover Fin. I, LLC*, 477 B.R. 196, 202 (Bankr. D. Colo. 2012[18]). As set forth below, the Bankruptcy Case for this New York limited liability company was filed by a non-member in violation of Debtor's Operating Agreement and applicable New York law.

30.    It has long been held that if a corporate entity does not have authority to file a bankruptcy under its own corporate documents, the bankruptcy court does not have subject matter jurisdiction. *Price v. Gurney*, 324 U.S. 100, 106 (1945) ("If the District Court finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, *it has no alternative but to dismiss the petition. It is not enough that those who seek to speak for the corporation may have the right to obtain that authority.*") (emphasis added).  *See also*, *In re 3P Hightstown, LLC*, 631 B.R. 205, 209 (Bankr. D.N.J. 2021) ("Further, should a court find that a debtor, who acts on behalf of a corporation, filed bankruptcy without the prerequisite authority,  *'the Court ... would be required to dismiss [that] unauthorized filing even if § 1112(b) were not in the Bankruptcy Code.'*") (collecting cases)

---

[18]    Under 28 U.S.C. 1334(a) the district courts have original jurisdiction over all cases under title 11 of the United States Code. Pursuant to that Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York by Judge Preska, dated January 31, 2021, bankruptcy cases in the Southern District of New York are referred to and filed with the bankruptcy court, a unit of the District Court. Under section 301 of the Bankruptcy Code, a voluntary case is commenced by the filing of a petition. Hence, if a petition is unauthorized, a bankruptcy court lacks jurisdiction over the case.

(emphasis added); *In re Generation Zero Grp., Inc.*, No. 20-30319, 2021 WL 267812, at \*1
(Bankr. W.D.N.C. Jan. 26, 2021) ("The Court must dismiss the bankruptcy petition filed on
behalf of [Debtor]… because the bankruptcy petition was not authorized by the active and
authorized Directors of [Debtor].… It appears [President] lacked the requisite authority needed
to place [Debtor] into bankruptcy because per [Debtor's] operating agreement, [Debtor] is
managed by its directors not a president. [President] is not now, and was not at the time of filing,
a director of [Debtor]. Consequently, his authority to file the voluntary petition for [Debtor] was
improper per the powers vested with in the Operating Agreement and Georgia law.); *In re Mid-S.
Bus. Assocs., LLC*, 555 B.R. 565, 570 (Bankr. N.D. Miss. 2016) ("However, a bankruptcy
petition filed without proper corporate authority must be dismissed independent of any finding of
'cause' under § 1112(b), because *if the Debtor did not have sufficient corporate authority for the
filing of its petition, then this Court lacks subject matter jurisdiction over the case*.") (emphasis
added).

31.    A voluntary case is commenced by the filing of a petition. Because the filing of
the Petition was unauthorized here, this Court lacked jurisdiction over the Bankruptcy Case since
its inception. The only remedy is dismissal of the Bankruptcy Case *nunc pro tunc* to the filing of
the Petition.

### ALLOWING A NON-MEMBER OF A NEW YORK LIMITED LIABILITY COMPANY TO FILE A BANKRUPTCY PETITION IS PROHIBITED UNDER CONTROLLING NEW YORK LAW.

**A. Under New York Law Only Members May Manage a New York LLC Absent an Express Provision in the Operating Agreement Stating Otherwise, which is Lacking Here.**

32.     New York law provides that, barring a specific provision in an operating agreement, only a member can manage a limited liability company. Lender initially claimed that it stepped into Development's Member Interest on default—a fiction contrived to subvert the process.  But months after this Court made its ruling denying the Motion to Dismiss and Motion for Reconsideration, on November 2, 2021, Lender and Debtor changed their story.  At that time, the Lender-controlled Debtor, filed an amended SOFA replacing the first SOFA and contending—contrary to the Petition and the first SOFA—*that equity had always resided with Development*. Nonetheless, Debtor continued to wrongfully assert management control, pursuing a sale scenario destined to strip title and residual value in the Property—millions of dollars of equity—from other creditors and Development to Lender's exclusive benefit, potentially causing a total loss for all other creditors and equity, in contravention of New York law.

**(i)     Operating Agreements Govern the Operation of NY LLCs.**

33.     Section 417 of the New York Limited Liability Company Act (the "**LLC Act**") provides that the operating agreement of a limited liability company governs the relationships among members and the powers and authority of the members and managers. Ltd. Liab. Co. § 417 (McKinney's 2022). Thus, under the LLC Act, Debtor's Operating Agreement governs whether a member has the authority to file a bankruptcy petition. *See In re East End Dev., LLC*, 49 B.R. at 638 (holding that the relevant operating agreement gave requisite authority to the managing member to file the bankruptcy petition for the New York limited liability company).

15

34.     Section 401(a) of the LLC Act, entitled, "Management of the Limited Liability

Company by Members," unequivocally states: "*Unless* the articles of organization provides for

**management** of the limited liability company **by a manager** or managers or a class or classes of

managers, *management* of the limited liability company *shall be* vested in its *members* who shall

*manage* the *limited liability company* in *accordance* with *this* chapter,...". Ltd. Liab. Co. § 401(a)

(emphasis added). *See LNYC Loft, LLC v. Hudson Opportunity Fund I, LLC*, 154 A.D. 3d 109,

57 N.Y.S. 3d, 479, 483 (1st Dep't 2017) (court declined to uphold the appointment of special

litigation counsel where relevant *operating agreement did not delegate managerial authority to*

*non-members*).

**(ii)     Unless Stated Otherwise in an Operating Agreement, Only Members of an LLC Can Vote.**

35.     Section 402(c) of the LLC Act, entitled "Voting Rights of Members," provides in

relevant part:

> (c) *Except* as *provided* in the *operating agreement, whether* or *not*
> a *limited liability company* is *managed* by the *members* or by one or more
> *managers*, the *vote* of a *majority* in *interest* of the *members entitled* to *vote*
> thereon *shall be required* to:
> ...
> (3) ... *amend*, restate or revoke the ... *operating agreement* ..."

Ltd. Liab. Co. § 402(c) (emphasis added).

36.     On the Petition Date, Acquisition's first Amended and Restated Limited Liability

Company Operating Agreement, dated September 16, 2019 (the "**Operating Agreement**"), was

in effect.[19] The Operating Agreement unambiguously states at Section 5, "Management/Powers",

that "... the sole member of the Company shall have the sole power to do any and all acts

---

[19]     *See* Harlev Dec., Dkt. No. 24, Ex. Q.

necessary or convenient to or for the furtherance of the purposes described herein." There is no

provision in the Operating Agreement providing for management by non-members.

      **(iii)**    <u>**There Was No Evidence of an Amended Operating Agreement.**</u>

37.     There is no evidence, testimonial or documentary, in the record that the Operating

Agreement was ever amended to provide for non-member management[20]. Thus, irrespective of

which entity held equity member interests on the Petition Date, Mr. Buchwald, as a non-member,

had no managerial authority and thus no authority to file the Petition or take any further actions

in the Bankruptcy Case on behalf of Acquisition.

38.     Notwithstanding the above, and without evidentiary support, Lender's counsel

represented to this Court at the August 30, 2021 hearing on Development's Motion to Dismiss,

that Lender attempted to amend the Operating Agreement *after* the Petition Date, i.e., after

Development questioned Debtor's the authority to file. Indeed, the amendment was made *the

night before the hearing*.  The purpose of the amendment was to attempt to define the member as

Lender LLC. (Transcript of August 30, 2021 Hearing [Dkt. No. 41], p. 23, l: 4 – p. 24, l: 23.)

39.     Of course, if this occurred, the amendment was untimely and unenforceable as the

amendment was not authorized by the now acknowledged sole member—a fact hidden from this

Court and Development on the Petition Date. (Dkt. No. 116 at Part 13, no. 28.) Furthermore,

---

[20]     Even if this amendment was not an impermissible violation of the automatic stay, any representations
regarding amending the Operating Agreement were hearsay (Fed. R. Evid. 801) as no testimony was presented and
inadmissible as no such agreement was properly authenticated and submitted into evidence as such. Fed. R. Evid.
901. *See Chamilia, LLC v. Pandora Jewelry, LLC*, No. 04-CV-6017, 2007 WL 2781246, at *6 n.4 (S.D.N.Y. Sept.
24, 2007); *Novak v. Tucows, Inc.*, No. 06-CV-1909, 2007 WL 922306, at *5 (E.D.N.Y. Mar. 26, 2007) ("Where
postings from internet websites are not statements made by declarants testifying at trial and are offered to prove the
truth of the matter asserted, such postings generally constitute hearsay under Fed. R. Evid. 801".) *See also Nabisco
v. Warner-Lambert Co.*, 32 F. Supp. 2d 690, 695 (S.D.N.Y. 1999) (resolving authenticity of exhibits for
admissibility purposes prior to reaching merits of summary judgment). None of the hearsay exceptions are
applicable here. *See* Fed. R. Evid. 803.

even assuming, *arguendo*, that such post-Petition Date amendment to the Operating Agreement was somehow permissible, which is contested, it is incontrovertible that, on the Petition Date, no amendment was or could have been in effect. Accordingly, stripping Development of control and elevating the Lender LLC, an affiliate of Lender, to manager member was void as a matter of law.

**(iv)    Lender's Rights in the Pledge Agreement are Subject to the Operating Agreement.**

40.    The critical relationship between the Pledge Agreement and the Operating Agreement also requires dismissal. Without proper authority under state law to act, the Debtor's filing was unauthorized, and should not have been maintained. As this Court disclosed at the October 5, 2021 hearing:

> "... I did have some trouble, I guess, getting comfortable with the relationship of the operating agreement to the pledge agreement. My decision notes from – on August 31, specifically that it is not a model of clarity, and I did spend a lot of time reviewing the operating agreement and the pledge agreement multiple times, looking at the interaction. And I ultimately ruled that the relevant provision is *Section 5 which, obviously, does not have to do with the operating agreement.* So, I did consider anything that related to the operating agreement and the pledge agreement at least myself."

(Transcript of October 5, 2021 Hearing [Dkt. No. 16-8], p. 35, ll: 3-13) (emphasis added).

41.    And so it appears this Court rested its decision that the Lender had taken control of management and voting rights of the Debtor on paragraph 5 of the Pledge Agreement governing certain rights. It states:

SECTION 5. Rights; Distributions.

> (a) ... *If an Event of Default shall occur and be continuing, then all Membership Interests at Lender's option*, may be *registered in the name of Lender* or its nominee (if not already so registered), and *Lender* or its nominee *may thereafter exercise* (i) all *voting* and all *equity, membership* and *other rights pertaining to the Membership Interests* and (ii) any and all rights of conversion, exchange,

18

> and subscription and any other rights, privileges or options pertaining to such Membership Interests as if it were the absolute owner thereof...

(Harlev Dec., Dkt. No. 24, Ex. B, p. 2-3) (emphasis added).

42.    Section 13 of the Pledge Agreement, controlling the exercise of remedies on default, expressly limits the exercise of remedies subject to the Operating Agreement.  It states:

SECTION 13. Remedies Upon Default.

> *If an Event of Default under the Note shall have occurred* and is continuing, *subject to the Borrower Operating Agreement*, Lender shall have, in addition to all other rights given by law or otherwise, all of the *rights and remedies with respect* to the Collateral of a secured party under *the Uniform Commercial Code as in effect in the State of New York...*

(Harlev Dec., Dkt. No. 24, Ex. B, p. 7) (emphasis added).

43.    New York contract interpretation law is clear that specific provisions of a contract control the general provisions. *See, e.g., Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46 (1956) ("The rules of construction of contracts require us to adopt an interpretation which gives meaning to every provision of a contract or, in the negative, no provision of a contract should be left without force and effect. *Even if there was an inconsistency between a specific provision and a general provision of a contract (we find none), the specific provision controls.*") (internal citations omitted) (emphasis added). Furthermore, the contract must be read as a whole, with Sections 5 and 13 integrated together. *See, e.g., Beal Sav. Bank v. Sommer*, 8 N.Y.3d 318, 324–25 (2007) ("a contract should be read as a whole, and every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose").

44.    An integrated reading of the Pledge Agreement leads to the inescapable conclusion that Lender, in order to exercise its management and voting rights had to do so

"subject to the Borrower Operating Agreement" which contained no provision for non-member management, thus requiring Lender to have either amended the Operating Agreement at the time of default to admit Lender as sole member or to have amended the Operating Agreement to allow for non-member management. Neither could have occurred as a matter of law. To hold otherwise, would permit someone, as here, who is neither a member nor manager to control a limited liability company in violation of New York law and the Operating Agreement. *See East End Dev.*, *supra* at p. 638; *Cf Crossover Fin.*, 477 B.R. at 206 (Colorado court interpreted Colorado statute with similar governance scheme to LLC Act as prohibiting a non-member of a limited liability company, whose operating agreement does not provide for non-member management, from filing a bankruptcy petition on behalf of the company).

45.     The Pledge Agreement does not trump the Operating Agreement but is subject to it. In fact, the Pledge Agreement provides at Section 16: "This Pledge shall be governed by and construed in accordance with the laws of New York."

46.     Since the sole member (whether Lender LLC or Development) could not have amended the Operating Agreement to provide for non-member management as required by New York law, on the Petition Date, all actions relating to the Bankruptcy Case filing, which were taken by Mr. Buchwald "as manager" and subsequent thereto were impermissible and unauthorized. Because the Pledge Agreement is subordinate to the Operating Agreement, and because Lender failed to exercise control over Debtor's management and voting rights in accordance with the Operating Agreement, Lender's affiliate lacked the requisite authority to file the Petition and this Court never had jurisdiction over the Bankruptcy Case . If Debtor and Lender are allowed to pursue a sale of the Property equity holders will be stripped of their

primary asset in contravention of governing law and the UCC by a court lacking jurisdiction over the proceeding.

47.     In addition, this Court, unaware that Debtor would subsequently switch its story on who held equity on the Petition Date was misled into finding: "[T]he Court finds that Section 5(a) of the pledge agreement ... allows the lender, ... by exercising its pledge rights, its right under the pledge agreement, to take over the membership interest[s] ... that were held by Development, because the events of default having occurred and been continuing, that the *lender, then, had all voting, all equity, membership, and other rights pursuing to the membership interest*." (emphasis added). (Transcript of August 30, 2021 Hearing [Dkt. No. 41], p. 71, ll: 18-25 – p. 72, ll: 1-2).  This Court clearly relied on the Debtor and Lender's representations detailed in the Buchwald Declaration supporting the Petition, and later, the first SOFA, which declared the Lender was a member; all of the Bankruptcy Court's rulings follow from that erroneous belief.

**(vi)** **By Filing the Replacement SOFA, Debtor Admitted the Bankruptcy Was *Not* Authorized**.

48.      The Replacement SOFA, however, is a key fact which exposes that the main representation this Court relied on was, in fact, not true—*Lender is not a member of Debtor and never was*. This Court has erroneously relied on Lender's and the Lender-controlled Debtor's position that the "foreclosure" on Lender's pledge—notwithstanding that it was flawed under the UCC—resulted in a total divestiture of all equity rights, including management rights in the Debtor. The reason for the error:  this Court's misplaced reliance on the facts set forth in the declaration supporting the petition and the first SOFA. Pursuant to the Replacement SOFA, Debtor acknowledged in sworn filings that Development is 100% owner.  Therefore, Lender is not an owner, the Lender could not as a matter of law have management rights in the Debtor as it is not a member.

**B.  The Record Demonstrates Lender's Purported "Foreclosure" on its Pledge Violated the UCC and Member Interests Remained with Development.**

49.      After declaring a default under the Loan, the Lender purported to "foreclose" on its Pledge of Development's Member Interests in April 2021. As noted above, Section 13, not Section 5 of the Pledge Agreement controls the Lender's exercise of its remedies on default. This section was previously wholly disregarded by this Court in its analysis of Lender's right to cause a bankruptcy filing through its appointed non-member manager, Mr. Buchwald. *Supra* at pp.10-11.

50.      Section 13 of the Pledge Agreement is explicit that the rights and remedies of Lender are "subject to the Borrower Operating Agreement" and are exercisable in accordance with New York's Uniform Commercial Code. *See* N.Y.U.C.C. § 9-601, *et seq.* (McKinney's 2021) (the "**UCC**"). Lender's rights are not just limited by the Operating Agreement; they are

also limited by New York's UCC. Indeed, the UCC also limits Lender's options in exercising

rights against the Member Interests. *See Royal Palm Senior Investors, LLC v. Carbon Capital II, Inc.,* 2009 WL 1941862 at *3-4 (S.D.N.Y. July 7, 2009) (providing lender with two options

under the UCC: (i) take them in; or (ii) sell them). However, Lender failed to follow controlling

New York law in its purported exercise of its rights against the Member Interests under the UCC.

51.    The Pledge Agreement is explicit in allowing a private sale *only* of Member

Interests on execution. The Pledge Agreement provides in pertinent part:

SECTION 7. <u>Private Sales</u>.

(a) *Pledgor recognizes that Lender may be unable to effect a public sale of any or all of the Membership Interests...* Pledgor acknowledges and agrees that any *such private sale* may result in prices and other terms less favorable to Lender than if such sale were a public sale and,
*notwithstanding such circumstances, agrees that any such private sale shall not be deemed to have been made in a commercially unreasonable manner solely by virtue of being a private sale...*

(b) Pledgor further shall use its commercially reasonable efforts to do or cause to be done all such other acts as may be reasonably necessary to make any sale or sales of all or any portion of the Membership Interests pursuant to this Section 7 valid and binding and in compliance with any and all other requirements of applicable law....

(c) Lender shall now incur any liability as a result of the sale of any Collateral, or any part thereof, *at any private sale conducted in a commercially reasonable manner*, it being agreed that some or all of the Collateral is or may be of one or more types that threaten to decline speedily in a value and that are not customarily sold in a recognized market...

....

(e) Pledgor agrees that Lender shall not have any general duty or obligation to make any effort to obtain or pay any particular price for any Membership Interests sold by Lender pursuant to this Agreement... *Pledgor hereby agrees that any foreclosure sale conducted in accordance with the following provisions shall be considered a commercially reasonable sale and hereby irrevocably waives any right to contest the commercial reasonableness of any such sale:*

23

(i)    *Lender conducts the foreclosure sale in the State of New York*;

(ii)    *The foreclosure sale is conducted in accordance with the laws of the State of New York*;

(iii)    *Not more than ten (10) business days before; and not less than five (5) business days in advance of the foreclosure sale, Lender notifies Pledgor at the address set forth herein of the time and place of such foreclosure sale*;

(iv)    *The foreclosure sale is conducted by an auctioneer licensed in the State of New York* and is conducted in front of the New York Supreme Court...

(v)    *The notice of the date, time and location of the foreclosure sale is published in the New York Times or Wall Street Journal...*

(vi)     *Lender sends notification of the foreclosure sale to all secured parties identified as a result of a search of the UCC financings statements* in the filing offices located in the States of Delaware and New York conducted not later than twenty (20) days and not earlier than thirty (30) days before such notification date.

(Harlev Dec., Dkt. No. 24, Ex. B, p. 4-6) (emphasis added).

52.    Despite the Pledge Agreement only providing for private sale as a means of foreclosure and setting out the agreed terms and conditions for the commercial reasonableness of such a sale, Lender proceeded to "foreclose" on the Member Interests, not by public or private sale, in accordance with the UCC as required by Section 13 of the Pledge Agreement, but by purportedly executing an assignment to itself and recertificating the Member Interests in its own name. But having forsworn the "sale option", the Lender could only take in the Member Interests via "strict foreclosure."

53.    "Strict Foreclosure" is "a procedure by which the secured party acquires the debtor's interest in the collateral without the need for a sale or other disposition under [Uniform Commercial Code] Section 9-610 in partial or full satisfaction of its debt." *See e.g.* Kansas Statutes Annotated 2030 Supp. 844-9-620, Comment 2. Under New York's UCC, the remedy of

strict foreclosure is only available if the debtor consents to strict foreclosure after it has

defaulted. *In re CBGB Holdings, LLC*, 439 B.R. 551, 555 (Bankr. S.D.N.Y. 2010). *See also,*

*Gilligan v. Briar Hill Lanes, Inc.*, 250 A.D.2d 809, 673 N.Y.S.2d 711 (2d Dep't, 1998)

("Pursuant to UCC 9-505(2), a secured party must provide written notice to the defaulting debtor

of an election to retain collateral in satisfaction of the debt. The appellant failed to provide the

requisite written notice and therefore did not become the legal owner of the plaintiff's stock,

which was pledged as collateral for a loan"*)*. Thus, a debtor cannot consent to strict foreclosure

at the time it enters into the debt and security instrument. *Id*. Section 9-620 of the UCC governs

strict foreclosure. *Id*; *see* generally, 4 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM

COMMERCIAL CODE § 34-10 (5th ed. 2002).

54.    UCC Section 9-611, entitled "Notification Before Disposition of Collateral,"

mandates that a secured party must send a debtor a notice before disposition of its collateral.

N.Y.U.C.C. § 9-611.  UCC Section 9-612 states that in a non-consumer transaction "a notice of

disposition of collateral sent after default and 10 days or more before the earliest time of

disposition set forth in the notification is sent in a reasonable time..." N.Y.U.C.C. § 9-612.

55.    Lender, however, failed to follow these clear advance-notification prerequisites

required to conduct a strict foreclosure under the UCC. First, Lender sent a default and

reservation of rights letter to Acquisition, on March 2, 2021.[21] Second, Lender sent a letter dated

April 27, 2021 to Acquisition and Development that Lender was exercising its right to assign,

transfer and register Member Interests of Acquisition into the name of Lender "as if Lender was

the absolute owner thereof."[22] Lender, however, never provided Acquisition and Development

---

[21] *See* Harlev Dec., Dkt. No. 24, Ex. J.
[22] *See* Harlev Dec., Dkt. No. 24, Ex. K.

the requisite advanced notice of the disposition of the Member Interests. Instead, Lender

exercised foreclosure by filling in its own name in the assignment of Member Interests on April

27, 2021, in violation of UCC Section 9-612(b).

56.      In further disregard of the advance notification requirements of strict foreclosure

under UCC Section 9-613(1)(D), Lender failed to ever advise Acquisition of its right to an

accounting of any indebtedness.

57.      UCC Section 9-620 requires a debtor to consent to strict foreclosure in full or

partial satisfaction of a debt. In the case of partial strict foreclosure, a debtor must expressly

consent to the terms of the acceptance in a record authenticated after default. N.Y.U.C.C. § 9-

620(c)(1). Alternatively, after default, a secured party can send a proposal to a debtor "that is

unconditional or subject only to a condition that collateral not in the possession of the secured

party be preserved or maintained," N.Y.U.C.C. § 9-620(c)(2)(A), and "proposes to accept

collateral in full satisfaction of the obligation it secures." N.Y.U.C.C. § 9-620(c)(2)(B). If the

debtor does not accept the proposal within twenty days, it is deemed accepted. N.Y.U.C.C. § 9-

620(c)(2)(C).

58.      Consistent with Section 13 of the Pledge Agreement, N.Y.U.C.C. § 9-624

provided that a debtor's rights under N.Y.U.C.C. § 9-610 (disposition on default), N.Y.U.C.C. §

9-615 (application of disposition proceeds), and N.Y.U.C.C. § 9-620 (acceptance of collateral in

satisfaction of debt) are not waivable *unless* expressly waived, after default, which did not occur

here. *See* N.Y.U.C.C. § 9-602. Lender, therefore failed to foreclose on the Member Interests in

accordance with the UCC as required by Section 13 of the Pledge Agreement and the purported

transfer was ineffective[23].

59.    This Court has the opportunity to reverse its prior error when:  (1) it failed to

analyze the relationship between the UCC and the exercise of remedies under Section 13 of the

Pledge Agreement; and (2) it relied solely on Section 5 of the Pledge Agreement as providing the

mechanism to "automatically" transfer equity and management rights, even though such a

transfer contravened the LLC Act's requirement that *only members may manage a limited*

*liability company absent an amendment to its operating agreement*, which did not occur here.

### C. Any Post-Petition Amendment to the Operating Agreement to Add Lender as Sole Managing Member is Voidable as a Violation of the Automatic Stay.

60.    Lender's counsel represented to this Court that the Operating Agreement was

amended on the eve of the hearing on Development's Motion to Dismiss when the then

purported sole member Lender LLC authorized a change from Development to itself as

managing member. (Transcript of August 30, 2021 Hearing [Dkt. No. 41], p. 23, l: 4 – p. 24, l:

23) Following this purported amendment, Lender LLC improperly installed Mr. Buchwald as its

managing agent in the exercise of its creditor remedies including pursing a "fire sale" of the

Property.

61.    Once a petition for bankruptcy is filed, the automatic stay prevents all entities

from engaging in "any act to obtain possession of the property of the estate or of property from

the estate or to exercise control over property of the estate," and "any act to create, perfect, or

enforce any lien against property of the estate." 11 U.S.C. § 362(a)(3) and (4). Thus, any post-

---

[23]    Debtor and Lender appear to have acknowledged this effect by filing the Replacement SOFA stating that
Development has always held the Member Interests in Acquisition.

Petition Date amendment to the Operating Agreement purportedly divesting Development of

control and its status as sole member and manager and elevating the Lender LLC, an affiliate of

Lender, to manager member would have constituted a violation of the automatic stay of Section

362 of the Bankruptcy Code and be void.

62.    Here, Lender and its affiliate did not exercise customary corporate governance

rights but were acting instead to enforce their rights, as a creditor, under the Pledge Agreement

and deriving their authority to do so solely from Debtor's purported default under the Loan. Such

actions are impermissible and constitute stay violations under the Bankruptcy Code. *See In re*

*Marvel Entm't Grp., Inc*., 209 B.R. 832, 839 (D. Del. 1997) (in which the District Court

carefully contrasted "traditional shareholder rights" which can be exercised without violating the

automatic stay with actions by "creditors of debtors [seeking to gain] control of the debtors'

estates *through the exercise of corporate governance rights*.") (emphasis added).  *See also, In re*

*GenCanna Global USA, Inc.,* 619 B.R. 364, 370 (Bankr. E.D. Ky. 2020) ("Shareholders violated

the automatic stay when they exercised their shares to appoint new directors for GenCanna

Parent and GenCanna USA," to improve their position as creditors and such act was voidable);

*In re Mattera,* 2007 WL 594908 , at *7 (Bankr. D.N.J. Feb. 21, 2007) ("a creditor who attempts

to improve her position, post-petition, is in violation of the automatic stay"); *In re Country*

*Estates Nursing Home, Inc.*, 268 B.R. 316, 320 (Bankr. D. Mass. 2001) (finding that because

creditor had not foreclosed on its collateral pledge of shares as required by the UCC, any post-

petition attempt to vote to substitute itself as director over a company in which debtor was

director and officer constituted a violation of the automatic stay in the debtor's bankruptcy case).

63.    The relevant case law compels the conclusion that a stay violation occurred when

Lender purported to cause a post-petition amendment of the Operating Agreement, substituting

Lender LLC as managing member, to pursue a creditor remedy and that any such amendment is

therefore void.

## V.    **CONCLUSION**

For the foregoing reasons, Movants request that the Court enter an Order: (i) dismissing

this Bankruptcy Case *nunc pro tunc* to July 15, 2022; and (ii) granting such other relief as may

be just.

Dated:  New York, New York                OFFIT KURMAN, P.A.
          February 9, 2022

                                          By:_____/s/Jason A. Nagi_____
                                             Jason A. Nagi, Esq.
                                             590 Madison Avenue
                                             New York, New York 10022
                                             (212) 545-1900

                                             and

                                             Joyce A. Kuhns, Esq. (admitted pro hac vice)
                                             300 East Lombard Street, Suite 2010
                                             Baltimore, Maryland 21202
                                             (410) 209-6463

                                             *Attorneys for 286 Rider Ave Development LLC,*
                                             *Toby Moskovits and Yechial Michael Lichtenstein*

**OFFIT KURMAN, P.A.**
Jason A. Nagi, Esq.
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900
Email: Jason.nagi@offitkurman.com
       and
Joyce A. Kuhns, Esq. (admitted pro hac vice)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
Tel (410) 209-6463
Email: Jkuhns@offitkurman.com

*Attorneys for 286 Rider Ave Development LLC,*
*Toby Moskovits and Yechial Michael Lichtenstein*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

286 Rider Ave Acquisition LLC,

                 Debtor.
------------------------------------------------------------X

Chapter 11

Case No.  21-11298-lgb

**CERTIFICATE OF SERVICE**

A copy of the Renewed Motion of 286 Rider Development LLC, Toby Moskovits and Yechial Michael Lichtenstein to Dismiss the Bankruptcy Case For Lack of Jurisdiction and on Debtor Admissions Pursuant to 11 U.S.C. § 305 or § 1112 was served on February __, 2022 via (i) Electronic Notice and E-Mail upon the parties listed on the attached service list as denoted with a "*"; (ii) E-mail upon the parties listed on the attached service list as denoted with a "**"; and (iii) U.S. Mail postage pre-paid upon the parties listed on the attached service list as denoted with a "***".

**SERVICE LIST**

**VIA ELECTRONIC NOTICE AND E-MAIL (\*)**

Joseph Thomas Moldovan - bankruptcy@morrisoncohen.com

Fred B. Ringel - fbr@robinsonbrog.com

United States Trustee - USTPRegion02.NYECF@USDOJ.GOV

**VIA E-MAIL (\*\*)**

Greg Zipes - greg.zipes@usdoj.gov

**VIA U.S. MAIL (\*\*\*)**

NYS Dept. Taxation & Finance
Bankruptcy/Special Procedures Section
P.O. Box 5300
Albany, NY 12205-0300

United States Attorney's Office SDNY
Attention: Tax & Bankruptcy Unit
86 Chambers Street, Third Floor
New York, NY 10007

NYC Dept. of Finance
Office of Legal Affairs
375 Pearl Street, 30th Floor
New York, NY 10038

U.S. Securities and Exchange Commission
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, NY 10281-1022

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

Titan Engineers PC
1331 Stuyvesant Ave.
Union, NJ 07083

Fischer Makooi Architects
242 West 30th Street, Ste. 1102
New York, NY 1001

Robert Newblatt
286 Rider Ave Realty LLC
286 Rider Avenue
Bronx, NY 10451

Wayne M. Greenwald, Esq.
JACOBS, P.C.
667 Madison Avenue - 5th Floor
New York, NY 10065

Mark S. Lichtenstein and Joshua D. Bernstein
Akerman LLP
1251 Avenue of the Americas, 37th Floor
New York, New York 10020

BEAM Architects D.P.C.
141 Flushing Avenue, Suite 1201
Brooklyn, NY 11205

EBC
1808 Middle Country Road
Ridge, NY 11961

Metropolitan Realty
381 South 5 Street
Brooklyn, NY 11211

Xolle Demolition
2071 Flatbush Ave, Suite 44
Brooklyn, NY 11234

286 Rider Associates, LLC
213 Via EmailiaPalm Beach
Gardens, FL 33418

_____
Jason A. Nagi, Esq.

# Exhibit A

# "Proposed Order"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

286 Rider Ave Acquisition LLC,

                              Debtor.
-------------------------------------------------------X

Chapter 11

Case No.  21-11298-lgb

## ORDER DISMISSING BANKRUPTCY CASE FOR LACK OF JURISDICTION AND BASED ON DEBTOR ADMISSIONS PURSUANT TO 11 U.S.C. § 305 OR § 1112

Upon the Renewed Motion of 286 Rider Development LLC, Toby Moskovits and

Yechial Michael Lichtenstein to Dismiss the Bankruptcy Case For Lack of Jurisdiction and

Based on Debtor Admissions Pursuant to 11 U.S.C. § 305 or § 1112 (the "**Renewed Motion**")[1];

for entry of an order dismissing this Chapter 11 case and granting related relief; and it appearing

that this Court has jurisdiction to consider it subject matter jurisdiction pursuant to 28 U.S.C. §

1334; and it appearing that venue of these case and the Renewed Motion is proper in this district

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Renewed Motion

having been given; and any objections to the requested relief at the hearing having been heard

and overruled; and upon the record of the hearing held by the Court on the Renewed Motion on

____, 2022 (the "**Hearing**"); and, after deliberation, the Court having found and concluded that

this Court lacks jurisdiction over the case of this New York limited liability company which was

filed without proper authorization under its governing Operating Agreement and applicable New

York law, thus warranting a *nunc pro tunc* dismissal to the filing of the Petition on July 15, 2021

---

[1]        Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Renewed Motion.

2

and that such dismissal is also in the best interest of creditors and the estate; therefore, it is

hereby

**ORDERED:**

1.      The Renewed Motion is GRANTED as set forth herein.

2.      The Debtor's Chapter 11 case is dismissed for lack of this Court's jurisdiction

*nunc pro tunc* to filing of the Petition on July 15, 2021.

3.      The retention of all professionals retained by the estate under section 327 of the

Bankruptcy Code or otherwise, is hereby terminated.

4.      The Debtor is authorized and directed to execute and deliver all instruments and

documents and take such other actions as may be necessary or appropriate to implement and

effectuate the transactions contemplated by this Order.

5.       The terms and conditions of this Order shall be immediately effective and

enforceable upon entry of this Order.

6.      The Court retains jurisdiction with respect to all matters arising from or relating to

the interpretation, implementation and/or enforcement of this Order.

7.      To the extent applicable, any stay of this Order provided by Bankruptcy Rule is

waived and this Order shall be effective and enforceable immediately upon entry.

Dated: _____, 2022

_____
The Honorable Lisa G. Beckerman,
United States Bankruptcy Judge

3