**ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.**

**875 THIRD AVENUE**

**NEW YORK, NEW YORK 10022**

(212) 603-6300

FAX (212) 956-2164

February 21, 2022

Fred B. Ringel
(212) 603-6301
fbr@robinsonbrog.com

**VIA ECF and email**
Hon. Lisa G. Beckerman
U.S. Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004-1408

Re:    <u>In re 286 Rider Ave Acquisition LLC: Case No 21-11298 (LGB)</u>

Dear Judge Beckerman,

      We represent the debtor, 286 Rider Ave Acquisition LLC ("Debtor"), in the above-referenced matter. I write to join in the request made by Be-Aviv ("Be-Aviv" or "Lender") and its counsel, Morrison Cohen, for a status conference about the issues raised in their letter dated February 21, 2022 regarding the LinkedIn post, as copy which is attached to this letter. The Debtor also writes to address matters raised by the Court's February 11, 2022 order ("Order") which were unclear to us at the end of the hearing until we saw the written order entered on February 11th.

      (i)    The LinkedIn Posting

      Mr. Buchwald and I are particularly concerned about Ms. Moskovits LinkedIn post, a direct contemptuous violation of this Court's January 6th Order which enjoined Ms. Moskovits and Mr Lichtenstein:

      . . .from any further contact or communication <u>in any form or through any media with Lee Buchwald, Fred Ringel</u>, any person employed by Robinson Brog Leinwand Greene Genovese & Gluck P.C. ("Robinson Brog"), any partner at Robinson Brog, and/or any member of any such person's family <u>with respect to this Chapter 11 case</u>."

{01139265.DOCX;4 }{01139265.DOCX

1

*Order with respect to Toby Moskovits and Michael Lichtenstein* 1/6/22 [ECF Doc. No. 245](emphasis added).("January 6th Order")

The January 6th Order also provided that "[N]othing contained herein limits or otherwise impairs the authority of the Court to impose sanctions with respect to any violation of this order or any other conduct, and to enter such other orders as it may deem necessary and appropriate." January 6th Order at ¶2.

     Ms. Moskovits intentionally violated the January 6th Order with impunity believing this was, again, a circumstance where she could willfully ignore a federal court order with no consequences similar to the way Development ignored its obligation in the January 12, 2022 Scheduling Order ("Scheduling Order") to fully fund an escrow account by 5:00 p.m. on February 8, 2022 ("Funding Deadline") with sufficient funds to pay the remaining creditors holding unpaid claims in full.[1] Moskovits's intent to violate the January 6th Order could not have been clearer when Ms. Moskovits "linked" this defamatory article to Fred Ringel's and Robinson Brog's LinkedIn profiles so that anyone reading my profile or my firms profile would have seen Ms. Moskovits's falsehoods and reference to myself and my firm as "enablers of a criminal enterprise"—this case. This was a direct and intentional communication **with me and with my firm** in violation of your honor's Order. In fact, on Saturday February 19, 2022, I was advised that traffic to my profile went up 3400% for the week ending on the 19th, driven by the false postings of a person enjoined from doing so and made in violation of a court order. Moskovits deserves severe and punitive sanctions as outlined in paragraph 2 of the Order as any deliberate violation of an injunction requires, including an order requiring its immediate removal from LinkedIn, a subsequent LinkedIn retraction post in form and substance acceptable to this Court which references the earlier post and includes the same tags, and such economic sanctions as the Court deems appropriate. It is time that Ms. Moskovits and Mr. Lichtenstein understand that violations of a federal court order have severe consequences.

    (ii)    February 11th Order

     The Debtor wanted to bring to the Court's attention certain issues we believe have been created advertently by the February 11th order ("Order"). We believe the Order creates three significant problems. First, and most importantly, the Order defers resolution of the subject matter jurisdiction argument raised by Development in the Renewed Dismissal Motion ("Renewed DM").See, Renewed DM at ¶¶29-31. The Court needs to resolve the challenge to its own subject matter jurisdiction first along with the pending remand motion.. Second, the Order creates privilege issues in connection with the fee application process that applies to the Debtor's retained

---

[1] As the Court no doubt recalls, Development, the entity owned by Moskovits and Lichtenstein not only did not fund that account, they did not even open the escrow account, thumbing their noses at that order much like the January 6th Order.

{01139265.DOCX;4 }{01139265.DOCX

professionals and to Mr. Buchwald that we believe the Court may not have fully considered. Finally, we believe that permitting the payoff motion or the Renewed DM to be heard without Development being required first to post the full administrative escrow required by the January 12th Scheduling Order improperly creates the risk of administrative insolvency and shifts that risk entirely to the professionals. Moreover, the structure of the Order encourages Development not to fund the administrative expenses of this case as contemplated under paragraphs 7 and 9 of the Order.

(a) Subject Matter Jurisdiction

Development's Renewed DM claims, among other things, takes the position that this Court lacks subject matter jurisdiction over this case because it was allegedly filed without proper authority. While the Debtor believes this issue has already been dispositively resolved by this Court when it denied Development's Motion to Dismiss the Chapter 11 case on August 30, 2021, which Order became final when Development did not appeal, the February 11th Order address this threshold issue <u>last after</u> the parties are required to expend substantial resources (i) contesting the payoff motion, (ii) the Debtor's professionals are required to submit final fee applications that jeopardize their privileged and other confidential information, (iii) all while having no assurance of payment from a fully funded administrative escrow. The February 11th Order removed any requirement that Development fund such an escrow and by scheduling resolution of the Court's subject matter jurisdiction last, the ability of the administrative creditors to seek payment from the property may very well become illusory as the administrative costs grow and the value of the property shrinks to fire-sale levels or below, since there is no longer a $10,500,000 stalking horse bidder and the 421-A tax exemption will be lost by the time litigation surrounding this property has concluded and a sale again becomes a realistic option. In short, the only real creditors of this estate are left with no practical mechanism to be paid on claims which Development has caused them to incur and now is refusing to pay.

(b) Fee Application/Privilege Issues

Usually, a final fee application is filed at the end of a case well after any active litigation by the main protagonists has ceased. That is not the case here. By requiring Robinson Brog to file its final fee application in unredacted form while the Debtor, the Lender, and Development are still litigating issues relating to the remand and dismissal of the case, the Court requires the Debtor's professionals to disclose their confidential attorney-client communications, work product and litigation strategy in time records. The proposed process mandates the invasion of those privileges. Since the timing of the final application was not discussed during the hearing and until the written Order was issued, it was not apparent that the

Court was requiring the Debtor to be the only party[2] to waive its privilege to apply for its fees and expenses. This issue alone merits a conference.

(c) Administrative Insolvency Risk

The Debtor also believes, the Order creates an unintended incentive for Development, to never fund the administrative escrow for this chapter 11 case shifting the risk of nonpayment to the senior creditors in a manner which is contrary to what the Court has repeatedly indicated would be the case. Simply put, the Court should require the Administrative Escrow to be funded under the January 12th Scheduling Order <u>before</u> the Court entertains any further relief for Development under any motion that is presently pending.

At several times during the prior hearings in January, and at the most recent status conference only nine days before the hearing on the supplement to Development's Payoff Motion, the Court was clear that it would not risk an administrative insolvency in this case. On February 1st, the Court said, the following about the <u>requirement that Development fund an escrow for administrative expenses as a condition to hearing the payoff motion</u>:

I think, realistically, that's just part of this process if we're going to move forward this way. Because I am not going to take a chance -- as we discussed before at the last hearing in front of me when we discussed this schedule, and I issued the Order, I'm not going to have a situation where there's administrative insolvency here. There's no need for that.

Transcript, 2/1/22 35:14-20. Instead of the funding the escrow as required by the Court's January 12th Scheduling Order, Development did not even open the escrow account and did not fund it with the full amount needed to pay administrative expenses. Thus, coming to this Court with unclean hands, and having failed to observe the clear requirements of the Scheduling Order, Development was rewarded with a new Court order which provided that <u>notwithstanding the provisions of the Scheduling Order,</u> the payoff motion and supplement would be <u>heard and determined before any escrow for administrative expenses</u> had to be funded. But if Development wanted to have its Renewed Dismissal Motion heard, which Ms. Moskovits made clear both on the record at the hearing on February 10th (Transcript 2/10/22 at 114) and in her LinkedIn posting on February 15th,[3] the Order lays out a clear path for Moskovits to make that happen.

---

[2] It is unclear to the Debtor whether the Court also intended the Lender to be required to waive the attorney-client privilege to collect its attorney's fees. It seems clear the Lender's counsel may well have the same issue.

[3] Mr. Lichtenstein made it clear he had no intention of funding administrative expenses stating that, with respect to the Scheduling Order, he had no intention of obeying it any more than Ms. Moskovits did. More specifically he said "I'm sick and tired of being ordered to pay [Fred Ringel's] fees." Transcript 2/10/22 102:3-9.

{01139265.DOCX;4 }{01139265.DOCX

4

To have the Renewed Dismissal Motion heard under the Order, all Moskovits and Lichtenstein have to do is not fund the administrative escrow. If that does not happen by April 8th, then the dismissal under the Payoff Motion cannot move forward and under paragraph 9 of the Order, the Renewed Dismissal motion will be heard on April 26th. And if that motion is denied, as the Debtor expects it will be, there will be an appeal and a request for a stay pending appeal and the litigations will continue, perhaps for months if not years. The Order encourages Moskovits to not fund the administrative expenses to have Development's Renewed Dismissal Motion heard. Moreover, <u>this appears to be both the result Development wants and since it plainly does not have the money to fund the administrative expenses in full, it is the only outcome it can afford.</u>

(a) Joinder

It seems clear to the Debtor that the Court must allow a plan process to go forward to avoid this untoward result. The reasons for this are well articulated by Be-Aviv and its counsel in their letter and will not be repeated here. The Debtor joins in their request.

                                              Respectfully submitted,

                                              /s/ Fred B. Ringel

                                              Fred B. Ringel

Cc:    Greg Zipes, Esq.
        Joseph Moldovan, Esq.
        Douglas Spelfogel, Esq.
        Jason Nagi, Esq.
        Lee E. Buchwald, Esq.

**Toby Moskovits** • 2nd    + Follow
CEO of Heritage Equity Partners
8h • Edited • 🌐

**Amir Korangy**,

I and **Michael Lichtenstein** have tried every means possible to encourage honest reporting by your publication to no avail. I even did the requisite advertising - otherwise known in this industry as protection money - but the false articles keep on coming.

So I will continue with my public dialogue so that at least I can try to get the true story out there. Because regardless of what I share, you and your team fail to get the facts correct in your consistent and deliberate attempt to paint a false narrative about me and my business.

Your article about the purchase of the 120 unit development in Miami is rife with misrepresentations, but the one that takes the cake is the following statement: "In December, Moskovits and Lichtenstein claimed in court filings that they had secured $14 million to remove another development site, a planned rental project in the Bronx, out of bankruptcy."

You and your entire team - who obsessively reported on every step of this fraudulent bankruptcy, and published 3 articles about this matter, including outlining in great detail the non-news fact that the account was shut down (standard in a bankruptcy - fraudulent or not) are well aware that on January 11th we paid off the lender Be-Aviv in full ALL CASH.

Somehow in spite of your team's writing three articles about the Rider matter, and after tracking every twist and turn of courtroom drama - you managed to falsely report on 286 Rider in this article without mentioning that the Loan was in fact paid off.

A payoff we managed to make in spite of every attempt made by the lender Ben Harlev, Eyal Epstein, Dafna Harlev and Leumi Partners along with their partner in crime Aaron Jungreis and Greg Corbin of Rosewood Realty Group  to prevent the payoff.

Anyone who wants to understand how it is that Ben Harlev improperly acted as both Lender and Debtor in the same bankruptcy take a look at the docket - 286 Rider Avenue Acquisition LLC; SDNY Bankr. case 21-11298 - and you will read about this fraud Ben Harlev committed and the enablers who supported this criminal enterprise - Fred Ringel of Robinson Brog along with Joseph T. Moldovan and Y. David Scharf of Morrison Cohen LLP.

Here in Florida we call this defamation - the knowing publication of false information. But given the dozens of lawsuits against your publication - you know that as well. I post this from Miami where there is a little less tolerance for bullies like you who resort to lies and misrepresentation.

Bank Leumi USA
The Real Deal
Amir Korangy

