**MORRISON COHEN LLP**
909 Third Avenue
New York, New York 10022
(212) 735-8600
Joseph T. Moldovan
Heath D. Rosenblat
David J. Kozlowski
jmoldovan@morrisoncohen.com
hrosenblat@morrisoncohen.com
dkozlowski@morrisoncohen.com

*Attorneys for Be-Aviv 286 Rider LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| **286 RIDER AVE ACQUISITION LLC,** | Case No. 21-11298(LGB) |
| Debtor. | |

**MOTION BY BE-AVIV 286 RIDER LLC, UNDER RULE
7052 AND 9023 FEDERAL RULES OF BANKRUPTCY PROCEDURE,
AND LOCAL BANKRUPTCY RULE 9023-1, FOR RELIEF FROM
AND TO RECONSIDER THE COURT'S FEBRUARY 11, 2022 ORDER**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................... 1

JURISDICTION ............................................................................................................... 4

RELEVANT PROCEDURAL BACKGROUND ............................................................ 4

RELIEF REQUESTED .................................................................................................... 7

ARGUMENT .................................................................................................................... 8

    A.    Motion to Amend Standard ........................................................................ 8

    B.    The Final DIP Order ................................................................................ 10

        i.    The Challenge Period........................................................................ 10

        ii.    Professional Fee Procedure Requirements ...................................... 13

        iii.    Lender's Remaining Secured Claim ................................................ 17

    C.    The Voluntary Payment Doctrine ............................................................ 19

JOINDER AND INCORPORATION BY REFERENCE ............................................. 22

CONCLUSION ............................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Eismann v. Green*,
   204 F.3d 393 (2d Cir. 2000)........................................................................9

*Henderson v. Metro. Bank & Trust Co.*,
   502 F. Supp. 2d 372 (S.D.N.Y. 2007)........................................................8

*ING Global v. United Parcel Serv. Oasis Supply Corp.*,
   757 F.3d 92 (2d Cir 2014)...........................................................................8

*In re Jamesway Corp.*,
   203 B.R. 543 (Bankr. S.D.N.Y. 1996).......................................................9

*Kelly v. La Brie (In re Kelly)*,
   No. 01-11686, 2003 WL 24244575 (Bankr. D. Vt. April 24, 2003) .......16

*Klaxon v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941)...................................................................................20

*Lehmuller v. Incorporated Village of Sag Harbor*,
   982 F. Supp. 132,135 (E.D.N.Y. 1997) ......................................................9

*Parrish v. Sollecito*,
   253 F. Supp. 2d 713 (S.D.N.Y. 2003).........................................................8

*Schrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995)..........................................................................9

*Schwartz v. Liberty Mut. Ins. Co.*,
   539 F.3d 135 (2d Cir. 2008).........................................................................8

*Shamis v. Ambassador Factors Corp.*,
   187 F.R.D. 148 (S.D.N.Y. 1999) ................................................................9

*Spagnola v. Chubb Corp.*,
   574 F.3d 64 (2d Cir. 2009)........................................................................20

*Wells Fargo Bank v. Deerbrook Mall, LLC*,
   2021 WL 5054644 (S.D. Tex. Nov. 1, 2021) ......................................20, 22

*United States v. Local 1804-1, Int'l Longshoremen's Ass'n*,
   831 F. Supp. 167, 169 (S.D.N.Y. 1993)......................................................9

*United States v. Carson,*
  52 F.3d 1173 (2d Cir. 1995) ...................................................................................10

## STATE CASES

*Dillon v. U-A Columbia Cablevision of Westchester, Inc.,*
  292 A.D.2d 25 (App. Div. 2002) .............................................................................20

*DRMAK Realty LLC v. Progressive Credit Union,*
  133 A.D.3d 401 (N.Y. App. Div. 2015) ...................................................................20

*Dubrow v. Herman & Beinin,*
  157 A.D.3d 620 (1st Dep't 2018) ............................................................................20

*WFE Ventures, Inc. v. GBD Lake Placid, LLC,*
  2021 WL 3553495 (App. Div. 2021) .......................................................................20

## STATUTES, RULES, & OTHER AUTHORITIES

28 U.S.C. § 157 (b)(2) .....................................................................................................4

28 U.S.C. § 1334 .............................................................................................................4

28 U.S.C. § 1409 .............................................................................................................4

Rule 7052 ....................................................................................................................1, 9

Rule 9023 ...............................................................................................................1, 4, 8

FRCP 52(b) ......................................................................................................................9

FRCP 59 .......................................................................................................................8, 9

Local Bankruptcy Rules Rule 9023–1 ...........................................................1, 7, 8, 23

New York Rules of Professional Conduct Rule 1.6 ......................................................17

10 COLLIER ON BANKRUPTCY ¶ 7052.03
  (Alan N. Resnick & Henry J. Sommers eds., 16th ed.) .........................................9

Be-Aviv 286 Rider LLC ("**Lender**"), by its undersigned counsel, hereby submits this motion ("**Motion**"), pursuant to Rules 7052 and 9023 of the Federal Rules of Bankruptcy Procedure ("**Rule**"), and Rule 9023-1(a) of the *Local Bankruptcy Rules for the Southern District of New York* ("**Local Rules**"), for relief from and to reconsider the Court's *Order Regarding Development's Motion to Confirm Disputed Payoff Amounts, Satisfaction of DIP Loan, and for Related Relief and Supplement to Same* ("**Order**") [ECF. No. 293], dated February 11, 2022. In support of this Motion, Lender respectfully represents as follows:

## **PRELIMINARY STATEMENT**[1]

1.      The Court's ruling at the February 10, 2022 hearing and the subsequent incorporation of that ruling in the Order need to be reconsidered by the Court to avoid clear error and manifest injustice. Specifically, as it relates directly to Lender, in paragraphs 2 and 3 of the Order, Development was granted relief that is wholly inconsistent with and in violation of prior orders of this Court and is prohibited by the well-established Voluntary Payment Doctrine under New York law. Lender also joins in the Debtor's motion for reconsideration with respect to paragraphs 7 and 9 of the Order for the reasons stated below.[2]

2.      The provisions of paragraphs 2 and 3 of the Order are:

Paragraph 2: The DIP Facility (as defined in the Final DIP Order) has been fully repaid and has terminated.

---

[1]    Capitalized terms used but not defined in this Preliminary Statement shall have the meanings ascribed to them elsewhere in this Motion.

[2]    Lender complied with the requirements of paragraph 1 of the Order.

Paragraph 3: Be-Aviv shall file with the Court by no later than March 4, 2022 at 5:00 p.m. (ET) (i) detailed time and expense records for all requested professional fees and related expenses that Be-Aviv incurred (a) prepetition which were unpaid as of the date of the commencement of this chapter 11 case (the "Petition Date"); (b) from the Petition Date through and including November 22, 2021; and (c) from January 10, 2022 through and including February 10, 2022; and (ii) an estimate of any additional legal fees and related expenses to be incurred from February 11, 2022 through and including April 15, 2022 (collectively, the "Be-Aviv Professional Fees"). Any objections as to the reasonableness of the Be-Aviv Professional Fees must be filed with the Court by no later than March 18, 2022 at 5:00 p.m. (ET). Any reply in support of the Be-Aviv Professional Fees must be filed by no later than March 25, 2022 at 5:00 p.m. (ET). The hearing with respect to the reasonableness of the Be-Aviv Professional Fees shall be on March 29, 2022 at 10:00 a.m. (ET) and will be determined based upon the reasonableness standard under Bankruptcy Code section 506(b).

3.     The Court's statement that the DIP Facility has been terminated ignores the express language of the Final DIP Order that makes explicit that even if all amounts funded under the DIP Facility in accordance to the Budget have been repaid, the Debtor's obligations under the Final DIP Order to pay all of Lender's legal fees and expenses that Lender agreed to accrue have not been satisfied. These legal fees do not cease to accrue under the DIP Facility when the loan amount has been repaid, they continue to be due and owing and to further accrue so long as the obligations under the DIP Facility remain. Also, the provisions of the Final DIP Order remain in full force and effect on all parties-in-interest in this case, including the bar in the Final DIP Order of any challenge to Lender's pre- or post-petition fees.

4.     The Final DIP Order entered by the Court set out specific requirements and time periods for a party to challenge Lender's lien and rights to payment under

#11045830

2

both the pre- and post-petition loans made to the Debtor. Absent complying with those specific provisions, all rights to challenge Lender's rights, claims, and entitlements are lost. Also, to the extent Development or any other party had any objections to the entry of the Final DIP Order, those arguments could have been raised before entry of the Final DIP Order, or the Final DIP Order could have been appealed. Development did neither. It did not institute a Challenge to Lender's lien and other rights granted under the DIP Loan (defined in the Final DIP Order), nor did it appeal the Final DIP Order. It knowingly waived those rights. The Order resurrects and resets the clock on these long-expired rights. This is manifestly improper and erroneous.

5.      Further, the Voluntary Payment Doctrine—which is not addressed in the Order or the oral ruling—is clear and applicable here. Development is not permitted to challenge any portion of the Payment it voluntarily—and without any protest in advance of payment—made. Those portions of the Order that allow Development to review and possibly challenge payments it made are clearly erroneous and manifestly unjust. The Voluntary Payment Doctrine unequivocally bars Development from challenging or recovering any of the money it voluntarily paid to Lender outside of this case. Lender provided the Payoff Notice solely at the request of Development, not of its own accord. Development was required under clear law to protest any portion of the amounts Lender identified in the Payoff Notice ***before***

making the Payment. Development did not. Development should receive no relief enabling it to challenge or seek to recover any portion of the Payment.[3]

6.       Based on the above and for the reasons set forth below in this Motion, the Court should reconsider the Order.

## JURISDICTION

7.       This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157 (b)(2). The statutory predicate for the relief sought is Rule 9023.

8.       Venue is proper pursuant to 28 U.S.C. §1409.

## RELEVANT PROCEDURAL BACKGROUND

9.       On November 23, 2021, the Court entered an order ("**Final DIP Order**") [ECF No. 175][4] authorizing 286 Rider Ave Acquisition LLC ("**Debtor**") to obtain debtor-in-possession financing on a final basis from Lender.

10.       That same day, 286 Rider Ave Development LLC ("**Development**") filed *Motion for Entry of An Order Pursuant to Sections 105(a), 363, 364, 305(a), 349(b), and 1112(b) of the Bankruptcy Code, Authorizing Payoff of Lender Through Exit*

---

[3]    It is unclear what the purpose of granting this review and objection right to Development is. If the Court determines that some of Lender's fees are unreasonable, Lender submits that the Court lacks jurisdiction to order Lender to return any of those fees to Development. The Court did not order Development to pay the funds to Lender, the funds were not paid to Lender by the Debtor, and no property of the estate was involved or implicated by the private transaction between these two non-debtor entities.

[4]    The Order inadvertently misidentified the Final DIP Order was entered at ECF No. 173 rather than ECF No. 175.

#11045830

4

*Refinancing, Claims Procedures, Subsequent Dismissal of This Bankruptcy Case, and Related Relief* ("**First Pay Off Motion**") [Docket No. 171].[5]

11.     Subsequently, on December 29, 2021, Development filed, its second similar motion, *Motion for Entry of An Order Pursuant to Sections 105(a) and 541 of the Bankruptcy Code Confirming Disputed Payoff Amounts, Satisfaction of the DIP Loan, and for Related Relief* ("**Second Payoff Motion**") [ECF No. 218].

12.     In response to the Second Payoff Motion, on January 4, 2022, Lender filed *Be-Aviv 286 Rider LLC's Response to Motion for Entry of an Order Pursuant to Sections 105(A) and 541 of the Bankruptcy Code Confirming Disputed Payoff Amount* [ECF No. 233]. Also in response to the Second Payoff Motion, the Debtor filed *Debtor's Objection to 286 Rider Ave Development LLC's Motion for Entry of an Order Pursuant to Sections 105(A) and 541 of the Bankruptcy Code Confirming Disputed Payoff Amounts, Satisfaction of DIP Loan, and for Related Relief* [ECF No. 234] that same day.

13.     Development, on January 5, 2022, replied to Lender's and the Debtor's responses to the Second Payoff Motion with the filing of its *Response in Further Support of Motion for Entry of an Order Pursuant to Sections 105(A) and 541 of the Bankruptcy Code Confirming Disputed Payoff Amounts, Satisfaction Of DIP Loan,*

---

[5]     Lender [ECF No. 185] and the Debtor [ECF No. 183] responded to the First Payoff Motion, in which they laid out how it was commercially and procedurally defective. Lender also offered a road map to address the infirmities with the First Payoff Motion. Development chose to continue with its scorched earth tactic and filed the Second Payoff Motion (defined herein).

#11045830

*and for Related Relief* [ECF No. 238] on January 5, 2022. On January 11, 2022, Development filed the *Notice of Payoff and Confirmation of Wire* ("**Wire Notice**") [ECF No. 257]. The Wire Notice attached (a) Lender's January 9, 2022 Loan Payoff Notice ("**Payoff Notice**") and (b) Development's January 11, 2022 letter ("**Payoff Letter**") that was sent to Lender after the $11,918,974.12 wire ("**Payment**") was initiated.

14.    The Court held a hearing to consider the Second Payoff Motion on January 12, 2022, and entered an order providing for supplemental briefing and scheduling with respect to the Second Payoff Motion ("**Scheduling Order**") [ECF No. 259].[6]

15.    Pursuant to the Scheduling Order, on January 26, 2022, Development filed the *Supplement to Development's Motion to Confirm Disputed Payoff Amounts, Satisfaction of DIP Loan, and for Related Relief* ("**Supplement**") [ECF No. 272]; thereby supplementing the Second Payoff Motion.

16.    On February 4, 2022, a number of parties, consistent with the Scheduling Order, filed further response to the Second Payoff Motion and the Supplement. Specifically, the responses, among others, to the Supplement included: (a) Lender's *Be-Aviv 286 Rider LLC's Response to Supplement to Development's*

---

[6]    The Scheduling Order set out specific requirements—requirements we now know Development did not meet and thumbed its nose at—and gave Development a third bite at the apple concerning its payoff strategy by setting out a schedule with further briefing and that allowed Development an opportunity to supplement the Second Payoff Motion.

#11045830

*Motion to Confirm Disputed Payoff Amounts, Satisfaction Of DIP Loans, and Related Relief* ("**Lender Second Response**") [ECF No. 286]; (b) the Debtor's *Debtor's Response to 286 Rider Ave Development LLC's Supplement to Its Motion to Confirm Disputed Payoff Amounts and for Related Relief* [ECF No. 283]; (c) Rosewood Realty Group's *Response of Rosewood Realty Group to Motion for Entry of an Order Pursuant to Sections 105(A) And 541 of the Bankruptcy Code Confirming Disputed Payoff Amounts, Satisfaction of DIP Loan, and for Related Relief* [ECF No. 282]; and (d) *Objection of the United States Trustee to the Motion of 286 Rider Ave Development LLC for an Order Confirming the Disputed Payoff Amounts, Satisfying DIP Loan, and for Related Relief* [ECF No. 284].

17.     On February 8, 2022, Development filed an omnibus reply, *Ominibus* [sic] *Response by Development in Further Support of Motion to Confirm Disputed Payoff Amounts, Satisfaction of DIP Loan, and for Related Relief* ("**Omnibus Reply**") [ECF No. 289], in support of the Supplement and the Second Payoff Motion.

18.     This Court, on February 10, 2022, held a hearing to address these above-described submissions. The Court ruled from the bench and then, subsequently, set its ruling out in the Order, which was entered on February 11, 2022.

## RELIEF REQUESTED

19.     By this Motion, Lender respectfully requests that this Court (i) grant reconsideration of the Order, specifically, paragraphs 2, 3, and 7 of the Order, under Rule 9023 and Local Rule 9023–1; (ii) bar Development from challenging any of the amounts contained in the Payment; (iii) amend and revise the Order in accordance

#11045830

7

with the arguments set out in this Motion; and (iv) grant Lender such other and further relief as the Court deems just and proper.

## ARGUMENT

### A.    Motion to Amend Standard

20.    Rule 9023, which incorporates Federal Rule of Civil Procedure ("**FRCP**") 59, governs motions to alter or amend a judgment. The Second Circuit has explained that under FRCP 59, "'district courts may alter or amend judgment to correct a clear error of law or prevent manifest injustice,' [and] that the rule 'covers a broad range of motions.'" *ING Global v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 96 (2d Cir 2014) (quoting *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 153 (2d Cir. 2008)). In general, courts recognize three possible grounds for granting motions for reconsideration under FRCP 59; these three grounds are "intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Henderson v. Metro. Bank & Trust Co.*, 502 F. Supp. 2d 372, 375–76 (S.D.N.Y. 2007) (quotation marks and citations omitted); *see also Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) ("Reconsideration may be granted to correct clear error, prevent manifest injustice or review the court's decision in light of the availability of new evidence.").

21.    Local Rule 9023–1 provides that motions for reconsideration "shall set forth concisely the matters or controlling decisions which counsel believes the Court has not considered." U.S. Bankr. Ct. Rules S.D.N.Y., Local Rule 9023–1.

#11045830

22.     Courts have imposed a strict standard under FRCP 59. "[A] motion for reconsideration or reargument 'will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Lehmuller v. Incorporated Village of Sag Harbor*, 982 F. Supp. 132,135 (E.D.N.Y. 1997) (quoting *Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). The matters overlooked by the court must be matters that were put before the court in the original motion. *See Eismann v. Green*, 204 F.3d 393, 395 n.2 (2d Cir. 2000) (citing *Shamis v. Ambassador Factors Corp.*, 187 F.R.D. 148, 151 (S.D.N.Y. 1999)). "The rule is calculated to 'insure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" *In re Jamesway Corp.*, 203 B.R. 543, 546 (Bankr. S.D.N.Y. 1996).

23.     Rule 7052, which incorporates FRCP 52(b), governs requests to amend findings or for the Court to make additional findings. "The standard for amending or adding findings under Rule 52(b) is nearly identical to the standard for granting similar relief under Rule 59(e)." 10 Collier on Bankruptcy ¶ 7052.03 (Alan N. Resnick & Henry J. Sommers eds., 16th ed.). "The purpose of post-judgment motions under Rule 52(b) is to give the district court an opportunity to correct manifest errors of law or fact at trial, or in some limited situations, to present newly discovered evidence." *United States v. Local 1804-1, Int'l Longshoremen's Ass'n*, 831 F. Supp.

#11045830

9

167, 169 (S.D.N.Y. 1993), *aff'd sub nom. United States v. Carson*, 52 F.3d 1173 (2d Cir. 1995).

24. Here, paragraphs 2 and 3 of the Order are wholly inconsistent with (a) the requirements set out by the Court in the Final DIP Order and (b) the Voluntary Payment Doctrine. Lender raised its concerns with this type of relief in the Lender Second Response. As such, Lender seeks reconsideration of the Order on the grounds set forth in this Motion to avoid clear error and manifest injustice.

## B.   **The Final DIP Order**

25. There are multiple provisions of the Final DIP Order that are squarely inconsistent with Development's requests and the relief it was granted in paragraphs 2 and 3 of the Order. Specifically, paragraphs G(v) (DIP Obligations), 17 (the Challenge Period), and 26 (Professional Fee Procedural Requirements) of the Final DIP Order.

### *i.   The Challenge Period*

26. In the Final DIP Order the definition of "Prepetition Indebtedness" includes:

> reasonable and documented attorney's fees, charges, and disbursements of counsel incurred in connection with the enforcement or protection of such party's rights, plus all other amounts advanced by the lender prior to the Petition Date to proposed counsel to the Debtor as its retainer and for the filing fee for the chapter 11 case all of which are added to and increase the amount of the Pre-Petition Loan and constitute Obligations under the Prepetition Loan

Final DIP Order, ¶F(i).

#11045830

10

27.     Under paragraph 17 of the Final DIP Order, in order to have the right to challenge Lender's entitlement to fees, parties-in-interest (this included Development) had to commence an adversary proceeding or contested matter:

> (a) challenging the validity, enforceability, priority, or extent of the Prepetition Indebtedness, the Prepetition Loan Documents, or the Prepetition Secured Lender's liens on the Prepetition Collateral or (b) ***otherwise asserting or prosecuting*** any action for preferences, fraudulent conveyances, other avoidance power claims, subordination, recharacterization, or any other claims, counterclaims, or causes of action, ***objections***, contests, or defenses (collectively, "**Claims and Defenses**") against the Prepetition Secured Lender or any of its respective affiliates, representatives, attorneys, or advisors in connection with matters related to the Prepetition Indebtedness, the Prepetition Loan Documents, the Prepetition Collateral, or the Prepetition Secured Lender's liens on the Prepetition Collateral, as applicable (such adversary proceeding or Claims and Defenses, a "**Challenge**"), with respect to all parties in interest with requisite standing other than the Debtor, by no later than the date that is sixty (60) days after the entry of this Final Order, or as otherwise ordered by the Court ( "**Challenge Period**").

Final DIP Order, ¶17 (emphasis added).

28.     Under the Final DIP Order if no Challenge is properly commenced, then:

> **the Prepetition Indebtedness and all related obligations of the Debtor shall constitute allowed claims not subject to counterclaim, setoff, recoupment, subordination, recharacterization, defense, or avoidance, for all purposes, in the Case and any subsequent chapter 7 case,** (y) the Prepetition Secured Lender's liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be legal, valid, binding, and perfected liens not subject to defense, counterclaim, recharacterization, subordination, or avoidance . . . .

*Id.*

29.     But most critically with respect to the relief the Court granted Development in the Order, if no Challenge is initiated, Development's failure to

#11045830

11

initiate a Challenge irrevocably precludes its ability to seek review of Lender's fees and this Court committed clear error when it granted this relief:

> (z) the Prepetition Indebtedness, the Prepetition Loan Documents, and the liens of the Prepetition Secured Lender on the Prepetition Collateral ***shall not be subject to any other or further challenge by the Debtor, any committee, or any party in interest,*** including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or chapter 11 trustee appointed or elected for the Debtor with respect thereto).

*Id.* (emphasis added).

30.    As stated above, the Final DIP Order was entered on November 23, 2021, which made the end of the Challenge Period January 22, 2022. After Development made the Payoff on January 11, 2022, it still had 11 days to ***challenge*** any portion of the Prepetition Indebtedness, the composition of which was delineated in the Payoff Notice. But it did not do so. Development ***failed to initiate a Challenge*** to the Prepetition Indebtedness by January 22, 2022, the deadline set forth in the Final DIP Order. In accordance with the Final DIP Order, Development is barred from seeking any information or taking any action in connection with any of Lender's prepetition calculations that make-up Prepetition Indebtedness, including Lender's prepetition attorney's fees.

31.    The Order erroneously resurrects, solely for Development's benefit, the right to challenge Lender's fees. This is clearly in direct violation of the Final DIP Order. As such, the Court should reconsider the relief granted in paragraph 3 of the Order in light of its prior rulings so as to avoid a clear error and manifest injustice. Namely, the inherent strength of this Court's orders being followed when issued and

#11045830

12

relied on by the parties and, also, so that those who do follow the Court's orders are not injured by those seeking an impermissible do-over.

   *ii.    Professional Fee Procedure Requirements*

32.    Moreover, the only parties in this case entitled to review Lender's fees on account of fees incurred under the Final DIP Order, are the U.S. Trustee and the Debtor after submission of an invoice to the Debtor and the U.S. Trustee. No other party has this right. Final DIP Order, ¶26. If no objection is made to the payment of the fees by either the Debtor or the U.S. Trustee, **no Court approval of the fees is required** and the fees invoiced must be paid.

33.    The Final DIP Order provides that the Court can become involved to resolve a dispute raised by the Debtor, U.S. Trustee, or a committee, which does not exist in this case. The relevant provisions of the Final DIP Order are contained in Paragraph 26 of the Final DIP Order, which is set forth below:

> Professional Fee Procedural Requirements. A copy of each invoice of any professional of the DIP Lender or the Prepetition Secured Lender shall be submitted to the Debtor, the U.S. Trustee, and any Committee for professional fees, expenses, and disbursements (to the extent incurred by such professionals after the Petition Date, the payment of which is authorized by this Final Order (such fees and expenses, the "Lender Professional Fees"). ***The invoices for such Lender Professional Fees may be in summary form only (and shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information***, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine). ***None of the Lender Professional Fees shall be subject to Court approval (subject to this paragraph 26) or required to be maintained in accordance with the U.S. Trustee Guidelines and***

#11045830

13

***no recipient of any payment on account thereof shall be required
to file with respect thereto any Final or final fee application with
the Court***. If no written objections to the reasonableness of the fees and
expenses charged in any such statement or invoice (or portion thereof)
is made within ten (10) days of presentment of such statements or
invoices, the Debtor shall thereafter promptly pay in cash all such
Lender Professional Fees. Any objection raised by the Debtor, the U.S.
Trustee or any Committee with respect to such fee and expense
statements or invoices (with notice of such objection provided to the DIP
Lender and to the respective professional) may be made only on the basis
of "reasonableness," and shall specify in writing the amount of the
contested fees and expenses and the detailed basis for such objection. To
the extent an objection only contests a portion of an invoice, the
undisputed portion thereof shall be promptly paid. If any such objection
to payment of an invoice (or any portion thereof) is not otherwise
resolved between the Debtor, any Committee or the U.S. Trustee and
the respective professional, either party may submit such dispute to the
Court for a determination as to the reasonableness of the relevant
disputed fees and expenses set forth in the invoice. This Court shall
retain the jurisdiction to resolve any dispute as to the reasonableness of
any such fees and expenses. Such fees and expenses shall not be limited
by the Budget and shall not be subject to any offset, defense, claim,
counterclaim or diminution of any type, kind or nature whatsoever
unless expressly provided herein. To the extent provided in the DIP
Facility and with the DIP Lender's and the Prepetition Secured Lender's
consent, the Debtor may accrue these payments.

Final DIP Order, ¶26 (emphasis added).

34.    The above-stated language from paragraph 26 of the Final DIP Order

directly conflicts with the relief granted in the Order. Specifically, the fact that

Development is being given an opportunity to challenge Lender's fees (*see* Order, ¶3)

and, also, the nature of the time records Lender has now been ordered to produce

(*id.*).

35.    The Court also overlooked that although the Final DIP Order was

entered on November 23, 2021 (this was because Development's stonewalling the

#11045830

14

Debtor in obtaining necessary creditor information for notice purposes), all of Lender's attorney's fees and expenses that were incurred prior to the entry of the Final DIP Order in connection with this case are included in the fees that the Debtor is obligated to pay Lender under the DIP Loan.

36.    In accordance with section 10(n) of the approved DIP Loan Agreement:

Unless the Lender agrees otherwise, upon receipt of the first borrowing, Borrower shall pay all reasonable fees incurred in connection with the creation of this Agreement, and any related agreements. Borrower agrees to promptly pay all reasonable costs, charges, and expenses incurred by Lender and its assigns (including, without limitation, reasonable costs of collection, court costs, and reasonable and documented attorneys' fees and disbursements incurred in connection with the monitoring of and participation in the Case) in connection with the enforcement of Lender's rights under this Agreement. Borrower shall be liable to the Lender for any reasonable costs and expenses (including, without limitation, all reasonable fees and disbursements of external counsel to the Lender) incurred by the Lender which may arise under, out of, or in connection with, this Agreement and any other document made, delivered, or given in connection therewith or herewith, whether on account of principal, interest, guaranties, reimbursement obligations, fees, indemnities, costs, expenses, or otherwise; and any and all reasonable sums, costs, and expenses which the Lender may pay or incur pursuant to the provisions of this Agreement or in defending, protecting, or enforcing the Liens granted herein or otherwise in connection with the provisions hereof; in each case including without limitation (i) all reasonable search, filing, and recording fees and expenses, (ii) all reasonable fees and expenses for the service and filing of papers, fees of marshals, sheriffs, custodians, auctioneers, and others, reasonable travel expenses, court costs, and collection charges, and (iii) all reasonable fees and expenses, appraisal fees, taxes, levies and reasonable attorneys' and accountants' fees and expenses in any suit, proceeding, or action brought by the Lender under any Account or contract for any sum owing thereunder, or to enforce any provisions of any Account or contract, by reason of any defense, setoff, counterclaim, recoupment, or reduction or liability whatsoever of the Account debtor or obligor thereunder, or otherwise (iv) in connection with the repossession, holding, preparation for sale and sale of the Collateral, (v)

#11045830

15

with respect to, or resulting from any delay in paying, any and all excise, sales, or other taxes which may be payable or determined to be payable with respect to any of the Collateral, or (vi) with respect to, or resulting from, any delay in complying with any requirement of law applicable to any of the Collateral: and all such liabilities shall be part of the obligations and shall be payable upon demand. Further, Borrower agrees to pay, on a monthly basis, the reasonable fees and expenses of Lender's legal counsel arising from or related to the Agreement and the Case. Borrower also agrees to pay the fees and expenses of the financial advisor, appraisers, and other third-party consultants of Lender in connection with this Agreement and the Case.

Final DIP Order, Exhibit 1, §10(n).

37.    Additionally, Lender should not be required to provide full detailed time records **now** when it was **not required** to keep them in the first instance under paragraph 26 of the Final DIP Order. Further, in light of the pending litigation between Lender and Development this type of information should not be available to Development as it may contain information that could be used in the pending (or future) litigation.

38.    Additionally, while billing records are not confidential attorney-client communications, "correspondence, bills, ledgers, statements and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege." *Kelly v. La Brie (In re Kelly)*, No. 01-11686, 2003 WL 24244575 at *3 (Bankr. D. Vt. April 24, 2003). As a result of the Order, Lender is to release unredacted time records and, thereby, disclosing privileged information. The proposed process set forth in paragraph 3 the Order mandates the invasion of those privileged communications. The Court could not have intended Lender to purposely

#11045830

disclose its privileged communications while there is pending litigation between the parties. *See* Rule 1.6 of the New York Rules of Professional Conduct. ("A lawyer shall not knowingly reveal confidential information . . . .").

39.    To the extent the Court determines that time records are to be produced, at a minimum, the Order should be revised to permit Lender to produce only redacted time records to the parties and unredacted records only for the Court's *in camera* review.

40.    Therefore, the Court should reconsider the relief granted in paragraph 3 of the Order in light of its prior directions in paragraph 26 of the Final DIP Order to avoid clear error and manifest injustice.

### iii.    *Lender's Remaining Secured Claim*

41.    Paragraph 2 of the Order states "[t]he DIP Facility (as defined in the Final DIP Order) has been fully repaid and has terminated." Order, ¶2.

42.    Although it is true that the amounts owed to Lender on account of funds loaned to the Debtor have been paid by Development, there still remain continuing obligations owed to Lender, including its attorney's fees under both the pre-petition loan and the Final DIP Order. *See* Final DIP Order, ¶G(v)—DIP Obligations (as defined in the Final DIP Order) include "all attorney's fees . . . in connection with . . . this Bankruptcy Case . . . ." This language does, of course, include the pending appeals and other pending motions; *see also Promissory Note*, dated September 19, 2019 ("**Note**"), p.4 and that certain *Mortgage and Security Agreement by 286 Rider Ave*

#11045830

17

*Acquisition LLC for the benefit of Be-Aviv 286 Rider LLC*, dated September 19, 2019 ("**Mortgage**"), §§1.7(c) and 1.17(b).

43.     Therefore, the remaining attorney's fees are a DIP Obligation (as defined in the Final DIP Order, ¶G(v)) and are: (i) secured against the DIP Collateral (as defined in the Final DIP Order, ¶5),(ii) a deemed "allowed senior superpriority administrative expense claim against the Debtor" (Final DIP Order, ¶3), and a liability under the Prepetiton Loan (Mortgage, §§1.7(c), 1.17(b) and Note, p.4). Development did not appeal the Final DIP Order or institute a challenge under the Final DIP Order and has no right to challenge any of these fees regardless under what basis they arise.

44.     As such, Lender's monetary claim consists of its outstanding attorney's fees of $251,705.27 as of January 31, 2022, and an estimated amount of $100,000 of fees for February 2022, for a total of $351,705.27 (this amount may increase based on what additional work Lender's counsel may need to perform). And as stated above, this claim is a secured claim. This remaining secured claim is all that is before the Court; any other amounts at issue between Lender, the Debtor, or Development are not now challengeable for the reasons set out in this Motion. To be clear, there are other obligations owed to Lender under the pre- and post-petition loans that exist and continue to accrue until ***all*** obligations (financial and otherwise) are fully satisfied, though those non-monetary obligations were not the subject of Order.

#11045830

18

45.    To that end, the Court's reliance on Section 506 (Determination of Secured Status) of the Bankruptcy Code in the Order seems overbroad. Section 506 is meant to address secured claims in existence against a debtor's estate, not to determine amounts already paid and claims no longer asserted (under any section of the Bankruptcy Code), and which are no longer before the Court.

46.    Accordingly, to the extent the Court is not persuaded that none of the Lender's fees are subject to review or challenge by Development, the Court's review should be solely *in camera* and limited to the amount outstanding after the Payment, which in the Lender Second Response was set out as **$351,705.27**, but continues to accrue as Lender defends its positions in this case and elsewhere.

47.    Based on the above, the Court should reconsider the relief set out in the Order and any review should be amended and limited to that which is actually before the Court.

## C.    The Voluntary Payment Doctrine

48.    In addition to the specific language of the Final DIP Order addressed above, Development is also ***barred*** from the relief granted in paragraphs 2 and 3 of the Order because of Development's own ***voluntary*** actions under the "Voluntary Payment Doctrine."

49.    As previously set-out in the Lender Second Response, the ***long-established*** Voluntary Payment Doctrine under New York law bars Development from recovering any payment it voluntarily made to Lender "with full knowledge of the facts, and in the absence of fraud or material mistake of fact or

#11045830

law."[7] *Dubrow v. Herman & Beinin*, 157 A.D.3d 620 (1st Dep't 2018) (citation and quotation marks omitted). The Voluntary Payment Doctrine applies equally to Federal Courts interpreting New York law, as federal courts must apply the choice-of-law rules of the forum in which they sit. *Wells Fargo Bank v. Deerbrook Mall, LLC*, 2021 WL 5054644 at *5 (S.D. Tex. Nov. 1, 2021) citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

50.    The doctrine is predicated on the principle that "[t]he onus is on a party that receives what it perceives as an improper demand for money to 'take its position at the time of the demand, and litigate the issue before, rather than after, payment is made.'" *DRMAK Realty LLC v. Progressive Credit Union*, 133 A.D.3d 401, 403 (N.Y. App. Div. 2015); *see also*, *WFE Ventures, Inc. v. GBD Lake Placid, LLC*, 2021 WL 3553495 (App. Div. 2021) ("The doctrine . . . essentially prevents the paying party from thereafter changing his or her mind by seeking to recoup that payment voluntarily made under those circumstances."); *see, e.g.*, *Spagnola v. Chubb Corp.*, 574 F.3d 64, 72 (2d Cir. 2009) (quoting *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 292 A.D.2d 25, 27 (App. Div. 2002)); *Wells Fargo Bank v. Deerbrook Mall, LLC*, 2021 WL 5054644 (after making full payment including legal fees to Lender to stop the foreclosure sale, borrower sought to challenge the reasonableness

---

[7]    For the avoidance of doubt, payments under the Voluntary Payment Doctrine include **all** amounts covered by the Payoff Notice and paid in the Payment.

#11045830

of the attorney's fees; the court conducted a thorough analysis of the Voluntary Payment Doctrine and held that the Doctrine barred the borrower's challenge).

51. The Voluntary Payment Doctrine argument was not addressed either at the February 10 hearing or in the Order, but it is clearly applicable here and should be reconsidered by the Court. Development attempted in the Omnibus Reply to address the Voluntary Payment Doctrine, but failed to set forth any legitimate basis for why it should not apply to the Payment.

52. Specifically, Development asserted that (a) it was under compulsion or duress when making the Payment and (b) it reserved its rights in the Payoff Letter. *See, e.g.,* Omnibus Reply, ¶¶18-26. Neither are factually accurate.

53. To be clear, there was no compulsion or duress present here. Development requested the payoff information of its own volition and the property at issue in this case was not in any threat of imminent danger. To the contrary, the property here was protected by a Federal Bankruptcy Court. And Development is a sophisticated party that regularly conducts complex real estate transactions, is and has been involved in complex civil proceedings before this and other courts, and was adequately represented in this case as evidenced by (a) its multiple set of counsel and (b) its numerous filings in this case.

54. More to the point, as discussed with the Court during multiple hearings, Development could have fully funded an escrow with the Court or other secure account, or become a plan proponent and made a funding commitment, or wired the

#11045830

21

funds to Debtor's counsel to be held in trust, or even become a qualified bidder in the proposed sale process, all of which would have protected its rights and the property. But Development **voluntarily** chose the payoff strategy.

55.     Moreover, Development **made no protest** to the payoff amount set out in the Payoff Notice. The reservation language in the Payoff Letter Development pins its argument to—to the extent sufficient at all in the present situation (it is not)— was made **after** the Payment and did not set out any actual issue with the amounts identified in the Payoff Notice. *See, e.g., Wells Fargo Bank v. Deerbrook Mall, LLC*, 2021 WL 5054644. As such, the reservation of rights cannot preserve, reserve, or create rights that Development does not have; there was nothing to reserve by Development under the Voluntary Payment Doctrine.

56.     Failing to apply the Voluntary Payment Doctrine to the relief Development sought and this Court granted in the Order is a clear error and should be reconsidered to avoid a manifest injustice. Further, the Order is in conflict with well settled law in this jurisdiction.

## JOINDER AND INCORPORATION BY REFERENCE

57.     Lender fully incorporates by reference all arguments and positions raised in the Lender Second Response and its letter dated February 22, 2022 [ECF No. 305].

58.     Lender respectfully joins in, adopts as its own, and incorporates by reference as if fully set forth herein the entire contents of the Debtor's papers seeking reconsideration of the Order. For avoidance of doubt and as addressed in this Motion,

#11045830

22

the requirements set out for the Debtor in paragraph 5 of the Order could contain information that is protected through a common interest/joint defense privilege and that could, absent reconsideration of the Order, be used in the pending (or future) litigation between Lender and Development.

## **CONCLUSION**

WHEREFORE, Lender respectfully requests that the Court (i) grant reconsideration of the Order, specifically, paragraphs 2, 3, and 7 of the Order, under Rule 9023 and Local Rule 9023–1; (ii) bar Development from challenging any of the amounts contained in the Payment; (iii) amend and revise the Order in accordance with the arguments set out in this Motion; and (iv) grant Lender such other and further relief as the Court deems just and proper.

Dated: New York, New York
     February 25, 2022

MORRISON COHEN LLP

By: /s/ Joseph T. Moldovan
    Joseph T. Moldovan, Esq.
    Heath D. Rosenblat, Esq.
    David J. Kozlowski, Esq.

909 Third Avenue
New York, New York 10022
(212) 735-8600
jmoldovan@morrisoncohen.com
hrosenblat@morrisoncohen.com
dkozlowski@morrisoncohen.com

*Attorneys for Be-Aviv 286 Rider LLC*

#11045830

23