**MAYER BROWN LLP**
Douglas Spelfogel
Leah Eisenberg
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

*Special Counsel to 286 Rider Ave Development LLC*

**OFFIT KURMAN, P.A.**
Jason A. Nagi
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900

and

Joyce A. Kuhns, Esq. (Admitted *Pro Hac Vice*)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
Tel (410) 209-6463

*Attorneys for 286 Rider Ave Development LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re:* | **Chapter -11** |
| **286 Rider Ave Acquisition LLC** | **Case No. 21-11298 (LGB)** |
| **Debtor.** | |

**OMNIBUS RESPONSE TO NOMINAL DEBTOR'S AND LENDER'S MOTIONS FOR RECONSIDERATION**

286 Rider Ave Development LLC ("Development"), by and through its undersigned counsel Mayer Brown LLP and Offit Kurman, P.A., hereby submits this Omnibus Response (the "Response") in opposition to nominal *Debtor's and Lee. E. Buchwald's Motion to Reconsider Portion of Court's February 11, 2022 Order Regarding 286 Rider Ave Development, LLC's Motion to Confirm Disputed Pay-Off Amounts, Satisfaction of DIP Loan, and for Related Relief*

746544466

*and Supplement to Same* [ECF No. 311] (the "Debtor Motion") and the Motion by Be-Aviv 286 Rider LLC, Under Rule 7052 and 9023 Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 9023-1, for Relief From and to Reconsider the Court's February 11, 2022 Order [ECF No. 312] (the "Lender Motion" and, together with the nominal Debtor Motion, the "Motions to Reconsider") and in support thereof states as follows:

## PRELIMINARY STATEMENT

1. Despite this Court's repeated statements in support of an orderly conclusion to this bankruptcy case as proposed by Development and its multiple orders in support of such outcome, the nominal Debtor (actually, its potentially conflicted counsel and its self-interested, defectively-appointed manager)[1] and Be-Aviv 286 Rider LLC (the "Lender") have continued to resist and refuse to abide by the Court's directives, instead escalating their scorched-earth campaign to maximize their own fees at the expense of the Debtor, creditors, Development and their principals.

2. The requirements to document fees, account for their respective claims, and comply with the requirement under Sections 364 and 506 of the Bankruptcy Code are neither novel or extraordinary. Development has paid nearly $12 million to satisfy the prepetition and postpetition claims of the Lender (which fully satisfied the amounts asserted in its Payoff Notice) and has committed to paying all other legitimate and reasonable claims against the Debtor (or through stipulations for treatment outside of the bankruptcy case) and subject to dismissal of the subject

---

[1] Robinson Brog needs to explain exactly whose interests it purports to represent, as the Debtor Motion is entirely unclear on that point. The title of the Debtor Motion purports to be a filing on behalf of the Debtor and Lee E. Buchwald. The introductory paragraph says on the one hand that it is filed by the Debtor but then describes Mr. Buchwald and Robinson Brog as the "Movants." And it is the "Movants" who seek relief throughout. The signature block to the Debtor Motion is signed by Mr. Ringel of Robinson Brog as "Attorneys for the Debtor" but there is no signature purporting to be on behalf of Mr. Buchwald. Something is amiss. First, Local Rule 9011-1 has not been complied with, as at least one of the "Movants" did not sign the Debtor Motion. Second, to the extent that Robinson Brog is representing Mr. Buchwald individually, it is doing so without previously disclosing its dual representation to the Court and potentially in violation of its statutory duties under, *inter alia*, Section 327 of the Bankruptcy Code.

2

case. However, in connection with the foregoing, as this Court has made clear, Development has retained the ability to limit its exposure in the same way that any other party-in-interest could—by limiting the fees awarded to the Debtor's and Lender's counsel to reasonable, documented fees actually incurred and reimbursable for services rendered and related to the instant case.

3. Given the requirement that attorney's fees must be reasonable, and the excessive fees alleged to have been incurred to date (which together with the nominal Debtor and Lender exceed $2.25 million), there is a very strong likelihood that the Lender has been significantly overpaid for the fees claimed to have been incurred to date.

4. After notice and hearing on February 10, 2022, the Court granted Development's Supplemental Motion. At such time, the Court correctly determined that under the Bankruptcy Code and applicable non-bankruptcy law, the Bankruptcy Court has jurisdiction over the Debtor and Lender, and their respective claims, and oversight authority to review the "reasonableness" of the claims and fees asserted (including the payoff of the DIP Loan), whether such is for court-authorized estate professionals or for secured lenders.

5. Despite well-established law and the Court's clear rulings, the Debtor and Lender have improperly sought a second bite at the apple, requesting the extraordinary remedy of relief from this Court's prior rulings, and refusing to provide any accounting or billing detail, without even suggesting that there has been a change of facts or law. Instead, they would have the Court reverse its own rulings *solely* to avoid any scrutiny or accountability for the excessive fees that were incurred in this bankruptcy case. The Debtor's and Lender's attorneys should not be rewarded for their obstinate refusal to follow the Bankruptcy Code. The Motions to Reconsider, therefore, should be denied.

## PROCEDURAL BACKGROUND

6. This bankruptcy case was filed on July 15, 2021, following the Lender's purported exercise of rights with respect to its security interest in Development's equity interests in the Debtor.

7. As this Court is well-aware, the filing of this bankruptcy case was premised on the Lender's assertion of *absolute ownership* over Development's equity interests in the Debtor and its exercise of such ownership rights. But the Lender never owned any equity in the Debtor, as has been subsequently acknowledged, and so, on that basis among others, Development sought dismissal of this bankruptcy case which remains subject to separate motion.

8. At the same time, on December 29, 2021, Development filed its *Motion for Entry of an Order Pursuant to Sections 105(a) and 541 of the Bankruptcy Code Confirming Disputed Payoff Amounts, Satisfaction of the DIP Loan, and for Related Relief* [ECF No. 218] (the "Payoff Motion"). The Payoff Motion was tailored to satisfy the conditions imposed by the Court at the December 9 hearing on an earlier motion filed by Development.

9. In connection with the Payoff Motion, on January 11, 2022, Development wired $11,918,974.12 to the Lender (the "Lender Payoff"), reflecting payment in full of principal and interest on both the pre-petition and DIP loans made by the Lender to the Debtor plus asserted fees and expenses, which amount was based on the payoff statement that the Lender had previously provided.

10. Following briefing and a hearing on the Payoff Motion, this Court entered an order on January 12, 2022 (the "January 12 Order") establishing procedures for determining the amount of the remaining claims in the instant case, and upon resolution of such, the potential dismissal of the bankruptcy case.

11. Specifically, the January 12 Order required Development to file a supplement to the Payoff Motion requesting additional relief, including the determination allowable administrative expenses and the Lender's reimbursable legal fees. As required by the January 12 Order, Development filed its *Supplement to Development's Motion to Confirm Disputed Payoff Amounts, Satisfaction of DIP Loan, and for Related Relief* [ECF No. 272] (the "Supplement") on January 26, 2022. The Supplemental Motion sought to establish procedures that would culminate in the dismissal of this bankruptcy case following the fixing and payment of all allowed claims, including administrative expense claims.

12. As the Lender has already been paid off and all other pre-bankruptcy creditors of the Debtor have agreed to payment outside of the bankruptcy case conditioned on its dismissal, only properly allowed administrative expenses remain prior to dismissal of this bankruptcy case pursuant to the January 12 Order. Nevertheless, the nominal Debtor and Lender both objected to the Supplemental Motion. The Lender's objection [ECF No. 286] (the "Lender Objection") argued, among other things, that the "voluntary payment doctrine" and Final DIP Order precluded any scrutiny into the Lender's accrued fees, while the Debtor's objection [ECF No. 283] (the "Debtor Objection") focused on the payment of administrative expenses and Robinson Brog (in its role as attorney for the nominal Debtor) unusual desire to proceed with a costly plan process despite the lack of business justification (and contrary to the will of the creditors) for doing so.

13. This Court held a hearing on the Payoff Motion and the Supplemental Motion on February 10, 2022. Following the February 10 hearing, on February 11, 2022, the Court entered an order [ECF No. 293] (as subsequently amended by ECF Nos. 302 and 319, the "February 11 Order") which substantially granted the Payoff Motion and Supplemental Motion, with conditions.

5

14. Among other things, the February 11 Order[2]:

    a. required the Lender to provide a complete accounting of the DIP loan no later than February 25, 2022, including details concerning interest paid on the DIP loan and all fees incurred by the Lender with respect to the DIP loan;

    b. confirmed that the DIP facility had been fully repaid and terminated (as a result of the Lender Payoff);

    c. required the Lender to file detailed time records with respect to its requested professional fees no later than March 18, 2022 (originally March 4, 2022);

    d. required the Debtor's attorneys to file their final fee application, and required Mr. Buchwald to file his administrative expense application, no later than March 18, 2022 (originally March 4, 2022);

    e. required any other administrative expense claimants to file their fee or expense applications no later than March 4, 2022;

    f. scheduled a hearing for March 29, 2022 to consider the reasonableness of the Lender's professional fees and allowance of the other parties' administrative expense/fee applications; and

    g. scheduling a hearing for April 4, 2022, to consider dismissal of this bankruptcy case.

15. Following entry of the February 11 Order, and notwithstanding the entry of such order, Robinson Brog (in its role as attorney for the nominal Debtor) and Lender continued to resist Development's efforts to provide for a straightforward exit from this bankruptcy case, filing numerous letter/motions, and the subject motions, while continuing to improperly incur excessive professional fees.

---

[2] Certain deadlines under the original February 11 Order were extended by further order of the Court [ECF No. 319].

16. To that end, after trying to relitigate the Payoff Motion and Supplement by letter[3] in violation of applicable Bankruptcy Rules, on February 25, 2022, Robinson Brog (in its role as attorney for the nominal Debtor) and Lender filed their Motions to Reconsider.

## **ARGUMENT**

17. The Motions to Reconsider are filed under Rule 59 of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 9023, and Rule 52(b) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7052.

18. As noted in the Motions to Reconsider, such motions may only be granted on the basis of an "intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Lender Motion ¶ 20 (quoting *Henderson v. Metro. Bank & Trust Co.*, 502 F. Supp. 2d 372, 375-76 (S.D.N.Y. 2007); *see* Debtor Motion ¶ 28 (quoting *In re Barquet Group, Inc.*, 477 B.R. 454, 460 (Bankr. S.D.N.Y. 2012). "The rule permitting reargument is strictly construed to avoid repetitive arguments on issues that the court has already fully considered." *In re Gen. Vision Servs., Inc.*, 352 B.R. 25, 28 (Bankr. S.D.N.Y. 2006). To constitute "clear error" or "manifest injustice," a challenged ruling must therefore be "wholly without legal support" where "the error is one that is obvious to all who view it." *In re Fairfield Sentry Ltd.*, No. 10-13164 (SMB), 2021 WL 771677, at *2 (Bankr. S.D.N.Y. Feb. 23, 2021) (citations and internal quotation marks omitted).

19. "Generally, motions for reconsideration are not granted unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Barquet Group*, 477

---

[3] Development's prior letter responses, filed February 22, 2022 and February 28, 2022 [ECF Nos. 303, 315] are incorporated herein by reference.

7

B.R. at 460 (quoting *Key Mechanical Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 123 (2d Cir. 2003)). "A motion for reconsideration may not be used 'to enable a party to complete presenting his case after the court has ruled against him'" or to "secure a rehearing on the merits, or otherwise take a 'second bite at the apple.'" *Barquet Group*, 477 B.R. at 460 (quoting *Frietsch v. Refco, Inc.,* 56 F.3d 825, 828 (7th Cir. 1995)); *Fairfield Sentry*, 2021 WL 771677 at *2.

20.    Neither the Lender nor Robinson Brog (in its role as attorney for the nominal Debtor) asserts the existence of new evidence or a change in controlling law,[4] and accordingly, for that reasons alone, the Motions to Reconsider must be defined. Unphased, the Lender and nominal Debtor attempt to support their Motions to Reconsider based solely on what they believe to be "errors" with this Court's February 11 Order. But what they are really trying to do is get a second bite at the apple to litigate the identical issues that have already been decided, correctly, against them. Indeed, there is no good faith basis to assert, let alone establish that the February 11 Order was without legal support under the high standard required for reconsideration.

21.    Here, the Lender asserts that the February 11 Order is erroneous or otherwise causes manifest injustice by (1) giving the Development the right to challenge the Lender's fees after the "challenge period" set forth in the Final DIP Order has lapsed [Lender Motion ¶ 31], (2) creating a right for Development to review the Lender's fees beyond what was set forth in the Final DIP Order [Lender Motion ¶¶ 32-36], (3) requiring the Lender's attorneys to disclose their billing records in violation of confidentiality requirements [Lender Motion ¶¶ 37-40], (4) requiring the Lender to validate the entirety of its disputed secured claim, and not merely the portion that

---

[4] Indeed, at the March 2 hearing, counsel to the Lender stated: "There's no new law being argued here, there's nothing on reconsideration that is not already – that was not before the Court in our prior papers." Mar. 2, 2022 Hr'g Tr. 54:19-21.

8

remains unpaid [Lender Motion ¶¶ 41-47], and (5) requiring an accounting of the Lender's fees in spite of the "voluntary payment doctrine" [Lender Motion ¶¶ 48-56].

22. Robinson Brog (in its role as attorney for the nominal Debtor) asserts an even less compelling set of alleged errors, namely: (1) requiring final fee and administrative expense applications to be filed at all [Debtor Motion ¶¶ 35-37]; and (2) requiring such applications to be filed prior to a potential hearing on Development's alternative dismissal motion [Debtor Motion ¶¶ 38-42].

23. However, it is clear from the foregoing allegations of errors in this Court's February 11 Order that the nominal Debtor and Lender are merely seeking to relitigate issues they have already lost, based solely on their disappointment with the Court's rulings, and they are therefore not entitled to relief under Rule 7052 or 9023. Indeed, the arguments asserted are substantially the same as what was argued in opposing to the Supplemental Motion and/or arguments that could have been raised but were not. Nor are the directives under the Court's ruling novel or contrary to law. Accordingly, the allegations of error are untimely and lack merit.

24. First, the Final DIP Order does not prevent Development or this Court from assessing the reasonableness of the fees charged by the Lender's attorneys. This argument was directly raised in Lender's original moving papers, and now raised again without even an attempt to assert, let alone establish any of the grounds to sustain the heavy burden for reconsideration; *E.g.*, Lender Objection ¶ 30 ("These stipulations and rights of Lender became binding on all parties in this case after the Challenge Period (as defined in the DIP Order) expired."); *Id.* ¶ 31 ("[T]he only parties in this case entitled to review Lender's fees are the U.S. Trustee and the Debtor[.]") *see* Lender Objection ¶¶ 25-26 (discussing status of Lender's professional fees).

25. Further, while Lender fails to meet its burden for reconsideration, they too lose (again) on the merits. The ratification of the "Prepetition Indebtedness" set forth in the Final DIP Order, as noted in Development's omnibus reply supporting its Supplemental Motion [ECF No. 289] (the "<u>Reply to Supplement</u>"),[5] is merely a stipulation by the Debtor (not by Development or any other party), and it applies only to "reasonable and documented attorney's fees, charges, and disbursements of counsel incurred in connection with the enforcement or protection of [Lender's] rights." Reply to Supplement ¶ 24. The Final DIP Order is silent as to the amount of such fees, and the Lender has provided no such documentation of its accrued attorney's fees, let alone a basis to establish the reasonableness of such fees.

26. Moreover, courts have made clear, that the bankruptcy court has an independent power to limit fees to a reasonable amount. While Lender attempts to distinguish *Baker Botts* by arguing that that case involved an estate professional, the rationale is equally applicable here—Lender is not entitled to <u>unreasonable</u> attorney's fees as a matter of fundamental bankruptcy law—and is further supported by the terms of the Final DIP Order, which expressly imposes a reasonableness requirement on professional fees. *See also*, *In re Ward*, 190 B.R. 242, 246 (Bankr. D. Md. 1995) ("The court enjoys broad discretion in determining whether the proposed fees and costs are 'reasonable'").

27. As already determined, the expiration of the "Challenge Period" set forth in the Final DIP Order cannot possibly be used as a shield against accountability for the amount and reasonableness of accrued attorney's fees, given that the details concerning such amounts were never actually disclosed. The limited disclosure the Lender made just before the Lender Payoff

---

[5] Given the near-complete overlap between the Lender's arguments in response to the Supplement and its arguments in the Lender Motion, the Reply to Supplement is incorporated herein by reference.

10

was made—a single line-item that did not distinguish between pre-petition and post-petition fees, or between DIP-related fees and non-DIP-related fees—did not provide enough information upon which a challenge could have been founded and certainly not anywhere within the requirements for substantiating reasonableness. Indeed, the Lender cannot resist all requests for documentation of attorney's fees while also insisting that those same fees should have been objected to previously.

28. Further, the Court has already determined that, notwithstanding the language in the Final DIP Order, the fees incurred by the Lender are properly reviewable and subject to a reasonableness limitation. Among other occasions, at the March 2 hearing, the Court noted: "the balance of the claim are legal fees. . . . And it is certainly within my power, as a judge, to look at those fees and expense during the course of the case and determine if they are reasonable[.]" Mar. 2, 2022 Hr'g Tr. 34:12-17. The Court even left open the possibility that, following such accounting, the allowed amount of the Lender's remaining claim could be "zero" or "a negative." *Id.* at 56:7-10. Only a proper accounting, authorized under, *inter alia*, Section 506 of the Bankruptcy Code (as well as the February 11 Order), can bring finality to this issue. Tellingly, Lender's lawyer ignores the express language at the end of paragraph 17(a) of the Final DIP Order which defines the "Challenge Period" as "...by no later than the date that is 60 days after the entry of this Final Order, *or as otherwise ordered by the Court*[.]" (emphasis added). Unquestionably, this Court has "otherwise ordered" in entering the February 11 Order.

28. Moreover, even if none of the foregoing were true, and the Final DIP Order clearly and expressly barred any scrutiny of the Lender's attorneys' fees, which is contested and contrary to its express terms, this Court has the discretion to revisit and recalibrate its prior orders, implicitly or explicitly, upon a motion of a party in interest or *sua sponte*. *See, e.g.*, *In re McClelland*, 460 B.R. 397, 406 (Bankr. S.D.N.Y. 2011) (citing *In re Global Link Telecom Corp.*, 2002 WL

11

31385814, at *1–2 n. 3 (Bankr .D.Del. Oct. 22, 2002) ("Courts have discretion to *sua sponte* reconsider their rulings"). In its Payoff Motion and Supplemental Motion, Development requested the ability to evaluate the validity and reasonableness of the fees it was being forced to pay, and the Court authorized that evaluation. That should be the end of the discussion of whether this evaluation has been properly authorized.[6]

29. Importantly, there is no injustice whatsoever (let alone manifest injustice that would justify extraordinary relief under Rule 9023), caused by this Court's February 11 Order. The requirement to provide time records is standard in any bankruptcy case, is well within the Court's jurisdiction and requirements under the Bankruptcy Code and should present a minimal burden for any attorneys fulfilling their professional obligations to clients, especially attorneys who practice regularly in bankruptcy court where the submission of such records is common. On the other hand, allowing the Lender to hold both the Debtor and Development hostage by demanding payment of unsubstantiated and likely unreasonable attorneys' fees would create a significant injustice—one which this Court has correctly precluded in its February 11 Order.

30. The Debtor's and Lender's position that this Court has somehow required them to break attorney-client privilege is without merit. Nothing in the February 11 Order requires any party to file *unredacted* attorney time records, and it is common practice for such time records to be filed with limited redactions (provided such is not abused) to whatever minimal amount of privileged information is reflected on such records. As the Court cautioned, any matters that may have been recorded earlier in the bankruptcy case have since been disclosed in the course of the

---

[6] The same is true as to the "Professional Fee Procedure Requirements" discussed in the Lender Motion. Lender Motion ¶¶ 32-36. At the time the Final DIP Order was approved, it was not contemplated that Development would be the one responsible for paying the Lender's attorneys' fees. A modified procedure in light of the change in circumstances is eminently proper.

case and are, therefore, not the subject of redaction. *See* Mar. 2, 2022 Hr'g Tr. 29:5-22 ("I don't think redaction is to be used heavily in connection with fee applications . . . . [E]verything that's happened in this case, it might have been at different points very confidential, but is no longer, because you ended up filing motions or doing things.") [7]

31. Next, as to the Lender's miscellaneous arguments regarding its "remaining secured claim," Lender Motion ¶¶ 41-47, it is simply impossible to actually determine the remaining amount of the Lender's secured claim, if any, without first assessing the propriety of amounts already paid. Given the requirement of that attorney's fees must be reasonable, and the excessive fees alleged to have been incurred to date (which together with the nominal Debtor and Lender, exceed $2.25 million), there is a very strong likelihood that the Lender has been significantly overpaid for the fees it incurred to date. Indeed, despite having been paid off, the Lender continues to file frivolous pleadings, to improperly run up charges without limit in the apparent belief that it simply has a blank check to spend without regard for reasonableness. A full accounting is needed, as reflected in the February 11 Order, and the only risk to the Lender from compliance will be that its improper conduct is brought to light. Accordingly, the Lender has not only failed to meet its heavy burden for relief from the Court's determination, its actions are patently frivolous and designed with the effect if not intent to block review of its actions in the case in contravention of the February 11 Order.

32. The "voluntary payment doctrine" is likewise no bar to the relief set forth in the February 11 Order. The Lender raised the identical issue in its opposition to the Supplemental Motion. Lender Objection Paragraph 11-20 (arguments concerning voluntary

---

[7] Robinson Brog's arguments against the provision of time records are even less compelling than the Lender's, given the unquestionable requirement to publicly file such records.

payment doctrine). There has been no change of fact or law in the intervening weeks since entry of the February 11 Order, and none is alleged in the Lender Motion. In addition, as set forth in the Reply to Supplement, the voluntary payment doctrine (to the extent relevant in the first place) is entirely inapplicable where the payment is made under economic duress or compulsion, such as where necessary to preserve the payor's property or protect its business interests. Reply to Supplement ¶ 21 (citations omitted); *see Rocky Knoll Estates MHC, LLC v. C W Cap. Asset Mgmt., LLC*, No. 14-CV-06097 2015 WL 1632637, at *2 (W.D.N.Y. Apr. 13, 2015) (discussing economic duress and compulsion exceptions to voluntary payment doctrine); *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, No. 05-2310 2010 WL 4628548, at *3 (D. Minn. Nov. 4, 2010) (same); see also *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, Nos. 12 Civ. 6811(CM)(JCF), 13 Civ. 1580(CM)(JCF) 2014 WL2199428, at *10 (S.D.N.Y. May 23, 2014) (voluntary payment doctrine does not apply "where payments were necessary 'in order to preserve [the plaintiff's] property or protect his business interests'" quoting *Steinman v. Malamed*, 111 Cal.Rptr.3d 304, 309 (Cal. Ct. App. 2010)).

33. Similarly, the voluntary payment doctrine is inapplicable where a payment is made under protest. *Reply to Supplement.* ¶¶. 22-23 (citations omitted). To protest payment – party must do so in writing at the time of payment, exactly what Development did here. *Neuner v. Newburgh City Sch. Dist.*, 92 A.D. 888 (N.Y. App. Div. 1983). Written notice must indicate that the plaintiff was reserving his rights when the payment was made and must communicate such to the party receiving the payment. *DRMAK Realty LLC v. Progressive Credit Union*, 133 A.D. 3d 401, 405 (N.Y. App. Div. 2015).

34. Both of the foregoing exceptions to the voluntary have been established, due to the then-impending loss of Development's interest in the Debtor due to the scheduled auction and

14

Development's repeated protests as to the disputed amount of the attorney's fees asserted by the Lender.  Further, implicit in the February 11 Order is that Development had no reasonable choice but to pay off the Lender, and that it did so expressly subject to a potential dispute as to the propriety of the asserted fees, which is exactly what the February 11 Order recognized, and was asserted in the reservation of rights transmitted in Development's Notice of Payoff [ECF No. 257].[8]

35.   The Lender's position that Development was under no economic duress when it made the Lender Payoff is risible and false.  Putting aside again, that this very argument was raised and rejected by the Court in entering the February 11 Order, on January 11, when the payment was made, an auction for the Debtor's property was scheduled for January 14, just three days later.  If the payment was not made and the auction went forward, Development's interest in the Debtor would have been prejudiced and/or lost entirely.  Thus, the Lender Payoff was plainly made to preserve the value Development's interest in the Debtor.

36.   Likewise, the Lender Payoff was in fact made under protest.  The Lender's recycled argument is too cute by half.  The Lender knew full well in light of, among other things, the written reservations of rights and Payoff Motion that Development paid the unsubstantiated attorney fee component of the Lender Payoff under protest, and that Development intended to subsequently determine (by litigation, if necessary) the extent which to such fees were reasonable and therefore properly payable under applicable bankruptcy and state law.  The Lender cannot seriously argue that it was surprised that it would be asked to account for and validate its asserted attorneys' fees in connection with the February 11 Order given that fees are subject to a reasonableness

---

[8] The Payoff Letter provided in relevant part: "[t]his letter and the payoff wire sent do not constitute a waiver of any claims or rights which are reserved."  See Payoff Letter.

15

requirement under long established law, and when it had been asked to do so many times beforehand.  Rather, Lender is attempting to hide from its own conduct, and improperly block an accounting and review the reasonableness of fees incurred herein, in violation of long established bankruptcy law.

37. The Debtor's statement that Development "plainly does not have the money to fund the administrative expenses in full" is also entirely baseless, self-serving and speculative.  Debtor Motion ¶ 41.  To the contrary, Development has established conclusively through expending nearly $12 million on the Lender Payoff without the comfort of a court order its willingness and ability to pay. However, Development should not be compelled to write a blank check for false claims or pay unreasonable fees.  Development has sought (and the Court has mandated) a process to address legitimate claims., and Lender may not hide from accounting for amounts received and how applied to date, which is expressly required under controlling law, and this Court's February 11 Order.

38. Finally, as the Court already determined, there is no risk of nonpayment in this case. Development has obtained stipulations from all of the general creditors, who each support payment outside of the bankruptcy case and its dismissal.  The contention of Robinson Brog that the February 11 Order shifts the risk of non-payment to administrative creditors is untrue given the value of the assets remaining in this estate and only serves to underscore that the professionals are attempting to run this case for their exclusive benefit, over the objection of legitimate creditors while unnecessarily running up fees. Unfortunately, this is a course of conduct that preceded the February 11 Order and further supports why the February 11 Order is in the best interest of the estate and should remain undisturbed.

16

**CONCLUSION**

39. The Motions to Reconsider are baseless. Lender and Debtor have failed to present any new facts or new law under the controlling legal standard. They do not remotely meet the extraordinary burden for the requested relief, nor suggest what injustice has been done by this Court's February 11 Order. The Debtor and Lender merely want to avoid complying with this Court's order, and shield themselves from scrutiny and transparency with respect to the fees charged, and claims asserted. This is not a basis for the Court to reconsider its own order—on the contrary, it demonstrates why the challenged provisions of the February 11 Order were needed in the first place.

WHEREFORE Development respectfully requests that the Court deny the Motions to Reconsider in their entirety and grant such other and further relief as it deems just and proper.

Dated: March 9, 2022
New York, New York

Respectfully submitted,

By: */s/ Douglas E. Spelfogel*
Douglas Spelfogel
Leah Eisenberg
Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Facsimile: (212) 506-1910
Email: dspelfogel@mayerbrown.com
leisenberg@mayerbrown.com

*Special Counsel to 286 Rider Ave Development LLC*

**OFFIT KURMAN, P.A.**

Jason A. Nagi
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900
Email: jason.nagi@offitkurman.com

and

Joyce A. Kuhns, Esq. (Admitted *Pro Hac Vice*)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
Tel (410) 209-6463
Email: jkuhns@offitkurman.com

*Attorneys for 286 Rider Ave Development LLC*