**MORRISON COHEN LLP**
909 Third Avenue
New York, New York 10022
(212) 735-8600
Joseph T. Moldovan
Heath D. Rosenblat
David J. Kozlowski
jmoldovan@morrisoncohen.com
hrosenblat@morrisoncohen.com
dkozlowski@morrisoncohen.com

*Attorneys for Be-Aviv 286 Rider LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **286 RIDER AVE ACQUISITION LLC,** | Case No. 21-11298(LGB) |
| Debtor. | |

**REPLY OF BE-AVIV 286 RIDER LLC IN SUPPORT OF ITS MOTION UNDER RULE 7052 AND 9023 FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND LOCAL BANKRUPTCY RULE 9023-1, FOR RELIEF FROM AND TO RECONSIDER THE COURT'S FEBRUARY 11, 2022 ORDER**

Be-Aviv 286 Rider LLC ("**Lender**"), by its undersigned counsel, hereby submits this reply ("**Reply**") in support of its *Motion by Be-Aviv 286 Rider LLC, Under Rule 7052 and 9023 Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 9023-1, for Relief From and to Reconsider the Court's February 11, 2022 Order* ("**Motion**") [ECF No. 312], dated February 25, 2022. In support of this Reply and further support of the Motion, and in reply to 286 Rider Ave Development LLC's ("**Development**") *Omnibus Response to Nominal Debtor's and*

#11077692

*Lender's Motions for Reconsideration* ("**Response**") [ECF No. 325], dated March 9, 2022, Lender respectfully represents as follows:

**PRELIMINARY STATEMENT[1]**

1.  It is neither novel nor extraordinary in a chapter 11 case for a lender that has funded the case to obtain the benefit of the bargained for protection of a DIP financing order. This includes, in particular, the challenge period embodied in that order. Here, that Challenge Period served as a predicate for Lender's willingness to fund. The bargain was that if parties who had the right to assert a Challenge failed to do so, they would be bound by the terms of the Final DIP Order.

2.  Development thinks paying roughly $12 million excuses it from compliance with the Final DIP Order, and that the Court should blithely ignore its Final DIP Order and modify it, even though (and after) Lender has fully complied with its obligations under the Feb. 11th Order.[2] This cavalier attitude about orders of this Court has been evident throughout this case and is further evidenced by Development's recent trespass, breaking and entering on the Debtor's property,

---

[1] Capitalized terms used but not defined in this Preliminary Statement shall have the meanings ascribed to them elsewhere in this Reply.

[2] Lender, despite Development's assertion to the contrary, has complied with all of this Court's orders, including the Feb 11th Order. Lender has the right to seek reconsideration of the Feb 11th Order. This is neither a "second bite at the apple" nor an "obstinate refusal" to follow the Bankruptcy Code; it is an appropriate motion under the Rules that was correctly and properly asserted.

changing the locks, and commencing work on and in the property.³ This blatant stay violation not only impacts the Debtor, but potentially puts Lender at risk and is simply more evidence of Development's inequitable conduct in this case and why they should not benefit from this Court's protection.

3.  Development cites the correct authority in the Response concerning the standards for reconsideration by a court of an order, but then ignores or completely and inaccurately applies the standard that is set out. Consistent with its *modus operandi*, Development misstates the facts that led to the Motion, and attempts to mislead the Court by skewing reality.

4.  To be clear, Development is not some innocent party–in–interest that was on the periphery of this case. It was the primary antagonist of Lender and the Debtor. It objected to and fought against every motion Lender and the Debtor made. But with respect to the Final DIP Order and the provisions embodied in the Final DIP Order, it decided all of a sudden to sit it out and not protest. It did not appeal. It did nothing. It sat on its rights and as a result has no right whatsoever to challenge Lender's fees—fees by the way that should not be a surprise to Development as they erroneously contend in the Response. There was sufficient information concerning Lender's fees from a review of the schedules [ECF No. 97] filed on October 25, 2021, or the bid procedures order [ECF No. 200] entered on December 13, 2021, or the

---

³ Lender has been advised by Mr. Buchwald that upon his recent inspection of the Property, he saw that the locks he had placed on the Property to safeguard the Property had been removed and replaced and he was further advised that workmen had been seen at the Property removing asbestos and possibly engaged in other activities.

3

Payoff Notice provided by Lender on January 9, 2022, which was still 11 days before the Challenge Period was set to expire. But all of that is of no moment because Development's position is completely irrelevant to the current issue pending before the Court.

5. There is, we submit, a disconnect concerning Lender's claim and a problem with the lens through which Development would have this Court analyze Lender's remaining and current claim.

6. The Court has expressed the view that the validity and amount of Lender's current and outstanding claim needs to be viewed from the perspective of Lender's *previous and partially paid claim*. Lender respectfully disagrees and contends that the current and remaining claim is all that is to be determined by the Court.

7. Consider the analogy of a revolving loan, where a balance is incurred as a borrower draws on the revolver. At various intervals, the balance is paid and reduced to zero. Then that borrower draws again, and the balance is paid again, and the cycle repeats. In the revolver scenario, a court would not look at past borrowings that had been paid off, meaning the totality of the lending, when determining a lender's claim. It would look only at current borrowings that remain unpaid and outstanding as of a specific point in time to determine a lender's extant claim.

8. The Court has suggested that the proper way to analyze Lender's legal fee claim is by analogy to partial guaranty scenario; however, we submit that analogy fails because of an important distinction: in the partial guaranty payment event,

4

there is a relationship between a guarantor, a borrower, and a lender such that when a guarantor makes a payment on account of a guaranty it steps into the shoes of a borrower and has rights with respect to a lender. That is not the case here.

9.  Here, Development made a payment, outside of this case, without judicial oversight, and ***not*** in connection with its Payoff Motion (defined in the Response) as it falsely contends in paragraph 9 of the Response, to Lender of the vast majority of the debt owed by the borrower ***in order to redeem its pledge***. Payment of the debt was a component of what the Pledgor had to do to redeem the Pledge, but redemption of the pledge has nothing to do with the Debtor nor under this scenario does Development step into the shoes of the Debtor as the borrower. To be clear, the Payment had nothing to do with Development's Payoff Motion.

10. When the Payment was made, the borrower's liability for the amount of debt paid was extinguished: this was simply a consequence of payment. Because the payment neither paid all amounts owed or satisfied all obligation under the pre-petition loan documents, the entirety of the debt was not extinguished, but the vast majority of it was. It is now gone. This is not the same as the partial guaranty situation where a guarantor that made the payment succeeds to rights that enable it to assert claims against a lender. That is not the situation in this case. Development succeeds to none of Lender's rights: it paid money in an attempt to obtain its own collateral back, not to satisfy the Debtor's obligations.

11. Here, the previous and partially paid claim is not being asserted and cannot be asserted. It no longer exists. Moreover, that prior claim was paid by a third

5

party, outside of this Court, and no one is asserting the past claim remains as an obligation against the Debtor's estate. The Court has even acknowledged this multiple times, calling the Payment a gift. What is in the past is not relevant now. All that remains owing to Lender on account of legal fees are fees incurred after January 9, 2022. And it is Lender's contention that these fees stand on their own and are not subject to any kind of netting or evaluation based upon amounts of fees previously incurred, paid, and extinguished.

12. However, assuming, *arguendo*, that this Court determines it is appropriate to conduct the fee analysis of amounts other than the amount claimed for the period after January 9, 2022, we submit that it is doing so *sua sponte* because neither Development, nor any other party–in–interest, has any right to ask this Court, much less demand, that the Court conduct this analysis.

13. Like a claims bar date—a statute of limitations on when claims can be filed—a challenge period, essentially a court ordered statute of limitations, is commonplace (neither novel nor extraordinary) in chapter 11 matters. When a party fails to act and a statute of limitation runs (*i.e.*, the deadline passes) that party loses its rights to assert the claim or challenge, and the claim or challenge is barred.

14. Here, the Final DIP Order provided for a sixty day challenge period. Lender asked for a shorter period and the Court required that parties be given more time (*i.e.*, 60 days as provided in the Final DIP Order). The Final DIP Order is explicit about what the consequence would be to parties if they failed to initiate a Challenge within the allotted time period: all the Debtors stipulations would become **binding**

on them and they would be barred from challenging any aspect of Lender's claims. Development did not initiate a challenge. It is that simple. It did nothing and cannot now be permitted to seek relief it is barred from seeking. Thus, as the only party requesting the relief is actually barred from the relief they seek, the question becomes whether the Court *should* (not *can*) conduct this review *sua sponte*, and if so, to what end.

15. If the reason is to analyze Lender's entitlement to the current unpaid fees against what the Court determines should be the actual amount of attorney's fees Lender is entitled to, we have argued that this would be improper as the past claim for fees has been extinguished, and that the extant fees stand on their own as current debt and obligations of the Debtor. This means, in our view, that the Debtor or Development must be prepared to pay the extant amount or such amount of the extant fee claim as the Court determines is appropriate but only in the context of the those fees standing on their own and not netted or analyzed based upon the totality of Lender's fees relating to the pre-petition loan from the beginning of time.

16. The reason we argued and raised the Voluntary Payment Doctrine to the Court in connection with Development's payment to Lender was to make clear that there is no set of circumstances based upon the actual facts here that would enable Development to get any money back from Lender. We suspect that the reason the Court did not address the doctrine is that the Court agrees that this issue is not and cannot be before the Court as the Court did not order Development to pay the funds to Lender, the funds were not paid to Lender by the Debtor, and no property of

7

the estate was involved or implicated by the private transaction between these two non-debtor entities.

17. However, the doctrine implicates more than whether Development can recover any of the funds paid Lender, the import and effect of the doctrine is that Development cannot challenge in this Court Lender's entitlement to the legal fees Development voluntarily paid Lender with the Payment. If the Court determines that any of Lender's fees are unreasonable, Lender submits that the Court lacks jurisdiction to order Lender to return any of those fees to Development.

18. It is important that Lender make one final point. Lender believes this Court should not engage in the fee analysis for the reasons stated, not because Lender is concerned about anything in its attorney's time records or what the Court may determine. Lender and its counsel have no such concerns. However, allowing Development to have any access to these records or to even contemplate allowing Development to examine and challenge these records would be completely antithetical not simply to the Final DIP Order, but to the expectations of DIP lenders generally.

19. DIP lenders make funds available to debtors under very specific and bargained for terms. This Court, like every other bankruptcy court, examined each and every provision of the Final DIP Order and DIP loan agreement on the record and required Lender to make a variety of changes. Among the most important provisions of every DIP order is the provision that address the rights of parties-in-interest to challenge a lender's liens, claims, and other rights provided

under the loan documentation. Once the order is entered the bargain between a lender, a debtor, creditors, and a court is struck. And then a lender lends. Development would have this Court say, in essence, "I did not mean it when I approved the Final DIP Order, so despite that fact that you, lender, have kept up your end of the bargain, I am not going to keep up mine." This simply cannot be and Development has no right to be heard on this issue.

20. For the reasons set forth in this Reply, the arguments set forth in the Motion, and in the Debtor's motion and reply to which Lender joins, the Court should reconsider the Feb 11th Order. Nevertheless, if the Court disagrees, Lender submits that the only review that should occur with respect to Lender's claim (in any form and amount) should be performed only by the Court by *in camera* review.

## REPLY

### A. The Correct and Applicable Motion to Reconsider Standard

21. As more fully set forth in the Motion, ***three*** possible grounds exist for granting motions for reconsideration under FRCP 59, which is incorporated into this case by Rule 9023 of the Federal Rules of Bankruptcy Procedure ("**Rule**"); these three grounds are "intervening change in controlling law, the availability of new evidence, or *the need to correct a clear error or prevent manifest injustice.*" *Henderson v. Metro. Bank & Trust Co.*, 502 F. Supp. 2d 372, 375–76 (S.D.N.Y. 2007) (emphasis added) (quotation marks and citations omitted); *see also, Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) ("Reconsideration may be granted to correct clear error,

prevent manifest injustice or review the court's decision in light of the availability of new evidence.")

22. With respect to this third ground, which Development fails to properly acknowledge or address, Courts have imposed a strict standard under FRCP 59. "[A] motion for reconsideration or reargument 'will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *Lehmuller v. Incorporated Village of Sag Harbor*, 982 F. Supp. 132, 135 (E.D.N.Y. 1997) (quoting *Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). The ***matters overlooked*** by the court must be matters that ***were put before the court in the original motion***. *See Eismann v. Green*, 204 F.3d 393, 395 n.2 (2d Cir. 2000) (emphasis added) (citing *Shamis v. Ambassador Factors Corp.*, 187 F.R.D. 148, 151 (S.D.N.Y. 1999)).

23. Lender simply needs to demonstrate that prior arguments were overlooked and need to be reconsidered. Although Development continues to assert that the Motion should be denied because Lender is presenting arguments that it previously asserted and relied on in its response to Development's *Supplement to Development's Motion to Confirm Disputed Payoff Amounts, Satisfaction of DIP Loan, and for Related Relief* ("**Supplement**") [ECF No. 272], it fails to recognize that this is the very point: Lender put arguments before the Court in its response [ECF No. 286] to the Supplement, and it believes they were overlooked and need to

be reconsidered by the Court to avoid clear error or manifest injustice. It is that simple.

24. Further, Lender does not need to present "new evidence or change in controlling law" (Response, ¶20) that Development pins its hopes and arguments to in the Response. That is not the applicable standard, and repeating it does not make it true.

25. As such, Lender seeks reconsideration of the Court's *Order Regarding Development's Motion to Confirm Disputed Payoff Amounts, Satisfaction of DIP Loan, and for Related Relief and Supplement to Same* ("**Feb. 11th Order**") [ECF. No. 293], dated February 11, 2022, on the grounds set forth in this Reply and the Motion to avoid clear error and manifest injustice.

26. Specifically, the relief granted in the Feb. 11th Order and that is at issue conflicts directly with the November 23, 2021 order ("**Final DIP Order**") [ECF No. 175] the Court entered authorizing 286 Rider Ave Acquisition LLC ("**Debtor**") to obtain debtor-in-possession financing on a final basis from Lender, as well as, works as an end around the Voluntary Payment Doctrine if enforced.

27. To be clear, neither the specific provisions of the Final DIP Order (paragraphs 17 or 26) nor the Voluntary Payment Doctrine were addressed and dismissed by the Court at the hearing on February 10th, or mentioned in the Feb. 11th Order. The Feb. 11th Order is completely silent on these issues. In fact, the Voluntary Payment Doctrine has not been commented upon by the Court on the record, and there should be a legitimate explanation for why it should not apply to

11

the $11,918,974.12 wire ("**Payment**") Development made to Lender on January 11, 2022.

### B.  Lender's Remaining and Current Claim

28.  As set out in the Motion, Lender's remaining and current claim consists of its counsel's outstanding fees of $251,705.27 as of January 31, 2022, and an estimated amount of $100,000 of fees for February 2022, for a total of $351,705.27 (this amount may increase based on what additional work Lender's counsel may need to perform).[4] And as set out above, the issue regarding this secured claim is the perspective from which it is to be evaluated, as well as, who can challenge and evaluate this claim given its make-up.

29.  This claim is all that is before the Court and being asserted by Lender at this time. To evaluate this present claim against the partially satisfied historic claim that is no longer being asserted (or even before the Court) seems to be outside of the scope of the Court. Moreover, to what end does evaluating the historic claim, which was paid and is not subject to objection or challenge for all the reasons stated in this Reply and the Motion, achieve any of the goals and purposes of the Bankruptcy Code, more to the point of section 506 of the Bankruptcy Code.

---

[4]  Lender disputes that fees incurred for time spent preparing the DIP Loan (as defined in the Final DIP Order), as well as preparation of the pleadings and court appearances in connection therewith, should be included in the subjects covered in paragraph 3 of the Feb. 11th Order. This time and effort was explicitly accounted for and addressed in the DIP Loan and should not be separated from the portion of the Feb. 11th Order that the Court acknowledged is of a different status than the pre-petition fees and post Payment fees. *See* DIP Loan (defined in the Final DIP Order), §10(n).

12

### C.  The Challenge Period in the Final DIP Order

30. Contrary to Development's assertion, the "Challenge Period" provided for in paragraph 17 of the Final DIP Order is in fact a ***shield*** to all claims being made after the expiration of such period. *See, cf.*, Response, ¶27. As set out above, it is a statute of limitations, a bar date, and Development did nothing, let the Challenge Period pass and expire by its terms, and is now ***barred***.

31. Further, Development completely misses the import of paragraph 17 of the Final DIP Order with its empty assertion that this "is merely a stipulation by the Debtor (not by Development or any other party)" (Response, ¶25). This may be one of Development's most disingenuous arguments to date, as the language of paragraph 17 of the Final DIP Order is clear and conspicuous that the Debtor's stipulations in the Final DIP Order "***shall be binding in all circumstances upon . . . all parties in interest***" unless specific actions that are set out (*i.e.*, a "Challenge" as defined in paragraph 17 of the Final DIP Order) are taken by a party—party includes Development as they have repeatedly stated they are a party–in–interest in this case. *See* Final DIP Order, ¶17 (emphasis added).

32. As such, "shall be binding" does cuts off any Challenge after the Challenge Period expires. Additionally, Development's last ditch effort to resurrect the rights it let expire by arguing that the language of "or as otherwise ordered by the Court" in paragraph 17 of the Final DIP Order is now being exercised by the Court with the Feb. 11th Order is nothing more than pure nonsense.

13

33. The Feb. 11th Order makes no finding or ruling that it is extending or modifying the Challenge Period (or any provision of the Final DIP Order) nor was the Court ever explicitly (or implicitly) asked to do so and to now argue as much is representative of a party that has no regard for protocol or the law. That language is not meant to extend the Challenge Period *after* it had expired because to do so would mean that parties could not rely on a Court's order in the first instance. Any usage of this language would have had to occur before the running of the Challenge Period so as to (a) not infringe on Lender's rights and (b) avoid completely conflicting with and negating the meaning and effect of "shall be binding," which if it were extended (without request) *after* the Challenge Period had expired would be the impact.

34. Lastly, Development seems to blur the line of what is available to the Court and what is available to Development. Development is barred. As stated elsewhere in this Reply, if the Court seeks to act that is of no consequence to Development's rights.[5]

### D. The Voluntary Payment Doctrine

35. If Development's assertions concerning the impact of the Debtor's stipulations in the Final DIP Order becoming binding on all parties–in–interest is its most disingenuous argument to date, its arguments concerning the Voluntary Payment Doctrine are a close second. Development again asserts that (a) it was under

---

[5] This holds true for review of Lender's fee for any time period as Development is barred, as set out in paragraphs 32–40 of the Motion, under paragraph 26 of the Final DIP Order to review and object to the fees of Lender's counsel.

compulsion or duress when making the Payment and (b) it reserved its rights in the Development's January 11, 2022 letter ("**Payoff Letter**"). *See, e.g.,* Response, ¶¶32-36. These assertions are simply not true and should be given no weight whatsoever.

36. There is absolutely no evidence, nor could there be because it would defy logic and reality, that Development paid under compulsion or economic duress. Further, the argument that a non-specific, single reservation sentence ***after*** a party voluntarily makes a payment can resurrect rights sought to be preserved would be completely contrary to the very nature of the doctrine itself.

37. The standard for the Voluntary Payment Doctrine is more fully set forth in the Motion, but most applicable in reply to the Response is that the doctrine is predicated on the principle that "[t]he onus is on a party that receives what it perceives as an improper demand for money to 'take its position at the time of the demand, and ***litigate the issue before, rather than after, payment is made***.'" *DRMAK Realty LLC v. Progressive Credit Union*, 133 A.D.3d 401, 403 (N.Y. App. Div. 2015)(emphasis added); *see also*, *WFE Ventures, Inc. v. GBD Lake Placid, LLC*, 2021 WL 3553495 (App. Div. 2021) ("The doctrine . . . essentially prevents the paying party from thereafter changing his or her mind by seeking to recoup that payment voluntarily made under those circumstances."); *see, e.g.*, *Spagnola v. Chubb Corp.*, 574 F.3d 64, 72 (2d Cir. 2009) (quoting *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 292 A.D.2d 25, 27 (App. Div. 2002)); *Wells Fargo Bank v. Deerbrook Mall, LLC*, 2021 WL 5054644 (after making full payment including legal fees to

Lender to stop the foreclosure sale, borrower sought to challenge the reasonableness of the attorney's fees; the court conducted a thorough analysis of the Voluntary Payment Doctrine and held that the Doctrine barred the borrower's challenge).

38. With respect to the economic duress assertion, Development's contention that an auction was imminent is of no moment. Development had any number of options as previously set out in the Motion. *See* Motion, ¶¶53–54.

39. As an aside, escrowing the money, instead of paying Lender outside of this case and the Court, and making a showing that the money had been escrowed would have been completely sufficient grounds to seek a stay of the auction and would have fully protected Development and its right to contest any amounts of Lender's January 9, 2022 Loan Payoff Notice ("**Payoff Notice**") that it disputed as legitimate.

40. Moreover, Development did not seek the Court's intervention and protection before making the Payment. Development had the money, and could have participated in the auction and utilized its experience in sophisticated real estate transactions and any of its multiple law firms to represent it as a bidder at the auction. This is where its claim of duress falls short. Development had many options it failed to exercise, and it needs to live with the consequences of the strategy it employed. Instead, Development chose, of its own volition, a different path and made the Payment outside of the Court, not under judicial compulsion, and totally without the Court's protection.

41. Additionally, Development ***made no protest*** to the payoff amount set out in the Payoff Notice. The reservation language in the Payoff Letter did not set out

16

any actual issue with the amounts identified in the Payoff Notice. *See, e.g., Wells Fargo Bank v. Deerbrook Mall, LLC*, 2021 WL 5054644. Nothing Development has done saves it under the Voluntary Payment Doctrine. Development is **barred** from the relief granted in paragraphs 2 and 3 of the Feb. 11th Order because of Development's own *voluntary* actions.

42. Failing to apply the Voluntary Payment Doctrine to the relief Development sought and this Court granted in the Feb. 11th Order is a clear error and should be reconsidered to avoid a manifest injustice. Further, the Feb. 11th Order is in conflict with well settled law in this jurisdiction.

## JOINDER AND INCORPORATION BY REFERENCE

43. Lender fully incorporates by reference all arguments, positions, authorities, and materials relied and raised in the Motion in this Reply.

44. Lender respectfully joins in, adopts as its own, and incorporates by reference as if fully set forth herein the entire contents of the Debtor's papers seeking in reply to the Response.

[*Text Continues On Following Page*]

## CONCLUSION

WHEREFORE, as set out in the Motion, Lender respectfully requests that the Court (i) grant reconsideration of the Order, specifically, paragraphs 2, 3, and 7 of the Order, under Rule 9023 and Local Rule 9023–1; (ii) bar Development from challenging any of the amounts contained in the Payment; (iii) amend and revise the Order in accordance with the arguments set out in the Motion and this Reply; and (iv) grant Lender such other and further relief as the Court deems just and proper.

Dated: New York, New York  
       March 11, 2022

MORRISON COHEN LLP

By: /s/ *Joseph T. Moldovan*  
   Joseph T. Moldovan, Esq.  
   Heath D. Rosenblat, Esq.  
   David J. Kozlowski, Esq.

909 Third Avenue  
New York, New York 10022  
(212) 735-8600  
jmoldovan@morrisoncohen.com  
hrosenblat@morrisoncohen.com  
dkozlowski@morrisoncohen.com

*Attorneys for Be-Aviv 286 Rider LLC*