| | |
|---|---|
| ROBINSON BROG LEINWAND GREENE<br>GENOVESE & GLUCK P.C.<br>875 Third Avenue<br>New York, New York 10022<br>Steven B. Eichel<br>Fred B. Ringel<br>*Attorneys for the Debtor* | Hearing Date: March 16, 2022<br>Hearing Time: 2:00 p.m. |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

In re:                                                                                  Chapter 11

**286 RIDER AVE ACQUISITION LLC,**                          Case No: 21-11298-lgb

                                                        Debtor.
----------------------------------------------------------X

### DEBTOR'S AND LEE E. BUCHWALD'S REPLY TO 286 RIDER AVE DEVELOPMENT LLC'S OMNIBUS RESPONSE TO MOTION TO RECONSIDER PORTION OF COURT'S FEBRUARY 11, 2022, ORDER REGARDING 286 RIDER AVE DEVELOPMENT, LLC'S MOTION TO CONFIRM DISPUTED PAY-OFF AMOUNTS, SATISFACTION OF DIP LOAN, AND FOR RELATED RELIEF AND SUPPLEMENT TO SAME

**286 Rider Ave Acquisition LLC**, the debtor and the debtor in possession herein ("Debtor"), by its attorneys, Robinson Brog Leinwand Greene Genoese & Gluck P.C. ("Robinson Brog"), and Lee E. Buchwald ("Buchwald" together with the Debtor, the "Movants"[1]) submit this reply to the response ("Response") of 286 Rider

---

[1] Robinson Brog is not going to respond to Development's disingenuous gamesmanship set forth in its absurd footnote 1 and the plain typographical error which is clear from the title of the Motion to Reconsider ( "Debtor's and Lee E. Buchwald's Motion to Reconsider"). In any event, it has been clear from the very first hearing in this case on August 6, 2021, when the Court commented on its knowledge of Mr. Buchwald as an experienced independent fiduciary and that Robinson Brog would be representing Mr. Buchwald in his role as its client, that Robinson Brog represented Mr. Buchwald in his representative and not individual capacity. *See, e.g.*, 8/6/21 Hr'g Tr. at 41:3-9.

{01142232.DOC;3 }{01139530.DOC;3

Ave Development LLC ("Development") to the Debtor's motion ("Motion"), under Rules 7052 and 9023 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Local Bankruptcy Rule 9023-1(a) of the Southern District of New York, seeking the entry of an order to reconsider paragraphs 4, 5, 7 and 9 of the Order Regarding 286 Rider Ave Development LLC's Motion to Confirm Purported Pay-Off Amounts, Satisfaction of DIP Loan, and for Related Relief and Supplement to Same, dated February 11, 2022 ("February 11th Order"). In support thereof, the Movants respectfully assert as follows:

## ARGUMENT

1. As is typical, Development mischaracterizes the arguments in the Motion to avoid dealing with them. For example, contrary to Development's contention in paragraph 22 of its response, Robinson Brog never asserted that it should not have to file a final fee application. Still, it seeks to file its final fee application in a manner to avoid (i) disclosing attorney-client privilege and (ii) potentially violating Rule 1.6 of the New York Rules of Professional Conduct. Similarly, Mr. Buchwald is not asserting that he should not have to file a request for payment of his administrative expense claim but that he should be able to redact specific entries to avoid waiving the attorney-client privilege. By (i) misstating the issues, (ii) failing to address these arguments directly, and (iii) asserting that the February 11th Order does not prohibit redacted time detail, Development concedes

{01142232.DOC;3 }

2

that paragraphs 4 and 5 of the February 11th Order already permit the relief initially sought by the Debtor and Buchwald, i.e., the filing of redacted time records that protect confidential and privileged time entries.

2. Given that concession by Development, the Debtor and Buchwald will file redacted time records and the Court need not reconsider paragraphs 4 and 5 of the February 11th Order.

3. The Motion also sought the reconsideration of paragraphs 7 and 9 of the February 11th Order because they implicitly vacate the Court's Scheduling Order[2] that required Development to establish the Escrow Account and deposit funds into the Escrow Account by February 8, 2022, before the hearings on the Payoff Motion and Renewed DM, thereby shifting the burden of nonpayment to administrative creditors while turning the priority scheme of the Bankruptcy Code on its head. The February 11th Order does not appear to consider the manifest injustice to the administrative creditors that will result if Development does not fund the Escrow Account. Without citing any transcript, Development attempts to contradict this fact by boldly asserting that the Court has already determined that there is no risk of non-payment in this case. Response at ¶38. Contrary to that unsupported allegation, the Court has previously required Development to fund an escrow for administrative expenses as a condition to the hearing on the Payoff

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to such term in the Motion.

{01142232.DOC;3}

3

Motion because the Court did not want to take a chance that the case would be administratively insolvent. *See* 2/1/22 Hr'g Tr at 35:18-20. ("I'm not going to have a situation where there's administrative insolvency here.").

4.     At the last status conference, the Court expressed the view that the value of the Property would always be sufficient to pay administrative creditors in full. This was explicitly premised on the view that the Property's value would not diminish to the point of being below the amount of alleged outstanding administrative debt. The Debtor discovered recently, when checking on the status of the Property, that Development had violated the automatic stay and improperly exercised dominion and control over the property by changing the locks on the property. In addition, it had, upon information and belief, arranged for work to be performed at the property without the Debtor's permission. This creates potential liability issues for Mr. Buchwald and raises the possibility of a substantial new administrative claim if someone is injured while working at the property or while work is being done. All of this was done without the Debtor's knowledge or consent and could imperil the value of the property and substantial increase the post-petition debts against the property.

5.     Attached herewith as **Exhibit A** is a copy of a Department of Buildings record of a complaint filed, which is consistent with the timing of when, while this case was pending, asbestos abatement work had been done at the premises,

{01142232.DOC;3 }

according to one of the neighbors, as reported to Mr. Buchwald approximately one week ago. The neighbor told Mr. Buchwald that workers were at the premises wearing hazmat suits and posted warning signs regarding the danger. A search of NYC records by the Debtor did not yield any permits for such an undertaking. Therefore, it is entirely possible that in addition to being a flagrant stay violation, hazardous work was being done without a permit, putting the Debtor and Mr. Buchwald at significant financial and legal risk. Furthermore, without access to the interior of the building there is no way for the Debtor to determine what other dangerous or un-permitted activities are taking place. A search NYC Department of Buildings records done at the time of the submission of this reply reflects that there are no approved work permits for the property.

6. Attached hereto as **Exhibit B** are pictures taken by Mr. Buchwald on March 11, 2022 evidencing the stay violation by Development and the disastrous that the property has been put in by their trespass into the premises and ripping out the ceiling, walls and other materials. Indeed, while the Debtor is inclined to seek contempt sanctions for this knowing and clear violation of the automatic stay, this Court must take action to make certain that Ms. Moskovits and Mr. Lichtenstein understand that the Bankruptcy Code applies to them, and they cannot take actions which put independent fiduciaries acting under the auspices of this Court at increased risk. While Mr. Buchwald carries insurance for the

{01142232.DOC;3 }

Property, he never contemplated that construction activity or highly dangerous activities such as the removal of asbestos would take place under his management. The estate does not carry insurance that covers the amount of risk or the scope of risk that this sort of potentially illegal activity exposes it to.

7. Given Development's penchant of complaining about the costs of this proceeding, this Court has the unquestioned power to use section 105 of the Bankruptcy Code to find Development and its principals in contempt for violating the automatic stay and exposing the estate to liability for doing this ultrahazardous work at the property. The Court should also use its powers under section 105 to expressly enjoin Development and anyone acting in concert with it from entering into the property and performing any work at the property or changing the locks. The use of the Court's powers to act *sua sponte* will avoid the cost of the Debtor having to file a separate motion.

8. These actions — consistent with Development's and its principals' actions throughout the case — show why the need for an escrow to fund administrative expenses remains as necessary as it was when the Court entered the

Scheduling Order in January. Development's stay violation also constitutes new evidence that justifies reconsideration of the February 11th Order.[3]

### JOINDER AND INCORPORATION BY REFERENCE

9. The Movants respectfully join in, adopt as their own, and incorporate by reference as if fully set forth herein, the context of Lender's reply papers seeking reconsideration of the February 11th Order if the arguments apply to the Movants.

*[balance of page intentionally blank]*

---

[3] With respect to the legal fees incurred in this case, Development asserts that the fees are large, but fails to acknowledge that nearly all of the fees and expenses were incurred by the estate as a result of the actions of Development and its principals, which the Court is well aware of. Robinson Brog's interim fee application, monthly fee statements, already provided to the Court, filed publicly and served on Development's counsel clearly show the magnitude of time expended on 2004 requests and examinations, numerous motions and replies and an appeal to the District Court. There is no mystery here as to the source of and cause of the fees.

{01142232.DOC;3 }

7

## CONCLUSION

**WHEREFORE**, for all these reasons, the Movants request that this Court (i) grant reconsideration of the provisions of Order identified herein; and (ii) grant Movants such other and further relief as the Court deems just and proper.

**DATED:**   New York, New York
March 11, 2022

                    **ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.**

                    By  /s/ Fred B. Ringel
                        **Fred B. Ringel**

                    875 Third Avenue, 9th Floor
                    New York, New York 10022
                    Tel. No.:  212-603-6300
                    *Attorneys for the Debtor*

                    By: /s/  Lee E. Buchwald
                        **Lee E. Buchwald**
                        Manager of Debtor

                    200 Park Avenue
                    Suite 1700
                    New York, New York 10166
                    Tele No.:  212-970-1040