**OFFIT KURMAN, P.A.**
Jason A. Nagi, Esq.
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900
Email: Jason.nagi@offitkurman.com
       and
Joyce A. Kuhns, Esq. (admitted pro hac vice)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
Tel (410) 209-6463
Email: Jkuhns@offitkurman.com

*Attorneys for 286 Rider Ave Development LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In re:

286 Rider Ave Acquisition LLC,

                Debtor.

-------------------------------------------------------X

Chapter 11

Case No.  21-11298-lgb

### SUPPLEMENT OF 286 RIDER AVE DEVELOPMENT LLC TO ITS MOTION TO ALTER OR AMEND JUDGMENT UNDER BANKRUPTCY RULES 9023 AND 9024 AND FEDERAL RULES OF CIVIL PROCEDURE 59(e) AND 60 AND MEMORANDUM OF LAW IN FURTHER SUPPORT ON REMAND

286 Rider Ave Development LLC ("**Development**"), as 100% owner of the membership

interests of the debtor, 286 Rider Ave Acquisition LLC (the "**Acquisition**" or "**Debtor**"), by

undersigned counsel, hereby files this Supplement to its Motion to Alter or Amend Judgment

Under Bankruptcy Rules 9023 and 9024 and Federal Rules of Civil Procedure 59(e) and 60 and

Memorandum of Law In Further Support on Remand (the "**Supplement on Remand**") and, in

support, states:

## I.    REMAND PROCEDURAL BACKGROUND

1.      On September 13, 2021, Development filed a Motion to Alter of Amend Judgment Under Bankruptcy Rules 9023 and 9024 and Federal Rule of Civil Procedure 59(e) and 60 [ECF No. 47] (the "Motion to Alter or Amend") relating to the Order Denying Dismissal of Case that entered on August 30, 2021 [ECF No. 39].

2.      Be-Aviv 286 Rider LLC ("**Be-Aviv**" or "**Lender**") and the Debtor filed opposition responses to the Motion to Alter or Amend on September 28, 2021 [ECF Nos. 52 and 53] to which Development replied on October 1, 2021 [ECF No. 64].

3.      After holding a hearing on October 5, 2021, the Court entered an Order of that same date denying the Motion to Alter or Amend for the reasons set forth on the record of the hearing (the "**Denial Order**"). Development filed a notice appealing the Denial Order to the United States District Court for the Southern District of New York (the "**District Court**") under Case Number 21-cv-8812, on October 8, 2021 (the "**Appeal**").

4.      On November 2, 2021, Movants Development, Toby Moskovits and Michael Lichtenstein (100% indirect owners of Development) filed a Motion to Dismiss Bankruptcy Case Based on New Evidence ("**Motion to Dismiss**") [ECF No. 111].  This Court entered an Order denying that Motion following a hearing held on November 16, 2021, finding it was divested of jurisdiction regarding all issues relating to Debtor's authority to file this Bankruptcy Case due to the Appeal [ECF No. 165].

5.      On January 14, 2022, the District Court entered an order [ECF No. 260] (the "**Remand Order**"), which provided:

2

> In the course of its expedited appeal of the Bankruptcy Court's denial of its motion for reconsideration, Appellant moved to supplement the record[1] with materials-filed after the Bankruptcy Court had ruled-that it described as "critical to the underlying determination whether the Bankruptcy Case was properly authorized and whether the Bankruptcy Court had jurisdiction over the Bankruptcy Case." ... The Bankruptcy Court did not have an opportunity to review these filings in connection with Appellant's motion, and rightly recognized it lacked jurisdiction to consider them when Appellant again moved to dismiss the case. Tr. of November 16, 2021 Hearing at 18-21. Remand is thus the proper course of action ... Accordingly, the Court hereby remands this action to the Bankruptcy Court for consideration of the additional materials, to the extent it sees fit.

6.      On February 9, 2022, Development filed a Renewed Motion to Dismiss Bankruptcy Case for Lack of Jurisdiction and Based on Debtor Admission Pursuant to 11 U.S.C. § 305 or § 1112 [ECF No. 290] (the "**Renewed Motion**") to bring to the Court's consideration a dismissal of this Bankruptcy Case based on a complete record, including the Supplemental Information.

7.      On February 21 and 22, 2022, Lender and the Debtor filed letters with respect to, among other things, the Remand Order [ECF No. 300 and 301] to which Development [ECF No. 303] and Development, Toby Moskovits and Michael Lichtenstein replied [ECF No. 304].

8.      On March 2, 2022, the Court held a status conference regarding, among other things, the Remand Order, and stated:

> I think ... that the only thing the only thing that Judge Abrams was asking me to do is to consider the implication of what happened with respect to the schedules, both the first filing and the second filing of whether that would have changed my ruling. You 're right that the ruling that was on the -- the ruling is on the motion to alter or amend a judgment. I grant you, you have to consider what the judgment said -- what my judgment said in connection with that.

---

[1]      The "supplemental information" included the following: (i) Statement of Financial Affairs ("SOFA") listing 286 Rider Ave Lender LLC as I 00% equity holder on the Petition Date (docketed on October 25, 2021) [ECF No. 97] and (ii) SOFA replacing first SOFA ("**Replacement SOFA**") and stating that Development was 100% equity holder on the Petition Date (docketed on November 5, 2021) [ECF No. 116].

Mar. 2, 2022 Transcript ("**Tr**.") 24:3-11.

9.      On March 3, 2022, the Court entered an Order Scheduling Supplemental Briefing and Argument with Respect to Motion of 286 Rider Ave Development LLC to Alter or Amend Judgment Under Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59(e) [ECF No. 320] (the "**Supplemental Briefing Order**"), which ordered: (i) Development to file supplemental briefing to the Motion to Alter or Amend no later than March 14, 2022 at 5:00 p.m. (ET); (ii) supplemental responses in opposition to be filed no later than March 18, 2022 at 5:00 p.m. (ET); (iii) supplemental replies in support to be filed no later than March 23, 2022 at 5:00 p.m. (ET); and (iv) a hearing to be held on supplemental argument on the Motion to Alter or Amend on March 25, 2022 at 2:00 p.m. (ET).

## II.      SUMMARY OF ARGUMENT

10.      The Motion to Alter or Amend Judgment was filed to correct what Development believed was this Court's failure to consider the interplay of the governing statutes and relevant documents, each of which prevent Lender, as a non-member, from automatically exercising management rights on default, and which precluded Lender from causing the filing of a duly authorized bankruptcy case: (a) the New York Limited Liability Company Act (b) the New York Uniform Commercial Code, (c) Sections 5 and 13 of the Pledge Agreement, and (d) the member management provisions of the Operating Agreement. Development maintains that this Court's error resulted in the continuation of a Bankruptcy Case over which this Court lacks jurisdiction.

11.      As the District Court apparently decided in opting to remand to this Court for reconsideration, this Court may have predicated its prior decisions on information and assertions by both the Debtor and Lender that were factually incorrect and misleading regarding Lender's right to act as the sole member and to orchestrate the bankruptcy filing predicated on its

4

"absolute ownership" of the Debtor from April 27, 2021 onward. While Debtor and Lender made explicit representations in sworn statements in connection with the Petition [ECF No. 1] and to the Court[2] that Lender was the sole member of the Debtor, it was not until more than 60 days after the August 30, 2021 argument that the Debtor and Lender flip-flopped *and changed the facts* on November 2, 2021 in the Replacement SOFA. These facts should be considered by this Court, as they *conclusively undermine* the very basis for this Court's prior denials. If Development was always the sole equity holder and member of the Debtor as the Replacement SOFA concedes, rather than Lender or its affiliate as asserted up to November 2, 2021, then pursuant to the Operating Agreement and New York law, Debtor never had authority to file. It is an existential impossibility for the Operating Agreement to have been properly amended, to allow for management by a non-member, without ownership having amended the Operating Agreement pre-Petition Date to provide for this, which Development never did. Lender has repeatedly obfuscated that it missed this critical documentation step without which the exercise of its pledge is fatally flawed under New York law and it had no authority to orchestrate the filing of this case.

### III.    FACTUAL AND PROCEDURAL BACKGROUND

#### A.    The Loan.

12.    On or about September 19, 2019, Acquisition received a loan in the principal amount of $8,000,000.00 (the "**Loan**") from Be-Aviv 286 Rider LLC ("**Lender**"), secured by a Mortgage and Security Agreement of even date pursuant to which Acquisition granted Lender a mortgage on a vacant non-income producing warehouse property located at 286 Rider Avenue,

---

[2]    *See infra* at pp. 7-9.

Bronx, New York (the "**Property**").[3] Lender obtained an independent appraisal for the Property

in support of the Loan with a value for the Property of $12 million. It is undisputed that the

Property is Acquisition's primary asset.

**B.**    **The Pledge Agreement and Operating Agreement**.

13.    As additional collateral for the Loan, Development executed and delivered to

Lender a pledge of the Membership Interests in Acquisition ("**Member Interests**") under a

Membership Interest Pledge Agreement (the "**Pledge Agreement**") and a corresponding

Assignment of those Membership Interests, both dated, September 19, 2019.[4]

**C.**    **The Default Notice.**

14.    By letter dated March 2, 2021, Lender notified Acquisition of a purported default

under the Loan documents and demanded immediate payment of all amounts then due (the

"**First Default Notice**").[5] By letter dated April 27, 2021, Lender notified Acquisition that

Acquisition was in purported continuing default under the Loan documents and that Lender was

exercising its right to assign, transfer, and register all Member Interests into the name of Lender.

Lender further instructed Acquisition, as borrower under the Loan, to register the Member

Interests in the Lender's name in its books and records.[6]

**D.**    **Lender Attempts to "Assign" Itself the Member Interests.**

15.    On April 27, 2021, Lender filled in its own name on the Assignment of Member

Interests.[7] Subsequently, Lender entered into an Assignment and Assumption Agreement "as of "

---

[3]    *See* Declaration of Ben Harlev ("**Harlev Dec.**"), Exhibits ("**Ex.**") C-E [ECF No. 24].
[4]    *See* Harlev Dec., Exs. B and G [ECF No. 24].
[5]    *See* Harlev Dec., Ex. J [ECF No. 24].
[6]    *See* Harlev Dec., Ex. K [ECF No. 24].
[7]    *See* Harlev Dec., Ex. G [ECF No. 24].

June 14, 2021 purporting to assign the Member Interests to its affiliate, 286 Rider Ave Lender

LLC ("**Lender LLC**").[8]

### E.    Lender Appoints Its Affiliate as Managing "Member".

16.    On June 14, 2021, Lender purported to appoint affiliate 286 Rider Ave Lender

LLC as "managing member" of Acquisition as set out in the Declaration of Lee E. Buchwald

pursuant to Local Rule 1007-2 in support of the Bankruptcy Petition.[9] On July 14, 2021, counsel

for Lender sent a letter to Acquisition and Development advising that Lender had exercised its

rights under the Loan documents and the Pledge Agreement to assign, transfer and register all

Member Interests in Acquisition into the name of Lender, **as if Lender was the absolute owner

thereof**.[10] But, of course, as later acknowledged in sworn declarations filed by the Lender-

controlled Debtor, Development always maintained its Member Interests.

### F.    Lender Engages Mr. Buchwald as Manger to File Bankruptcy and Asserts It is the Sole Member of Debtor.

17.    On July 1, 2021, Lender LLC engaged Lee E. Buchwald as so-called "manager"

of Acquisition and purported to authorize him to file a Chapter 11 case as soon as practical.[11] On

July 15, 2021 ("**Petition Date**"), the Lender, on behalf of the Debtor, caused Acquisition through

its "manager" Lee Buchwald to file the bankruptcy case (the "**Bankruptcy Case**"). In his

declaration in support, Mr. Buchwald unequivocally restated under oath that on April 27, 2021,

*Lender had "assigned, transferred, and registered, as applicable all membership and equity*

---

[8]    *See* Harlev Dec., Ex. L [ECF No. 24].
[9]    *See* Declaration of Lee E. Buchwald ("**Buchwald Dec.**") at ¶ 8 [ECF No. 27].
[10]    *See* Harlev Dec., Ex. M [ECF No. 24].
[11]    *See* Buchwald Dec. at ¶ 10 [ECF No 27].

*interests of the Debtor to and in the name of Lender as if Lender were the absolute owner.*"[12] (emphasis added).

**G.    Development Moves to Dismiss the Case.**

18.    As noted above, Development promptly filed a Motion to Dismiss the Bankruptcy Case which was denied after a hearing on August 30, 2021.[13] It then filed a Motion to Alter or Amend Judgment, contending, among other things, that this Court had disregarded in its ruling the effect of the New York law on Lender's exercise of its rights under the Pledge Agreement, had disregarded the supremacy of the Operating Agreement over the Pledge Agreement, and allowed Lender to skip the crucial step of removing Development as a member or manager as required by the Operating Agreement and New York Limited Liability Company Act in order to act as a member authorized to file a bankruptcy. *See* Motion to Alter or Amend, pp. 17-20. As argued then and now, the "member only" governance provisions rendered all of Lender's actions, including directing the Bankruptcy Case filing through a non-member, a nullity.

19.    It is not wholly surprising that the Motion to Alter or Amend was denied by this Court by Order dated October 5, 2021.[14] The nominal Debtor in its Petition misled the Court that Lender became the sole member of Acquisition in April 2021. Lender continued to perpetuate this misrepresentation by arguing at the August 30, 2021 hearing:

> This action was taken *pursuant to our status as the sole voting member* of the debtor in accordance with the pledge and in accordance with Section 402 of the limited liability company law of the State of New York, which provides that the *members* decide what is in the operating agreement.

Aug. 30, 2021 Tr. 23:17-21 [ECF No. 41] (emphasis added).

---

[12]    *Id.* at ¶ 7.
[13]    *See* ECF No. 39.
[14]    *See* ECF No. 69.

20.    Indeed, the Court found as much in its ruling when it held:

> According, [sic] the *lender* validly exercised its rights under the pledge agreement and *became of the owner as of April 27th, 2021 of all the membership interest in the debtor*. The lender subsequently transferred the interest of such membership interest to an affiliate, *the new owner*, on June 14th, 2021.

Aug. 30, 2021 Tr. 67:9-13 [ECF No. 41] (emphasis added).[15]]

21.    However, Lender, which purported to amend the Operating Agreement as the manager of nominal Debtor, could not have amended the Operating Agreement without being the majority member. Indeed, the Court went so far as to question when this Operating Agreement was amended, and Lender advised that the operating agreement was amended "on Sunday" (the night before the hearing).

> THE COURT: I just want to ask it.
> When was that first amendment done?
>
> MR. MOLDOVAN: Sunday, Your Honor, because we didn't think --
> THE COURT: Sunday.
>
> MR. MOLDOVAN: -- that this argument even existed. Your Honor, the amendment was done as a ratification *of actions taken by the member*, and under New York law, that is appropriate and acceptable.
>
> *So in April, when we exercised our rights under the pledge, we became the member*. We took actions. They raised this issue in their reply. We said, whoa, what is this? This is just nonsense. But you know what, just to make certain that this shouldn't even be an issue in this case, let's do what we're entitled to do under the operating agreement and under the law. And we're just going to get rid of any ambiguity that might exist, which is what we did, Your Honor. And

---

[15]    If these new facts are true, then there was no authority to file the case based on New York law, Ltd. Liab. Co. §401(a) which provides that an LLC shall be managed by its members unless the operating agreement says otherwise (and it does not). *See infra* at pp. 14-25.

> that is *specifically appropriate under Section 402 of the limited liability company law* of the State of New York.

Aug. 30, 2021 Tr. 24:3-21 [ECF No. 41] (emphasis added).

23.   At the October 5, 2021 hearing on the Motion to Alter or Amend, the Court observed:

> But I ultimately ruled that, under the pledge agreement, I found that the – and also the New York Limited Liability Company Act, that there was no – that the pledge agreement in Section 5 is not limited by the operating agreement ... And *maybe had that paragraph been limited by the Operating Agreement your [Development's] argument may have been more persuasive ...*

Oct. 5, 2021 Tr. 23:4-8 [ECF No. 93] (emphasis added).

24.   In a prescient statement, the Court further held:

> *And so if I had thought, that under pledge Section 5 – there wasn't the right to - for the members or the parties stepping into the shoes of the member, in this case the lender, to go ahead and have I guess a – to effectuate a change of management* and the New York Limited Liability Law didn't provide ... for such things ... if that had not all been the case, then I might find your argument persuasive.

Oct. 5, 2021 Tr. 25:1-4 [ECF No. 93] (emphasis added).

25.   The Court further observed:

> ... [I]f I thought what they had done was actually to do something that wasn't permitted under the terms of both the New York Limited Liability law ... and also the fact of the pledge agreement, then you're right. This [amendment of the operating agreement post-petition] would have all been inappropriate.

Oct. 5, 2021 Tr. 28:1-6 [ECF No. 93].

**H.**    **Debtor Files a SOFA Again Asserting Lender is Sole Member of Debtor.**

26.    More *than three months* after filing the Bankruptcy Case and after the Court's

ruling on dismissal, on October 25, 2021, the Debtor through its Lender-controlled manager,

filed Schedules of Assets and Liabilities ("**Schedules**") and Statement of Financial Affairs

("**SOFA**") as required under Fed. R. Bankr. P. 1007(b)(1), under penalties of perjury, stating that

*Lender LLC* held *100%* of the *Member Interests* in Acquisition on the Petition Date.[16]

**I.**    **Debtor Files a Replacement SOFA That Asserts Development is the Sole Member of Debtor.**

27.    On November 5, 2021, *almost four months* after the bankruptcy filing and after

the Court's rulings on dismissal and the noticing of the Appeal, Debtor, through Lender's agent,

Mr. Buchwald, filed an amended SOFA that replaced the SOFA but contradicted the prior sworn

statements in the Petition and first SOFA that Lender LLC held 100% of the equity in the Debtor

in which Debtor stated, under penalty of perjury, that *Development* was the *100% member* of

*Acquisition* on the *Petition Date*.[17] (emphasis added).

**J.**    **Expedited Appeal Granted.**

28.    As noted above, Development's submission of an Emergency Motion Letter and

Memorandum in Support of Expedited Appeal, Stay Pending Appeal, and Permission to

Supplement the Record, on December 17, 2021, the District Court granted an expedited appeal

schedule and, subsequent to briefing and argument, remanded the matter to this Court to consider

the effect of the Supplemental Information on the Court's earlier decision.

---

[16]    *See* ECF Nos. 1 and 97 at Part 13, no. 28.
[17]    *See* ECF No. 116 at Part 18, no. 28.

11

# IV.    ARGUMENT

## A.    Standard of Review.

29.    The Motion to Alter or Amend brought under Federal Rules of Civil Procedure 59(e) and 60, made applicable to this proceeding by Federal Rules of Bankruptcy 9023 and 9024, respectively, may be granted on the basis of an "intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or to prevent manifest injustice." *Henderson v. Metro. Bank & Trust Co.,* 502 F. Supp. 2d 372, 375-76 (S.D.N.Y. 2007) (citation omitted). "Generally, motions for reconsideration are not granted unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Key Mechanical, Inc. v. BDC 56 LLC (In re BDC 56 LLC),* 330 F. 3d 111, 123 (2d Cir. 2003) (citation omitted).

30.    Here, new evidence – a sworn statement recognizing that *Lender was never 100% equity holder* – was withheld from the Court while it deliberated a Motion to Dismiss and Motion to Alter or Amend, and only disclosed through the Replacement SOFA four months into this case and after the Court ruled in Debtor's and Lender's favor and an appeal was filed divesting the Court of jurisdiction to consider new evidence and its effect on its prior rulings. The non-member, non-equity status of Lender, as of April 27, 2021 and thereafter, is critical to the Court's determination of whether Mr. Buchwald, as the lender-appointed manager, had authority to file the petition or to be directed to file a Petition and must be duly considered in the context of the Operating Agreement, Pledge Agreement and controlling New York law to reverse the manifest injustice that was perpetuated through the unauthorized filing of the Bankruptcy Case by a non-member, erroneously-described as "manager".

**B.**     **Because this Bankruptcy Case was Filed Without Authority Under New York Law, it Must be Dismissed for Lack of Jurisdiction.**

31.     Whether or not a business entity has authority to file for bankruptcy is controlled by state law. *In re East End Dev., LLC*, 491 B.R. 633, 638 (Bankr. E.D.N.Y. 2013) (citing *In re Am. Globus Corp.*, 195 B.R. 263, 265 (Bankr. S.D.N.Y. 1996)); *In re Crossover Fin. I, LLC*, 477 B.R. 196, 202 (Bankr. D. Colo. 2012)[18]. As set forth below, the Bankruptcy Case for this New York limited liability company ("**NY LLC**") Debtor was filed by a non-member in violation of its Operating Agreement and applicable New York law.

32.     It has long been held that if a corporate entity does not have authority under its own corporate documents to file a bankruptcy, the bankruptcy court does not have subject matter jurisdiction. *Price v. Gurney*, 324 U.S. 100, 106 (1945) ("If the District Court finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, *it has no alternative but to dismiss the petition. It is not enough that those who seek to speak for the corporation may have the right to obtain that authority.*") (emphasis added).  *See also*, *In re 3P Hightstown, LLC*, 631 B.R. 205, 209 (Bankr. D.N.J. 2021) ("Further, should a court find that a debtor, who acts on behalf of a corporation, filed bankruptcy without the prerequisite authority, *'the Court ... would be required to dismiss [that] unauthorized filing even if § 1112(b) were not in the Bankruptcy Code.'*") (collecting cases) (emphasis added); *In re Generation Zero Grp., Inc.*, No. 20-30319, 2021 WL 267812, at *1

---

[18]     Under 28 U.S.C. 1334(a) the district courts have original jurisdiction over all cases under title 11 of the United States Code (the "**Bankruptcy Code**"). Pursuant to that Standing Order of Referral of Cases to bankruptcy judges of the United States District Court for the Southern District of New York by Judge Preska, dated January 31, 2021, bankruptcy cases in the Southern District of New York are referred to and filed with the Bankruptcy Court, a unit of the District Court. Under Section 301 of the Bankruptcy Code, a voluntary case is commenced by the filing of a petition. Hence, if a petition is unauthorized, a bankruptcy court lacks jurisdiction over the case.

(Bankr. W.D.N.C. Jan. 26, 2021) ("The Court must dismiss the bankruptcy petition filed on behalf of [Debtor]… because the bankruptcy petition was not authorized by the active and authorized Directors of [Debtor].… It appears [President] lacked the requisite authority needed to place [Debtor] into bankruptcy because per [Debtor's] operating agreement, [Debtor] is managed by its directors not a president. [President] is not now, and was not at the time of filing, a director of [Debtor]. Consequently, his authority to file the voluntary petition for [Debtor] was improper per the powers vested with in the Operating Agreement and Georgia law.); *In re Mid-S. Bus. Assocs., LLC*, 555 B.R. 565, 570 (Bankr. N.D. Miss. 2016) ("However, a bankruptcy petition filed without proper corporate authority must be dismissed independent of any finding of 'cause' under § 1112(b), because *if the Debtor did not have sufficient corporate authority for the filing of its petition, then this Court lacks subject matter jurisdiction over the case*.") (emphasis added).

33.     Because the Petition was filed by a non-member of a member-managed LLC based on the admissions in the Replacement SOFA, it was unauthorized, as more fully explicated below, and the Court lacked jurisdiction over the Bankruptcy Case since its inception. The only remedy is dismissal of the Bankruptcy Case *nunc pro tunc* to the filing of the Petition.

**C.     Allowing a Non-Member of a New York Limited Liability Company to File a Bankruptcy Petition is Prohibited Under Controlling New York Law.**

**1.     Under New York Law Only Members May Manage a New York LLC Absent an Express Provision in the Operating Agreement Stating Otherwise, which is Lacking Here.**

34.     New York law provides that, barring a specific provision in an operating agreement, only a member can manage a limited liability company. While Lender initially claimed that it stepped into Development's Member Interest on default—a fiction contrived to subvert the process—months after this Court made its ruling denying the Motion to Dismiss and

Motion for Reconsideration, on November 2, 2021, Lender and Debtor changed their story.  At

that time, the Lender-controlled Debtor, filed the Replacement SOFA amending the first SOFA

and contending—contrary to the Petition and the first SOFA—*that 100% of equity had always

resided with Development*. Nonetheless, Debtor continued to wrongfully assert management

control, pursuing a sale scenario destined to strip title and residual value in the Property—

millions of dollars of equity—from other creditors and Development to Lender's exclusive

benefit, potentially causing a total loss for all other creditors and equity, in contravention of New

York law.

(a)    <u>**Operating Agreements Govern the Operation of NY LLCs.**</u>

35.    Section 417 of the New York Limited Liability Company Act (the "**LLC Act**")

provides that the operating agreement of a limited liability company governs the relationships

among members and the powers and authority of the members and managers. Ltd. Liab. Co. §

417 (McKinney's 2021). Thus, under the LLC Act, Acquisition's Operating Agreement governs

whether a member has the authority to file a bankruptcy petition. *See In re East End Dev., LLC*,

49 B.R. at 638 (holding that the relevant operating agreement gave requisite authority to the

managing member to file the bankruptcy petition for the New York limited liability company).

36.    Section 401(a) of the LLC Act, entitled, "Management of the Limited Liability

Company by Members," unequivocally states: "*Unless* the articles of organization provides for

**management** of the limited liability company **by a manager** or managers or a class or classes of

managers, *management* of the limited liability company *shall be* vested in its *members*[19] who

---

[19]    Section 102(q) of the LLC Act defines "member" to mean "a person who has been admitted as a member of
a limited liability company in accordance with the terms and conditions of the provisions of this chapter and the
operating agreement and has a membership interest ... under the operating agreement."

shall *manage* the *limited liability company* in *accordance* with *this* chapter,...". Ltd. Liab. Co. §

401(a) (emphasis added). *See LNYC Loft, LLC v. Hudson Opportunity Fund I, LLC*, 154 A.D. 3d

109, 57 NYS 3d, 479, 483 (1st Dep't 2017) (court declined to uphold the appointment of special

litigation counsel where relevant *operating agreement did not delegate managerial authority to*

*non-members*).

      **(b)**      <u>**Unless Stated Otherwise in an Operating Agreement, Only Members of an**</u>
<u>**LLC Can Vote**</u>.

37.      Section 402(c) of the LLC Act, entitled "Voting Rights of Members," provides in

relevant part:

> (c) *Except* as *provided* in the *operating agreement, whether* or *not* a
> *limited liability company* is *managed* by the *members* or by one or more
> *managers*, the *vote* of a *majority* in *interest* of the *members entitled* to *vote*
> thereon *shall be required* to:
> ...
>
> (3) ... *amend*, restate or revoke the ... *operating agreement* ..."

Ltd. Liab. Co. § 402(c) (emphasis added).

38.      On the Petition Date, Acquisition's first Amended and Restated Limited Liability

Company Operating Agreement, dated September 16, 2019 (the "**Operating Agreement**"), was

in effect.[20] The Operating Agreement unambiguously states at Section 5, "Management/Powers",

that "... the sole member [Development] of the Company shall have the sole power to do any and

all acts necessary or convenient to or for the furtherance of the purposes described herein." There

is no provision in the Operating Agreement providing for management by non-members.

According to the Replacement SOFA, Development held 100% of the member interests in the

---

[20]      *See* Harlev Dec., Ex. Q [ECF No. 24].

Debtor. It is further uncontroverted Development never amended the Operating Agreement after September 16, 2019.

        **(c)**    **There Was No Evidence of an Amended Operating Agreement.**

39.      There is no evidence, testimonial or documentary, in the record that the Operating Agreement was ever amended to provide for non-member management.[21] Thus, irrespective of which entity held equity member interests on the Petition Date, Mr. Buchwald, as a non-member, had no managerial authority and thus no authority to file the Petition or take any further actions in the Bankruptcy Case on behalf of Acquisition.

40.      Notwithstanding the above, and without evidentiary support, Lender's counsel represented to this Court at the August 30, 2021 hearing on Development's Motion to Dismiss, that Lender attempted to amend the Operating Agreement *after* the Petition Date, *i.e.,* after Development questioned Debtor's the authority to file. Indeed, the amendment was made *the Sunday night before the hearing*. The purpose of the amendment was to attempt to define the "member" as Lender LLC and Lender LLC as "managing" member. Aug. 30, 2021 Tr. 23:1-4 – 24:l-23 [ECF No. 41].

41.      Of course, if this occurred, the amendment was untimely and unenforceable as the amendment was not authorized by the now acknowledged sole equity holder and member – a

---

[21]    Any representations regarding amending the Operating Agreement were hearsay (Fed. R. Evid. 801) as no testimony was presented and inadmissible as no such agreement was properly authenticated and submitted into evidence as such. Fed. R. Evid. 901. *See Chamilia, LLC v. Pandora Jewelry, LLC*, No. 04-CV-6017, 2007 WL 2781246, at *6 n.4 (S.D.N.Y. Sept. 24, 2007); *Novak v. Tucows, Inc.*, No. 06-CV-1909, 2007 WL 922306, at *5 (E.D.N.Y. Mar. 26, 2007) ("Where postings from internet websites are not statements made by declarants testifying at trial and are offered to prove the truth of the matter asserted, such postings generally constitute hearsay under Fed. R. Evid. 801".) *See also Nabisco v. Warner-Lambert Co*., 32 F. Supp. 2d 690, 695 (S.D.N.Y. 1999) (resolving authenticity of exhibits for admissibility purposes prior to reaching merits of summary judgment). None of the hearsay exceptions are applicable here. *See* Fed. R. Evid. 803.

fact hidden from this Court and Development on the Petition Date. (ECF No. 116 at Part 13, no. 28.) Furthermore, even assuming, *arguendo*, that such post-Petition Date amendment to the Operating Agreement exists, it is incontrovertible that, as of the Petition Date, no amendment was or could have been in effect. Accordingly, stripping Development of control and elevating the Lender LLC, an affiliate of Lender, to manager member was void as a matter of law.

### (d)    Any Post-Petition Amendment to the Operating Agreement to Add Lender as Sole Managing Member is Void as a Violation of the Automatic Stay.

42.    A post-Petition Date "Amended" Operating Agreement not only would be ineffective under New York law, it would be void under the Bankruptcy Code.

43.    Once a petition for bankruptcy is filed, the automatic stay prevents all entities from engaging in "any act to obtain possession of the property of the estate or of property from the estate or to exercise control over property of the estate," and "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(3) and (4). Thus, any post-Petition Date amendment to the Operating Agreement purportedly divesting Development of control and its status as sole member and manager and elevating the Lender LLC, an affiliate of Lender, to manager member would have constituted a violation of the automatic stay of Section 362 of the Bankruptcy Code and be void.

44.    Here, Lender and its affiliate did not exercise customary corporate governance rights but were acting instead to enforce their rights, as a creditor, under the Pledge Agreement[22] and deriving their authority to do so solely from Debtor's purported default under the Loan. Such actions are impermissible and constitute stay violations under the Bankruptcy Code. *See In re*

---

[22]    The purported amendment was not a permissible, post-petition act of ratification as Lender contends (*see supra* at p. 8) but an impermissible, purported retroactive amendment in violation of the stay, by a non-member in contravention of New York law.

*Marvel Entm't Grp., Inc.*, 209 B.R. 832, 839 (D. Del. 1997) (in which the District Court carefully contrasted "traditional shareholder rights" which can be exercised without violating the automatic stay with actions by "creditors of debtors [seeking to gain] control of the debtors' estates *through the exercise of corporate governance rights*.") (emphasis added). *See also, In re GenCanna Global USA, Inc.,* 619 B.R. 364, 370 (Bankr. E.D. Ky. 2020) ("Shareholders violated the automatic stay when they exercised their shares to appoint new directors for GenCanna Parent and GenCanna USA," to improve their position as creditors and such act was voidable); *In re Mattera,* 2007 WL 594908 , at *7 (Bankr. D.N.J. Feb. 21, 2007) ("a creditor who attempts to improve her position, post-petition, is in violation of the automatic stay"); *In re Country Estates Nursing Home, Inc.*, 268 B.R. 316, 320 (Bankr. D. Mass. 2001) (finding that because creditor had not foreclosed on its collateral pledge of shares as required by the UCC, any post-petition attempt to vote to substitute itself as director over a company in which debtor was director and officer constituted a violation of the automatic stay in the debtor's bankruptcy case).

45.    The relevant case law compels the conclusion that a stay violation would have occurred when Lender purported to cause a post-petition amendment of the Operating Agreement, substituting Lender LLC as managing member, to pursue a creditor remedy and that any such amendment is therefore void and Lender LLC never became a member nor Mr. Buchwald a "manager" of the Debtor.

**(e)    Lender's Rights in the Pledge Agreement are Subject to the Existing Operating Agreement Based on Integrated Reading of the Pledge Agreement.**

46.    Development maintains that in its prior rulings this Court erred in not examining the critical relationship between the Pledge Agreement and the existing Operating Agreement. Without proper authority under state law to act, the Debtor's filing was unauthorized, and should not have been maintained. As this Court disclosed at the October 5, 2021 hearing:

19

... I did have some trouble, I guess, getting comfortable with the relationship of the operating agreement to the pledge agreement. My decision notes from – on August 31, specifically that it is not a model of clarity, and I did spend a lot of time reviewing the operating agreement and the pledge agreement multiple times, looking at the interaction. *And I ultimately ruled that the relevant provision is Section 5 which, obviously, does not have to do with the operating agreement.*

Oct. 5, 2021 Tr. 35:3-12 [ECF No. 93] (emphasis added).

47.    And so it appears this Court rested its decision that the Lender had properly taken control of management and voting rights of the Debtor on paragraph 5 of the Pledge Agreement (consistent with misrepresentations regarding equity in the Petition). Paragraph 5 provides:

**SECTION 5. <u>Rights; Distributions</u>**.

(a) ... *If an Event of Default shall occur and be continuing, then all Membership Interests at Lender's option,* may be *registered in the name of Lender* or its nominee (if not already so registered), and *Lender* or its nominee *may thereafter exercise* (i) all *voting* and all *equity, membership* and *other rights pertaining to the Membership Interests* and (ii) any and all rights of conversion, exchange, and subscription and any other rights, privileges or options pertaining to such Membership Interests as if it were the absolute owner thereof...

Harlev Dec., Ex. B, p. 2-3 [ECF No. 24] (emphasis added).

48.    Although rights granted under Section 5 are expressly conditioned on an "Event of Default" occurring and continuing, it appears this Court disregarded the specific section of the Pledge Agreement controlling the exercise of such rights on default, which clearly states:

**SECTION 13. <u>Remedies Upon Default</u>**.

*If an Event of Default under the Note shall have occurred* and is continuing, *subject to the Borrower Operating Agreement,* Lender shall have, in *addition to all other rights given by law or otherwise,* all of the rights and remedies with respect to the Collateral of a secured party under the Uniform Commercial Code as in effect in the State of New York...

Harlev Dec., Ex. B, p. 7 [ECF No. 24] (emphasis added).

20

49.    New York contract interpretation law is clear that specific provisions of a contract control the general provisions. *See, e.g., Muzak Corp. v. Hotel Taft Corp.*, 1 N.Y.2d 42, 46 (1956) ("The rules of construction of contracts require us to adopt an interpretation which gives meaning to every provision of a contract or, in the negative, no provision of a contract should be left without force and effect. *Even if there was an inconsistency between a specific provision and a general provision of a contract (we find none), the specific provision controls.*") (internal citations omitted) (emphasis added). Furthermore, the contract must be read as a whole, with Sections 5 and 13 integrated together. *See, e.g., Beal Sav. Bank v. Sommer*, 8 N.Y.3d 318, 324–25 (2007) ("a contract should be read as a whole, and every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose").

50    An integrated reading of the Pledge Agreement leads to the inescapable conclusion that for Lender to exercise its rights as defined in Section 5 it had to do so in accordance with Section 13, which required it to exercise its remedies upon default, "subject to the Borrower Operating Agreement."  The Operating Agreement, as noted, contained no provision for non-member management, thus requiring Lender to have either amended the Operating Agreement at the time of default to admit Lender as sole member or to to allow for non-member management. Neither could have occurred as a matter of law. To hold otherwise, would permit someone, as here, who is neither a member nor manager to control a limited liability company in violation of New York law and the Operating Agreement. *See East End Dev.*, 49 B.R. at p. 638; *Cf Crossover Fin.*, 477 B.R. at 206 (Colorado court interpreted Colorado statute with similar governance scheme to LLC Act as prohibiting a non-member of a limited

liability company, whose operating agreement does not provide for non-member management, from filing a bankruptcy petition on behalf of the company).

51.     The Pledge Agreement does not trump the Operating Agreement but is subject to it. In fact, the Pledge Agreement provides at Section 16: "This Pledge shall be governed by and construed in accordance with the laws of New York." Therefore, the Pledge Agreement must be interpreted in accordance with New York law.

52.     Since the sole member (whether Lender LLC or Development) could not have amended the Operating Agreement to provide for non-member management as required by New York law, at the time of the Petition Date, all actions relating to the Bankruptcy Case filing which were taken by Mr. Buchwald "as manager" and subsequent thereto were impermissible and unauthorized. Development maintains that the Bankruptcy Court's failure to analyze the subordinate relationship of the Pledge Agreement to the Operating Agreement, and its failure to require Lender to exercise control over Debtor's management and voting rights in accordance with the Operating Agreement are critical omissions which has allowed this Bankruptcy Case to proceed despite the lack of requisite authority to file the case resulting in this Court lacking jurisdiction.

53.     In addition, this Court, unaware that Debtor would subsequently switch its story on who held equity on the Petition Date was misled into finding:

> the Court finds that Section 5(a) of the pledge agreement ... allows the lender, ... by exercising its pledge rights, its right under the pledge agreement, to take over the membership interest[s] ... that were held by Development, because the events of default having occurred and been continuing, that the *lender, then, had all voting, all equity, membership, and other rights pursuing to the membership interest*."

22

Aug. 30, 2021 Tr. 71:18-25 – 72:1-2; [ECF No. 41] (emphasis added).  This Court clearly relied

on the Debtor and Lender's representations detailed in the Buchwald Declaration supporting the

Petition, which declared the Lender was the sole member; the Bankruptcy Court's rulings

denying the dismissal and Motion to Alter or Amend flow from that erroneous belief.

> **(f)** **By Filing the Replacement SOFA, Debtor Admitted the Bankruptcy Was *Not* Authorized**.

54.    The Replacement SOFA, thus, is the key fact or "new evidence" which exposes

that the main representation this Court relied on was, in fact, not true— *Lender holds no equity*

*interests in the Debtor and never has.* While the parties have each conceded that an entity can

have an economic interest and not be a voting member in a New York limited liability company

(*e.g.,* a judgment lien creditor acquires only economic rights to distribution in attaching a

member's interest), there is no legal support that a non-equity holder can be a "member" of a

New York LLC as would be the case based on the admission in the Replacement SOFA.  This

Court has erroneously relied on Lender's and the Lender-controlled Debtor's position that the

"foreclosure" on Lender's pledge resulted in *a total and automatic divestiture of all equity rights*,

including management rights in the Debtor.[23] The reason for the error:  this Court's misplaced

reliance on the facts set forth in the Declaration supporting the Petition. Pursuant to the

_____

[23]    Furthermore, as noted above, Section 13 of the Pledge Agreement is explicit that the rights and remedies of Lender are "subject to the Borrower Operating Agreement" and are exercisable in accordance with New York's Uniform Commercial Code. *See* N.Y.U.C.C. § 9-601, *et seq.* (McKinney's 2021) (the "**UCC**"). The UCC limits Lender's options in exercising rights against the Member Interests. *See Royal Palm Senior Investors, LLC v. Carbon Capital II, Inc.,* 2009 WL 1941862 at *3-4 (S.D.N.Y. July 7, 2009) (providing lender with two options under the UCC: (i) take them in (via "strict foreclosure"); or (ii) sell them). Not only did Lender ignore the Pledge Agreement's requirements to exercise its rights and remedies subject to the Operating Agreement, it ignored the notice and disclosure prerequisite to foreclose on Member Interests via "strict foreclosure" or private sale, its only remaining option, thus vitiating any purported transfer of rights under the UCC, as more fully explicated in Development's Motion to Dismiss [ECF No. 111] and Renewed Motion [ECF No. 290]. ECF Nos. 111 and 290 are incorporated herein by reference.

23

Replacement SOFA, whereby the Debtor acknowledged under oath that Development is and has always been 100% owner, neither Lender nor Lender LLC could as a matter of law have management rights in the Debtor as neither is nor has never been an equity member. Thus, this Bankruptcy Case, which was filed on behalf of a New York limited liability company by a non-member, non-manager, was improper and unauthorized and must be dismissed.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Movants request that the Court enter an Order: (i) dismissing this Bankruptcy Case *nunc pro tunc* to July 15, 2022; and (ii) granting such other relief as may be just.

Dated: New York, New York          OFFIT KURMAN, P.A.
        March 14, 2022

                                  By: /s/ Jason A. Nagi
                                      Jason A. Nagi, Esq.
                                      590 Madison Avenue
                                      New York, New York 10022
                                      (212) 545-1900
                                      and
                                      Joyce A. Kuhns, Esq. (admitted pro hac vice)
                                      300 East Lombard Street, Suite 2010
                                      Baltimore, Maryland 21202
                                      (410) 209-6463

                                      *Attorneys for 286 Rider Ave Development LLC*

**OFFIT KURMAN, P.A.**
Jason A. Nagi, Esq.
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900
Email: Jason.nagi@offitkurman.com
                    and
Joyce A. Kuhns, Esq. (admitted pro hac vice)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
Tel (410) 209-6463
Email: Jkuhns@offitkurman.com

*Attorneys for Movants 286 Rider Ave Development LLC,*
*Toby Moskovits and Yechial Michael Lichtenstein*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------

In re:

286 Rider Ave Acquisition LLC,

Debtor.
-----------------------------------------------------X

Chapter 11

Case No.  21-11298-lgb

## CERTIFICATE OF SERVICE

A copy of the Supplement of 286 Rider Development LLC to its Motion to Alter or Amend Judgment Under Bankruptcy Rules 9023 and 9024 and Federal Rules of Civil Procedure 59(e) and 60 and Memorandum of Law In Further Support on Remand was served on March 14, 2022 via (i) Electronic Notice and E-Mail upon the parties listed on the attached service list as denoted with a "*"; (ii) E-mail upon the parties listed on the attached service list as denoted with a "**"; and (iii) U.S. Mail postage pre-paid upon the parties listed on the attached service list as denoted with a "***".

## SERVICE LIST

**VIA ELECTRONIC NOTICE AND E-MAIL (*)**
Joseph Thomas Moldovan - bankruptcy@morrisoncohen.com
Fred B. Ringel - fbr@robinsonbrog.com
United States Trustee - USTPRegion02.NYECF@USDOJ.GOV

**VIA E-MAIL (**)**
Greg Zipes - greg.zipes@usdoj.gov

25

**VIA U.S. MAIL (\*\*\*)**

| | |
|---|---|
| NYS Dept. Taxation & Finance<br>Bankruptcy/Special Procedures Section<br>P.O. Box 5300<br>Albany, NY 12205-0300 | United States Attorney's Office SDNY<br>Attention: Tax & Bankruptcy Unit<br>86 Chambers Street, Third Floor<br>New York, NY 10007 |
| NYC Dept. of Finance<br>Office of Legal Affairs<br>375 Pearl Street, 30th Floor<br>New York, NY 10038 | U.S. Securities and Exchange Commission<br>New York Regional Office<br>Brookfield Place<br>200 Vesey Street, Suite 400<br>New York, NY 10281-1022 |
| Internal Revenue Service<br>Centralized Insolvency Operations<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346 | Titan Engineers PC<br>1331 Stuyvesant Ave.<br>Union, NJ 07083 |
| Fischer Makooi Architects<br>242 West 30th Street, Ste. 1102<br>New York, NY 1001 | Robert Newblatt<br>286 Rider Ave Realty LLC<br>286 Rider Avenue<br>Bronx, NY 10451 |
| Wayne M. Greenwald, Esq.<br>JACOBS, P.C.<br>667 Madison Avenue - 5th Floor<br>New York, NY 10065 | Mark S. Lichtenstein and Joshua D. Bernstein<br>Akerman LLP<br>1251 Avenue of the Americas, 37th Floor<br>New York, New York 10020 |
| BEAM Architects D.P.C.<br>141 Flushing Avenue, Suite 1201<br>Brooklyn, NY 11205 | EBC<br>1808 Middle Country Road<br>Ridge, NY 11961 |
| Metropolitan Realty<br>381 South 5 Street<br>Brooklyn, NY 11211 | Xolle Demolition<br>2071 Flatbush Ave, Suite 44<br>Brooklyn, NY 11234 |
| 286 Rider Associates, LLC<br>213 Via EmailiaPalm Beach<br>Gardens, FL 33418 | |

/s/ Jason A. Nagi
Jason A. Nagi, Esq.