**Hearing Date and Time:  March 16, 2022 @ 2:00 p.m. (ET)**

**MAYER BROWN LLP**
Douglas Spelfogel
Leah Eisenberg
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 506-2500
Facsimile: (212) 262-1910

*Special Counsel to 286 Rider Ave Development LLC-*

**OFFIT KURMAN, P.A.**
Jason A. Nagi
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900

and

Joyce A. Kuhns, Esq. (Admitted *Pro Hac Vice*)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
Tel (410) 209-6463

*Attorneys for 286 Rider Ave Development LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re:* | **Chapter 11** |
| **286 Rider Ave Acquisition LLC** | **Case No. 21-11298-- (LGB)** |
| **Debtor.** | |

### OMNIBUS SUR-REPLY TO NOMINAL DEBTOR'S AND LENDER'S MOTIONS FOR RECONSIDERATION

286 Rider Ave Development LLC ("Development"), by and through its undersigned

counsel Mayer Brown LLP and Offit Kurman, P.A., hereby submits this Omnibus Sur-Reply (the

"Sur-Reply") in response to nominal *Debtor's and Lee. E. Buchwald's Reply to 286 Rider Ave*

*Development LLC's Omnibus Response to Motion to Reconsider Portion of Court's February 11,*

*2022 Order Regarding 286 Rider Ave Development, LLC's Motion to Confirm Disputed Pay-Off*

*Amounts, Satisfaction of DIP Loan, and for Related Relief and Supplement to Same* [ECF No. 329] (the "Debtor Reply") and the *Reply of Be-Aviv 286 Rider LLC in Support of its Motion, Under Rule 7052 and 9023 Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 9023-1, for Relief From and to Reconsider the Court's February 11, 2022* Order [ECF No. 327] (the "Lender Reply" and, together with the nominal Debtor Motion, the "Reply Briefs") and in support thereof states as follows:

## SUR-REPLY

1.      Development's *Omnibus Response to Nominal Debtor's and Lender's Motions for Reconsideration* [ECF No 325] (the "Omnibus Response")[1] lays out the merits of why the Motions to Reconsider should be denied.  The Reply Briefs ignore the clear record in front of this Court when rehashing their old arguments for at least the third or fourth time, misstate certain facts and law, and then go further to seek extraordinary relief that has either been rejected already or that is not properly raised in a reply brief supporting a motion to reconsider.  As discussed below, Development will be filing a motion on shortened notice for a determination, amongst other things, that the automatic stay is inapplicable and/or for relief from stay, to preserve the Property and status quo pending disposition of the case,  at which time the issues can be fully discussed on a complete record.  The within sur-reply is filed to address the misstatements of fact and law, and in opposition of the Debtor's attempt to seek relief as part of its reply, without motion, contrary to binding Second Circuit precedent, which requires notice and opportunity to be heard (whether relief is *sua sponte* or otherwise).  *Acosta v. Artuz*, 221 F.3d 117, 121 (2d Cir. 2000) (quoting *Lugo v. Keane,* 15 F.3d 29, 30 (2d Cir. 1994)).

---

[1] Capitalized terms used but not defined herein have the meanings given in the Omnibus Response.

A.    <u>Sur-Reply Concerning Lender Reply</u>

2.    ***Lender Misstates the Law***:  The Lender improperly seeks to avoid accounting for its claim,  in contravention of long established bankruptcy law and claims it does not need to document its fees and expense.  Here it is well within the Court's power to make a determination with respect to an accounting, in particular given that such a determination is essential to bring about what everybody agrees (or purports to agree) is the desired outcome – an end to this bankruptcy case.  The Lender misstates the law, citing to a footnote of a decision discussing reconsideration under local district court rules inapplicable here.  Specifically, the cases Lender cites concerning the need to identify matters overlooked by the court that were previously presented to it generally apply the District Court's Local Civil Rule 6.3, which does not apply to this proceeding.  *See Eisemann v. Greene*, 204 F.3d 393, 395 n.2 (2d Cir. 2000) ("Local Rule 6.3 provides in relevant part: 'There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked.'  To be entitled to reargument, a party 'must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion.'" Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151 (S.D.N.Y.1999).").

3.    In contrast, as courts have made clear, for Bankruptcy Rule 9023 purposes, **"manifest injustice exists when a '[decision] is wholly without legal support' and the error is obvious to all who view it."** *In re Ampal-Am. Israel Corp.*, No. 12-13689 (SMB), 2020 WL 5242956, at *2 (Bankr. S.D.N.Y. Sept. 1, 2020) (citations omitted).  Clearly, Lender has not set forth evidence to support such an extraordinary showing.  Similarly, Bankruptcy Rule 9023 therefore "may not be used to relitigate the same matters already determined by the court." *In re Motors Liquidation Co.*, 534 B.R. 538, 545 (Bankr. S.D.N.Y. 2015).  The Lender Reply presents

only matters that were already litigated and decided by this Court, and there is no legal error (let alone an obvious one) in the February 11 Order, which simply directs relief, as this Court has previously discussed at the hearing on March 2, 2022, that is common and within long established jurisdiction of the Bankruptcy Court.    Indeed, as the Court provided, an accounting is "certainly within my power, as a judge" and that, after such accounting, the Lender's remaining claim could be "zero" or "a negative."  Mar. 2, 2022 Hr'g Tr. 34:12-17; 56:7-10.  In fact, without determining whether the amounts received by Lender to date were appropriate, it is impossible to determine whether the Lender has been overpaid, or whether additional amounts re owned.

4.      Furthermore, the Lender misstates the law with respect to the Court's jurisdiction to order the Lender to return funds to Development.  As discussed above, in the Omnibus Response, and at numerous prior hearings, this Court has the authority to evaluate Lender's fees under, *inter alia*, Section 506 of the Bankruptcy Code.  Even if such determination was not within the Court's core jurisdiction (it plainly is), at an absolute minimum, this Court has either "related to" or "supplemental" jurisdiction to enter such order.  *See, e.g.*, *In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2021 WL 5225840, at *7 (Bankr. S.D.N.Y. Nov. 9, 2021) (noting that bankruptcy court has supplemental jurisdiction where core and non-core "claims derive from the same operative facts, are part of the same controversy, and ordinarily would be tried together in state court").

5.      Further, the Lender squarely placed the issue of its prepetition and postpetition fees and expenses within the Court's jurisdiction by actively participating in (and orchestrating) the subject bankruptcy case, asserting claims for payment of such, and seeking approval thereby in connection with the DIP financing facility.  The Final DIP Order also noted that the "Court retains jurisdiction with respect to **all matters** arising from **or related to** the implementation of this Final

Order," *see* Final Dip Order ¶ 30 (emphasis added) and that the Court specifically "retain[ed] the jurisdiction to resolve ***any dispute*** as to the reasonableness of any such fees and expenses" *see* Final DIP Order ¶ 26 (emphasis added).  Put simply, there is no real dispute as to this Court's jurisdiction – the Lender is merely trying to avoid the consequence of its actions by any means necessary.

6.      ***The Challenge Period***:  The Lender's arguments with respect to the effect of the Final DIP Order are overwrought and irrelevant.  The Lender has failed to meet its heavy burden for reconsideration, there are no new facts or law at issue, nor does the Lender assert, let alone establishing that the February 11 Order is without legal support- a required showing to establish manifest injustice.  The Final DIP Order was before the Court as part of the record at the hearing on February 10, 2022, and provides no basis on its face or otherwise to vitiate the Court's powers to review the Lender's fees for reasonableness.  In fact, the Court expressly determined that the only limitation under such Order, was to limit Development's right for a review of fees paid from the entry of the Final DIP Order through the date of the payoff of the DIP Loan. [2]

7.      ***Voluntary Payment Doctrine***:  The Lender Reply spills a great deal of ink discussing why it believes reconsideration is proper given that neither the February 11 Order nor the Court's remarks at the February 10 hearing expressly reject the Lender's spurious application of the Voluntary Payment Doctrine.  Lender Reply ¶¶ 27, 35-42.  However, the Lender fails to point to how the Court's February 11 Order lacks legal support, nor that the inapplicable doctrine provides any safe-harbor for the Lender's specious reargument.  Here, the Voluntary Payment

---

[2] Moreover, while Development submits such is unnecessary, as the Lender acknowledges (but describes as "pure nonsense"), the Final DIP Order on its face expressly recognizes that the Court the authority to modify the terms of such order.  In addition, irrespective, the Final DIP Order did not contain any dollar amounts for the Lender's pre-petition claim for legal fees and expenses (which is left blank in such order), accordingly, simply put, the challenge period cannot (and did not) extend to a challenge over unspecified fees – which under the very order - - are subject to a reasonableness determination.

Doctrine was discussed extensively in writing, and Development refuted such arguments at the February 10 hearing. *See* Lender Objection ¶¶ 11-20; Reply to Supplement ¶¶ 20-23; Feb. 10 Hr'g Tr. 9:18-10:9. Development has also already addressed and refuted the Lender's arguments on this point in the Lender Reply, *see* Reply to Supplement ¶¶ 20-23; Omnibus Response ¶¶ 32-36.

8.      Moreover, it is unsurprising that the Court did not mention the Voluntary Payment Doctrine at the February 10 Hearing—the Lender's counsel didn't either. This likely gave the impression that the Lender had chosen to abandon its argument on that point as without merit.

9.      In sum, the Lender has failed to meet its heavy burden that the February 11 Order was entered without legal support, in particular, given the lengthy hearings and decision read on the record by the Court after the February 10, 2022 hearing, and given that, at the March 2 hearing, the Lender's counsel discussed such matters at length and, thereafter, the Court reaffirmed the substance of the February 11 Order. *See* Mar. 2, 2022 Hr'g Tr. at 56:11-18, 58:13-24 (Mr. Moldovan discussing voluntary payment doctrine); *Id.* at 58:25 ("THE COURT: I understand."); *Id.* at 41:8-16, 42:10-21, 46:5-13, 47:5-13, 54:4-13 (Mr. Moldovan discussing "challenge period"); March 3 Order [ECF No. 319] (substantially reaffirming February 11 Order, including Development's ability to challenge Lender's fees).

## B.      Sur-Reply Concerning Nominal Debtor Reply

10.      ***Debtor's Solvency***: The nominal Debtor also expresses concern that Development argued that it is indisputable that the value of the Debtor's real estate is more than sufficient to support administrative claims, as the Court acknowledged, "[w]ithout citing any transcript," as if that were a relevant point. Debtor Reply ¶ 3. But in the very next paragraph, the Debtor

acknowledges that "[a]t the last status conference, the Court expressed the view that the value of

the Property would always be sufficient to pay administrative in full."  Debtor Reply ¶ 4.[3]

11.    ***Requests for Extraordinary Relief***:  It should go without saying that it is patently

improper (to say nothing of wasteful) for the nominal Debtor to request that this Court hold

Development in contempt for doing purportedly "hazardous work" at the property and to have the

Court enter an injunction against Development with respect to further work in its reply.  Initially,

proper service of a motion and an appropriate time to respond is required by Rules 9014 and 9020

of the Federal Rules of Bankruptcy Procedure.  A reply to a motion filed days before a hearing

does not satisfy the Bankruptcy Rules.  Development does not waive the requirements of the Rules

on its own behalf, and certainly could not do so on behalf of "anyone acting in concert with it."[4]

12.    On the merits, the specious claims and flimsy hearsay evidence provided by the

nominal Debtor does not support entry of a contempt order or injunction.  Among other things, the

report attached as Exhibit A to the Debtor Reply says "NO VIOLATION WARRANTED FOR

COMPLAINT[.]"  Debtor Reply Ex. A at p. 2.  It is nonsensical of the nominal Debtor to indicate

---

[3] The nominal Debtor once again raises its nonsensical argument that administrative creditors are harmed by the absence of an escrow account holding whatever inflated and baldly false amount of funds they choose to assert.  Setting aside the fact that the outstanding fees have been needlessly generated by the Lender and Robinson Brog through their efforts to preclude Development from asserting its legal rights in the Debtor and the Debtor's real estate (and for the sole sake of manufacturing billable hours), the Debtor's argument was already addressed at the March 2 hearing, when the Court noted the practical impossibility of funding an escrow without knowing the amount to fund.  Mar. 2, 2022 Hr'g Tr. ("[Y]ou can't have . . . a real dismissal without knowing how much people are owed because . . . how is somebody going to demonstrate that they have the funds to pay something or that the amount of money is 'X' and they'll be able to put up that 'X' without knowing the amount?").  Development can only fund administrative expenses once the amount of such expenses is known, and determined by the Court to be allowable and not just wasteful and false billing.

[4] The injunction requested is either duplicative of the automatic stay, and therefore would simply be a waste of time and money to entertain, or it is new, broader relief that requires the filing of an adversary proceeding.  *See* Fed. R. Bankr. P. 7001(7).  Again, Development does not waive the applicable procedural requirements on its own behalf, and cannot do so on behalf of others.

that the documented *absence* of an ordinance violation in these circumstances could somehow supply evidence of a stay violation.

13.     In addition, as noted above, Development will be filing a motion on shortened notice for a determination, amongst other things, that the automatic stay is inapplicable and/or for relief from stay, at which time the issues can be fully discussed on a complete and proper record. Moreover,  while setting aside the questionable applicability of the automatic stay (in light of, amongst other things, Development as acknowledged 100% equity holder, is seeking to preserve the asset and status quo pending disposition of the case), any work performed on the Debtor's real estate related to asbestos abatement, preserved and protected the property, and benefited the Debtor at no risk to it.  Indeed, even the nominal Debtor has repeatedly acknowledged the need to move expeditiously to preserve the 421-a tax abatement from the City of New York that is only available if work commences on the Debtor's real estate.  *E.g.*, Bid Procedures Motion [ECF No. 173] p. 4-5 ("The loss of the tax abatement would result in a diminution in the value of the property to the detriment of all parties in interest.  Thus, an auction as soon as possible in early January is absolutely critical to preserve value for this estate.").

14.     Here, as even nominal Debtor has acknowledged, inorder to preserve the tax abatement, it is necessary to commence construction prior to June 2022, which in turn requires that certain environmental remediation and other preparation be undertaken to insure there is an ability to have  a footing in the ground before such deadline, which is potentially worth tens of millions of dollars in value.   Despite the postponement of the January auction date, the nominal Debtor has taken no steps to preserve the value of its real estate by commencing activities in furtherance of the tax abatement, and has instead sought to prolong the uncertainty by dragging out the pendency of this bankruptcy case—a severe violation of its fiduciary duties to maximize

value for the benefit of the estate, the creditors, and among others, Development. The steps Development has taken serve only to preserve the availability of the tax abatement and, in doing so, preserve the value of the Debtor's estate.

15.    Further, notwithstanding the nominal Debtor's patently false assertions, the environmental remediation work was properly permitted, insured, and paid for. Attached hereto as **Exhibit A** are certificates of liability and worker's compensation insurance in the name of the Debtor demonstrating that there is no liability risk to the Debtor's bankruptcy estate from any activities conducted on the premises. Attached hereto as **Exhibit B** are certificates from the New York City Department of Environmental Protection demonstrating that the asbestos abatement on the premises was performed with proper oversight and that, following such abatement, the "entire building is free of asbestos containing material (ACM)." Finally, attached hereto as **Exhibit C** is a final invoice showing payment in full of the asbestos-abatement related charges. Accordingly, there is no conceivable risk to the Debtor, Mr. Buchwald or the estate—on the contrary, the foregoing has only improved the value of the Debtor's real estate at no cost to the Debtor.

16.    In addition, while unnecessary given the above, as provided in amended and restated engagement agreement between the Debtor and Lee Buchwald, dated July 1, 2021, signed by Ben Harlev, the Debtor committed to fund D&O and liability insurance to Mr. Buchwald up to $2 million. **Exhibit D.**[5]

17.    In sum, the nominal Debtor's inability to provide a sound factual basis for these requests further demonstrates exactly why the Bankruptcy Rules require sufficient notice and the opportunity for motion practice and discovery prior to the entry of a contempt order or injunction,

---

[5] Development also filed a motion to remove Robinson Brog as counsel by motion dated February 21, 2022 . [Doc. No. 299]. While such has not been noticed for hearing, Robinson Brog, nor any other party has filed opposition to such.

and why there is no basis for this Court to enter such extraordinary relief, whether *sua sponte* or otherwise. Further, even accounting the nominal Debtor's unsubtle invitation for this Court to enter relief *sua sponte*, such relief would still require "**notice and an opportunity to be heard**" **if done on a *sua sponte* basis on account of the "well-established principle that 'a person is entitled to notice before adverse judicial action is taken against him.'"** *Acosta v. Artuz*, 221 F.3d 117, 121 (2d Cir. 2000) (quoting *Lugo v. Keane,* 15 F.3d 29, 30 (2d Cir. 1994)).

18.     Needless to say, any such wasteful and specious motions filed by Mr. Buchwald or Robinson Brog, to in effect prevent the 421-a abatement work from being done, are only to the determinant of the Debtor, and as such, any work carried out by Robinson Brog and Mr. Buchwald can only be at their own expense. Development is the acknowledged 100% equity holder, and as such, the only party with the undisputable and unconflicted interest to act to preserve and protect the Property and every residual dollar for the benefit of the estate, unlike Mr. Buchwald and the Lender- controlled and selected professionals who are now conspicuously acting in their self-interest to protect their inflated and questionable fees in an unauthorized case Lender orchestrated for its own benefit.

19.     ***Redaction of Robinson Brog Time Records***:  The Debtor Reply misrepresents Development's remarks in the Omnibus Response concerning Robinson Brog's redaction of time records and ignores the Court's statements on the issue. Development did not "concede that paragraphs 4 and 5 of the February 11 Order already permit" the filing of redacted records. Debtor Reply ¶ 1. Instead, Development only pointed out the *silence* of the Court's order, noting that "[n]othing in the February 11 Order requires any party to file *unredacted* attorney time records," to make the point that a motion to reconsider was not the appropriate means to get the Court's approval for filing redacted documents. Instead, at the March 2 hearing, the Court laid out the

statutorily appropriate procedure for filing redacted documents. *See* Mar. 2, 2022 Hr'g Tr. 28:17-29:18 ("So, Mr. Ringel, with respect to your motion . . . if there is something that is truly attorney/client privilege . . . you can certainly redact your time records. You can file a motion. You can file the redactions and file a motion to seal, and I'm either going to grant it or I'm not . . . . But what I don't want to see is . . . a fee application that's a third, a one-half redacted."). If Robinson Brog wants to act as though the February 11 Order expressly authorizes redactions, so be it, but that would be contrary to the Court's express directives.

## **CONCLUSION**

20.     The Motions to Reconsider remain baseless, and nothing in the Reply Briefs rescues them. There are no new facts and there is no new law that justifies modifying the February 11 Order. Further, there is no support that the entry of the February 11 Order was wholly without legal support as required to support a showing of manifest injustice. Nor is the Debtor's request for extraordinary relief, without motion, or proper notice and hearing permissible.

WHEREFORE Development respectfully requests that the Court deny the Motions to Reconsider in their entirety and grant such other and further relief as it deems just and proper.

Dated:  March 16, 2022
      New York, New York

Respectfully submitted,

By:  _/s/ Douglas E. Spelfogel_
Douglas Spelfogel
Leah Eisenberg
Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) 506-1910
Email: dspelfogel@mayerbrown.com
      leisenberg@mayerbrown.com

*Special Counsel to 286 Rider Ave*
*Development LLC*

**OFFIT KURMAN, P.A.**

Jason A. Nagi
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900
Email: jason.nagi@offitkurman.com

and

Joyce A. Kuhns, Esq. (Admitted *Pro Hac Vice*)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
Tel (410) 209-6463
Email: jkuhns@offitkurman.com

*Attorneys for 286 Rider Ave Development LLC*

**<u>EXHIBIT A</u>**



PO Box 66699, Albany, NY 12206
**| nysif.com**

# CERTIFICATE OF WORKERS' COMPENSATION INSURANCE

^ ^ ^ ^ ^ ^   844374195
ENVIROSCOPE CORPORATION
1013 EAST 12TH STREET
SUITE 101
BROOKLYN NY 11230



SCAN TO VALIDATE
AND SUBSCRIBE

| POLICYHOLDER | CERTIFICATE HOLDER |
|---|---|
| ENVIROSCOPE CORPORATION<br>1013 EAST 12TH STREET<br>SUITE 101<br>BROOKLYN NY 11230 | 286 RIDER AVE ACQUISITION, LLC<br>679 DRIGGS AVENUE<br>BROOKLYN  NY  11211 |

| POLICY NUMBER<br>K2530 153-2 | CERTIFICATE NUMBER<br>344725 | POLICY PERIOD<br>11/17/2021  TO  11/17/2022 | DATE<br>1/14/2022 |
|---|---|---|---|

THIS IS TO CERTIFY THAT THE POLICYHOLDER NAMED ABOVE IS INSURED WITH THE NEW YORK STATE INSURANCE FUND UNDER POLICY NO. 2530 153-2, COVERING THE ENTIRE OBLIGATION OF THIS POLICYHOLDER FOR WORKERS' COMPENSATION UNDER THE NEW YORK WORKERS' COMPENSATION LAW WITH RESPECT TO ALL OPERATIONS IN THE STATE OF NEW YORK, EXCEPT AS INDICATED BELOW, AND, WITH RESPECT TO OPERATIONS OUTSIDE OF NEW YORK, TO THE POLICYHOLDER'S REGULAR NEW YORK STATE EMPLOYEES ONLY.

**IF YOU WISH TO RECEIVE NOTIFICATIONS REGARDING SAID POLICY, INCLUDING ANY NOTIFICATION OF CANCELLATIONS, OR TO VALIDATE THIS CERTIFICATE, VISIT OUR WEBSITE AT HTTPS://WWW.NYSIF.COM/CERT/CERTVAL.ASP. THE  NEW YORK  STATE INSURANCE FUND  IS NOT LIABLE IN THE EVENT OF  FAILURE  TO GIVE  SUCH  NOTIFICATIONS.**

THIS POLICY DOES NOT COVER CLAIMS OR SUITS THAT ARISE FROM BODILY INJURY SUFFERED BY THE OFFICERS OF THE INSURED CORPORATION.
PRESIDENT
MOLLY  REICHMAN
ENVIROSCOPE CORPORATION
ONE OF ONE

THIS  CERTIFICATE IS ISSUED AS A MATTER  OF  INFORMATION ONLY AND CONFERS  NO  RIGHTS  NOR  INSURANCE COVERAGE  UPON  THE  CERTIFICATE  HOLDER. THIS  CERTIFICATE  DOES  NOT  AMEND, EXTEND OR ALTER THE COVERAGE  AFFORDED  BY  THE  POLICY.

NEW YORK STATE INSURANCE FUND

DIRECTOR, INSURANCE FUND UNDERWRITING

VALIDATION NUMBER: 988610871

U-26.3

# ACORD®

## CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 01/14/22 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: | Pinchus Chayne | | |
|---|---|---|---|---|---|
| Chein Insurance Agency, Inc. | | PHONE (A/C, No, Ext): 718-799-5602 | | FAX (A/C, No): 646-895-7646 | |
| 1609 East 29th Street | | E-MAIL ADDRESS: pinchus@chein-insurance.com | | | |
| | | INSURER(S) AFFORDING COVERAGE | | | NAIC # |
| Brooklyn | NY  11229 | INSURER A : AXIS Surplus Insurance Company | | | |
| INSURED | | INSURER B : | | | |
| Enviroscope Corp | | INSURER C : | | | |
| 1909 Avenue K | | INSURER D : | | | |
| | | INSURER E : | | | |
| Brooklyn | NY  11230 | INSURER F : | | | |

## COVERAGES                    CERTIFICATE NUMBER:                    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | ☒ COMMERCIAL GENERAL LIABILITY | | | EMP20002515-01 | 11/20/2021 | 11/20/2022 | EACH OCCURRENCE | $ 1,000,000 |
| | ☐ CLAIMS-MADE ☒ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | ☒ Deductible: $5,000 | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 3,000,000 |
| | POLICY ☐ PRO-JECT ☒ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 3,000,000 |
| | OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DED ☐ RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y / N | N / A | | | | | PER STATUTE ☐ OTH-ER ☐ | |
| | ANYPROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Professional Liability/ Contractors Pollution Liability | | | EMP20002515-01 | 11/20/2021 | 11/20/2022 | Each Claim | $1,000,000 |
| | | | | | | | Aggregate | $2,000,000 |
| | | | | | | | Deductible | $5,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Certificate Holder is included as an Additional Insured on a primary and non contributory basis for ongoing and completed operations if required per written & executed contract agreement, as respects to GL policy which includes endorsements for Waiver of Subrogation in favor of the Additional Insureds if required in written & executed contract. Site Address: 286 Rider Avenue, Bronx New York 10451
286 Rider Ave Development LLC, 286 Rider Ave Holdings LLC with and address at 679 Driggs Ave Brooklyn NY 11211, Nextek Solutions & Windsor Environmental are included as Additional Insured, as respects to the General Liability coverage, as per written & executed contract

As per terms and conditions of the policy

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| 286 Rider Ave Acquisition, LLC 679 Driggs Avenue Brooklyn, Ny 11211 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)                    The ACORD name and logo are registered marks of ACORD

**EXHIBIT B**



## NYC DEPARTMENT OF ENVIRONMENTAL PROTECTION

Asbestos Control Program

59-17 Junction Boulevard, 8th Floor, Flushing, NY 11373

## ASBESTOS PROJECT COMPLETION FORM- ACP21

**TRU1553BX21**

Build It Back App ID # _____

Premise Address  __286 Rider Avenue_____     Borough __Bronx_____  Zip __10451__

DEP Asbestos Control Program is in receipt of the following document (s)

- [x] Project Monitor's Report
- [ ] A-TR1 form filed by Registered Design Professional

Based on the above submitted documentation the Department is issuing the

- [x] Project Completion Form (entire project)
- [ ] Project Completion Form (partial project)

(See next page for the list of closed-out location(s) of abatement)

DEP hereby acknowledges that it has received the above documentation required pursuant to section 1-22(b) of the DEP Asbestos Rules (15 RCNY Chapter 1) for the completion of this project. Please note that the issuance of this Form is not a certification that the asbestos project was performed in accordance with the DEP Asbestos Rules or that the building is free of asbestos containing material. This Form is issued based on representations contained in documentation submitted by the applicant, or other relevant party.

Date:  March 3, 2022

_____
Signature



**NYC DEPARTMENT OF ENVIRONMENTAL PROTECTION**

Asbestos Control Program

59-17 Junction Boulevard, 8th Floor, Flushing, NY 11373

**ASBESTOS PROJECT COMPLETION FORM- ACP21**

<u>TRU1553BX21</u>

Build It Back App ID # _____

Premise Address  <u>286 Rider Avenue</u>                         Borough <u>Bronx</u>      Zip <u>10451</u>

**CLOSED-OUT LOCATION(S) OF ABATEMENT**

| Floor | Section of Floor | Type of Asbestos Containing Material | Amount of ACM | | DOB Job Number(s) (if applicable) |
|-------|------------------|--------------------------------------|---------------|------------|-----------------------------------|
| | | | Square Feet | Linear Feet | |
| roof | | roofing materials | 20,730 | | |
| roof | pitch pockets | roofing material | 40 | | |
| roof | mechanical equipment | tar | 30 | | |
| | | **TOTAL ACM** | 20,800 | | |



**NYC DEPARTMENT OF ENVIRONMENTAL PROTECTION**
Asbestos Control Program
59-17 Junction Boulevard, 8th Floor, Flushing, NY 11373
**ASBESTOS ASSESSMENT REPORT**



RECEIVED
3/3/2022
DEP
ASBESTOS CONTROL
PROGRAM

FEE PAID

1. NYC DOB Job # (if applicable) _____

**Control Number: 2941380**

2. Premise No. __286__    Street Name __Rider Avenue__    Borough __Bronx__    Zip __10451__

3. AKA _____    Type of Facility __Commercial__    BIN __2000954__    Block __02333__    Lot __0033__

4. Building Owner __Toby Moskovits__    Address __697 Driggs Avenue__

5. City __Brooklyn, NY__    State __NY__    Zip __11211__    Contact Person __Toby Moskovits__

6. Tel. # __(718) 408-8849__    Fax # _____    Email __leizer87@gmail.com__

7. Work Type __Full Demolition__

Description of the Entire Scope of Work
__Demolition of a one-story building.__

8. I, __TAYLOR WEBER__ , have conducted an asbestos investigation on
   *Name of Certified Asbestos Investigator*

__06/03/2019 8:30AM-12:15PM, 03/02/2022 7:15AM-8:15AM__ in accordance
*Date(s)*

with Sections 1-16 and 1-28 of the NYC DEP Asbestos Control Program Rules and declare that at said facility address, the

☐ a. the premises or the portion(s) of the premises, included in the scope of renovations was/were determined that there was no asbestos-containing materials (ACM) present

☐ b. premise (or portions thereof) affected by the work contains 10 square feet or less or 25 linear feet or less of ACM. Specify locations in section 9: Note: This material must be abated as a minor project in accordance with relevant provisions of the DEP Asbestos Rules.

☐ c. asbestos is present and will not be disturbed during construction activity. Specify the quantity and area where asbestos is present. Specify amount: _____ sq. ft _____ linear ft.

☒ d. entire building is free of asbestos containing material (ACM).

9. RESULTS OF ASBESTOS BUILDING SURVEY:

| Floor | Section of Floor(s) Surveyed | Material Assumed to Contain ACM and/or Sampled | Number of Samples Analyzed | Asbestos Present | Assumed ACM | Square Feet | Linear Feet | Abated | Scope of Work Applied |
|-------|------------------------------|-----------------------------------------------|---------------------------|------------------|-------------|-------------|-------------|--------|----------------------|
| Building Floors-1 to 1 | Foyer, Bathrooms, Office, & Warehouse | Black Cove Base + Glue | 2 | No | No | | | | |

I hereby declare the information provided herein is true and complete

___*Taylor Weber*___    __3/3/2022__    __146090__    __7/6/2023__
DEP Certified Asbestos Investigator's Signature    *Date*    *Certificate Number*    *Expiration Date*

Tel. # __(845) 947-4310__    Fax # _____

Email __taylor@crownenv.com__

SEAL
OF THE
NYC DEP
CERTIFIED
ASBESTOS
INVESTIGATOR

CITY OF NEW YORK
TAYLOR R. WEBER
CERTIFIED ASBESTOS INVESTIGATOR
No. 146090

The investigator shall assume that some or all of the areas investigated contain ACM, and for each area that is not assumed to contain ACM, collect and submit for analysis bulk samples in accordance with §§ 1-36, 1-37, and 1-44 of the DEP Asbestos Rules and EPA publications 560/5-85-024 and 560/5-85-030a and 40 CFR 763.86.

Is it a Build-It-Back project?    ☐ Yes, App ID # _____    ☒ No

25975452



**NYC DEPARTMENT OF ENVIRONMENTAL PROTECTION**

Asbestos Control Program

59-17 Junction Boulevard, 8th Floor, Flushing, NY 11373

**ASBESTOS ASSESSMENT REPORT**

RECEIVED

3/3/2022

DEP
ASBESTOS CONTROL
PROGRAM

FEE PAID

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Building Floors-1 to 1 | Foyer, Bathrooms, Office, & Warehouse | Joint Compound | 3 | No | No | | | | | |
| Building Floors-1 to 1 | Foyer, Bathrooms, Office, & Warehouse | Drywall | 2 | No | No | | | | | |
| Building Floors-1 to 1 | Foyer, Bathrooms, Office, & Warehouse | Blue 12"x12" Floor Tiles | 2 | No | No | | | | | |
| Building Floors-1 to 1 | Foyer, Bathrooms, Office, & Warehouse | Black Mastic Under Floor Tiles | 2 | No | No | | | | | |
| Building Floors-1 to 1 | Foyer, Bathrooms, Office, & Warehouse | Gray Cove Base + Glue | 2 | No | No | | | | | |
| Building Floors-1 to 1 | Foyer, Bathrooms, Office, & Warehouse | Gray Stepping Mat | 2 | No | No | | | | | |
| Building Floors-1 to 1 | Foyer, Bathrooms, Office, & Warehouse | Black Caulking | 2 | No | No | | | | | |
| Building Floors-1 to 1 | Foyer, Bathrooms, Office, & Warehouse | Brown Particle Board | 2 | No | No | | | | | |
| Building Floors-1 to 1 | Foyer, Bathrooms, Office, & Warehouse | CMU | 2 | No | No | | | | | |
| Building Floors-1 to 1 | Foyer, Bathrooms, Office, & Warehouse | CMU Mortar | 2 | No | No | | | | | |
| Building Floors-1 to 1 | Foyer, Bathrooms, Office, & Warehouse | White Plaster | 3 | No | No | | | | | |
| Building Floors-1 to 1 | Foyer, Bathrooms, Office, & Warehouse | Yellow Insulation | 3 | No | No | | | | | |
| Building Floors-1 to 1 | Foyer, Bathrooms, Office, & Warehouse | White 2'x4' Ceiling Tiles | 2 | No | No | | | | | |
| Building Floors-1 to 1 | Foyer, Bathrooms, Office, & Warehouse | Poured Concrete | 2 | No | No | | | | | |
| Facade-1 to 1 | Entire Facade & Windows | Dark Gray/Black Caulking | 2 | No | No | | | | | |
| Facade-1 to 1 | Entire Facade & Windows | Troweled-On Concrete | 3 | No | No | | | | | |
| Facade-1 to 1 | Entire Facade & Windows | Red Brick | 2 | No | No | | | | | |
| Facade-1 to 1 | Entire Facade & Windows | Brick Mortar | 2 | No | No | | | | | |

**I hereby declare the information provided herein is true and complete**

| | | | |
|---|---|---|---|
| _TAYLOR WEBER_ | 3/3/2022 | 146090 | 7/6/2023 |
| DEP Certified Asbestos Investigator's Signature | Date | Certificate Number | Expiration Date |

Tel. # (845) 947-4310 _____ Fax # _____

Email taylor@crownenv.com

The investigator shall assume that some or all of the areas investigated contain ACM, and for each area that is not assumed to contain ACM, collect and submit for analysis bulk samples in accordance with §§ 1-36, 1-37, and 1-44 of the DEP Asbestos Rules and EPA publications 560/5-85-024 and 560/5-85-030a and 40 CFR 763.86.

SEAL
OF THE
NYC DEP
CERTIFIED
ASBESTOS
INVESTIGATOR

CITY OF NEW YORK
TAYLOR R. WEBER
No. 146090
CERTIFIED ASBESTOS INVESTIGATOR

**Is it a Build-It-Back project?** ☐ Yes, App ID # _____ ☒ No

25975452

Page 2 of 3  ACP5 10/2018

3/3/2022 12:10:48 PM



**NYC DEPARTMENT OF ENVIRONMENTAL PROTECTION**

Asbestos Control Program

59-17 Junction Boulevard, 8th Floor, Flushing, NY 11373

**ASBESTOS ASSESSMENT REPORT**

RECEIVED

3/3/2022

DEP
ASBESTOS CONTROL
PROGRAM

FEE PAID

| Roof | Entire Roof & Mechanical Equipment/Exhaust | Built-Up Roofing Material (Layer 1) | 2 | No | No | | | |
| Roof | Entire Roof & Mechanical Equipment/Exhaust | Built-Up Roofing Material (Layer 2) | 2 | No | No | | | |
| Roof | Entire Roof & Mechanical Equipment/Exhaust | Black Tar/Mastic (Layer 3) [TRU1553BX21] | 2 | Yes | No | 20730 | Yes | d |
| Roof | Entire Roof & Mechanical Equipment/Exhaust | Brown Insulation Fill (Layer 4) | 2 | No | No | | | |
| Roof | Entire Roof & Mechanical Equipment/Exhaust | Black Glue Under Insulation (Layer 5) | 2 | No | No | | | |
| Roof | Entire Roof & Mechanical Equipment/Exhaust | Black Tar [TRU1553BX21] | 2 | Yes | No | 30 | Yes | d |
| Roof | Entire Roof & Mechanical Equipment/Exhaust | Pitch Pockets [TRU1553BX21] | 2 | Yes | No | 40 | Yes | d |
| Roof | Entire Roof & Mechanical Equipment/Exhaust | White/Clear Caulking | 2 | No | No | | | |

**10. ANALYTICAL LABORATORY:**

| NAME | ELAP # (NYS DOH CERTIFICATION) | DATE(S) SAMPLES ANALYZED |
|------|------|------|
| ALAC Analytical Labs | 11605 | 6/4/2019 |
| ATC Group Services, LLC | 10879 | 6/4/2019 |
| ALLAB | 12118 | 3/2/2022 |

**11. NYS DOL Asbestos Handling license #** 171272          **Company Name** Crown Environmental, LLC

**12.Comment**

A second clearance inspection was performed on 3/2/2022 under Crown Environmental, LLC. During clearance inspection, a black glue material was identified on the roof under the brown insulation layer. The inspector took two (2) samples of the black glue on the rooftop of the building. This remaining black glue material was confirmed with the lab as non-asbestos. This material is 27-57 & 27-58.

I hereby declare the information provided herein is true and complete

| TAYLOR WEBER | 3/3/2022 | 146090 | 7/6/2023 |
| DEP Certified Asbestos Investigator's Signature | Date | Certificate Number | Expiration Date |

Tel. # (845) 947-4310       Fax # _____

Email taylor@crownenv.com

SEAL
OF THE
NYC DEP
CERTIFIED
ASBESTOS
INVESTIGATOR

CITY OF NEW YORK · TAYLOR R. WEBER · No. 146090 · CERTIFIED ASBESTOS INVESTIGATOR

The investigator shall assume that some or all of the areas investigated contain ACM, and for each area that is not assumed to contain ACM, collect and submit for analysis bulk samples in accordance with §§ 1-36, 1-37, and 1-44 of the DEP Asbestos Rules and EPA publications 560/5-85-024 and 560/5-85-030a and 40 CFR 763.86.

Is it a Build-It-Back project?   ☐ Yes, App ID # _____      ☒ No

25975452

**<u>EXHIBIT C</u>**



**Windsor Environmental**
1909 Avenue K
Brooklyn, NY  11230 US
(347) 394-4411
office@windsorenvironmental.com

# Invoice

| BILL TO |
|---|
| 286 Rider Ave Developement LLC |
| 679 Driggs Ave |
| Brooklyn NY 11211 |

| INVOICE # | DATE | TOTAL DUE | DUE DATE | TERMS | ENCLOSED |
|---|---|---|---|---|---|
| 4563 | 03/03/2022 | $0.00 | 03/03/2022 | Due on receipt | |

| ACTIVITY | QTY | RATE | AMOUNT |
|---|---|---|---|
| **Asbestos:Asbestos Abatement**<br>10% balance final payment | 1 | 13,077.50 | 13,077.50 |

PAID

PAYMENT                                                      13,077.50
BALANCE DUE                                              **$0.00**

**<u>EXHIBIT D</u>**

## BUCHWALD CAPITAL ADVISORS LLC

200 PARK AVENUE
SUITE 1700
NEW YORK, NY 10166-0005
Lbuchwald@buchwaldcapital.com
www.buchwaldcapital.com

LEE E. BUCHWALD
PRESIDENT

TEL: (212) 970-1040
FAX: (212) 656-1578

Amended and restated as of:
July 1, 2021

286 Rider Ave Acquisition LLC
123 5th Avenue
4th Floor
New York, NY 10003
Attention: Mr. Ben Harlev

Dear Mr. Harlev:

The purpose of this letter is to confirm the understanding and agreement (the "Agreement") with 286 Rider Ave Acquisition LLC (the "Company"), concerning the engagement of Lee E. Buchwald ("LEB"), President of Buchwald Capital Advisors LLC ("BCA") as the  Manager and the Company's agreement to pay BCA certain compensation and out-of-pocket expenses as set forth herein.

1. Engagement: LEB is being retained to be the Manager of the Company for the purpose of filing a Chapter 11 petition for the Company, managing the Company during the bankruptcy case, and overseeing the bankruptcy case as the Company's sole authorized  representative. In the exercise of his duties, LEB shall at all times act in a fiduciary capacity and exercise appropriate fiduciary duties that are in the best interests of the estate and all of its stakeholders in accordance with the Bankruptcy Code and the applicable law of the State of New York.

2. Term of Agreement: This Agreement shall commence as of the date hereof and continue until the entry of a Final Decree in the Chapter 11 case to be commenced for the Company, unless terminated  earlier by either party upon 30 days prior written notice of termination to the other party.  Upon any termination, the provisions of Paragraph 3 (to the extent applicable) shall survive the termination of this Agreement to the extent such provisions relate to the payment of fees and expenses due on or before the effective date of termination (in the event of any termination which is other than on the first of the month, the pro rata portion of the monthly fees referred to in Paragraph 3(a) for the month of termination shall be deemed to be due on the effective date of termination) and expenses incurred on or before the effective date of termination and the provisions of Paragraphs 5, 6, 7 and 8, shall survive the termination of this Agreement and shall remain in effect.

3. Fees and Expenses:

   (a) Fee:  The Company shall pay BCA a fee of $550 per hour for LEB's performance of his duties for the term of the engagement and due monthly upon presentation of an invoice detailing the services performed.  Such fee shall be subject to amendment by the Company and LEB by mutual written agreement.

286 Rider Ave Acquisition LLC
July 1, 2021

(b)   Expense Reimbursement: BCA shall be entitled to monthly reimbursement of reasonable out-of-pocket expenses incurred in connection with the services to be provided under this Agreement. Fees plus reimbursement of reasonable out-of-pocket expenses as billed are due upon the first of each month to BCA at the address listed above.

Out-of-pocket expenses shall include, but not be limited to, computer and research charges, attorney fees (only with the Company's prior consent) and courier, messenger and postage expenses.

4.   Company Information: The Company recognizes and confirms that in rendering services hereunder, LEB will be using and relying on, and assuming the accuracy of, without any independent verification, data, material and other information (collectively, the "Information") furnished to LEB by or on behalf of the Company or other third parties (including their agents, counsel, employees and representatives). The Company understands that LEB will not be responsible for independently verifying the accuracy of the Information provided to LEB and shall not be liable for inaccuracies in any such Information. Unless required by subpoena or other valid legal process, and prior written notice is provided to the Company so that the Company may challenge such disclosure, LEB will not disclose to any third party (other than his counsel) any portion of the information so provided by the Company which constitutes confidential, proprietary or trade secret information except in furtherance of the engagement hereunder. BCA will not use such confidential information for any purpose other than pursuant to the engagement hereunder.

5.   Indemnification and Liability Coverage:   The Company shall provide indemnification and other obligations set forth in Schedule I hereto, which is an integral part hereof and is hereby incorporated by reference.   Furthermore, the Company shall provide LEB and BCA with professional liability or directors' and officer's insurance coverage in the amount of $2 million for twelve months.   Such insurance policy shall remain in force for the duration of the bankruptcy and shall continue to stay in-force until six months after the entry of the Final Decree.

6.   Entire Agreement: This Agreement represents the entire Agreement between the parties and may not be modified except in writing signed by both parties. This Agreement may be executed in counterparts, each of which shall constitute an original. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision.

7.   Affiliation: No one other than the Company is authorized to rely upon the engagement of LEB hereunder or any statements, advice, opinions or conduct of LEB.

8.   Arbitration: This Agreement will be governed by, and construed in accordance with, the laws of the State of New York applicable to agreements made and to be performed entirely in such state. Each of the parties hereto agrees to submit any claim or dispute arising out of or related to this Agreement to private and confidential arbitration by a single arbitrator selected in accordance with the rules of the American Arbitration Association.   The arbitration proceedings shall be governed by the Commercial

2

286 Rider Ave Acquisition LLC
July 1, 2021

Rules of Arbitration of the American Arbitration Association and shall take place in the Borough of Manhattan, New York City, New York.  The arbitrator shall have the power to order discovery and the authority to award any remedy or relief that a court of the State of New York could order or grant, including without limitation specific performance. The decision of the arbitrator shall be final and binding on each of the parties and judgment thereon may be entered in any court having jurisdiction. This arbitration procedure is intended to be the exclusive method of resolving any claim arising out of or related to this Agreement, including any claim as to the validity of this Agreement.  Each party agrees to the personal and subject matter jurisdiction of such arbitration for the resolution of any such claim, including any issue relating to this arbitration provision.  In the event of any arbitration arising out of or in connection with this Agreement, the prevailing party in such action shall be entitled to an award of actual attorneys' fees and costs incurred in connection with the arbitration.

9.   <u>Other Matters</u>: If this letter correctly sets forth our Agreement on the matters covered herein, please so indicate by signing and returning the enclosed copy of this letter and signing and retaining the duplicate which is enclosed for your records.  Upon execution by both parties, this letter will constitute a legally binding Agreement between Company and LEB.

286 Rider Ave Acquisition LLC
July 1, 2021

By:

    Lee E. Buchwald

    President of Buchwald Capital Advisors LLC

286 Rider Ave Acquisition  LLC

By:

    Ben Harley

Its:

4

286 Rider Ave Acquisition LLC
July 1, 2021

## Schedule I

    This Schedule I is a part of and is incorporated into that certain letter agreement (the "Agreement"), dated July 1, 2021, by and between 286 Rider Ave Acquisition LLC (the "Company"), Lee E. Buchwald ("LEB") and Buchwald Capital Advisors LLC (together, "BCA"). Capitalized terms not defined herein shall have the same meaning assigned in the Agreement.

    The Company shall indemnify and hold harmless BCA and its affiliates and their respective directors, officers, employees, attorneys and other agents appointed by any of the foregoing and each other person, if any, controlling BCA or any of its affiliates (BCA and each such person and entity being referred to as an "Indemnified Person"), from and against any finally determined losses, claims, damages, judgments, assessments, costs and other liabilities (collectively, "Liabilities"), and will reimburse each Indemnified Person for all fees and expenses (including the reasonable fees and expenses of counsel) (collectively, "Expenses") as they are incurred in investigating, preparing, pursuing or defending any claim, action, proceeding or investigation, whether or not in connection with pending or threatened litigation and whether or not any Indemnified Person is a party (collectively, "Actions"), arising out of or in connection with advice or services rendered or to be rendered by an Indemnified Person pursuant to the Agreement, the transaction contemplated thereby or any Indemnified Persons' actions or inactions in connection with any such advice, services or transaction (the "Services"); provided that the Company will not be responsible for any Liabilities or Expenses of any Indemnified Person that are determined by a judgment of a court of competent jurisdiction, which judgment is no longer subject to appeal or further review, to have resulted from such Indemnified Person's negligence in connection with any of the advice, actions, inactions or services referred to above. The Company shall also reimburse such Indemnified Person for all Expenses as they are incurred in connection with enforcing such Indemnified Persons' rights under the Agreement (including without limitation its rights under this Schedule I). Such Indemnified Person shall reasonably cooperate with the defense of any Actions.

    Upon receipt by an Indemnified Person of actual notice of an Action against such Indemnified Person with respect to which indemnity may be sought under the Agreement, such Indemnified Person shall promptly notify the Company in writing; provided that failure to so notify the Company shall not relieve the Company from any liability which the Company or any other person may have on account of this indemnity or otherwise, except to the extent the Company shall have been materially prejudiced by such failure. The Company shall, upon receipt of notice, assume the defense of any such Action including the employment of counsel reasonably satisfactory to BCA. Any Indemnified Person shall have the right to employ separate counsel in any Action and participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person, unless: (i) the Company has failed promptly to assume the defense and employ counsel or (ii) the named parties to any such Action (including any impleaded parties) include such Indemnified Person and the Company, and such Indemnified Person shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; provided that the Company shall not in such event be responsible hereunder for the fees and expenses of more than one separate counsel in connection with any Action in the same jurisdiction, in addition to any local counsel. The Company shall not be liable for any settlement of any Action effected without its written consent (which shall not be unreasonably withheld). In addition, the Company will not, without prior written consent of BCA (which

5

286 Rider Ave Acquisition LLC
July 1, 2021

shall not be unreasonably withheld), settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless such settlement, compromise, consent or termination includes an unconditional release of such Indemnified Person from all liabilities arising out of such Action.

In the event that the foregoing indemnity is not available to an Indemnified Person in accordance with the Agreement pursuant to the requirements of applicable law, the Company shall contribute to the Liabilities and Expenses paid or payable by such Indemnified Person in such proportion as is appropriate to reflect (i) the relative benefits to the Company, on the one hand, and to BCA, on the other hand, of the matters contemplated by the Agreement, or (ii) if the allocation provided by the immediately preceding clause is not permitted by the applicable law, not only such relative benefits but also the relative fault of the Company, on the one hand, and BCA, on the other hand, in connection with the matters as to which such Liabilities or Expenses relate, as well as any other relevant equitable considerations. For purposes of this paragraph, the relative benefits to the Company, on the one hand, and to BCA, on the other hand, of the matters contemplated by this Agreement shall be deemed to be in the same proportion as (a) the total value paid or received or contemplated to be paid or received by the Company in the transaction, whether or not any transaction is consummated, bears to (b) the fees paid or payable to BCA under the Agreement.

These indemnification, contribution and other provisions of this Schedule I shall (i) remain operative and in full force and effect regardless of any termination of the Agreement or completion of the engagement by LEB; (ii) inure to the benefit of any successors, assigns, heirs or personal representative of any Indemnified Person; and (iii) be in addition to any other rights that any Indemnified Person may have.