ROBINSON BROG LEINWAND GREENE  
GENOVESE & GLUCK P.C.  
875 Third Avenue, 9th Floor  
New York, New York 10022  
Fred B. Ringel  
Steven B. Eichel  
*Attorneys for the Debtor*

Hearing Date: March 25, 2022  
Hearing Time: 2:00 P.M.

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
-------------------------------------------------------X

In re:                                                                    Chapter 11

**286 RIDER AVE ACQUISITION LLC,**                     Case No: 21-11298 (LGB)

                                    Debtor.  
-------------------------------------------------------X

### DEBTOR'S RESPONSE TO SUPPLEMENT OF 286 RIDER AVE DEVELOPMENT LLC IN FURTHER SUPPORT ON REMAND

**286 Rider Ave Acquisition LLC**, the debtor and the debtor in possession herein ("286 Rider" or "Debtor"), by its undersigned counsel submits this response ("Response") to the Supplement of 286 Rider Ave Development LLC ("Development") to its *Motion to Alter or Amend Judgment Under Bankruptcy Rule 9023 and 9024 and Federal Rule of Civil Procedure 59(e) and 60 and its Memorandum of Law in Further Support on Remand* ("Supplement"). In support thereof, the Debtor respectfully asserts as follows:

### PRELIMINARY STATEMENT

1.    Although Development's Supplement goes on the wide-ranging detour through every conceivable argument raised in its original dismissal motion, as the Debtor previously predicted it would, the issue before the Court is narrow and

limited. The Supplement is not an opportunity for a third bite at the apple but for the Court to determine whether there is anything in the *Statement of Financial Affairs* [Dkt. No. 97] ("SOFA") and the *Amended Statement of Financial Affairs* [Dkt. No. 116] ("Amended SOFA") that, had this Court reviewed the SOFA and the Amended SOFA before deciding the Reconsideration Motion,[1] would have caused the Court to determine the Reconsideration Motion differently. The Debtor believes the Court is constrained to answer this question in the negative.

2. The Debtor believes that this Court understands the limited scope of the review envisioned by the District Court. As it noted before:

> The issue that Judge Abrams remanded to me was whether if I had had the schedule in front of me, the information that's in the schedules, both the schedule that shows that the equity was held by an affiliate of the Lender and the schedule -- the amended schedule on the equity side that shows that it was held, continued to be held by Development, whether that would have changed my ruling on the motion to alter or amend the judgment. That's what was appealed, so that's what does need to be addressed.

3/2/22 Hr'g Tr. at 22:7–17.[2]

3. Development misses the mark for other reasons besides the unwarranted and impermissibly broad scope of review it is asking this Court to undertake. Development's position is wrong because the Court's denial of the Reconsideration Motion (and the Dismissal Motion) were based on its analysis of the rights the Lender had under the Pledge Agreement, which allowed the Lender

---

[1] Motion of 286 Rider Ave Development LLC to Alter or Amend the Judgment Under Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59(e), filed at Dkt. No. 47 ("Reconsideration Motion").
[2] The Court added that "I think Mr. Ringel is right that the only thing that Judge Abrams was asking me to do is to consider the implication of what happened with respect to the schedules, both the first filing and the second filing of whether that would have changed my ruling." March 2, 2022 Transcript, 24:3–7.

{01143135.DOCX;3 }

2

to vote and manage the Debtor and which rights did not depend on the Debtor's Operating Agreement or ownership of the membership interests of the Debtor.

4. While Development spills much ink over the ownership of equity in the Debtor, this issue does not determine whether this case was properly filed. The right to commence the case was proper because of the rights Development granted to the Lender under the Pledge Agreement and the issue of ownership of the equity in the Debtor was never at issue when Mark Lichtenstein, Development's counsel, went out of his way to clarify, and the Court acknowledged, that Development's continued ownership of the equity in the Debtor when the Court denied Development's Motion to Dismiss the Chapter 11 case <u>over two months before the SOFA and Amended SOFA were filed.</u>

5. The SOFA and Amended SOFA were filed within ten days of each other, but after the Court decided the Reconsideration Motion but only because Development 's principals refused to comply with the Debtor's efforts to obtain information to file the SOFA through a Rule 2004 examination. If this Court is inclined to consider these two documents and to be clear, the District Court left it to this Court's discretion whether it even sees fit to do so, only the Amended SOFA containing the correct information is relevant. But, as the Court's decision was not based on the equity ownership of the Debtor, the Amended SOFA is not relevant and the Court should uphold its prior rulings.

## FACTS

6. On September 19, 2019, 286 Rider, as borrower, entered into a mortgage loan ("Loan") in the original principal amount of $8,000,000.00 with Be-Aviv 286 Rider LLC ("Lender") in its capacity as lender. In connection with the Loan, 286 Rider executed a promissory note (as amended, the "Note") and granted Lender a first priority senior secured mortgage and security interest in its property owned by the Debtor and located at 286 Rider Avenue, Bronx, New York 10451 ("Property").

7. The Note provides that an Event of Default includes 286 Rider's failure to make any payments when due under the Note. On March 2, 2021, the Loan matured by its terms in accordance with an extended maturity date. A maturity date notice was sent by the Lender demanding full payment. There can be no dispute that 286 Rider is in default and has not paid the Note.

8. To secure payment of the Note, 286 Rider's sole member, Development, pledged its one hundred percent (100%) of the membership interests in 286 Rider ("Membership Interests") to Lender under the Membership Interest pledge agreement ("Pledge Agreement").

9. The Pledge Agreement provides, among other things, that upon an Event of Default, the Lender has a right to have the Membership Interests registered in its name or its nominee and to exercise control over the Debtor as if it were the absolute owner. Section 5(a) of the Pledge Agreement provides:

> If an Event of Default shall occur and be continuing, then all Membership Interests at Lender's option, may be registered in the name of Lender or its nominee (if not already so registered), and Lender or its nominee may thereafter exercise (i) all voting and all equity,

> membership and other rights pertaining to the Membership Interests and (ii) any and all rights of conversion, exchange, and subscription and any other rights, privileges or options pertaining to such Membership Interests **as if it were the absolute owner thereof** (including, without limitation, the right to exchange at its discretion any and all of the Membership Interests upon the merger, consolidation, reorganization, recapitalization or other fundamental change in the organizational structure of any member or upon the exercise by Pledgor or Lender of any right, privilege or option pertaining to such Membership Interests, and in connection therewith, the right to deposit and deliver any and all of the Membership Interests with any committee, depositary, transfer agent, registrar or other designated agency upon such terms and conditions as it may determine), all without liability except to account for property actually received by it, but Lender shall have no duty to exercise any such right, privilege or option and shall not be responsible for any failure to do so or delay in so doing. (emphasis added).

A copy of the Pledge Agreement was previously filed as Exhibit B to the Declaration of Ben Harlev. [Dkt. No. 24] ("Lender Declaration").

10. Moreover, the Pledge Agreement could not be waived or modified by Development, except in a signed writing:

> None of the terms or provisions of this [Pledge] Agreement may be waived, amended or otherwise modified except by a written instrument executed by a party against which enforcement of such waiver, amendment, or modification is sought.

Pledge Agreement at ¶20.

11. On or about September 17, 2019, in connection with the closing on the Loan, (i) the Debtor executed a Certificate For Limited Liability Company Interests in 286 Rider ("Certificate"), under which the Debtor certified that Development is the registered owner of 100% of the limited liability company interests in 286 Rider, and (ii) Development, by its authorized signatory Moskovits, signed an Assignment of Interest in blank, selling, assigning and transferring its Membership Interests in 286

{01143135.DOCX;3 }

5

Rider and irrevocably appointing the transferee of the Assignment of Interests (i.e., the Lender) to transfer the same on the books and records of 286 Rider. A copy of the Assignment of the Membership Interest signed by Moskovits was attached to the Lender Declaration as Exhibit G.

12. By letter dated March 2, 2021 ("March 2nd Letter"), Lender (i) notified 286 Rider that the Loan matured on March 1, 2021, (ii) demanded immediate payment of all amounts due under the loan documents by 286 Rider, through March 1, 2021, which totaled $8,207,680.65 as of that date, and (iii) advised 286 Rider that its failure to make payment of all sums due to Lender on or before March 15, 2021 (together with per diem interest) will result in the Lender taking such action as it considers necessary and appropriate to protect and enforce its rights, (iv) informed 286 Rider that if payment in full is not made before March 15, 2021, interest will accrue at the default rate as of March 2, 2021, and (v) reserved its rights. A copy of the March 2nd Letter is attached to the Lender Declaration as Exhibit J.

13. 286 Rider did not respond to the March 2nd Letter.

14. On April 27, 2021 ("April 27th Pledge Notification Letter"), Lender advised that 286 Rider's continued failure to pay the amounts due under the Loan constituted an event of default under the Loan Documents, allowing Lender to exercise its rights under the Pledge Agreement. As a result, Lender advised Debtor and pledgor Development that it had assigned, transferred, and registered, as applicable, all membership and equity interest of Debtor to and in the name of Lender as if Lender were the absolute owner. This letter also demanded the immediate

turnover of all books and records of the Debtor. A copy of the April 27th Pledge Notification Letter is attached to the Lender Declaration as Exhibit K.

15. On June 14, 2021, Lender appointed 286 Rider Ave Lender LLC ("286 Rider Lender") as managing member of Debtor by entering into an assignment and assumption agreement between Debtor and Lender ("Assignment"). The Assignment also conveyed the Membership Interests in 286 Rider to 286 Rider Lender. The Assignment is attached to the Lender Declaration as Exhibit L.

16. Neither Development nor 286 Rider ever responded to the April 27th Pledge Notification Letter. In fact, no response was received from Development until it filed the Motion.

17. Effective July 1, 2021, 286 Rider Lender retained Lee E. Buchwald ("Buchwald") as manager of 286 Rider to file a Chapter 11 petition for the Debtor, manage the Debtor during the bankruptcy case, and oversee the bankruptcy case as the Debtor's sole authorized representative.

18. By letter dated July 14, 2021 ("July 14th Letter"), Lender's counsel advised 286 Rider and Development that (i) 286 Rider was previously notified in the March 2nd Letter that the Loan matured on the extended maturity date of March 1, 2021, (ii) by the April 27th Pledge Notification Letter, 286 Rider was notified that its failure to pay all sums due under the Loan constituted an Event of Default under the Loan Documents, (iii) because of the Event of Default, Lender executed its right under the Pledge Agreement to assign, transfer and register the Membership Interests in and to the name of the Lender as if the Lender was the absolute owner thereof. The

July 14th Letter confirmed again that the Lender had exercised its rights under the Pledge Agreement and made a second demand for all the books and records of the Debtor. A copy of the July 14th Letter was attached to the Lender Declaration as Exhibit M.

19. On July 15, 2021, Lee Buchwald, the manager of 286 Rider, duly authorized the Debtor's filing of its Chapter 11 bankruptcy case. Resolutions were adopted that 286 Rider should (i) file for bankruptcy protection, (ii) obtain debtor in possession financing (subject to court approval), (iii) retain Robinson Brog Leinwand Greene Genovese & Gluck P.C. as bankruptcy counsel, and (iv) retain Rosewood Realty Group, as real estate broker, to sell the Property.

20. Rider filed for voluntary relief under Chapter 11 of the Bankruptcy Code.

21. On August 5, 2021, Development filed its motion (a) to dismiss bankruptcy case pursuant to 11 U.S.C. §§105, 305 and 1112, and (b) seeking turnover of certain membership interests under 11 U.S.C. §543 ("Motion to Dismiss") [Dkt. No. 17].

22. On August 19, 2021, Be-Aviv 286 Rider LLC filed its response to the Motion to Dismiss and Joinder to Debtor's Response to Motion to Dismiss ("Lender Response to Motion to Dismiss") [Dkt. Nos. 23-25].

23. On August 19, 2021, Debtor filed its response to Motion to Dismiss and joinder to Lender Response to Motion to Dismiss ("Debtor Response to Motion to Dismiss") [Dkt. No. 26-27].

24. On August 30, 2021, this Court heard oral argument on the Motion to Dismiss. During that hearing, Development's counsel clarified for the Court its position that Development owns 100% of the membership interests in the Debtor.

> MR. LICHTENSTEIN: Thank you, Your Honor. If I might just make one comment just for clarification on Your Honor's ruling, and thank you for that.
>
> At one point you indicated the word "ownership" with respect to the equity interests. And I think you indicated the pledge was properly granted, but I don't think we had before the Court today -- and we take issue as to whether the pledge granted anything more than equitable ownership with the residual right, which I think is the state of law and the way the pledge reads. So I just wanted to raise that point to Your Honor to make just a --....
>
> THE COURT: -- I think the pledge -- if I was unclear I apologize, but I think the pledge is fairly clear in what it says....
>
> So the pledge agreement itself in 5(a) basically says that if an event of default shall be continuing, occur and be continuing, then all membership interests may be registered in the name of the lender or its nominee. And the lender has the rights to exercise all voting, equity in membership, and other rights pertaining to the membership interest. So I'm finding that that has occurred, that there's an event of default that's occurred and then continuing, and that the lender has the right or its nominee to exercise all voting equity in membership and other rights pertaining to the membership interest.
>
> If that was unclear in some way, I apologize.
>
> MR. LICHTENSTEIN: **The only point is it's modified as if it was the owner.** And then there's later provision in the pledge that says upon payment of the pledge, the pledge is released. So there is a residual -- there's a dichotomy between the rights under the pledge, or there's a protocol for the rights under the pledge and then what happens upon the payment to a lender. So that's all.
>
> THE COURT: Uh-huh.
>
> MR. LICHTENSTEIN: Your Honor, I'm – I don't mean to be – I just wanted to be very careful because the word "ownership" writ large wasn't as nuanced as what you just read or what I just stated.

>So no – I just want to make that point for clarity –
>
>THE COURT: That's fine.
>
>MR. LICHTENSTEIN: -- from our perspective.
>
>THE COURT: Understood.

8/30/21 Hr'g Tr. at 74:18-76:14 (emphasis added). After Development's counsel made that clarification, neither Debtor's counsel nor Lender's counsel disagreed with Development's clarification. There was no subsequent "flip flop" in positions when the Amended SOFA corrected an inadvertent error in the SOFA.

25. By order dated August 30, 2021 ("Dismissal Order"), the Court denied the Motion to Dismiss. Development did not appeal the Dismissal Order.

26. On September 13, 2021, Development filed its motion to alter or amend the Dismissal Order under Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59(e) ("Reconsideration Motion") [Dkt. No. 47].

27. On September 28, 2021, the Lender filed its response to the Reconsideration Motion ("Lender Response to Reconsideration Motion")[Dkt. No. 52].

28. On September 28, 2021, the Debtor responded to the Reconsideration Motion ("Debtor Response to Reconsideration Motion") [Dkt. No. 53].

29. By Order dated October 5, 2021, the Bankruptcy Court denied the Reconsideration Motion ("Order Denying Reconsideration Motion") [Dkt. No. 69].

30. On October 8, 2021, Development filed an appeal of the Order Denying Reconsideration Motion ("Appeal") [Dkt. No. 75].

31. On January 13, 2022, the Honorable Ronnie Abrams, United States District Court Judge, Southern District of New York, heard oral argument with

respect to the Appeal. On the same day, Judge Abrams entered an order remanding the case back to the Bankruptcy Court ("Remand Order").

32. On February 9, 2022, Development, Toby Moskovits and Yechial Michael Lichtenstein filed their Renewed Motion to Dismiss for Lack of Jurisdiction [Dkt. No. 290], which is still pending.

33. On March 14, 2022, Development filed its Supplement asserting the Bankruptcy Court did not consider the SOFA and Amended SOFA, which provided that Development was the sole member of the Debtor, rather than the Lender or its affiliate.

## ARGUMENT

34. Development's argument can be summarized that if it was always the sole equity holder and member of the Debtor, as provided in the Amended SOFA, then pursuant to the Operating Agreement and New York law, Debtor never had authority to file the bankruptcy case, and the case must be dismissed for lack of jurisdiction.

35. Development's Supplement must be denied because (i) the Remand Order limited the Bankruptcy Court's review of additional information to determine whether it would affect the Court's decision on the Reconsideration Motion, (ii) at the August 30, 2021 hearing, Development's counsel advised the Court that the Lender had its rights under the Pledge Agreement as if it were the absolute owner of the Membership Interests, and implicit in that exchange is that Development is the 100% equity owner in the Debtor, (iii) the additional information in the

Amended SOFA that Development is the 100% equity owner is a red herring because the Bankruptcy Court's determination was based on the Pledge Agreement, not which entity owns the membership interests of the Debtor, and (iv) the issues raised by the Supplement were already raised in connection with the Motion to Dismiss and Motion for Reconsideration, and may not be relitigated.

THERE IS NO BASIS FOR RECONSIDERATION

36. A movant requesting reconsideration under Local Bankruptcy Rule 9023-1 "must show that the court overlooked controlling decisions or factual matters 'that might materially have influenced its earlier decision.'" *In re Randall's Island Family Golf Centers, Inc.,* 290 B.R. 55, 61 (Bankr. S.D.N.Y. 2002) (Bernstein, J), *citing Anglo-American Ins. Group v. CalFed Inc.,* 940 F. Supp. 554, 557 (S.D.N.Y. 1996); *Morser v. AT&T Information Sys.,* 715 F. Supp. 516, 517 (S.D.N.Y. 1989)); *accord Banco de Seguros Del Estado v. Mutual Marine Offices, Inc.,* 230 F. Supp. 2d 427, 428 (S.D.N.Y. 2002); *Griffin Indus., Inc. v. Petrojam, Ltd.,* 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999); *Farkas v. Ellis,* 783 F. Supp. 830, 832-832-33 (S.D.N.Y.), *aff'd* 979 F.2d 845 (2d Cir. 1992).

37. Motions under Rule 9023-1 are strictly construed to avoid repetitive arguments on issues that the court has already fully considered. *Randall's Island,* 290 B.R. at 61; *see Griffin Indus., Inc. v. Petrojam, Ltd.,* 72 F. Supp. 2d at 368; *Monaghan v. SZS 33 Assoc.,* 153 F.R.D. 60, 65 (S.D.N.Y. 1994); *Farkas v. Ellis,* 783 F. Supp. At 832.

38.  In its ruling on the Reconsideration Motion, this Court noted as follows:

> Reconsideration is an extraordinary remedy. Under the Second Circuit case law, this requires an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or to prevent manifest injustice.
>
> Manifest injustice has been interpreted by the Second Circuit as wholly without legal support. The Second Circuit has held that a motion to reconsider shall not be granted where the moving party seeks to solely relitigate an issue otherwise decided.

10/5/2021 Hr'g Tr. at p. 33:5-14.

39.  That is this case. The Remand Order was very narrow, as it tailored its instructions to the Bankruptcy Court that this action is remanded to the Bankruptcy Court "for consideration of additional materials, to the extent [the Court] see fit." Rather than merely addressing whether knowing that Development is the 100% owner of the Debtor's equity interest affects the Courts decision on the Reconsideration Motion, it seeks to relitigate issues that have otherwise been decided in contravention of the Second Circuit's interpretation of manifest injustice.

40.  At the October 5th hearing, the Court noted that the arguments raised in the Reconsideration Motion were either arguments the bankruptcy court had considered or were new arguments that could have been raised in the Dismissal Motion and were thus not properly before the Bankruptcy Court on the Reconsideration Motion. *See* 10/5/2021 Hr'g Tr. at p. 33:15-16. The Court Specifically stated that she reviewed the Operating Agreement and the Pledge Agreement, even though her decision did not reference every provision of the Operating Agreement that the Court reviewed.

{01143135.DOCX;3 }

41. The Bankruptcy Court analyzed and properly denied the Reconsideration Motion using the appropriate legal standards. The Bankruptcy Court's reasoning in entering the Order Denying Reconsideration Motion under the transcript of the hearing cite an analysis of controlling law, is comprehensive, detailed, and legally sound. The SOFA and Amended SOFA that the Court may consider is not a basis to reverse the Order Denying Reconsideration Motion.

42. Development's focus on the ownership of the Membership Interests as a determinative factor is misplaced as Development knows that neither the Bankruptcy Court nor any party ever contended the Lender actually "owned" the membership interests in Development and everyone knew that the Lender only claimed, and the Court found, that Lender had the right to vote and manage the Debtor under its exercise of rights under the Pledge Agreement "**as if**" it were the absolute owner of the Membership Interests.[3] While Development emphasizes this argument over and over and uses it, among other things, to assert that if this information was before the Court, it would have ruled differently. The "issue" of "ownership" of the membership interests was irrelevant to the Bankruptcy Court's ruling in denying the Dismissal Motion and denying the Reconsideration Motion. Having the Court now consider the Amended SOFA is not a basis to overrule the Court's prior rulings.

---

[3] Again, Development knows this because its own counsel clarified this point in August 2021 right after the Court had rendered its ruling denying the Motion to Dismiss, which colloquy is set forth in paragraph 24 above.

{01143135.DOCX;3 }

14

43. Development's Supplement parrots its prior arguments made in the Dismissal Motion that the Operating Agreement governs the Debtor's operations including the authority to file a bankruptcy petition, that the Operating Agreement precludes a non-member from managing the Debtor and from voting rights and that the Pledge Agreement is subject and subordinate to the Operating Agreement. But this Court considered each of these arguments and determined otherwise.

44. At the August 30, 2021 hearing, the Bankruptcy Court stated:

> Because 5(a) is not limited by the operating agreement, doesn't reflect the operating agreement, it's clear to me that the parties had agreed that a – that when the lender takes over as the membership if it's foreclosed on its pledge, that it would have all of the rights that Development would have otherwise had including equity membership and management rights, because those fall under other rights pertaining to the membership interest. And therefore, it's clear that the lender had the right to take over not only ownership of the membership interest from the economic perspective but all other voting and other rights and, pursuant to the Limited Liability Law, was able to replace management to the extent that that provision still allows for it, pursuant to either if it is a – as becoming the member, who is managing it, it took all of the rights that Development had as per 5(a)(2) – clause 1. And to the extent that somehow somebody assumed that 280 – that Development was somehow a manager, which is not, as I said, spelled out for me under the Limited Liability Act, they would certainly have the right to just replace such a party by a vote.
>
> So therefore, the extent of the operating agreement itself does not impact the lender's rights to take over the management of the entity once it actually exercises right under the pledge.

8/30/21 Hr'g Tr. at 72:17-73:16.

45. This Court was legally correct, and well within its discretion to deny the Reconsideration Motion based on Development's re-litigation of the very same arguments that had been heard, considered and rejected by this Court. Moreover,

{01143135.DOCX;3 }
15

in denying the Reconsideration Motion, this Court neither abused its discretion, committed legal error or perpetuated a manifest injustice, nor allowed an unauthorized bankruptcy case filing in violation of controlling New York law. The SOFA and Amended SOFA either should not be considered or do not affect this Court's prior ruling.

46.     Paragraph 5(a) of the Pledge Agreement explicitly provides that upon default the Lender can take control of the Debtor. The Dismissal Motion was properly denied by this Court as it determined that the Lender properly exercised its rights under the Pledge Agreement to exercise control over the Debtor, to obtain voting rights in the Debtor that permitted Lender's assignment of the Debtor's membership interests to 286 Rider Lender and later the hiring of a third-party independent fiduciary who authorized the Debtor's chapter 11 filing, as well as to amend the Operating Agreement. Because of the Court's interpretation, the ownership of the Membership Interests in the Debtor was completely irrelevant to the Court's analysis.

47.     Development previously asserted in the Dismissal Motion and in the Reconsideration Motion that the Pledge Agreement is subordinate or subject to the Operating Agreement, and therefore the Bankruptcy Case filing was unauthorized and improper. The Bankruptcy Court considered this argument each time it was raised, rejected it, and also considered the New York Limited Liability Company Act, finding:

> But I ultimately ruled that, under the pledge agreement 5, I found that the – and also the New York Limited Liability Company Act, that there

> was no – that the pledge agreement in Section 5 is not limited by the operating agreement. And therefore, when the pledge was actually exercised by the lender, that the lender had succeeded to certain rights, including the management rights under the pledge agreement. And maybe had that paragraph been limited by the operating agreement, your argument might have been more persuasive that was already made, I note, back at the last hearing in August…

10/5/2021 Hr'g Tr. at p. 23:4-14.

> I found that this is the right interpretation of the pledge agreement. And I honestly considered the operating agreement. I read it multiple time. I considered the pledge agreement multiple times. So this wasn't a case that I didn't consider this. I did.

10/5/2021 Hr'g Tr. at p. 29:11-16.

> …I found that it was completely in accordance with the pledge agreement and New York Company Liability law for them not only to take actions under the pledge agreement but also to go ahead and take actions with respect to replacing the management of the entity and that they had that right under both the pledge agreement and the Limited Liability Company law and, in fact, did so with Mr. Buchwald.

10/5/2021 Hr'g Tr. at p. 30:3-9.

48. Development argues that the amended SOFA is critical to the Bankruptcy Court's decision denying the Dismissal Motion and Reconsideration Motion. Yet the issue of equity ownership was not and is not determinative and Development's arguments about whether Development or 286 Rider Lender is the equity owner of the Debtor are irrelevant. As noted above, the Pledge Agreement gave to the Lender in the event of a default under the Loan certain rights with respect to the membership interests and the Bankruptcy Court found that the Lender properly exercised those rights here:

> So the pledge agreement itself in 5(a) basically says that if an event of default shall be continuing, occur and be continuing, then all membership interests may be registered in the name of the lender or its

{01143135.DOCX;3 }
17

> nominee. And the lender has the rights to exercise all voting, equity in membership, and other rights pertaining to the membership interest. So I'm finding that that has occurred, that there's an event of default that's occurred and then continuing, and that the lender has the right or its nominee to exercise all voting equity in membership and other rights pertaining to the membership interest.

8/30/2021 Hr'g Tr. at p. 75:13-22.

49. This Court did not render its ruling because Lender or 286 Rider Lender was the Debtor's equity holder. Rather, the determination was made that the Lender properly exercised its rights under the Pledge Agreement which then permitted Lender (or its nominee) to take the necessary steps it did resulting in the Debtor's eventual bankruptcy case filing.

50. This Court's rulings did not rely on the issue of who was or who is the equity owner of the Debtor, but the plain language of the Pledge Agreement which provided Lender with rights that it properly exercised leading to a duly authorized bankruptcy case filing by the Debtor.

51. Accordingly, this Court has no reason to deviate from its original ruling Denying Reconsideration Motion.

## JOINDER

52. Debtor respectfully joins in, adopts as its own, and incorporates by reference as if fully set forth herein the entire contents of the Lender's response to Development's Supplement.

{01143135.DOCX;3 }

## CONCLUSION

**WHEREFORE,** the Debtor respectfully requests that the court deny the relief sought in the Supplement.

Dated: New York, New York
       March 18, 2022

                                               ROBINSON BROG LEINWAND
                                                 GREENE GENOVESE & GLUCK P.C.

                                                 By:/s/ Fred B. Ringel
                                                         **Fred B. Ringel**
                                                         **Steven B. Eichel**
                                                 875 Third Avenue, 9th Floor
                                                 New York, New York 10022
                                                 Tel. No.: 212-603-6301
                                                 *Attorneys for the Debtor*