**MORRISON COHEN LLP**
909 Third Avenue
New York, New York 10022
(212) 735-8600
Joseph T. Moldovan, Esq.
David J. Kozlowski, Esq.
Heath D. Rosenblat, Esq.

*Attorneys for Be-Aviv 286 Rider LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**286 RIDER AVE ACQUISITION LLC,**<br><br>Debtor. | Chapter 11<br><br>Case No. 21-11298-LGB |

**RESPONSE OF BE-AVIV 286 RIDER LLC TO THE SUPPLEMENT OF 286 RIDER AVE DEVELOPMENT LLC IN FURTHER SUPPORT ON REMAND**

Be-Aviv 286 Rider LLC ("**Lender**"), by and through its undersigned counsel, respectfully submits this supplemental response ("**Response**") in opposition to the *Supplement of 286 Rider Ave Development LLC* ["**Development**"] *to its Motion to Alter or Amend Judgment Under Bankruptcy Rules 9023 and 9024 and Federal Rules of Civil Procedure 59(e) and 60 and Memorandum of Law in Further Support on Remand* [Docket No. 331] ("**Supplement**"). In support of its Response, Lender respectfully sets forth and represents as follows:

**PRELIMINARY STATEMENT**

1.    Notwithstanding Development's arguments in its Supplement, the sole question before this Court is whether there is anything in the *Statement of Financial Affairs* [Docket No. 97] ("**SOFA**") and the *Amended Statement of Financial Affairs* [Docket No. 116] ("**Amended SOFA**") that, had this Court reviewed the SOFA and the Amended SOFA before deciding the Reconsideration Motion,[1] would have caused the Court to decide the Reconsideration Motion differently. The answer is simply, no.

2.    This Court's denial of the Reconsideration Motion (and its underlying denial of the Dismissal Motion) were based on its own analysis of the Pledge Agreement and the Operating Agreement[2] after which it determined that the Pledge Agreement gave Lender the right to act, vote, and control the Debtor and that the rights granted Lender under the Pledge Agreement were not limited or otherwise impacted by the Operating Agreement.

3.    Although Development spends pages arguing about ownership of equity, these arguments are red herrings. The ownership of the equity is not relevant to

---

[1] Development's *Motion of 286 Rider Ave Development LLC to Alter or Amend the Judgment Under Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59(e)*, filed at Docket No. 47 ("**Reconsideration Motion**").

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in *Lender's Be-Aviv 286 Rider LLC's Response to Motion by 286 Rider Ave Development LLC to (i) Dismiss Bankruptcy Case Pursuant to 11 U.S.C. §§ 303, 305, and 1112, and (ii) for Turnover of Certain Membership Interests Under 11 U.S.C. § 543, and Joinder by Respondent to Debtor's Response to the Motion* ("**Dismissal Motion Response**") [Docket No. 23]. The *Membership Interest Pledge Agreement* ("**Pledge Agreement**"; and referring to the pledge contained therein, "**Pledge**") is attached as Exhibit B to the *Declaration of Ben Harlev in Support of Be-Aviv 286 Rider LLC's Response to Motion by 286 Rider Ave Development LLC to (i) Dismiss Bankruptcy Case Pursuant to 11 U.S.C. §§ 303, 305, and 1112, and (ii) for Turnover of Certain Membership Interests Under 11 U.S.C. § 543, and Joinder by Respondent to Debtor's Response to the Motion* [Docket No. 24].

#11092678 v7 \029220 \0005

whether or not this case was properly filed. It was properly commenced because of the rights granted Lender by Development under the Pledge. Nor, to the extent it is even relevant, was the actual ownership of the equity ever in question: Development's counsel made clear to the Court, and the Court acknowledged, that Development was the owner of the equity in the Debtor when the Court denied Development's Dismissal Motion.[3] This occurred approximately two months before the SOFA and Amended SOFA were filed.

4. What matters is that Lender exercised a Pledge that was given to it by Development for the same reason that, as a matter of basic finance practice, lenders demand and are given pledges by borrowers—to provide a mechanism to enable a lender to enforce its rights and protect its collateral upon the default of a borrower. The Pledge here gave Lender the absolute authority to control the Debtor, and through that control, appoint an independent manager who placed the company into Chapter 11. The Court reached this conclusion independently from the irrelevant equity ownership issue raised by Development—and this conclusion is neither on appeal nor an issue for this limited remand. What has troubled, perplexed, and infuriated Development from the beginning of this case is that when the Debtor defaulted on the Loan, Lender exercised the rights Development had given it in exchange for the $8,000,000 Lender loaned the Debtor.

---

[3] Development's *Motion of 286 Rider Ave Development LLC to (i) Dismiss Bankruptcy Case Pursuant to 11 U.S.C. §§ 105, 305, and 1112 and (ii) for Turnover of Certain Membership Interests Under 11 U.S.C. §§ 543* ("**Dismissal Motion**") [Docket No. 17].

#11092678 v7 \029220 \0005

3

5.  Both the SOFA and Amended SOFA were filed after the appeal of the Reconsideration Motion and within a week and a half of each other.[4] If this Court is inclined to consider these two documents, and to be clear, the District Court left it to this Court's discretion whether it even sees fit to do so, only the Amended SOFA containing the correct information, is relevant.

6.  As the Court is aware, the Amended SOFA clarified and corrected an inadvertent error in the original SOFA reflecting the ownership of the Debtor's equity. The misstatement in the original SOFA is completely moot. A statement of financial affairs is not a document designed for advocacy, rather it is simply intended to reflect reality. The SOFA simply contained an error when filed, which error was promptly corrected. The Amended SOFA reflects the reality that all parties, including the Court, were well aware of from the beginning of this case—that the Pledge Agreement, as analyzed by the Court, gave Lender specific rights upon default. As neither the SOFA nor Amended SOFA was before this Court when it decided the Reconsideration Motion, any misstatements in the SOFA, subsequently corrected by the Amended SOFA, could not have been considered by this Court in reaching its decisions, but would not have made a difference regardless.[5]

---

[4] As this Court knows, the SOFA was not filed sooner because the Debtor did not have the information required to prepare the SOFA, due in large part to the refusal of Development's principals to comply with this Court's order concerning Bankruptcy Rule 2004 discovery.

[5] The only conceivable difference the statement in the SOFA could have made had it been filed before the Reconsideration Motion was heard and decided, but before the Amended SOFA was filed, would have been if the Court determined to forego its own independent analysis of the Pledge (and other loan documents) and instead relied on the misstatement in the SOFA—a misstatement that surely would have been corrected at oral argument. But this is all speculation—in reality, the misstatement played no role in anything this Court decided. In any event, there was certainly no, as Development seeks to imply, nefarious or improper motive behind the misstatement.

#11092678 v7 \029220 \0005

4

7. The Court and all parties agreed at the time, and agree currently, that Development retains its equity interest (*i.e.*, ownership interest) in the Debtor—just not its right to act, vote, or control the Debtor upon a default: those rights were transferred by Development to Lender under the Pledge.

8. Thus, the Court need not consider these documents as this Court's decision denying the Reconsideration Motion was not based on, and is not affected by, the information contained in either of them. Ultimately, whether reviewing neither, either, or both documents, this Court already considered, discussed, and ultimately discounted the underlying issue Development raises with the SOFA and Amended SOFA when ruling on the Dismissal Motion.

9. For the reasons above and all the reasons herein, the Court should, on remand, reaffirm its Reconsideration Order[6] that denied the Reconsideration Motion.

## ARGUMENT

**A.    The SOFA and Amended SOFA are not relevant to this Court's understanding of the Pledge, and should not affect this Court's order.**

10. The District Court's Order dated January 13, 2022 ("**Remand Order**") was very clear as to the simple nature of the remand: "the Court hereby remands this action to the Bankruptcy Court for consideration of the additional materials, *to the extent it sees fit.*" Remand Order, p.2 (emphasis added). Since nothing in either document could change this Court's determination, the Court need not exercise its

---

[6] The Court's *Order Denying Motion of 286 Rider Ave Development LLC to Alter or Amend the Judgment Under Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59(e)* ("**Reconsideration Order**") [Docket No. 69].

#11092678 v7 \029220 \0005

5

discretion to consider either. But even if it does, the result is the same—denial of the Reconsideration Motion (and the Dismissal Motion). After examining and analyzing the issue in preparing to rule on the Dismissal Motion, this Court understood at all times that Development retained its Membership Interest[7] in the Debtor.

11. This Court told Development's lawyer at the time the Dismissal Motion was argued, that the Court understands who owns the Property. The information in the Amended SOFA, filed a week and a half after the SOFA, is consistent with this understanding.

12. Nevertheless, Development brandishes to the Court the SOFA and Amended SOFA to show that the Debtor took inconsistent positions that calls into question this entire case. Development presents this as the proverbial "smoking gun" to prove that Lender never *owned* the Membership Interest and therefore never had the right to do anything that it did with respect to the Debtor. But this non-sequitur evinces a remarkable failure to understand how the law of corporate finance works and how pledges function, and attempts to misdirect this Court from recalling that this issue was already fully and expressly addressed when this Court denied the Dismissal Motion and Reconsideration Motion.

13. Development knows that neither this Court nor any party in this case ever contended or believed that Lender actually "owned" the membership interest. Everyone knew that Lender only claimed—and that the Court found—that Lender

---

[7] References to the "**Membership Interest**" herein refer to the 100% membership interest in the Debtor, 286 Rider Ave Acquisition LLC, held by Development and controlled by Lender under the exercise of its rights in the Pledge.

#11092678 v7 \029220 \0005

6

under the Pledge had (and has) the right to act, vote, and control the Debtor "***as if***" it were the absolute owner of the Membership Interest.

14. Development knows this because it is a direct quote from the Pledge Agreement. Also, Development is keenly aware of this fact because Development's counsel expressly read into the record the same "as if" language when he asked the Court for clarification on this very issue immediately after the Court rendered its ruling denying the Dismissal Motion. It was very important to Development's counsel that he have the Court clarify that the Court did not think, that the Court did not state, and that the Court did not find that Lender has ownership "writ large" of the Debtor's equity, but that all Lender had as a result of the exercise of the Pledge were certain "rights." The Court made clear that it understood exactly what the Pledge provided Lender, as more fully set–out in the exchange below between Mr. Lichtenstein and the Court:

> MR. LICHTENSTEIN: Thank you, Your Honor. If I might just make one comment just for clarification on Your Honor's ruling, and thank you for that. At one point you indicated the word "ownership" with respect to the equity interests. And I think you indicated the pledge was properly granted, but I don't think we had before the Court today -- and we take issue as to whether the pledge granted anything more than equitable ownership with the residual right, which I think is the state of law and the way the pledge reads. So I just wanted to raise that point to Your Honor to make just a --
>
> THE COURT: Well, I think the pledge --
>
> MR. LICHTENSTEIN: -- to make that point.
>
> THE COURT: -- I think the pledge -- if I was unclear I apologize, but I think the pledge is fairly clear in what it says. And so I believe that the pledge itself allows -- I'm sorry; I'm just finding my pledge again. My apologies for having moved things back. Hold on one second here. Let

#11092678 v7 \029220 \0005

7

> me just try to see to find it. I got everything out of order here. Okay. There's my Exhibit B. Sorry. Okay. So the pledge agreement itself in 5(a) basically says that if an event of default shall be continuing, occur and be continuing, then all membership interests may be registered in the name of the lender or its nominee. And the lender has the rights to exercise all voting, equity in membership, and other rights pertaining to the membership interest. So I'm finding that that has occurred, that there's an event of default that's occurred and then continuing, and that the lender has the right or its nominee to exercise all voting equity in membership and other rights pertaining to the membership interest. If that was unclear in some way, I apologize.
>
> MR. LICHTENSTEIN: The only point is it's modified *as if* it was the owner. And then there's later provision in the pledge that says upon payment of the pledge, the pledge is released. So there is a residual -- there's a dichotomy between the rights under the pledge, or there's a protocol for the rights under the pledge and then what happens upon the payment to a lender. So that's all. (emphasis added)
>
> THE COURT: Uh—huh.
>
> MR. LICHTENSTEIN: Your Honor, I'm -- I don't mean to be –- I just wanted to be very careful because the word ownership" writ large wasn't as nuanced as what you just read or what I just stated. So no -- I just want to make that point for clarity --
>
> THE COURT: That's fine.

August 30, 2021 Transcript, 74:18–76:12.

15.   Lender's rights under the Pledge Agreement are crystal clear. Upon an Event of Default under the Pledge Agreement, Lender is entitled to have the Membership Interests registered in its name and to exercise absolute and total control over the Debtor. The Pledge Agreement provides in pertinent part:

> If an Event of Default shall occur and be continuing, then all Membership Interests at Lender's option, may be registered in the name of Lender or its nominee (if not already so registered), and Lender or its nominee may thereafter exercise (i) all voting and all equity, membership and other rights pertaining to the Membership Interests and (ii) any and all rights of conversion, exchange, and subscription and

>any other rights, privileges or options pertaining to such Membership Interests as if it were the absolute owner thereof (including, without limitation, the right to exchange at its discretion any and all of the Membership Interests upon the merger, consolidation, reorganization, recapitalization or other fundamental change in the organizational structure of any member or upon the exercise by Pledgor or Lender of any right, privilege or option pertaining to such Membership Interests, and in connection therewith, the right to deposit and deliver any and all of the Membership Interests with any committee, depositary, transfer agent, registrar or other designated agency upon such terms and conditions as it may determine), all without liability except to account for property actually received by it, but Lender shall have no duty to exercise any such right, privilege or option and shall not be responsible for any failure to do so or delay in so doing.

Pledge Agreement, § 5(a); *see also*, August 30, 2021 Transcript, 66:18–67:2; 71:18-73:11; 75:13–22.

16. As this Court held, Lender does not "own" the Membership Interest. That is just not how a pledge of collateral—in this case, the Membership Interest—works as security for a debt. Development executed and delivered to Lender a pledge of the Membership Interests in the Debtor under the Pledge Agreement, and a corresponding assignment of those Membership Interests. In so doing, upon a default, Development clearly, conspicuously, and unambiguously divested itself of all control, voting, management, and other rights. Accordingly, in the *Order Denying Motion to Dismiss* [Docket No. 39], this Court determined that the Pledge Agreement grants Lender the absolute right to control and manage the Debtor upon the default, and be treated *as if* it were the "absolute owner."

17. Development has raised its "straw man" argument over and over in countless pleadings that Lender has claimed to actually "own" the Membership Interest of Development in the Debtor, and that is because this claim is impossible

#11092678 v7 \029220 \0005

9

given that Lender never foreclosed on the Debtor's equity, and, further, because Lender and the Debtor admitted that Lender does not actually "own" the Membership Interest, the Debtor never had authority to file for Chapter 11 and everything in this case is a nullity. Development is ***just wrong***.[8]

18. Everything Lender did after it exercised its rights under the Pledge with respect to the Debtor and this case was in full accordance with those rights that it validly held and continues to hold. Since this was the Court's interpretation, reached through its independent review of the relevant underlying documents, neither the SOFA nor Amended SOFA could change that analysis or the Court's denial of the Reconsideration Motion.

19. After hearing and considering all the arguments Development made both in its papers and during extensive oral argument on the Reconsideration Motion, this Court succinctly summarized the real issue:

> I understand your clients [Development] don't want to accept the reality of what happened which is that they decided to issue a pledge to the bank and the bank actually shockingly decided to exercise its rights under the pledge.

October 5, 2021 Transcript, 64:9–12. This single point has been the running theme and Development's driving force throughout this case. But regardless of the alternate reality in which Development wants to live, in this reality, the Reconsideration Motion is denied, and neither the SOFA nor Amended SOFA could affect that ruling.

---

[8] Lender has addressed the errors in and failure of Development's foreclosure argument numerous times in prior submissions. *See infra*, ¶ 24.

#11092678 v7 \029220 \0005

10

**B.    Remand is solely for the Court to consider the SOFA and Amended SOFA, if the Court believes they would have made a difference in ruling on the Reconsideration Motion; it is not for Development to get yet another bite at the "dismissal" apple.**

20.    As it has done multiple times, Development is using this pleading as yet another excuse to argue the "merits" of its Dismissal Motion. But Development's entire argument concerns issues conclusively and dispositively determined by this Court in its *Order Denying Motion to Dismiss*. *See* arguments *supra*; *see also*:

> [Development] asserts that the lender's actions to exercise its pledge against the membership interest and the debtor owned by Development after the loan matured were unlawful and/or the lender's rights, with respect to the membership interest, are limited or should be limited to the economic proceeds as an owner of the debtor without being able to exercise voting and other rights. The Court disagrees.

August 30, 2021 Transcript, 66:4–11.

21.    The District Court made clear that the scope of the remand is limited to, at the very most, a review of the SOFA and Amended SOFA. This Court agreed that the scope of the remand is so limited, noting:

> The issue that Judge Abrams remanded to me was whether if I had had the schedule in front of me, the information that's in the schedules, both the schedule that shows that the equity was held by an affiliate of the Lender and the schedule -- the amended schedule on the equity side that shows that it was held, continued to be held by Development, whether that would have changed my ruling on the motion to alter or amend the judgment. That's what was appealed, so that's what does need to be addressed.

March 2, 2022 Transcript, 22:7–17; and: "I think Mr. Ringel is right that the only thing that Judge Abrams was asking me to do is to consider the implication of what happened with respect to the schedules, both the first filing and the second filing of whether that would have changed my ruling." March 2, 2022 Transcript, 24:3–7.

#11092678 v7 \029220 \0005

11

22.     Because the District Court's remand was solely to see if the two documents would have made a difference to this Court's decision–making, to the extent this Court determines either of the documents warrants a look, the inquiry ends if the answer is no.  Development cannot (should not be permitted) to launch into its full argument here on its Dismissal Motion.

23.     In fact, considering anything other than the SOFA and Amended SOFA with respect to the Reconsideration Order is improper, as the appeal was only taken from the Reconsideration Order, and the remand is only as to the very narrow issue of considering whether the two documents would have changed the Reconsideration Order if the Court had them at the time. Despite Development spending significant real estate in its Supplement advocating for its Dismissal Motion, the Dismissal Motion simply is not before the District Court or this Court on remand, and arguments concerning it should be disregarded.

24.     Notwithstanding such arguments being outside the scope of the Court's consideration on remand, since they are currently raised by Development, to the extent the Court entertains these any of arguments, and to avoid duplication, Lender adopts and incorporates as though fully set forth herein its arguments and positions concerning dismissal in its previous pleadings, including[9] but not limited to: (a) the Dismissal Motion Response, (b) the *Be-Aviv 286 Rider LLC's Response to Motion by*

---

[9] As these arguments have been raised by Development in many other filings with this Court, and have required responses *ad nauseum* from Lender and the Debtor, Lender identifies here the pleadings it has filed that most directly address the issues, but reserves and preserves its right to supplement with additional arguments and positions, whether included in other pleadings or otherwise.

#11092678 v7 \029220 \0005

*286 Rider Ave Development LLC to Alter or Amend Judgment Under Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59(e)* [Docket No 52], (c) the *Be-Aviv 286 Rider LLC's Response to Motion of 286 Rider Ave Development LLC, Toby Moskovitz and Yechial Michael Lichtenstein to Dismiss Bankruptcy Case Pursuant to 11 U.S.C. 305 or § 1112 Based on New Evidence* [Docket No. 131], and (d) the *Be-Aviv 286 Rider LLC's Omnibus Response to Various Motions, Responsive Papers, or Joinders Submitted by 286 Rider Ave Development LLC, Toby Moskovits, Yechial Michael Lichtenstein, and 286 Rider Associates LLC* [Docket No. 149].

25. The bottom line here is actually pretty simple: the Court was not misled at any time by Lender or the Debtor. The Court was not confused at any time about the nature and effect of the Pledge or who actually owned the equity of the Debtor, and ownership of the equity in the Debtor was not relevant in analyzing Lender's rights under the Pledge. The Court accurately and with full deliberation analyzed the law and all of the financial documents in this case and concluded that Lender's power and right to act were derived from the Pledge that Development admitted to giving Lender in exchange for an $8,000,000 loan. And the neither the SOFA nor the Amended SOFA have any relevance to or impact on the Court's determination that the Reconsideration Motion should have been denied.

## **JOINDER**

26. Lender respectfully joins in, adopts as its own, and incorporates by reference as if fully set forth herein the entire contents of the Debtor's response to Development's Supplement.

#11092678 v7 \029220 \0005

13

WHEREFORE, Lender respectfully requests that the Court affirm the Reconsideration Order that denied the Reconsideration Motion and is on remand here, and grant such other and further relief as is just and proper.

Dated: New York, New York  
      March 18, 2022

MORRISON COHEN LLP

By: /s/ Joseph T. Moldovan  
    Joseph T. Moldovan, Esq.  
    David J. Kozlowski, Esq.  
    Heath D. Rosenblat, Esq.

909 Third Avenue  
New York, New York 10022  
(212) 735-8600  
jmoldovan@morrisoncohen.com  
dkozlowski@morrisoncohen.com  
hrosenblat@morrisoncohen.com

*Attorneys for Be-Aviv 286 Rider LLC*

#11092678 v7 \029220 \0005