### ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.

### 875 THIRD AVENUE

### NEW YORK, NEW YORK 10022

___

### (212) 603-6300

___

### FAX (212) 956-2164

March 20, 2022

Fred B. Ringel
(212) 603-6301
fbr@robinsonbrog.com

<u>**VIA ECF**</u>

Hon. Lisa G. Beckerman
U.S. Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004-1408

Re:    <u>In re 286 Rider Ave Acquisition LLC: Case No 21-11298 (LGB)</u>

Dear Judge Beckerman,

　　We represent the debtor, 286 Rider Ave Acquisition LLC ("Debtor"), in the above-referenced matter  and Lee E. Buchwald ("Buchwald "or "Manager") in his capacity as the Manager of the Debtor in this case. I write to update the Court after the conference on March 16th regarding among other things, the automatic stay violations by 286 Rider Ave Development LLC ("Development") and its agents and to respond to the letter filed by Mr. Spelfogel on March 18, 2022 [ECF Doc No. 336]. I had originally started drafting this status report for the Court on March 18th but decided to hold off on submitting it until I had received additional information from the Manager.

　　Just to remind the Court of the context leading up to last Friday March 18th:

　　(i)　　On March 8, 2022, Buchwald inspected the property and discovered that the locks had been changed.

　　(ii)　　On March 11th, Buchwald arranged for the locks to be changed to again gain access to the Property. A copy of the invoice from Webster Locksmith for $332.07 is annexed hereto as <u>**Exhibit A**</u>.

　　(iii)　　Upon regaining access to the property, Buchwald discovered the extensive damage that had been done to the property documented

in the pictures submitted as Exhibit "B" in the Debtor's reply papers [ECF Doc No.329].

(iv)    After changing the locks, Buchwald posted 10 warning signs on the building, including at every access point which read "**ACCESS TO PROPERTY STRICTLY PROHIBITED WITHOUT PERMISSION OF LEE E. BUCHWALD PURSUANT TO ORDER OF THE UNITED STATES BANKRUPTCY COURT.**" Photos of six of the signs and access points to the building are attached as **Exhibit B**.

(v)    On March 14th. Buchwald went to the 40th Precinct to report the breaking and entering on the premises after discovering that the police report could not be submitted online. Later that day, he met two uniformed officers at the property. The signs were intact, and Buchwald accessed the property with the keys he had from the locks installed on March 11th. There were no signs of additional activity on the property from the condition it was found in on March 8th.

(vi)    Buchwald was informed that this sort of incident was not handled at the precinct level, and he would be contacted by a detective and that a police report would take about four weeks.

(vii)    Buchwald did independent research before the March 16th hearing before this court and discovered that:

(A) On February 9, 2022, a permit had been issued by the Department of Buildings to Xolle Demo LLC for a "Proposed Construction Fence" of the type Mr. Spelfogel suggested now needed to be put in place as a matter of public safety because of the alleged structural instability caused by Development's activities at the site. A copy of that permit is annexed hereto as **Exhibit C.**

(B) On March 11, 2022, Xolle Demo LLC, the Friday before the hearing, obtained a permit to demolish the entire building. A copy of the demolition permit is attached as **Exhibit D**.

(C) On March 15, 2022, the day before the hearing as reported to the Court, a complaint was made to the Department of Buildings about an encroachment violation resulting from construction as the site. A copy of the listing on the DOB site is annexed hereto as **Exhibit E.**

After the hearing concluded on March 16th at about 4:00p.m., Mr. Buchwald visited the Property to determine whether there had been any change in its status since his last visit on March 11th when he has regained control of the property and changed the locks for a second time (the first time pursuant to this Court's Order dated October 28, 2021) [ECF Doc. No. 108].

Bearing in mind that on Friday March 11th, the very day Mr. Buchwald was last at the Property, Development had caused a demolition permit for the property to be issued to one of its contractors Xolle Demo LLC, Buchwald was concerned that action had been taken towards the demolition of the Debtor's property without his permission and again in violation of the automatic stay. See 11. U,S,C. §362 (a)(3); *Order with regards to Breach of the Automatic Stay* [ECF Doc. No. 335].

Upon Mr. Buchwald's arrival he discovered the following:
- (i)  The approximately ten signs he had posted on March 11th had been removed.
- (ii)  The locks that Mr. Buchwald had installed on March 11, 2022, has **again** been removed from the Property and been replaced and he was <u>again</u> locked out of the property.

As a result of the removal of the locks put in place by Buchwald, he could not gain access to immediately determine the condition of the premises. He has arranged for the locks to be replaced yet a third time on Friday March 18, 2022, which was the earliest he could get a locksmith to the premises. Pursuant to the Court's order [ECF Doc. No. 335], Mr. Buchwald arranged to meet with a representative of Kent Security Services, Inc. to assess the security needs to secure the property with video surveillance and prepare a proposal,

<u>Events of March 18th</u>

On March 18th, Buchwald met the locksmith at the Property at 10:00 a.m. The locks placed on the property without Buchwald's consent were still in place and locked. Buchwald assumed the premises were vacant and once he regained access no one would be in the premises since the building appeared to be locked. There are two accessible entrances to the building both protected by rolling steel doors. There is an office entrance that has two glass doors that are too small to use to bring in anything but small items, such as tools or a small generator. The cargo bay entrance has a large opening able to move in large heavy machinery, equipment and trucks.

After the locksmith opened the office entrance, Buchwald saw that the glass doors were covered with kraft paper which hadn't been there before. Buchwald opened the door to remove the paper and noticed that the large yellow CAT truck (visible in the pictures filed in court[1]) had moved and that more of the roof appeared to have been removed. Buchwald was then surprised to hear voices inside. Since this was an active breaking-and-entering he immediately called 911 hoping to have the intruders either removed or arrested or at the very least have a contemporaneous documented police account of what happened.

---

[1] See ECF Doc No. 329, Exhibit B.

Buchwald recognized that the first officers on the scene were the same ones he met at the premises on Monday, March 14th. Their arrival was followed by about three more police cars. The workers were asked to leave the building and the police tried to sort out the situation.

The person in charge identified himself as James Robi of All Island Masonry, the same company that had equipment on the premises when Buchwald first took possession of the premises and changed the locks. Robi claimed that his boss Dwayne had "papers" dated March 3, 2022[2] which allowed them to work on the site. He made several cellphone calls. Buchwald showed the police the court order regarding the violation of the automatic stay dated March 17, 2022. The police told Buchwald they did not want to have any further involvement stating that All Island is only a contractor and that this is a matter for the marshals and left.

Buchwald spoke with Robi once the police left and Robi told Buchwald that All-Island was there at that time to remove the roof as it was sagging. Robi blamed the sagging damage on the asbestos removal project. Robi and the two workers with him were from All Island. There was no one there from Xolle, the holder of the demolition permit. Robi later told Buchwald that All Island was doing the demolition of the warehouse and building the new building. At no time did Robi mention Xolle or any other company by name.

Robi was eager to remove a large truck and heavy equipment from the site. The largest (which Robi claimed was worth $2M) was used to remove the steel girders on the roof and for other heavy uses. All Island had used the CAT equipment to dig up dirt from the foundation (and other activities) which had been put on their truck. Since they were leaving and had no idea if/when they'd be returning, they dumped the dirt back onto the floor of the facility.

At various times during Buchwald's conversation with Robi he referred to Heritage and recognized Michael Lichtenstein's name, so it was clear that he was better informed than he had at first revealed. While Robi and his worker were removing the equipment, a man walked up to Buchwald and introduced himself as Evan Cohen of Heritage, He told Buchwald he was property manager for Heritage (i.e., not involved in construction) who happened to be nearby and was asked by his company (without identifying by whom) to stop by to check on the situation. Buchwald explained who he was and that the court had ordered that no work take place. On the property Buchwald showed him the court order and invited him to photograph it which he did. He then talked to Robi but didn't stay around long.

Robi did offer Buchwald valuable information on how Development could move heavy equipment in and out of the Property even if there was a heavy padlock

---

[2] Robi identified "Leizer" and "Hyman" as the source of the "papers" to Buchwald, however, Buchwald was never shown any documents.

on the outside of the  cargo bay door. The cargo bay door is electrically operated.  Although there is no electricity in the building Robi has a portable generator which he uses to operate that gate.  The lock that Buchwald installed outside doesn't accomplish anything if one has access to the gate from the inside. All one needs to do it hook up the generator and push the button to lift the cargo bay door, The exterior padlock will not defeat this.  Once the office entrance was breached it was easy to open the bay door and  move equipment in and out.

Finally, after All Island departed with their equipment a man showed up from A-Rental who claimed he was there to pick up equipment that had been rented.  At that point Buchwald did not have the ability to operate the generator and there was no way  to access the cargo bay and he left empty-handed. After A-Rental left, Buchwald took additional pictures of the premises of the property in the condition that it was left, and he locked the premises with the newly installed locks.

On March 18th, Buchwald incurred expenses for the costs of replacing the locks again. Copies of two invoices from Webster Lock and Hardware for a total of $653.25 are annexed hereto as **Exhibit F** for reimbursement by Development.

## Structural Engineer

In further keeping with the Court's order and in order to expeditiously address the Court's concerns about structural integrity, on  March 18th , within 30 hours of entry of the Court's order, Buchwald (i) regained possession off the property under adverse circumstances, (ii) arranged for a consultation with a security consultant and (iii)  obtained a proposal from RAND Engineering Architecture DPC for a Limited Structural Evaluation at the property to determine the structural integrity of the building. RAND has requested a $2500 retainer and expects that the work will cost about $10,000. RAND's proposal is annexed hereto as **Exhibit G.**

The Court suggested in its March 17th Order regarding the Breach of the automatic stay, in paragraph 3 thereof, that the Court would be entering a separate order ("Initial Sanction Order") requiring Development and its principals to immediately pay to the manager a specified amount for (1) the cost of replacement locks, surveillance cameras and installation and maintenance of such systems on the Premises and (2) the cost of a structural engineer selected by the Manager to inspect the Premises and deliver a report on whether the Property is currently structurally sound and the extent to which repairs are required to make the Property structurally sound.

The proposal by RAND is intended to address the issues raised by the Court in the order. RAND will do an evaluation of the structural integrity of the building to determine whether it has been compromised. They will perform an evaluation

and issue recommendations for the repair, reinforcement and further investigation regarding the building. Although this review will result in a written report which will be filed with the Court, a verbal report will be made to Mr., Buchwald as soon as the inspection is complete if Rand determine public safety requires immediate action.

On Saturday evening, we provided Mr. Spelfogel with a copy of RAND's proposal.

As for the letter filed by Development's counsel on March 17th suggesting that the immediate installation of a construction fence was required, the construction fence that Xolle Demo LLC obtained a permit dated February 9, 2022, I advised Mr. Spelfogel that (i) if RAND determines that the installation of a construction fence or other mechanism is required for purposes of public safety, Buchwald will act on those recommendations and make the necessary installation and (ii) if his client believes a construction fence is required, and since they know the cost of that item, the Debtor requested they immediately provide the Debtor with the funds for that expense..

Altogether we have requested that Development wire into the DIP account under Buchwald's control $20,000 for the cost of employing RAND[3] plus the cost of the construction fence to expedite that matter should RAND recommend moving forward with it. We are now also requesting that the wire include reimbursement for the invoices rendered by the locksmith of $985.32 or $20,985.32 plus the cost of the construction fence.

Development has been provided with the Debtor's wire instructions.

## Documents requested

There  have been at least two permits issued in the last two months for the property without the Debtor's knowledge or consent including the permit for the construction fence issued on February 9, 2022, and the demolition permit issued on March 11, 2022.  The Debtor has requested that Development provide it with all of the supporting documentation that was submitted to the Department of Buildings and any other City agency in connection with the issuance of these two permits including any applications, technical reports, subsurface or soil investigations reports, work plans or drawings, electrical or plumbing plans or  drawings, sewer connection plans or other documentation submitted in the Debtor's name or with reference to the Debtor's property to obtain either permit or any other permits that has not yet been disclosed to the Debtor. To the extent the Court holds a conference

---

[3]  $$2,5000 for their retainer, $7,5000 to finish their work and prepare a written report and a $10,000 cushion (See, Transcript of Hearing, March 16, 2022, at 87: 2-6.)

in this case, The Debtor request that it address this issue. The Debtor has no idea what the basis is for the issuance of these permits and the factual accuracy of the information submitted.

Because so much of this letter is based on Mr. Buchwald's observations, he is submitting it jointly with the undersigned.

The Debtor suggested a conference at the Court's convenience so prompt action can be taken.

Respectfully submitted,

/s/ Fred B. Ringel

Fred B. Ringel

Buchwald Capital Advisors, Manager

/s/ Lee E. Buchwald
President

Cc:   Douglas Spelfogel, Esq.
      Jason Nagi, Esq.
      Joyce Kuhns, Esq
      Joseph Moldovan, Esq.
      David Kozlowski, Esq.
      Lori Schwartz, Esq,
      Clement Yee, Esq.

# Exhibit A



Webster Lock and Hardware
2471 Webster Avenue
Bronx, NY 10458

| **Date Created:** 03/10/2022 1:53 PM | **SERVICE TICKET** | **W-0147072** |
|---|---|---|

## Customer

| **Name:** | COD customer | **Contact:** | COD |
|---|---|---|---|
| **Site Address:** | 286 Rider Ave | | |
| | 286 Rider Ave | | |
| | bronx, ny | | |

## Problem

| **Locksmith Other Request Read Description** | Done |
|---|---|

SEE SAMANTHA FOR MATERIAL

VACANT

Warehouse

open and replace 4 padlock and hockey puck locks

Lee E. Buchwald
347-899-1477
Tel: (212) 970-1040

## Work Done

| **Repair Category:** | Service Call Completed |
|---|---|
| **Description:** | opened by drill 3 pad locks, |
| | one ilco mortise cylinder, |
| | furnished and installed, |
| | two hockey puc pad locks |
| | one 702 pad lock. |

## Invoice

| **Amount:** | $332.07 |
|---|---|

## Attachments

**03/11/2022**  |  Signature  |  Service Ticket Signature Mar 11, 2022 2:51 PM

All work is guaranteed for 90 days from the date of the installation (warranty does not cover vandalism and acts of nature). Guaranteed work will be honored during normal business hours MON-FRI between the hours of 9am-5pm, otherwise customer will be charged a service call fee. All materials are property of Webster Lock until paid in full. No refunds or returns on special orders. All claims and returned goods must be accompanied by this bill. The customer understands they are liable for any legal or collection fees as well as interest if this bill has not been paid in the allotted time. The customer accepts these terms and conditions and take full responsibility for the above.

Exhibit B

# ACCESS TO THIS PROPERTY IS <u>STRICTLY PROHIBITED</u> WITHOUT THE PERMISSION OF

# LEE E. BUCHWALD PURSUANT TO ORDER OF THE UNITED STATES BANKRUPTCY COURT

Contact information for Mr. Buchwald:

(212) 970-1040

Lbuchwald@buchwaldcapital.com

























Exhibit C

# NYC Buildings



# **Work Permit Department Of Buildings**

Permit Number:    **X00273573-I1-FN**

Permit Classification:    **TEMPORARY CONSTRUCTION EQUIPMENT**

Address:    **BRONX 286 RIDER AVENUE**

Work on Floor(s):    **SIDEWALK**

Total number of dwelling units at location:    **0**

Number of dwelling units occupied during construction:    **0**

Issued:    **02/09/2022**

Expires:    **06/10/2022**

Issued To:    **MENACHEM ROTH**

Business:    **XOLLE DEMO LLC**

License No:    **GC-615937**

Description:    PROPOSED CONSTRUCTION FENCE. NO CHANGE TO USE, EGRESS OR OCCUPANCY UNDER THIS APPLICATION.

For detailed information regarding this permit, please log on to DOB NOW at www.nyc.gov/buildings.
Call 311 with any questions or complaints.

Borough Commissioner:                              Commissioner of Buildings:

Tampering with or knowingly making a false entry in or falsely altering this permit is a crime that is punishable by a fine, imprisonment or both.

Exhibit D



# NYC™ Buildings

# Work Permit Department of Buildings

**Permit Number:** 220690063-01-DM

**Address:** BRONX      286 RIDER AVE

**Description of Work:**
FULL DEMOLITION – DEMOLITION OF A ONE STORY BUILDING

Number of dwelling units occupied during construction: 0      SITE FILL: ON-SITE
Review is requested under Building Code: 2014

To see a Zoning Diagram (ZD1) or to challenge a zoning approval filed as part of a New Building application or Alteration application filed after 7/13/2009, please use "My Community" on the Buildings Department web site at www.nyc.gov/buildings.

**Emergency Telephone Day or Night:** **311**

**Issued:** 03/11/2022      **Expires:** 09/20/2022

Issued to: ROTH MENACHEM
Business: XOLLE DEMO LLC
Contractor No: GC-615937

**Commissioner of Buildings:**

**Borough Commissioner:**

*This permit copy created on 03/16/2022 reflects the Commissioner(s) as of such date.*
Tampering with or knowingly making a false entry in or falsely altering this permit is a crime that is punishable by a fine, imprisonment or both.
01 03/16/2022

OP-35A (5/10)

Exhibit E

Page: 1 of 1

**Premises: 286 RIDER AVENUE BRONX**     BIN: 2000954     Block: 2333     Lot: 33
**3 Total Complaints**     View Vacate Order Complaints     View SWO Complaints

Looking for a list of complaint category codes or disposition codes?
(Adobe Acrobat Reader required)

| Complaint Number | Address | Date Entered | Category | Inspection Date | Disposition | Status |
|---|---|---|---|---|---|---|
| 2332925 | 286 RIDER AVENUE | 03/15/2022 | 83 | | | ACT |
| | CONSTRUCTION OF AN APARTMENT BUILDING. THE CONSTRUCTIONACTIVITY HAS ENCROACHED ONTO THE ADJACENT PROPERTY WHICH IS A VACANTWAREHOUSE AT THE CORNER OF RIDER AVENUE AND EAST 139TH STREET. | | | | | |
| 2332923 | 286 RIDER AVENUE | 03/15/2022 | 05 | 03/15/2022 | D8 | ACT |
| | CONSTRUCTION OF AN APARTMENT BUILDING. NO PERMITS AREVISIBLE. | | | | | |
| 2331704 | 286 RIDER AVENUE | 02/17/2022 | 09 | 02/23/2022 | I2 | RES |

Exhibit F

# Webster Lock & Hardware Co., Inc.

**Invoice**

2471 Webster Avenue
Bronx NY 10458
718-733-2200

| | |
|---|---|
| **Invoice #** | **S147661** |
| **Date** | 3/18/2022 |

**PAID 03/18/2022**

**Bill To:**

Lee E. Buchwald
286 Rider Ave
Bronx, NY 10451

**Location:**

286 Rider Ave
Bronx, NY

| P.O. No. | Terms | Due Date | Technician | Service Date | Ship Via |
|---|---|---|---|---|---|
| | | 3/18/2022 | 3J | 3/18/2022 | Our Truck |

| Qty | Description | Unit Price | Amount |
|---|---|---|---|
| 1<br>2<br>1<br>1 | Service Call<br><br>Throughout warehouse<br>Our servicemen open 3 Padlocks<br><br>Supplied and Installed<br>Mul-t-lock long shackle padlocks<br>Mul-t-lock hockey puck padlock | 465.00 | 465.00 |

**Family Owned & Operated For 65 Years**

**Thank You For Your Business**

| | |
|---|---|
| **Subtotal** | $465.00 |
| **Sales Tax (8.875%)** | $41.27 |
| **Total** | $506.27 |
| **Balance Due** | $0.00 |

# Webster Lock & Hardware Co., Inc.

**Invoice**

2471 Webster Avenue
Bronx NY 10458
718-733-2200

| | |
|---|---|
| **Invoice #** | **S147775** |
| **Date** | **3/18/2022** |

PAID
03/18/2022

**Bill To:**

Lee E. Buchwald
286 Rider Ave
Bronx, NY 10451

**Location:**

286 Rider Ave
Bronx, NY

| P.O. No. | Terms | Due Date | Technician | Service Date | Ship Via |
|---|---|---|---|---|---|
| | | 3/18/2022 | 3J | 3/18/2022 | Our Truck |

| Qty | Description | Unit Price | Amount |
|---|---|---|---|
| 1 | Service Call<br><br>Throughout Warehouse<br>Supplied and Installed<br>Mul-t-lock hockey puck padlock | 135.00 | 135.00 |

**Family Owned & Operated For 65 Years**

**Thank You For Your Business**

| | |
|---|---|
| Subtotal | $135.00 |
| Sales Tax (8.875%) | $11.98 |
| Total | $146.98 |
| **Balance Due** | $0.00 |

Exhibit G



March 18, 2022

Buchwald Capital Advisors LLC
200 Park Avenue South, Suite 1700
New York, NY 10166-00005
Att: Lee E. Buchwald

Re:    286 Rider Avenue, Bronx
Limited Structural Evaluation

Dear Mr. Buchwald:

As requested, I am pleased to present RAND's engineering/consulting services proposal for a Limited Structural Evaluation at the above-referenced property.

Specifically, it is my understanding that construction work was performed by a third party at the property, and you would like RAND to review existing conditions to endeavor to determine whether the structural integrity of the building has been compromised.

## Evaluation Methods

RAND's role pursuant to this assignment would be to conduct visual observations of areas where work appears to have been performed, to evaluate structural conditions and the extent of any structural damage, if any.

Please note that this evaluation will be limited to visible portions of the structure and does not include a review of structural drawings, verification of the adequacy and/or code compliance of the structural design, or substitute for a comprehensive structural investigation.

## Report

At the conclusion of our site observations and document review, we would issue a letter report outlining our findings and recommendations for repair, reinforcement, and/or further investigation (including investigative probes and/or testing as well as additional structural monitoring provisions deemed necessary at the areas observed, such as the installation of crack monitors, vibration sensors, etc.).

*RAND Engineering & Architecture, DPC March 18, 2022 Proposal/Contract - Page 2 of 5*
*Project Location: 286 Rider Avenue*
*Project Description: Limited Structural Evaluation*

**Follow-up Services**

After issuing our report, we would be available to discuss our findings and recommendations, provide follow-up investigative work if requested, and submit a proposal for design services if warranted. If and when a repair scope is definitively established, we could also provide associated preliminary budget projections.

**Fee**

**RAND's projected billing range for this evaluation is $5,000 to $10,000, with a $2,500 minimum Base Fee covering up to 8 hours of initial involvement, followed by hourly billing at our standard rates:**

- $375: Principals and related travel
- $375: Court appearances and associated waiting time
- $275: Senior licensed engineers/architects and related travel
- $250: Certified Infrared Thermographer testing, if applicable
- $235: Licensed engineers/architects and related travel
- $215: Senior staff engineers/associates and related travel
- $195: Code & Zoning Team Leader/Manager and related travel, if applicable
- $185: Staff engineers/associates and related travel
- $155: Filing Representatives and related travel, if applicable
- $135: Level 1 engineers/associates and related travel
- $125: drafting services and related travel if applicable
- $ 75: Technical support

**Note:** This projection is based upon our understanding of the scope of the input currently being requested, although the required time expenditure will depend upon the conditions/issues encountered.

**Investigative Probes and Additional Testing**

This Agreement provides for visual observations only. If investigative probing and/or further testing is deemed necessary to provide more detailed observations of underlying conditions or methods of construction, you will need to engage an independent contractor at additional cost to open/seal the probes and/or perform the testing under RAND's direction. (RAND can provide a list of contractors qualified for this work.)

*RAND Engineering & Architecture, DPC March 18, 2022 Proposal/Contract - Page 3 of 5*
*Project Location: 286 Rider Avenue*
*Project Description: Limited Structural Evaluation*

## About RAND

Founded in 1987, RAND Engineering & Architecture, DPC is a 105-person full-service firm that provides design and specification for repair, upgrade, restoration and adaptive re-use, specializing in occupied properties. Our areas of expertise include the building envelope; mechanical, electrical, and plumbing systems; structural engineering; architectural design; energy services (benchmarking, energy audits, retro-commissioning), and Special Inspections. We also have our own Code & Zoning Compliance team of expeditors, and a team of Certified Industrial Rope Access Technicians.

**To engage RAND for this assignment, please sign where indicated below and return a copy of this agreement to our office along with the $2,500 Base Fee and we will proceed.**

Thank you for your interest in RAND. We look forward to working with you on this assignment.

Sincerely,
RAND Engineering & Architecture, DPC

CF:mmi

Colin FitzGerald
Client Services Manager

## General Terms & Conditions:

1.  Any and all services requested beyond the scope outlined above will be provided at the hourly rate structure indicated above (subject to annual adjustment) unless otherwise agreed by both parties. Also, all fees quoted in this proposal are based upon the assumption that all services are to be provided during RAND's standard hours of operation: Monday through Friday, 9:00 A.M. - 5:30 P.M.  Any hourly-based services authorized by Client outside standard hours of operation shall be billed at 1.5 quoted rates.

2.  If applicable, reproduction of plans, drawings and photographs shall be billed at 1.1 times cost.

3.  All documents, including but not limited to reports, field notes and estimates prepared by RAND pursuant to this Agreement, shall be the sole property of RAND. Documents will be issued in PDF format only.  Client agrees that all documents of any nature furnished to Client, if not paid for, will be returned upon demand and will not be used by Client for any purpose whatsoever. Client agrees that under no circumstances shall any documents produced by RAND, pursuant to this Agreement, be used at any location or for any project not expressly provided for in this Agreement without the prior written permission of RAND.

*RAND Engineering & Architecture, DPC March 18, 2022 Proposal/Contract - Page 4 of 5*
*Project Location: 286 Rider Avenue*
*Project Description: Limited Structural Evaluation*

4.    Payment is due upon receipt of RAND's invoices. If payment is not received by RAND within thirty (30) days of receipt of invoice by Client, Client agrees to pay a finance charge on the principal amount of the past due account of twelve (12) percent per year. The Client also agrees to pay RAND's cost of collection of all amounts due and unpaid after forty-five (45) days, including court costs and reasonable attorneys' fees. RAND's services will be suspended in the event that any invoice remains unpaid after more than forty-five (45) days. In such case, services will only resume when all outstanding invoices have been paid, and RAND shall have no liability for construction activities or other claims that occur regarding the project during the period that RAND's services are suspended or as a result of such suspension.

5.    The quoted fee covers visual observation only, and is exclusive of the cost of exploratory probes and any physical testing recommended. RAND shall have no responsibility for the identification, discovery, presence, handling, removal or disposal of, or exposure of persons to, potentially hazardous materials in any form at the project site, and is not providing environmental consulting services on this project. Furthermore, the Client agrees to engage an independent environmental consultant to provide the necessary services pursuant to the identification and abatement of any potentially hazardous materials to be disturbed by the work of this contract.

6.    Client agrees that RAND's liability for any damage on account of any claimed error, omission, wrongful conduct, or professional negligence will be limited to an amount equal to RAND's fee under this Agreement. RAND, its agents, and employees shall not be liable for any lost profits or any claim or demand against Client by any other party. In no event shall RAND be liable for special, consequential, or exemplary damages, or for damages due to delay in the work. Nothing in this agreement shall be deemed to constitute a fiduciary duty to the Client by RAND. No action, regardless of form, arising out of the service under this Agreement, may be brought by the Client more than one (1) year after the act or omission giving rise to a cause of action has occurred.

7.    This Agreement may be terminated by either party upon seven (7) days' prior written notice. In the event of termination, RAND shall be compensated by the Client for (a) all services performed up to and including the termination date; and (b) all reimbursable expenses.

8.    Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall first be subject to non-binding mediation, followed if necessary by binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. No mediation or arbitration arising out of or relating to this Agreement shall include, by consolidation, joinder or in any other manner, an additional person or entity not a party to this Agreement, except by written consent containing a specific reference to this Agreement signed by RAND, the Client, and any other person or entity sought to be joined. Any award rendered by the arbitrator(s) shall be final.

9.    This Agreement shall be construed and enforced in accordance with the laws of the city and/or state in which the Project is located; shall constitute the entire Agreement and understanding between the parties hereto; and shall supersede any prior proposals, Agreements, or understandings between RAND and the Client with respect to the subject matter hereof.

10.    This proposal may be withdrawn by RAND if both an executed copy and any initial payment specified are not received by RAND within fifteen (15) days of the date of this proposal.

*RAND Engineering & Architecture, DPC March 18, 2022 Proposal/Contract - Page 5 of 5*
*Project Location: 286 Rider Avenue*
*Project Description: Limited Structural Evaluation*

**Acceptance of Proposal:** The above prices and conditions are satisfactory and are hereby accepted. You are authorized to perform the work as specified. Payment will be made as outlined above.

Date of Acceptance: _____    _____
                                                                  Authorized Signature

                                                                  _____
                                                                  Printed Name & Title

220394.pro(1)