**OFFIT KURMAN, P.A.**
Jason A. Nagi, Esq.
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900
Email: Jason.nagi@offitkurman.com
     and
Joyce A. Kuhns, Esq. (admitted pro hac vice)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
(410) 209-6463
Jkuhns@offitkurman.com

*Attorneys for 286 Rider Ave Development LLC,*
*Toby Moskovits and Yechial Michael Lichtenstein*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:

286 Rider Ave Acquisition LLC,

                Debtor.
---------------------------------------------------------X

Chapter 11

Case No. 21-11298-lgb

**EXPEDITED MOTION FOR RELIEF FROM AUTOMATIC STAY PURSUANT TO
11 U.S.C. §§ 362(d) AND 105 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE
4001(a)(1) TO PRESERVE VALUE OF REAL PROPERTY AND ENTITLEMENT
TO TAX ABATEMENT AT 286 RIDER AVENUE, BRONX, NEW YORK BY
286 RIDER AVE DEVELOPMENT LLC, TOBY MOSKOVITS
AND YECHIAL MICHAEL LICHTENSTEIN**

286 Rider Ave Development LLC ("**Development**"), as 100% owner of the membership interests of the debtor 286 Rider Ave Acquisition LLC (the "**Acquisition**" or "**Nominal Debtor**"), Toby Moskovits and Yechial Michael Lichtenstein, as indirect owners of the Nominal Debtor (collectively, "**Movants**"), by undersigned counsel, hereby file this Expedited Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. §§ 362(d) and 105 and Federal Rule of Bankruptcy Procedure 4001(a)(1) to Preserve Value of Real Property and Entitlement to Tax Abatement at 286 Rider Avenue, Bronx, New York (the "**Expedited Motion**") with proposed

form of Order Granting the Expedited Motion attached hereto as **Exhibit** ("**Ex.**") **A**, and, in support, state:

## I.    JURISDICTION AND VENUE

1. This Court has jurisdiction to consider and grant the relief requested herein, pursuant to Sections 157 and 1334 of Title 28 of the United States Code.

2. This matter is a core proceeding pursuant to Section 157(b) of Title 28 of the United States Code.

3. Venue is proper before this Court pursuant to Sections 1408 and 1409 of Title 28 of the United States Code.

4. The statutory predicate for the relief requested in this Expedited Motion are Sections 362(d) and 105 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Federal Rule of Bankruptcy Procedure 4001(a)(1).

## II.    RELIEF REQUESTED

5. Movants request entry of an Order granting relief from the automatic stay of Section 362(d) of the Bankruptcy Code pursuant to Sections 362(d) and 105 of the Bankruptcy Code to allow Development as undisputed 100% equity holder of the Nominal Debtor to take all actions necessary, at its sole cost and expense, to protect the value of the Property, safeguard the public, and preserve entitlement to the tax abatement relating to the Property, pending final resolution of this Bankruptcy Case, and granting such other relief as may be just.

### III. KEY FACTS

6. On July 15, 2021 ("**Petition Date**"), a petition was filed by Nominal Debtor 286 Rider Ave Acquisition LLC, under chapter 11 of the Bankruptcy Code commencing this case (the "**Bankruptcy Case**"). No Schedules of Assets and Liabilities ("**Schedules**"), Statement of Financial Affairs ("**SOFA**") or List of Equity Security Holders as required by Fed. R. Bank. Proc. ("**Bankruptcy Rule**") 1007(a) and (c) were filed with the Petition. The Petition was accompanied by a Declaration of Lee Buchwald, the purported Manager (the "**Buchwald Dec.**").

7. It is uncontested that Nominal Debtor's primary asset is a vacant, non-income producing warehouse located at 286 Rider Avenue, Bronx, New York (the "**Property**").

8. On the Petition Date, Be-Aviv 286 Rider LLC ("**Be-Aviv**" or "**Lender**") held a security interest in the Property under a Mortgage and Security Agreement dated September 19, 2019, pursuant to a loan with the Debtor, as borrower, to acquire the Property with an original principal balance of $8 million (the "**Loan**").

9. Prior to the Petition Date, the Lender had obtained an independent appraisal for the Property from LevelValuation with a value of $12 million submitted by Lev Yagudayev, MAI (the "**Appraisal**"). The Appraisal concludes that the highest and best use of the Site "would be to develop an apartment building… The most probable owner is a local or regional real estate developer." The Appraisal ultimately concludes "it is our opinion that the Property's improvements should be demolished and the Site should be redeveloped at a higher density into a more financially beneficial use." Appraisal at p. 75. Copies of the pertinent pages of the Appraisal are attached as **Ex. B**.

10. More than 90 days after the commencement of the Bankruptcy Case, on October 25, 2021, Nominal Debtor's counsel filed and Mr. Buchwald, once again, signed under penalty of perjury, Schedules, a SOFA, and a Declaration that the Schedules and SOFA were true and correct [ECF No. 97]. Almost 4 months after the Petition Date, on November 5, 2021, Nominal Debtor's counsel filed and Mr. Buchwald, once again, signed under penalty of perjury an amended SOFA (the "**Replacement SOFA**") [ECF No. 116].

11. The Replacement SOFA contains startling sworn admissions: (i) Development remains, and has always been, the 100% member of the Nominal Debtor; (ii) Lender's affiliate, Lender LLC, is the "Managing Member" with a 0% membership interest; and (iii) Mr. Buchwald is the "manager," apparently appointed by the Managing Member, even though it owns 0% of membership interests in the entity for which it purports to act [ECF No. 116 at ¶ 28.]

12. Throughout the Bankruptcy Case, Development and its principals Ms. Moskovits and Mr. Lichtenstein consistently and vigorously contested the authority of a non-member, non-manager to file this case and the Nominal Debtor's and Lender's attempts to force a "fire sale" of the Property for the exclusive benefit of the Lender and the Nominal Debtor's professionals. Moreover, all of the general creditors and the judgment lien creditor[1] have joined in Movant's attempts to dismiss the case. Nonetheless, disregarding its fiduciary duty to all creditors, the Nominal Debtor and Lender proposed a rapid sale of the Property during the holiday season [ECF No. 173], which was hotly contested by Movants [ECF Nos. 190 and 196].

---

[1] General creditors and the judgment lien creditor joined in Development's Motion to Dismiss this Bankruptcy Case filed in August 2021. *See* Joinders at ECF No. 38. Furthermore, all general creditors and the judgment lien creditor have uniformly rejected the Nominal Debtor's past two Plans. *See* ECF No. 291 (copies of executed Amended Stipulations of each remaining creditor to payment outside of the Bankruptcy Case, conditioned on its dismissal).

13. In defending its commitment to a rapid sale scenario, Nominal Debtor acknowledged the need to move expeditiously to preserve a 421-a tax abatement worth millions of dollars in value to the Property from the City of New York that is only available if work is commenced on the Property prior to mid-June, 2022. *See* Bid Procedures Motion [ECF No. 173] p. 4-5 ("The loss of the tax abatement would result in a diminution in the value of the property to the detriment of all parties-in interest. Thus, an auction as soon as possible in early January is absolutely critical to preserve value of the estate."). Consistent with Nominal Debtor's professed "need for speed", the Court entered the Bid Procedures Order [ECF No. 200], which provided, among other things, for an auction on January 14, 2022 (the "**Auction Date**").

14. Prior to the originally scheduled Auction Date, on January 11, 2022, Development tendered payment in full of the Loan in the amount of $11,918,974.12 (the "**Payoff Amount**") (including a $100,000.00 cushion as set forth in Lender's Payoff Notice) [ECF No. 236] discharging any purported continued liens, interests or rights of Lender in the equity of Debtor and the Property. Development filed a confirmation of tender of the Payoff with the Court [ECF No. 257].

15. In light of the Payoff Amount and Development's Payoff Motion filed on December 29, 2021 [ECF No. 218], which sought, among other things, an ultimate dismissal of this case, the Court subsequently entered two Scheduling Orders further adjourning the Auction Date [ECF Nos. 259 and 293] to April 13, 2022.

16. As Nominal Debtor has previously acknowledged, preserving the tax abatement requires the commencement of construction (*i.e.,* placing a footing in the ground) before the mid-June tax abatement deadline, thus preserving tens of millions of dollars in value. The first step in

5

commencement of construction requires certain environmental remediation prior to the complete tear down of the building, a prerequisite to placing a footing in the ground. Despite the adjournment of the January Auction Date and the rapidly approaching tax abatement deadline, the Nominal Debtor, through its purported Manager, Mr. Buchwald, took no steps to preserve the tax abatement.

17.     Thus, as the undisputed sole equity holder, Development undertook to preserve the availability of the tax abatement and, in doing so, enhancing the value of the Property by facilitating environmental remediation work (*i.e.,* removal of asbestos). This work was properly permitted, insured and paid for. Copies of Certificates of Liability Insurance Coverage in the amount of $1 million per occurrence and $3 million in the aggregate and Certificate of Workers' Compensation Insurance in the name of the Debtor have been filed with this Court demonstrating there is no liability risk to the Debtor or the estate from any such activities conducted on the premises. *See* ECF No. 332, Exhibit A.  Copies of certificates from the New York City Department of Environmental Protection demonstrating that the asbestos abatement on the premises was performed with proper oversight and, following such abatement, the "entire building is now free of asbestos containing material (ACM)" have been filed with the Court. *See* ECF No. 332, Exhibit B. Likewise, a copy of the final invoice showing payment in full of the asbestos-abatement removal charges was filed with the Court. *See* ECF No. 332, Exhibit C. All such actions pose no risk to the Debtor, Mr. Buchwald or the estate but, to the contrary, have preserved and enhanced the value of the Property, at no cost to the estate.

18.     Nonetheless, the nominal Debtor and Mr. Buchwald, disregarding proper procedure and due process, in their Reply to Development's Omnibus Response to the Motion to

6

Reconsider the Court's February 11, 2022 Order asked the Court to hold Development in violation of the automatic stay and to issue an injunction against Development, Ms. Moskovits and Mr. Lichtenstein taking any further actions with respect to the Property.

19. Following a hearing on the Motion to Reconsider on March 16, 2022, without testimony or documentary evidence, the Court entered the Order with Regards to Breaching the Automatic Stay [ECF No. 335] which, among other things, enjoined Development, the Principals and any affiliates, employees, agents and representatives of each such party from taking any further acts with respect to the Property and set forth a list of prohibited acts, purportedly to maintain the *status quo*.

20. Contrary to the court-stated objective to restore the Property to its condition prior to the environmental remediation work, the facts demonstrate that the *status quo* cannot, and should not, be maintained because of an immediate danger to the public and for the reasons set forth below. First, as set out in the Appraisal, the highest and best use is not as a restored warehouse but as a residential high-density property that would necessitate a tear down of the building. Second, per the engineering report provided by Titan Engineering as explained below, the Property is a safety hazard and should be demolished in order to prevent danger to the public. Third, repairing and restoring the Property would take many months of work, between planning, purchasing of materials such as steel and rebar, fabricating steel columns and such, and then installation of such supports, which would take at least 4-6 months, while demolition would only take a few weeks. Fourth, the project plans are for a residential building, with an affordable housing component, which any further delays in construction, such as repairing the warehouse

instead of demolishing it, will only delay bringing these units online for use in a much needed housing market.

21. Therefore, from an engineering perspective (set forth in the engineer's letter recommending demolition), from an economic perspective (consistent with the LevelValuation appraisal recommending demolition of the warehouse for construction of a multi-family building as the highest and best use), from a public policy perspective (providing necessary abodes and affordable units in a very tight residential market) and from a public safety perspective (protecting the public from a hazardous situation), the only practical path forward is to demolish the warehouse on the Property, immediately, without any delays.

22. Thus far, Development has expended the following on preparing the Property for its ultimate use by owner on: asbestos remediation – approximately $150,000.00; and on permitting and planning – approximately $200,000.

23. The following additional work is required to raze the building and obtain the tax abatement: (i) demolition, approximately $350,000, and (ii) the minimum excavation needed to install a foundation footing, approximately $100,000, to qualify for the tax abatement.

24. Development is the acknowledged 100% equity holder by all parties and, as such, the only party with the undisputable and unconflicted interest to act to preserve and protect the Property and every residual dollar for the benefit of the estate, which it has done, unlike Mr. Buchwald, the purported Manager, and the Lender-controlled Debtor, who took no acts to secure the Property or its value. While the Court has found stay violations, as noted above, by Development, Development's actions, in fact, prepared this Property for its ultimate use and have preserved the prospects of the owner achieving the highest value for the Property by taking

steps towards qualifying for the tax abatement. Indisputably, Development has expended and is willing to expend nearly $1 million which will inure toward the benefit of any owner of the Property.

25.     On March 17, 2022, following an inspection, Titan Engineers P.C. performed a visual inspection of the building and in a letter report dated March 17, 2022 enumerated the following structural problems: (i) that the roof decking is in poor condition with holes throughout leading to water penetration leading to deterioration of the roof framing; (ii) that several roof beams were cut and portions of roofing were missing in several bays which compromises the lateral bracing of the perimeter bearing wall causing major concerns of the stability of the existing building; (iii) that large diagonal cracks in the CMU walls exist that may be due to water infiltration and the missing roof framing and roof decks; (iv) that a large portion of a bearing wall has collapsed and the door heading support is severely compromised at the entrance of the loading docks. Based on these observations, Titan concluded "the building is no longer structurally sound and poses a safety hazard. We recommend the building to be demolished and the Site to be secured." A copy of this report was provided to the Court by letter dated March 18, 2022 [ECF No. 336] in which Development's counsel advised the Court that he had contacted Mr. Ringel, Debtor's counsel, to attempt to obtain an agreement to secure the Property by facilitating its demolition at Development's sole cost and expense, as the building now poses a safety hazard to the general public.

26.     As of the filing of this Expedited Motion, Nominal Debtor's counsel has refused to engage with Development's counsel regarding its proposals to immediately secure the Property to prevent imminent harm and to advance work necessary to secure the tax abatement

timely, contrary to Nominal Debtor's fiduciary duty to preserve value and prevent diminution of the estate.

## IV.  ARGUMENT

27. Section 362(d) of the Bankruptcy Code, provides, in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>> .....

11 U.S.C. § 362 (d) (1).

28. Because the Bankruptcy Code does not define "cause," the Bankruptcy Court must make a determination whether "cause" exists based on the totality of the circumstances. *In re M.J. & K. Co., Inc.*, 161 B.R. 586, 590–91 (Bankr. S.D.N.Y. 1993) ("Although neither the statute nor its legislative history defines 'cause' sufficient to sustain a § 362(d)(1) motion, it is viewed as a broad and flexible concept." Accordingly, the determination of whether sufficient cause exists to grant stay relief must be addressed on a case-by-case basis.")  (citing *Sumitomo Trust & Banking Co. v. Holly's Inc. (In re Holly's Inc.),* 140 B.R. 643, 687 (Bankr.W.D.Mich.1992). Here, "cause" exists to prevent a substantial loss to or diminution in value of the Property, indisputably the most valuable asset in this estate. *See, e.g.*, *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 334 (Bankr. S.D.N.Y. 2001) ("While each of Code sections 707(a), 1112(b), 1307(c) and 362(d)(1) states that the authority it provides—dismissal or relief from stay, respectively—may be granted for 'cause,' and lists one or more examples of cause, each precedes the list with the word 'includes,' and none of those lists is exhaustive."). Whether

this Bankruptcy Case was properly filed and this Court has jurisdiction has yet to be finally determined but what is certain is that immediate steps must be taken and directed by persons with proven expertise in real estate development and construction to preserve a tax abatement worth tens of millions of dollars to any owner and to preserve and protect the value of the Property and prevent any imminent harm to the public based on the deteriorating condition of the building.

29. The law is well-established that the directors and managers of a solvent corporate entity owe a duty to preserve and protect the enterprise and its shareholders. *RSL Commc'ns PLC v. Bildirici*, 649 F. Supp. 2d 184, 201 (S.D.N.Y. 2009), *aff'd sub nom. RSL Commc'ns PLC, ex rel. Jervis v. Fisher*, 412 F. App'x 337 (2d Cir. 2011) ("directors' duties to act as 'guardians of the corporate welfare,'—including fiduciary duties of care and loyalty—operate to the benefit of the corporation's owners"). *In re Kadlubek Fam. Revocable Living Tr.*, 545 B.R. 660, 667 (Bankr. D.N.M. 2016) ("In a solvent estate, on the other hand, the debtor in possession/trustee must also take into account the interests of equity.") *N. Am. Cath. Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 99 (Del. 2007) ("It is well established that the directors owe their fiduciary obligations to the corporation and its shareholders.").

30. Following the tender Payoff Amount, this estate became indisputably solvent. Nonetheless, the nominal Debtor, as a debtor in possession, through its purported manager, took no acts to preserve the multi-million dollar tax abatement or apparently to secure the integrity of a vacant building. Instead, the Debtor has proceeded with a course of action that is detrimental and damaging to the value of the Debtor, solely to protect the fees of its professionals and those of the Lender, ignoring the clear preference of the remaining creditors for immediate dismissal

and the entitlement of equity to have its interests adequately protected from unnecessary impairment in value, which mandated prompt action on the abatement.

31. As noted above, it is the recommendation of one of the leading structural engineering firms in the City of New York that the building be demolished. The Property occupies the corner of 286 Rider Avenue and 139th Street in the Bronx . It fronts a sidewalk on its west and in its southern sides, which sidewalks should promptly be secured by a construction fence, and a supermarket on its east side and a laundromat on its north side. The position and condition of the building raises serious, imminent concerns about the safety of the general public given the close proximity of retail establishments with significant foot traffic.

32. "Cause" exists under the circumstances here to modify the stay to the extent necessary to permit Development, as sole equity holder, to take the following steps, at its own cost, to protect the general public and preserve the value of the Property of the estate:

   a. Completing the full demolition of the Property; and

   b. Installing foundation footing at the Property.

### V.    CONCLUSION

33. Based upon the foregoing, cause exists to modify the automatic stay as provided herein and to the fullest extent necessary to authorize Development to take immediate steps to protect the safety of the general public and preserve the loss of the tax abatement. Development agrees as the acknowledged 100% equity holder to cover the costs of such.

WHEREFORE, for the forgoing reasons Movants request entry of an Order: (i) granting the relief requested in this Expedited Motion; (ii) modifying the automatic stay of section 362(d) of the Bankruptcy Code to allow Development as 100% equity holder of the Debtor to take the

following actions at its sole cost and expense, to protect the Property and preserve the value of the tax abatement relating to the Property including (x); demolition of the Property; and (y) installing the foundation footing; and (iii) granting such other relief as may be just.

Dated: New York, New York
March 21, 2022

OFFIT KURMAN, P.A.

By: /s/ Jason A. Nagi
Jason A. Nagi, Esq.
590 Madison Avenue
New York, New York 10022
(212) 545-1900
Jason.nagi@offitkurman.com
and
Joyce A. Kuhns, Esq. (admitted pro hac vice)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
(410) 209-6463
Jkuhns@offitkurman.com

*Attorneys for 286 Rider Ave Development LLC, Toby Moskovits and Yechial Michael Lichtenstein*

**OFFIT KURMAN, P.A.**
Jason A. Nagi, Esq.
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900
Email: Jason.nagi@offitkurman.com
    and
Joyce A. Kuhns, Esq. (admitted pro hac vice)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
(410) 209-6463
Jkuhns@offitkurman.com

*Attorneys for 286 Rider Ave Development LLC,*
*Toby Moskovits and Yechial Michael Lichtenstein*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

                                              Chapter 11

286 Rider Ave Acquisition LLC,

                                              Case No.  21-11298-lgb

                 Debtor.
------------------------------------------------------------X

## CERTIFICATE OF SERVICE

      A copy of the Expedited Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. §§ 362(d) and 105 and Federal Rule of Bankruptcy Procedure 4001(a)(1) to Preserve Value of Real Property at 286 Rider Avenue, Bronx, New York by 286 Rider Ave Development LLC, Toby Moskovits and Yechial Michael Lichtenstein" are being served on March 21, 2022 via (i) Electronic Notice and E-Mail upon the parties listed on the attached service list as denoted with a "*"; (ii) E-mail upon the parties listed on the attached service list as denoted with a "**"; and (iii) U.S. Mail postage pre-paid upon the parties listed on the attached service list as denoted with a "***".

## SERVICE LIST

**VIA ELECTRONIC NOTICE AND E-MAIL (*)**

Joseph Thomas Moldovan - bankruptcy@morrisoncohen.com

Fred B. Ringel - fbr@robinsonbrog.com

United States Trustee- USTPRegion02.NYECF@USDOJ.GOV

**VIA E-MAIL (\*\*)**

Greg Zipes - greg.zipes@usdoj.gov

**VIA U.S. MAIL (\*\*\*)**

| | |
|---|---|
| NYS Dept. Taxation & Finance<br>Bankruptcy/Special Procedures Section<br>P.O. Box 5300<br>Albany, NY 12205-0300 | United States Attorney's Office SDNY<br>Attention: Tax & Bankruptcy Unit<br>86 Chambers Street, Third Floor<br>New York, NY 10007 |
| NYC Dept. of Finance<br>Office of Legal Affairs<br>375 Pearl Street, 30th Floor<br>New York, NY 10038 | U.S. Securities and Exchange Commission<br>New York Regional Office<br>Brookfield Place<br>200 Vesey Street, Suite 400<br>New York, NY 10281-1022 |
| Internal Revenue Service<br>Centralized Insolvency Operations<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346 | Titan Engineers PC<br>1331 Stuyvesant Ave.<br>Union, NJ 07083 |
| Fischer Makooi Architects<br>242 West 30th Street, Ste. 1102<br>New York, NY 1001 | Robert Newblatt<br>286 Rider Ave Realty LLC<br>286 Rider Avenue<br>Bronx, NY 10451 |
| Wayne M. Greenwald, Esq.<br>JACOBS, P.C.<br>667 Madison Avenue - 5th Floor<br>New York, NY 10065 | Mark S. Lichtenstein and Joshua D. Bernstein<br>Akerman LLP<br>1251 Avenue of the Americas, 37th Floor<br>New York, New York 10020 |
| BEAM Architects D.P.C.<br>141 Flushing Avenue, Suite 1201<br>Brooklyn, NY 11205 | EBC<br>1808 Middle Country Road<br>Ridge, NY 11961 |
| Metropolitan Realty<br>381 South 5 Street<br>Brooklyn, NY 11211 | Xolle Demolition<br>2071 Flatbush Ave, Suite 44<br>Brooklyn, NY 11234 |
| 286 Rider Associates, LLC<br>213 Via EmailiaPalm Beach<br>Gardens, FL 33418 | |

                                                                              /s/ Jason A. Nagi
                                                                           Jason A. Nagi, Esq.

# Exhibit A
# "Proposed Order"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:

                                                 Chapter 11

286 Rider Ave Acquisition LLC,

                                                 Case No. 21-11298-lgb

                 Debtor.
---------------------------------------------------------X

**ORDER GRANTING EXPEDITED MOTION FOR RELIEF FROM
AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 362(d) AND 105 AND
FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(a)(1) TO ALLOW
286 RIDER AVE DEVELOPMENT LLC TO PRESERVE VALUE OF REAL
PROPERTY AND ENTITLEMENT TO TAX ABATEMENT AT
<u>286 RIDER AVENUE, BRONX, NEW YORK</u>**

Upon the Expedited Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. §§ 362(d) and 105 and Federal Rule of Bankruptcy Procedure 4001(a)(1) to Allow 286 Rider Ave Development LLC to Preserve Value of Real Property and Entitlement to Tax Abatement at 286 Rider Avenue, Bronx, New York (the "**Expedited Motion**"); and it appearing that this Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (G); and it appearing that venue of this case and Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been given; and any objections to the requested relief having been heard and overruled; and upon the record of the hearing held by the Court on the Expedited Motion on ____, 2022; and the Court finding that cause exists to grant the relief requested for the reasons stated on record at the hearing; it is hereby **ORDERED:**

       1.       That the Expedited Motion is hereby **GRANTED** as provided herein.

       2.       That the automatic stay of 11 U.S.C § 362(d) is hereby modified to allow 286 Rider Ave Development LLC to take the following steps to preserve the value of the Property and entitlement to the 421-a tax abatement including:

17

   (x) demolishing the Property[1]; and

   (y) installing the foundation footing at the Property.

  3. The terms and conditions of this Order shall be immediately effective and enforceable upon entry of this Order.

Dated: _____, 2022

                _____
                The Honorable Lisa G. Beckerman
                United States Bankruptcy Judge

---

[1] All capitalized terms not defined in this Order shall have the meaning assigned to them in the Expedited Motion.