**OFFIT KURMAN, P.A.**
Jason A. Nagi, Esq.
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900
Email: Jason.nagi@offitkurman.com
      and
Joyce A. Kuhns, Esq. (admitted pro hac vice)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
(410) 209-6463
Jkuhns@offitkurman.com

*Attorneys for 286 Rider Ave Development LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

In re:

                                     Chapter 11

286 Rider Ave Acquisition LLC,

                                     Case No.  21-11298-lgb

              Debtor.

---------------------------------------------------------X

**REPLY OF 286 RIDER AVE DEVELOPMENT LLC TO DEBTOR 286 RIDER AVE
ACQUISITION LLC'S AND BE-AVIV 286 RIDER LLC'S RESPONSES
TO THE SUPPLEMENT TO MOTION TO ALTER OR AMEND JUDGMENT
IN FURTHER SUPPORT ON REMAND**

      286 Rider Ave Development LLC ("**Development**"), as 100% owner of the membership

interests of the debtor 286 Rider Ave Acquisition LLC (the "**Acquisition**" or "**Nominal**

**Debtor**"), by undersigned counsel, hereby files this Reply to Acquisition's and Be-Aviv 286

Rider LLC's ("**Be-Aviv**") Responses to the Supplement to Motion to Alter and Amend Judgment

in Further Support on Remand (the "**Reply**") and, in support, state:

**I.**      **ARGUMENT**

      1.      In their respective Responses, the Debtor and Lender continue their blatant

attempt to rewrite the history of their relationship with Development and ignore that at no time

was Lender or its affiliate Lender LLC[1] a "member" of the Debtor, a prerequisite to appointing a

"manager" authorized to file a bankruptcy petition for a New York limited liability company, in

accordance with controlling New York law and the governing Operating Agreement. Both the

Debtor and Lender speciously argue that they never changed their position on ownership of

equity and who was a member of Acquisition despite conflicting statements in the Petition

(asserting Lender was the absolute owner on April 27, 2021 and assigned all membership and

equity interests to its Lender LLC on June 14, 2021), in the first SOFA (states Lender LLC was

the sole member and 100% equity holder) and the Replacement SOFA (Development is listed as

the 100% equity holder). Instead, they argue Lender only transferred voting rights and acted "as

if it were the absolute owner thereof"[2], not the actual owner.

2.      However, Lender's very own words contradict this position: Lender's counsel

unequivocally stated at the August 30, 2021 Hearing: "*So in April, when we exercised our rights*

*under the pledge, we became the member.*" Aug. 30, 2021 Tr. 24: 12-13 [ECF No. 41] (emphasis

added). Despite references in the Responses that Mark Lichtenstein, Development's former

counsel, stated Development had a "residual interest" that remained after the Lender's "exercise

---

[1] Capitalized terms not defined in this Reply have the meaning assigned to them in the Supplement [ECF No. 331].

[2] Ascribing the plain meeting to the operative words "as if" results in a conclusion contrary to the one espoused by the Respondents. In the Thesaurus, "the synonym for "as if" is "just as though" and synonyms for "absolute" are "total", "entire" and "undivided." *See* http://www.thesaurus.com. Therefore, a plain meaning attribution to this clause would otherwise read "as though it was the undivided owner thereof." Here, since the Bankruptcy Case's inception, Debtor and Lender have each repeatedly admitted that, on April 27, 2021, Lender "**assigned, transferred, and registered,** as applicable, **all membership interests and equity interest of the Debtor to and in the name of the Lender.**" *See, e.g.,* Petition, Declaration of Lee Buchwald ¶  [ECF No. 1] (emphasis added). Such transfer could only reasonably mean that thereafter, if it properly exercised its rights, Lender became the absolute owner of equity, which it subsequently refuted in the Replacement SOFA.

of its rights" in April 2021[3], the Court apparently agreed with Lender's position at that time in

finding, based on the record before her:

> According, [sic] the *lender* validly exercised its rights under the pledge agreement and *became of the owner as of April 27th, 2021 of all the membership interest in the debtor*. The lender subsequently transferred the interest of such membership interest to an affiliate, *the new owner*, on June 14th, 2021.

Aug. 30, 2021 Tr. 67: 9-13 [ECF No. 41] (emphasis added).

3.    The Court committed clear error in so finding and reiterating its position in ruling

at the October 5, 2021 Hearing on the Motion to Alter or Amend, a date that proceeded the filing

of the SOFA on October 25, 2021 and the Replacement SOFA on November 5, 2021. As noted

previously, at the October 5 Hearing, the Court presciently articulated certain reservations:

> *And so if I had thought, that under pledge Section 5 – there wasn't the right to - for the members or the parties stepping into the shoes of the member, in this case the lender, to go ahead and have I guess a – to effectuate a change of management* and the New York Limited Liability Law didn't provide ... for such things ... if that had not all been the case, then I might find your argument persuasive.

Oct. 5, 2021 Tr. 25:1-4 [ECF No. 93] (emphasis added).

4.    This observation underscores the fundamental error in the Court's reasoning that

has perpetuated the manifest injustice of this Bankruptcy Case unfolding, over the objection of

all non-Lender creditors and equity–its partial reading of the contract, *i.e.* the Pledge Agreement.

Having been led to believe that all rights in Acquisition were transferred pursuant to Section 5,

on default, the Court ignored the critical significance of Section 13, "Remedies Upon Default,"

which mandated that the exercise of such rights, on default, must be "subject to the Borrower

---

[3] *See* Debtor Response ¶ 24 [ECF No. 337]; Lender Response at ¶ 14 [ECF No. 342].

Operating Agreement." Both the Debtor and Lender Responses continue to be conspicuously silent in failing to address or even mention Section 13 and its impact. This blatant omission undoubtedly is due to the fact that Section 13's "subject to the Borrower Operating Agreement" language undermines the foundation of their argument that the pledge was self-executing, on default, without regard to the Operating Agreement.

5.       Under very straightforward New York contract principles, a contract must be read as a whole, and all parts read as an integrated whole. *See Beal Sav. Bank v. Sommer,* 8 N.Y. 3d 318, 324-25 (2007). That did not happen here. If the Replacement SOFA had been before the Court on October 5, the Court would have known on October 5 that, in fact, Lender was not a member of Acquisition, a predicate for its ruling, nor the owner of "all of the membership interests in the Debtor," as she concluded, and its inquiry would not have ended as it did, with an acceptance of Section 5 of the Pledge Agreement as controlling the legal outcome, which it does not.

6.       In short, Lender missed a critical and fatal step in not providing an addendum to the Operating Agreement substituting itself as "sole member" and 100% equity holder when the Loan was executed. It clumsily attempted to correct this irreversible error, by first, literally at the twelfth hour - midnight before the August 30 Hearing - attempting to so amend the Operating Agreement in violation of the automatic stay of the Bankruptcy Code and then by subsequently filing, not one but two contradictory SOFA's, ultimately conceding what Development had been maintaining all along: it was the 100% owner of the equity and therefore the sole member of the Debtor. Lender does not explain, nor can it, its blatant misstatements to the Court at the August

30 Hearing: "So in April, when we exercised our rights under the Pledge, we became the

member." *Supra* at ¶ 2.

7.      While the Debtor and Lender attempt to trivialize the import of sworn statements

in a Bankruptcy Case, such as the SOFA's, sworn statements are deemed admissions that may be

relied upon by other parties and the Court, as it did here. *See Diorio v. Kreisler-Borg Const. Co.*,

407 F.2d 1330, 1331 (2d Cir. 1969) ("Statements called for in the schedules, or made under oath

... must be regarded as serious business; reckless indifference to the truth ... is the equivalent of

fraud."); *See also In re Bohrer,* 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001) ("Statements in

bankruptcy schedules are executed under penalty of perjury and when offered against a debtor

are eligible for treatment as judicial admissions. A debtor may not adopt a cavalier attitude

toward the accuracy of his schedules by arguing that they are not precise and correct.").

## II.    CONCLUSION

8.      This Court sits as a court of equity, and as a court of equity, must do equity. This

Bankruptcy Case was not properly authorized and should have been filed or pursued, especially

over the continued objections of all non-Lender parties in interest, for the exclusive benefit of the

very Lender who improperly orchestrated the filing in the first instance. Lender, aided by the

Debtor, perpetuated the Bankruptcy Case through continued misstatements to the Court which

influenced its findings that, in exercising the pledge without regard to the Operating Agreement,

Lender's affiliate became a member and 100% equity holder in the Debtor as of the Petition Date

authorized to cause a bankruptcy filing, which through subsequent admissions, proved false. It is

time to right wrong and stop the injustice perpetuated here by the Lender-controlled Debtor and

Lender, by dismissing this Bankruptcy Case[4].

Dated:  New York, New York
        March 23, 2022

                                              OFFIT KURMAN, P.A.

                                       By:/s/ Jason A. Nagi
                                          Jason A. Nagi, Esq.
                                          590 Madison Avenue
                                          New York, New York 10022
                                          (212) 545-1900
                                          Jason.nagi@offitkurman.com
                                          and
                                          Joyce A. Kuhns, Esq. (admitted pro hac vice)
                                          300 East Lombard Street, Suite 2010
                                          Baltimore, Maryland 21202
                                          (410) 209-6463
                                          Jkuhns@offitkurman.com

                                          *Attorneys for 286 Rider Ave Development LLC*

---

[4] Notwithstanding the standard for review on a motion for reconsideration, a party in interest can raise the issue of subject matter jurisdiction without a formal motion, at any time and, if found to be valid, the court is obligated to dismiss the case *sua sponte. See Bernstein v. Universal Pictures, Inc.,* 517 F.2d 976, 979 (2d Cir. 1975) ("[L]ack of jurisdiction is so fundamental a defect that the rule permits a judge to recognize it *sua sponte* at any time.").

**OFFIT KURMAN, P.A.**
Jason A. Nagi, Esq.
590 Madison Avenue, 6th Floor
New York, NY 10022
Tel (212) 545-1900
Email: Jason.nagi@offitkurman.com
        and
Joyce A. Kuhns, Esq. (admitted pro hac vice)
300 East Lombard Street, Suite 2010
Baltimore, Maryland 21202
(410) 209-6463
Jkuhns@offitkurman.com

*Attorneys for 286 Rider Ave Development LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

                             Chapter 11

286 Rider Ave Acquisition LLC,

                             Case No.  21-11298-lgb

            Debtor.
-----------------------------------------------------------X

## CERTIFICATE OF SERVICE

       A copy of the Reply of 286 Rider Development LLC to Debtor 286 Rider Acquisition LLC's and Be-Aviv 286 Rider LLC's Responses to the Supplement to Motion to Alter and Amend Judgment in Further Support on Remand are being served on March 23, 2022 via (i) Electronic Notice and E-Mail upon the parties listed on the attached service list as denoted with a "*"; (ii) E-mail upon the parties listed on the attached service list as denoted with a "**"; and (iii) U.S. Mail postage pre-paid upon the parties listed on the attached service list as denoted with a "***".

## SERVICE LIST

**VIA ELECTRONIC NOTICE AND E-MAIL (*)**

Joseph Thomas Moldovan - bankruptcy@morrisoncohen.com

Fred B. Ringel - fbr@robinsonbrog.com

United States Trustee- USTPRegion02.NYECF@USDOJ.GOV

**VIA E-MAIL (\*\*)**

Greg Zipes - greg.zipes@usdoj.gov

**VIA U.S. MAIL (\*\*\*)**

NYS Dept. Taxation & Finance
Bankruptcy/Special Procedures Section
P.O. Box 5300
Albany, NY 12205-0300

NYC Dept. of Finance
Office of Legal Affairs
375 Pearl Street, 30th Floor
New York, NY 10038

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

Fischer Makooi Architects
242 West 30th Street, Ste. 1102
New York, NY 1001

Wayne M. Greenwald, Esq.
JACOBS, P.C.
667 Madison Avenue - 5th Floor
New York, NY 10065

BEAM Architects D.P.C.
141 Flushing Avenue, Suite 1201
Brooklyn, NY 11205

Metropolitan Realty
381 South 5 Street
Brooklyn, NY 11211

286 Rider Associates, LLC
213 Via EmailiaPalm Beach
Gardens, FL 33418

United States Attorney's Office SDNY
Attention: Tax & Bankruptcy Unit
86 Chambers Street, Third Floor
New York, NY 10007

U.S. Securities and Exchange Commission
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, NY 10281-1022

Titan Engineers PC
1331 Stuyvesant Ave.
Union, NJ 07083

Robert Newblatt
286 Rider Ave Realty LLC
286 Rider Avenue
Bronx, NY 10451

Mark S. Lichtenstein and Joshua D. Bernstein
Akerman LLP
1251 Avenue of the Americas, 37th Floor
New York, New York 10020

EBC
1808 Middle Country Road
Ridge, NY 11961

Xolle Demolition
2071 Flatbush Ave, Suite 44
Brooklyn, NY 11234

/s/ Jason A. Nagi
Jason A. Nagi, Esq.