

Jason A. Nagi
Principal
212.380.4108
jason.nagi@offitkurman.com

March 27, 2022

**By ECF**

Honorable Lisa G. Beckerman
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004

Re:    *In re 286 Rider Acquisition LLC,* No. 21-11298-lgb

Dear Judge Beckerman:

This firm is counsel to 286 Rider Ave Development LLC ("**Development**"), Ms. Toby Moskovits and Mr. Michael Lichtenstein (collectively, with Development, the "**Development Parties**") in the above-referenced bankruptcy case.

We write with respect to the Preliminary Limited Structural Evaluation of *Rand Engineering & Arcitecture [sic] DPC* (the "**Rand Report**") [ECF No. 365], filed by 286 Rider Ave Acquisition LLC (the "**Nominal Debtor**") Friday evening and the letter from Titan Engineers PC dated March 17, 2022 (the "**Titan Report**"), filed by Development on March 18, 2022 [ECF No. 336]. A close reading of Rand Report indicates that the Rand Report concurs with the Titan Report: that the safest option is to immediately demolish the vacant and abandoned warehouse at 286 Rider Avenue, Bronx NY (the "**Building**").

Indeed, the Rand Report admits that demolition of the Building is preferred, when it precedes and caveats certain alternative measures with the statement "*[i]f demolition cannot proceed at this time*." The full paragraph states as follows:

> It is understood that, while a permit to demolish the building has been issued, the property is currently undergoing a bankruptcy proceeding and ownership dispute which may delay this work. ***If demolition cannot proceed at this time***, then the following measures are recommended to secure the property …



(Rand Report at p. 4) (emphasis added).

As the position of two licensed engineers appear to be unified on this point, the Building should be demolished. There is no reason or justification for Nominal Debtor to delay this result any further. Nor is there reason for an evidentiary hearing in light of this agreement. The Development Parties and the Titan Report both indicate that permitting the Building to stand is a safety hazard, and the Development Parties are expressly concerned about the safety of the public, particularly in light of the heavily-trafficked surrounding neighboring buildings, which includes the neighborhood's only area supermarket, which is only a few inches away from the Building and well within a collapse zone.

Nominal Debtor's apparent insistence on not demolishing the Building now, is directly contradicted by its prior positions and statements to the Court only a few months ago. In connection with Nominal Debtor's bid procedures motion, in December 2021, Nominal Debtor admitted:

> As explained in more detail in the Bid Procedures Motion, the Property is subject to a section 421a tax abatement which unless construction commences between January 1, 2016, and June 15, 2022, the abatement would be lost. **The tax abatement adds significant value to the Debtor's Property**, however, in order to maintain the tax abatement, **the owner of the Property must commence construction before June 15th of 2022** and complete construction by June 15, 2026, **or the ability to claim the 35-year tax abatement would expire**. As many prospective purchasers would understand, **starting construction takes time**. The owner must draft plans, obtain permits, have the City of New York approve them, and obtain construction financing before the owner can start construction. Any further delay in the sale of the Property reduces the amount of time that a prospective purchase can realistically accomplish the tasks necessary to commence construction prior to the expiration of the tax abatement. **Therefore, it is imperative** that the auction be held as soon as practical so that a prospective purchaser would had [sic] as much time as is possible under the circumstances s [sic] **to commence construction and thereby preserve the tax abatement and preserve the value attributable to it**.

[ECF No. 174 (Motion to Shorten), at ¶ 4] (emphasis added). *See also* [ECF No. 173, (Bid Procedures Motion) at pp. 4-5.] ("The loss of the tax abatement would result in a diminution in the value of the property to the detriment of all parties-in interest. Thus, an auction as soon as possible in early January is absolutely critical to preserve value of the estate.").



There is certainly no reason for delay as demolition permits are in hand, a demolition contract has been signed with a deposit paid and Development has agreed to cover the full cost of demolition at its own expense. As Nominal Debtor asserted in December 2021, this work will only serve to enhance the value of the underlying real estate, as it will secure the tax abatement and secure significant value for the Debtor.

Under these circumstances, refusal to demolish the Building leaves open one question: justification. What is the justification for the Nominal Debtor (through Mr. Buchwald and Mr. Ringel) to actively push to repair the Building after admitting that a key part of securing the tax abatement prior to the June 15th deadline is demolition, and after pushing for an urgent sale of the property immediately after the Christmas holiday season? Doing the opposite of what both engineer reports recommend and forcing repair of the Building where its highest value and best use requires demolition, will cause the Debtor to lose the tax abatement.

Nominal Debtor's open inconsistencies highlight another curious comment in the Rand Report, that "the property is currently undergoing a bankruptcy proceeding and ownership dispute which may delay this work [demolition]." (Rand Report at p. 4.) There is no justifiable reason to delay demolition. This is a transparent attempt to hijack the efforts of Development, as 100% of the equity, to secure a significant value increase of the property at the expense of public safety and should be noted. Refusal to allow demolition to proceed under these circumstances is not only a violation of fiduciary duties to the Nominal Debtor but endangers human life.

There is no reason, whether from an engineering perspective, from a public safety perspective, and certainly not from a business perspective, to delay demolition of the Building. Allowing the Building to remain, undemolished, violates any fiduciary duty to the public and public safety, the Nominal Debtor, and the Nominal Debtor's estate.

We thank the Court for its attention to this matter.

Sincerely

Jason A. Nagi

cc: All counsel (by ECF)

4878-5904-8473