**MORRISON COHEN LLP**
909 Third Avenue
New York, New York 10022
(212) 735-8600
Joseph T. Moldovan
Heath D. Rosenblat
David J. Kozlowski
jmoldovan@morrisoncohen.com
hrosenblat@morrisoncohen.com
dkozlowski@morrisoncohen.com

*Attorneys for Be-Aviv 286 Rider LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **286 RIDER AVE ACQUISITION LLC,** | Case No. 21-11298(LGB) |
| Debtor. | |

**BE-AVIV 286 RIDER LLC'S SUPPLEMENT IN SUPPORT OF LENDER'S
TIME AND EXPENSE RECORDS THAT LENDER SUBMITTED AS
DIRECTED BY THE COURT IN THE SECOND AMENDMENT TO
ORDER REGARDING DEVELOPMENT'S MOTION TO CONFIRM
DISPUTED PAYOFF AMOUNTS, SATISFACTION OF THE DIP LOAN, AND
<u>FOR RELATED RELIEF AND SUPPLEMENT TO SAME, DATED MARCH 3, 2022</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT  ..................................................................................... 1

RELEVANT BANKRUPTCY COURT AND
STATE COURT PROCEDURAL BACKGROUND ..................................................... 8

RELEVANT FACTUAL BACKGROUND .................................................................. 11

    A.     The Loan Documents ............................................................................. 11

    B.     Borrower's Representations and the Events of Default Under
           the Loan Documents and Certain Relevant Provisions Concerning
           the Lender's Continuing Entitlement To Attorney's Fees Post-Payment ................... 12

    C.     Borrower's and Guarantors' Waivers of Claims Against Lender .............................. 14

    D.     Development, Moskovits, and Lichtenstein Submit Payment to Lender .................... 15

ARGUMENT .................................................................................................................. 16

    A.     Borrower and Guarantors are Liable for Attorney's Fees
           Incurred by Lender in Connection with the Loan Documents ................................... 16

    B.     The Allowance of Lender's Attorney's Fees
           Is Required by the Law of the Case Doctrine ........................................................... 22

    C.     Borrower Ratified Its Obligation
           To Pay Lender's Attorney's Fees ............................................................................ 23

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Hewett v. Leblang*,
  No. 12 Civ. 1713 (PKC), 2012 U.S. Dist. LEXIS 93123 (S.D.N.Y. July 5, 2012) ................23

*Onex Food Servs., Inc, v Grieser*,
  Nos. 93 Civ. 0278,94 Civ. 3063, 1996 WL 103975 (S.D.N.Y. Mar. 11, 1996*)* ....................21

*Sara Lee Household & Personal Care, UK, Ltd. v Almay, Inc.*,
  1992 U.S. Dist. LEXIS 15540 (S.D.N.Y. 1992), *aff'd*, 992 F.2d 320 (2d Cir. 1993) .........1, 20

*United States v. Quintieri*,
  306 F.3d 1217 (2d Cir. 2002)................................................................................................22

## STATE CASES

*Allen v. Riese Org., Inc.*,
  106 A.D.3d 514 (1st Dep't 2013) ...........................................................................................23

*Chiampou Travis Besaw & Kershner v. Pullano*,
  194 A.D.3d 1480 (4th Dep't 2021)........................................................................................20

*E-Z Eating 41 Corp. v. H.E. Newport LLC*,
  84 A.D.3d 401 (1st Dep't 2011) .............................................................................................17

*Foundry Capital Sarl v. Int'l Value Advisers, LLC*,
  96 A.D.3d 620 (1st Dep't 2012) .............................................................................................23

*Helmsley-Spear, Inc. v. New York Blood Ctr., Inc.*,
  257 A.D.2d 64 (1st Dep't 1999) .............................................................................................17

*Richard Feiner & Co. Inc. v. Paramount Pictures Corp.*,
  95 A.D.3d 232 (1st Dep't 2012) .............................................................................................17

*Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*,
  13 N.Y.3d 398 (2009)............................................................................................................16

*Surlak v. Surlak*,
  95 A.D.2d 371 (2d Dep't 1983)..............................................................................................23

*Sutton v. East River Savings Bank*,
  55 N.Y.2d 550 (1982) ............................................................................................................17

Be-Aviv 286 Rider LLC ("**Lender**"), by its undersigned counsel, hereby submits this supplement ("**Supplement**"), in support of Lender's claim for payment of Morrison Cohen's legal fees and expenses that Lender submitted as directed by the Court in the *Second Amendment to Order Regarding Development's Motion to Confirm Disputed Payoff Amounts, Satisfaction of DIP Loan, and for Related Relief and Supplement to Same*, dated March 3, 2022 ("**Order**") [ECF No. 319]. In support of this Supplement, Lender respectfully represents as follows:

## PRELIMINARY STATEMENT[1]

1.      At the March 29, 2022 hearing, the Court asked Lender's counsel with respect to its attorney's fees, "what cuts off the fees"? The answer is simple—when all obligations under the Loan Documents are satisfied, all defaults under the various agreements, which are integrated, are cured, and Lender is returned to its position prior to the default under the Mortgage and Note. Payment of amounts owed to Lender as of a particular moment in time is not enough. That is the standard as explained by Judge Duffy in his decision in *Sara Lee Household & Personal Care, UK, Ltd. v Almay, Inc.*, 1992 U.S. Dist. LEXIS 15540 (S.D.N.Y. 1992), *aff'd*, 992 F.2d 320 (2d Cir. 1993), which held that an attempted cure of a contractual breach must "completely ameliorate the default" and restore the non–breaching party to its position the moment before the defaults occurred. *Id.* at *9. Anything else, Judge Duffy, held would violate "the spirit of equity." *Id.* at *8.

2.      The application of this principle means that, so long as Lender *is at risk because it is being sued to void its loan, return any money paid to it, loss of the benefit of its bargain with the borrower, or any other type of risk*, any half-cure by Borrower (or those acting on behalf of the Borrower) is ineffective. Lender is still very much at risk because of the Borrower's ongoing

---

[1]     Capitalized terms used but not defined in this Preliminary Statement shall have the meanings ascribed to them elsewhere in this Supplement.

defaults and Development's and the Guarantors', who are also the principals of Development, continuing, *inter alia*, challenges to the Loan Documents and decisions of this Court and the District Court, prosecution of the Original State Court Action that seeks rescission of the Loan and damages from Lender and its principals arising from the Loan transaction ***despite a signed release of Lender and its principals by the Borrower and the Guarantors***, the TRO Action, and the Demolition Motion that challenges and seeks to destroy pieces of Lender's collateral. In sum, the Borrower's defaults have ***not been cured but continue unabated***. Under these circumstances, the mere payment without the cure of these numerous other defaults—undefined "obligations" under the Pledge, Note, and the Guaranty—means the Loan Documents are not and have not been terminated, are in full force and effect, which includes Lender's right to take action to defend itself and its collateral and if, in so doing, it incurs attorney's fees, the Borrower must pay them.

3.      That the Borrower since the Petition Date, is not directly causing the continuing breach, is irrelevant. The actions of Development—the, as it constantly asserts, 100% equity owner of the Debtor—in this Court and the State Court cause the Borrower to be in breach. So long as that is the case, Lender is not restored to the position it was in before the Borrower's breach and until all breaches are cured, the obligations under all or any of the Loan Documents have not been satisfied.

4.      Every penny of the legal fees Lender seeks and will continue to seek, is the result solely of the scorched earth tactic of Development as the equity holders and as the Guarantors. The Court offered them the opportunity to escrow a fraction of the current legal bill on February 8th and dismissed their actions against Lender and its principals. Had they done so, none of the countless motions, numerous hearings (seven since February 1st alone), one appellate argument

#11045830

2

and related filings, letters, conferences would have needed to occur. Development would, by now, have been restored to control and management of the Debtor and we would not be before the Court any more. Instead, Development and the Guarantors chose not to. Rather, they have continued their relentless fight in multiple forums. So long as Development continues to pursue its tactics and put Lender *at risk*, the Debtor is contractually obligated to pay for Lender's attorney's fees.

5.     This is because a lender is entitled to enforce all of the rights contractually embodied in its various loan documents and protect all the security it bargained for until such time as the defaults are cured. To hold otherwise would be to upend the relationship between a borrower and a lender and allow a continuously defaulting-borrower to dictate when it has complied with its obligations under a loan, and that simply cannot logically be.

6.     Moreover, a lender's rights are enhanced where, as here, a loan has gone into default. Before default, all a borrower has to do is pay back its loan and if it pays the amount due when required, a lender and a borrower part ways. But once a default has occurred, a whole panoply of rights become vested in a lender and a lender has to the right to exercise any and all of those rights and get paid it legal fees for doing so until every single monetary and non-monetary default has been fully and indefeasibly cured, because that is what its borrower contractually agreed to. The sole premise of Development's objection to the Borrower's continuing liability to Lender for the attorney's fees it incurs is that a payment was made to Lender, and that somehow this means that the Borrower has no further obligations under the Loan Documents to Lender. Development's Omnibus Fee Response [ECF No. 369], ¶ 13. The Court has itself stated numerous times that this is just wrong. The Borrower has remaining "obligations." *See, e.g.,* Transcript of February 1, 2022 hearing, 13:14–14:15.

#11045830

3

7.      Development has stated over and over that it made the Payment to redeem the Pledge it had given Lender as collateral security for the Loan. It did not and has not contended that it made the payment to satisfy the Mortgage or the Note. The Borrower is obligated to make the payment on account of the Note. Development, as this Court has stated several times, simply gave Lender a gift. *See*, Transcript from Hearing held on January 12, 2022, at 39:11–18 and 73:9–19. Lender does not contend that it can collect more than it is owed in connection with all monetary obligations it is owed under the Loan Documents, but even applying the sum paid only resolves (and only partially) just one of Borrower's defaults—the payment default and the amount of legal fees incurred (and for the January stub period, projected to be incurred) as of January 11, 2022. Development and this Court know that Lender did not accept the Payment in full satisfaction of either the amounts owed or the other obligations under the Loan Documents, and made clear that so as long Lender had to defend itself or protect its collateral further fees would be incurred. *See* Payoff Notice [ECF No.257].

8.      It is still the case that Lender continues to be forced to defend (after the Payment) itself and its security by having to, *inter alia*: (a) participate in an appeal and related recent remand from Development's appeal of this Court's orders denying reconsideration of dismissal of this case; (b) defend a second-appeal now being prosecuted by Development regarding to the Court's approval of bidding procedures; (c) respond to a motion to lift the stay to demolish the Lender's collateral; (d) seek the Court's assistance against the improper and possibly defamatory *ad hominem* attacks on social media and in letters to Lender's business contacts; and (e) seek relief from this Court because of the most recent order to show cause and temporary restraining order

#11045830

4

brought in the New York State Court that, if left unopposed, would have trampled on rights Lender had obtained from, and upended prior orders of, this Court.

9.      Each above example clearly demonstrates why Lender continues to incur legal fees. These are not isolated events, but collectively evidence the constant barrage Lender has and will continue to face. The tactics of Development and the multiple law firms and lawyers that represent Development requires Lender's and its counsel's full attention, and the time and related attorney's fees that accrue are the result.

10.     Moreover, Lender never released the Borrower from its obligations under the Loan Documents or released its Mortgage against the property at issue. Those facts make plain that the Loan Documents, and Lender's rights thereunder, including enforcement of the Borrower's and the Guarantors' "obligations" under the Loan Documents, which necessarily includes the obligation to pay Lender's attorney's fees in connection with protecting the Lender's rights under the Loan Documents, continue.

11.     Payment of debt or satisfaction of financial obligations required by the Loan Documents is not all that the Borrower has to do. It has to satisfy various other "obligations" directly or indirectly referenced and required under the Loan Documents. Development's arguments, all centered on the definition of "Debt" in the Loan Documents, deliberately attempt to obfuscate that the Loan Documents must be viewed holistically and are designed, very simply, to protect Lender, who has parted with a lot of its money in reliance on this protection, from a default by the Borrower.

12.     It is very significant that the Court has already ruled that Lender is entitled to its attorney's fees that arose after the Borrower defaulted. This included all of the Borrower's and

#11045830

5

Developments' prepetition and postpetition litigation and other acts in derogation of Lender's rights under the Loan Documents when it approved Lender's attorney's fees incurred through January 11, 2022.

13.    What Development would have this Court now do with respect to all of the fees Lender has incurred post–Payment is ignore the patently obvious and absolute linkage and relationship of the incurrence of post–Payment fees to the acts, conduct, motions, and litigation that generated the pre–Payment fees. This would make no sense. If Lender was entitled to fees incurred for opposing the motion to dismiss [ECF No. 17] and the motion for reconsideration of the denial of the motion to dismiss [ECF No. 47], how can it not be entitled to be paid for the fees it incurs defending the orders it obtained from this Court denying those motions, the appeal of the denial of the motion for reconsideration, the remand of the denial of the motion for reconsideration, and whatever may come next relating to the pending appeal, or the latest motion to dismiss? All of these motions or appeals seek to undo all of the relief this Court has held Lender was already entitled to be compensated for at the March 29th hearing. How can Lender not be entitled to its attorney's fees incurred responding to all of these post–Payment motions, which are nothing more than one blatant attack after another seeking to unwind actions Lender has already taken and which this Court has already affirmed multiple times, negate the relief Lender already obtained, and claw back the payment Lender received? The answers to these questions are self-evident: the Lender is entitled to be compensated.

14.    The same logic applies to this Court's approval of payment for Lender's involvement with the proposed auction of the Debtor's property and its support of the sale motion. It would be illogical to deny Lender its attorney's fees defending this Court's order approving the

#11045830

6

auction of Lender's collateral. It cannot now be the case that because Lender received the Payment, approving Lender's fees relating to the appeal of the sale motion that is currently pending is suddenly in question. The reason for this appeal is to challenge Lender's rights with respect to its collateral. Lender is entitled to defend its rights and, under the Loan Documents, be paid for its counsel's work in this regard.

15.    Every motion Development has made is part of single–minded mission to undo all of the Loan Documents, all of Lender's actions in this case, and every effort of Lender to obtain the benefit of its bargain with the Borrower and its equity owner and enforce the provisions of the Loan Documents. This mission has not stopped because of the Payment made to Lender. If Lender is entitled to be paid as this Court ruled for defending itself or its collateral before it received the Payment, it must be entitled to be paid for defending itself against the same parties who now want to undo what Lender achieve the first go-around. The bottom line is that Lender remains ***at risk*** and it has not been restored to the position it was in before the initial default.

16.    This Court has clearly not accepted Development's contention in its fee response that the mere payment of debt would have satisfied all of Borrower's obligations to Lender, as it has already awarded Lender significantly in excess of more than a million dollars in legal fees. With the Payment, Development paid amounts they and this Court then correctly interpreted (but now assert they should not be responsible for—once again arguing from both sides or any side when convenient) was owing as a result of the default, and that default continues as set forth in this Supplement as does the continued obligation to pay Lender's attorney's fees here, now, and in the future until Development's and the Guarantors' conduct against Lender and its security stops.

#11045830

7

17.     The fact that the Payment was made does not alter the fact that Borrower, as a result of Development's and the Guarantors' actions, has continued to breach the obligations under the Loan Documents, and has forced Lender to incur attorney's fees. If Lender's attorney's fees were deemed valid prior to January 11, 2022 and the continued incurrence of legal fees is in connection with the same and similar disputes, then it is necessarily the case that those continuing fees should be approved after the Payment on the same reasoning and basis—regardless of the partial Payment made by Development.

### RELEVANT BANKRUPTCY COURT AND
### STATE COURT PROCEDURAL BACKGROUND

18.     On or about March 16, 2021, the Debtor and certain of its affiliates and related entities—Heritage 875 4th Avenue LLC, Heritage 286 Rider Ave LLC, 875 4th Avenue Acquisition LLC, as well as Toby Moskovits and Michael Lichtenstein (the Guarantors)— instituted an action in New York State Supreme Court, Kings County against Lender and certain of its principals (Index No. 506131/2021) ("**Original State Court Action**"). Although initially filed in Kings County in violation of the terms of the Loan Documents, the Original State Court Action was subsequently, upon Lender's motion, transferred to New York County.

19.     In the Original State Court Action, the Borrower (*i.e.*, the Debtor) and the Guarantors sought to invalidate the Borrower's obligations to repay the Loan, force the Lender to provide an additional $32 million of financing, and are seeking rescission of the Note. The Original State Court Action, while in the process of being voluntarily dismissed by the Debtor and stayed due to this case, remains pending as against Lender and its principals by the Guarantors in their capacity as plaintiffs. As such, Lender ***remains at risk*** of having to validate (again) its actions in connection with enforcing its rights under the Loan Documents due to the Borrower's default. Not

#11045830

8

to mention that the Original State Court Action is contrary to and violates the release provided to Lender in section 10 of the Note Amendment.

20.    On August 5, 2021, 286 Rider Ave Development LLC ("**Development**") filed a motion to dismiss this bankruptcy case ("**Motion to Dismiss**") [ECF No. 17].

21.    On August 30, 2021, the Court entered an order denying the Motion to Dismiss ("**MTD Denial Order"**) [ECF No. 39].

22.    On September 13, 2021, Development filed a motion to reargue ("**Motion to Reargue**") from the MTD Denial Order [ECF No. 47].

23.    On October 5, 2021, the Court entered an order denying the Motion to Reargue ("**Reargument Denial Order**") [ECF No. 69].

24.    October 8, 2021, Development filed a Notice of Appeal ("**Appeal**") from the Court's MTD Denial Order and Reargument Denial Order [ECF No. 75].

25.    On November 12, 2021, Moskovits and Lichtenstein commenced an action against Ben Harlev and Eyal Epstein, two of Lender's principals, in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida ("**Florida Action**") [ECF No. 201-1].

26.    In the Florida Action, Moskovits and Lichtenstein asserted six claims related to the Loan Documents and this bankruptcy for: (i) civil conspiracy, (ii) fraud, (iii) fraud by concealment, (iv) defamation, (v) tortious interference with advantageous business relationship, and (vi) abuse of process. *Id.*

27.    On November 23, 2021, the Court entered an order ("**Final DIP Order**") [ECF No. 175] authorizing 286 Rider Ave Acquisition LLC ("**Debtor**" or "**Borrower**") to obtain debtor-in-possession financing on a final basis from Lender.

#11045830

9

28.    On January 11, 2022, Development filed the *Notice of Payoff and Confirmation of Wire* ("**Wire Notice**") [ECF No. 257]. The Wire Notice attached (a) Lender's January 9, 2022 Loan Payoff Notice ("**Payoff Notice**") and (b) Development's January 11, 2022 letter ("**Payoff Letter**") that was sent to Lender after the $11,918,974.12 wire ("**Payment**") was initiated.

29.    On February 9, 2022, Development and the Guarantors filed *Motion to Dismiss for Lack of Jurisdiction Based on Debtor Admissions Pursuant to 11 U.S.C. § 305 or §1112* ("**Third Motion to Dismiss**") [ECF No. 290], which is set for hearing on April 26, 2022.

30.    Argument on the Appeal occurred on January 13, 2022 (post-Payment), and was remanded to this Court on a limited issue, which was then briefed and heard by this Court on March 25, 2022.

31.    On March 21, 2022, Development filed a motion, on an expedited basis, seeking relief from the automatic stay ("**Demolition Motion**") [ECF Nos. 350] to demolish Lender's collateral. Lender joined [ECF No. 377] in the Debtor's objection [ECF No. 376] to the Demolition Motion, which is set for hearing on April 4, 2022.

32.    On March 23, 2022, Lender filed *Emergency Motion in Accordance With Court's Direction Pursuant to 11 U.S.C. § 105 to Compel 286 Rider Ave Development LLC to Amend State Court Pleadings and Enjoin State Court From Proceeding* [ECF No. 338] ("**Motion to Compel**") in response to Development's recent state court action seeking an order to show cause, temporary restraining order, and addressing redemption of the Pledge ("**TRO Action**"). The Court heard argument on the Motion to Compel on March 24, 2022, and entered *Order Staying in Part State Court Order to Show Cause* [ECF No. 361], dated March 25, 2022, that significantly modified the temporary restraining order issued in the TRO Action.

#11045830

10

## RELEVANT FACTUAL BACKGROUND

**A.**    **The Loan Documents**

33.    On September 19, 2019, Lender made a loan ("**Loan**") to Borrower in the amount of $8,000,000. The Loan was evidenced by: (x) a Promissory Note executed by Borrower, dated September 19, 2019 ("**Note**") and (y) a Mortgage and Security Agreement, dated September 19, 2019 by and between Lender and Borrower ("**Mortgage**").

34.    To secure repayment of the Note, Development and Lender entered into that certain *Membership Interest Pledge Agreement*, dated September 19, 2019 ("**Pledge Agreement**").

35.    As additional security for the repayment of the Note, on September 15, 2019, Toby Moskovits and Yechial Michael Lichtenstein (collectively, "**Guarantors**") entered into that certain Payment Guaranty ("**Guaranty**") in favor of Lender. A copy of the Guaranty was filed with the Court at Docket No. 25-6 (Exhibit F, p. 363 of 469), but for this Court's convenience, a copy is attached to this Supplement as **Exhibit A**.

36.    Thereafter, on September 18, 2020, Borrower and Lender entered into that certain *First Amendment to Promissory Note* ("**Note Amendment**").

37.    The Note, Note Amendment, Mortgage, Guaranty, and Pledge Agreement (collectively "**Loan Documents**")[2] are all governed by New York law.

---

[2]    The Loan Documents were previously attached to the Declarations of Ben Harlev and Latisha Thompson, respectively ECF Nos. 24 & 25.

#11045830

11

**B.    Borrower's Representations and the Events of Default Under
the Loan Documents and Certain Relevant Provisions Concerning
the Lender's Continuing Entitlement To Attorney's Fees Post-Payment**

38.    Pursuant to Section 4.1.1(h) of the Mortgage, Lender had the right to accelerate payment of the Debt (as defined in the Mortgage) in the event that Borrower failed "to perform or comply with any other material term, covenant, condition or obligation of this Mortgage or of the Note or of any term, covenant, condition or obligation of any other agreement or instrument executed by the [Borrower] which secures the indebtedness evidenced by the Note (collectively, the "Loan Documents"). . . . ." Mortgage, §4.1.1(h).

39.    Among other things, in Section 1.7(c) of the Mortgage, Borrower covenanted that Lender has "the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property" and that "[a]ll sums paid by [Lender] for the expense of any such action or proceeding . . . shall be paid by [Borrower]." Mortgage, §1.7(c).

40.    Borrower further covenanted in Section 1.17(b) of the Mortgage that Borrower is required to pay "all direct and indirect expenses (including, without limitation, reasonable attorney's fees and disbursements for legal services of every kind at trial and appellate level) relating to the administration of this Mortgage and the other Loan Documents. . . ." Mortgage, §1.17(b).

41.    Under the Note, the Borrower agreed:

> Upon the occurrence of an Event of Default, Lender may hire or pay someone else to enforce its rights hereunder, at Borrower's sole cost and expense. **This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's reasonable legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals.** If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

#11045830

12

Note, p.4 (emphasis added).

42.    Pursuant to Section 12 of the Pledge Agreement, the Pledge Agreement would only terminate "[i]f [Development] pays all obligations due under the [Mortgage] and Note when due. . . ." Pledge, §12.

43.    In the Guaranty, which is a guaranty of payment and performance, Guarantors "absolutely, irrevocably and unconditionally guarantee[d] full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and ***discharge of all Borrower's obligations*** under the Note and the Related Documents." Guaranty, p.2 (emphasis added).

44.    Indebtedness is defined in the Guaranty as follows:

> all of the principal amount outstanding from time to time and at anyone or more times, accrued unpaid interest thereon . . . prepayment premiums, fees, late charges, costs, expenses, indemnification indebtedness, and other sums of money now or hereafter due and owing, or which Borrower is obligated to pay, pursuant to the terms, conditions and provisions of the Note, the Mortgage, the Environmental Agreement, the Pledge Agreement or any of the other Related Documents together with any and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender.

*Id*.

45.    In addition, in the Guaranty, the Guarantors agreed that the Guaranty was a "continuing guaranty" and that

> **ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE**

#11045830

13

> **OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.**

Guaranty, p. 3 (emphasis in original).

46.    Finally, in the Guaranty, the Guarantors agreed to pay Lender's attorney's fees "incurred in connection with the enforcement of this Guaranty." Guaranty, p.7.

**C.    Borrower's and Guarantors' Waivers of Claims Against Lender**

47.    In Section 4 of the Note Amendment, the Borrowers ratified the terms and condition and "all rights and powers created thereby or thereunder and under the other Loan Documents . . . ." Note Amendment, §4.

48.    In Section 5 of the Note Amendment, the Guarantors ratified the terms of the Note Amendment as well is their various guaranty obligations, "without defense, counterclaim, or offset." Note Amendment, §5.

49.    In Section 10 of the Note Amendment, the Borrower and the Guarantors agreed to "forever release, discharge and acquit Lender . . .from and against any and all claims, demands, causes of action, suits . . . whether known or unknown . . . arising from or related to any act or omission of any Lender Party with respect to or in connection with the Note or obligations evidenced by the Note." Lender Party is defined in Section 10 of the Note Amendment to include "its past, present and future successors, assigns, predecessors, administrators and affiliates and each of their respective officers, directors, employees, agents, affiliates, representatives, parents, divisions, subsidiaries and attorneys. . . ." Note Amendment, §10

50.    In the Guaranty, Guarantors "waive[d] and agree[d] not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff,

#11045830

14

counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both." Guaranty, p.3.

51.    In Section 4.2(j) of the Mortgage, Borrower waived "the right to claim any offset and the right to assert a counterclaim in any action or proceeding brought by [Lender] to enforce any of its rights under the Note or under this Mortgage." Mortgage, §4.2(j).

52.    On November 23, 2021, this Court entered the Final DIP Order, in which the Court held, among other things, that Debtor (*i.e.*, Borrower) had waived its right to "assert[] or prosecut[e] . . . any other claims, counterclaims, or causes of action, objections, contests or defenses . . . against [Lender] or any of its respective affiliates, representatives, attorneys, or advisors in connection with matters related to the Prepetition Indebtedness, the Prepetition Loan Documents, the Prepetition Collateral, or the Prepetition Secured Lender's liens on the Prepetition Collateral" unless such claim was made within 60 days after entry of the Final DIP Order [ECF No. 175] ¶ 17. As a result of expiration of the DIP challenge period, these waivers under the Final DIP Order are binding upon the Guarantors and Development.

**D.    Development, Moskovits, and Lichtenstein Submit Payment to Lender**

53.    On January 9, 2022, Lender provided the Payoff Notice for the Loan and clearly and conspicuously stated in bold text as follows:

> Be advised that if there are any pending actions or litigation matters, including any appeals in the Bankruptcy Case, In re 286 Rider Acquisition, LLC, 21-11298-lgb, between or among the Lender or any of its officers, directors, employees, or agents, and the Borrower, 286 Rider Development LLC, Toby Moskovits, Yechial Michael Lichtenstein, or any of their agents, involving or relating to in any way 286 Rider Ave Acquisition, LLC ("Borrower") (collectively, "Actions") that have not been dismissed or withdrawn with prejudice at the time the Payoff is received, then the Lender is not obligated to accept the Payoff or if it elects to accept the Payoff,

#11045830

15

the amount received may be, at Lender's sole discretion, considered only a partial payment and the Lender's liens against the Borrower and control of the Membership Interest pledged by 286 Rider Ave Development LLC, shall be unaffected by the Payoff and shall continue to serve as security to secure the Lender's right to payment of any legal fees and costs incurred in connection with any of the Actions.

Payoff Notice, p. 2.

54.    After the Payment, counsel for Development, Moskovits, and Lichtenstein informed counsel for Lender in the Payoff Letter that Development, Moskovits, and Lichtenstein, defined in the Payoff Letter as "Payors," had wired the sum listed in the Payoff Notice. *See* Payoff Letter, p.1.

55.    In the Payoff Letter, counsel for Development, Moskovits, and Lichtenstein stated that "Payors have no obligation to release or dismiss any Actions as defined in the Payoff Notice, in order to fully redeem the Acquisition Equity under N.Y. U.C.C. § 9-623." *Id.* at p.2.

56.    Since submitting the Payment to Lender, Borrower has not sought a discharge of the Mortgage or a satisfaction of the Note, and Lender has not filed such a discharge or satisfaction with the county clerk.

## **ARGUMENT**

### A.    **Borrower and Guarantors are Liable for Attorney's Fees Incurred by Lender in Connection with the Loan Documents**

57.    The Loan Documents are governed by New York law and subject to New York contract interpretation principles. This includes the basic principle that the Loan Documents are to be interpreted, as with all contracts, according to their plain meaning. *See Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*, 13 N.Y.3d 398, 403 (2009). In addition, the Loan Documents should be construed "so as to give meaning to all of [their] language and avoid an interpretation

#11045830

16

that effectively renders meaningless a part of the contract." *Helmsley-Spear, Inc. v. New York Blood Ctr., Inc.*, 257 A.D.2d 64, 69 (1st Dep't 1999); *see also E-Z Eating 41 Corp. v. H.E. Newport LLC*, 84 A.D.3d 401, 408 (1st Dep't 2011) (a contract should not be interpreted in a manner that render a term to be "surplusage").

58.    The Loan Documents must be "read as a whole to determine [their] purpose and intent . . . ." *Richard Feiner & Co. Inc. v. Paramount Pictures Corp.*, 95 A.D.3d 232, 238 (1st Dep't 2012) (citation omitted). As the Court of Appeals has held, a contract should be construed as to enforce "any promise which a reasonable person in the position of the promise would be justified in understanding." *Sutton v. East River Savings Bank*, 55 N.Y.2d 550, 555 (1982). The Loan Documents are not and have not been terminated, and are in full force and effect as a result of the Borrower's existing and continuing uncured defaults, which puts Lender at risk.

59.    Here, the repeated use of the term "obligation" in each of the Mortgage, the Guaranty, and the Pledge Agreement—as opposed to the use of the defined term "Debt" that Development would have the Court focus on—makes plain that Borrower was obligated to do more than simply repay the outstanding principal and interest due under the Note in order to be discharged of all liability due under the Loan Documents. Therefore, the Payment ***alone*** does not cut off the fees.

60.    As set forth in Section 1.17(b) of the Mortgage, Borrower is required to pay "all direct and indirect expenses (including, without limitation, reasonable attorney's fees and disbursements for legal services of every kind at trial and appellate level) relating to the administration of this Mortgage and the other Loan Documents. . . ." Mortgage, §1.17(b).

#11045830

17

61.     In addition, pursuant to Section 1.7(c) of the Mortgage, Borrower covenanted that Lender has "the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property" and that "[a]ll sums paid by [Lender] for the expense of any such action or proceeding . . . shall be paid by [Borrower]." Mortgage, §1.7(c).

62.     Likewise, in the Guaranty, the Guarantors are obligated to pay all amounts owed by Borrower pursuant to the Loan Documents, including attorney's fees owed to Lender. Indeed, Guarantors specifically agreed that their obligations and liability under the Guaranty remained in place if the "outstanding indebtedness may be a zero balance from time to time." Guaranty, p. 3. Those obligations included the obligation to pay Lender's attorney's fees incurred in connection with enforcement of the Guaranty. *Id.*, p. 7.

63.     And if these provisions of the Mortgage and Guaranty set–out in this Supplement fail to establish, which they do not, the Borrower's continuing obligation to pay for Lender's attorney's fees, there is no question that the attorney's fees provision in the Note makes it clear. Under the Note, the Borrower is obligated to Lender for "Lender's reasonable attorney's fees and Lender's reasonable legal expenses, whether or not there is a lawsuit, including attorney's fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals." Note, p. 4. There are no limitations or restrictions applicable here to the attorney's fees provision of the Note—the Court also noted that this provision is "very broad" and that it "basically says somebody can enforce its rights hereunder the sole cost and expense." *See* Transcript for March 29, 2022 Hearing, 141:17-18.

64.     As the Court is aware, Lender has incurred attorney's fees in connection with the Appeal and all of the other post-Payment motions, all of which were brought to challenge the

#11045830

18

enforceability of the Loan Documents, and in the case of the Original State Court Action, to recover substantial damages from two of Lender's principals. Additionally, Lender incurred and will continue to incur fees, including in connection with the TRO Action by Development meant to frustrate this case and Lender's prior actions under the Loan Documents and the reason for Lender's Motion to Compel.

65.    The Appeal, all post-Payment motions, and the TRO Action are lawsuits that are "with respect to the Mortgaged Property" and relate to the "administration of the Mortgage and the other Loan Documents" insofar as they concern Lender's conduct with respect to the Loan Documents and challenge the enforceability of those agreements. Similarly, Lender's actions concerning Development's violations of the automatic stay, the TRO Action, the improper social media posts and letters to Lender's business contacts—all of which occurred post Payment—all concern the Mortgaged Property and Lender's conduct concerning the Loan and under the Loan Documents. It has to be recognized that while the Court asked for specific examples, which are being provided in this Supplement, Development's and Guarantors' conduct cannot and should not be viewed through a case-by-case lens, but in totality and that is why Lender continues to be *at risk* and to accrue legal fees that Borrower (or Development and Guarantors by their own actions and choosing) is responsible to satisfy in full up to the point Lender no longer is defending itself for its proper conduct arising from exercising its rights and remedies due to the conduct of Guarantors and Development.

66.    Pursuant to the Loan Documents, Borrower and Guarantor are responsible for their "obligations" in addition to the payment of the outstanding debt. The Court must give meaning to the term "obligations" otherwise it would be rendered "surplusage," which the Court cannot do. It

#11045830

19

is plain that Lender's attorney's fees are an "obligation" of Borrower that it is required to pay aside from the principal and interest owed under the Loan. Likewise, the Court must give meaning to the phrase "unless otherwise agreed" contained in the waterfall provision of the Note, which the parties clearly did because of Borrower's and Guarantors' agreement to be liable for the "obligations" set forth in the Loan Documents.

67.    As such, the mere fact that Development, Moskovits, and Lichtenstein—none of whom are the Borrower—paid the amount set forth in the Payoff Notice does not discharge Borrower or Guarantors from their obligations under the Loan Documents. *See Sara Lee Household & Personal Care, UK, Ltd. v Almay, Inc.*, 1992 U.S. Dist. LEXIS 15540 (S.D.N.Y. 1992), *aff'd*, 992 F.2d 320 (2d Cir. 1993) (any attempted cure must "completely ameliorate the default" and the spirit of equity requires the claimant to be returned to the same position in which it would have been if no default had occurred); *Chiampou Travis Besaw & Kershner v. Pullano*, 194 A.D.3d 1480, (4th Dep't 2021) (defendant "did not promptly cure or attempt to cure the entire default" because it only paid the outstanding debt but not any of the late charges or other amounts associated with the default).

68.    Rather, ***all*** of Borrower's and Guarantors' obligations and liabilities under the Loan Documents remain extant until such time as they are resolved by the Borrower and the Guarantors in accordance with the Loan Documents. So long as Lender has to defend the Appeal, or defend the bidding procedures appeal, or the Guarantors continue to prosecute the TRO Action as well as the Original State Court Action, or Lender needs to defend against libelous and slanderous statements, Lender will continue to incur obligations for which Borrower and the Guarantors are contractually responsible.

#11045830

20

69.    And there can be no doubt that Borrower and Guarantors are liable for the attorney's fees Lender has incurred (and will continue to incur) as a result of the myriad challenges and litigations launched by the Guarantors because their commencement violated numerous terms contained in the Loan Documents. Both Borrower and Guarantors unambiguously agreed clearly and conspicuously in several places in those agreements not to take actions to challenge the enforceability of the Loan Documents, either against Lender or Lender's agents. And Borrower also agreed in the Final DIP Order not to challenge the enforceability of the Loan Documents, which agreement, after the expiration of the Challenge Period in the DIP Order, became binding on all parties-in-interest in this case, which includes Development and the Guarantors.

70.    It is apparent that Borrower and Guarantors are engaged in a shell game in which they are seeking to continue to harass the Lender but trying to avoid their contractual liability for doing so. But having breached their representations and shirked their responsibilities under the Guaranty, Development and Guarantors have forced Lender to incur attorney's fees in order to defend itself against those challenges. Guarantors cannot be permitted to benefit from their own breaches by lodging challenges personally or through Development, which create new or proliferate continuing uncured defaults by the Borrower, and then seeking to avoid their contractual obligations to pay for the attorney's fees that Lender is incurring as a result. *See Onex Food Servs., Inc, v Grieser,* Nos. 93 Civ. 0278,94 Civ. 3063, 1996 WL 103975, * 5 (S.D.N.Y. Mar. 11, 1996*)* ("one who breaches a contract may not seek to enforce other provisions of that contract to his or her benefit").

#11045830

**B.     The Allowance of Lender's Attorney's Fees**
        <u>**Is Required by the Law of the Case Doctrine**</u>

71.     At the March 29, 2021 hearing in this case, the Court approved Lender's attorney's fees for pre–petition period through January 11, 2022. As set forth in Lender's time records submitted to the Court, that period included attorney's fees related to Lender's defense of both the Appeal, which efforts continued post Payment, and the Florida Action. In approving those fees, the Court agreed that Borrower was liable for such fees under the Loan Documents.

72.     The Court's ruling on that issue is now the law of the case and is not subject to further litigation. The law of the case doctrine requires that "when a court has ruled on an issue that decision should generally be adhered to by that court in subsequent stages in the same case." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002). Generally, a court may only reconsider its prior decision "for cogent and compelling reasons." *Id.* at 1230.

73.     Development can provide no legitimate basis for the Court to deviate from its analysis concerning Lender's attorney's fees incurred in dealing with litigations being prosecuted by Borrower the Guarantors in connection with the Loan Documents and that reasoning should pass through to the period after the Payment with equal applicability and force. The mere fact that Development, Moskovits, and Lichtenstein made the Payment set forth in the Payoff Notice does not alter Borrower's and Guarantors' liability for Lender's continued incurrence of attorney's fees on account of its actions, including the Appeal, the Original State Court Action, the Demolition Motion, or the TRO Action. As such, Development's objection to Lender's fees incurred since January 12, 2022 should too be rejected.

74.     Moreover, this reasoning applies with equal (if not greater) force to any of the other tactics Development employed and have been addressed in this Supplement concerning the Loan

#11045830

22

Documents in this case or elsewhere. Again, until Development stops challenging Lender's actions due to the default under the Loan Documents, the accrual continues.

### C. Borrower Ratified Its Obligation To Pay Lender's Attorney's Fees

75.    Development's objection to Lender's attorney's fees incurred after January 11, 2022 should be rejected because Borrower ratified its obligation to pay such fees via the conduct of its ultimate equity owners. Courts have held that "[r]atification occurs when a party accepts the benefits of a contract and fails to act promptly to repudiate it." *Allen v. Riese Org., Inc.*, 106 A.D.3d 514, 517 (1st Dep't 2013). "[A] [party] cannot claim that he or she was compelled to execute an agreement under duress while simultaneously accepting the benefits of the agreement." *Allen*, 106 A.D.3d at 517 *citing Foundry Capital Sarl v. Int'l Value Advisers, LLC*, 96 A.D.3d 620, 621 (1st Dep't 2012); *Surlak v. Surlak*, 95 A.D.2d 371, 387-88 (2d Dep't 1983) (internal citation omitted) (party can ratify a contract by "act[ing] with respect to anything that he has received in a manner inconsistent with disaffirmance.") *Hewett v. Leblang*, No. 12 Civ. 1713 (PKC), 2012 U.S. Dist. LEXIS 93123, at *19-20 (S.D.N.Y. July 5, 2012) (rejecting party's attempt to avoid a contract and holding that she ratified it where, "[b]y her conduct, she seeks to retain the benefit of the bargain while circumventing her own obligations thereunder.")

76.    Here, when Borrower and Guarantors entered into the Loan Documents, they agreed to pay Lender's attorney's fees in the event of a default. When they entered into the Note Amendment, they ratified all of their obligations, and that this ratification was an inducement to the Lender to enter into the Note Amendment. It is undisputed that Borrower defaulted on its obligations. And it is further undisputed that Development, Moskovits, and Lichtenstein ratified

#11045830

the obligation to pay attorney's fees once the Borrower was in default because it made the Payment, which included Lender's attorney's fees through January 11, 2022, without protest.

77.     Having done so, the Loan Documents were ratified and Borrower cannot now challenge its obligation to pay Lender's attorney's fees when Borrower continues to remain in default.

[*Text Continued On Following Page*]

#11045830

## <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth in this Supplement and on the record at the hearing on March 29, 2022, and because as Judge Duffy has held, absent the complete amelioration of all of the existing and continuing defaults under the Loan Documents and the restoration of Lender to its position the moment before the defaults occurred, the defaults under the Loan Documents have not been cured and equity demands that all of the Lender's attorney's fees now owed or incurred until cure is accomplish, must be paid. Accordingly, Lender respectfully requests that the Court (i) approve all fees incurred by Lender after the Payment and (ii) grant Lender such other and further relief as the Court deems just and proper.

Dated: New York, New York
      April 1, 2022

MORRISON COHEN LLP

By: /s/ Joseph T. Moldovan
    Joseph T. Moldovan, Esq.
    Heath D. Rosenblat, Esq.
    David J. Kozlowski, Esq.

909 Third Avenue
New York, New York 10022
(212) 735-8600
jmoldovan@morrisoncohen.com
hrosenblat@morrisoncohen.com
dkozlowski@morrisoncohen.com

*Attorneys for Be-Aviv 286 Rider LLC*

#11045830

25